Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
Bethany Caracuzzo (SBN 190687)
Caroline C. Corbitt (SBN 305492)
PRITZKER LEVINE LLP
180 Grand Avenue, Suite 1390
Oakland, CA 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
jkl@pritzkerlevine.com
ecp@pritzkerlevine.com
bc@pritzkerlevine.com
ccc@pritzkerlevine.com

[Additional counsel on signature page]

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NORTHERN CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| NICHOLE HUBBARD, as parent and guardian of C.H., a minor; individually and on behalf of all others similarly situated, | Case No. |
| | CLASS ACTION |
| Plaintiff, | **COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| GOOGLE LLC; YOUTUBE LLC; CARTOON NETWORK, INC.; CARTOON NETWORK STUDIOS, INC.; CHUCHU TV STUDIOS, COOKIESWIRLC; DREAMWORKS ANIMATION LLC; DREAMWORKS ANIMATION TELEVISION, LLC; HASBRO, INC.; HASBRO STUDIOS LLC; MATTEL, INC.; POCKETWATCH, INC.; REMKA, INC.; RTR PRODUCTION LLC; AND RFR ENTERTAINMENT, INC. | |
| Defendants. | |

Plaintiff Nichole Hubbard, in her capacity as parent and guardian of her minor child, C.H. and by and through the undersigned attorneys, hereby alleges the following against Defendants on behalf of herself and all other similarly situated. Plaintiff's complaint is based on personal knowledge, information and belief, the investigation of counsel, and public sources.

## NATURE OF THE ACTION

1.      This action arises out of Defendants' unlawful invasion of the right to privacy and reasonable expectation of privacy of millions of children under the age of thirteen from July 1, 2013 through September 4, 2019 (the "Class Period"). Plaintiff brings claims, on behalf of her child and for all other similarly-situated children under the age of thirteen injured by Defendants' conduct, pursuant to California's and other states' common law right to be free from intrusion upon seclusion; pursuant to the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and, for her child and other California residents; pursuant to the right to privacy enumerated in the California Constitution, CAL. CONST. ART. 1, § 1; and for relief from Defendants' unjust enrichment at the expense of minor children.

2.      Defendants Google LLC and YouTube LLC (the "Google Defendants") operate the video-sharing platform YouTube ("YouTube Platform"). The YouTube Platform contains videos created by individuals and entities that have registered with YouTube and uploaded their videos and created a "channel." The YouTube Platform is accessible as a website (www.youtube.com), mobile application, or as an application on a set top streaming device.

3.      Individuals do not have to register or sign in to view videos uploaded to the YouTube Platform. Anyone, regardless of age, who visits the YouTube website can browse through and view videos that have been uploaded. And anyone using a device on which the YouTube app has been installed can watch videos on the YouTube Platform without verifying his or her age.

4.      The YouTube Platform is a top online destination for children. Recent studies have found that YouTube is "the #1 website regularly visited by kids." As a result, popular child product brands, such as toy companies Mattel and Hasbro, among others, maintain YouTube channels and create content to attract child viewers.

5.      The Google Defendants generate revenue from the YouTube Platform from YouTube channels that have opted to be "monetized" by allowing the Google Defendants to place paid advertising

CLASS ACTION COMPLAINT
CASE NO.

on their channels in return for a share of the resulting advertising revenue. During the Class Period, Defendants The Cartoon Network, Inc., Cartoon Network Studios, Inc., CookswirlC, Chu Chu TV Studios, DreamWorks Animation LLC, DreamWorks Animation TV, LLC, Hasbro, Inc., Hasbro Studios LLC, Mattel, Inc., Pocketwatch, Inc., Remka, Inc., RTR Production LLC, and RFR Entertainment, Inc. (collectively, the "Channel Owner Defendants") owned and/or operated monetized YouTube Platform channels. As discussed more fully below, the Google Defendants and each of the Channel Owner Defendants caused the personal information of children viewing their channels to be collected for the purpose of creating individual profiles for those minors to enable Defendants to subject the minors to targeted advertised based on their profiles.

6.     According to Google's Privacy Policy, Google collects personal data and information from individuals who visit one of Google's websites or any website that uses Google's services. Included in the information that Google collected during the Class Period are "persistent identifiers" such as internet protocol addresses and device serial numbers. Collection of persistent identifiers allows Google to develop profiles of individuals over time by tracking their activities across multiple websites. Recent studies have found that Google is capable of tracking activity across 80% of the internet.

7.     The Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 501, *et seq.*, protects children under thirteen years old from having their personal information ("Personal Information") collected unless their parent has first given verifiable consent. Since 2013, persistent identifiers have been included within the definition of "Personal Information" that operators of website and online services are barred by COPPA from collecting from children under thirteen without parental consent.

8.     California and other states provide their citizens with substantial protections against unwarranted invasions of privacy.  In particular, California and 33 other states recognize the common law right to be free from intrusion upon seclusion, as formulated by § 652B of the Restatement (Second) of Torts, which prohibits intentional intrusion upon the solitude or seclusion of another or his or her private affairs or concerns.  In addition, the California Constitution provides California citizens and residents an enumerated right to privacy.

CLASS ACTION COMPLAINT
CASE NO.

9.      Plaintiff's minor child, C.H., watched many of the monetized YouTube channels during the Class Period, including those owned by the Channel Owner Defendants. While C.H. viewed videos on the YouTube Platform, Defendants unlawfully collected C.H.'s Personal Information, including persistent identifiers, and delivered targeted advertisements to C.H. intended to influence C.H.'s behavior.

10.      Defendants surreptitiously collected the Personal Information of C.H. and other minors under the age of thirteen without verifiable parental consent during the Class Period. Defendants' actions violated the privacy rights and reasonable expectations of privacy of C.H. and other similarly-situated young children under thirteen, and constituted unfair and deceptive trade practices.

11.      On September 4, 2019, the Federal Trade Commission and New York State Office of the Attorney General filed a Complaint for Permanent Injunction, Civil Penalties, and Other Equitable Relief (the "FTC Complaint") against the Google Defendants, complaining of the Google Defendants' wrongful collection and misuse of minors' Personal Information.   The Google Defendants entered into a Judgment on September 4, 2019 agreeing to pay $170 million as a civil penalty for their misconduct, but did not agree to immediately cease the misconduct and have publicly stated that they will continue their tracking practices for up to four more months, enabling them to collect and misuse Personal Information about millions of minors for continuing improper financial gain.

12.      Accordingly, Plaintiff brings this action, and the claims for relief asserted below, on behalf of C.H. and the Classes and Subclass (as defined below) of similarly-situated minors under the age of thirteen whose privacy rights have, like C.H.'s, been violated by Defendants, for injunctive and/or equitable relief to stop Defendants' unlawful practices and sequester their unlawfully obtained information, and for compensatory and punitive damages.

## JURISDICTION AND VENUE

13.      This Court has general personal jurisdiction over Defendants Cartoon Networks Studios, Inc., CookswirlC, DreamWorks Animation LLC, DreamWorks Animation Television, LLC, Google LLC, YouTube LLC, Hasbro Studios LLC, Mattel, Inc., and Pocketwatch, Inc. because their principal places of business are in California. Additionally, all Defendants are subject to specific personal

jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this State.

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative class members defined below, and minimal diversity exists because the majority of putative class members are citizens of a state different than Defendants.

15.     This Court also has jurisdiction pursuant to 28 U.S.C §1332(d) because the amount in controversy exceeds $75,000 and is between citizens of different states.

16.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District. Furthermore, Defendants Google LLC and YouTube LLC are headquartered in this District and subject to personal jurisdiction in this District.

## INTRADISTRICT ASSIGNMENT

17.     Assignment to the San Jose Division is proper under Northern District of California Civil Local Rule 3-2(c) because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in Santa Clara County and Defendant Google LLC's principal place of business is located in Santa Clara County, California. Under Civil Local Rule 3-2(e), all civil actions which arise in the County of Santa Clara shall be assigned to the San Jose Division.

## PARTIES

**A.  Plaintiff**

18.     Plaintiff Nichole Hubbard ("Plaintiff") is a natural person and is a resident and citizen of the State of California. Plaintiff is the parent and legal guardian of C.H.

19.     C.H. is a natural person and is a resident and citizen of the State of California. C.H. is five years old.

**B.  Defendants**

   i.  **Google Defendants**

20.     Defendant Google LLC ("Google") is a business incorporated under the laws of the State of Delaware with its principal place of business in Mountain View, California. Google is a wholly-owned subsidiary of Alphabet, Inc. and is the parent company of Defendant YouTube LLC.

21.     Defendant YouTube LLC ("YouTube") is a wholly-owned subsidiary of Google LLC incorporated under the laws of the State of Delaware with its principal place of business in San Bruno, California. At all times mentioned herein, acting alone or in concert with Defendant Google LLC, YouTube LLC has advertised, marketed, and distributed its YouTube video sharing platform to consumers throughout the United States.

