UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICHOLE HUBBARD, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC, et al.,<br><br>　　　　　　Defendants. | Case No. 19-cv-07016-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF 93] |

In 1998, Congress had the foresight to pass the Children's Online Privacy Protection Act ("COPPA"), recognizing both the potential and pitfalls to come with the proliferation of the internet. *See* 15 U.S.C. §§ 6501 *et seq*. Now, in 2020, the Court must decide if private citizens have a role in ensuring the law is followed by bringing claims under state laws.

Plaintiffs Nicole Hubbard, as parent and guardian of C.H., a minor; Cara Jones, as parent and guardian of E.J., N.J., A.J., and L.J, minors; Justin Efros, as parent and guardian of J.A.E. and J.R.E., minors; Renee Gilmore, as parent and guardian of M.W., a minor; Jay Goodwin, as parent and guardian of A.G., a minor; and Bobbi Dishman, as parent and guardian of C.D., a minor, ("Plaintiffs") bring this suit against Defendants Google LLC and YouTube LLC (collectively "Google") and Cartoon Network, Inc., Cartoon Network Studios, Inc., ChuChu TV Studios, CookieSwirlC, DreamWorks Animation LLC, DreamWorks Animation Television, LLC, Hasbro, Inc., Hasbro Studios LLC, Mattel, Inc., Remka, Inc., RTR Production, LLC, RFR Entertainment, Inc., and Pocketwatch, Inc. (collectively "Channel Owners"). Plaintiffs allege Defendants unlawfully violated the right to privacy and reasonable expectation of privacy of their children, who are all under 13 years of age and subject to COPPA's protections. Plaintiffs have exclusively brought state law claims against Defendants and cite violations of COPPA as the basis for liability

in many instances.

Defendants have filed a motion to dismiss, primarily arguing that all of Plaintiffs' claims are preempted, and, alternately, that each of Plaintiffs' allegations fail to state a claim. *See* Mot., ECF 93. Plaintiffs oppose and argue that COPPA does not preempt the common law right to privacy, which has existed for centuries, as well as more modern consumer protection and privacy statutes and the right to privacy embedded in the California Constitution. *See* Opp'n, ECF 95. Defendants filed a reply brief in response. *See* Reply, ECF 98. This Court finds that Plaintiffs' state law claims are expressly preempted by COPPA. The Court will DISMISS the action WITHOUT PREJUDICE, allowing Plaintiffs the opportunity to amend the complaint to allege facts showing that Defendants' conduct amounts to more than solely a violation of COPPA's requirements.

## I.     BACKGROUND

Google operates the video sharing-platform YouTube ("YouTube platform"). Second. Am Compl. ("SAC") ¶ 2, ECF 92. The YouTube platform is accessible as a website, mobile application, or via an application on a set-top streaming device that can connect to a television. *Id.* Any individual or organization registered with YouTube, through a Google account, may upload videos they have created. *Id.* ¶ 2, 54. These videos are uploaded to that individual's or organization's "channel." *Id.* ¶ 2. Individuals do not have to register or sign in to view videos uploaded to the YouTube platform. *Id.* ¶ 3. There is no age verification required to view videos. *Id.*

The YouTube platform is "the #1 website regularly visited by kids." SAC ¶ 4. Defendants Mattel and Hasbro, classic toy brands, are among the Channel Owners who maintain and create content aimed at children. *Id*. Other Channel Owners do the same: for example, Defendant ChuChuTV's channel features cartoons and nursery rhymes. *Id.* ¶ 96. Defendants Remka, RTR Production, RFR Entertainment, and Pocketwatch together operate a channel, Ryan's World, featuring a nine-year-old boy unboxing toys and other children's products. *Id.* ¶ 98. This is the second-most popular YouTube channel, with approximately 22.5 million subscribers and over 33

billion views. *Id.* Plaintiffs detail the child-aimed content of the other Channel Owner Defendants as well. *Id.* ¶¶ 100-01; 103-04.

