Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
Caroline C. Corbitt (SBN 305492)
PRITZKER LEVINE LLP
1900 Powell Street, Suite 450
Emeryville, CA 94608
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
jkl@pritzkerlevine.com
ecp@pritzkerlevine.com
ccc@pritzkerlevine.com

David S. Golub (admitted *pro hac vice*)
Steven L. Bloch (admitted *pro hac vice*)
Ian W. Sloss (admitted *pro hac vice*)
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

*Attorneys for Plaintiffs and
the Proposed Classes and Subclasses*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NORTHERN CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| C.H., a minor, by and through their guardian ad litem NICHOLE HUBBARD, as parent and guardian of C.H., a minor; CARA JONES, as parent and guardian of; E.J., N.J., A.J., and L.J., minors; JUSTIN EFROS, as parent, by and through their guardian ofad litem CARA JONES; J.A.E. and J.R.E., minors, by and through their guardian ad litem JUSTIN EFROS; M.W., a minor, by and through their guardian ad litem RENEE GILMORE, as parent and guardian of M.W.; a minor; JAY GOODWIN, as parent and guardian of; A.G., a minor, by and through their guardian ad litem JAY GOODWIN; C.D, a minor, by and through their guardian ad litem BOBBI DISHMAN, as parent and guardian of C.D, a minor; individually and on behalf of all others similarly situated, | Case No. 5:19-cv-07016-BLF<br><br>CLASS ACTION<br><br>SECONDTHIRD AMENDED COMPLAINT<br><br>DEMAND FOR JURY TRIAL |
| Plaintiffs, | |
| v. | |
| GOOGLE LLC; YOUTUBE LLC; CARTOON NETWORK, INC.; CARTOON NETWORK STUDIOS, INC.; CHUCHU TV STUDIOS, COOKIESWIRLC; DREAMWORKS ANIMATION LLC; DREAMWORKS | |

ANIMATION TELEVISION, LLC; HASBRO, INC.; HASBRO STUDIOS LLC; MATTEL, INC.; POCKETWATCH, INC.; REMKA, INC.; RTR PRODUCTION LLC; AND RFR ENTERTAINMENT, INC.

Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Nichole Hubbard, in her capacity as parent and guardian of her minor child, C.H.; Cara Jones, in her capacity as parent and guardian of her minor children, E.J., N.J., A.J., and L.J; Justin Efros, in his capacity as parent and guardian of his minor children, J.A.E. and J.R.E.; Renee Gilmore, in her capacity as parent and guardian of her minor child, M.W.; Jay Goodwin, in his capacity as parent and guardian of his minor child, A.G.; and Bobbi Dishman, in her capacity as parent and guardian of her minor child, C.D. (collectively, "Plaintiffs")Plaintiffs, by and through their undersigned counsel, hereby allege the following against Defendants, on behalf of themselves and all others similarly situated, based on personal knowledge, information and belief, the investigation of counsel, and public sources.

<u>**NATURE OF THE ACTION**</u>

1.      This action arises out of Defendants' unlawful and deceptive invasion of the right to privacy and reasonable expectation of privacy of millions of children under the age of thirteen, from July 1, 2013 through the presentApril 1, 2020 (the "Class Period"). Plaintiffs bring claims on behalf of their While holding themselves out publicly as respecting privacy rights, Defendants tracked the behaviors and preferences of vulnerable children and solely, and irrefutably, for their significant financial gain in violation of those well-established privacy protections, societal norms, and the laws encapsulating those protections. This unlawful conduct was dependent upon the respective Classes and Subclasses defined belowknowing and willful participation of all other similarly-situatedDefendants: Google and YouTube, for their surreptitious and invasive collection of personal information by tracking and profiling minors without consent through their YouTube platform, and targeting those minors solely for the purpose of commercial gain through behavioral advertising; and the channel owners that produced content designed to attract those vulnerable children under the age of thirteen injured by Defendants' conduct for: (i) invasion of privacy and the right to be freefor profiling, targeting and behavioral advertising; agreed to allow Google's deceptive and illicit conduct to occur on their channels in order to share in the enormous illicit profits that conduct generated; and realized an even greater financial benefit than Google from intrusion upon seclusion pursuant to the common laws the hundreds of California, Colorado, New Jersey and the other states identified herein; (ii) violationsmillions of dollars in advertising revenue the California Unfair Competition Law, Cal. Defendants shared. Bus. & Prof. Code § 17200, *et seq.*, the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*,

the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3, the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. CH 93A, § 1, *et seq.*, New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*, and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*; (iii) violation of the right to privacy enumerated in the California Constitution, CAL. Const. Art. 1, § 1; and (iv) relief from Defendants' unjust enrichment at the expense of minor children.

2.      Defendants Google LLC and YouTube LLC (the "Google Defendants") operate the video-sharing platform YouTube ("YouTube Platform"). The YouTube Platform contains videos created by individuals and entities that have registered with YouTube and uploaded their videos and created a "channel." The YouTube Platform is accessible as a website (www.youtube.com), mobile application, or as an application on a set top streaming device.

3.      Individuals do not have to register or sign in to view videos uploaded to the YouTube Platform. Anyone, regardless of age, who visits the YouTube website can browse through and view videos that have been uploaded. And anyone using a device on which the YouTube app has been installed can watch videos on the YouTube Platform without verifying his or her age.

4.      The Defendants know that the YouTube Platform – which, as alleged, does not have an age registration requirement – is a top online destination for children. Recent Indeed, recent studies have found shown that YouTube is "the #1 website regularly visited by kids." As a result Because of its popularity and its known regular use by children, popular child product brands, such as defendant toy companies Mattel and Hasbro, among others, maintain YouTube channels and create content on the YouTube Platform to attract child viewers.

5.      The Google Defendants generate revenue from the YouTube Platform from through YouTube channels that have opted agreed to be "monetized" by allowing– *i.e.*, have agreed to allow the Google Defendants to place paid advertising on their channels in return for a share of the resulting advertising revenue., with 45% of the revenue going to the Google Defendants, and a larger, 55% share of the revenue, going to the channel owner.

6.      Throughout the Class Period, the Google Defendants enabled "behavioral advertising" on monetized YouTube channels. Behavioral advertising (also known as personal advertising) is informed by the behavior that is tracked across different websites, apps, and devices.  When a channel

owner monetizes a channel with behavioral advertising – to which the channel owner knowingly and willingly consents – the Google Defendants collect information associated with a viewer's cookie or mobile advertising identifier in order to track that viewer's online activities, and deliver advertising that is specifically tailored to the viewer's inferred interests. And because behavioral advertising is based on the viewer's personal information, which is tracked across multiple websites, apps, and devices, from the viewer's perspective, it is the most intrusive form of targeting.

5.7.    During the Class Period, the Google Defendants contracted with numerous content creators who uploaded child-directed content to the YouTube Platform and agreed to monetize their channels with behavioral advertising, including Defendants The Cartoon Network, Inc., Cartoon Network Studios, Inc., CookswirlC, Chu Chu TV Studios, DreamWorks Animation LLC, DreamWorks Animation TV, LLC, Hasbro, Inc., Hasbro Studios LLC, Mattel, Inc., Pocketwatch, Inc., Remka, Inc., RTR Production LLC, and RFR Entertainment, Inc. (collectively, the "Channel Owner Defendants") owned and/or operated monetized YouTube Platform channels. As discussed more fully below, the Google Defendants and each of the Channel Owner Defendants caused the personal information of children viewing their channels to be collected for the purpose of creating individual profiles for those minors, enabling Defendants to subject the minors to targeted advertising based on their profiles and collectively realize hundreds of millions, if not more, of dollars in revenue as a result.").

8.    According to Google's Privacy Policy, Google collects personal data and information from individuals who visit one of Google's websites or any website that uses Google's services. Included in the information that Google collectedThe Google Defendants entered into these arrangements with the Channel Owner Defendants with full knowledge of the child-directed content the Channel Owner Defendants create and upload to the YouTube Platform and monetize with behavioral advertising, and the Channel Owner Defendants likewise entered into these agreements with the Google Defendants knowing and intending that their channels would be wrongfully utilized to facilitate this pernicious behavioral advertising targeted to children. The Google Defendants and Channel Owner Defendants knew and intended that, as a result of their arrangements, they would mutually profit from the intrusive tracking and targeting of child viewers for purposes of the behavioral advertising. As a result, during the

3

Class Period, Defendants collectively realized hundreds of millions of dollars, if not more, in manipulating the behavior of these children.

6.9.    Included in the personal data and information that Google collected about minor children during the Class Period are "persistent identifiers" such as internet protocol addresses and device serial numbers. Collection of persistent identifiers allows Google to develop profiles of individuals over time by tracking their activities across multiple websites. Recent studies have found that Google is capable of tracking activity across 80% of the internet.  Further, as alleged herein, Google deceptively conceals its systematic collection of a substantial portion of the information and data it collects from users, creating undisclosed "shadow profiles" that it utilizes to enhance its financial gains through advertising operations and activities.  —Notably, Google's Privacy Policy deceptively conceals that the purpose of its tracking and assimilating information from its platforms, including YouTube, is to enable it to target the vulnerabilities of children through behavioral advertising for profit.

7.10.    TheDuring the Class Period, the Channel Owner Defendants knowingly uploaded and hosted child-directed content and monetized their channels with behavioral advertising that uses persistent identifiers to track children.  In the opinion of one FTC Commissioner, as to children under 13, these actions amount to a "widespread and brazen" violation of the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 501, et seq.,.[1] COPPA protects children under thirteen years old from having their personal information ("Personal Information") collected unless their parent has first given verifiable consent. Since 2013, persistent identifiers have been included within the definition of "Personal Information" that operators of website and online services are barred by COPPA from collecting from children under thirteen without parental consent.  years old without verifiable parental consent.  And, Defendants' conduct is not limited to minors under the age of thirteen; Defendants similarly collect the personal information of older children without parental consent.

---

[1] Dissenting Statement of FTC Commissioner Rebecca Kelly Slaughter In the Matter of Google LLC and YouTube, LLC, available for download at https://www.ftc.gov/system/files/documents/public_statements/1542971/slaughter_google_youtube_statement.pdf (accessed Jan. 14, 2021).

On January 21, 2021, President Joseph R. Biden designated Rebecca Slaughter as Acting Chair of the FTC.   See  https://www.ftc.gov/news-events/press-releases/2021/01/ftc-commissioner-rebecca-kelly-slaughter-designated-acting-chair (accessed Jan. 22, 2021).

8.     California, Colorado, New Jersey, and other states provide their citizens with substantial protections against unwarranted invasions of privacy.  In particular, California, Colorado, New Jersey, and 31 other states recognize the common law right to be free from intrusion upon seclusion, as formulated by § 652B of the Restatement (Second) of Torts, which prohibits intentional intrusion upon the solitude or seclusion of another or his or her private affairs or concerns.  In addition, the California Constitution provides California citizens and residents an enumerated right to privacy.

11.     Plaintiffs' minor children, Moreover, the actions undertaken by Defendants, including the tracking and collection of Personal Information from children without verifiable parental consent, were achieved through deceptive conduct.  Publicly, the Google Defendants have consistently and *falsely* denied marketing the YouTube platform to children – and denied that children utilized the YouTube platform.  The Google Defendants did this despite knowing that the YouTube child-directed channels were intentionally designed to appeal to children, that the YouTube Platform was a top attraction for children viewing its content, and despite touting the effectiveness of their tactics to the Channel Owner Defendants, which agreed to use behavioral advertising to monetize their channels on the YouTube platform for their own financial gain.  Indeed, as FTC Commissioner Slaughter further noted: "YouTube has long allowed channel owners to turn off default behavioral advertising and serve instead contextual advertising that does not track viewers, but vanishingly few content creators would elect to do so, in no small part because they receive warnings that disabling behavioral advertising can 'significantly reduce your channel's revenue.' In short, both YouTube and the channels have a strong financial incentive to use behavioral advertising."[2]

12.     Motivated by profits, the Google Defendants encouraged, allowed and paid shared revenues to the Channel Owner Defendants to upload and host monetized child-directed content with behavioral advertising on the non-age restricted YouTube Platform. Despite marketing YouTube as the "favorite website for kids 2-12," internally and in communications with advertisers, the Google Defendants falsely denoted the platform/site as "general audience, so there is no channel/content that is

---

[2] See fn. 1.

child-directed, and that compliance with COPPA was not required."[3] This was a fictional ruse used to evade COPPA's mandates—a ruse that the Channel Owner Defendants knew was false.

13.     Outwardly, Google's Privacy Policies created an expectation of privacy with respect to the YouTube Platform (and other Google apps and services), stating, [w]hen people use our products, they trust us with their information, and it's our job to do right by them" by "being transparent" about "what data we collect, how it's used, and why."[4]

14.     The Google Defendants likewise falsely promised users of the YouTube Platform that they would, at all times, follow the law. To that end, Google's Terms of Service states: "We want to maintain a respectful environment for everyone, which means you must follow these basic rules of conduct" including "comply[ing] with applicable laws."[5]

15.     Google's Code of Conduct on its corporate website is explicit on this score.  It states: "VII. Obey the Law: Google takes its responsibilities to comply with laws and regulations very seriously and each of us is expected to comply with applicable legal requirements and prohibitions."[6]

16.     In short, the Google Defendants, through published Privacy Policies, Terms of Use, and corporate Codes of Conduct, created an expectation of privacy for child viewers of the Channel Owner

---

[3] FTC Complaint, *In the Matter of Google LLC and YouTube, LLC*, at p.9.

[4] *See* Safety Center, *Our privacy and security principles*, Google, https://safety.google/principles/ (accessed Jan. 21, 2021); *see also* Google Privacy Policy, as modified Dec. 18, 2017, available at https://policies.google.com/privacy/archive/20171218-20180525?hl=en  (accessed Jan. 14, 2021); ("*Our goal is to be clear about what information we collect, so that you can make meaningful choices about how it is used.*"); Google Privacy Policy, as modified on March 1, 2012, available at https://policies.google.com/ privacy/archive/20120301?hl=en (accessed Jan. 14, 2021) ("*As you use our services, we want you to be clear how we're using information and the ways in which you can protect your privacy.*").

[5] Google Terms of Service, last updated Mar. 31, 2020, available at https://policies.google.com/terms?hl=en-US (accessed Jan. 14, 2021).

[6] Google Code of Conduct, last updated September 25, 2020, available at https://abc.xyz/investor/other/ google-code-of-conduct/ (accessed Jan. 14, 2021); *see also* Google Code of Conduct, last updated October 17, 2017, archived at https://web.archive.org/web /20180421105327/https://abc.xyz/ investor/other/google-code-of-conduct.html (accessed Jan. March 29, 2021) ("Preface.  'Don't be evil.' Googlers generally apply those words to how we serve our users. But "Don't be evil" is much more than that. . . . [I]t's also about doing the right thing more generally – following the law, acting honorably, and treating co-workers with courtesy and respect.")

---

Defendants' child-directed content on the YouTube Platform, but then tracked and collected Personal Information from those viewers under the false pretense that the Google Defendants would be "transparent" with parents about what information was being collected from child viewers, and comply with applicable legal requirements and prohibitions – including COPPA with respect to children under thirteen – in doing so.  They did neither.  And the Channel Owner Defendants, knowing of the Google Defendants' false promises and violations of the private information of minor children, knowingly agreed, for financial gain, to participate in the Google Defendants' deceitful and wrongful conduct.

17.     The Google Defendants' actions, as herein alleged, subject them to liability for intrusion of seclusion under various state laws and common law principles that provide citizen protections against unwarranted invasions of privacy.  *See, e.g., In Re Nickelodeon Consumer Privacy Litig*., 827 F.3d 262 (3rd Cir. 2016).

18.     The Channel Owner Defendants aided and abetted and are jointly liable for these privacy intrusions.  They each joined with the Google Defendants in a commercial enterprise that had a unity of purpose of tracking and collecting Personal Information from child viewers of the Channel Owner Defendants' child-directed programming on the YouTube Platform, did so with knowledge of the Google Defendants' deceitful and unlawful actions (which they enabled, consented to and refused to use their control over their channels to prevent), and profited handsomely from the resulting harm Defendants caused.

~~9.~~19.   During the Class Period, minor Plaintiffs C.H., E.J., N.J., A.J., L.J, J.A.E., J.R.E., M.W., A.G., and C.D. ~~(collectively, "Plaintiffs' minor children")~~ watched ~~many of the~~one or more monetized YouTube channels ~~during the Class Period, including those~~ owned or operated by the Channel Owner Defendants. While ~~Plaintiffs' minor~~these children viewed videos on the YouTube Platform, Defendants unlawfully and deceptively collected ~~the~~their Personal Information ~~of Plaintiffs' minor children~~, including persistent identifiers, ~~and delivered~~in order to deliver targeted advertisements to ~~Plaintiffs' minor children~~ Plaintiffs that were intended to influence their behavior.

~~10.    Defendants surreptitiously and deceptively collected the Personal Information of Plaintiffs' minor children and other minors under the age of thirteen without verifiable parental consent during the Class Period. Defendants' actions violated the privacy rights and reasonable expectations of~~

7

privacy of Plaintiffs' minor children and other similarly situated young children under thirteen, and constituted unfair and deceptive trade practices.

11.    On September 4, 2019, the Federal Trade Commission and New York State Office of the Attorney General filed a Complaint for Permanent Injunction, Civil Penalties, and Other Equitable Relief (the "FTC Complaint") against the Google Defendants concerning the Google Defendants' wrongful collection and misuse of minors' Personal Information. The Google Defendants entered into a Stipulated Order for Permanent Injunction and Civil Penalty Judgment the same day (September 4, 2019), agreeing to pay $170 million as a civil penalty for their misconduct. Pursuant to the Stipulated Order, the Google Defendants did not agree to immediately cease the misconduct. They were afforded four months to comply (and in some instances, additional time), and, in fact, publicly stated that they would continue their tracking practices for up to four additional months, which enabled them to continue to collect and misuse Personal Information relating to millions of minors for further improper financial gain. Further, the Stipulated Order did not require the Google Defendants to permanently delete, destroy, or otherwise sequester the unlawfully obtained Personal Information that the Google Defendants (or any other entity acting in concert with the Google Defendants as described herein) had collected, disclosed, or utilized concerning Plaintiffs' minor children and the members of the Classes and Subclasses.

20.    Accordingly, minor Plaintiffs, through their parents and guardians, bring this action, and the claims for the relief asserted herein, on behalf of their minor childrenthemselves and the Classes and Subclasses of similarly-situated minors under the age of thirteen (as defined below) whose privacy rights have, like Plaintiffs' minor childrenPlaintiffs, been violated by Defendants, for damages, restitution, and appropriate injunctive and/or equitable relief to address Defendants' unlawful practices.

## JURISDICTION AND VENUE

12.21.   This Court has general personal jurisdiction over Defendants Cartoon Networks Studios, Inc., CookswirlC, DreamWorks Animation LLC, DreamWorks Animation Television, LLC, Google LLC, YouTube LLC, Hasbro Studios LLC, Mattel, Inc., and Pocketwatch, Inc. because their principal places of business are in California. Additionally, all Defendants are subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiffs'

8

claims occurred in this State.

13.22.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d), because the amount in controversy for the Classes and Subclasses exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative class members defined below, and minimal diversity exists because the majority of putative class members are citizens of a state different than Defendants.

14.23.   This Court also has jurisdiction pursuant to 28 U.S.C §1332(d) because the amount in controversy exceeds $75,000 and is between citizens of different states.

15.24.   Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District. Furthermore, Defendants Google LLC and YouTube LLC are headquartered in this District and subject to personal jurisdiction in this District.

## INTRADISTRICT ASSIGNMENT

25.     Assignment to the San Jose Division is proper under Northern District of California Civil Local Rule 3-2(c) because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in Santa Clara County and Defendant Google LLC's principal place of business is located in Santa Clara County, California. Under Civil Local Rule 3-2(e), all civil actions which arise in the County of Santa Clara shall be assigned to the San Jose Division.

## PARTIES[7]

**I.     Plaintiffs**

16.     Plaintiff Nichole Hubbard ("Plaintiff Hubbard") is a natural person and is a resident and citizen of the State of California. Plaintiff is the parent and legal guardian of minor C.H.

17.26. Plaintiff C.H. is a natural person and is a resident and citizen of the State of California. C.H. is under the age of 13. C.H.'s parent and legal guardian is Nichole Hubbard, who is also a resident and citizen of the State of California.

---

[7] Plaintiffs have been retained by and will seek leave to amend to add additional minor child plaintiffs representing additional states and who watched additional channels in California, if this Complaint is upheld in whole or in part.

18.   Plaintiff Cara Jones ("Plaintiff Jones") is a natural person and is a resident and citizen of the State of Colorado. Plaintiff Jones is the parent and legal guardian of minorsPlaintiffs E.J, N.J, A.J, and L.J.

19.   E.J. is a natural person and is a resident and citizen of the State of Colorado. E.J. is under the age of 13.

20.   N.J. is a natural person and is a resident and citizen of the State of Colorado. N.J. is under the age of 13.

21.   A.J. is a natural person and is a resident and citizen of the State of Colorado. A.J. is under the age of 13.

22.   L.J. is a natural person and is a resident and citizen of the State of Colorado. L.J. is under the age of 13.

23.   Plaintiff Justin Efros ("Plaintiff Efros") is a natural person and is a resident and citizen of the State of New Jersey. Plaintiff Efros is the parent and legal guardian of minors J.A.E. and J.R.E.

24.27. Minors J.A.E. and J.R.E. are natural persons and are residents and citizens of the State of Colorado. Both E.J., N.J, A.E.J, and L.J.R.E. and are under the age of 13. Their parent and legal guardian is Cara Jones, who is also a resident and citizen of the State of Colorado.

28.   Plaintiffs J.A.E. and J.R.E. are natural persons and are residents and citizens of the State of New Jersey. J.A.E. and J.R.E. are under the age of 13. Their parent and legal guardian is Justin Efros, who is also a resident and citizen of the State of New Jersey.

25.   Plaintiff Renee Gilmore ("Plaintiff Gilmore")M.W. is a natural person and is a resident and citizen of the State of Tennessee. Plaintiff Gilmore is the parent and legal guardian of M.W.

26.29. M.W. is a natural person and isunder the age of 13. M.W.'s parent and legal guardian is Renee Gilmore, who is also a resident and citizen of the State of Tennessee. M.W. is under the age of 13.

27.   Plaintiff Jay Goodwin ("Plaintiff Goodwin")A.G. is a natural person and is a resident and citizen of the Commonwealth of Massachusetts. Plaintiff GoodwinA.G. is under the age of 13. A.G.'s parent and legal guardian of A.G.

28.30. A.G. is a natural person andJay Goodwin, who is also a resident and citizen of the

10

Commonwealth of Massachusetts. ~~A.G. is under the age of 13.~~

29.   Plaintiff ~~Bobbi Dishman ("Plaintiff Dishman")~~C.D. is a natural person and is a resident and citizen of the State of Indiana. ~~Plaintiff Dishman~~C.D. is under the age of 13. C.D.'s parent and legal guardian ~~of C.D.~~

~~30.~~31. ~~C.D. is a natural person and is~~is Bobbi Dishman ("Plaintiff Dishman"), who is also a resident and citizen of the State of Indiana. ~~C.D. is under the age of 13.~~

## II.   Defendants

### A.   Google Defendants

~~31.~~32.   Defendant Google LLC ("Google") is a business incorporated under the laws of the State of Delaware with its principal place of business in Mountain View, California. Google is a wholly-owned subsidiary of Alphabet, Inc. and is the parent company of Defendant YouTube LLC.

~~32.~~   Defendant YouTube LLC ("YouTube") is a wholly-owned subsidiary of Google LLC incorporated under the laws of the State of Delaware with its principal place of business in San Bruno, California. At all times mentioned herein, acting alone or in concert with Defendant Google LLC, YouTube LLC has advertised, marketed, and distributed its YouTube video sharing platform to consumers throughout the United States.

### B.   Channel Owner Defendants

#### i.   Cartoon Network

33.   Defendant The Cartoon Network, Inc. ("Cartoon Network") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

34.   Defendant Cartoon Network Studios, Inc. ("Cartoon Network Studios") is a Georgia corporation with its principal place of business in Burbank, California.

35.   Collectively, the Cartoon Network and Cartoon Network Studios are referred to as the "Cartoon Network Defendants."

#### ii.   ChuChu TV

36.   Defendant ChuChu TV Studios ("ChuChuTV") is an Indian company with its principal place of business located in Chennai, India. ChuChuTV availed itself of the benefits of conducting business in the United States during the Class Period by targeting United States residents with

ChuChuTV's content.

        iii.  CookieSwirlC

37.    Defendant CookieSwirlC is an entity located in Citrus Heights, California.

      **iii.  DreamWorks**

38.37.  DreamWorks Animation LLC ("DreamWorks") is a Delaware corporation with its principal place of business in Glendale, California.

39.38.  DreamWorks Animation Television, LLC ("DreamWorks TV") is a Delaware corporation with its principal place of business in Glendale, California.

40.39.  Collectively, DreamWorks and DreamWorks TV are referred to as the "DreamWorks Defendants."

      **iv.  Hasbro**

41.40.  Defendant Hasbro, Inc. ("Hasbro") is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island.

42.41.  Defendant Hasbro Studios LLC ("Hasbro Studios") is a Rhode Island corporation with its principal place of business in Burbank, California.

43.42.  Collectively, Defendants Hasbro and Hasbro Studios are referred to as the "Hasbro Defendants."

      **v.  Mattel**

44.43.  Defendant Mattel, Inc. ("Mattel") is a Delaware corporation with its principal place of business in El Segundo, California.

      **vi.  Ryan's World (f/k/a Ryan ToysReview)**

45.44.  Defendant Remka, Inc. ("Remka") is a Texas corporation with its principal place of business in Houston, Texas.

46.45.  Defendant RTR Production, LLC ("RTR Production") is a Texas corporation with its principal place of business in Houston, Texas.