### ii.  **Channel Owner Defendants**

#### a.  **Cartoon Network**

22.     Defendant The Cartoon Network, Inc. ("Cartoon Network") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

23.     Defendant Cartoon Network Studios, Inc. ("Cartoon Network Studios") is a Georgia corporation with its principal place of business in Burbank, California.

24.     Collectively, the Cartoon Network and Cartoon Network Studios are referred to as the "Cartoon Network Defendants."

#### b.  **ChuChu TV**

25.     Defendant ChuChu TV Studios ("ChuChuTV") is an Indian company with its principal place of business located in Chennai, India. ChuChuTV availed itself of the benefits of conducting business in the United States during the Class Period by targeting United States residents with ChuChuTV's content.

#### c.  **CookieSwirlC**

26.     Defendant CookieSwirlC is an entity located in Citrus Heights, California.

#### d.  **DreamWorks**

27.     DreamWorks Animation LLC ("DreamWorks") is a Delaware corporation with its principal place of business in Glendale, California.

28.     DreamWorks Animation Television, LLC ("DreamWorks TV") is a Delaware corporation with its principal place of business in Glendale, California.

29.     Collectively, DreamWorks and DreamWorks TV are referred to as the "DreamWorks Defendants."

### e.     Hasbro

30.     Defendant Hasbro, Inc. ("Hasbro") is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island.

31.     Defendant Hasbro Studios LLC ("Hasbro Studios") is a Rhode Island corporation with its principal place of business in Burbank, California.

32.     Collectively, Defendants Hasbro and Hasbro Studios are referred to as the "Hasbro Defendants."

### f.     Mattel

33.     Defendant Mattel, Inc. ("Mattel") is a Delaware corporation with its principal place of business in El Segundo, California.

### g.     Ryan ToysReview

34.     Defendant Remka, Inc. ("Remka") is a Texas corporation with its principal place of business in Houston, Texas.

35.     Defendant RTR Production, LLC ("RTR Production") is a Texas corporation with its principal place of business in Houston, Texas.

36.     Defendant RFR Entertainment, Inc. ("RFR Entertainment") is a Texas corporation with its principal place of business in Houston, Texas.

37.     Defendant Pocketwatch, Inc. ("Pocketwatch") is a Delaware corporation with its principal place of business in Culver City, California.

38.     Collectively, Remka, RTR Production, RFR Entertainment, and Pocketwatch are referred to as the "Ryan ToysReview Defendants."

## FACTUAL BACKGROUND

### I.     Google and YouTube

#### A.     Google

39.     Google is a multinational internet technology and advertising company that owns the world's two most-visited internet webpages: www.google.com and www.youtube.com. Google is best

CLASS ACTION COMPLAINT
CASE NO.

known for operating a search engine that catalogues websites and organizes information on the internet to allow Google users to search the internet's content. Google uses information that it learns from Google users' searches and web traffic patterns on websites it owns (including YouTube) and websites that use Google's advertising services to deliver targeted advertisements. Advertising is Google's primary source of revenue, accounting for approximately $116 billion out of Google's $136.2 billion in revenue in 2018.

**B. YouTube**

40.    YouTube LLC operates an online video-sharing platform, YouTube. YouTube allows its visitors and/or users to view user-generated content that has been uploaded by registered YouTube users to the YouTube Platform.

41.    To upload videos, individuals must register as a YouTube Platform user using a Google account and set up "channel." To create a Google account an individual is asked to provide, *inter alia*, his or her name and date of birth. Google prevents users who identify as under thirteen years old from creating a Google account (an "age gate"). YouTube's terms of service additionally provide that the YouTube Platform is not intended for users under thirteen:

12. Ability to Accept Terms of Service

You affirm that you are either more than 18 years of age, or an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in these Terms of Service, and to abide by and comply with these Terms of Service. In any case, you affirm that you are over the age of 13, as the Service is not intended for children under 13. **If you are under 13 years of age, then please do not use the Service. There are lots of other great web sites for you. Talk to your parents about what sites are appropriate for you.** (emphasis added).

42.    However, notwithstanding the stated age limitation included in YouTube's Terms of Service, YouTube videos are viewable by anyone who accesses the YouTube Platform by visiting www.youtube.com or using the YouTube mobile or streaming device app. Individuals do not have to be registered with Google, nor signed into the YouTube Platform, to view YouTube videos. The Google Defendants do not verify the age of an individual opening an already-installed YouTube mobile app on a mobile device. The Google Defendants have, at all times throughout the Class Period, been well aware that minors under the age of thirteen access YouTube's channels; have actively sought to increase viewers of the YouTube Platform by children under the age of thirteen (all while falsely pretending that such

minors are not permitted to access the Platform); and have sought to exploit, for commercial purposes and gain, the millions of YouTube viewers under the age of thirteen.

## II.    Google's Advertising Practices

43.    Google offers a number of services, such as YouTube and the email service Gmail, free of charge. Google earns revenue from these services via advertising.

### A.    Google's Privacy Policy

44.    The Google Defendants collect personal information from individuals who access the YouTube Platform. Google's Privacy Policy applies to the YouTube Platform and outlines the personal information the Google Defendants collect. Defendants collect, *inter* alia, the following information about YouTube's users:

- **User Activity**: searches run, videos watched, views and interactions with content and ads, voice and audio information, purchase activity, people with whom a user communicates with, browsing history, and activity on third-party sites and apps that use Google services, which includes Google's advertising services);

- **Location Information:** GPS, internet protocol ("IP") address, device sensor data, and data from devices located near a user;

- **Unique Identifiers:** cookie ID, advertising ID, device ID, among others.

45.    Google defines the term "unique identifiers" as a string of characters that can be used to uniquely identify a browser, app, or device."[1] Unique identifiers can arise from a variety of applications, websites, sensors, and devices.

#### a.    Cookies

46.    Google stores some unique identifiers in a text file stored on an individual's browser. These text files are known as "cookies." The type of information stored in cookies can include websites the user has previously visited, the duration of website visits, videos viewed, advertisements viewed, duration of video views, and advertisements clicked, among other information. One popular use of cookies is to enable an individual to visit a series of affiliated websites, for example Gmail and YouTube,

---

[1] Google Privacy Policy, Google, https://policies.google.com/privacy?hl=en-US (accessed Oct. 21, 2019).

CLASS ACTION COMPLAINT
CASE NO.

without having to re-enter his or her user name and password on each. Each cookie contains a string of characters, or a "cookie ID," that allows the website or service to recognize that specific browser. Cookies, and the unique identifiers stored in cookies can generally be deleted.

### b. Persistent Identifiers

47.     Some data and/or information Google collects cannot be easily deleted or reset. Because these data points remain constant, or "persist," they are colloquially referred to as "persistent identifiers." More traditional examples of persistent identifiers are social security numbers and phone numbers.  Since persistent identifiers are difficult to change or reset they are seen by advertisers as a more reliable method of identifying and tracking users over time than cookies.

48.     One example of a persistent identifier collected by Google is a user's IP address. An IP address is a numerical label assigned to each device connected to a computer network, such as the internet. Another example of a persistent identifier collected by Google is a device's International Mobile Equipment Identity ("IMEI") number. Every mobile phone and smartphone is assigned a unique IMEI which cannot be changed.

49.     The Google Defendants use persistent identifiers to track individuals' internet behavior. For example, a website that uses Google's advertising services to deliver ads to its visitors will send Google its visitors' IP address and/or IMEI number. When another website that uses Google's advertising services sends Google the same IP address or IMEI number, Google knows that individual has visited both websites. Recent studies have found that Google is capable of tracking individuals *over 80% of the internet*.[2]

50.     Google uses this information to build detailed individual profiles which include identifiers that correlate with individual users. Most individuals have no idea that Google is tracking their activity across 80% of the internet. The data Google gathers is stitched into a single profile of a user which gives Google the most accurate, up-to-date, snapshot of a user's attributes and behaviors. Google uses this data to deliver targeted advertisements to YouTube video viewers based on preferences inferred from their

---

[2] Steven Englehardt & Arvin Narayanan, *Online Tracking: A 1-million-site Measurement and Analysis*, Princeton University WebTAP Project, http://randomwalker.info/publications/OpenWPM_1_million_site_tracking_measurement.pdf (accessed Oct. 21, 2019) (emphasis added).

CLASS ACTION COMPLAINT
CASE NO.

profiles. User profiles such as those developed by Google have been called the "holy grail" of advertising[3] and allow Google to charge advertisers increased advertising rates.

51.     Google uses unique and persistent identifiers to track individuals' activity on any webpage that is using Google's advertising services. An individual's activity on those websites is shared with Google:

**Your activity on other sites and apps**

This activity might come from your use of Google services, like from syncing your account with Chrome or your visits to sites and apps that partner with Google. Many websites and apps partner with Google to improve their content and services. For example, a website might use our advertising services (like AdSense) or analytics tools (like Google Analytics), or it might embed other content (such as videos from YouTube). These services may share information about your activity with Google and, depending on your account settings and the products in use (for instance, when a partner uses Google Analytics in conjunction with our advertising services), this data may be associated with your personal information.