Google collects personal information from individuals who access the YouTube platform. SAC ¶ 57. Included in this information are what Google calls "unique identifiers." *Id.* ¶¶ 57-58. "Cookies," text files containing unique identifiers that are stored on an individual's browser, track websites a user has visited and the amount of time spent on those websites, among other things. *Id.* ¶ 59. "Persistent identifiers," data that cannot easily be reset, are additional unique identifiers. *Id.* ¶ 60. Examples of persistent identifiers include a user's IP address or their device's International Mobile Equipment Identity ("IMEI") number, which is a number assigned to every mobile phone and cannot be changed. *Id.* ¶ 61. When another website that uses Google's advertising services or analytics tools sends Google the same IP address or IMEI number that has previously visited YouTube, Google knows the individual has visited both websites. *Id.* ¶¶ 62, 64. Given the proliferation of Google's advertising services and analytics, studies indicate that Google can track individuals on over 80% of the internet. *Id.* ¶ 62. Google offers the following example: "if you watch videos about baking on YouTube, you may see more ads which relate to baking as you browse the web." *Id.* ¶ 65. This information that Google collects to develop an individual's user profile is extremely valuable to advertisers. *Id.* ¶ 63. In turn, Google can charge advertisers higher rates as it collects more data and improves its user profiles. *Id.*

If a YouTube platform channel achieves a certain level of success by passing a viewership threshold set by Google, a channel owner can choose to "monetize" the channel by allowing Google to run advertisements on the channel. *Id.* ¶ 67. Google and the Channel Owners share the advertising revenue, with 55% going to the Channel Owners and 45% remaining with Google. *Id.* Google and the Channel Owners have two types of advertising available to them: behavior targeting or contextual targeting. *Id.* ¶ 68. Behavior targeting, the default and most lucrative method, serves ads to individuals based on that user's personal information that Google has tracked across the web. *Id.* ¶¶ 68-69. Contextual targeting does not rely on personal information but rather matches ads with what Google determines is a channel's central theme. *Id.* ¶ 70.

COPPA, though, limits the amount of data Google is legally able to collect from children without parental consent. SAC ¶ 75. COPPA provides, in pertinent part, that,

> It is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed [by the Federal Trade Commission].

15 U.S.C. § 6502(a). SAC ¶ 75. COPPA applies to any operator of a commercial website or online service directed to children under thirteen years of age that collects, uses, and/or discloses personal information from children. *Id.* ¶ 76. The Federal Trade Commission ("FTC") has interpreted COPPA's definition of "website or online service" to include individual channels on a general audience platform—according to the FTC, "content creators and channel owners" are both "standalone 'operators' under COPPA, subject to strict liability for COPPA violations." *Id.*; Statement of Joseph J. Simons & Christine S. Wilson, Federal Trade Commission, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC* (Sept. 4, 2019), https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf.  The FTC also considers third parties with actual knowledge that they are collecting personal information from users of a child-directed site or service as operators under COPPA. *Id.* ¶ 76.

In order to determine whether a website or online service is "directed to children" the FTC is to:

> [C]onsider [the website's or online service's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.

16 CFR § 312.2. SAC ¶ 77. COPPA defines a "child" as an individual under the age of thirteen. 15 U.S.C. § 6501(a). SAC ¶ 79. The FTC regulations require an operator to disclose information collection practices and "obtain verifiable parental consent for [any] collection, use, or disclosure of personal information from children." 15 U.S.C. § 6502(b)(1)(A); 16 C.F.R. § 312.5(a).; SAC ¶

4

79. Among the types of personal information under COPPA that may only be collected from children with parental consent are "persistent identifier[s] that can be used to recognize a user over time and across different sites, including a cookie number, an IP address, a processor or device serial number, or a unique device identifier." SAC ¶ 80.