47.46.  Defendant RFR Entertainment, Inc. ("RFR Entertainment") is a Texas corporation with its principal place of business in Houston, Texas.

48.47.  Defendant Pocketwatch, Inc. ("Pocketwatch") is a Delaware corporation with its

12

principal place of business in Culver City, California.

49.48.  Collectively, Remka, RTR Production, RFR Entertainment, and Pocketwatch are referred to as the "Ryan's World Defendants."

## FACTUAL BACKGROUND

**I.     Google and YouTube**

    **A.     Google**

50.    Google is a multinational internet technology and advertising company that owns the world's two most-visited internet webpages: www.google.com and www.youtube.com. Google is best known for operating a search engine that catalogues websites and organizes information on the internet to allow Google users to search the internet's content. Google uses information that it learns from Google users' searches and web traffic patterns on websites it owns (including YouTube) and websites that use Google's advertising services to deliver targeted advertisements. Advertising is Google's primary source of revenue, accounting for approximately $116 billion out of Google's $136.2 billion in revenue in 2018.

    **B.     YouTube**

51.49.  YouTube LLC operates an online video-sharing platform, YouTube. YouTube allows its visitors and/or users to view user-generated content that has been uploaded by registered YouTube users to the YouTube Platform.

52.    To upload videos, individuals must register as a YouTube Platform user using a Google account and set up a "channel." To create a Google account an individual is asked to provide, *inter alia*, his or her name and date of birth. Google prevents users who identify as under thirteen years old from creating a Google account (an "age gate"). YouTube's terms of service additionally provide that the YouTube Platform is not intended for users under thirteen:

12. Ability to Accept Terms of Service

You affirm that you are either more than 18 years of age, or an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in these Terms of Service, and to abide by and comply with these Terms of Service. In any case, you affirm that you are over the age of 13, as the Service is not intended for children under 13. **If you are under 13 years of age, then please do not use the Service. There are lots of other great web sites for you. Talk to your parents about what sites are appropriate for you.** (emphasis added).

13

53.   However, notwithstanding the stated age limitation included in YouTube's Terms of Service, YouTube videos are viewable by anyone who accesses the YouTube Platform by visiting www.youtube.com or using the YouTube mobile or streaming device app. Individuals do not have to be registered with Google, nor signed into the YouTube Platform, to view YouTube videos. The Google Defendants do not verify the age of an individual opening an already-installed YouTube mobile app on a mobile device or through other electronic media, including computers. The Google Defendants have, at all times throughout the Class Period, been well aware that minors under the age of thirteen access YouTube's channels; have actively sought to increase viewers of the YouTube Platform by children under the age of thirteen (all while representing that such minors are not permitted to access the Platform); and have sought to exploit, for commercial purposes and gain, the millions of YouTube viewers under the age of thirteen through Google's advertising practices, which comprise the vast majority of Google's earnings. Nor is it likely that most viewers see YouTube's terms of service, which are accessible only through a link displayed in very small font at the bottom left corner of the YouTube homepage. Minor children are particularly unlikely to click on YouTube's terms, and, regardless, would not have the ability to understand them or consent to them.

50.   The Google Defendants have, at all times throughout the Class Period, been well aware that minor children access YouTube's channels and have actively sought to increase viewing on the YouTube Platform by children through content directed toward those children, while publicly representing that such minors are not permitted to access the Platform – and have been astoundingly successful attracting this young viewership.

## II.   Google's Advertising Practices

54.51.  Google offers a number of services, such as YouTube and the email service Gmail, free of charge. Google earns revenue from these services via advertising.

### A.   Google's Privacy Policy

55.52.  The Google Defendants collect personal information from individuals who access the YouTube Platform. Google's Privacy Policy applies to the YouTube Platform and outlines the personal information the Google Defendants collect. Defendants collect, *inter* alia, the following information about YouTube's users:

14

- **User Activity**: searches run, videos watched, views and interactions with content and ads, voice and audio information, purchase activity, people with whom a user communicates, browsing history, and activity on third-party sites and apps that use Google services, which includes Google's advertising services);

- **Location Information:** GPS, internet protocol ("IP") address, device sensor data, and data from devices located near a user;

- **Unique Identifiers:** cookie ID, advertising ID, device ID, among others.

56.53. Google defines the term "unique identifiers" as a string of characters that can be used to uniquely identify a browser, app, or device."[8] Unique identifiers can arise from a variety of applications, websites, sensors, and devices.

### i. Cookies

57.54. Google stores some unique identifiers in a text file stored on an individual's browser. These text files are known as "cookies." The type of information stored in cookies can include websites the user has previously visited, the duration of website visits, videos viewed, advertisements viewed, duration of video views, and advertisements clicked, among other information. One popular use of cookies is to enable an individual to visit a series of affiliated websites, for example Gmail and YouTube, without having to re-enter his or her user name and password on each. Each cookie contains a string of characters, or a "cookie ID," that allows the website or service to recognize that specific browser. Cookies, and the unique identifiers stored in cookies, can generally be deleted.

### ii. Persistent Identifiers

58.55. Some data and/or information Google collects cannot be easily deleted or reset. Because these data points remain constant, or "persist," they are colloquially referred to as "persistent identifiers." Common examples of persistent identifiers are social security numbers and phone numbers. Since persistent identifiers are difficult to change or reset, they are seen by advertisers as a more reliable method of identifying and tracking users over time than cookies.

59.56. One example of a persistent identifier collected by Google is a user's IP address. An IP

---

[8] Google Privacy Policy, Google, https://policies.google.com/privacy?hl=en-US (accessed Oct. 21, 2019).

address is a numerical label assigned to each device connected to a computer network, such as the internet. Another example of a persistent identifier collected by Google is a device's International Mobile Equipment Identity ("IMEI") number. Every mobile phone and smartphone is assigned a unique IMEI that cannot be changed.

60.57.  The Google Defendants use persistent identifiers to track individuals' internet behavior. For example, a website that uses Google's advertising services to deliver ads to its visitors will send Google its visitors' IP address and/or IMEI number. When another website that uses Google's advertising services sends Google the same IP address or IMEI number, Google knows that individual has visited both websites. Recent studies have found that Google is capable of tracking individuals *over 80% of the internet*.[9]

61.58.  Google uses this information to build detailed individual profiles which include identifiers that correlate with individual users. Most individuals have no idea that Google is tracking their activity across 80% of the internet. The data, and virtually no minor child would have any understanding of this activity. The data that Google gathers is stitched into a single profile of a user which gives Google the most accurate, up-to-date, snapshot of a user's attributes and behaviors. Google uses this data to deliver targeted advertisements to YouTube video viewers based on preferences inferred from their profiles. User profiles such as those developed by Google have been called the "holy grail" of advertising[10] and allow Google to charge advertisers increased advertising rates.

62.59.  Google uses unique and persistent identifiers to track individuals' activity on any webpage that is using Google's advertising services. An individual's activity on those websites is shared with Google:

**Your activity on other sites and apps**

---

[9] Steven Englehardt & Arvin Narayanan, *Online Tracking: A 1-million-site Measurement and Analysis*, Princeton University WebTAP Project, http://randomwalker.info/publications/OpenWPM_1_million_site_tracking_measurement.pdf (accessed Oct. 21, 2019) (emphasis added).

[10] Randell Cotta, Sr., *Overcoming the Last Hurdle in the Quest for the "Holy Grail" of Marketing*, KD NUGGETS, https://www.kdnuggets.com/2017/02/quest-holy-grail-marketing.html (accessed Oct. 21, 2019).

This activity might come from your use of Google services, like from syncing your account with Chrome or your visits to sites and apps that partner with Google. Many websites and apps partner with Google to improve their content and services. For example, a website might use our advertising services (like AdSense) or analytics tools (like Google Analytics), or it might embed other content (such as videos from YouTube). These services may share information about your activity with Google and, depending on your account settings and the products in use (for instance, when a partner uses Google Analytics in conjunction with our advertising services), this data may be associated with your personal information.[11]

63.60.   Google states that it uses these profiles to deliver "more relevant search results and ads" to YouTube video viewers.[12] To illustrate this point, Google offers the following example: "if you watch videos about baking on YouTube, you may see more ads which relate to baking as you browse the web."[13]

61.   Nowhere did Google's Privacy Policy advise or explain that the collection of information from viewers of the content directed at children on YouTube was solely for the purpose of the Google Defendants' and the Channel Owner Defendants' financial gain through manipulation of those viewers in order to engage in behavioral advertising, which was in contravention of and/or concealed by the stated purposes contained in the Privacy Policy. In other words, the Google Privacy Policy – to the extent it provided any indication of collecting information from users – represented that it was for the benefit of the users and to improve Google's services. Establishing profiles solely to target and manipulate children for behavioral advertising for the Google Defendants' and the Channel Owners' financial benefit, rather than the benefit of the user, was antithetical to the Google Defendants' representations in the Privacy Policy.

64.   Further, Google did not, and does not, have a separate privacy policy for minor children under the age of thirteenOctober 2019 or later. Google applied the data collection practices described

[11] Google Privacy Policy (accessed Oct. 21, 2019).

[12] *Id.*

[13] *Ads you'll find most useful*, Google Privacy & Terms, https://policies.google.com/privacy/example/ads-youll-find-most-useful?hl=en (accessed Oct. 16, 2019) (emphasis added).

---

17

herein to each individual who visited YouTube, Google, or any website using any of Google's services during the Class Period, irrespective of that individual's age. – even for viewers of children's content on YouTube, for which the primary audience, as Google knew full well, is children.[14]

62.     After reaching a settlement with the FTC and the New York Attorney General in fall 2019, Google announced that it would begin complying with COPPA on the YouTube platform for the first time beginning in January 2020:

> We are changing how we treat data for children's content on YouTube. Starting in about four months, we will treat data from anyone watching children's content on YouTube as coming from a child, regardless of the age of the user. This means that we will limit data collection and use on videos made for kids only to what is needed to support the operation of the service. We will also stop serving personalized ads on this content entirely, and some features will no longer be available on this type of content, like comments and notifications. In order to identify content made for kids, creators will be required to tell us when their content falls in this category, and we'll also use machine learning to find videos that clearly target young audiences, for example those that have an emphasis on kids characters, themes, toys, or games.[15]

YouTube also committed to introducing a new annual training for its teams regarding COPPA.

63.     Subsequent to the filing of Plaintiffs' initial complaint, Google also created a "Privacy Notice for Google Accounts Managed with Family Link, for Children under 13 (or applicable age in your country).[16] In this Privacy Notice, Google admits to collecting minor children's Personal Information and tracking their activities across the Internet, including to provide recommendations, personalized content, and customized search results.[17] Now, in a change from its former practice, Google represents that it "will not serve personalized ads to your child, which means ads will not be based on information from your child's account. Instead, ads may be based on information like the content of the website or app your child is viewing, the current search query, or general location (such as city or

---

[14] *An update on kits and data protection on YouTube*, YouTube Official Blog, Sept. 4, 2019, https://youtube.googleblog.com/2019/09/an-update-on-kids.html (accessed Jan. 20, 2021).

[15] *An update on kids and data protection on YouTube*, YouTube Official Blog, Sept. 4, 2019, https://youtube.googleblog.com/2019/09/an-update-on-kids.html (accessed Jan. 20, 2021).

[16] https://families.google.com/familylink/privacy/child-policy/ (accessed Dec. 2, 2020).

[17] *Id.*

state)."[18]   Google also now purports to allow children or parents to delete minor children's activity.[19] None of these disclosures about its collection and tracking of minor children's Personal Information and internet activities or purported creation of a right to delete collected information about minor children existed at the time this action was filed.

**B.      YouTube Channel Monetization**

65.64.  YouTube channel owners that pass a viewership threshold set by the Google Defendants can choose to "monetize" their channel by allowing Google to run advertisements on ~~the channel owner's~~that channel. Advertisements can take the form of a video clip played before, during, or after the channel owner's video is played, or can be displayed as a banner. The Google Defendants and the owners of monetized YouTube channels share such advertising revenue. The Google Defendants keep 45% of the advertising revenue and the channel owner receives 55%.[20]

**C.      Google's Targeted Advertising Techniques**

66.65.  Advertising on YouTube can either be behavioral or contextual targeting. Behavioral targeting is the delivery of advertisements to individuals based on that user's personal information, which is tracked across multiple websites, apps, and devices. The information Google Defendants collect is incorporated into an algorithm which can infer which types of advertisements are likely to have the greatest impact on the user associated with the information (*i.e.,* most likely to be clicked).

67.66.  Behavioral targeting is the default method of advertising employed by Google on monetized channels because it is the most lucrative for both the Google Defendants and for YouTube channel owners. From the user's perspective, it is also the most intrusive form of targeting. Owners of monetized channels can opt out of behavioral targeting. If a channel owner opts out, Google will employ contextual targeting.

68.67.  Contextual targeting is a process by which Google matches advertisements to relevant YouTube channels using keywords provided by the advertiser. Google's system analyzes the content of

---

[18] *Id.*

[19] *Id.*

[20] *See* Eric Rosenberg, *How YouTube Ad Revenue Works*, Investopedia (Oct. 7, 2018), https://www.investopedia.com/articles/personal-finance/032615/how-youtube-ad-revenue-works.asp (accessed Oct. 24, 2019).

a YouTube channel to determine its central theme, which is then matched to an advertiser's advertisements using a variety of factors including keywords and topic selections. Contextual targeting does not rely on user-specific data to provide ads.

69.68.  Behavioral targeting is thought be more effective than contextual targeting. Google thus pays YouTube channel owners more for allowing Google to run behavioral targeted advertisements than contextual targeting.

**III.    California, Colorado, New Jersey and Thirty-One Other States'States Recognize a Common Law Right to be Free from Intrusion Upon Seclusion, and the California Constitution's EnumeratedConstitution Specifically Enumerates a Right to Privacy**

70.69.  "Invasion of privacy has been recognized [in California] as a common law tort for over a century." *Matera v. Google Inc.*, 15-CV-0402, 2016 WL 5339806, at *10 (N.D. Cal, Sept. 23, 2016) (citing Restatement (Second) of Torts §§ 652A-I for the proposition "that the right to privacy was first accepted by an American court in 1905, and 'a right to privacy is now recognized in the great majority of the American jurisdictions that have considered the question'"). *Id.* "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." Samuel D. Warren & Louis Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193, 198 (1890).

71.70.  The Second Restatement of Torts recognizes the same privacy rights through its tort of intrusion upon seclusion, explaining that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652B (1977). The United States Supreme Court has similarly recognized the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right to privacy older than the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965). In addition to California, Colorado, and New Jersey, 31 other states recognize the common law cause of action for intrusion upon seclusion, and California, Colorado, New Jersey and the other 31the states all adhere to the formulation and elements of that cause of action set forth in § 652B of the Restatement (Second) of Torts based on elements of the cause of action similar to the

elements adopted in California.[21] All of these States recognize the heightened need to protect the privacy interests of minor children.

72.71.  California amended its constitution in 1972 to specifically enumerate a right to privacy in its very first section, and courts have recognized that this afford individual's affords individuals a private right of action for invasions of their privacy. *See* CAL. CONST. ART. I, § 1. The California Supreme Court has recognized the fundamental injuries at stake in privacy violations, explaining as follows:

> [A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity . . . A [person] . . . whose conversations may be overhead at the will of another . . . is less of a [person], has less human dignity, on that account. He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

*Shulman v. Grp. W Prods.*, Inc., 18 Cal. 4th 200, 231 (1998) (quoting Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. REV. 962, 973-74 (1964)); *see also Gill v. Curtis Pub. Co.*, 38 Cal. 2d 273, 276 (1952) ("Recognition has been given of a right to privacy, independent of the common rights to property, contract, reputation and physical integrity... In short, it is the right to be let alone.") (internal quotation marks omitted).

## IV.     The Children's Online Privacy Protection Act of 1998

73.72.  Congress passed COPPA in 1998 in response to concerns that children's online activities were being tracked by operators of websites and online services. Specifically, COPPA is intended to "maintain the security of personally identifiable information of children collected online" and to "protect children's privacy by limiting the collection of personal information from children without parental consent."[22]  COPPA provides, in pertinent part, that:

> It is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations

---

[21] The other 31 states are Alabama, Alaska, Arizona, Arkansas, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia.
[22] 144 CONG. REC. S12787.

prescribed [by the Federal Trade Commission].

15 U.S.C. § 6502(a).

~~74.~~73.  COPPA applies to any operator of a commercial website or online service directed to children under thirteen years of age that collects, uses, and/or discloses personal information from children. The FTC has interpreted COPPA's definition of "website or online service" to include individual channels on a general audience platform. Thus, according to the FTC, "content creators and channel owners" are both "standalone 'operators' under COPPA, subject to strict liability for COPPA violations."[23]  Additionally, the FTC considers third parties with actual knowledge that they are collecting personal information from users of a child-directed site or service as operators under COPPA.

~~75.~~74.  In order to determine whether a website or online service is "directed to children" the FTC will:

> [C]onsider [the website's or online service's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.

16 CFR § 312.2

~~76.~~75.  Websites or online services that collect personal information from users of other child-directed websites or online services are deemed as "child-directed" if the website or online service "has actual knowledge that it is collecting personal information directly from users of another Web site or online service directed to children." 16 C.F.R. § 312.2.

~~77.~~76.  COPPA defines a "child" as an individual under the age of thirteen. 15 U.S.C. § 6501(a). In relevant part, the FTC regulations require an operator to disclose information collection practices and "obtain verifiable parental consent for [any] collection, use, or disclosure of personal information from children." *Id.* § 6502(b)(1)(A); *see* 16 C.F.R. § 312.5(a).

~~78.~~77.  COPPA prohibits the collection of the following information ("Personal Information")

---

[23] Statement of Joseph J. Simons & Christine S. Wilson, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf  (accessed Oct. 21, 2019).

22

from children under thirteen without parental consent:

     a.   full name;

     b.   home or physical address;

     c.   online contact information such as an email address or other identifier;

     d.   telephone number;

     e.   social security number;

     f.   persistent identifier that can be used to recognize a user over time and across different sites, including a cookie number, an IP address, a processor or device serial number, or a unique device identifier;

     g.   Photo, video, or audio file containing a child's image or voice; and

     h.   Geolocation information sufficient to identify a street name and city or town.

79. 78.  COPPA thus prohibits, *inter alia*, the collection of persistent identifiers for behavioral advertising absent notice and verifiable parental consent. 16 C.F.R. §§ 312.5(c)(7), 312.2.

80. 79.  Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under" 15 U.S.C. § 57a.

81.   When videos are viewed on the YouTube Platform by children under the age of thirteen, Defendants do not disclose that they are tracking, profiles, and targeting children—and do not obtain verified parental consent to do so.

80.   Moreover, the standards in COPPA have given rise to accepted norms throughout society for defining the expectations of privacy for minor children.

## SUBSTANTIVE ALLEGATIONS

**I.**    I.   **The Google Defendants** ~~Deceived the Public Regarding Their Collection of Personal Identifiers~~**Deceptively Tracked American Children without Consent**

82. 81.  At all material times, the Google Defendants deceived Plaintiffs and the members of the Classes and Subclasses regarding their data collection and tracking behavior. As alleged herein, the Google Defendants—in concert, with the authorization and consent of the Channel Owner Defendants—. knowingly and purposefully tracked, profiled, and targeted minors on the YouTube Platform for

advertising revenue in contravention of privacy rights, societal norms and federal and state statutes, while feigning compliance with these rights and statutes. Plaintiffs and the members of the Classes and Subclasses were exploited by the Google Defendants (and their advertising partners, such as the Channel Owner Defendants) for financial gain.

83.    The Google Defendants make a serial practice of the deceptive collection and use of user activity on its platform(s). Well-founded analysis explains that the Google Defendants—to the extent they accurately disclose any data collection activities—are engaged in the creation of "shadow profiles" of users (irrespective of whether or not they have Google accounts) tracking, collecting, and using "hidden datasets" regarding *all* activity, a significant amount of which is concealed from and unknown to users, and even allows the Google Defendants to target users who have "opted out" of advertising (or data collection) and/or have deleted data. The Google Defendants "monetize" this deceptively collected and stored data, which includes, among other things, unique identifiers, personal information, location information, cookie data and metadata, enhancing Google Defendants' ability to realize the billions they earn annually in advertising revenue.[24]

**H.    The Google Defendants Knowingly Targeted Children Under Thirteen on YouTube**

84.    On September 4, 2019, Google issued a statement in conjunction with its settlement with the FTC and New York Attorney General's office for alleged violations of COPPA that included, *inter alia*, the following:

> From its earliest days, YouTube has been a site for people over 13, but with a boom in family content and the rise of shared devices, the likelihood of children watching without supervision has increased. We've been taking a hard look at areas where we can do more to address this, informed by feedback from parents, experts, and regulators, including COPPA concerns raised by the U.S. Federal Trade Commission and the New York Attorney General that we are addressing with a settlement announced today.[25]

---

[24] Oracle, *Google's Shadow Profile: A Dossier of Consumers Online and Real World Life* (Feb. 2019), https://assets.publishing.service.gov.uk/media/5e1c4985e5274a06b7450a13/Oracle_-_Response_to_SoS_-_Appendix_4_-_Google_Shadow_Profiles.pdf at 1-2, 17, *passim* (accessed Mar. 12, 2020).

[25] *An update on kits and data protection on YouTube*, YouTube Official Blog, Sept. 4, 2019, https://youtube.googleblog.com/2019/09/an-update-on-kids.html (accessed Oct. 22, 2019).

SECOND THIRD AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

85.   ~~But the facts establish that the Google Defendants have always targeted children as a core audience. At all relevant times, the Google Defendants solicited and encouraged the creation of content that was directly aimed at children under thirteen and made that content available on the YouTube Platform.~~

82.   ~~For example, YouTube~~ The Google Defendants deceptively operated the YouTube Platform as if it were only used by adults while intentionally luring millions of children to the platform. The Google Defendants intentionally tracked and collected the personal information of each YouTube platform user, treatment only an adult can legally consent to, in order to target children with behavioral advertising despite knowing that millions of these users were actually minor children, including minor children under the age of thirteen, solely for the financial benefit of the Google Defendants and the Channel Owner Defendants, who knowingly and willingly consented to the conduct.

**A.   Google Defendants Designed YouTube to be Inappropriate for Children.**

83.   The Google Defendants operate YouTube according to the principle that the YouTube consumer is the product. The Google Defendants expect YouTube Platform users to consent to the Google Defendants' data collection practices and subject them to periodic advertisements calculated (based on their own data) to appeal to them.

84.   Data collection of this nature requires the consent of the individual whose data is being collected. But only adults are capable of giving such consent – to the extent it was sufficiently explained in Google's Privacy Policy or YouTube Terms of Service.

85.   The Google Defendants thus inserted language into the YouTube Terms of Service, and later the Google Privacy Policy, which indicated that YouTube was intended to be used by individuals thirteen and older. According to the Google Defendants, this statement, buried within their privacy policy, was adequate to absolve them of any responsibility to limit their data collection practices.

86.   The Google Defendants' attempt to insulate themselves from their conduct by notifying children that the website is not for them is, as described above, simply an artifice.  In addition, as described above, nowhere do the Google Defendants disclose that they engage in the tracking of information in order to profile and target children who view the YouTube platform solely for the purposes of the Google Defendants' financial gain from behavioral advertising, which they share with

the Channel Owner Defendants who enable this conduct.

**B.     Google Lured Children to the YouTube Platform with Child-Directed Content**

87.     The economic benefits to the Google Defendants from this conduct were simply too lucrative to pass up.  Thus, despite their repeated, consistent, and public representations that the YouTube Platform was for adults, the Google Defendants engaged in a concerted effort to lure millions of minor children, including minor children under the age of thirteen, to use the YouTube Platform so that the Google Defendants could track them and show them advertisements for profit, enlisting trusted children's brands to create child-directed content.

88.     To accomplish this, the Google Defendants put together guides for content creators which contained insights the Google Defendants had gleaned from their surreptitious tracking of consumers across the internet. This included the creation of the "YouTube Academy" to offer advice on creating "family-friendly" content to YouTube channel owners to enable them be more successful (*i.e.*, get more views and earn more money) and also provided content creators with a 94-page field guide to help content creators produce the "best content for children."[26] The Google Defendants used the YouTube Academy and the field guide to help ensure that children would flock to the platform and remain on it.

89.     The Google Defendants also deceptively used the creation of the YouTube Kids App as a guise to generate content for children on the YouTube Platform. YouTube Kids' is YouTube's application "Made Just for Kids," and was "designed to be a safer and simpler place for kids to explore their interests through online video."[27] Yet the Google Defendants mandated that *every video that was available on the YouTube Kids App was also uploaded to the YouTube Platform*. Because every video on the YouTube Kids App was directed towards young children, this necessarily meant that the Google Defendants were knowingly uploading content to the YouTube Platform that was designed specifically to attract child viewers.  Despite this knowledge, the Google Defendants tracked every single viewer of these videos on the YouTube Platform. And, as described herein, the viewership of YouTube – the new

---

[26] *YouTube Kids Field Guide*, YouTube, https://static.googleusercontent.com/media/www.youtube.com/en//yt/family/media/pdfs/creating-for-youtube-kids-fieldguide.pdf (accessed Oct. 22, 2019).
[27] https://www.youtube.com/intl/ALL_us/kids/safer-experience/?gclid=Cj0KCQiAjKqABhDLARIsABbJrGmo2SCCYT5X9FGB8mJtmE14Y-AE2-H1IfLOdYEFfTO513LmMMpO7rYaAmiJEALw_wcB&gclsrc=aw.ds (accessed Jan. 22, 2021.)

26

"Saturday Morning Cartoons" – dwarfed that of YouTube Kids.