52.     Google states that it uses these profiles to deliver "more relevant search results and ads" to YouTube video viewers.[4] To illustrate this point, Google offers the following example: "if you watch videos about baking on YouTube, you may see more ads which relate to baking as you browse the web."[5]

53.     Google did not, and does not, have a separate privacy policy for children under the age of thirteen. Google applied the data collection practices described herein to each individual who visited YouTube, Google, or any website using any of Google's services during the Class Period, irrespective of that individual's age.

---

[3] Randell Cotta, Sr., *Overcoming the Last Hurdle in the Quest for the "Holy Grail" of Marketing*, KD NUGGETS, https://www.kdnuggets.com/2017/02/quest-holy-grail-marketing.html (accessed Oct. 21, 2019).

[4] *Id.*

[5] *Ads you'll find most useful*, Google Privacy & Terms, https://policies.google.com/privacy/example/ads-youll-find-most-useful?hl=en (accessed Oct. 16, 2019) (emphasis added).

**B.      YouTube Channel Monetization**

54.      YouTube channel owners that pass a viewership threshold set by the Google Defendants can choose to "monetize" their channel by allowing Google to run advertisements on the channel owner's channel. Advertisements can take the form of a video clip played before, during, or after the channel owner's video is played, or can be displayed as a banner. The Google Defendants and the owners of monetized YouTube channels share such advertising revenue. The Google Defendants keep 45% of the advertising revenue and the channel owner receives 55%.[6]

**C.      Google's Targeted Advertising Techniques**

55.      Advertising on YouTube can either be behavioral or contextual targeting. Behavioral targeting is the delivery of advertisements to individuals based on that user's personal information, which is tracked across multiple websites, apps, and devices. The information Google Defendants collect is incorporated into an algorithm which can infer which types of advertisements are likely to have the greatest impact on the user associated with the information (*i.e.,* most likely to be clicked).

56.      Behavioral targeting is the default method of advertising employed by Google on monetized channels because it is the most lucrative for both the Google Defendants and for YouTube channel owners. From the user's perspective, it is also the most intrusive form of targeting. Owners of monetized channels can opt out of behavioral targeting. If a channel owner opts out, Google will employ contextual targeting.

57.      Contextual targeting is a process by which Google matches advertisements to relevant YouTube channels using keywords provided by the advertiser. Google's system analyzes the content of a YouTube channel to determine its central theme, which is then matched to an advertiser's advertisements using a variety of factors including keywords and topic selections. Contextual targeting does not rely on user-specific data to provide ads.

---

[6] *See* Eric Rosenberg, *How YouTube Ad Revenue Works*, INVESTOPEDIA (Oct. 7, 2018), https://www.investopedia.com/articles/personal-finance/032615/how-youtube-ad-revenue-works.asp (accessed Oct. 24, 2019).

CLASS ACTION COMPLAINT
CASE NO.

58.     Behavioral targeting is thought be more effective than contextual targeting. Google thus pays YouTube channel owners more for allowing Google to run behavioral targeted advertisements than contextual targeting.

### III.  California's and Other States' Common Law Right to be Free from Intrusion Upon Seclusion and the California Constitution's Enumerated Right to Privacy

59.     "Invasion of privacy has been recognized [in California] as a common law tort for over a century." *Matera v. Google Inc.*, 15-CV-0402, 2016 WL 5339806, at *10 (N.D. Cal, Sept. 23, 2016) (citing Restatement (Second) of Torts §§ 652A-I for the proposition "that the right to privacy was first accepted by an American court in 1905, and 'a right to privacy is now recognized in the great majority of the American jurisdictions that have considered the question'"). *Id.* "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." Samuel D. Warren & Louis Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193, 198 (1890).

60.     The Second Restatement of Torts recognizes the same privacy rights through its tort of intrusion upon seclusion, explaining that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652B (1977). The Supreme Court has similarly recognized the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right to privacy older than the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965).  In addition to California, 33 other states recognize the common law cause of action for intrusion upon seclusion, and California and the other 33 states all adhere to the formulation and elements of that cause of action set forth in § 652B of the Restatement (Seocnd) of Torts based on elements of the cause of action similar to the elements adopted in California.[7]

61.     California amended its constitution in 1972 to specifically enumerate a right to privacy in its very first section, and courts have recognized that this afford individual's a private right of action for

---

[7] The other 33 states are Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia.

CLASS ACTION COMPLAINT
CASE NO.

invasions of their privacy. *See* CAL. CONST. ART. I, § 1. The California Supreme Court has recognized the fundamental injuries at stake in privacy violations, explaining as follows:

> [A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity . . . A [person] . . . whose conversations may be overhead at the will of another . . . is less of a [person], has less human dignity, on that account. He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

*Shulman v. Grp. W Prods.*, Inc., 18 Cal. 4th 200, 231 (1998) (quoting Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. REV. 962, 973-74 (1964)); *see also Gill v. Curtis Pub. Co.*, 38 Cal. 2d 273, 276 (1952) ("Recognition has been given of a right to privacy, independent of the common rights to property, contract, reputation and physical integrity... In short, it is the right to be let alone.") (internal quotation marks omitted).

## IV.   The Children's Online Privacy Protection Act of 1998

62.     Congress passed COPPA in 1998 in response to concerns that children's online activities were being tracked by operators of websites and online services. Specifically, COPPA is intended to "maintain the security of personally identifiable information of children collected online" and to "protect children's privacy by limiting the collection of personal information from children without parental consent."[8] COPPA provides, in pertinent part, that:

> It is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed [by the Federal Trade Commission].

15 U.S.C. § 6502(a).

63.     COPPA applies to any operator of a commercial website or online service directed to children under thirteen years of age that collects, uses, and/or discloses personal information from children. The FTC has interpreted COPPA's definition of "website or online service" to include individual channels on a general audience platform. Thus, according to the FTC, "content creators and channel owners" are both "standalone 'operators' under COPPA, subject to strict liability for COPPA

---

[8] 144 CONG. REC. S12787.

CLASS ACTION COMPLAINT
CASE NO.

violations."[9] Additionally, the FTC considers third parties with actual knowledge that is it collecting personal information from users of a child-directed site or service as operators under COPPA.

64.     In order to determine whether a website or online service is "directed to children" the FTC will:

> [C]onsider [the website's or online service's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.

16 CFR § 312.2

65.     Websites or online services that collect personal information from users of other child-directed websites or online services are deemed as "child-directed" if the website or online service "has actual knowledge that it is collecting personal information directly from users of another Web site or online service directed to children." 16 C.F.R. § 312.2.

66.     COPPA defines a "child" as an individual under the age of thirteen. 15 U.S.C. § 6501(a). In relevant part, the FTC regulations require an operator to disclose information collection practices and "obtain verifiable parental consent for [any] collection, use, or disclosure of personal information from children." *Id.* § 6502(b)(1)(A); *see* 16 C.F.R. § 312.5(a).

67.     COPPA prohibits the collection of the following information ("Personal Information") from children under thirteen without parental consent:

        a.   full name;

        b.   home or physical address;

        c.   online contact information such as an email address or other identifier;

        d.   telephone number;

        e.   social security number;

---

[9] Statement of Joseph J. Simons & Christine S. Wilson, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf (accessed Oct. 21, 2019).

CLASS ACTION COMPLAINT
CASE NO.

f.   persistent identifier that can be used to recognize a user over time and across different sites, including a cookie number, an IP address, a processor or device serial number, or a unique device identifier;

g.   Photo, video, or audio file containing a child's image or voice; and

h.   Geolocation information sufficient to identify a street name and city or town.

68.   COPPA thus prohibits, *inter alia*, the collection of persistent identifiers for behavioral advertising absent notice and verifiable parental consent. 16 C.F.R. §§ 312.5(c)(7), 312.2.

69.   Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under" 15 U.S.C. § 57a.

70.   When videos are viewed on the YouTube Platform by children under the age of thirteen, Defendants do not disclose that they are tracking, profiles, and targeting children and do not obtain verified parental consent to do so.

## V.   The California Unfair Competition Law

71.   The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, ("UCL") prohibits unlawful, unfair, or fraudulent business acts or practices, or false, deceptive, or misleading advertising.

72.   In proscribing "any unlawful" business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. Courts have held that the UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999).