Google has been subject to COPPA enforcement previously. On September 4, 2019, the FTC and New York Attorney General filed a complaint against Google concerning Google's collection and use of minors' personal information. SAC ¶ 81. The parties entered into a stipulated order for permanent injunction and civil penalty judgment on the same day. *Id.* Google agreed to pay a $170 million civil penalty. *Id.* As for the injunction, Plaintiffs state that Google did not agree to immediately cease its misconduct, as it had four months to comply with the terms of the injunction (and continued its user tracking practices during that time). *Id.* Plaintiffs also note that the injunction did not require that Google permanently delete, destroy, or otherwise sequester the information obtained regarding minor children. *Id.*

Here, in this case, Plaintiffs allege that Google, together with the Channel Owners, knowingly and purposely tracked, profiled, and targeted minors on the YouTube platform for advertising revenue through deceptive collection of personal information. SAC ¶¶ 84-85. They allege Google did this while feigning compliance with the law. *Id.* ¶ 84. With this information, Google was able to develop user profiles of these children and serve them targeted advertisements aimed at influencing their behavior. *Id.* ¶ 110. Google did not disclose the full extent of the information it collected from the children. *Id.* ¶ 112. Google used this information to manipulate and exploit children by extending their time on the YouTube platform, which increased the number of targeted advertisements shown to them, which increased the revenue earned by Google and the Channel Owners. *Id.* ¶ 113.

Plaintiffs have been deprived of the economic value of their personal information. SAC ¶ 118. Plaintiffs allege that Google's advertising revenue of $116 billion in 2018 demonstrates that this information has tremendous value. *Id.* Valuations of the type of personal information used by Google range from $200 to $2,733, the amount an individual sold his data for on the platform Kickstarter. *Id.* Plaintiffs allege that the personal information of children has equal or greater value

5

than that from an adult because Google may be able to utilize children's personal information to show them behavior-targeted advertising for the rest of their lives. *Id.* Because Google, which operates the first- and second-most visited websites in the world, already has the personal information of Plaintiffs, this "first mover" advantage cannot be outdone, and the lost value cannot be recaptured at a later date. *Id.* ¶ 119. The Defendants conduct, according to Plaintiffs, violates both their reasonable expectation of privacy and their privacy rights. *Id.* ¶ 120.

In this lawsuit, Plaintiffs allege violations of the following claims: intrusion upon seclusion; California's Unfair Competition Law; unjust enrichment under the laws of California, Colorado, Indiana, New Jersey, Massachusetts and Tennessee; the consumer protection acts of Massachusetts, Colorado, Indiana, New Jersey, and Tennessee; and the California constitutional right to privacy. SAC ¶¶ 204-356. Defendants bring this motion to dismiss on several grounds, with preemption as a threshold issue. *See* Mot.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

Defendants argue that Plaintiffs claims are preempted by COPPA. Mot. 7-12. COPPA contains the following clause:

6

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is *inconsistent with the treatment of those activities or actions under this section.*

15 U.S.C. § 6502(d). (emphasis added).

The Supremacy Clause of the Constitution establishes that federal law is "the supreme law of the land." U.S. Const. art. VI, cl. 2. "A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). (citing U.S. Const. art. VI, cl. 2; *Gibbons v. Ogden*, 9 Wheat. 1, 211 (1824). "Pre-emption may be either expressed or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)).

The Supreme Court has identified the two "cornerstones" of its preemption jurisprudence: 1) "the purpose of Congress is the ultimate touchstone in every pre-emption case;" and 2) where Congress has legislated in a field traditionally occupied by the States, "we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic*, 518 U.S. at 485). However, the Ninth Circuit and Supreme Court have more recently instructed, "Where the intent of a statutory provision that speaks expressly to the question of preemption is at issue, 'we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Atay v. County of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (quoting *Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016)).

Here, the parties agree that all of Plaintiffs claims are premised on violations of COPPA, Mot. 8-9, although Plaintiffs argue that their claims allege independent state law violations fully consistent with but not identical to COPPA. Opp'n 8-9. Defendants argue that Plaintiff's claims

7

are expressly and impliedly preempted. Mot. 7-12. Plaintiffs argue that neither type of preemption applies because COPPA's statutory text only preempts state laws that are "inconsistent" with COPPA, the application of the state laws invoked by Plaintiffs aren't "obstacles" to the enforcement of COPPA, and the state laws do not make it "impossible" for Defendants to comply both with COPPA and the state laws. Opp'n 5-13. The Court finds that COPPA's preemption clause preempts Plaintiffs' claims.