90.     Significantly, until 2019, the YouTube Kids App was *only* available as a mobile app, and was *not* accessible via web browser. This meant that when a child searched (likely using Google) for her favorite show on a web browser, the child would be shown links to child-directed content hosted *on the YouTube Platform* and *not* the YouTube Kids App, which the Google Defendants did not use to employ their tracking and behavioral advertising scheme. If the child clicked any of those links and watched those videos, they would be tracked as if they were an adult YouTube user.

~~86.~~91.   As the screenshot below shows (the page has now been removed from YouTube's website), the Google Defendants were aware and encouraged content creators to post child-directed content on the YouTube Platform – YouTube Academy provided specific guidance on creating content intended *for young children on the YouTube Platform* (not YouTube Kids):



87.92.  To remove any doubt as to what age groups this content was developed for, the Google Defendants also created a rating system whereby YouTube channel owners could signal that their videos were safe for children under thirteen. The ratings options were **Y (generally intended for ages 0-7)**; G (intended for any age); PG (generally intended for ages 10+); Teen (generally intended for ages 13+); MA (generally intended for ages 16+); and X (generally intended for ages 18+). At one point, YouTube also used the classification "Made for Kids" for certain videos shown on YouTube. YouTube encouraged content creators to accurately categorize their content so that they could properly target children viewers with advertisements.

88.    YouTube also created the "YouTube Academy" to offer advice on creating "family-friendly" content to YouTube channel owners to enable them be more successful (*i.e.*, get more views and earn more money). As the screenshot below formerly contained on YouTube's website shows (the page has now been removed from YouTube's website), the YouTube Academy provided specific guidance on creating content intended for young children on the YouTube Platform (not YouTube Kids):

93.    The Google Defendants also misleadingly used their creation of YouTube Kids as a guise to generate content for children under thirteen on the YouTube Platform. All content posted on YouTube Kids was also available on the general YouTube Platform during the Class Period. To promote the creation of content for children, the Google Defendants provided a 94-page field guide to help content creators produce the "best content for children."[28] But the Google Defendants knew that far fewer children useWhile the Channel Owner Defendants signaled what age groups their videos were intended for, *the Google Defendants* "rate[d] all videos uploaded to YouTube, as well as the channels as a whole. Defendants assign[ed] each channel and video a rating . . . Defendants assign[ed] these ratings through both automated and manual review."

**C.    The Google Defendants Were Aware They Were Tracking Children**

89.94.  The Google Defendants knew that the deceptive tactics they employed to steer and lure children to the YouTube Platform were successful and that far fewer children use the YouTube Kid's

---

[28] *YouTube Kids Field Guide*, YouTube, https://static.googleusercontent.com/media/www.youtube.com/en//yt/family/media/pdfs/creating-for-youtube-kids-fieldguide.pdf (accessed Oct. 22, 2019).

Platform compared to the YouTube Platform. For example, an August 2019 study that ranked 350 children's brands across 19 consumer categories ranked YouTube #1 and YouTube Kids #50.[29] Another recent study found that almost twice as many children used the YouTube Platform (83%) as used YouTube Kids (45%).[30]

~~90.~~95. Additional studies confirm that the Google Defendants' efforts throughout the Class Period to ~~make~~ attract young children to the YouTube ~~the "new 'Saturday Morning cartoons'"~~Platform were successful.[31] For example:

- A 2014 study by The Marketing Store and Kid Say ("2014 Global Kids Study") found that YouTube was voted as the unanimous favorite website of kids 2-12 and that 93% of tweens (children aged 8-11) used YouTube;[32]

- A 2015 study by Nielson MRI ("2015 Nielson Study") found that YouTube was the "leader in reaching children age 6-11 against top TV channels. The study found that 63% of children age 6-11 watch YouTube, tying TV channel Nickelodeon and beating the Disney Channel (57%) and Cartoon Network (49%);[33]

---

[29] ~~*Smarty Pants® Study Finds YouTube Is #1 Brand Among U.S. Kids*, PR NEWSWIRE (Aug. 1, 2019), https://www.prnewswire.com/news-releases/smarty-pants-study-finds-youtube-is-1-brand-among-us-kids-300894505.html (accessed Oct. 22, 2019).~~

[30] ~~Alexandra Whyte, *The surprising social sites where kids spend their time*, KIDSCREEN (Apr. 4, 2019), http://kidscreen.com/2019/04/04/the-surprising-social-sites-where-kids-spend-their-time/ (accessed Oct. 22, 2019).~~

[31] ~~*Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief – Ex. C*, No. 19-cv-2642, ECF No. 3-1, Sept. 6, 2019 ("FTC Exhibit C").~~

[32] *Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief – Ex. B*, No. 19-cv-2642, ECF No. 3-1, Sept. ~~6~~4, 2019 ("FTC Exhibit B").

[33] *Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief – Ex. A*, No. 19-cv-2642, ECF No. 3-1, Sept. ~~6~~4, 2019 ("FTC Exhibit A").

29

- A 2016 study by LMX ("2016 LMX Study") found that YouTube was "the #1 website regularly visited by kids," beating out the likes of Disney, Cartoon Network, PBS, and Amazon;[34]

- A July 2016 Google Consumer Survey ("2016 Google Consumer Survey") of 1683 parents of children ages 2-14 found that "YouTube is the #1 source where children discovery new toys + games;"[35]

- A 2017 study by Smarty Pants ("2017 Smart Pants Study") found that 96% of children ages 6-12 were aware of YouTube and that 94% either love (71%) or like (24%) YouTube.[36] The same study found that 90% of the children that know YouTube say they use it, 83% of whom use it *daily*;[37] and

- A 2019 by Pew Research ("2019 Pew Study") study found that videos that "videos that were directly aimed at a young audience and *also* featured a child under the age of 13 were more popular than any other type of content identified in [the] analysis as measured by view counts."[38]

91.96. The As one of the world's most sophisticated advertising companies, the Google Defendants did not need these studies to know that they were aware of and successfully attracting millions of child viewers to the YouTube Platform. However, in case there was any doubt as to the Google Defendants' awareness of their popularity among young children, evidence establishes that the Google

---

[34] FTC Exhibit C.

[35] *Id.*

[36] Smarty Pants, *2017 Brand Love Study: 2017 Kid & Family Trends*, at 7 (2017), https://daks2k3a4ib2z.cloudfront.net/5435eb4d1e426bb420ac990f/5a316f4f4a2f7d000196532b_2017%20Kid%20and%20Family%20Trends%20Report%20EXCERPT.PDF (emphasis added).

[37] *Id.*

[38] Patrick Van Kessel, *A Week in the Life of Popular YouTube Channels*, PEW RESEARCH CENTER, July 25, 2019, https://www.pewinternet.org/2019/07/25/a-week-in-the-life-of-popular-youtube-channels/ (accessed Oct. 16, 2019) (emphasis in original).

Defendants used these very studies to market themselves to companies that make toys and others children's products, including the Channel Owner Defendants Hasbro Defendants and Mattel, as a top destination for children under thirteen. For example, Google gave a presentation entitled "Insight on Families Online" to Mattel, owner of the Fisher-Price line of toys, Barbie, Hot Wheels, among others and cited the 2015 Nielsen Study. [39] Mattel's YouTube presence includes several channels directed towards children under thirteen, including: Barbie, Monster High, and Thomas & Friends.

92.97.   Google also included a section called "Stat Pack: Additional insight into mobile usage among parents + children" in a presentation to the Hasbro Defendants, maker of GoBots, Lite-Brite, My Little Pony, Play-Doh, Pokémon, Trolls, among other products. In the presentation, Google cited the 2014 Global Kids Study.[40] In a second presentation to the Hasbro Defendants, Google included a section entitled "2016 Kids + Family Digital Trends" and cited both the 2016 LMX Study and Google's own 2016 Google Consumer Survey.[41]

98.   While the Google Defendants were citing these studies to toy companies, they were simultaneously reiterating their false contention that the YouTube Platform was not intended for children. For example, when a consumer advocacy group filed a complaint with the Federal Trade Commission over YouTube's data collection practices, a YouTube spokesman told the New York Times: "Because YouTube is not for children, we've invested significantly in the creation of the YouTube Kids app to offer an alternative specifically designed for children." This was misleading at best because what YouTube Kids really allowed the Google Defendants to do was to openly solicit the development of more child-directed content from its Channel Owner Defendant partners that could also be posted on the YouTube Platform for their mutual profit through behavioral advertising targeting young children.

**III.   Economic Incentives Drove the Channel Owner Defendants to Bait and Exploit Children Using Nursery Rhymes, Cartoons, and Other Child-Directed Content**

---

[39] FTC Exhibit A.

[40] FTC Exhibit B.

[41] FTC Exhibit C.

93.99.  The Channel Owner Defendants recognized the economic benefits of creating child-directed YouTube content that could be used to track Personal Information of minor children and electedentered into agreements with the Google Defendants to monetize their YouTube channels (*i.e.,* allow behavioral targeted advertising to be shown to minors and all other viewers) during the Class Period. By choosing to monetize their YouTube channels and allow the Google Defendants to employ the more lucrative behavioral targeted advertising, each of the Channel Owner Defendants knew (or should have known) that given the nature of the behavioral targeted advertising, the Google Defendants were in fact targeting minor children, including children under the age of 13, by tracking Personal Information about those children.  As discussed above, the Google Defendants shared 55% of the advertising revenue generated by the Channel Owner Defendants' with them. All Defendants therefore economically benefited when the Channel Owner Defendants content successfully lured children under thirteen on to the YouTube Platform and the Google Defendants showed these children behavioral targeted advertisements.

94.100.        The Channel Owner Defendants accomplished this by creating content intentionally designed to attract children, including especially children under the age of thirteen, includingwith content featuring nursery rhymes and children's songs, toys, and already-popular cartoons. The Google Defendants knew this, as confirmed by the Attorney General of New York's discovery that a "well-known channel owner . . . repeatedly informed Google and YouTube that its videos were directed to children younger than 13-years-old."[42]

**A.**  A.  **Defendant ChuChuTV**

---

[42] Letitia James, *Google and YouTube to Pay Record Figure For Illegally Tracking And Collecting Personal Information From Children,* New York State Office of the Attorney General, Sept. 4, 2019, https://ag.ny.gov/press-release/2019/ag-james-google-and-youtube-pay-record-figure-illegally-tracking-and-collecting (accessed Oct. 21, 2019).

101.   Defendant ChuChuTV created the monetized ChuChuTV Nursey Rhymes & Kids Songs in 2013[43] and opted to monetize the ChuChuTV Nursery Rhymes & Kids Songs YouTube channel during the Class Period. Defendant ChuChuTV is thus a "content creator[] who upload[ed] child-directed content and monetize[ed] [its] channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent" described by FTC Commissioner Rebecca Kelly Slaughter as the primary violators of COPPA on YouTube.[44]

102.   The Google Defendants gave Defendant ChuChuTV the option to turn off behavioral advertising and to instead show contextual advertising to its viewers, thus giving Defendant ChuChuTV the authority to control the deceptive conduct at issue. Upon information and belief, because it would have earned less revenue, Defendant ChuChuTV agreed to allow behavioral advertising to viewers on the YouTube Platform.

103.   Defendants ChuChuTV's child-directed YouTube channels were included as part of the Google's Preferred "Parenting & Family" Lineup as of March 2018.[45] Because advertisers signing up to advertise to Google Preferred Lineups had the option to serve behavior-based targeted advertising to viewers of those channels, upon information and belief, Plaintiffs believe a channel could not be part of Google's Preferred "Parenting & Family" Lineup without enabling behavioral advertising on its channel.[46]

---

[43]   Alexis C. Madrigal, *Raised by* YouTube, THE ATLANTIC (Nov. 2018), http://www.theatlantic.com/magazine/archive/2018/11/raised-by-youtube/570838/ (accessed Oct. 21, 2019).

[44] *See* Rebecca Kelly Slaughter, *Dissenting Statement of Commissioner Rebecca Kelly Slaughter In the Matter of Google LLC and YouTube, LLC*, FEDERAL TRADE COMMISSION (Sept. 4, 2019), https://www.ftc.gov/system/files/documents/public_statements/1542971/slaughter_google_youtube_st atement.pdf ("YouTube is likely the online service that today hosts the most violations of COPPA. These violations are primarily committed by content creators who upload child-directed content and monetize their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent.")

[45] *See In the Matter of Request to Investigate Google's YouTube Online Service and Advertising Practices for Violating the Children's Online Privacy Protection Act,* Center for Digital Democracy, *et al.,* p. 12.

[46] *See, e.g.* Tim Peterson, *With an eye on TV ad budgets, YouTube debuts search-based video ad targeting,* DIGIDAY (Mar. 13, 2018), https://digiday.com/future-of-tv/youtube-adds-search-based-

---

33

95.104.     Today, ChuChuTV Nursery Rhymes & Kids Songs has over 27 million subscribers and 18 billion views.[47] ChuChuTV Nursery Rhymes & Kids Songs' homepage features digital animal cartoons and cartoons of children. The "About" section of ChuChuTV Nursery Rhymes & Kids Songs' YouTube channel states:

> ChuChuTV is designed to engage children through a series of upbeat nursery rhymes and educational songs with colorful animations. Our ChuChuTV characters will teach kids their favorite nursery rhymes, colors, shapes, numbers etc. and more importantly good human values which we feel is very important for the next generation champions.[48]

96.105.     Defendant ChuChuTV's first YouTube video featured a character named Chu Chu modeled after ChuChuTV's founder's baby daughter (whose nickname was Chu Chu) "dancing to the popular . . . Indian nursery rhyme "Chubby Cheeks ("Curly hair, very fair / Eyes are blue, lovely too / Teacher's pet, is that you?")."[49] Within a few weeks of the upload of its first video, ChuChuTV had amassed 300,000 views and 5,000 followers.[50] Despite the fact that ChuChuTV's video was clearly directed towards young children—–whom the Google Defendants claim are not allowed to and do not use YouTube—–a YouTube representative contacted ChuChuTV shortly after its launch to say "[y]ou guys are doing some magic with your content."[51]

---

targeting-tv-style-google-preferred-ad-program/; ("the Google-owned video service is adding the search-based targeting option to its Google Preferred ad-buying program, which packages the most popular 5 percent of YouTube channels into category-specific bundles that brands can advertise against.").

[47]     ChuChu TV Nursery Rhymes & Kids Songs, *About Section*, YOUTUBE, https://www.youtube.com/user/TheChuChuTV/about (accessed Oct. 21, 2019).

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

**B.**   ~~B.~~   **The Ryan's World Defendants**

106.   The Ryan's World Defendants operate the YouTube channel Ryan's World (f/k/a Ryans ToysReview), which features videos of now 9-year-old Ryan Kaji unboxing toys and others children's products. The Ryan's World Defendants ~~opted~~agreed to monetize the Ryan's World channel during the Class Period. The Ryan's World Defendants are thus "content creators who upload[ed] child-directed content and monetize[ed] their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent."[52]

~~97.~~107.   Ryan's World's first video was posted in 2015. Since then, with the help of Defendant Pocketwatch, a kids-entertainment company, Ryan's World has become the second most popular YouTube channel with approximately 22.5 million subscribers and over 33 billion views.[53]

108.   Throughout the Class Period, The Ryan's World Defendants engaged in a campaign of deception in order to lure young children to the Ryan's World YouTube Channel by frequently posting disguised advertising directed at children under the age of five to its YouTube channel using popular children's products. These practices have been the subject of a formal complaint letter filed by Truth in Advertising, Inc. ("TINA") with the FTC and "misleadingly blurs the distinction between advertising and organize content" for Ryan's World's audience and was intended to overcome preschooler's lack of ability to identify and understand that they are being presented with marketing materials.

109.   A review by TINA of videos posted to the Ryan's World YouTube Channel concluded that "[t]he target audience for [Ryan's World] is preschool children, i.e., children under the age of five . . . an appraisal of every video published on [Ryan's World] between January 1 and July 31, 2019 reveals that 92 percent promote at least one product or television/YouTube program that is appropriate for – and targeted at – children under the age of five."

110.   The Google Defendants gave the Ryan's World Defendants the option to turn off behavioral advertising and to instead show contextual advertising to its viewers, thus giving the Ryan's

---

[52] *See* fn. 37 above.

[53] Ryan ToysReview, *About Section*, YOUTUBE, https://www.youtube.com/channel/UChGJGh Z9SOOHvBB0Y4DOO_w/about, (accessed Oct. 21, 2019).

World Defendants the authority to control the deceptive conduct at issue. Upon information and belief, because they would have earned less revenue, the Ryan's World Defendants opted to allow behavioral advertising to viewers on the YouTube Platform.

98.111.      Ryan's World "About" section describes itself as "Ryan loves Toys. Toys Review for kids by a kid! Join Ryan to see him play with toys and review toys for kids! Ryan will also love doing fun and easy science experiments for kids!" Ryan's World generated over $11 million in revenue in 2018 and over $22 million in 2019.[54] Because the Google Defendants take 45% of all ad revenues,[55] the Google Defendants earned approximately $15 million from Ryan's World alone in 2018-2019.

### C.      The Hasbro Defendants

112.    The Hasbro Defendants created the My Little Pony Official YouTube channel in 2013 and opted to monetize the My Little Pony Official YouTube channel during the Class Period. The Hasbro Defendants are thus "content creators who upload[ed] child-directed content and monetize[ed] their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent."[56]

99.113.      The Hasbro Defendants' YouTube offerings include the following channels: Play-Doh, Official Play-Doh How To Videos, Baby Alive Official, NERF Official, and TRANSFORMER OFFICIAL. According to Hasbro, the target demographic for My Little Pony is children ages 5-8. My Little Pony's About section reads as follows::

---

[54] Amanda Perelli, *The world's top-earning YouTube star is an 8-year-old boy who made $22 million a single year reviewing toys,* BUSINESS INSIDER, https://www.businessinsider.com/8-year-old-youtube-star-ryan-toysreview-made-22-million-2019-10 (accessed Oct. 21, 2019).

[55] Eric Rosenberg, *How YouTube Ad Revenue Works*, INVESTOPEDIA (Oct. 7, 2018), https://www.investopedia.com/articles/personal-finance/032615/how-youtube-ad-revenue-works.asp.https://www.investopedia.com/articles/personal-finance/032615/how-youtube-ad-revenue-works.asp. (accessed Jan. 13, 2021).

[56] *See* fn. 37 above.

Welcome to the official home of My Little Pony & Equestria Girls! Discover the magic of friendship with Twilight Sparkle, Rainbow Dash, Pinkie Pie, Rarity, Fluttershy, Applejack and friends. Join the #RainbowSquad and subscribe today![57]

D.     Defendant CookieSwirlC

100.     Defendant CookieSwirlC created the CookieSwirlC YouTube channel in 2013 and opted to monetize the CookieSwirlC YouTube channel during the Class Period. Today, CookieSwirlC is one of YouTube's most popular channels with approximately 12.3 million subscribers and over 12 billion views.[58] CookieSwirlC videos typically feature the unboxing of a popular toy or children's product together with a demonstration of its features and capabilities. CookieSwirlC's "About" section states that "CookieswirlC's mission is to inspire creativity and spread positivity around the world through fun uplifting videos that encourage learning and imagination."[59]

114.     EThe Google Defendants gave the Hasbro Defendants the option to turn off behavioral advertising and to instead show contextual advertising to its viewers, thus giving the Hasbro Defendants the authority to control the deceptive conduct at issue. Upon information and belief, because they would have earned less revenue, the Hasbro Defendants agreed to allow behavioral advertising to viewers on the YouTube Platform.

115.     The FTC's complaint against the Google Defendants specifically cited the Hasbro Defendants as part of a group of YouTube channel owners that hosted child-directed content and allowed the Google Defendants to show behavioral advertising, resulting in "close to $50 million" in revenue for the Google Defendants.[60]

---

[57] My Little Pony, About section, YOUTUBE, https://www.youtube.com/user/mlpequestriagirls/about (accessed Oct. 21, 2019).

[58] CookieSwirlC, *About section*, YOUTUBE, https://www.youtube.com/user/CookieSwirlC/about (accessed Oct. 21, 2019).

[59] *Id.*

[60] *See* FTC Complaint, ¶ 31 (describing the Hasbro Defendants' YouTube channel content); *see also* FTC Complaint ¶ 41 ("[Google Defendants] earned close to $50 million from behavioral advertising on these channels, which represent only a few examples of the possible universe of child-directed content on YouTube.")

---

37

116.    In addition to producing child-directed content that was posted on YouTube, the Hasbro Defendants were cited by the New York State Office of the Attorney General for deceptively engaging in an advertising campaign that tracked child visitors to the Nerf section of Hasbro's website in order to serve Hasbro advertisements to those same users as they visited other websites at a later time (a type of online behavioral advertising prohibited by COPPA known as "remarketing") and for integrating a third-party plug-in into many of its websites that allowed users to be tracked across websites and introduced other third parties that engaged in the type of tracking, profiling, and targeted advertising prohibited under COPPA.[61]

117.    Defendant Hasbro was required to adopt comprehensive reforms as part of a settlement with the office of the Attorney General of the State of New York, including the following:

a.   Conducting regular electronic scans to monitor for unexpected third party tracking technologies that may appear on their children's websites.  Three of the companies, Viacom, Mattel, and JumpStart will provide regular reports to the office regarding the results of the scans.

b.   Adopting procedures for vetting third parties before they are introduced onto their children's websites to determine whether and how the third parties collect, use, and disclose, and allow others to collect, use, and disclose, personal information from users.

c.   Providing notice to third parties that collect, use, or disclose personal information of users with information sufficient to enable the third parties to identify the websites or sections of websites that are child directed pursuant to COPPA.

d.   Updating website privacy policies with either (a) information sufficient to enable parents and others to identify the websites and portions of websites that are

---

[61] Press Release, *A.G Schneiderman Announces Results Of "Operation Child Tracker," Ending Illegal Online Tracking Of Children At Some Of Nation's Most Popular Kids' Websites,* https://ag.ny.gov/press-release/2016/ag-schneiderman-announces-results-operation-child-tracker-ending-illegal-online (assessed Jan. 14, 2021).

directed to children under COPPA or (b) a means of contacting the company so that parents and others may request such information.

118.    Upon information and belief, the Hasbro Defendants continued to post child-directed content to the YouTube Platform and opted to show visitors behavioral advertising after entering into its settlement agreement with the NY AG in 2016.

**D.**    **Defendant Mattel**

119.    Mattel operated several monetized YouTube channels during the Class Period, including Barbie, Monster High, Hot Wheels, and Thomas & Friends. Defendant Mattel is thus a "content creator[] who upload[ed] child-directed content and monetize[ed] [its] channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent."[62]

120.    The Google Defendants gave Defendant Mattel the option to turn off behavioral advertising and to instead show contextual advertising to its viewers, thus giving Defendant Mattel the authority to control the deceptive conduct at issue. Upon information and belief, because they would have earned less revenue, Defendant Mattel agreed to allow behavioral advertising to viewers on the YouTube Platform.

121.    The FTC's complaint against the Google Defendants specifically cited the Defendant Mattel as part of a group of YouTube channel owners that hosted child-directed content and allowed the Google Defendants to show behavioral advertising, resulting in "close to $50 million" in revenue for the Google Defendants.[63]

~~101.~~122.    Collectively, Mattel's YouTube channels have tens of millions of subscribers and billions of views. Each channel shows child-directed content features popular children's toys belonging to Mattel's brands. For example, the Barbie YouTube channel features animated videos of Barbie and related toys, including the "Junior Rainbow Princesses." The Barbie YouTube channel also features

---

[62] *See* fn. 37 above.

[63] *See* FTC Complaint, ¶ 29 (describing Defendant Mattel's YouTube channel content); *see also* FTC Complaint ¶ 41 ("[Google Defendants] earned close to $50 million from behavioral advertising on these channels, which represent only a few examples of the possible universe of child-directed content on YouTube.")

39

episodes of "Barbie Dreamtopia," a show that, according to the FTC and New York Attorney General, Mattel described as "targeting 3-6 year olds."

123.   FIn addition to producing child-directed content that was posted on YouTube, Defendant Mattel was fined $250,000 in 2016 by the New York State Office of the Attorney General for the following:

a.   Mattel deployed a tracking technology supplied by a third-party data broker across its Barbie, Hot Wheels, Fisher-Price, Monster High, Ever After High, and Thomas & Friends websites.  Mattel used the tracking technology for measuring website metrics, such as the number of visitors to each site, a practice permitted under COPPA. However, the tracking technology supplied by the data broker introduced many other third-party tracking technologies in a process known as "piggy backing." Many of these third parties engage in the type of tracking, profiling, and targeted advertising prohibited by COPPA.

b.   A tracking technology that Mattel deployed on the e-commerce portion of the American Girl website, *which is not directed to children or covered by COPPA*, was inadvertently introduced onto certain child-directed webpages of the American Girl website.

c.   Mattel uploaded videos to Google's YouTube.com, a video hosting platform, and then embedded some of these videos onto the child-directed portion of several Mattel websites, including the Barbie website. When the embedded videos were played by children, it enabled Google tracking technologies, which were used to serve behavioral advertisements.[64]

124.   Defendant Mattel was required to adopt comprehensive reforms as part of a settlement with the office of the Attorney General of the State of New York, including the following:

a.   Conducting regular electronic scans to monitor for unexpected third-party tracking technologies that may appear on their children's websites and provide regular reports to the office regarding the results of the scans.

---

[64] See fn. 51 above.

SECONDTHIRD AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

b.  Adopting procedures for vetting third parties before they are introduced onto their children's websites to determine whether and how the third parties collect, use, and disclose, and allow others to collect, use, and disclose, personal information from users.

c.  Providing notice to third parties that collect, use, or disclose personal information of users with information sufficient to enable the third parties to identify the websites or sections of websites that are child directed pursuant to COPPA.

d.  Updating website privacy policies with either (a) information sufficient to enable parents and others to identify the websites and portions of websites that are directed to children under COPPA or (b) a means of contacting the company so that parents and others may request such information.