## SUBSTANTIVE ALLEGATIONS

## I.   The Google Defendants Knowingly Targeted Children Under Thirteen on YouTube

73.   On September 4, 2019, Google issued a statement in conjunction with its settlement with the FTC and New York Attorney General's office for alleged violations of COPPA that included, *inter alia*, the following:

> From its earliest days, YouTube has been a site for people over 13, but with a boom in family content and the rise of shared devices, the likelihood of children watching without supervision has increased. We've been taking a hard look at areas where we can do more

15

CLASS ACTION COMPLAINT
CASE NO.

to address this, informed by feedback from parents, experts, and regulators, including COPPA concerns raised by the U.S. Federal Trade Commission and the New York Attorney General that we are addressing with a settlement announced today.[10]

74.     But the facts establish that the Google Defendants have always targeted children as a core audience. During the Class Period, the Google Defendants solicited and encouraged the creation of content that was directly aimed at children under thirteen and made that content available on the YouTube Platform.

75.     For example, YouTube created a rating system whereby channel owners could signal that their videos were safe for children under thirteen. The ratings options were **Y (generally intended for ages 0-7)**; G (intended for any age); PG (generally intended for ages 10+); Teen (generally intended for ages 13+); MA (generally intended for ages 16+); and X (generally intended for ages 18+). At one point, YouTube also used the classification "Made for Kids" for certain videos shown on YouTube. YouTube encouraged content creators to accurately categorize their content so that they could properly target children viewers with advertisements.

76.     YouTube also created the "YouTube Academy" to offer advice on creating "family-friendly" content to YouTube channel owners to enable them be more successful (*i.e.*, get more views and earn more money). As the screenshot below formally contained on YouTube's website shows (the page has now been removed from YouTube's website), the YouTube Academy provided specific guidance on creating content intended for young children on the YouTube Platform (not YouTube Kids):

---

[10] *An update on kits and data protection on YouTube*, YouTube Official Blog, Sept. 4, 2019, https://youtube.googleblog.com/2019/09/an-update-on-kids.html (accessed Oct. 22, 2019).

CLASS ACTION COMPLAINT
CASE NO.



77.     The Google Defendants also misleadingly used their creation of YouTube Kids as a guise to generate content for children under thirteen on the YouTube Platform. All content posted on YouTube Kids was also available on the general YouTube Platform during the Class Period. To promote the creation of content for children, the Google Defendants provided a 94-page field guide to help content creators produce the "best content for children."[11] But the Google Defendants knew that far fewer children use YouTube Kid's Platform compared to the YouTube Platform. For example, an August 2019 study that ranked 350 children's brands across 19 consumer categories ranked YouTube #1 and YouTube

---

[11] *YouTube Kids Field Guide*, YouTube, https://static.googleusercontent.com/media/www.youtube.com/en//yt/family/media/pdfs/creating-for-youtube-kids-fieldguide.pdf (accessed Oct. 22, 2019).

Kids #50.[12] Another recent study found that almost twice as many children used the YouTube Platform (83%) as used YouTube Kids (45%).[13]

78.     Additional studies confirm that the Google Defendants' efforts throughout the Class Period to make YouTube the "new 'Saturday Morning cartoons'" were successful. [14] For example:

- A 2014 study by The Marketing Store and Kid Say ("2014 Global Kids Study") found that YouTube was voted as the unanimous favorite website of kids 2-12 and that 93% of tweens (children aged 8-11) used YouTube;[15]

- A 2015 study by Nielson MRI ("2015 Nielson Study") found that YouTube was the "leader in reaching children age 6-11 against top TV channels. The study found that 63% of children age 6-11 watch YouTube, tying TV channel Nickelodeon and beating the Disney Channel (57%) and Cartoon Network (49%);[16]

- A 2016 study by LMX ("2016 LMX Study") found that YouTube was "the #1 website regularly visited by kids"; beating out the likes of Disney, Cartoon Network, PBS, and Amazon;[17]

---

[12] *Smarty Pants® Study Finds YouTube Is #1 Brand Among U.S. Kids*, PR NEWSWIRE (Aug. 1, 2019), https://www.prnewswire.com/news-releases/smarty-pants-study-finds-youtube-is-1-brand-among-us-kids-300894505.html (accessed Oct. 22, 2019).

[13] Alexandra Whyte, *The surprising social sites where kids spend their time*, KIDSCREEN (Apr. 4, 2019), http://kidscreen.com/2019/04/04/the-surprising-social-sites-where-kids-spend-their-time/ (accessed Oct. 22, 2019).

[14] *Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief – Ex. C*, No. 19-cv-2642, ECF No. 3-1, Sept. 6, 2019 ("FTC Exhibit C").

[15] *Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief – Ex. B*, No. 19-cv-2642, ECF No. 3-1, Sept. 6, 2019 ("FTC Exhibit B").

[16] *Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief – Ex. A*, No. 19-cv-2642, ECF No. 3-1, Sept. 6, 2019 ("FTC Exhibit A").

[17] FTC Exhibit C.

CLASS ACTION COMPLAINT
CASE NO.

- A July 2016 Google Consumer Survey ("2016 Google Consumer Survey") of 1683 parents of children ages 2-14 found that "YouTube is the #1 source where children discovery new toys + games;"[18]

- A 2017 study by Smarty Pants ("2017 Smart Pants Study") found that 96% of children ages 6-12 were aware of YouTube and that 94% either love (71%) or like (24%) YouTube.[19] The same study found that 90% of the children that know YouTube say they use it, 83% of whom use it *daily*;[20] and

- A 2019 by Pew Research ("2019 Pew Study") study found that videos that "videos that were directly aimed at a young audience and *also* featured a child under the age of 13 were more popular than any other type of content identified in [the] analysis as measured by view counts."[21]

79.     The Google Defendants were aware of and used these studies to market themselves to companies that make toys and others children's products, including the Hasbro Defendants and Mattel, as a top destination for children under thirteen. For example, Google gave a presentation entitled "Insight on Families Online" to Mattel, owner of the Fisher-Price line of toys, Barbie, Hot-Wheels, among others and cited the 2015 Nielsen Study.[22] Mattel's YouTube presence includes several channels directed towards children under thirteen, including: Barbie, Monster High, and Thomas & Friends.

80.     Google also included a section called "Stat Pack: Additional insight into mobile usage among parents + children" in a presentation to the Hasbro Defendants, maker of GoBots, Lite-Brite, My Little Pony, Play-Doh, Pokémon, Trolls, among other products. In the presentation, Google cited the

---

[18] *Id.*

[19] Smarty Pants, *2017 Brand Love Study: 2017 Kid & Family Trends*, at 7 (2017), https://daks2k3a4ib2z.cloudfront.net/5435eb4d1e426bb420ac990f/5a316f4f4a2f7d000196532b_2017%20Kid%20and%20Family%20Trends%20Report%20EXCERPT.PDF (emphasis added).

[20] *Id.*

[21] Patrick Van Kessel, *A Week in the Life of Popular YouTube Channels*, Pew Research Center, July 25, 2019, https://www.pewinternet.org/2019/07/25/a-week-in-the-life-of-popular-youtube-channels/ (accessed Oct. 16, 2019) (emphasis in original).

[22] FTC Exhibit A.

CLASS ACTION COMPLAINT
CASE NO.

2014 Global Kids Study.[23]  In a second presentation to the Hasbro Defendants, Google included a section entitled "2016 Kids + Family Digital Trends" and cited both the 2016 LMX Study and Google's own 2016 Google Consumer Survey.[24]

## II.   Economic Incentives Drove the Channel Owner Defendants to Bait and Exploit Children Using Nursery Rhymes, Cartoons, and Other Child-Directed Content.

81.    The Channel Owner Defendants recognized the economic benefits of creating child-directed YouTube content and elected to monetize their YouTube channels (*i.e.*, allow behavioral targeted advertising to be shown) during the Class Period. As discussed above, the Google Defendants shared 55% of the advertising revenue generated by the Channel Owner Defendants' with them. All Defendants therefore economically benefited when the Channel Owner Defendants content successfully lured children under thirteen on to the YouTube Platform.

82.    The Channel Owner Defendants accomplished this by creating content intentionally designed to attract children under thirteen, including content features nursery rhymes and children's songs, toys, and already-popular cartoons. The Google Defendants knew this, as confirmed by the Attorney General of New York's discovery that a "well-known channel owner . . . repeatedly informed Google and YouTube that its videos were directed to children younger than 13-years-old."[25]

83.    For example, Defendant ChuChuTV created the monetized ChuChuTV Nursey Rhymes & Kids Songs in 2013[26] and opted to monetize the ChuChuTV Nursery Rhymes & Kids Songs YouTube channel during the Class Period. Today, ChuChuTV Nursery Rhymes & Kids Songs has over 27 million

---

[23] FTC Exhibit B.

[24] FTC Exhibit C.

[25] Letitia James, *Google and YouTube to Pay Record Figure For Illegally Tracking And Collecting Personal Information From Children,* New York State Office of the Attorney General, Sept. 4, 2019, https://ag.ny.gov/press-release/2019/ag-james-google-and-youtube-pay-record-figure-illegally-tracking-and-collecting (accessed Oct. 21, 2019).