### A.  Express Preemption

Defendants argue that COPPA expressly preempts all of Plaintiffs' state law claims by the terms of its preemption clause: "No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is *inconsistent with the treatment of those activities or actions under this section.*" 15 U.S.C. § 6502(d). Mot. 8-12 (emphasis added). Defendants argue that COPPA provides for a specific enforcement and regulatory scheme and "purposefully" omits a private right of action. *Id.* 8. Congress specified the FTC would have enforcement authority, 15 U.S.C. §§ 6502(c), 6505(d), with certain other federal agencies retaining authority over entities they oversee, *id.* §§ 6505(a), (b). Mot. 3. Congress also gave an enforcement role to states via *parens patriae* actions brought by their attorneys general, 15 U.S.C. § 6504(a)(1). Mot. 3. Before proceeding with any such lawsuits, a state attorney general must give the FTC notice, 15 U.S.C. § 6504(a)(2), and the FTC has a statutory right to intervene, *id.* § 6504(b). Mot. 3. If the FTC has already instituted an action, no State may institute a second action against the same Defendants while the first action is pending, 15 U.S.C. § 6504(d). Mot. 3. Congress did not include a private right of action in the statute.

All of Plaintiffs' claims, according to Defendants, are premised "entirely on alleged violations of a very specific set of requirements that are found only in COPPA concerning 'persistent identifiers.'" Mot. 8. Defendants argue that although the claims are styled as arising under state law, the claims are predicated on violations of COPPA, not activity that independently violates state law. *Id.* The Court agrees with Defendants' characterization of Plaintiffs' claims. As Defendants note, the harm asserted by Plaintiffs mirrors the harm proscribed by COPPA: the

8

collection of data from children under thirteen without parental consent by operators of child-directed websites. *See* SAC ¶¶ 10, 55, 83, 127-28. All of the claims incorporate these allegations. *Id.* ¶¶ 204, 211, 219, 228, 237, 246, 255, 264, 273, 281, 295, 304, 324, 338. Specifically, the intrusion upon seclusion claim is based on the collection of the children Plaintiffs' data. *Id.* ¶ 206. The California Unfair Competition Law claim specifically mentions the Defendants targeting, tracking, and profiling the children Plaintiffs "without obtaining parental consent in violation of COPPA." *Id.* ¶ 212. The claims under the consumer protection statutes of Massachusetts, Colorado, and New Jersey each specifically mention a violation of COPPA as the basis for the claim. *Id.* ¶¶ 286, 298, 329. The claims under the consumer protection statutes of Indiana and Tennessee specifically mention practices targeted to children under thirteen, which is the exact group covered by COPPA. *Id.* ¶¶ 307, 342. Likewise, the California constitutional claim and the unjust enrichment claims are not predicated on behavior that is outside the scope of COPPA. *Id.* ¶¶ 220, 229, 238, 247, 256, 265, 275. For these reasons the Court agrees with Defendants that Plaintiffs' claims are based on violations of COPPA.

The Court finds that the plain text of the statute clearly indicates Congress's desire to expressly preempt Plaintiffs' state law claims. "No State or local government may impose any liability for commercial activities or actions by operators … in connection with an activity or action described in this chapter that is *inconsistent with the treatment of those activities or actions under this section.*" 15 U.S.C. § 6502(d). Congress was clear when it decided how violations of COPPA should be treated. The FTC has enforcement authority, 15 U.S.C. §§ 6502(c), 6505(d), with certain other federal agencies retaining authority over entities they oversee, *id.* §§ 6505(a), (b). State attorneys general may bring *parens patriae* actions only after giving the FTC notice, 15 U.S.C. § 6504(a)(2), and the FTC has a statutory right to intervene, *id.* § 6504(b). This scheme is clear, detailed, and does not leave room for state laws to impose additional liability.