125.   Upon information and belief, Defendant Mattel continued to post child-directed content to the YouTube Platform and opted to show visitors behavioral advertising after entering into its settlement agreement with the NY AG in 2016.

**E.**   **The Cartoon Network Defendants**

126.   The Cartoon Network Defendants operated several monetized YouTube channels directed towards children ~~under thirteen~~ during the Class Period, including Steven Universe, the Powerpuff Girls, and Teen Titans Go. The Cartoon Network Defendants are thus "content creators who upload[ed] child-directed content and monetize[ed] their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent."[65]

127.   The Google Defendants gave the Cartoon Network Defendants the option to turn off behavioral advertising and to instead show contextual advertising to their viewers, thus giving the Cartoon Network Defendants the authority to control the deceptive conduct at issue. Upon information and belief, because they would have earned less revenue, the Cartoon Network Defendants agreed to allow behavioral advertising to viewers on the YouTube Platform.

---

[65]  *See* fn. 37 above.

~~SECOND~~THIRD AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

128.   The FTC's complaint against the Google Defendants specifically cited the Cartoon Network Defendants as part of a group of YouTube channel owners that hosted child-directed content and allowed the Google Defendants to show behavioral advertising, resulting in "close to $50 million" in revenue for the Google Defendants.[66]

~~102.~~129.   The Cartoon Network Defendants' YouTube channel has over 6 million subscribers and its content has been viewed over 5.3 billion times. According to the FTC and New York Attorney General, the Google Defendants selected a clip from the Cartoon Network YouTube channel in a "Creating for Kids Playbook," as an example of family-friendly content and also marketed the Cartoon Network YouTube channel as a "popular YouTube Channel[] kids are watching."

### G.   The DreamWorks Defendants

130.   The DreamWorks Defendants operated the child-directed monetized DreamWorksTV YouTube Channel during the Class Period. The DreamWorks TV YouTube channel's content included several popular children's shows, including Race to the Edge, Trollhunters, and Shrek. The DreamWorks Defendants are thus "content creators who upload[ed] child-directed content and monetize[ed] their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent."[67]

~~103.~~131.   The "About" section of the DreamWorks TV YouTube channel ~~describes~~described the channel as "made just for kids!" throughout the Class Period. The DreamWorksTV YouTube channel has 6.3 million subscribers and its content has been viewed over 4.7 billion times.

132.   The Google Defendants gave the DreamWorks Defendants the option to turn off behavioral advertising and to instead show contextual advertising to their viewers, thus giving the DreamWorks Defendants the authority to control the deceptive conduct at issue. Upon information and

---

[66] *See* FTC Complaint, ¶ 30 (describing the Cartoon Network Defendants' YouTube channel content); *see also* FTC Complaint ¶ 41 ("[Google Defendants] earned close to $50 million from behavioral advertising on these channels, which represent only a few examples of the possible universe of child-directed content on YouTube.")

[67] *See* fn. 37 above.

belief, because they would have earned less revenue, the DreamWorks agreed to allow behavioral advertising to viewers on the YouTube Platform.

133.    The FTC's complaint against the Google Defendants specifically cited the DreamWorks Defendants as part of a group of YouTube channel owners that hosted child-directed content and allowed the Google Defendants to show behavioral advertising, resulting in "close to $50 million" in revenue for the Google Defendants.[68]

## IV.    Economic Incentives Drove the Google Defendants to Unlawfully Track, Profile, and Target Children Under Thirteen with Behavioral Targeting

104.134.    The design and marketing of channels such as ChuChuTV Nursery Rhymes & Kids Songs, Ryan ToysReview, My Little Pony Official, CookieSwirlC, Barbie, and Monster High, among others, as well as the channels' own categorization of their videos, clearly provided notice to the Google Defendants that children, including children under the age of thirteen, were viewing these channels.

105.135.    As described below, Plaintiffs' minor childrenPlaintiffs watched many of the Channel Owner Defendants' YouTube channels during the Class Period, and were therefore subjected to the Google Defendants' behavioral targeting, which included the collection of their Personal Information. Google used behavioral targeting to show minor children advertisements that were uniquely tailored to them, and were calculated to lead to increased sales from advertising. Through the use of behavioral targeting, Google and Channel Owner Defendants reaped substantial additional profits. for financial gain.

136.    Targeting advertisements to children adds more value than targeting to adults because children are generally unable to distinguish between content and advertisements. This is especially true in the digital realm where children are less likely to identify and counteract the persuasive intent of

---

[68] *See* FTC Complaint, ¶ 32 (describing the DreamWorks Defendants' YouTube channel content); *see also* FTC Complaint ¶ 41 ("[Google Defendants] earned close to $50 million from behavioral advertising on these channels, which represent only a few examples of the possible universe of child-directed content on YouTube.")

advertising. This results in children, especially those under the age of eight, accepting advertising information in commercials "uncritically . . . [and as] truthful, accurate, and unbiased."[69]

~~106.~~137.      Despite their knowing collection of Personal Information about minor children, including children under the age of thirteen, the Google Defendants ~~disclaimed any~~knowingly disregarded their obligation to comply with federal and state laws designed to protect children's privacy by claiming no children ~~under the age of thirteen~~ watched videos on the YouTube Platform. The Google Defendants did so because they knew they could not both abide by federal and state law *and* offer highly profitable behavioral targeting of children ~~under thirteen~~.

~~107.~~138.      As the Attorney General of New York put it, the Google Defendants knew that stopping their illegal tracking, profiling, and targeting practices would result in a substantial loss of revenue:

> Google and YouTube knowingly and illegally monitored, tracked, and served targeted ads to young children just to keep advertising dollars rolling in . . . These companies put children at risk and abused their power, which is why we are imposing major reforms to their practices and making them pay one of the largest settlements for a privacy matter in U.S. history.[70]

~~108.~~139.      Faced with a choice between complying with federal and state privacy laws and their advertising revenue, ~~the Google~~ Defendants chose the money. During the Class Period, Defendants collectively realized hundreds of millions of dollars, if not more, as a result of their actions.

~~109.~~140.      ~~The~~The harmful intrusions of personal privacy of the minor Plaintiffs, and all similarly-situated children they seek to represent, resulting from Defendants' actions cannot be overstated. During the Class Period, the Google Defendants collected the Personal Information of children, including but not limited to children under the age of thirteen, who viewed monetized YouTube

---

[69] Report of the APA Task Force on Advertising and Children (American Psychological Association, Feb. 20, 2004), at pp.7-8, available at https://www.apa.org/pi/families/resources/advertising-children.pdf (accessed March 29, 2021).

[70] *Google and YouTube to Pay Record Figure For Illegally Tracking And Collecting Personal Information From Children,* NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL, Sept. 4, 2019, https://ag.ny.gov/press-release/2019/ag-james-google-and-youtube-pay-record-figure-illegally-tracking-and-collecting (accessed Oct. 21, 2019).

channels, including the Channel Owner Defendants' channels. This included the collection of persistent identifiers, which the Google Defendants used to track minor children under thirteen across the internet, internally develop a profile of the inferred preferences and interests of those children, and target those children with advertisements designed to influence their behavior.

110.141. Persistent identifiers have been included in the definition of "Personal Information" subject to COPPA since 2013. Defendants' collection of the persistent identifiers of children, including children under thirteen, allowed them to develop detailed profiles of children. As discussed above, Google's vast reach across the internet means that nearly all of a child's online activity was subject to being tracked by Google.

111.142. And even though Google purported to give individuals control over their data throughout the Class Period, it "does not disclose the full extent of the information it collects . . . nor the valuable inferences it draws from this data."[71] While Google claims to enable users to control their data, Google "omits much of the data the company collects, which ifis often far more invasive and revealing."[72]

112.143. TheBut, as described herein, Google's purported disclosures do not advise that the profiling of children on the YouTube platform is for the sole purpose of behavioral manipulation for targeted advertising to secure financial gain for the Google Defendants and the Channel Owner Defendants. And, children themselves cannot properly consent to this profiling. Nonetheless, the Google Defendants used these profiles to manipulate and exploit children. The Google Defendants make more money through YouTube by capturing more of an individual's time. The Google Defendants thus manipulated children using their Personal Information into extending their time on the YouTube Platform, which in turn increased the number of targeted advertisements shown to them, and increased the revenue earned by the Google Defendants and the Channel Owner Defendants.

---

[71] Oracle, *Google's Shadow Profile: A Dossier of Consumers Online and Real World Life* (Feb. 2019), https://assets.publishing.service.gov.uk/media/5e1c4985e5274a06b7450a13/Oracle_-_Response_to_SoS_-_Appendix_4_-_Google_Shadow_Profiles.pdf (accessed Mar. 12, 2020).

[72] *Id.*

113.144.    The Google Defendants manipulated minor children, including children under the age of thirteen, into extending the time they used the YouTube Platform by tracking them across the internet, collecting their Personal Information, plugging the Personal Information gathered into sophisticated algorithms, and then showing children videos on the YouTube Platform which the Google Defendants' algorithms calculated would keep them watching.

114.145.    The following is a graphic representation of how the Google Defendants utilized deep learning and neural networks to suggest videos likely to keep C.H.Plaintiffs and other children under thirteen engaged on the YouTube Platform:[73]



Source: Covington, Adams, and Sargin (2016)

The Google Defendants' algorithms allow them to "make recommendations from a very large corpus (millions) of videos while still being certain that the small number of videos appearing on the device are personalized and engaging for the user."[74]

---

[73] Paul Covington, Jay Adams & Emre Sargin, *Deep Neural Networks for YouTube Recommendations*, GOOGLE AI (2016), https://storage.googleapis.com/pub-tools-public-publication-data/pdf/45530.pdf. (accessed Oct. 19, 2019).

[74] *Id.*

115.146.    The YouTube Platform's recommendation feature can extend what was intended to be a single video view into a marathon viewing session whereby the YouTube Platform provides video after video for viewer consumption. This "rabbit hole" effect has been well documented. For example, a New York Times report recently found that YouTube's "recommendation feature boosts fringe videos to the mainstream and can unwittingly help spread conspiracies and misinformation about dangerous diseases, jeopardizing public health."[75]

116.147.    The Google Defendants' use of algorithms to capture more of a children's time allowed the Google Defendants to show those children more behavior-based advertising, for which the Google Defendants charge advertisers a substantial premium over contextual based advertising..

148.    Plaintiffs and the Classes and Subclasses have been deprived of, and thereby lost, the economic value of their Personal Information. As Google's advertising revenue (of $116 billion in 2018) tellingly demonstrates, this information has tremendous value. Multiple published analyses and studies have placed a value in excess of $200 on an individual's Personal Information, and one individual sold his data for $2,733 on Kickstarter.

117.149.    A child's Personal Information has equivalent (or potentially greater) value than that of an adult to companies like Defendants. First, a child is more susceptible to being influenced by advertisements as they often cannot tell the difference between content and advertisements. Second, Defendants may be able to utilize children's Personal Information to show them behavior-targeted advertising for the duration of their lives. Plaintiffs and the Classes and Subclasses can no longer realize the full economic value of their Personal Information because their Personal Information has already been collected, analyzed, and acted upon, and monetized by Defendants.

118.150.    Defendants' illegal and improper collection of children's Personal Information has given them a significant "first mover" advantage that cannot be undone. The Google Defendants operate the first and second-most visited websites in the world, and as a result of their unlawful conduct, the Google Defendants' algorithms now incorporate ill-gotten data from billions of children's YouTube

---

[75] Max Fisher & Amanda Taub, *What is YouTube Pushing You to Watch Next?*, N.Y. TIMES (Aug. 9, 2019), https://www.nytimes.com/2019/08/09/the-weekly/youtube-brazil-far-right.html (accessed Oct. 22, 2019).

video views. The deep insights gleaned from these viewing sessions will enable the Google Defendants to keep children viewing the YouTube Platform, to use the Personal Information of children for potentially the duration of their lives,[76] and will solidify the Google Defendants' dominance in the market for child-related content.

## V. Defendants' Tracking, Profiling, Targeting and Exploitation of Children Without Parental Consent Violated Plaintiffs' and Class and Subclass Members' Reasonable Expectations of Privacy and is Highly Offensive

119.151.    Defendants' conduct in violating privacy rights and reasonable expectations of privacy of Plaintiffs and Class and Subclass members is particularly egregious because Defendants violated societal norms and laws designed to protect a group— – children— – that society has long recognized as vulnerable to exploitation and manipulation.

120.152.    Parents' interest in the care, custody, and control of their children is one of the most fundamental liberty interests recognized by society. It has long been recognized that parents should maintain control over who interacts with their children and how.

121.153.    Because children are more susceptible to deception and exploitation than adults, society has recognized the importance of providing added legal protections for children, often in the form of parental consent requirements like COPPA.

122.154.    Children develop the ability to use smartphones and tablets by the age of two.[77] Almost every family with a child younger than eight in America has a smartphone (95%) and/or tablet (78%) in the household.[78] Often, children are given their own devices, with one 2015 study finding that

---

[76] Aza Raskin, inventor and former employee of Firefox & Mozilla Labs, described the dangers of the personal intrusions occasioned by behavioral advertising in the 2020 Netflix documentary, *The Social Dilemma*, thusly: "It's a little even trite to say now but because we don't pay for the products that we use, advertisers pay for the products that we use, advertisers are the customers… we're the thing being sold."

[77] Elyse Wanshel, *10 Reason Why You Shouldn't Give a Child a Smartphone or Tablet*, LITTLE THINGS, https://www.littlethings.com/reasons-not-to-give-children-technology (accessed Oct. 21, 2019).

[78] Victoria Rideout, *The Common Sense Census: Media Use By Kids Age Zero To Eight*, COMMON SENSE MEDIA (2017) at 3, https://www.commonsensemedia.org/research/the-common-sense-census-media-use-by-kids-agezero-to-eight-2017 (accessed Oct. 21, 2019).

---

48

by age four, 75% of children had their own tablet, smartphone, or iPod.[79] This proliferation of internet-connected device usage by children ~~under thirteen~~ renders Defendants' conduct highly offensive and an egregious breach of social norms

~~123.~~155.        For example, a survey conducted by the Center for Digital Democracy ("CDD") and Common Sense Media of more than 2,000 adults found overwhelming support for the basic principles of privacy embedded in the California Constitution, state common law, as well as federal law.[80] The parents who were polled responded as follows when asked whether they agreed or disagreed with the following statements:

a.   "It is okay for advertisers to track and keep a record of a child's behavior online if they give the child free content."

- 5 percent strongly agree
- 3 percent somewhat agree
- 15 percent somewhat disagree
- **75 percent strongly disagree**
- 3 percent do not know or refused to answer

b.   "As long as advertisers don't know a child's name and address, it is okay for them to collect and use information about the child's activity online."

- 3 percent strongly agree
- 17 percent somewhat agree
- 10 percent somewhat disagree

---

[79] *The Dangers of YouTube for Kids*, THE ATLANTIC (Nov. 2018), https://www.theatlantic.com/magazine/archive/2018/11/raised-by-youtube/570838/ (accessed Oct. 22, 2019~~)("}~~ ("[A] team of pediatricians at Einstein Medical Center, in Philadelphia, found that YouTube was popular among device-using children under the age of 2. Oh, and 97 percent of the kids in the study had used a mobile device. By age 4, 75 percent of the children in the study had their own tablet, smartphone, or iPod. And that was in 2015.).

[80] Center for Digital Democracy, *Survey on Children and Online Privacy, Summary of Methods and Findings*, https://www.democraticmedia.org/sites/default/files/COPPA%20Executive%20Summary%20and%20Findings.pdf (accessed Oct. 21, 2019).

- **69 percent strongly disagree**
- 1 percent do not know or refused to answer

c.      "It is okay for advertisers to collect information about a child's location from that child's mobile phone."

- 6 percent strongly agree
- 3 percent somewhat agree
- 7 percent somewhat disagree
- **84 percent strongly disagree**
- less than 1 percent do not know or refused to answer

d.      "Before advertisers put tracking software on a child's computer, advertisers should receive the parent's permission."

- **89 percent strongly agree**
- 5 percent somewhat agree
- 2 percent somewhat disagree
- 4 percent strongly disagree
- less than 1 percent do not know or refused to answer

e.      "There is a federal law that says that online sites and companies need to ask parents' permission before they collect Personal Information from children under age 13. Do you think the law is a good idea or a bad idea?"

- **93 percent said it was a good idea**
- 6 percent said it was a bad idea
- 1 percent did not know or refused to answer.

124.156.      The Google Defendants' unlawful and deceptive collection of Personal Information— – enabled by and with the knowledge of the Channel Owner Defendants— – and manipulative YouTube Platform recommendation feature substantially affects the amount of time minor children, including children under the age of thirteen, spend on the YouTube Platform. For example, a recent study found that while 60% of kids use the YouTube Platform search bar to find videos to watch, 43% of kids use its "suggested videos" function and 30% use "popular suggestions." This subjects an

already-vulnerable population to the very same rabbit-hole effect that even adults fall victim to, but to greater effect.

125.157.    The Google Defendants' and Channel Owner Defendants' collaborative surreptitious and deceptive tracking, profiling, and targeting of children is all the more troubling in light of the Google Defendants' inability to prevent obscene content from being uploaded on the YouTube Platform. For example, one report found that "hundreds of . . . videos of children's cartoon characters with inappropriate themes" such as graphic violence on the YouTube Platform.[81] The effect of this content— — which Defendants cannot apparently prevent from being uploaded to the YouTube Platform— — on children is profound. One child psychotherapist has stated that "over time the she has seen a rise in cases of children suffering from anxiety triggered by videos they have watched on YouTube" and that the children "exhibit loss of appetite, sleeplessness, crying fits and fear."[82]

126.158.    The Google Defendants and the Channel Owner Defendants exploited children under thirteen for financial gain by manipulating them into remaining engaged on the YouTube Platform and showing them behavior-based advertising to the detriment of their mental health, so that Defendants earned substantial advertising revenue.

127.159.    By failing to (i) obtain parental consent, (ii) disclose to parents the nature and purpose of their data collection practices (and use of that data), and (iii) take other steps to preclude the capture of children's Personal Information, and by manipulating and exploiting the habits of minors for their economic gain, Defendants have breached the privacy rights and reasonable expectations of privacy of Plaintiffs' minor children and the millions of minors in the Classes and Subclasses who have viewed You Tube's monetized channels, in contravention of privacy norms that are reflected in consumer surveys, centuries of common law, state and federal statutes, legislative commentaries, industry standards and guidelines, and scholarly literature.

---

[81] Anisa Subedar & Will Yates, *The disturbing YouTube videos that are tricking children*, BBC TRENDING (Mar. 27, 2017), https://www.bbc.com/news/blogs-trending-39381889 (accessed Oct. 22, 2019).

[82] Josephine Bila, *YouTube's dark side could be affecting your child's mental health,* CNBC (Feb. 13, 2018), https://www.cnbc.com/2018/02/13/youtube-is-causing-stress-and-sexualization-in-young-children.html (accessed Oct. 23, 2019).

## VI.   Defendants Tracked and Profiled Plaintiffs and Unlawfully Obtained Plaintiffs' Personal Information Under False Pretenses.

160.    The actions by Defendants as herein alleged, including the tracking and collection of Personal Information from children were achieved through deceptive conduct.

161.    Despite aggressively marketing YouTube as "today's leader in reaching children age 6-11 against top TV channels" and promoting that "YouTube was unanimously voted as the favorite website for kids 2-12," and that "93% of tweens visit YouTube to watch videos,"[83] the Google Defendants falsely and deceptively asserted, when convenient and profitable, that they did not need to comply with COPPA. For example, in response to one advertising company's questions regarding advertising on YouTube as it relates to a toy company and COPPA, Google Defendant's employee responded, "we don't have users that are below 13 on YouTube and platform/site is general audience, so there is no channel/content that is child-directed and no COPPA compliance is needed."[84]

162.    This was in contrast to the expectation of privacy the Google Defendants' public actions created. For example, during the Class Period, Google's Privacy Policies created an expectation of privacy with respect to the YouTube Platform (and other Google apps and services).  As far back as June 2013, Google emphasized honesty and transparency in its personal data collection activities, stating: "Our goal is to be clear about what information we collect, so that you can make meaningful choices about how it is used." [85] These assurances carried through the Class Period to today.  Google's current Privacy Policy states: "When people use our products, they trust us with their information, and it's our job to do right by them" by "being transparent" about "what data we collect, how it's used, and why."[86]

---

[83] *See Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief*, No. 19-cv-2642 (D.D.C., Sept. 4, 2019), at ¶ 23.

[84] *See Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief*, No. 19-cv-2642 (D.D.C., Sept. 4, 2019), at ¶ 24.

[85] Google Privacy Policy and Terms, as modified June 24, 2013, available at https://policies.google.com/privacy/archive/20130624?hl=en (accessed Jan. 14, 2021).

[86] Google Privacy Policy and Terms, as modified September 20, 2020, available at https://policies.google.com/privacy?hl=en (accessed Jan. 14, 2021).

SECOND THIRD AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

163.    The Google Defendants also promised users of the YouTube Platform that the Google Defendants and their corporate partners, including the Channel Owner Defendants, would, at all times, follow the law.   To that end, Google's Terms of Service state: "We want to maintain a respectful environment for everyone, which means you must follow these basic rules of conduct" including "comply[ing] with applicable laws."[87]

164.    Google's Code of Conduct repeatedly emphasized Google's adherence to legal requirements and its promise to conform its activities to applicable law. For nearly two decades, Google's Code of Conduct began with its original "Don't be evil" motto, ubiquitous in its website publications when the company emerged in 2001, and underscoring the company's public pronouncement to always "do the right thing," "act[] honorably", and "follow[] the law:

> "Don't be evil." Googlers generally apply those words to how we serve our users. But "Don't be evil" is much more than that. Yes, it's about providing our users unbiased access to information, focusing on their needs and giving them the best products and services that we can. ***But it's also about doing the right thing more generally – following the law, acting honorably*** and treating co-workers with courtesy and respect.[88]

165.    Google dropped "Don't be evil" from the preface of its Code of Conduct in 2018.[89] But, the company's corporate Code of Conduct continues to publicly tout that it has always complied, and will continue to comply, with all applicable law. Google's current Code of Conduct states: "VII. Obey the Law: Google takes its responsibilities to comply with laws and regulations very seriously and each of us is expected to comply with applicable legal requirements and prohibitions."[90]

---

[87]  Google Terms of Service, as modified March 21, 2020, available at https://policies.google.com/terms?hl=en (accessed Jan. 14, 2021).

[88]  Google Code of Conduct, as modified October 12, 2017, available in archive form at https://web.archive.org/web/20180421105327/https://abc.xyz/investor/other/google-code-of-conduct.html (accessed Jan. 14, 2012).

[89]  *See* Christopher Carbone, "Google revises code of conduct, removes 'Don't be evil'", New York Post, My 22, 2018, available at https://nypost.com/2018/05/22/google-revises-code-of-conduct-removes-dont-be-evil/ (accessed March 29, 2021).

[90]  Google Code of Conduct, as modified September 25, 2020, available at https://abc.xyz/investor/other/google-code-of-conduct/ (accessed March 29, 2021).

166.    In short, the Google Defendants, through published Privacy Policies, Terms of Use, and corporate Codes of Conduct, created an expectation of privacy for child viewers of the Channel Defendants' child-directed content on the YouTube Platform, and then tracked and collected Personal Information from those viewers under the false pretense that the Google Defendants would be "transparent" with parents about what information was being collected from child viewers, and comply with applicable legal requirements and prohibitions and established societal norms – including COPPA – in doing so.

167.    The Google Defendants failed to live up to their public assurances. Instead, they used these assurances to create an expectation of privacy for child viewers on the YouTube Platform and then, contrary to their promises to follow the law, tracked and obtained the minor Plaintiffs' and Class' and Subclass' Personal Information under false pretenses.

## VII.    The Channel Owner Defendants Are Jointly Liable

168.    The Channel Owner Defendants were fully aware that the YouTube Platform was the top destination for young children; that they were creating content for children to be shown and viewed on the YouTube Platform; and that the Google Defendants engaged in behavioral, targeted advertising of highly coveted young viewers who viewed the Channel Owner Defendants' content on their channels.

169.    The Channel Owner Defendants had to consent to and did, in fact, consent to, behavioral advertising targeting these young children on the YouTube platform – and by necessity the collection of Personal Information and data from these children on the Channel Owner Defendants' behalf for the purposes of allowing the behavioral advertising to be shown on their channels.

170.    The Channel Owner Defendants were aware that this was being done without parental consent and in violation of societal norms, the privacy and protection of children, and various laws and regulations designed to safeguard those norms and privacy protections.

171.    The Channel Owner Defendants encouraged and enabled the conduct by continuing to produce and air child-directed content, which enabled them to realize the financial benefits therefrom. And, although the Channel Owner Defendants had the full ability to put an end to the Google Defendants' deceptive and wrongful use of their channels, the Channel Owner Defendants knowingly allowed such

54

misconduct to continue.  Thus, not only did the Channel Owner Defendants know about, authorize and agree to the conduct, and benefit from it, they did nothing to stop it and instead perpetuated it.

172.    It is a long-standing common law principle that parties share joint and several liability for wrongdoing where there is a concert of action; a unity of purpose or design; and two or more defendants work separately but for a common purpose of each acting with the knowledge and consent of the others.

173.    Here, each of the Channel Owner Defendants joined with the Google Defendants in a commercial enterprise that had a unity of purpose of tracking and collecting Personal Information from child viewers of the Channel Owner Defendants' child-directed programming on the Google Defendants' YouTube Platform.  The Channel Owner Defendants did so knowing that their monetization of their child-directed content would entail behavioral advertising directed to minor children, including children under the age of thirteen, and that the tracking and collection of Personal Information of such minors would be conducted in violation of COPPA, state and federal privacy laws, and societal norms, and contrary to the expectation of privacy and public assurances to always follow the law that the Google Defendants touted in their Privacy Policies, Terms of Service, and Code of Conduct.