[26]   Alexis C. Madrigal, *Raised by* YouTube, THE ATLANTIC (Nov. 2018), http://www.theatlantic.com/magazine/archive/2018/11/raised-by-youtube/570838/ (accessed Oct. 21, 2019).

CLASS ACTION COMPLAINT
CASE NO.

subscribers and 18 billion views.[27] ChuChuTV Nursery Rhymes & Kids Songs' homepage features digital animal cartoons and cartoons of children. The "About" section of ChuChuTV Nursery Rhymes & Kids Songs' YouTube channel states:

> ChuChuTV is designed to engage children through a series of upbeat nursery rhymes and educational songs with colorful animations. Our ChuChuTV characters will teach kids their favorite nursery rhymes, colors, shapes, numbers etc. and more importantly good human values which we feel is very important for the next generation champions.[28]

84.    Defendant ChuChuTV's first YouTube video featured a character named Chu Chu modeled after ChuChuTV's founder's baby daughter (whose nickname was Chu Chu) "dancing to the popular . . . Indian nursery rhyme "Chubby Cheeks ("Curly hair, very fair / Eyes are blue, lovely too / Teacher's pet, is that you?")."[29] Within a few weeks of the upload of its first video, ChuChuTV had amassed 300,000 views and 5,000 followers.[30] Despite the fact that ChuChuTV's video was clearly directed towards young children—whom the Google Defendants claim are not allowed to and do not use YouTube—a YouTube representative contacted ChuChuTV shortly after its launch to say "[y]ou guys are doing some magic with your content."[31]

85.    The Ryans ToysReview Defendants operate the YouTube channel Ryans ToysReview which features videos of now 8-year-old Ryan Kaji unboxing toys and others children's products. The Ryans ToysReview Defendants opted to monetize the Ryans ToysReview channel during the Class Period. Ryan ToysReview's first video was posted in 2015. Since then, with the help of Defendant

---

[27]    ChuChu   TV   Nursery   Rhymes   &   Kids   Songs,   *About   Section*,   YOUTUBE, https://www.youtube.com/user/TheChuChuTV/about (accessed Oct. 21, 2019).

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

CLASS ACTION COMPLAINT
CASE NO.

Pocketwatch, a kids-entertainment company, Ryan ToysReview has become the second most popular YouTube channel with approximately 22.5 million subscribers and over 33 billion views.[32]

86.     Ryan ToysReview's "About" section describes itself as "Ryan loves Toys. Toys Review for kids by a kid! Join Ryan to see him play with toys and review toys for kids! Ryan will also love doing fun and easy science experiments for kids!" Ryan ToysReview generated over $11 million in revenue in 2018 and over $22 million in 2019 to date.[33] Because the Google Defendants take 45% of all ad revenues,[34] the Google Defendants earned almost $15 million from Ryan ToysReview alone over the past two years.

87.     The Hasbro Defendants created the My Little Pony Official YouTube channel in 2013 and opted to monetize the My Little Pony Official YouTube channel during the Class Period. The Hasbro Defendants' YouTube offerings include the following channels: Play-Doh, Official Play-Doh How To Videos, Baby Alive Official, NERF Official, and TRANSFORMER OFFICIAL. According to Hasbro, the target demographic for My Little Pony is children ages 5-8. My Little Pony's About section reads as follows:

> Welcome to the official home of My Little Pony & Equestria Girls! Discover the magic of friendship with Twilight Sparkle, Rainbow Dash, Pinkie Pie, Rarity, Fluttershy, Applejack and friends. Join the #RainbowSquad and subscribe today![35]

88.     Defendant CookieSwirlC created the CookieSwirlC YouTube channel in 2013 and opted to monetize the CookieSwirlC YouTube channel during the Class Period. Today, CookieSwirlC is one of YouTube's most popular channels with approximately 12.3 million subscribers and over 12 billion

---

[32]  Ryan ToysReview, *About Section*, YOUTUBE, https://www.youtube.com/channel/UChCGJGh Z9SOOHvBB0Y4DOO_w/about, (accessed Oct. 21, 2019).

[33] Amanda Perelli, *The world's top-earning YouTube star is an 8-year-old boy who made $22 million a single year reviewing toys,* BUSINESS INSIDER, https://www.businessinsider.com/8-year-old-youtube-star-ryan-toysreview-made-22-million-2019-10 (accessed Oct. 21, 2019).

[34]  Eric Rosenberg, *How YouTube Ad Revenue Works*, INVESTOPEDIA (Oct. 7, 2018), https://www.investopedia.com/articles/personal-finance/032615/how-youtube-ad-revenue-works.asp.

[35] My Little Pony, About section, YOUTUBE, https://www.youtube.com/user/mlpequestriagirls/about (accessed Oct. 21, 2019).

CLASS ACTION COMPLAINT
CASE NO.

views.[36] CookieSwirlC videos typically feature the unboxing of a popular toy or children's product together with a demonstration of its features and capabilities. CookieSwirlC's "About" section states that "CookieswirlC's mission is to inspire creativity and spread positivity around the world through fun uplifting videos that encourage learning and imagination."[37]

89.     Mattel operated several monetized YouTube channels during the Class Period, including Barbie, Monster High, Hot Wheels, and Thomas & Friends. Collectively, Mattel's YouTube channels have tens of millions of subscribers and billions of views. Each channel shows child-directed content features popular children's toys belonging to Mattel's brands. For example, the Barbie YouTube channel features animated videos of Barbie and related toys, including the "Junior Rainbow Princesses." The Barbie YouTube channel also features episodes of "Barbie Dreamtopia," a show that, according to the FTC and New York Attorney General, Mattel described as "targeting 3-6 year olds."

90.     The Cartoon Network Defendants operated several monetized YouTube channels directed towards children under thirteen during the Class Period, including Steven Universe, the Powerpuff Girls, and Teen Titans Go. The Cartoon Network Defendants' YouTube channel has over 6 million subscribers and its content has been viewed over 5.3 billion times. According to the FTC and New York Attorney General, the Google Defendants selected a clip from the Cartoon Network YouTube channel in a "Creating for Kids Playbook," as an example of family-friendly content and also marketed the Cartoon Network YouTube channel as a "popular YouTube Channel[] kids are watching."

91.     The DreamWorks Defendants operated the child-directed monetized DreamWorksTV YouTube Channel during the Class Period. The DreamWorks TV YouTube channel's content included several popular children's shows, including: Race to the Edge, Trollhunters, and Shrek. The "About" section of the DreamWorks TV YouTube channel describes the channel as "made just for kids!" throughout the Class Period. The DreamWorksTV YouTube channel has 6.3 million subscribers and its content has been viewed over 4.7 billion times.

---

[36]   CookieSwirlC, *About section*, YOUTUBE, https://www.youtube.com/user/CookieSwirlC/about (accessed Oct. 21, 2019).

[37] *Id.*

CLASS ACTION COMPLAINT
CASE NO.

92.     The design and marketing of channels such as ChuChuTV Nursery Rhymes & Kids Songs, Ryan ToysReview, My Little Pony Official, and CookieSwirlC, Barbie, Monster High, among others, as well as the channels' own categorization of their videos, clearly provided notice to the Google Defendants that children under thirteen were viewing these channels.

93.     C.H. watched many of the Channel Owner Defendants' YouTube channels during the Class Period, including CookieSwirlC (owned by CookieSwirlC), ChuChu TV Nursey Rhymes & Kids Songs (owned by ChuChuTV Studios), My Little Pony Official (owned by Hasbro), and Ryan ToysReview (owned and operated by Remka, Inc, RTR Production LLC, RFR Entertainment, Inc. and Pocketatch, Inc.), and was therefore subjected to the Google Defendants' behavioral targeting, which included the collection of C.H.'s Personal Information.

## III. Economic Incentives Drove the Google Defendants to Unlawfully Track, Profile, and Target Children Under Thirteen with Behavioral Targeting

94.     Despite their knowing collection of Personal Information about children under the age of thirteen, the Google Defendants disclaimed any obligation to comply with federal and state laws designed to protect children's privacy by claiming no children under the age of thirteen watched videos on the YouTube Platform. The Google Defendants did so because they knew they could not both abide by federal and state law *and* offer behavioral targeting of children under thirteen.

95.     As the Attorney General of New York put it, the Google Defendants knew that stopping their illegal tracking, profiling, and targeting practices would result in a substantial loss of revenue:

> Google and YouTube knowingly and illegally monitored, tracked, and served targeted ads to young children just to keep advertising dollars rolling in . . . These companies put children at risk and abused their power, which is why we are imposing major reforms to their practices and making them pay one of the largest settlements for a privacy matter in U.S. history.[38]

96.     Faced with a choice between complying with federal and state privacy laws and their advertising revenue, the Google Defendants chose the money.