Plaintiffs argue that only "inconsistent" state laws are preempted. Opp'n 7. The Court disagrees and finds this to be an incomplete reading of the preemption clause in 15 U.S.C. § 6502(d). The Court must read the rest of the sentence beyond the word "inconsistent": "No State or local government may impose any liability for commercial activities or actions by operators in

interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section." 15 U.S.C. § 6502(d). The Court agrees with the Defendants that there is a detailed remedial scheme in that section, as referenced by the preemption clause, giving enforcement authority primarily to the FTC and carving out a cooperative role for state attorneys general. The Court finds that allowing private plaintiffs to bring suits for violations of conducted regulated by COPPA, even styled in the form of state law claims, with no obligation to cooperate with the FTC inconsistent with the treatment of COPPA violations as outlined in the COPPA statute. *See Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1143-44 (N.D. Cal. 2005) (rejecting argument that state law claim is not inconsistent with the Fair Credit Reporting Act ("FCRA") and simply provides an additional state remedy for the unlawful conduct giving rise to the FCRA claim).

Further, the cases Plaintiffs cite to support the idea that only "inconsistent" state laws are preempted are distinguishable. Opp'n 9. In *Metrophones Telecomm. Inc. v. Global* Crossing Telecomm., Inc., 423 F.3d 1056 (9th Cir. 2005) and *Ishikawa v. Delta Airlines, Inc.*, 343 F.3d 1129, 1133 (9th Cir. 2003), *amended by* 350 F.3d 915 (9th Cir. 2003), the preemption clauses at issue only refer to conflicting state "requirements," and do not also reach inconsistent treatment under the structure of the federal law. Reply 4. And Plaintiffs' arguments advocating this Court to apply a presumption against preemption are contrary to the Supreme Court's instruction in *Franklin*: "[W]e do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." 136 S. Ct. at 1946. The Ninth Circuit applied *Franklin* in *Atay* and focused on the text of the statute to find a local ordinance preempted. *Atay*, 842 F.3d at 701-03. In *Atay*, the express preemption provision in the Plant Protection Act (PPA) stated, in relevant part:

> no State or political subdivision of a State may regulate the movement in interstate commerce of any ... plant, ... plant pest, noxious weed, or plant product in order to control ..., eradicate ..., or prevent the introduction or dissemination of a ... plant pest, or noxious weed, if the Secretary has issued a regulation or order to prevent the dissemination of the ... plant pest, or noxious weed within the United States.

*Id.* at 701 (quoting 7 U.S.C. § 7756(b)(1)). Focusing on the text of the statute, the court determined that three conditions needed to be met for a local law to be preempted and found all three conditions satisfied: "(1) the local law must regulate 'movement in interstate commerce,' (2) it must be intended to 'control ..., eradicate ..., or prevent the introduction or dissemination of a ... plant pest, or noxious weed,' and (3) APHIS must regulate the plant at issue as a plant pest or noxious weed." *Atay*, 842 F.3d at 701. The Court does the same here: the text of COPPA's preemption clause forbids states from imposing liability for activities regulated under COPPA "inconsistent with the treatment of those activities or actions under this section." 15 U.S.C. § 6502(d). Here, there can be no doubt that, by the text of the preemption clause, state law claims predicted on COPPA violations are preempted because of the treatment inconsistent with COPPA's remedial scheme involving the FTC and state attorneys general.

Defendants also cite two recent cases involving COPPA to support their preemption claim: *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) and *Manigault-Johnson v. Google, LLC*, No. 2:18-CV-1032-BHH, 2019 WL 3006646 (D.S.C. Mar. 31, 2019). The Court finds both cases to be instructive. In *Nickelodeon*, Defendants' website included the message, "HEY GROWN-UPS: We don't collect ANY personal information about your kids. Which means we couldn't share it even if we wanted to!" and this apparently was not true. *Nickelodeon*, 827 F.3d at 269, 291. The court applied a presumption against preemption under Third Circuit law and found that the plaintiffs' intrusion upon seclusion claim was not preempted by COPPA, and the court rested its finding on the fact that "the wrong at the heart of the plaintiffs' intrusion claim is not that Viacom and Google *collected* children's personal information, or even that they *disclosed* it. Rather, it is that Viacom created an expectation of privacy on its websites and then obtained the plaintiffs' personal information under false pretenses." *Nickelodeon*, 827 F.3d at 292. "Understood this way," the Third Circuit stated, "there is no conflict between the plaintiffs' intrusion claim and COPPA. In this case, however, Plaintiffs do not allege that Defendants created an expectation of privacy through deceitful conduct. *See* Opp'n 10-11. Regarding COPPA preemption, Third Circuit stated, "COPPA certainly regulates whether personal information can be collected from children in the first instance," *Nickelodeon*, 827 F.3d at 292. To this Court, it is clear that the Third Circuit