174.    The Channel Owner Defendants aided and abetted the Google Defendants. They had actual knowledge of the Google Defendants' illegal and improper conduct and they gave substantial assistance or encouragement to the Google Defendants in this conduct.

175.    The Channel Owner Defendants agreed to participate with the Google Defendants in this misconduct in order to obtain the enormous profits generated by Defendants' collective wrongdoing, receiving the larger 55% share of the advertising revenue generated during the Class Period through Defendants' unlawful and deceptive actions. Having shared in the upside of the parties' unity of purpose, the Channel Owner Defendants likewise share liability with the Google Defendants for the harm Defendants caused.

**ALLEGATIONS RELATING TO PLAINTIFFS**

A.    **Plaintiff** ~~Hubbard~~C.H.

~~128.~~176.    During the Class Period, Plaintiff ~~Hubbard's minor child, C.H.,~~C.H. watched videos and advertisements on the YouTube Platform using YouTube.com and the YouTube mobile app~~, and, on certain occasions, the YouTube Kids App~~.

129.177.      C.H. viewed multiple monetized YouTube channels owned by Channel Owner Defendants during the Class Period, including, among others, the following channels: (i) ChuChuTV: ChuChu Nursery Rhymes & Kids Songs, (ii) Ryan's World (f/k/a Ryan ToysReview): Ryan Toys Review, and (iii) Hasbro: My Little Pony, and (iv) CookieSwirlC: CookieSwirlC.

130.      Channel Owner Defendants ChuChu TV, the Ryan's World Defendants, the Hasbro Defendants, and CookieSwirlC knowingly and purposefully opted in to Google Defendants' behavioral advertising which enabled Google Defendants to collect Personal Information from the children viewing their channels in exchange for advertising revenue.

131.178.      The Google Defendants and these Channel Owner Defendants collected and enabled collection of C.H.'s Personal Information for the purposes of tracking, profiling, and targeting C.H. with advertisements as she watched these Channel Owner Defendants' YouTube videos.

132.179.      Neither the Google Defendants nor these Channel Owner Defendants obtained verifiable parental consent prior to the collection of C.H.'s Personal Information.

133.      The Google Defendants and Channel Owner Defendants ChuChu TV, the Ryan's World Defendants, the Hasbro Defendants, and CookieSwirlC actively and fraudulently concealed their unlawful acts described herein and further deceptively misled parents and the public about the Google Defendants' intentional design and employment of the YouTube Platform and the monetized channels thereon to attract and provide video viewing to minors under the age of thirteen and to exploit such minors' Personal Information for the Google Defendants' and these Chanel Owner Defendants' enormous financial gain.

134.180.      Neither Plaintiff C.H. nor their parent and guardian Nichole Hubbard could not have reasonably discovered this conduct earlier through investigation. Plaintiff C.H. is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Nichole Hubbard about their tracking, profiling, and targeting of her child.

135.181.      The tracking, profiling, and targeting of C.H. without parental consent by the Google Defendants and these Channel Owner Defendants is highly offensive and constitutes an invasion of C.H.'s privacy.

B.      **Plaintiff Jones**

56

**B.      Plaintiffs E.J., N.J., A.J, and L.J.**

~~136.~~182.      During the Class Period, ~~Plaintiff Jones' minor children,~~Plaintiffs E.J., N.J., A.J., and L.J.~~,~~. watched videos and advertisements on the YouTube Platform using YouTube.com and the YouTube mobile app.

~~137.~~183.      E.J., N.J., A.J., and L.J. viewed multiple monetized YouTube channels owned by Channel Owner Defendants during the Class Period, including, among others, the following channels: (i) Mattel: Hot Wheels, Fisher Price, and Thomas & Friends, (ii) Hasbro: Hasbro Channel, Play-Doh, and My Little Pony, (iii) Cartoon Network: DC Super Hero Girls, and Steven Universe; (iv) DreamWorks: DreamWorks TV World, Universal Kids Preschool, TheSkylanderBoy and Girl, and EthanGamer; (v) ChuChu TV: ChuChu TV Nursey Rhymes & Kids Song, ChuChu TV Surprise Eggs Toys, and ChuChu TV Funzone, and (vi) Ryan's World (f/k/a Ryan ToysReview): Ryan Toys Review~~, and (vii) CookieSwirlC: CookiwSwirlC~~.

~~138.      Channel Owner Defendants Mattel, the Hasbro Defendants, the Cartoon Network Defendants, the DreamWorks Defendants, ChuChu TV, the Ryan's World Defendants, and CookieSwirlC knowingly and purposefully opted in to Google Defendants' behavioral advertising which enabled Google Defendants to collect Personal Information from the children viewing their channels in exchange for advertising revenue.~~

~~139.~~184.      The Google Defendants and these Channel Owner Defendants collected and enabled collection of E.J.'s, N.J.'s, A.J.'s, and L.J.'s Personal Information for the purposes of tracking, profiling, and targeting E.J., N.J., A.J., and L.J. with advertisements as they watched these Channel Owner Defendants' YouTube videos.

~~140.~~185.      Neither the Google Defendants nor these Channel Owner Defendants obtained verifiable parental consent prior to the collection of E.J., N.J., A.J., and L.J.'s Personal Information.

~~141.      The Google Defendants and Channel Owner Defendants Mattel, the Hasbro Defendants, the Cartoon Network Defendants, the DreamWorks Defendants, ChuChu TV, the Ryan's World Defendants, and CookieSwirlC actively and fraudulently concealed their unlawful acts described herein and further deceptively misled parents and the public about the Google Defendants' intentional design and employment of the You Tube Platform and the monetized channels thereon to attract and provide~~

1  video viewing to minors under the age of thirteen and to exploit such minors' Personal Information for

2  the Google Defendants and these Channel Owner Defendants' enormous financial gain.

3      142.   Plaintiff Jones could not have reasonably discovered this conduct earlier through

4  investigation.

5      186.   Neither Plaintiffs E.J., N.J., A.J., and L.J. nor their parent and guardian Cara Jones could

6  have reasonably discovered this conduct earlier through investigation. Plaintiffs E.J., N.J., A.J., and L.J.

7  are minors unable to consent to or understand Defendants' tracking of personal information, and

8  Defendants concealed from and misled Cara Jones about their tracking, profiling, and targeting of her

9  children.

10     143.187.   The tracking, profiling, and targeting of E.J., N.J., A.J., and L.J. without parental

11  consent by the Google Defendants and these Channel Owner Defendants is highly offensive and

12  constitutes an invasion of E.J.'s, N.J.'s, A.J.'s, and L.J.'s privacy.

13      **C.   Plaintiff ~~Efros~~J.A.E. and J.R.E.**

14     144.188.   During the Class~~,~~ Period ~~Plaintiff Efros' minor children,~~ Plaintiffs J.A.E. and

15  J.R.E.~~.,~~ watched videos and advertisements on the YouTube Platform using YouTube.com and the

16  YouTube mobile app.

17     145.189.   J.A.E. and J.R.E. viewed multiple monetized YouTube channels owned by

18  Channel Owner Defendants during the Class Period, including, among others, the following channels:

19  (i) Mattel: Thomas & Friends, (ii) Cartoon Network: Cartoon Network, The Amazing World of Gumball,

20  and Boomerang Official, (iii) DreamWorks: Universal Kids, and (iv) Ryan's World (f/k/a Ryan

21  ToysReview): Ryan Toys Review.

22     146.   Channel Owner Defendants Mattel, the Cartoon Network Defendants, the DreamWorks

23  Defendants, and the Ryan's World Defendants knowingly and purposefully opted in to Google

24  Defendants' behavioral advertising which enabled Google Defendants to collect Personal Information

25  from the children viewing their channels in exchange for advertising revenue.

26     147.190.   The Google Defendants and these Channel Owner Defendants collected and

27  enabled collection of J.A.E.'s and J.R.E.'s Personal Information for the purposes of tracking, profiling,

28

and targeting J.A.E. and J.R.E. with advertisements as they watched these Channel Owner Defendants' YouTube videos.

148.191.    Neither the Google Defendants nor these Channel Owner Defendants obtained verifiable parental consent prior to the collection of J.A.E.'s and J.R.E.'s Personal Information.

149.    The Google Defendants Neither Plaintiffs J.A.E. and Channel Owner Defendants Mattel, the Cartoon Network Defendants, the DreamWorks Defendants, and the Ryan's World Defendants actively and fraudulently concealed J.R.E. nor their unlawful acts described herein and further deceptively misled parents and the public about the Google Defendants' intentional design and employment of the YouTube Platform and the monetized channels thereon to attract and provide video viewing to minors under the age of thirteen and to exploit such minors' Personal Information for the Google Defendants' and these Chanel Owner Defendants' enormous financial gain.

150.192.    Plaintiffparent and guardian Justin Efros could not have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Justin Efros about their tracking, profiling, and targeting of his children.

151.193.    The tracking, profiling, and targeting of J.A.E. and J.R.E. without parental consent by the Google Defendants and these Channel Owner Defendants is highly offensive and constitutes an invasion of J.A.E.'s and J.R.E.'s privacy.

**D.    Plaintiff GilmoreM.W.**

152.194.    During the Class Period, Plaintiff Gilmore's minor child, M.W.,. watched videos and advertisements on the YouTube Platform using YouTube.com and the YouTube mobile app.

153.195.    M.W. viewed multiple monetized YouTube channels owned by Channel Owner Defendants during the Class Period, including, among others, the following channels: (i) Mattel: Barbie, and Polly Pocket, (ii) Cartoon Network: The Amazing World of Gumball, (iii) Hasbro: Transformers Official, Play-Doh, Baby Alive Official, and My Little Pony, (iv) DreamWorks: Gamer Chad, and (v) Ryan's World (f/k/a Ryan ToysReview): Ryan's Toys Review, and (vi) CookieSwirlC: CookieSwirlC.

154.    Channel Owner Defendants Mattel, the Cartoon Network Defendants, the Hasbro Defendants, the DreamWorks Defendants, the Ryan's World Defendants, and CookieSwirlC knowingly

1   ~~and purposefully opted in to Google Defendants' behavioral advertising which enabled Google~~
2   ~~Defendants to collect Personal Information from the children viewing their channels in exchange for~~
3   ~~advertising revenue.~~

4   ~~155.~~196.   The Google Defendants and these Channel Owner Defendants collected and
5   enabled collection of M.W.'s Personal Information for the purposes of tracking, profiling, and targeting
6   M.W. with advertisements as she watched these Channel Owner Defendants' YouTube videos.

7   ~~156.~~197.   Neither the Google Defendants nor these Channel Owner Defendants obtained
8   verifiable parental consent prior to the collection of M.W.'s Personal Information.

9   ~~157.   The Google Defendants and Channel Owner Defendants Mattel, the Cartoon Network~~
10  ~~Defendants, the Hasbro Defendants, the DreamWorks Defendants, the Ryan's World Defendants, and~~
11  ~~CookieSwirlC actively and fraudulently concealed their unlawful acts described herein and further~~
12  ~~deceptively misled parents and the public about the Google Defendants' intentional design and~~
13  ~~employment of the YouTube Platform and the monetized channels thereon to attract and provide video~~
14  ~~viewing to minors under the age of thirteen and to exploit such minors' Personal Information for the~~
15  ~~Google Defendants' and these Chanel Owner Defendants' enormous financial gain.~~

16  ~~158.~~198.   Neither Plaintiff M.W. nor their parent and guardian Renee Gilmore could ~~not~~
17  have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to
18  consent to or understand Defendants' tracking of personal information, and Defendants concealed from
19  and misled Renee Gilmore about their tracking, profiling, and targeting of her child.

20  ~~159.~~199.   The tracking, profiling, and targeting of M.W without parental consent by the
21  Google Defendants and these Channel Owner Defendants is highly offensive and constitutes an invasion
22  of M.W's privacy.

23  **E.   Plaintiff ~~Goodwin~~A.G.**

24  ~~160.~~200.   During the Class Period, Plaintiff ~~Goodwin's minor child,~~ A.G.~~,~~. watched videos
25  and advertisements on the YouTube Platform using YouTube.com and the YouTube mobile app~~, and,~~
26  ~~on certain occasions, the YouTube Kids App.~~.

27  ~~161.~~201.   A.G. viewed multiple monetized YouTube channels owned by Channel Owner
28  Defendants during the Class Period, including, among others, the following channels: (i) Mattel:

60

American Girl Welliewishers, (ii) Ryan's World (f/k/a Ryan ToysReview): Ryan Toys Review, and (iii) Cartoon Network: DC Super Hero Girls, (iv) CookieSwirlC: CookieSwirlC, and (v) DreamWorks: Gamer Chad.

162.   Channel Owner Defendants Mattel, the Ryan's World Defendants, the Cartoon Network Defendants, the DreamWorks Defendants, and CookieSwirlC knowingly and purposefully opted in to Google Defendants' behavioral advertising which enabled Google Defendants to collect Personal Information from the children viewing their channels in exchange for advertising revenue.

163.202.   The Google Defendants and these Channel Owner Defendants collected and enabled collection of A.G.'s Personal Information for the purposes of tracking, profiling, and targeting A.G. with advertisements as she watched these Channel Owner Defendants' YouTube videos.

164.203.   Neither the Google Defendants nor these Channel Owner Defendants obtained verifiable parental consent prior to the collection of A.G.'s Personal Information.

165.   The Google Defendants and Channel Owner Defendants Mattel, the Ryan's World Defendants, the Cartoon Network Defendants, the DreamWorks Defendants, and CookieSwirlC actively and fraudulently concealed their unlawful acts described herein and further deceptively misled parents and the public about the Google Defendants' intentional design and employment of the You Tube Platform and the monetized channels thereon to attract and provide video viewing to minors under the age of thirteen and to exploit such minors' Personal Information for the Google Defendants' and these Chanel Owner Defendants' enormous financial gain.

166.204.   Neither Plaintiff A.G. nor their parent and guardian Jay Goodwin could not have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Jay Goodwin about their tracking, profiling, and targeting of his children.

167.205.   The tracking, profiling, and targeting of A.G. without parental consent by the Google Defendants and these Channel Owner Defendants is highly offensive and constitutes an invasion of A.G.'s privacy.

**F.**   **Plaintiff Dishman C.D.**

168.206.   During the Class Period, Plaintiff Dishman's minor child, C.D.,. watched videos

and advertisements on the YouTube Platform.

169.207.       C.D. viewed multiple monetized YouTube channels owned by Channel Owner Defendants during the Class Period, including, among others, the following channels: (i) Cartoon Network.

170.   The Cartoon Network Defendants knowingly and purposefully opted in to Google Defendants' behavioral advertising which enabled Google Defendants to collect Personal Information from the children viewing their channels in exchange for advertising revenue.

171.208.       The Google Defendants and the Cartoon Network Defendants collected and enabled collection of C.D.'s Personal Information for the purposes of tracking, profiling, and targeting C.D. with advertisements as she watched Cartoon Network's YouTube videos.

172.209.       Neither the Google Defendants nor the Cartoon Network Defendants obtained verifiable parental consent prior to the collection of C.D.'s Personal Information.

173.   The Google Defendants and the Cartoon Network Defendants actively and fraudulently concealed their unlawful acts described herein and further deceptively misled parents and the public about the Google Defendants' intentional design and employment of the YouTube Platform and the monetized channels thereon to attract and provide video viewing to minors under the age of thirteen and to exploit such minors' Personal Information for the Google Defendants' and the Cartoon Network Defendants' enormous financial gain.

174.210.       Neither Plaintiff C.D. nor their parent and guardian Bobbi Dishman could not have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Bobbi Dishman about their tracking, profiling, and targeting of her.

175.211.       The tracking, profiling, and targeting of C.D. without parental consent by the Google Defendants and the Cartoon Network Defendants is highly offensive and constitutes an invasion of C.D..'s privacy.

## TOLLING AND ESTOPPEL

### I.   Discovery Rule Tolling

176.212.       Plaintiffs and the Classes and Subclasses had no way of knowing about

Defendants' conduct with respect to the collection and impermissible and unauthorized use of, and profit from, the Personal Information of Plaintiffs and the members of the Classes and Subclasses.

177.213. Neither Plaintiffs nor any other members of the Classes and Subclasses, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and the members of the Classes and Subclasses did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendants were engaged in the conduct alleged herein.

178.214. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims asserted by Plaintiffs, the Classes, and the Subclasses.

**II.      Fraudulent Concealment Tolling**

179.215. By failing to provide notice of the collection and use of the Personal Information and obtain verifiable consent, in violation of COPPA and societal norms and conventions, Defendants concealed their conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Classes and Subclasses.

180.216. Upon information and belief, Defendants intended by their acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses.  Plaintiffs and the members of the Classes and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes should be tolled.

**III.     Estoppel**

181.217. Despite their duties and obligations under COPPA, Defendants failed to provide notice of the collection and use of the Personal Information and obtain verifiable consent in breach and violation thereof.

182.218. Defendants therefore are estopped from relying on any statutes of limitations in defense of this action.

**CLASS ACTION ALLEGATIONS**

~~183.~~219.   Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

~~184.~~220.   Plaintiffs ~~Hubbard, Jones, and Efros, in their capacity of parents and guardians of their minor children,~~ C.H., E.J., N.J., A.J., L.J., J.A.E., and J.R.E., through their parents and guardians, seek class certification of claims for the common law privacy cause of action of "Intrusion Upon Seclusion," on behalf of a class defined as follows:

**The Intrusion Upon Seclusion Class**: all ~~children and parents and/or legal guardians of children~~persons residing in the States of ~~Alabama, Alaska, Arizona, Arkansas,~~ California, Colorado~~, Connecticut, Delaware, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire,~~ and New Jersey~~, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia~~ who ~~are younger than the age of thirteen and used YouTube, or~~ were sixteen or younger ~~than the age of thirteen~~ when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent during Class Period~~.~~

~~185.~~221.   All Plaintiffs, ~~in their capacity as parents and guardians of their minor children,~~ C.H., E.J., N.J., A.J., L.J., J.A.E., J.R.E., M.W., A.G., and C.D~~.~~., through their parents and guardians, seek certification of a claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, on behalf of a class defined as follows:

**Nationwide UCL Class**: all ~~children and parents and/or legal guardians of children~~persons residing in the United States who ~~are younger than the age of thirteen and used YouTube, or~~ were sixteen or younger ~~than the age of thirteen~~ when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent~~-~~ during the Class Period.

~~186.~~222.   Plaintiff ~~Hubbard, in her capacity as~~C.H. through their parent and guardian ~~of her minor child C.H.,~~Hubbard, seeks certification of claims for violations of the State of California Constitution Right to Privacy and the California Unfair Competition Law, Cal. Bus. & Prof. Code §

17200, *et seq*. as well as a claim for Unjust Enrichment on behalf of a California Subclass defined as follows:

> **The California Subclass:** all ~~children and parents and/or legal guardians of~~ persons residing in the State of California who ~~are younger than the age of thirteen and used YouTube, or~~ were sixteen or younger ~~than the age of thirteen~~ when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

~~187.~~223.    Plaintiff ~~Jones, in her capacity as parent and guardian of her minor children~~ E.J., N.J., A.J., and L.J., ~~seeks~~through their parent and guardian Jones, seek certification of a claim for violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq*., as well as a claim for Unjust Enrichment on behalf of a Colorado Subclass defined as follows:

> **The Colorado Subclass:** all ~~children and parents and/or legal guardians of~~ persons residing in the State of Colorado who ~~are younger than the age of thirteen and used YouTube, or~~ were sixteen or younger ~~than the age of thirteen~~ when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

~~188.~~224.    Plaintiff ~~Dishman, in her capacity as~~C.D., through their parent and guardian ~~of her minor child, C.D.,~~ seeks certification of a claim for violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3, as well as a claim for Unjust Enrichment on behalf of an Indiana Subclass defined as follows:

> **The Indiana Subclass**: all ~~children and parents and/or legal guardians of~~ persons residing in the State of Indiana who ~~are younger than the age of thirteen and used YouTube, or~~ were sixteen or younger ~~than the age of thirteen~~ when they used YouTube, and from whom Defendants collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

~~189.~~225.    Plaintiff ~~Goodwin, in his capacity as~~A.G., through their parent and guardian ~~of his minor child, A.G.,~~Goodwin, seeks certification of a claim for violation of the Massachusetts

Consumer Protection Act, Mass. Gen. Laws. Ann. Ch. 93A, § 1, *et seq.*, as well as a claim for Unjust
Enrichment on behalf of a Massachusetts Subclass defined as follows:

> **The Massachusetts Subclass**: all ~~children and parents and/or legal guardians of~~ persons
> residing in the Commonwealth of Massachusetts who ~~are younger than the age of thirteen
> and used YouTube, or~~ were sixteen or younger ~~than the age of thirteen~~ when they used
> YouTube, and from whom Defendants collected, used, or disclosed Personal Information
> without first obtaining verified parental consent during the Class Period.

~~190.~~226.    Plaintiff ~~Efros, in his capacity as~~Plaintiffs J.E. and J.E., through their parent and
guardian ~~of his minor children, J.E. and J.E., seeks~~Efros, seek certification of a claim for violation of
the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*, as well as a claim for Unjust
Enrichment on behalf of New Jersey Subclass defined as follows:

> **The New Jersey Subclass:** all ~~children and parents and/or legal guardians of~~ persons
> residing in the State of New Jersey who ~~are younger than the age of thirteen and used
> YouTube, or~~ were sixteen or younger ~~than the age of thirteen~~ when they used YouTube,
> and from whom Defendants collected, used, or disclosed Personal Information without
> first obtaining verified parental consent during the Class Period.

~~191.~~227.    Plaintiff ~~Gilmore, in her capacity as~~M.W., through their parent and guardian ~~of
her minor child, M.W.,~~Gilmore, seeks certification of a claim for violation of the Tennessee Consumer
Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, as well as a claim for Unjust Enrichment on behalf
of a Tennessee Subclass defined as follows:

> **The Tennessee Subclass:** all ~~children and parents and/or legal guardians of~~ persons
> residing in the State of Tennessee who ~~are younger than the age of thirteen and used
> YouTube, or~~ were sixteen or younger ~~than the age of thirteen~~ when they used YouTube,
> and from whom Defendants collected, used, or disclosed Personal Information without
> first obtaining verified parental consent during the Class Period.

~~192.~~228.    Plaintiffs reserve the right to modify or refine the Classes or Subclasses
definitions based upon discovery of new information and in order to accommodate any of the Court's
manageability concerns.

193.229.    Excluded from the Classes and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

194.230.    **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Further, the Classes and Subclasses can be readily identified through records maintained by Defendants.

195.231.    **Numerosity (Rule 23(a)(1))**. The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Classes and Subclasses, as herein identified and described, is not known, but download figures indicate that the YouTube has collected information on millions of children.

196.232.    **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

a.   Whether Defendants collected the Personal Information of children under thirteen;;

b.   Whether Defendants had knowledge they were collecting the Personal Information of children under the age of thirteen;

c.   Whether Defendants obtained verifiable parental consent to collect the Personal Information of children under the age of thirteen;;

d.   Whether the collection of Personal Information of children under the age of thirteen is highly offensive to a reasonable person;

67

e. Whether the collection of Personal Information of children ~~under the age of thirteen~~ without parental consent is sufficiently serious and unwarranted as to constitute an egregious breach of social norms;

f. ~~Whether Defendants' conduct violated COPPA;~~

~~g.~~f. Whether Defendants' conduct constituted an invasion of privacy based on common law protection against intrusion upon seclusion under the laws of California, Colorado, New Jersey, and the other states set forth in the Intrusion Upon Seclusion Class;

~~h.~~g. Whether Defendants' conduct constitutes a violation of the California Constitution right to privacy;

~~i.~~h. Whether Defendants' conduct was unlawful or deceptive;

~~j.~~i. Whether Defendants' conduct violated the California Unfair Competition Law, the Colorado Consumer Protection Act, the Indiana Deceptive Consumer Sales Act, the Massachusetts Consumer Protection Act, the New Jersey Consumer Fraud Act, and the Tennessee Consumer Protection Act;

~~k.~~j. Whether Plaintiffs and the Classes and Subclasses are entitled to monetary damages and the measure of those damages;

~~l.~~k. Whether ~~Plaintiff Hubbard~~Plaintiffs and the California Subclass are entitled to restitution~~,~~ and disgorgement ~~and/or other equitable and injunctive relief;~~;

~~m.~~l. Whether Defendants were unjustly enriched by their conduct under the laws of California, Colorado, Indiana, Massachusetts, New Jersey, and Tennessee~~;~~.

~~n.~~m. Whether Defendants' fraudulently concealed their conduct; and

~~o.~~n. Whether Plaintiffs and the Classes and Subclasses are entitled to injunctive or other equitable relief.

~~197.~~233.        **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Classes and Subclasses. Plaintiffs and members of the Classes and Subclasses (as applicable) suffered an invasion of privacy and injuries as a result of Defendants' wrongful conduct that is uniform across the Classes and Subclasses.

198.234.     **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Classes and Subclasses, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Classes and Subclasses.

199.235.     **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes and Subclasses is impracticable. The prosecution of separate actions by individual members of the Classes and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

200.236.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

201.237.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief, if any, that may be awarded by the Court is appropriate as to the Classes and Subclasses as a whole.

202.238.        Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Intrusion Upon Seclusion

**(Brought on Behalf of Plaintiffs ~~Hubbard, Jones, and Efros and the Intrusion Upon Seclusion Class~~C.H., E.J., N.J., A.J., L.J., J.A.E. and J.R Against All Defendants)**

~~203.1.  Plaintiffs incorporate the foregoing allegations as if fully set forth herein.~~

239.    ~~Plaintiffs, in their capacity as parents and guardians of their minor children~~Plaintiffs C.H., E.J., N.J., A.J~~.,~~, L.J., J.A.E., and J.R.E~~., have reasonable expectations of privacy in their mobile devices and their online behavior and activities, generally. C.H.'s, E.J.'s, N.J.'s, A.J.'s, L.J.'s, J.A.E.'s, and J.R.E.'s.~~ incorporate the foregoing allegations as if fully set forth herein.