---

[38] *Google and YouTube to Pay Record Figure For Illegally Tracking And Collecting Personal Information From Children,* NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL, Sept. 4, 2019, https://ag.ny.gov/press-release/2019/ag-james-google-and-youtube-pay-record-figure-illegally-tracking-and-collecting (accessed Oct. 21, 2019).

97.     The Google Defendants collected the Personal Information of children under the age of thirteen who viewed monetized YouTube channels, including the Channel Owner Defendants' channels. This included the collection of persistent identifiers, which the Google Defendants used to track children under thirteen across the internet, internally develop a profile of the inferred preferences and interests of those children, and target those children with advertisements designed to influence their behavior.

98.     Persistent identifiers have been included in the definition of "Personal Information" subject to COPPA since 2013. Defendants' collection of the persistent identifiers of children under thirteen allowed them to develop detailed profiles of children. As discussed above, Google's vast reach across the internet means that nearly all of a child's online activity was subject to being tracked by Google.

99.     The Google Defendants used these profiles to manipulate and exploit children. The Google Defendants make more money through YouTube by capturing more of an individual's time. The Google Defendants thus manipulated children using their Personal Information into extending their time on the YouTube Platform, which in turn increased the number of advertisements shown to them and increased the revenue earned by the Google Defendants and the Channel Owner Defendants.

100.    The Google Defendants manipulated children under thirteen into extending the time they used the YouTube Platform by tracking them across the internet, collecting their Personal Information, plugging the Personal Information gathered into sophisticated algorithms, and then showing children videos on the YouTube Platform which the Google Defendants' algorithms calculated would keep them watching.

101.    The following is a graphic representation of how the Google Defendants utilized deep learning and neural networks to suggest videos likely to keep C.H. and other children under thirteen engaged on the YouTube Platform:[39]

---

[39] Paul Covington, Jay Adams & Emre Sargin, *Deep Neural Networks for YouTube Recommendations*, GOOGLE AI (2016), https://storage.googleapis.com/pub-tools-public-publication-data/pdf/45530.pdf.

CLASS ACTION COMPLAINT
CASE NO.

1
2
3
4
5
6
7
8
9
10
11
12



Source: Covington, Adams, and Sargin (2016)

The Google Defendants' algorithms allow them to "make recommendations from a very large corpus (millions) of videos while still being certain that the small number of videos appearing on the device are personalized and engaging for the user."[40]

102.    The YouTube Platform's recommendation feature can extend what was intended to be a single video view into a marathon viewing session whereby the YouTube Platform provides video after video for viewer consumption. This "rabbit hole" effect has been well documented. For example, a New York Times report recently found that YouTube's "recommendation feature boosts fringe videos to the mainstream and can unwittingly help spread conspiracies and misinformation about dangerous diseases, jeopardizing public health."[41]

103.    The Google Defendants' use of algorithms to capture more of a children's time allowed the Google Defendants to show those children more behavior-based advertising, for which the Google Defendants charge advertisers a substantial premium over contextual based advertising.

_____

[40] *Id.*

[41] Max Fisher & Amanda Taub, *What is YouTube Pushing You to Watch Next?*, N.Y. TIMES (Aug. 9, 2019), https://www.nytimes.com/2019/08/09/the-weekly/youtube-brazil-far-right.html (accessed Oct. 22, 2019).

CLASS ACTION COMPLAINT
CASE NO.

104.    Plaintiff and the Classes and Subclass have been deprived of, and thereby lost, the economic value of their Personal Information. As Google's advertising revenue (of $116 billion in 2018) tellingly demonstrates, this information has tremendous value. Multiple published analyses and studies have placed a value in excess of $200 on an individual's Personal Information, and one individual sold his data for $2,733 on Kickstarter.  Plaintiff, the Classes, and the Subclass can no longer realize the economic value of their Personal Information because their Personal Information has been collected, analyzed, and acted upon by Defendants.

105.    Defendants' illegal collection of children's Personal Information has given them a significant "first mover" advantage that cannot be undone. The Google Defendants operate the first and second-most visited websites in the world and as a result of their unlawful conduct the Google Defendants' algorithms now incorporate ill-gotten data from billions of children's YouTube video views. The deep insights gleaned from these viewing sessions will enable the Google Defendants to keep children viewing the YouTube Platform, and will solidify the Google Defendants' dominance in the market for child-related content.

## IV.    Defendants' Tracking, Profiling, Targeting and Exploitation of Children Without Parental Consent Violated Plaintiff's and Class Members' Reasonable Expectations of Privacy and is Highly Offensive

106.    Defendants' conduct in violating privacy rights and reasonable expectations of privacy of Plaintiff and Class members is particularly egregious because Defendants violated laws designed to protect a group—children—that society has long recognized as vulnerable to exploitation and manipulation.

107.    Parents' interest in the care, custody, and control of their children is one of the most fundamental liberty interests recognized by society. It has long been recognized that parents should maintain control over who interacts with their children and how.

108.    Because children are more susceptible to deception and exploitation than adults, society has recognized the importance of providing added legal protections for children, often in the form of parental consent requirements like COPPA.

CLASS ACTION COMPLAINT
CASE NO.

109.     Children develop the ability to use smartphones and tablets by the age of two.[42] Almost every family with a child younger than eight in America has a smartphone (95%) and/or tablet (78%) in the household.[43] Often, children are given their own devices, with one 2015 study finding that by age four, 75% of children had their own tablet, smartphone, or iPod.[44] This proliferation of internet-connected device usage by children under thirteen renders Defendants' conduct highly offensive and an egregious breach of social norms

110.     For example, a survey conducted by the Center for Digital Democracy ("CDD") and Common Sense Media of more than 2,000 adults found overwhelming support for the basic principles of privacy embedded in the California Constitution, state common law, as well as federal law.[45] The parents who were polled responded as follows when asked whether they agreed or disagreed with the following statements:

a.     "It is okay for advertisers to track and keep a record of a child's behavior online if they give the child free content."

     i.   5 percent strongly agree

     ii.  3 percent somewhat agree

     iii. 15 percent somewhat disagree

     iv.  **75 percent strongly disagree**

---

[42] Elyse Wanshel, *10 Reason Why You Shouldn't Give a Child a Smartphone or Tablet*, LITTLE THINGS, https://www.littlethings.com/reasons-not-to-give-children-technology (accessed Oct. 21, 2019).

[43] Victoria Rideout, *The Common Sense Census: Media Use By Kids Age Zero To Eight*, COMMON SENSE MEDIA (2017) at 3, https://www.commonsensemedia.org/research/the-common-sense-census-media-use-by-kids-agezero-to-eight-2017 (accessed Oct. 21, 2019).

[44] *The Dangers of YouTube for Kids*, THE ATLANTIC (Nov. 2018), https://www.theatlantic.com/magazine/archive/2018/11/raised-by-youtube/570838/ (accessed Oct. 22, 2019)("[A] team of pediatricians at Einstein Medical Center, in Philadelphia, found that YouTube was popular among device-using children under the age of 2. Oh, and 97 percent of the kids in the study had used a mobile device. By age 4, 75 percent of the children in the study had their own tablet, smartphone, or iPod. And that was in 2015.).

[45] Center for Digital Democracy, *Survey on Children and Online Privacy, Summary of Methods and Findings*, https://www.democraticmedia.org/sites/default/files/COPPA%20Executive%20Summary%20and%20Findings.pdf (accessed Oct. 21, 2019).

28
CLASS ACTION COMPLAINT
CASE NO.

v.   3 percent do not know or refused to answer

b.   "As long as advertisers don't know a child's name and address, it is okay for them to collect and use information about the child's activity online."

    i.   • 3 percent strongly agree

    ii.   • 17 percent somewhat agree

    iii.   • 10 percent somewhat disagree

    iv.   **• 69 percent strongly disagree**

    v.   • 1 percent do not know or refused to answer

c.   "It is okay for advertisers to collect information about a child's location from that child's mobile phone."

    i.   6 percent strongly agree

    ii.   3 percent somewhat agree

    iii.   7 percent somewhat disagree

    iv.   **84 percent strongly disagree**

    v.   less than 1 percent do not know or refused to answer

d.   "Before advertisers put tracking software on a child's computer, advertisers should receive the parent's permission."

    i.   **89 percent strongly agree**

    ii.   5 percent somewhat agree

    iii.   2 percent somewhat disagree

    iv.   4 percent strongly disagree

    v.   less than 1 percent do not know or refused to answer

e.   "There is a federal law that says that online sites and companies need to ask parents' permission before they collect Personal Information from children under age 13. Do you think the law is a good idea or a bad idea?"

    i.   **93 percent said it was a good idea**

    ii.   6 percent said it was a bad idea

    iii.   1 percent did not know or refused to answer.

29

CLASS ACTION COMPLAINT
CASE NO.