11

would not have reached the same conclusion absent the allegations of deceit, which it expressly found to go beyond the provisions of COPPA. *See id.*

In *Manigault-Johnson*, which was litigated by the same Google defense counsel that appear here, the court found that the plaintiffs lacked standing for their California constitutional claim and that they failed to state a claim for intrusion upon seclusion under California or South Carolina law. 2019 WL 3006646, at *6. The court decided the case on grounds other than preemption but then addressed preemption in dicta:

> Plaintiffs' complaint does not accuse Defendants of conduct beyond that regulated by COPPA. Thus, it appears to the Court that Plaintiffs seek to use the vehicle of state law to privately enforce the provisions of COPPA, which Congress clearly intended to preclude when it included an express preemption clause in COPPA and assigned exclusive enforcement of COPPA to the Federal Trade Commission and state attorneys general.

2019 WL 3006646, at *6. This Court agrees that allowing Plaintiffs to sue for violations of COPPA under state law runs afoul of COPPA's express preemption clause due to the inconsistency with the remedial scheme that assigns enforcement of COPPA to the FTC and state attorneys general.

Plaintiffs cite to a case from earlier this year involving the New Mexico Attorney General suing defendants for a violation of COPPA, New Mexico's Unfair Practices Act, and intrusion upon seclusion, and the court found no preemption of the state law claims. *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1121 (D.N.M. 2020) ("Accordingly, to allow Plaintiff's state law claims against Google to proceed would result in the imposition of liability only for conduct that violates COPPA, and thus would not run afoul of COPPA's express preemption provision."). The Court finds *Tiny Lab* distinguishable from this case because *Tiny Lab* was brought by the New Mexico Attorney General, who can enforce violations of COPPA under the statute's remedial scheme. Further, while not the basis of the preemption decision, it appears there was deception alleged on the part of the *Tiny Lab* defendants, who marketed the subject applications as "suitable and safe for children." *Id.* at 1127. For these reasons, the Court finds that *Tiny Lab* is distinguishable and does not inform the decision in this case.

1    Accordingly, the Court finds that express preemption applies.

**B.    Leave to Amend**

Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations and quotations omitted). Here, the Court finds leave to amend appropriate.

To the extent that Plaintiffs attempt to analogize to *Nickelodeon*, where the Third Circuit found no preemption because the defendants' conduct included deception that went beyond the behavior regulated by COPPA, the current complaint does not support such a claim. Plaintiffs state in conclusory fashion that "the Google Defendants make a serial practice of the deceptive collecting and use of user activity on its platform(s)." SAC ¶ 85. But the complaint does not explain what is deceptive about Google's collecting of data or grapple with whether Google's data collection policies have been properly disclosed, notwithstanding whether the Plaintiffs agree with them or not. And finally, as the Court noted at the hearing, Plaintiffs have not alleged the Channel Owners collected any data at all. Plaintiffs allege that the Channel Owners are "operators" under COPPA, *id.* ¶ 76, and they've alleged that the Channel Owners share profit from the advertising revenue, *id.* ¶ 67. But Plaintiffs have not alleged any data collection or deception on the part of the Channel Owners. For the complaint to go forward against the Channel Owners, these deficiencies must be addressed.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED with leave to amend. Plaintiffs shall file an amended complaint no later than 30 days after the filing of this order.

Dated: December 21, 2020

_____
BETH LABSON FREEMAN
United States District Judge

13