204.240.        Plaintiffs and the Intrusion Upon Seclusion Class members' private affairs include their behavior on their mobile devices, online, as well as any other behavior that may be monitored by the surreptitious and deceptive tracking employed or otherwise enabled by or through the YouTube Platform.

241.    The parents and guardians of Plaintiffs as well as the parents or guardians of Intrusion Upon Seclusion Class members have reasonable expectations of privacy in their children's mobile devices and their online behavior and activities, generally. This expectation stemmed from the Google Defendants' representations, throughout the Class Period, that they would "do no evil," that "[w]hen people use our products, they trust us with their information, and it's our job to do right by them" by "being transparent" about "what data we collect, how it's used, and why" (among other misrepresentations), and follow the law, as well as the expectation that all Defendants' would respect children's privacy online, in accordance with societal expectations, law, and public policy. The expectations of Plaintiffs' parents and guardians includes that the Google Defendants would not track their children's activity across much of the Internet, without their consent, in order for both the Google

Defendants and the Channel Owner Defendants to reap additional profits from behavioral targeted advertisements.

242.    As children aged sixteen or younger, Plaintiffs lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions. They relied on their parents for such determinations.

~~205.~~243.    The Google Defendants intentionally intruded on and into ~~C.H.'s, E.J.'s, N.J.'s, A.J.'s, L.J.'s, J.A.E.'s, J.R.E.'s~~Plaintiffs' and the Intrusion Upon Seclusion Class members' solitude, seclusion, or private affairs by intentionally and surreptitiously and deceptively obtaining, improperly gaining knowledge of, reviewing, and/or retaining ~~C.H.'s, E.J.'s, N.J.'s, A.J.'s, L.J.'s, J.A.E.'s, J.A.E.'s~~Plaintiffs' and the Intrusion Upon Seclusion Class members' activities through the monitoring and tracking activities described herein.

~~206.~~244.    These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and Federal Trade Commission regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations.

245.    These societal expectations and laws created a duty that Defendants owed to Plaintiffs and class members. The Google Defendants breached that duty by tracking and monitoring children, and all Defendants breached that duty by profiting from behavioral advertising.

~~207.~~246.    Defendants' intrusion into the sacrosanct relationship between parent and child and subsequent commercial exploitation of children's special vulnerabilities online also contributes to the highly offensive nature of Defendants' activities.

247.    ~~Plaintiffs' children C.H. E.J., N.J., A.J., L.J., J.A.E., J.R.E.,~~Channel Owner Defendants are jointly liable with Google Defendants because all Defendants acted in concert to harm Plaintiffs and Class members, and/or the Channel Owner Defendants directed, permitted, assisted, and/or encouraged the Google Defendants in the conduct here described.

248.    Moreover, the Channel Owner Defendants aided and abetted the Google Defendants. They had actual knowledge that the Google Defendants' conduct breached duties owed by law and

71

public policy, and they gave substantial assistance or encouragement to the Google Defendants in this conduct. The Channel Owner's conduct also constitutes a breach of duty to Plaintiffs and Class members when separately considered.

208.249.    Plaintiffs and the Intrusion Upon Seclusion Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and their minor children and the Intrusion Upon Seclusion Class members.

209.250.    Plaintiffs and the Intrusion Upon Seclusion Class members therefore seek (1) injunctive relief, in the form of orders compelling the deletion, destruction, and/or sequestration of all personal data obtained by the Google Defendants in violation of state law and appropriate injunctive relief against the Channel Owner Defendants; and (2) compensatory and punitive damages in an amount to be determined at trial. Plaintiffs and the Intrusion Upon Seclusion Class members seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiffs and the Intrusion Upon Seclusion Class members and made in conscious disregard of Plaintiffs' and the Intrusion Upon Seclusion Class members' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

**SECOND CLAIM FOR RELIEF**

**Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200**

**(Brought on Behalf of All Plaintiffs and the Nationwide UCL Class, and on Behalf of Plaintiff HubbardC.H. and the California Subclass Against All Defendants)**

251.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

252.    Under the UCL, a business practice that is likely to deceive an ordinary consumer constitutes a deceptive business practice.  Defendants' conduct was deceptive, unfair, and unlawful in numerous respects.  The Google Defendants have intentionally and deceptively misled parents and the public about Defendants' intention to use the YouTube Platform and the monetized channels thereon to attract and provide video viewing to children in order to gain access to the Personal Information of such children and to exploit such children's Personal Information for Google Defendants' and Channel Owner Defendants' financial gain.

253.   During the Class Period, the Google Defendants have asserted that they "do no evil" and are being "transparent" about "what data we collect, how it's used, and why" (among other misrepresentations), that they comply with all applicable laws, and that children are not permitted to access the YouTube Platform. The parents and guardians of Plaintiffs and Class members also reasonably expected that all Defendants, including Channel Owners, respect children's privacy online, in accordance with societal expectations and public policy as well as state and federal statutes and regulations including COPPA and Federal Trade Commission regulations.  At the same time, the Google Defendants and the Channel Owner Defendants have, at all times throughout the Class Period, been well aware that children, including children under the age of 13, access YouTube's channels; have actively sought to increase viewing of the YouTube Platform by children; and have sought to exploit, for commercial purposes and gain, the millions of YouTube child viewers. Defendants' knowledge of the widespread use of the Platform by children (which the Google Defendants have expressly touted in their advertising sales efforts) and failure to disclose that they are tracking, profiling, and targeting such children and/or profiting from this behavior, while at the same time representing that the YouTube Platform complies with law and societal expectation, and does not permit and does not seek to reach children, are likely to and, in fact, did deceive Plaintiffs and Nationwide UCL Class and California Subclass Members and their parents or guardians.  Defendants' conduct therefore constitutes deceptive business practices in violation of Cal. Bus. & Prof. Code §17200.

210.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

254.   The Channel Owner Defendants' conduct separately violates both the unfair and unlawful prongs of the UCL. All Defendants acted in concert to harm Plaintiffs and class members, and/or the Channel Owner Defendants directed, permitted, assisted, and/or encouraged the Google Defendants in the conduct here described.

255.   Moreover, the Channel Owner Defendants aided and abetted the Google Defendants. They had actual knowledge that the Google Defendants' conduct breached duties owed by law and public policy, and they gave substantial assistance or encouragement to the Google Defendants in this conduct. Channel Owner Defendants personally participated in these unlawful and unfair practices by creating and posting child-directed content and allowing more profitable behavioral advertising on their YouTube

SECONDTHIRD AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

Channels. They also had unbridled control over these practices, in that they could have chosen not to post child-directed content or not to allow behavioral advertising.

211.256.       Defendants engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above,. The Google Defendants unlawfully tracked, targeted, and profiled Plaintiffs' minor childrenPlaintiffs and the Nationwide UCL Class and California Subclass Members without obtaining parental consent in violation of COPPA and, Federal Trade Commission regulations., and other laws. The Google Defendants also engaged in business acts and practices deemed "unlawful" under the UCL as to the California Subclass by unlawfully tracking, targeting, and profiling Plaintiffs' minor children, in violation of the California Constitutional Right to Privacy, Cal. Const. Art. Const. Art. 1, § 11, § 1. Channel Owner Defendants and the Google Defendants jointly reaped additional advertising profits from these actions.

257.     Defendants also engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, Defendants failed to disclose that the Google Defendants were tracking, profiling, and targeting Plaintiffs' and the Nationwide UCL Class's and California Subclasses' children through the collection of Personal Information., and that both Google Defendants and Channel Owner Defendants were profiting from this. Unfair acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided. Defendants' conduct is unfair under each of these tests.

258.     Defendants' conduct is unfair under each of these tests. As described above, Defendants' conduct violates the policies underlying privacy laws and, with respect to children under the age of thirteen, the mandates of COPPA. The gravity of the harm of the Google Defendants' secret tracking, profiling, and targeting of children, and the Channel Owners' active and joint cooperation with it, is significant and there is no corresponding benefit to consumers of such conduct. Finally, because

74

Plaintiffs and the Nationwide UCL Class and California Subclass Members were minors unable to consent to or understand Defendants' conduct—and because their parents did not consent to this conduct and were misled by their belief that Defendants would follow applicable laws and societal expectations about children's privacy as well as Defendants' statements—they could not have avoided the harm.

259.    The Google Defendants' misrepresentations and omissions include both implicit and explicit representations.

260.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers such as the parents or guardians of Plaintiffs and Class and Subclass Members about the terms under which their children were watching the YouTube Platform as well as the fact that Defendants were collecting and profiting from minors' Personal Information without their parents and guardians' knowledge or consent.

261.    Defendants had a duty to disclose the above-described facts due to the important public interest in securing the privacy of minors' Personal Information and the fact that minors are unable to fully protect their own interests. Plaintiffs and Nationwide UCL Class and California Subclass Members placed trust in Defendants as major and reputable companies who represent that they are in compliance with applicable laws and societal interests in safeguarding minors' Personal Information. Additionally, Defendants had sole ability to understand the extent of Google Defendants' collection of Personal Information, and the parents or guardians of Plaintiffs and Nationwide UCL Class and California Subclass Members could not reasonably have discovered—and were unaware of—Defendants' secret tracking, profiling, and targeting.

262.    Defendants invaded Plaintiff's and Nationwide UCL Class and California Subclass Members privacy without their or their parents and guardians' consent.

263.    Because Defendants held themselves out as complying with law and public policy regarding minors' privacy rights, the parents or guardians of Plaintiffs and Nationwide UCL Class and California Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions.

264.    Plaintiffs and Nationwide UCL Class and California Subclass Members could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took

advantage of an obstacle to the free exercise of their decision-making. By withholding the important information that they were collecting and profiting from minors' Personal Information, Defendants created an asymmetry of information.

212.265.    Further, Defendants' conduct is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.

213.   As described above, Defendant's conduct violates the policies underlying privacy lawPlaintiffs, as well as COPPA. The gravity of the harm of Defendants' secret tracking, profiling, and targeting of minors under the age of thirteen is significant and there is no corresponding benefit to consumers of such conduct. Finally, because Plaintiffs and the Nationwide UCL Class and California Subclass Members were completely unaware of Defendants' secret tracking, profiling, and targeting, they could not have possibly avoided the harm.

214.1.   Under the UCL, a business practice that is likely to deceive an ordinary consumer constitutes a deceptive business practice.   Defendants' conduct was deceptive in numerous respects. The Google Defendants have intentionally and deceptively misled parents and the public about Defendants' intention to use the YouTube Platform and the monetized channels thereon to attract and provide video viewing to minors under the age of thirteen in order to gain access to the Personal Information of such minors and to exploit such minors' Personal Information for Defendants' financial gain.   The Google Defendants have falsely asserted that such children are not permitted to access the Platform while, at the same time, the Google Defendants and the Channel Owner Defendants have, at all times throughout the Class Period, been well aware that minors under the age of thirteen access YouTube's channels; have actively sought to increase viewing of the YouTube Platform by children under the age of thirteen; and have sought to exploit, for commercial purposes and gain, the millions of YouTube viewers under the age of thirteen.   Defendants' knowledge of the widespread use of the Platform by children under the age of thirteen (which the Google Defendants have expressly touted in their advertising sales efforts) and failure to disclose that they are tracking, profiling, and targeting such children without parental consent, while at the same time representing that the YouTube Platform does not permit and does not seek to reach children under the age of thirteen, are likely to and, in fact, did

76

deceive Plaintiffs and Nationwide UCL Class and California Subclass Members.   Defendants' conduct therefore constitutes deceptive business practices in violation of Cal. Bus. & Prof. Code §17200.

215.266.      Plaintiffs' minor children, C.H., E.J., N.J., A.J., L.J., J.A.E., J.E., M.W., and A.G., as well as the Nationwide UCL Class and California Subclass Members, were harmed by Defendants' violations of Cal. Bus. & Prof. Bus. & Prof. Code §17200, and lost money or property by virtue of the loss of their Personal Information through invasion of their privacy and, as alleged herein, the deprivation and loss of the value of their Personal Information. Defendants' actions and conduct complained of hereinCode §17200. Defendants' practices were a substantial factor in causing the harm suffered byand caused injury in fact and actual damages to Plaintiffs and Class Members. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and their minor children the Nationwide UCL and Nationwide UCL Class and California Subclass Members have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described above, including the loss or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of Plaintiffs' and Nationwide UCL Class and California Subclass Members. Plaintiffs' and Class and California Subclass MembersSubclass Members' Personal Information has tangible value; it is now in the possession of Defendants, who have used and will use it for their financial gain.

216.267.      Plaintiffs' and the Nationwide UCL Class and California Subclass Members' injury was the direct and proximate result of Defendants' conduct described herein.

268.   The Google Defendants' retention of Plaintiffs' and Nationwide UCL Class and California Subclass Members' Personal Information present a continuing risk to them as well as the general public.

217.269.      Plaintiffs, individually and on behalf of the Nationwide UCL Class and California Subclass, seek: (1) an injunction requiring Google Defendants to permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent and appropriate injunctive relief against Channel Owner Defendants; (2) compensatory restitution of Plaintiffs' and the Class and Subclass Members' money and property lost as a result of Defendants' acts of unfair

competition; (3) disgorgement of Defendants' unjust gains; and (4) reasonable attorney's fees (pursuant to Cal. Code of Civ. Proc. § 1021.5).

### THIRD CLAIM FOR RELIEF

**California Unjust Enrichment**

**(Brought on Behalf of Plaintiff ~~Hubbard~~C.H. and the California Subclass Against All Defendants)**

~~218.~~270.      Plaintiff ~~Hubbard~~C.H.. incorporates the foregoing allegations as if fully set forth herein.

~~219.~~271.      By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized hundreds of millions of dollars in revenue from the sale and/or use of the Personal Information of ~~Plaintiff's minor child, C.H.,~~Plaintiff and the members of the California Subclass for advertising and commercialization purposes.

~~220.~~272.      This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by ~~C.H.~~Plaintiff and the members of the California Subclass.

273.   Defendants are jointly liable because all Defendants acted in concert to harm Plaintiffs and class members, and/or aided and abetted each other in the conduct herein described.

~~221.~~274.      As a result of Defendants' conduct, ~~C.H.~~Plaintiff and California Subclass Members suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

~~222.~~275.      It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of ~~C.H.~~Plaintiff and the members of the California Subclass.

~~223.~~276.      Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by ~~C.H.~~Plaintiff and the members of the California Subclass through the Google Defendants obtaining the Personal Information and the value thereof, and both the Google Defendants and the Channel Owner Defendants profiting from the unlawful, unauthorized and

impermissible use of the Personal Information of ~~C.H.~~Plaintiff and the members of the California Subclass.

~~224.~~277.      Plaintiff and the members of the California Subclass are therefore entitled to recover the amounts realized by Defendants at the expense of Plaintiff and the members of the Subclass.

~~225.~~278.      Plaintiff and the California Subclass have no adequate remedy at law.

~~226.~~279.      Plaintiff and the members of the California Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

**FOURTH CLAIM FOR RELIEF**

**Colorado Unjust Enrichment**

**(Brought on Behalf of ~~Plaintiff Jones~~Plaintiffs E.J, N.J, A.J, and L.J. and the Colorado Subclass**

**Against All Defendants)**

~~227.~~280.      ~~Plaintiff Jones incorporates~~Plaintiffs E.J, N.J, A.J, and L.J. incorporate the foregoing allegations as if fully set forth herein.

~~228.~~281.      By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized hundreds of millions of dollars in revenue from the sale and/or use of the Personal Information of ~~Plaintiff's minor children, E.J, N.J, A.J, and L.J.,~~Plaintiffs and the members of the Colorado Subclass for advertising and commercialization purposes.

~~229.~~282.      This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by ~~E.J, N.J, A.J, and L.J.~~ Plaintiffs and the members of the Colorado Subclass.

283.      Defendants are jointly liable because all Defendants acted in concert to harm Plaintiffs and Colorado Subclass Members, and/or aided and abetted each other in the conduct herein described.

~~230.~~284.      As a result of Defendants' conduct, ~~E.J, N.J, A.J.,~~Plaintiffs and ~~L.J. and~~Colorado Subclass Members suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

231.285.    It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of ~~E.J, N.J, A.J, and L.J.~~Plaintiffs and the members of the Colorado Subclass.

232.286.    Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by ~~E.J, N.J, A.J, and L.J.~~Plaintiffs and the members of the Colorado Subclass through the Google Defendants obtaining the Personal Information and the value thereof, and both the Google Defendants and the Channel Owner Defendants profiting from the unlawful, unauthorized and impermissible use of the Personal Information of ~~E.J, N.J, A.J, and L.J.~~Plaintiffs and the members of the Colorado Subclass.

233.287.    ~~Plaintiff~~Plaintiffs and the members of the Colorado Subclass are therefore entitled to recover the amounts realized by Defendants at the expense of ~~Plaintiff~~Plaintiffs and the members of the Subclass.

234.288.    ~~Plaintiff~~Plaintiffs and the Colorado Subclass have no adequate remedy at law.

235.289.    ~~Plaintiff~~Plaintiffs and the members of the Colorado Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

**FIFTH CLAIM FOR RELIEF**

**Indiana Unjust Enrichment**

~~**FIFTH CLAIM FOR RELIEF**~~

~~**Indiana Unjust Enrichment**~~

**(Brought on Behalf of Plaintiff ~~Dishman~~C.D. and the Indiana Subclass Against All Defendants)**

236.290.    Plaintiff ~~Dishman~~C.D. incorporates the foregoing allegations as if fully set forth herein.

237.291.    By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized hundreds of millions of dollars in revenue from the sale and/or use of the Personal Information of ~~Plaintiff's minor child, C.D.,~~Plaintiff and the members of the Indiana Subclass for advertising and commercialization purposes.

238.292.     This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by C.D.Plaintiff and the members of the Indiana Subclass.

293.    Defendants are jointly liable because all Defendants acted in concert to harm Plaintiff and Indiana Subclass members, and/or aided and abetted each other in the conduct herein described.

239.294.     As a result of Defendants' conduct, C.D.Plaintiff and Indiana Subclass Members suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

240.295.     It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of C.D.Plaintiff and the members of the Indiana Subclass.

241.296.     Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by C.D.Plaintiff and the members of the Indiana Subclass through the Google Defendants obtaining the Personal Information and the value thereof, and both the Google Defendants and the Channel Owner Defendants profiting from the unlawful, unauthorized and impermissible use of the Personal Information of C.D.Plaintiff and the members of the Indiana Subclass.

242.297.     Plaintiff and the members of the Indiana Subclass are therefore entitled to recover the amounts realized by Defendants at the expense of Plaintiff and the members of the Subclass.

243.298.     Plaintiff and the Indiana Subclass have no adequate remedy at law.

244.299.     Plaintiff and the members of the Indiana Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

### SIXTH CLAIM FOR RELIEF

### New JerseyMassachusetts Unjust Enrichment

**(Brought on Behalf of Plaintiff A.G. and the Massachusetts Subclass Against All Defendants)**

300.    Plaintiff A.G. incorporates the foregoing allegations as if fully set forth herein.

301.    By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized hundreds of millions of dollars in revenue from the sale and/or use of the Personal

Information of Plaintiff and the members of the Massachusetts Subclass for advertising and commercialization purposes.

302.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by Plaintiff and the members of the Massachusetts Subclass.

303.    Defendants are jointly liable because all Defendants acted in concert to harm Plaintiff and Massachusetts Subclass Members, and/or aided and abetted each other in the conduct herein described.

304.    As a result of Defendants' conduct, Plaintiff and Massachusetts Subclass Members suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

305.    It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of Plaintiff and the members of the Massachusetts Subclass.

306.    Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by Plaintiff and the members of the Massachusetts Subclass through the Google Defendants obtaining the Personal Information and the value thereof, and the Google Defendants and the Channel Owner Defendants profiting from the unlawful, unauthorized and impermissible use of the Personal Information of Plaintiff and the members of the Massachusetts Subclass.

307.    Plaintiff and the members of the Massachusetts Subclass are therefore entitled to recover the amounts realized by Defendants at the expense of Plaintiff and the members of the Subclass.

308.    Plaintiff and the Massachusetts Subclass have no adequate remedy at law.

309.    Plaintiff and the members of the Massachusetts Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

### SEVENTH CLAIM FOR RELIEF

#### ~~Efros~~New Jersey Unjust Enrichment

(Brought on Behalf of Plaintiffs J.A.E. and J.R.E. and the New Jersey Subclass Against All Defendants)

245.310.      Plaintiff Efros incorporatesPlaintiffs J.A.E. and J.R.E. incorporate the foregoing allegations as if fully set forth herein.

246.311.      By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized hundreds of millions of dollars in revenue from the sale and/or use of the Personal Information of Plaintiff's minor children, J.A.E. and J.R.E.,Plaintiffs, and the members of the New Jersey Subclass for advertising and commercialization purposes.

247.312.      This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by J.A.E. and J.R.E.Plaintiffs and the members of the New Jersey Subclass.

313.      Defendants are jointly liable because all Defendants acted in concert to harm Plaintiffs and class members, and/or aided and abetted each other in the conduct herein described.

248.314.      As a result of Defendants' conduct, J.A.E. and J.R.E.Plaintiffs and Subclass Members suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

249.315.      It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of J.A.E. and J.R.E.Plaintiffs and the members of the New Jersey Subclass.

250.316.      Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by J.A.E. and J.R.E.Plaintiffs and the members of the New Jersey Subclass through the Google Defendants obtaining the Personal Information and the value thereof, and the Google Defendants and the Channel Owner Defendants profiting from the unlawful, unauthorized and impermissible use of the Personal Information of J.A.E. and J.R.E.Plaintiffs and the members of the New Jersey Subclass.

251.317.      PlaintiffPlaintiffs and the members of the New Jersey Subclass are therefore entitled to recover the amounts realized by Defendants at the expense of Plaintiff and the members of the Subclass.

252.318.        PlaintiffPlaintiffs and the New Jersey Subclass have no adequate remedy at law.

253.319.        PlaintiffPlaintiffs and the members of the New Jersey Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

### EIGHTH CLAIM FOR RELIEF

### Tennessee Unjust Enrichment

### SEVENTH CLAIM FOR RELIEF

### Massachusetts Unjust Enrichment

**(Brought on Behalf of Plaintiff GoodwinM.W. and the MassachusettsTennessee Subclass**

**Against All Defendants)**

254.320.        Plaintiff GoodwinM.W. incorporates the foregoing allegations as if fully set forth herein.

255.    By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized hundreds of millions of dollars in revenue from the sale and/or use of the Personal Information of Plaintiff's minor child, A.G., and the members of the Massachusetts Subclass for advertising and commercialization purposes.

256.    This Personal Information, the value of the Personal Information, and the attendant revenue, were monetary benefits conferred upon Defendants by A.G. and the members of the Massachusetts Subclass.

257.    As a result of Defendants' conduct, A.G. and Subclass Members suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

258.    It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of A.G. and the members of the Massachusetts Subclass.

259.    Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by A.G. and the members of the Massachusetts Subclass through Defendants obtaining the Personal Information and the value thereof, and profiting from the unlawful, unauthorized

84

and impermissible use of the Personal Information of A.G. and the members of the Massachusetts Subclass.

260.1.   Plaintiff and the members of the Massachusetts Subclass are therefore entitled to recover the amounts realized by Defendants at the expense of Plaintiff and the members of the Subclass.

261.1.   Plaintiff and the Massachusetts Subclass have no adequate remedy at law.

262.1.   Plaintiff and the members of the Massachusetts Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## EIGHTH CLAIM FOR RELIEF

### Tennessee Unjust Enrichment

**(Brought on Behalf of Plaintiff Gilmore and the Tennessee Subclass Against All Defendants)**

263.1.   Plaintiff Gilmore incorporates the foregoing allegations as if fully set forth herein.

264.321.   By virtue of the unlawful, unfair and deceptive conduct alleged herein, Defendants knowingly realized hundreds of millions of dollars in revenue from the sale and/or use of the Personal Information of Plaintiff's minor child, M.W., Plaintiff and the members of the Tennessee Subclass for advertising and commercialization purposes.

265.322.   This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by M.W. Plaintiff and the members of the Tennessee Subclass.

323.   Defendants are jointly liable because all Defendants acted in concert to harm Plaintiff and Tennessee Subclass members, and/or aided and abetted each other in the conduct herein described.

266.324.   As a result of Defendants' conduct, M.W. Plaintiff and Tennessee Subclass Members suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

267.325.   It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of M.W. Plaintiff and the members of the Tennessee Subclass.

268.326.     Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by M.W.Plaintiff and the members of the Tennessee Subclass through the Google Defendants obtaining the Personal Information and the value thereof, and the Google Defendants and the Channel Owner Defendants profiting from the unlawful, unauthorized and impermissible use of the Personal Information of M.W.Plaintiff and the members of the Tennessee Subclass.

269.327.     Plaintiff and the members of the Tennessee Subclass are therefore entitled to recover the amounts realized by Defendants at the expense of Plaintiff and the members of the Subclass.

270.328.     Plaintiff and the Tennessee Subclass have no adequate remedy at law.

271.329.     Plaintiff and the members of the Tennessee Subclass are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## NINTH CLAIM FOR RELIEF

**California Constitutional Right to Privacy, Cal. Const. Art. 1, § 1.**

**(Brought on Behalf of Plaintiff HubbardC.H. and the California Subclass Against All Defendants)**

272.330.     Plaintiff HubbardC.H. incorporates the foregoing allegations as if fully set forth herein.

273.331.     Plaintiff Hubbard's minor child, C.H., and the California Subclass Members have reasonable expectations of privacy in their mobile devices and their online behavior, generally. C.H.'sPlaintiff's and the California Subclass Members' private affairs include their behavior on their mobile devices and computers, as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by Defendants.