111.    Defendants' unlawful collection of Personal Information and manipulative YouTube Platform recommendation feature substantially affects the amount of time children under thirteen spent on the YouTube Platform. For example, a recent study found that while 60% of kids use the YouTube Platform search bar to find videos to watch, 43% use its "suggested videos" function and 30% use "popular suggestions." This subjects an already-vulnerable population to the very same rabbit hole effect that even adults fall victim to, but to greater effect.

112.    Defendants' surreptitious tracking, profiling, and targeting of children is all the more troubling in light of the Google Defendants' inability to prevent obscene content from being uploaded on the YouTube Platform. For example, one report found that "hundreds of . . . videos of children's cartoon characters with inappropriate themes" such as graphic violence on the YouTube Platform.[46] The effect of this content—which Defendants cannot apparently prevent from being uploaded to the YouTube Platform—on children is profound. One child psychotherapist has stated that "over time the she has seen a rise in cases of children suffering from anxiety triggered by videos they have watched on YouTube" and that the children "exhibit loss of appetite, sleeplessness, crying fits and fear."[47]

113.    Defendants exploited children under thirteen for financial gain by manipulating them into remaining engaged on the YouTube Platform to the detriment of their mental health, so that they could earn advertising revenue.

114.    By failing to (1) obtain parental consent, (2) disclose to parents the nature of their data collection practices, and (3) take other steps to preclude the capture of children's Personal Information, Defendants have breached the privacy rights and reasonable expectations of privacy of C.H. and the other millions of minors who have viewed You Tube's monetized channels, in contravention of privacy norms that are reflected in consumer surveys, centuries of common law, state and federal statutes, legislative commentaries, industry standards and guidelines, and scholarly literature.

---

[46] Anisa Subedar & Will Yates, *The disturbing YouTube videos that are tricking children*, BBC TRENDING (Mar. 27, 2017), https://www.bbc.com/news/blogs-trending-39381889 (accessed Oct. 22, 2019).

[47] Josephine Bila, *YouTube's dark side could be affecting your child's mental health,* CNBC (Feb. 13, 2018), https://www.cnbc.com/2018/02/13/youtube-is-causing-stress-and-sexualization-in-young-children.html (accessed Oct. 23, 2019).

CLASS ACTION COMPLAINT
CASE NO.

**PLAINTIFF ALLEGATIONS**

115.    During the Class Period Plaintiff Nichole Hubbard's child, C.H., watched videos on the YouTube Platform using via YouTube.com, the YouTube mobile app, and the YouTube Kids App.

116.    C.H. viewed several monetized YouTube channels owned by Channel Owner Defendants during the Class Period, including, *inter alia*, the following channels: ChuChuTV Nursery Rhymes & Kids Songs, Ryan ToysReview, My Little Pony Office, and CookieSwirlC.

117.    Defendants collected C.H.'s Personal Information for the purposes of tracking, profiling, and targeting C.H. with advertisements as she watched Channel Owner Defendants' YouTube videos.

118.    Defendants did not obtain verifiable parental consent prior to the collection of C.H.'s Personal Information.

119.    Defendants actively and fraudulently concealed their unlawful acts described herein and further deceptively misled parents and the public about Defendants' intentional design and employment of the You Tube Platform and the monetized channels thereon to attract and provide video viewing to minors under the age of thirteen and to exploit such minors' Personal Information for Defendants' enormous financial gain.

120.    Plaintiff could not have reasonably discovered Defendants' conduct earlier through investigation.

121.    Defendants' tracking, profiling, and targeting of C.H. without parental consent is highly offensive and constitutes an invasion of C.H.'s privacy.

**TOLLING AND ESTOPPEL**

I.    **Discovery Rule Tolling**

122.    Plaintiff, the Classes, and the Subclass had no way of knowing about Defendants' conduct with respect to the collection and impermissible and unauthorized use of, and profit from, the Personal Information of Plaintiff and the members of the Classes.

123.    Neither Plaintiff nor any other members of the Classes and Subclass, through the exercise of reasonable diligence, could have discovered the conduct alleged herein.  Further, Plaintiff and the members of the Classes and Subclass did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendants were engaged in the conduct alleged herein.

CLASS ACTION COMPLAINT
CASE NO.

124.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims asserted by Plaintiff, the Classes, and the Subclass.

**II.      Fraudulent Concealment Tolling**

125.    By failing to provide notice of the collection and use of the Personal Information and obtain verifiable consent, in violation of COPPA and societal norms and conventions, Defendants concealed their conduct and the existence of the claims asserted herein from Plaintiff and the members of the Classes and Subclass.

126.    Upon information and belief, Defendants intended by their acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclass.  Plaintiff and the members of the Classes and Subclass were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered JPM's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or members of the Classes should be tolled.

**III.     Estoppel**

127.    Despite their duties and obligations under COPPA, Defendants failed to provide notice of the collection and use of the Personal Information and obtain verifiable consent in breach and violation thereof.

Defendants therefore are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

128.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

129.    Plaintiff, in her capacity as parent and guardian of C.H., seeks class certification of claims for the common law privacy cause of action of "Intrusion Upon Seclusion," on behalf of a class defined as follows:

**The Intrusion Upon Seclusion Class**: all children and parents and/or legal guardians of children residing in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire,

New Jersey, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia who are younger than the age of thirteen, or were younger than the age of thirteen when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent.

130.    Plaintiff, in her capacity as parent and guardian of C.H., seeks certification of a claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, on behalf of a class defined as follows:

**Nationwide UCL Class**: all children and parents and/or legal guardians of children residing in the United States who are younger than the age of thirteen, or were younger than the age of thirteen when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent.

131.    Plaintiff, in her capacity as parent and guardian of C.H., seeks certification of a claim for violations of the State of California Constitution Right to Privacy and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* as well as Unjust Enrichment on behalf of a California Subclass defined as follows:

**The California Subclass:** all children and parents and/or legal guardians of persons residing in the State of California who are younger than the age of thirteen, or were younger than the age of thirteen when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent.

132.    Plaintiff reserves the right to modify or refine the Classes or Subclass definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

133.    Excluded from the Classes and Subclass are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b)  Defendants and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion

from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiff and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

134.    **Ascertainability**. The proposed Classes and Subclass are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Further, the Classes and Subclass can be readily identified through records maintained by Defendants.

135.    **Numerosity (Rule 23(a)(1))**. The Classes and Subclass are so numerous that joinder of individual members herein is impracticable. The exact number of Classes or Subclass members, as herein identified and described, is not known, but download figures indicate that the YouTube has collected information on millions, if not billions of children.

136.    **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

a.   Whether Defendants collected the Personal Information of children under thirteen;

b.   Whether Defendants had knowledge they were collecting the Personal Information of children under the age of thirteen;

c.   Whether Defendants obtained verifiable parental consent to collect the Personal Information of children under the age of thirteen;

d.   Whether the collection of Personal Information of children under the age of thirteen is highly offensive to a reasonable person;

e.   Whether the collection of Personal Information of children under the age of thirteen without parental consent is sufficiently serious and unwarranted as to constitute an egregious breach of social norms;

f.   Whether Defendants' conduct violated COPPA;

g.   Whether Defendants' conduct constituted and invasion of privacy based on California's common law protection against intrusion upon seclusion;

CLASS ACTION COMPLAINT
CASE NO.

h.   Whether Defendants' conduct constitutes a violations of the California Constitution right to privacy;

i.   Whether Defendants' conduct was unlawful or deceptive;

j.   Whether Defendants' conduct violated the California Unfair Competition Law;

k.   Whether Plaintiff and the Classes and Subclass are entitled to monetary damages and the measure of those damages;

l.   Whether Plaintiff and the California Subclass are entitled to restitution, disgorgement and/or other equitable and injunctive relief;

m.   Whether Defendants were unjustly enriched by their conduct;

n.   Whether Defendants' fraudulently concealed their conduct; and

o.   Whether Plaintiff and the Classes are entitled to injunctive or other equitable relief.

137.   **Typicality (Rule 23(a)(3))**. Plaintiff's claims are typical of the claims of the other members of the proposed Classes and Subclass. Plaintiff and Class members suffered an invasion of privacy as a result of Defendants' wrongful conduct that is uniform across the Classes and Subclass.

138.   **Adequacy (Rule 23(a)(4))**. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Classes and Subclass. Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest that is antagonistic to those of the Classes and Subclass, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and Subclass, and they have the resources to do so. Neither Plaintiff nor Plaintiff's counsel has any interest adverse to those of the other members of the Classes and Subclass.

139.   **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes and Subclass is impracticable. The prosecution of separate actions by individual members of the Classes and Subclass would impose heavy burdens upon the Courts and defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclass, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede

their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

140.  Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Intrusion Upon Seclusion**

**(Brought on Behalf of Plaintiff and the Intrusion Upon Seclusion Class Against All Defendants)**

141.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.

142.  Plaintiff Nichole Hubbard, in her capacity as parent and legal guardian of C.H., and Class members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. C.H.'s and Class members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by YouTube.