332.     The parents and guardians of Plaintiff, as well as the parents or guardians of California Subclass Members, have reasonable expectations of privacy in their children's mobile devices and their online behavior and activities, generally. This expectation stemmed from the Google Defendants' representations, throughout the Class Period, that they would "do no evil," that "[w]hen people use our products, they trust us with their information, and it's our job to do right by them" by "being transparent" about "what data we collect, how it's used, and why" (among other misrepresentations), and follow the

law.  The expectations of Plaintiffs' parents and guardians included that the Google Defendants would not track their children's activity across much of the Internet, without their consent, in order for both the Google Defendants and the Channel Owner Defendants to reap huge profits from behavioral targeted advertisements.

333.    As minor children, Plaintiff and California Subclass Members lack the ability to form expectations about reasonable privacy or to consent to Defendants' actions. Plaintiff and California Subclass Members rely on their parents for such determinations.

274.334.    The Google Defendants intentionally intruded on and into C.H.'sPlaintiff's and the California Subclass Members' solitude, seclusion, or private affairs by intentionally and surreptitiously obtaining, improperly gaining knowledge of, reviewing, and/or retaining C.H.'sPlaintiff's and the California Subclass Members' activities through the monitoring and tracking activities described herein.

335.    The Channel Owner Defendants are jointly liable along with the Google Defendants because all Defendants acted in concert to harm Plaintiff and California Subclass members, and/or the Channel Owner Defendants directed, permitted, assisted, and/or encouraged the Google Defendants in the conduct here described.

336.    Furthermore, the Channel Owner Defendants aided and abetted the Google Defendants. They had actual knowledge that the Google Defendants' conduct breached duties owed by law and societal conduct, and they gave substantial assistance or encouragement to the Google Defendants in this conduct. The Channel Owner's conduct also constitutes a breach of duty to Plaintiff and California Subclass Members when separately considered.

275.337.    These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations.

338.    These societal expectations and laws created a duty that Defendants owed to Plaintiff and California Subclass Members. The Google Defendants breached that duty by tracking and monitoring

children, and both the Google Defendants and the Channel Owner Defendants breached that duty by profiting from behavioral advertising.

276.339.    Defendants' intrusion into the sacrosanct relationship between parent and child and subsequent commercial exploitation of children's special vulnerabilities online also contributes to the highly offensive nature of Defendants' activities.

277.340.    Defendants' conduct as aforesaid violated C.H.'sPlaintiff's and the California Subclass Members' right to privacy, as guaranteed by ART. 1, § 1 of the California Constitution.

278.341.    C.H.Plaintiff and the California Subclass Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by C.H.Plaintiff and the California Subclass Members.

342.    Plaintiff, on their own behalf and on behalf of C.H. and the California Subclass Members, therefore seeks (1) injunctive relief requiring the Google Defendants to permanently delete, destroy and/or sequester all personal data obtained in violation of state law and appropriate injunctive relief against the Channel Owner Defendants; and (2) compensatory and punitive damages in an amount to be determined at trial.  Plaintiff and the California Subclass Members seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure C.H. and the California Subclass Members them and were made in conscious disregard of their rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

**TENTH CLAIM FOR RELIEF**

**Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et. seq.***

**(Brought on Behalf of Plaintiffs E.J, N.J, A.J, and L.J. and the Colorado Subclass Against All Defendants)**

343.    Plaintiffs E.J, N.J, A.J, and L.J. incorporate the foregoing allegations as if fully set forth herein.

344.    Defendants are "persons" as defined by C.R.S. § 6-1-102(6);

345.    Plaintiffs and Colorado Subclass Members are actual or potential consumers of the YouTube Platform and the Channel Owner Defendants' channels hosted on this platform. They are also

actual or potential consumers of the advertisements for goods and services shown on the Channel Owner Defendants' channels by the Google Defendants.

346.    Defendants' conduct was deceptive, unfair, and unlawful in numerous respects.  The Google Defendants have intentionally and deceptively misled parents and the public about Defendants' intention to use the YouTube Platform and the monetized channels thereon to attract and provide video viewing to children in order to gain access to the Personal Information of such children and to exploit such children's Personal Information for the Google Defendants' and the Channel Owner Defendants' financial gain.  During the Class Period, the Google Defendants have asserted that they "do no evil" and are being "transparent" about "what data we collect, how it's used, and why" (among other misrepresentations), that they comply with all applicable laws, and that children are not permitted to access the YouTube Platform.  The parents and guardians of Plaintiffs and Subclass members also reasonably expected that all Defendants, including the Channel Owners, respect children's privacy online, in accordance with societal expectations and public policy as well as state and federal statutes and regulations including COPPA and Federal Trade Commission regulations.  At the same time, the Google Defendants and the Channel Owner Defendants have, at all times throughout the Class Period, been well aware that children access YouTube's channels; have actively sought to increase viewing of the YouTube Platform by children; and have sought to exploit, for commercial purposes and gain, the millions of child YouTube viewers. Defendants' knowledge of the widespread use of the Platform by children (which the Google Defendants have expressly touted in their advertising sales efforts) and failure to disclose that they are tracking, profiling, and targeting such children and/or profiting from this behavior, while at the same time representing that the YouTube Platform complies with law and societal expectation, and does not permit and does not seek to reach children, are likely to and, in fact, did deceive Plaintiffs and Colorado Subclass Members and their parents or guardians.

347.    The Channel Owner Defendants' conduct separately violates the Colorado Consumer Protection Act. All Defendants acted in concert to harm Plaintiffs and class members, and/or the Channel Owner Defendants substantially participated in, directed, permitted, assisted, and/or encouraged the Google Defendants in the conduct here described.

348.   Moreover, the Channel Owner Defendants aided and abetted the Google Defendants. They had actual knowledge that the Google Defendants' conduct breached duties owed by law and public policy, and they gave substantial assistance or encouragement to the Google Defendants in this conduct. The Channel Owner Defendants personally participated in these unlawful and unfair practices by creating and posting child-directed content and allowing more profitable behavioral advertising on their YouTube channels. They also had unbridled control over these practices, in that they could have chosen not to post child-directed content or not to allow behavioral advertising.

349.   Defendants engaged in deceptive, unfair, and unlawful trade acts or practices in the course of their business, vocation, or occupation, in violation of C.R.S. § 6-1-105, including but not limited to violations of C.R.S. §6-1-105(e); §6-1-105(g); §6-1-105(i); §6-1-105(l); §6-1-105(n); §6-1-105(u); and §6-1-105(3), and in contravention of social norms.

350.   The above unlawful, unfair, and deceptive acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

351.   C.H.'s and the California Defendants' acts and practices were unfair because they caused or were likely to cause substantial injury to Plaintiffs and Colorado Subclass Members that was not reasonably avoidable by them and not outweighed by countervailing benefits to consumers or to competition.

352.   The injury to Plaintiffs and Colorado Subclass Members was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury and an unwarranted risk to the safety of their Personal Information. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of minors, but also because it inflicted a significant amount of harm on each minor.

353.   Plaintiffs and Colorado Subclass Members could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of their decision-making. By misleading Plaintiffs' parents and/or guardians about

SECOND THIRD AMENDED CLASS ACTION COMPLAINT

the important information that they were collecting and profiting from minors' Personal Information, Defendants created an asymmetry of information.

354.    Defendants intended to mislead Plaintiffs, Colorado Subclass Members, and their parents and guardians and induce them to rely on their misrepresentations and omissions. Defendants knew that they were collecting and profiting from minors' Personal Information and that the risk of collecting of minors' Personal Information was highly likely. Defendants' actions in engaging in the above-named deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and members of the Colorado Subclass.

355.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers such as the parents or guardians of Plaintiffs and Subclass members about the terms under which their children were watching the YouTube Platform as well as the fact that Defendants were collecting and profiting from minors' Personal Information without their parents and guardians' knowledge or consent.

356.    Defendants had a duty to disclose the above-described facts due to the important public interest in securing the privacy of minors' Personal Information and the fact that minors are unable to fully protect their own interests. Plaintiffs and Colorado Subclass Members placed trust in Defendants as major and reputable companies who represent that they are in compliance with applicable laws and societal interests in safeguarding minors' Personal Information. Additionally, Defendants had sole ability to understand the extent of the Google Defendants' collection of Personal Information and the parents or guardians of Plaintiffs and Colorado Subclass Members could not reasonably have discovered—and were unaware of—Defendants' secret tracking, profiling, and targeting.

357.    Defendants invaded Plaintiffs' and Subclass Members' privacy without their or their parents and guardians' consent. Because Defendants' held themselves out as complying with law and public policy regarding minors' privacy rights, Plaintiff and Colorado Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions.

358.    As detailed *infra*, Defendants' deceptive trade practices significantly impacted the public, because there are millions of minor viewers of their YouTube channels, including Plaintiffs and Colorado Subclass Members.

359.   Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiffs and Colorado Subclass Members. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs and Colorado Subclass Members have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described above, including the loss or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of Plaintiffs and Colorado Subclass members. Plaintiffs' and Subclass Members' Personal Information has tangible value; it is now in the possession of Defendants, who have used and will use it for their financial gain.

360.   The injuries of Plaintiffs and Colorado Subclass Members were to legally protected interests. The gravity of the harm of Defendants' secret tracking, profiling, and targeting of children is significant and there is no corresponding benefit to consumers of such conduct.

361.   Plaintiffs and Colorado Class Members seek relief under Colo. Rev. Stat. § 6-1-101, *et. seq.*, including, not limited to, compensatory damages, statutory damages, restitution, penalties, appropriate injunctive relief, and/or attorneys' fees and costs.

## ELEVENTH CLAIM FOR RELIEF

### Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1, *et seq.*

### (Brought on Behalf of Plaintiff C.D. and the Indiana Subclass Against All Defendants)

362.   Plaintiff C.D. incorporates the foregoing allegations as if fully set forth herein.

363.   Defendants are "persons" as defined by Ind. Code § 24-5-0.5-2(a)(2).

364.   Defendants are "suppliers" as defined by Ind. Code § 24-5-0.5-2(a)(1) because they regularly engage in or solicit "consumer transactions" within the meaning of § 24-5-0.5-2(a)(3)(A).

365.   Defendants' conduct was deceptive, unfair, and unlawful in numerous respects.  The Google Defendants have intentionally and deceptively misled parents and the public about Defendants' intention to use the YouTube Platform and the monetized channels thereon to attract and provide video viewing to children in order to gain access to the Personal Information of such children and to exploit such children's Personal Information for the Google Defendants' and the Channel Owner Defendants' financial gain.  During the Class Period, the Google Defendants have asserted that they "do no evil" and

are being "transparent" about "what data we collect, how it's used, and why" (among other misrepresentations), that they comply with all applicable laws, and that children are not permitted to access the YouTube Platform.  The parents and guardians of Plaintiff and Subclass members also reasonably expected that all Defendants, including the Channel Owners, respect children's privacy online, in accordance with societal expectations and public policy as well as state and federal statutes and regulations including COPPA and Federal Trade Commission regulations.  At the same time, the Google Defendants and the Channel Owner Defendants have, at all times throughout the Class Period, been well aware that children access YouTube's channels; have actively sought to increase viewing of the YouTube Platform by children; and have sought to exploit, for commercial purposes and gain, the millions of child viewers of YouTube.  Defendants' knowledge of the widespread use of the Platform by children (which the Google Defendants have expressly touted in their advertising sales efforts) and failure to disclose that they are tracking, profiling, and targeting such children without parental consent and/or profiting from this behavior, while at the same time representing that the YouTube Platform complies with law and societal expectation, and does not permit and does not seek to reach children, are likely to and, in fact, did deceive Plaintiffs and Indiana Subclass Members and their parents or guardians.

366.    The Channel Owner Defendants' conduct separately violates the Indiana Consumer Sales Act. As alleged herein, all Defendants acted in concert to harm Plaintiffs and Indiana Subclass members, and/or the Channel Owner Defendants substantially participated in, directed, permitted, assisted, and/or encouraged the Google Defendants in the conduct here described.

367.    Moreover, the Channel Owner Defendants aided and abetted the Google Defendants. They had actual knowledge that the Google Defendants' conduct breached duties owed by law and public policy, and they gave substantial assistance or encouragement to the Google Defendants in this conduct. The Channel Owner Defendants personally participated in these unlawful and unfair practices by creating and posting child-directed content and allowing more profitable behavioral advertising on their YouTube channels. They also had unbridled control over these practices, in that they could have chosen not to post child-directed content or not to allow behavioral advertising.

368.    Defendants' misrepresentations and omissions include both implicit and explicit representations.

369.   Defendants' actions constituted unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

370.   Defendants' acts and practices were "unfair" because they caused or were likely to cause substantial injury to Plaintiff and Indiana Subclass Members which was not reasonably avoidable by them and not outweighed by countervailing benefits to consumers or to competition.

371.   Defendants engaged in "deceptive" acts and practices in violation of Indiana Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b), including:

a.   Misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have; and

b.   Misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model.

372.   Defendants' acts and practices were also "abusive" for numerous reasons, including:

a.   Defendants materially interfered with the ability of the parents or guardians of Plaintiff and Indiana Subclass Members' ability to understand the terms and conditions of their minors' viewing of YouTube channels. Defendants' failure to disclose their collecting and profiting from minors' Personal Information interfered with Plaintiff and Indiana Subclass Members' decision-making.

b.   Defendants unreasonably took advantage of Plaintiff and Indiana Subclass Members' lack of understanding about the material risks, costs, or conditions of a consumer transaction.

c.   Defendants took unreasonable advantage of child consumers' inability to protect their own interests.

d.   Defendants took unreasonable advantage of parents' and guardians' reasonable reliance that Defendants were acting in accordance with law, public policy, and public policy to not profit from minor's Personal Information.

373.   Defendants intended to mislead Plaintiff and Indiana Subclass Members and their parents and guardians and induce them to rely on their misrepresentations and omissions. Plaintiff and Indiana

94

Subclass Members could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of their decision-making. By withholding the important information that they were collecting and profiting from minors' Personal Information, Defendants created an asymmetry of information.

374.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers such as the parents or guardians of Plaintiff and Indiana Subclass Members about the terms under which their children were watching the YouTube Platform as well as the fact that Defendants were collecting and profiting from minors' Personal Information without their parents and guardians' knowledge or consent.

375.    Defendants had a duty to disclose the above-described facts due to the important public interest in securing the privacy of minors' Personal Information and the fact that minors are unable to fully protect their own interests. Plaintiff and Indiana Subclass Members placed trust in Defendants as major and reputable companies who represent that they are in compliance with applicable laws and societal interests in safeguarding minors' Personal Information. Additionally, Defendants had sole ability to understand the extent of the Google Defendants' collection of Personal Information, and the parents or guardians of Plaintiff and Indiana Subclass Members could not reasonably have discovered— and were unaware of—Defendants' secret tracking, profiling, and targeting.

376.    Defendants invaded Plaintiff's and Subclass Members' privacy without their or their parents and guardians' consent. Because Defendants held themselves out as complying with law and public policy regarding minors' privacy rights, the parents or guardians Plaintiff and Indiana Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions.

377.    Defendants acted intentionally, knowingly, and maliciously to violate Indiana's Deceptive Consumer Sales Act, and recklessly disregarded Plaintiff's and Indiana Subclass Members' rights. Defendants' actions were not a result of mistake of fact or law, honest human error or judgment, overzealousness, mere negligence, or other human failing.

378.    Defendants' conduct includes incurable deceptive acts under Ind. Code § 24-5-0.5-2(a)(8) that Defendants engaged in as part of a scheme, artifice, or device with intent to defraud or mislead.

379.   Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiff and Indiana Subclass Members. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs  and Indiana Subclass Members have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described above, including the loss or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of Plaintiff and Indiana Subclass members. Plaintiff's and Subclass Members' Personal Information has tangible value; it is now in the possession of Defendants, who have used and will use it for their financial gain

380.   The Google Defendants' retention of Plaintiff's and Indiana Subclass Members' Personal Information present a continuing risk to them as well as the general public.

381.   Plaintiff and Indiana Subclass Members seek all monetary and nonmonetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

## TWELFTH CLAIM FOR RELIEF

279.1.  rights.  Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## TENTH CLAIM FOR RELIEF

**Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. CH 93A, § 1,** *et. seq.*

**(Brought on Behalf of Plaintiff** Goodwin**A.G. and the Massachusetts Subclass Against All Defendants)**

280.382.    Plaintiff Goodwin**A.G.** incorporates the foregoing allegations as if fully set forth herein.

281.383.    Defendants and Massachusetts Subclass Members are "persons" as meant by Mass. Gen. Laws. Ann. Ch. 93A, § 1(a).

282.384.    Defendants operate in "trade or commerce" as meant by Mass. Gen. Laws Ann. ch. 93A, § 1.

96

283.385.      Defendants advertised, offered, or sold goods or services in Massachusetts and/or engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

284.386.      Defendants' conduct was deceptive, unfair, and unlawful in numerous respects. The Google Defendants have intentionally and deceptively misled parents and the public about Defendants' intention to use the YouTube Platform and the monetized channels thereon to attract and provide video viewing to minors under the age of thirteenchildren in order to gain access to the Personal Information of such minorschildren and to exploit such minors'children's Personal Information for the Google Defendants' and the Channel Owner Defendants' financial gain.  TheDuring the Class Period, the Google Defendants have falsely asserted that such they "do no evil" and are being "transparent" about "what data we collect, how it's used, and why" (among other misrepresentations), that they comply with all applicable laws, and that children are not permitted to access the Platform while, atYouTube Platform. The parents and guardians of Plaintiff and Subclass members also reasonably expected that all Defendants, including the Channel Owners, respect children's privacy online, in accordance with societal expectations and public policy as well as state and federal statutes and regulations including COPPA and Federal Trade Commission regulations.  At the same time, the Google Defendants and the Channel Owner Defendants have, at all times throughout the Class Period, been well aware that minors under the age of thirteenchildren access YouTube's channels; have actively sought to increase viewing of the YouTube Platform by children under the age of thirteen; and have sought to exploit, for commercial purposes and gain, the millions of YouTubechild viewers under the age of thirteen. of YouTube. Defendants' knowledge of the widespread use of the Platform by children under the age of thirteen (which the Google Defendants have expressly touted in their advertising sales efforts) and failure to disclose that they are tracking, profiling, and targeting such children without parental consent and/or profiting from this behavior, while at the same time representing that the You TubeYouTube Platform complies with law and societal expectation, and does not permit and does not seek to reach children under the age of thirteen, are likely to and, in fact, did deceive Plaintiff Goodwin and Massachusetts Subclass members.Members and their parents or guardians.

387.    The Channel Owner Defendants' conduct separately violates the Massachusetts Consumer Protection Act. Throughout the Class Period, all Defendants acted in concert to harm Plaintiff and Massachusetts Subclass members, and the Channel Owner Defendants substantially participated in, directed, permitted, assisted, and/or encouraged the Google Defendants in the conduct herein described.

388.    Moreover, during the Class Period, the Channel Owner Defendants aided and abetted the Google Defendants. They had actual knowledge that the Google Defendants' conduct breached duties owed by law and public policy, and they gave substantial assistance or encouragement to the Google Defendants in this conduct. The Channel Owner Defendants personally participated in these unlawful and unfair practices by creating and posting child-directed content and allowing more profitable behavioral advertising on their YouTube Channels. They also had unbridled control over these practices, in that they could have chosen not to post child-directed content or not to allow behavioral advertising.

285.    By these actions, Defendants engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of Mass. Gen. Laws Ann. ch. 93A, § 2(a), including but not limited to the following:

> a.    Defendants knowingly omitted, suppressed, and concealed the material fact that they were collecting, profiting from, and/or monetizing through advertisement the Personal Information of Massachusetts Subclass Members, with the intent that others rely on the omission, suppression, and concealment;
>
> b.    Defendants engaged in unfair and deceptive acts and practices by collecting, profiting from, and/or monetizing through advertisement minors' personal information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, including COPPA and Federal Trade Commission Regulations;

286.389.    Defendants engaged in unfair and deceptive acts and practices with respect to the sale of YouTube video services by failing to take proper action following the collection of minors' Personal Information to protect this information from further use to direct behavior-based advertising to minors.)...

287.390.    Defendants' acts and practices were unfair because they fall within the penumbra of common law, statutory, and established concepts of unfairness, given that Defendants solely held the true facts about their collection and/or monetization of minor children's Personal Information, which neither Plaintiff Goodwin and the Massachusetts Subclass Members nor their parents or guardians could not independently discover.

288.391.    Consumers Plaintiff and Massachusetts Subclass Members could not have reasonably avoided injury because Defendants' acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding By misleading Plaintiff's and Massachusetts' Subclass Members' parents and/or guardians about the important information about that they were collecting and/or profiting from minors' Personal Information, Defendants created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury..

289.392.    Defendants' actions had no counterveiling countervailing benefit to consumers or to competition.

290.393.    Defendants intended to mislead Plaintiff and Massachusetts Subclass Members and their parents and guardians and induce them to rely on its misrepresentations and omissions. Defendants' representations and omissions were material because they were likely to deceive Plaintiff and Massachusetts Subclass members about the collection and/or monetization of minor children's reasonable consumers such as the parents and guardians of Plaintiff and Subclass Members about the terms under which their children were watching the YouTube Platform as well as the fact that Defendants were collecting and profiting from minors' Personal Information without Plaintiffs' or their parents and guardian's knowledge or consent.

394.    Defendants had a duty to disclose the above-described facts due to the important public interest in securing the privacy of minors' Personal Information and the fact that minors are unable to fully protect their own interests. Plaintiff and Massachusetts Subclass Members placed trust in Defendants as major and reputable companies who represent that they are in compliance with applicable laws and public policy to safeguard minors' Personal Information. Additionally, Defendants had sole ability to understand the extent of the Google Defendants' collection of Personal Information and the

99

parents or guardians of Plaintiff and Massachusetts Subclass Members could not reasonably have discovered—and were unaware of—Defendants' secret tracking, profiling, and targeting.

395. Defendants invaded Plaintiff's and Subclass Members' privacy without their or their parents and guardians' consent. Because Defendants' held themselves out as complying with law and public policy regarding minors' privacy rights, Plaintiff and Massachusetts Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions.

291.396. Defendants acted intentionally, knowingly, and maliciously to violate Massachusetts' Consumer Protection Act, and recklessly disregarded Plaintiff and Massachusetts Subclass Members' rights. Defendants knew or should have known that by not securing verifiable parental consent before showing YouTube content created for children to minors, they were failing to safeguard minors' Personal Information, and that collection of minors' Personal Information in contravention of law and public policy was highly likely.

292. Defendants' deceptive trade practices caused injury in fact and actual damages to A.G. and Massachusetts Subclass Members. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Massachusetts Subclass Members have suffered and will continue to suffer injury,an ascertainable lossesloss of money or property, real or personal, and monetary and nonmonetarynon-monetary damages, as described above, including the loss or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of A.G. and Massachusetts Subclass Members.

397. Plaintiff and Massachusetts Subclass members. Plaintiff's and Subclass Members' Personal Information has tangible value; it is now in the possession of Defendants, who have used and will use it for their financial gain.

293.398. Plaintiff, through their parent and guardian Goodwin, sent a demand for relief to the Google Defendants (the only Defendants with offices located in Massachusetts) on March 26, 2020. The Google Defendants responded to Plaintiff's demand on April 10, 2020 and did not offer Plaintiff Goodwin relief.

399. The Google Defendants' retention of Plaintiff's and Massachusetts' Subclass Members' Personal Information present a continuing risk to them.

294.400.      Plaintiff Goodwin and Massachusetts Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages, double or trouble damages, injunctive or other equitable relief, and attorneys' fees and costs.

**ELEVENTH CLAIM FOR RELIEF**

**Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et. seq*.**

**(Brought on Behalf of Plaintiff Jones and the Colorado Subclass Against All Defendants)**

295.1.  Plaintiff Jones incorporates the foregoing allegations as if fully set forth herein.

296.1.  Defendants are "persons" as defined by C.R.S. § 6-1-102(6);

297.   Plaintiff Jones, her minor children E.J, N.J, A.J, and L.J., and Colorado Subclass Members are actual or potential consumers of the YouTube Platform and Channel Owner Defendants' Channels hosted on this platform. They are also actual or potential consumers of the advertisements for goods and services shown on Channel Owner Defendants' Channels by Google Defendants.

298.   Defendants engaged in deceptive, unfair, and unlawful trade acts or practices in the course of their business, vocation, or occupation, in violation of C.R.S. § 6-1-105, including but not limited to the following:

(a)    Knowingly or recklessly made a false representation as to the characteristics and use of the YouTube Platform by minors, in violation of C.R.S. §6-1-105(e);

(b)    Represented that the YouTube Platform and Channel Owner Defendants' Channels complied with privacy laws, public policy, and minors' rights although they knew or should have known that the content did not protect minors' Personal Information, in violation of C.R.S. §6-1-105(g);

(c)    Advertised content on YouTube Channels with an intent not sell it as advertised, in violation of C.R.S. §6-1-105(i);

(d)    Made false or misleading statements as to price and cost of using the YouTube Platform and viewing Channel Owner Defendants' Channels, in violation of C.R.S. §6-1-105(l);

(e)    Employed "bait and switch" advertising, allowing advertising on YouTube Channels on terms other than those advertised and with undisclosed conditions, in violation of C.R.S. §6-1-105(n);

101

(f)   Failed to disclose the material information that they were collecting minors' Personal Information in order to induce Colorado Subclass Members to view Channel Owner Defendants' Channels and the accompanying advertisements, in violation of C.R.S. §6-1-105(u);

(g)   Collected the Personal Information of minors, in violation of the duties imposed by and the public policies reflected in applicable federal and state laws, including COPPA and the Colorado Right against intrusion upon seclusion, in violation of C.R.S. §6-1-105(3).