143.  Defendants intentionally intruded on and into C.H.'s and Class members' solitude, seclusion, or private affairs by intentionally and surreptitiously obtaining, improperly gaining knowledge of, reviewing, and/or retaining C.H.'s and Class members' activities through the monitoring and tracking activities described herein.

144.  These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations.

145.  Defendants' intrusion into the sacrosanct relationship between parent and child and subsequent commercial exploitation of children's special vulnerabilities online also contributes to the highly offensive nature of Defendants' activities.

CLASS ACTION COMPLAINT
CASE NO.

146.    Plaintiff's child C.H. and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and her child and Class members.

147.    Plaintiff and Class members therefore seek (1) injunctive relief, in the form of orders compelling Defendants' cessation of tracking and targeting practices in violation of state law and destruction of all personal data obtained in violation of state law; and (2) compensatory and punitive damages in an amount to be determined at trial. Plaintiff and Class members seek punitive damages because Defendants' actions—which were malicious, oppressive, willful—were calculated to injure Plaintiff and made in conscious disregard of Plaintiff's rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

### SECOND CLAIM FOR RELIEF

**Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200**

**(Brought on Behalf of Plaintiff, the Nationwide UCL Class, and the California Subclass Against All Defendants)**

148.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

149.    Defendants engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, Defendants unlawfully tracked, targeted, and profiled Plaintiff's child and Class and Subclass members without obtaining parental consent in violation of COPPA and Federal Trade Commission regulations.

150.    Defendants also engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Defendants failed to disclose during the Class Period that Defendants were tracking, profiling, and targeting Plaintiff's and the Class's and Subclass's children through the collection of Personal Information. Unfair acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is substantial, not outweighed by any

countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided. Defendants' conduct is unfair under each of these tests.

151.    As described above, Defendant's conduct violates the policies underlying privacy law, as well as COPPA. The gravity of the harm of Defendants' secret tracking, profiling, and targeting of minors under the age of thirteen is significant and there is no corresponding benefit to consumers of such conduct. Finally, because Plaintiff and Class members were completely unaware of Defendants secret tracking, profiling, and targeting, they could not have possibly avoided the harm.

152.    Under the UCL, a business practice that is likely to deceive an ordinary consumer constitutes a deceptive business practice.  Defendants' conduct was deceptive in numerous respects.  The Google Defendants have intentionally and deceptively misled parents and the public about Defendants' intention to use the YouTube Platform and the monetized channels thereon to attract and provide video viewing to minors under the age of thirteen in order to gain access to the Personal Information of such minors and to exploit such minors' Personal Information for Defendants' financial gain.  The Google Defendants have falsely asserted that such children are not permitted to access the Platform while, at the same time, the Google Defendants and the Channel Owner Defendants have, at all times throughout the Class Period, been well aware that minors under the age of thirteen access YouTube's channels; have actively sought to increase viewing of the YouTube Platform by children under the age of thirteen; and have sought to exploit, for commercial purposes and gain, the millions of YouTube viewers under the age of thirteen.  Defendants' knowledge of the widespread use of the Platform by children under the age of thirteen (which the Google Defendants have expressly touted in their advertising sales efforts) and failure to disclose that they are tracking, profiling, and targeting such children without parental consent, while at the same time representing that the You Tube Platform does not permit and does not seek to reach children under the age of thirteen, are likely to and, in fact, did deceive Plaintiff and Class members. Defendants' conduct therefore constitutes deceptive business practices in violation of Cal. Bus. & Prof. Code §17200.

153.    Plaintiff, in her individual capacity and as the parent of C.H., as well as Class and Subclass members, were harmed by Defendants' violations of Cal. Bus. & Prof. Code §17200. Defendants' actions

and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and her child and Class and Subclass members.

154. Plaintiff's and the Class and Subclass members' injury was the direct and proximate result of Defendants' conduct described herein.

155. Plaintiff, individually and on behalf of the Class and Subclass, seeks: (1) an injunction requiring Defendants to obtain consent prior to collecting Personal Information from children under the age of thirteen and to delete the Personal Information already collected without parental consent, and to implement functionality sufficient to prevent unlawful collection and tracking in the future; and (2) compensatory restitution of Plaintiff's and the Class and Subclass members' money and property lost as a result of Defendants' acts of unfair competition; (3) disgorgement of Defendants' unjust gains; and (4) reasonable attorney's fees (pursuant to Cal. Code of Civ. Proc. § 1021.5).

## THIRD CLAIM FOR RELIEF

### California Constitutional Right to Privacy, Cal. Const. Art. 1, § 1.

### (Brought on Behalf of Plaintiff and the California Subclass Against All Defendants)

156. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

157. Plaintiff Nichole Hubbard's minor child, C.H., and the California Subclass members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. Plaintiff's and the California Subclass members' private affairs include their behavior on their mobile devices as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by Defendants.

158. Defendants intentionally intruded on and into C.H's and the California Subclass members' solitude, seclusion, or private affairs by intentionally and surreptitiously obtaining, improperly gaining knowledge of, reviewing, and/or retaining C.H.'s and the California Subclass members' activities through the monitoring and tracking activities described herein.

159. These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions

undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations.

160. Defendants' intrusion into the sacrosanct relationship between parent and child and subsequent commercial exploitation of children's special vulnerabilities online also contributes to the highly offensive nature of Defendants' activities.

161. Defendants' conduct as aforesaid violated C.H.'s and the California Subclass members' right to privacy, as guaranteed by ART. 1, § 1 of the California Constitution.

162. C.H. and the California Subclass members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class members.

163. Plaintiff and the California Subclass members therefore seek (1) injunctive relief, in the form of Defendants' cessation of tracking practices in violation of state law and destruction of all personal data obtained in violation of state law; and (2) compensatory and punitive damages in an amount to be determined at trial. Plaintiff and the California Subclass members seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure C.H. and the California Subclass members and were made in conscious disregard of C.H.'s and the California Subclass members' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

### (Brought on Behalf of Plaintiff and the California Subclass Against All Defendants)

164. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

165. By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized millions of dollars in revenue from the sale and/use of the Personal Information of C.H. and the California Subclass members for advertising and related commercialization purposes.

166. This revenue was a benefit conferred upon Defendants by C.H. and the California Subclass members.

CLASS ACTION COMPLAINT
CASE NO.

167.    It would be inequitable and unjust to permit Defendants to retain the enormous financial benefits they have obtained at the expense of C.H. and the California Subclass members.

168.    Defendants will be unjustly enriched if they are permitted to retain the financial benefits conferred upon them by C.H. and the California Subclass members through Defendants profiting from the unlawful, unauthorized and impermissible use of C.H.'s and the California Subclass members' Personal Information.

169.    Plaintiff and the members of the Classes are therefore entitled to recover the amounts realized by Defendants at the expense of Plaintiff and the members of the Classes.

170.    Plaintiff and the members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and in her capacity as parent and guardian of C.H., on behalf of herself and the proposed Classes and Subclass, respectfully requests relief as follows:

A.    An order certifying this action and the Classes and Subclass requested herein as a class action, designating Plaintiff as the representative of the Classes and Subclass, and appointing Plaintiff's counsel as Classes and Subclass counsel;

B.    An order declaring that Defendants' actions, as set out above constitute: (i) breaches of the common law claim of intrusion upon seclusion as to the Intrusion Upon Seclusion Class; and (ii) a violation of California's Business & Professions Code as cited herein; (iii) a violation of the right to privacy under the California Constitution, Article I, Section 1; and (iv) that Defendants' were unjustly enriched as a result of their actions.

C.    A judgment awarding Plaintiff and Class and Subclass members appropriate relief, including actual, compensatory, and/or statutory damages, and punitive damages (as permitted by law), in an amount to be determined at trial;

D.    A judgment awarding equitable, injunctive, and declaratory relief as may be appropriate, including orders of disgorgement of Defendants' unlawful gains, and restitution.

---

41

CLASS ACTION COMPLAINT
CASE NO.

1    E.    A judgment awarding all costs, including experts' fees, attorneys' fees, and the costs of

2    prosecuting this action, and other relief as permitted by law; and

3    F.    Grant such other legal and equitable relief as the Court may deem appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury for all issues so triable.

Dated:  October 25, 2019        Respectfully submitted,

**PRITZKER LEVINE LLP**

*/s/ Jonathan K. Levine*

Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
Bethany Caracuzzo (SBN 190687)
Caroline C. Corbitt (SBN 305492)
180 Grand Avenue, Suite 1390
Oakland, CA 94612
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
jkl@pritkzkerlevine.com
ecp@pritzkerlevine.com
bc@pritzkerlevine.com
ccc@pritzkerlevine.com

David S. Golub (*pro hac vice* forthcoming)
Steven l. Bloch (*pro hac vice* forthcoming)
Ian W. Sloss (*pro hac vice* forthcoming)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT
CASE NO.