299.   As detailed *infra*, Defendants' deceptive trade practices significantly impacted the public, because there are millions of viewers of their YouTube Channels, including Plaintiff Jones, her minor children E.J, N.J, A.J, and L.J., and Colorado Subclass Members.

300.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to allow their minor children to watch YouTube without being aware that Defendants' were collecting and profiting from minors' Personal Information.

301.   Defendants' deceptive trade practices caused injury in fact and actual damages to E.J, N.J, A.J, and L.J. and Colorado Subclass Members in the form of the loss or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of E.J, N.J, A.J, and L.J. and Colorado Subclass Members.

302.   The injuries of E.J, N.J, A.J, and L.J. and Colorado Subclass Members were to legally protected interests. The gravity of the harm of Defendants' secret tracking, profiling, and targeting of minors under the age of thirteen is significant and there is no corresponding benefit to consumers of such conduct.

303.   Plaintiff Jones and Colorado Class Members seek relief under Colo. Rev. Stat. § 6-1-101, *et. seq.*, including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

**TWELFTH CLAIM FOR RELIEF**

**Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1, *et seq.***

**(Brought on Behalf of Plaintiff Dishman and the Indiana Subclass Against All Defendants)**

102

304.1. Plaintiff Dishman incorporates the foregoing allegations as if fully set forth herein.

305.1. Defendants are "persons" as defined by Ind. Code § 24-5-0.5-2(a)(2).

306.1. Defendants are "suppliers" as defined by Ind. Code § 24-5-0.5-2(a)(1) because they regularly engage in or solicit "consumer transactions" within the meaning of § 24-5-0.5-2(a)(3)(A).

307. The Google Defendants have intentionally and deceptively misled parents and the public about Defendants' intention to use the YouTube Platform and the monetized channels thereon to attract and provide video viewing to minors under the age of thirteen in order to gain access to the Personal Information of such minors and to exploit such minors' Personal Information for Defendants' financial gain. The Google Defendants have falsely asserted that such children are not permitted to access the Platform while, at the same time, the Google Defendants and the Channel Owner Defendants have, at all times throughout the Class Period, been well aware that minors under the age of thirteen access YouTube's channels; have actively sought to increase viewing of the YouTube Platform by children under the age of thirteen; and have sought to exploit, for commercial purposes and gain, the millions of YouTube viewers under the age of thirteen. Defendants' knowledge of the widespread use of the Platform by children under the age of thirteen (which the Google Defendants have expressly touted in their advertising sales efforts) and failure to disclose that they are tracking, profiling, and targeting such children without parental consent, while at the same time representing that the YouTube Platform does not permit and does not seek to reach children under the age of thirteen, are likely to and, in fact, did deceive Plaintiff and Indiana Subclass Members.

308.1. Defendants' actions constituted unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

309. Defendants' representations and omissions include both implicit and explicit representations.

310. Defendants' acts and practices were "unfair" because they caused or were likely to cause substantial injury to Plaintiff Dishman, her minor child C.D., and Indiana Subclass Members which was not reasonably avoidable by them and not outweighed by countervailing benefits to consumers or to competition.

311.   The injury to Plaintiff, C.D., and Indiana Subclass Members was and is substantial because it was non-trivial and non-speculative; and involved a significant monetary injury to the value of the Personal Information and loss of attendant revenue.

312.   Plaintiff and Indiana Subclass Members could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of their decision-making. By withholding the important information that they were collecting and profiting from minors' Personal Information, Defendants created an asymmetry of information that precluded parents from taking action to avoid or mitigate injury by preventing their children under the age of 13 from viewing YouTube videos.

313.   Defendants engaged in "deceptive" acts and practices in violation of Indiana Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b), including:

    a.   Misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;

    b.   Misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not, and if the supplier knows or should reasonably know that it is not; and

    c.   Misrepresenting that the subject of a consumer transaction will be supplied to the public in greater quantity (i.e., more data security) than the supplier intends or reasonably expects.

314.   Defendants' acts and practices were "abusive" for numerous reasons, including:

    a.   Defendants materially interfered with Plaintiff and Indiana Subclass Members' ability to understand the terms and conditions of their minors' viewing of YouTube Channels. Defendants' failure to disclose their collecting and profiting from minors' Personal Information interfered with Plaintiff and Indiana Subclass Members' decision-making.

    b.   Defendants unreasonably took advantage of Plaintiff and Indiana Subclass Members' lack of understanding about the material risks, costs, or conditions of

104

1    a consumer transaction. Plaintiff and Indiana Subclass Members did not
2    understand that their minors' Personal Information was being collected and
3    monetized by Defendants.

4    c.   Defendants took unreasonable advantage of consumers' inability to protect their
5         own interests. Plaintiff and Indiana Subclass Members' could not protect minors'
6         Personal Information due to the information asymmetry between them and
7         Defendants.

8    d.   Defendants took unreasonable advantage of Plaintiff and Indiana Subclass
9         Members' reasonable reliance that Defendants were acting in accordance with
10        law and public policy to not profit from minor's Personal Information.

11   315.   Defendants intended to mislead Plaintiff and Indiana Subclass Members and induce them
12   to rely on their misrepresentations and omissions.

13   316.   Defendants' representations and omissions were material because they were likely to
14   deceive reasonable consumers to induce them to allow their minor children to watch YouTube without
15   being aware that Defendants were collecting and/or profiting from minors' Personal Information.

16   317.   Defendants had a duty to disclose the above-described facts due to the public interest in
17   securing the privacy of minors' Personal Information and the fact that minors are unable to fully protect
18   their own interests. Plaintiff and Indiana Subclass Members placed trust in Defendants as major and
19   reputable companies who represent that they are in compliance with applicable laws and public policy
20   to safeguard minors' Personal Information. Additionally, Defendants had sole ability to understand the
21   extent of Google Defendants' collection of Personal Information and Plaintiff and Indiana Subclass
22   Members could not reasonably have discovered – and were totally unaware of – Defendants' secret
23   tracking, profiling, and targeting.

24   318.   Had Defendants disclosed to Plaintiff and Indiana Subclass Members that they were
25   collecting and/or profiting from minors' Personal Information, Defendants would have been unable to
26   earn increased profits from the use of behavior-based advertising. Defendants would have been forced
27   to stop collecting and/or profiting from minors' Personal Information. Because Defendants held
28   themselves out as complying with law and public policy regarding minors' privacy rights, Plaintiff and

1   Indiana Subclass Members acted reasonably in relying on Defendants' misrepresentations and
2   omissions, the truth of which they could not have discovered.

3   319.1.   Defendants acted intentionally, knowingly, and maliciously to violate Indiana's
4   Deceptive Consumer Sales Act, and recklessly disregarded Plaintiff and Indiana Subclass Members'
5   rights. Defendants' actions were not a result of mistake of fact or law, honest human error or judgment,
6   overzealousness, mere negligence, or other human failing.

7   320.1.   Defendants' conduct includes incurable deceptive acts under Ind. Code § 24-5-0.5-
8   2(a)(8) that Defendants engaged in as part of a scheme, artifice, or device with intent to defraud or
9   mislead.

10  321.   As a direct and proximate result of Defendants' uncured or incurable unfair, abusive, and
11  deceptive acts or practices, C.D. and Indiana Subclass members have suffered and will continue to suffer
12  injury, ascertainable losses of money or property, and monetary and non-monetary damages, including
13  from loss of value of their Personal Information and accompany revenue.

14  322.   The Google Defendants' retention of C.D.'s and Indiana Subclass Members' Personal
15  Information present a continuing risk to them as well as to the general public.

16  323.   Plaintiff and Indiana Subclass Members seek all monetary and nonmonetary relief
17  allowed by law, including the greater of actual damages or $500 for each non-willful violation; the
18  greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and
19  costs; injunctive relief; and punitive damages.

20  **THIRTEENTH CLAIM FOR RELIEF**
21  **New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et. seq.***
22  **(Brought on Behalf of ~~Plaintiff Efros~~Plaintiffs J.A.E. and J.R.E. and the New Jersey Subclass**
23  **Against All Defendants)**

24  324.401.   ~~Plaintiff Efros incorporates~~Plaintiffs J.A.E. and J.R.E. incorporate the foregoing
25  allegations as if fully set forth herein.

26  325.402.   Defendants are persons within the meaning of N.J. Stat. Ann. § 56:8-1(d).

27  326.403.   The Google Defendants' YouTube Platform, the Channel Owner Defendants'
28  YouTube ~~Channels~~channels, and the advertisement placed on the Channel Owner Defendants'

~~Channels~~channels by the Google Defendants constitute "merchandise" pursuant to § 56:8-1(c), because they constitute commodities or services offered directly or indirectly to the public for sale.

~~327.~~404.        Defendants' offered YouTube content for "sale" to ~~Plaintiff, his minor children J.A.E. and J.R.E.,~~Plaintiffs and New Jersey Subclass Members within the meaning of § 56:8-1(e) because they attempted directly or indirectly to sell advertised products or services to YouTube ~~Channel~~Platform viewers.

~~328.~~405.        Defendants' conduct was deceptive, unfair, and unlawful in numerous respects. The Google Defendants have intentionally and deceptively misled parents and the public about Defendants' intention to use the YouTube Platform and the monetized channels thereon to attract and provide video viewing to ~~minors under the age of thirteen~~ children in order to gain access to the Personal Information of such ~~minors~~children and to exploit such ~~minors'~~children's Personal Information for the Google Defendants' and the Channel Owner Defendants' financial gain. ~~The~~During the Class Period, the Google Defendants have ~~falsely~~ asserted that ~~such~~they "do no evil" and are being "transparent" about "what data we collect, how it's used, and why" (among other misrepresentations), that they comply with all applicable laws, and that children are not permitted to access the ~~Platform while, at~~YouTube Platform. The parents and guardians of Plaintiffs and Subclass members also reasonably expected that all Defendants, including the Channel Owners, respect children's privacy online, in accordance with societal expectations and public policy as well as state and federal statutes and regulations including COPPA and Federal Trade Commission regulations. At the same time, the Google Defendants and the Channel Owner Defendants have, at all times throughout the Class Period, been well aware that ~~minors under the age of thirteen~~children access YouTube's channels; have actively sought to increase viewing of the YouTube Platform by children ~~under the age of thirteen~~; and have sought to exploit, for commercial purposes and gain, the millions of ~~YouTube~~child viewers ~~under the age of thirteen.~~ of YouTube. Defendants' knowledge of the widespread use of the Platform by children ~~under the age of thirteen~~ (which the Google Defendants have expressly touted in their advertising sales efforts) and failure to disclose that they are tracking, profiling, and targeting such children without parental consent and/or profiting from this behavior, while at the same time representing that the ~~You Tube~~YouTube Platform complies with law and societal expectation, and does not permit and does not

seek to reach children ~~under the age of thirteen~~, are likely to and, in fact, did deceive ~~Plaintiff~~Plaintiffs and New Jersey Subclass ~~members.~~Members and their parents or guardians.

406.    The Channel Owner Defendants' conduct separately violates the New Jersey Consumer Fraud Act. All Defendants acted in concert to harm Plaintiffs and class members, and/or the Channel Owner Defendants substantially participated in, directed, permitted, assisted, and/or encouraged the Google Defendants in the conduct herein described.

407.    Moreover, the Channel Owner Defendants aided and abetted the Google Defendants. They had actual knowledge that the Google Defendants' conduct breached duties owed by law and public policy, and they gave substantial assistance or encouragement to the Google Defendants in this conduct. Channel Owner Defendants personally participated in these unlawful and unfair practices by creating and posting child-directed content and allowing more profitable behavioral advertising on their YouTube Channels. They also had unbridled control over these practices, in that they could have chosen not to post child-directed content or not to allow behavioral advertising

~~329.~~408.    Defendants operating in New Jersey engaged in unconscionable ~~and deceptive acts and~~ practices, ~~misrepresentation, and~~deceptions, fraud, false pretenses, false promises, misrepresentations, or the knowing, concealment, suppression, ~~and~~or omission ~~of material facts with respect to the Personal Information collected on viewers of videos they created for or hosted on the YouTube Platform~~these practices, in violation of N.J. Stat. Ann. § 56:8-2~~, including:~~.

> a.    ~~Defendants knowingly omitted, suppressed, and concealed the material fact that they were collecting and monetizing through advertisement the Personal Information of New Jersey Subclass Members, with the intent that others rely on the omission, suppression, and concealment;~~
>
> b.    ~~Defendants engaged in unconscionable and deceptive acts and practices by collecting and profiting from minors' personal information, in violation of duties imposed by and public policies reflected in applicable federal and state laws, including COPPA;~~
>
> c.    ~~Defendants engaged in unconscionable and deceptive acts and practices with respect to the sale of YouTube video services by failing to take proper action~~

following the collection of minors' Personal Information to protect this information from further use to direct behavior-based advertising to minors.

330.409.    The above unlawful and deceptive acts and practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

331.410.    Defendants' representations and omissions were material because they were likely to deceive Plaintiffreasonable consumers such as the parents and guardians of Plaintiffs and New Jersey Subclass members'Members about the collection and monetization of minor children'sterms under which their children were watching the YouTube Platform as well as the fact that Defendants were collecting and profiting from minors' Personal Information without their parents and guardian's knowledge or consent.

332.411.    Defendants intended to mislead PlaintiffPlaintiffs and New Jersey Subclass Members and their parents and guardians and induce them to rely on their misrepresentations and omissions.

333.412.    Defendants knew or should have known that by not securing verifiable parental consent before showing YouTube content to minors, they were failing to safeguard minors' Personal Information and that collection of minors' Personal Information in contravention of law and public policy was highly likely. Defendants' actions in engaging in the above-named unfair practices and deceptive acts were intentional, negligent, knowing, willful, malicious, and/or wanton and reckless with respect to the rights of members of the New Jersey Subclass.

334.413.    Defendants had a duty to disclose the above-described facts due to the important public interest in securing the privacy of minors' Personal Information and the fact that minorschildren are unable to fully protect their own interests. Plaintiff Plaintiffs and New Jersey Subclass Members placed trust in Defendants as major and reputable companies who represent that they are in compliance with applicable laws and public policy to safeguard minors' Personal Information. Additionally, Defendants had sole ability to understand the extent of the Google Defendants' collection of Personal Information and Plaintiffthe parents or guardians of Plaintiffs and New Jersey Subclass Members could

not reasonably have discovered—and were ~~totally~~ unaware of—Defendants' secret tracking, profiling, and targeting.

~~335.~~414.        ~~Had~~ Defendants ~~disclosed to Plaintiff~~invaded Plaintiffs' and ~~New Jersey~~ Subclass ~~Members that they were collecting~~Members' privacy without their or their parents and~~/or profiting from minors' Personal Information, Defendants would have been unable to earn increased profits from the use of behavior-based advertising. Defendants would have been forced to stop collecting and/or profiting from minors' Personal Information.~~ guardians' consent. Because Defendants' held themselves out as complying with law and public policy regarding ~~minors'~~children's privacy rights, Plaintiff and New Jersey Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions~~, the truth of which they could not have discovered~~.

~~336.~~415.        Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiffs and New Jersey Subclass Class Members.  As a direct and proximate result of Defendants' unconscionable or deceptive acts and practices, ~~Plaintiff Efros, of J.A.E. and J.R.E.,~~Plaintiffs and New Jersey Subclass Class Members have suffered and will continue to suffer an ascertainable loss ~~in moneys~~of money or property, real or personal, and monetary and non-monetary damages, as described above, including the loss or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of ~~J.A.E. and J.R.E.~~Plaintiffs and New Jersey Subclass ~~Members~~members. Plaintiffs' and Subclass members' Personal Information has tangible value; it is now in the possession of Defendants, who have used and will use it for their financial gain.

416.    ~~Plaintiff Efros~~The Google Defendants' retention of Plaintiffs' and New Jersey Subclass Members' Personal Information present a continuing risk to them.

~~337.~~    Plaintiffs and New Jersey Subclass Members seek relief under N.J. Stat. Ann. § 56:8-19, including, but not limited to, injunctive relief, other equitable relief, actual damages, treble damages, and attorneys' fees and costs.

## FOURTEENTH CLAIM FOR RELIEF

**Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et. seq.***

**(Brought on Behalf of Plaintiff ~~Gilmore~~M.W. and the Tennessee Subclass Against All Defendants)**

~~338.~~417.     Plaintiff ~~Gilmore~~M.W. incorporates the foregoing allegations as if fully set forth herein.

~~339.~~418.     Plaintiff ~~Gilmore~~ and Tennessee Subclass ~~members~~Members are "consumers" within the meaning of Tenn. Code § 47-18-103(2).

~~340.~~419.     Defendants are "persons" within the meaning of Tenn. Code § 47-18-103(13).

~~341.~~420.     Defendants advertised, offered, or sold goods or services in Tennessee in consumer transactions and engaged in trade or commerce directly or indirectly affecting the people of Tennessee, as defined by Tenn. Code §§ 47-18-103(7), (18) & (19). ~~And Defendants' acts or practices affected the conduct of trade or commerce, under Tenn. Code § 47-18-104.~~

421.     Defendants' acts or practices affected the conduct of trade or commerce, under Tenn. Code § 47-18-104.

~~342.~~422.     Defendants' conduct was deceptive, unfair, and unlawful in numerous respects. The Google Defendants have intentionally and deceptively misled parents and the public about Defendants' intention to use the YouTube Platform and the monetized channels thereon to attract and provide video viewing to ~~minors under the age of thirteen~~children in order to gain access to the Personal Information of such ~~minors~~children and to exploit such ~~minors'~~children's Personal Information for the Google Defendants' and the Channel Owner Defendants' financial gain. ~~The~~During the Class Period, the Google Defendants have ~~falsely~~ asserted that ~~such~~ they "do no evil" and are being "transparent" about "what data we collect, how it's used, and why" (among other misrepresentations), that they comply with all applicable laws, and that children are not permitted to access the ~~Platform while, at~~YouTube Platform. The parents and guardians of Plaintiff and Subclass members also reasonably expected that all Defendants, including the Channel Owners, respect children's privacy online, in accordance with societal expectations and public policy as well as state and federal statutes and regulations including COPPA and Federal Trade Commission regulations.  At the same time, the Google Defendants and the Channel Owner Defendants have, at all times throughout the Class Period, been well aware that ~~minors under the age of thirteen~~children access YouTube's channels; have actively sought to

111

increase viewing of the YouTube Platform by children under the age of thirteen; and have sought to exploit, for commercial purposes and gain, the millions of YouTubechild viewers under the age of thirteen. of YouTube. Defendants' knowledge of the widespread use of the Platform by children under the age of thirteen (which the Google Defendants have expressly touted in their advertising sales efforts) and failure to disclose that they are tracking, profiling, and targeting such children without parental consent and/or profiting from this behavior, while at the same time representing that the YouTubeYouTube Platform complies with law and societal expectation, and does not permit and does not seek to reach children under the age of thirteen, are likely to and, in fact, did deceive Plaintiff and Tennessee Subclass members. Members and their parents or guardians

423.    The Channel Owner Defendants' conduct separately violates the Tennessee Consumer Protection Act. All Defendants acted in concert to harm Plaintiffs and class members, and/or the Channel Owner Defendants substantially participated in, directed, permitted, assisted, and/or encouraged the Google Defendants in the conduct herein described.

424.    Moreover, the Channel Owner Defendants aided and abetted the Google Defendants. They had actual knowledge that the Google Defendants' conduct breached duties owed by law and public policy, and they gave substantial assistance or encouragement to the Google Defendants in this conduct. Channel Owner Defendants personally participated in these unlawful and unfair practices by creating and posting child-directed content and allowing more profitable behavioral advertising on their YouTube channels. They also had unbridled control over these practices, in that they could have chosen not to post child-directed content or not to allow behavioral advertising.

343.425.    By representing that YouTube does not collect the Personal Information of minors, Defendants engaged in unlawful, unfair, and deceptive acts and practices in violation of Tenn. Code § 47-18-104(b), including:

   a.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;, (b)(5);

   b.  Representing that goods or services are of a particular standard, quality or grade, if they are of another;, (b)(7);

   c.  Advertising goods or services with intent not to sell them as advertised;, (b)(9); and

112

d. Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve., (b)(12).

344.1. The above unlawful, unfair, and deceptive acts and practices by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that the consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

345.426. Defendants'The above unlawful, unfair, and deceptive acts and practices by Defendants were unfair because theyimmoral, unethical, oppressive, and unscrupulous. These acts caused or were likely to cause substantial injury to Plaintiff and Tennessee Subclass Members consumers that wasthe consumers could not reasonably avoidable by them and not avoid; this substantial injury outweighed by countervailingany benefits to consumers or to competition.

346. The injury to Plaintiff, M.W., and Tennessee Subclass Members was and is substantial because it was non-trivial and non-speculative; and involved a monetary injury and an unwarranted risk to the safety of their Personal Information. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

347.427. Plaintiff and Tennessee Subclass Members could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of their decision-making. By withholdingmisleading Plaintiff's and Tennessee Subclass Members' parents and/or guardians about the important information that they were collecting and profiting from minors' Personal Information, Defendants created an asymmetry of information that precluded parents from taking action to avoid or mitigate injury by preventing their children under the age of 13 from viewing YouTube videos.

348.428. Defendants knew or should have known that they were collecting and/or profiting from minors' Personal Information and that the risk of collecting of minors' Personal Information was highly likely. Defendants' actions in engaging in the above-named deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff Gilmore and members of the Tennessee Subclass.

349.429.       Defendants intended to mislead Plaintiff and Tennessee Subclass Members and their parents and guardians and induce them to rely on its misrepresentations and omissions.

350.430.       Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to allow such as the parents or guardians of Plaintiff and Tennessee Subclass Members about the terms under which their minor children to watch were watching the YouTube without being aware Platform as well as the fact that Defendants' Defendants were collecting and profiting from minors' Personal Information without their parents and guardians' knowledge or consent.

351.431.       Defendants had a duty to disclose the above-described facts due to the public interest in securing the privacy of minors' Personal Information and the fact that fact that minors are unable to fully protect their own interests. Plaintiff and Tennessee Subclass Members placed trust in Defendants as major and reputable companies who represent that they are in compliance with applicable laws and public policy to safeguard minors' Personal Information. Additionally, Defendants had sole ability to understand the extent of the Google Defendants' collection of Personal Information and the parents or guardians of Plaintiff and Tennessee Subclass Members could not reasonably have discovered—and were totally unaware of—Defendants' secret tracking, profiling, and targeting.

352.432.       Had Defendants disclosed to Plaintiff and Tennessee Subclass Members that they were collecting and/or profiting from minors' Personal Information, Defendants would have been unable to earn increased profits from the use of behavior-based advertising. Defendants would have been forced to stop collecting invaded Plaintiff's and Subclass Members' privacy without their or their parents and/or profiting from minors' Personal Information. guardians' consent. Because Defendants' held themselves out as complying with law and public policy regarding minors' privacy rights, Plaintiff and Tennessee Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

353.433.       Defendants acted intentionally, knowingly, and maliciously to violate the Tennessee Consumer Protection Act, and recklessly disregarded Plaintiff and Tennessee Subclass Members' rights. Defendants' actions were not a result of mistake of fact or law, honest human error or judgment, overzealousness, mere negligence, or other human failing.

354.434.    Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiff and Tennessee Subclass Members. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff Gilmore's minor child M.W. and Tennessee Subclass Members have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described above, including the loss or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of M.W. Plaintiff and Tennessee Subclass members. Plaintiff's and Subclass Members' Personal Information has tangible value; it is now in the possession of Defendants, who have used and will use it for their financial gain.

355.435.    The Google Defendants' retention of M.W.'s Plaintiff's and Tennessee Subclass Members' Personal Information present a continuing risk to them.

356.436.    Plaintiff Gilmore and Tennessee Subclass Members seek relief under Tenn. Code Ann. § 47-18-109, including, but not limited to, injunctive relief, actual damages, treble damages for each willful or knowing violation, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and in their capacity as parents and guardians of their minor children identified herein, on behalf of themselves and the proposed Classes and Subclasses, respectfully request relief as follows:

A.    An order certifying this action as a class action, and certifying the Classes and Subclasses defined herein, designating Plaintiffs, as described above, as the representatives of the respective Classes and Subclasses defined herein, and appointing Plaintiffs' counsel as counsel for the Classes and Subclasses;

B.    An order declaring that Defendants' actions, as described above constitute: (i) breaches of the common law claim of intrusion upon seclusion as to the Intrusion Upon Seclusion Class; (ii) a violation of California's Business & Professions Code as cited herein; (iii) a violation of the right to privacy under the California Constitution, Article I, Section 1; (iv) a violation of the New Jersey Consumer Fraud Act, the Colorado Consumer Protection Act, the Indiana Deceptive Consumer Sales Act, the Tennessee Consumer Protection Act,

115

and the Massachusetts Consumer Protection Act as cited herein; and (v) that Defendants' were unjustly enriched as a result of their actions.

C.   A judgment awarding Plaintiffs and the members of the Classes and Subclasses appropriate relief, including actual, compensatory, and/or statutory damages, and punitive damages (as permitted by law), in an amount to be determined at trial;

D.   A judgment awarding any and all equitable, injunctive, and declaratory relief as may be appropriate, including orders of disgorgement of Defendants' unlawful gains, and restitution.

E.   A judgment awarding all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action, and other relief as permitted by law;

F.   Pre-judgment and post-judgment interest, as permitted by law; and

G.   Grant such other legal and equitable relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  April 14, 2020 January 22, 2021                 Respectfully submitted,

**PRITZKER LEVINE LLP**

*/s/ Jonathan K. Levine*

Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
Caroline C. Corbitt (SBN 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
jkl@pritzkerlevine.com
ecp@pritzkerlevine.com
ccc@pritzkerlevine.com

David S. Golub (admitted *pro hac vice*)
Steven L. Bloch (admitted *pro hac vice*)
Ian W. Sloss (admitted *pro hac vice*)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street

Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

*Attorneys for Plaintiffs and the Proposed Classes and Subclasses*