1   Jonathan K. Levine (SBN 220289)          David S. Golub (admitted *pro hac vice*)
2   Elizabeth C. Pritzker (SBN 146267)        Steven L. Bloch (admitted *pro hac vice*)
    Caroline C. Corbitt (SBN 305492)          Ian W. Sloss (admitted *pro hac vice*)
3   PRITZKER LEVINE LLP                       SILVER GOLUB & TEITELL LLP
    1900 Powell Street, Suite 450             One Landmark Square, 15th Floor
4   Emeryville, CA 94608                      Stamford, CT 06901
    Telephone: (415) 692-0772                 Telephone: (203) 325-4491
5   Facsimile: (415) 366-6110                 Facsimile: (203) 325-3769
    jkl@pritzkerlevine.com                    dgolub@sgtlaw.com
6   ecp@pritzkerlevine.com                    sbloch@sgtlaw.com
7   ccc@pritzkerlevine.com                    isloss@sgtlaw.com

8                                             *Attorneys for Plaintiffs and*
                                              *the Proposed Classes*
9

10

11                    **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NORTHERN CALIFORNIA**
12                          **SAN JOSE DIVISION**

13   C.H., a minor, by and through their guardian ad      Case No. 5:19-cv-07016-BLF
14   litem NICHOLE HUBBARD; E.J., N.J., A.J., and
     L.J., minors, by and through their guardian ad       CLASS ACTION
15   litem CARA JONES; J.A.E. and J.R.E., minors, by
     and through their guardian ad litem JUSTIN           **FOURTH AMENDED COMPLAINT**
16   EFROS; M.W., a minor, by and through their
     guardian ad litem RENEE GILMORE; A.G., a             DEMAND FOR JURY TRIAL
17   minor, by and through their guardian ad litem JAY
18   GOODWIN; C.D, a minor, by and through their
     guardian ad litem BOBBI DISHMAN; D.T. and
19   D.T., minors, by and through their guardian ad
     litem AMANDA SEELEY; S.S., a minor, by and
20   through their guardian ad litem PANKAJ
21   SHARMA, B.H., a minor, by and through their
     guardian ad litem JASON HOFFMAN, P.A. and
22   J.A., minors, by and through their guardian ad
     litem ANTONIO ALVAREZ, S.H. and D.M,
23   minors, by and through their guardian ad litem
24   VERONICA HICKS, J.G., a minor, by and
     through their guardian ad litem JACOB GILL,
25   A.A., a minor, by and through their guardian ad
     litem PENNIE FRAZIER, J.C. and E.M., minors,
26   by and through their guardian ad litem LEZLIE
     COLLINS, L.D., D.D., A.D, minors, by and
27   through their guardian ad litem HOLLIE DORSO,
28   E.W. and A.W., minors, by and through their

guardian ad litem TANYA WALSH, T.P, L.P.,
T.P, and T.P.,  minors, by and through their
guardian ad litem MICHAEL CORWITT, M.W.,
B.N., and W.N., minors, by and through their
guardian ad litem MICHELLE WALL, B.L. and
E.L. minors, by and through their guardian ad
litem CHRISTOPHER LONG, G.W., a minor, by
and through their guardian ad litem DOUG
WILKERSON, M.G., a minor, by and through
their guardian ad litem NATASHA GURAL-
MAIELLO, and N.N. and N.M., minors, by and
their guardian ad litem DENISE NEWSOME,
individually and on behalf of all others similarly
situated,

                              Plaintiffs,
            v.

GOOGLE LLC; YOUTUBE LLC; CARTOON
NETWORK, INC.; CARTOON NETWORK
STUDIOS, INC.; CHUCHU TV STUDIOS;
DREAMWORKS ANIMATION LLC;
DREAMWORKS ANIMATION TELEVISION,
LLC; HASBRO, INC.; HASBRO STUDIOS LLC;
MATTEL, INC.; POCKETWATCH, INC.;
REMKA, INC.; RTR PRODUCTION LLC; AND
RFR ENTERTAINMENT, INC.

                              Defendants.

1  Minor Plaintiffs C.H., E.J., N.J., A.J., L.J, J.A.E., J.R.E., M.W., A.G., C.D., D.T., D.T, S.S.,
2  B.H, P.A, J.A., S.H., D.M., J.G., G.W., A.A., J.C., E.M., L.D., D.D., A.D., E.W., A.W., B.L., E.L., T.P.,
3  L.P., T.P., T.P., M.W., B.N., W.N., M.G., N.N., and N.M. (collectively, "Minor Plaintiffs" or
4  "Plaintiffs"), by and through their respective guardians ad litem and their undersigned counsel, hereby
5  allege the following against Defendants, on behalf of themselves and all others similarly situated, based
6  on personal knowledge, information and belief, the investigation of counsel, and public sources.

## NATURE OF THE ACTION

1.      This action arises out of Defendants' invasive and unfair business practices directed
toward millions of American children under the age of 13 in violation of the law and societal norms.
Specifically, from July 1, 2013 through April 1, 2020 (the "Class Period"), Google, YouTube, and the
owners of many of the most popular YouTube video channels baited vulnerable children using cartoons,
nursery rhymes, and other child-directed content to cause them to view YouTube channels so Defendants
could collect intimate, deeply intrusive data points about them and their behavior without parental
consent. Defendants engaged in this illegal conduct to feed their massively profitable advertising
business, which was dependent on collecting this data.

2.      Defendants' conduct violates the "Little FTC Acts" proscribing unfair trade practices
enacted by a majority of states and constitutes an invasion of the right to privacy and reasonable
expectation of privacy of millions of American children. Plaintiffs thus bring claims, on behalf of
themselves and for all other similarly-situated children under the age of thirteen injured by Defendants'
conduct, pursuant to: (a) the unfair competition laws, or "Little FTC Acts," of Arizona, California,
Colorado, Illinois, Indiana, Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New
Jersey, Pennsylvania, South Carolina, Tennessee, and Washington; (b) the common law right to be free
from intrusion upon seclusion in Alabama, Arizona, California, Florida, Illinois, Kansas, Missouri, New
Hampshire, New Jersey, Oklahoma, Pennsylvania, South Dakota, and Washington; (c); for relief from
Defendants' unjust enrichment at the expense of minor children in Alabama, Arizona, California,
Colorado, Florida, Illinois, Indiana, Kansas, Massachusetts, Michigan, Mississippi, Missouri, New
Hampshire, New Jersey, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, and
Washington; and (d) the right to privacy enumerated in the California Constitution.

3.      Defendants Google LLC and YouTube LLC (collectively, "Google") operate the video-sharing platform YouTube, which contains videos created by individuals and entities that have registered with YouTube and uploaded their videos and created a "channel." YouTube is accessible as a website (www.youtube.com), mobile application, or as an application on a set top streaming device.

4.      Individuals do not have to register or sign in to view videos uploaded to YouTube. Anyone, regardless of age, who visits the YouTube website can browse through and view videos that have been uploaded. And anyone using a device on which the YouTube app has been installed can watch videos on YouTube without verifying his or her age.

5.      Defendants know that YouTube is a top online destination for children.  Indeed, studies have shown that YouTube is "the #1 website regularly visited by kids."  Because of its popularity and its known regular use by children, popular child product brands, such as Defendant toy companies Mattel and Hasbro, among others, maintain YouTube channels and create content specifically for their YouTube channels designed to attract child viewers.

6.      During the Class Period, Google generated revenue from YouTube via YouTube channels whose owners agreed to "monetize" their channels – *i.e.*, agreed to allow Google to place paid advertising on their YouTube channels in return for a share of the resulting advertising revenue, with 45% of the revenue going to Google, and a larger, 55% share of the revenue, going to the channel owners.

7.      Google gave owners of monetized channels a choice between two types of paid advertising to show on their monetized channels: (1) contextual advertising; or (2) behavior-based, or "behavioral" advertising. Contextual advertising (the less lucrative option) shows ads calculated to be of interest to the viewer based on the channel's content. Behavioral advertising (by far the more lucrative option for both channel owners and Google) shows advertisements calculated to be of interest to viewers based on the viewer's own personal information, including persistent identifiers, collected by Google.

8.      Behavioral advertising is the most valuable type of advertising to Google and channel owners because past human behavior, which is what behavioral advertising relies upon, is considered the most effective method of inferring an individuals' interests. It is also the most intrusive. When a channel owner elects to show behavioral advertising on its channel, Google (at the direction of the

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

channel owner) collects all available information, including intrusive personal information such as persistent identifiers and geolocation data, available about the viewer. Google analyzes this data to infer, based on past behavior, which types of advertisements would most effectively influence that individual and accordingly displays that advertisement.

9.    Collection of this data allows Google to develop profiles of individuals over time by tracking their activities across multiple websites or internet-based services. Studies have found that Google is capable of tracking activity across 80% of the internet.

10.    During the Class Period, numerous child-directed content creator owners of YouTube channels (1) uploaded their child-directed content to their YouTube channels; (2) agreed to monetize their channels; and (3) elected to show behavioral advertising on their YouTube channels, thus directing Google to collect the personal information of viewers of their child-directed content, including those under the age of thirteen, for the purpose of showing behavioral advertising. This includes Defendants The Cartoon Network, Inc., Cartoon Network Studios, Inc., Chu Chu TV Studios, DreamWorks Animation LLC, DreamWorks Animation TV, LLC, Hasbro, Inc., Hasbro Studios LLC, Mattel, Inc., Pocketwatch, Inc., Remka, Inc., RTR Production LLC, and RFR Entertainment, Inc. (collectively, the "Channel Owner Defendants").

11.    Neither Google nor the Channel Owner Defendants obtained verifiable parental consent (or any consent at all), to collect the personal information of children under thirteen watching the Channel Owner Defendants' child-directed content on YouTube.

12.    Each Channel Owner Defendant made this election, and Google permitted it, despite it being in contravention of the law and societal norms, to maximize their respective profits. As FTC Commissioner Slaughter has noted: "YouTube has long allowed channel owners to turn off default behavioral advertising and serve instead contextual advertising that does not track viewers, but vanishingly few content creators would elect to do so, in no small part because they receive warnings

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

that disabling behavioral advertising can 'significantly reduce your channel's revenue.' In short, both YouTube and the channels have a strong financial incentive to use behavioral advertising."[1]

13.     The Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 501, *et seq.*, protects children under thirteen years old from having their personal information ("Personal Information") collected by operators of websites or online services directed to children, or operators with actual knowledge that they are collecting Personal Information online from children under thirteen, unless their parent has first given verifiable consent. The Federal Trade Commission ("FTC") has expressly interpreted COPPA as applying not only to YouTube, but to each individual YouTube channel as if it were its own standalone website or online service.

14.     Since 2013, persistent identifiers have been included within the definition of "Personal Information" that operators of websites and online services are barred by COPPA from collecting from children under thirteen years old without verifiable parental consent.

15.     COPPA violations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under section 18(a)(1)(B) of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 57a(a)(1)(B)." In other words, a violation of COPPA constitutes an unfair trade practice under Section 5 of the FTC Act. 15 U.S.C. § 45(a).

16.     As a result of the above-described conduct, on September 4, 2019, the FTC and the New York State Office of the Attorney General filed a Complaint for Permanent Injunction, Civil Penalties, and Other Equitable Relief (the "FTC Complaint") against Google, complaining of Google's wrongful collection and misuse of minors' Personal Information without parental consent in violation of COPPA.

17.     Google entered into a Judgment on September 4, 2019, agreeing to pay $170 million as a civil penalty for its misconduct, but did not agree to immediately cease the misconduct, enabling Google to collect and misuse Personal Information about millions of minors for continuing improper

---

[1] Dissenting Statement of FTC Commissioner Rebecca Kelly Slaughter *In the Matter of Google LLC and YouTube, LLC*, available for download at https://www.ftc.gov/system/files/documents/public_statements/1542971/slaughter_google_youtube_statement.pdf (accessed Jan. 14, 2021).

financial gain. Instead, Google agreed to stop the data collection practices complained of by the FTC after four months from the Judgment, and to comply with COPPA going forward.

18.     Unfortunately for children in the United States, but unsurprising given Google's history of privacy violation recidivism, recent reports from research and consumer advocacy groups have credibly shown that Google continues to collect Personal Information of minor children under thirteen in violation of COPPA and Google's November 2019 Judgment with the FTC.

19.     The above-described conduct engaged in by Google and each of the Channel Owner Defendants not only violates COPPA, but also independently violates the state statutes prohibiting unfair and/or unlawful business practices which are modeled, patterned after, and/or which take interpretive guidance from, the FTC Act (the "Little FTC Acts"), including those enacted by Arizona, California, Colorado, Illinois, Indiana, Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New Jersey, Pennsylvania, South Carolina, Tennessee, and Washington.

20.     Additionally, the conduct of Google and each of the Channel Owner Defendants constitutes unwarranted invasions of privacy in violation of the substantial protections Alabama, Arizona, California, Florida, Illinois, Kansas, Missouri, New Hampshire, New Jersey, Oklahoma, Pennsylvania, South Dakota, and Washington provide their citizens with.  These states recognize the common law right to be free from intrusion upon seclusion, as formulated by § 652B of the Restatement (Second) of Torts, which prohibits intentional intrusion upon the solitude or seclusion of another or his or her private affairs or concerns.  In addition, the California Constitution provides California citizens and residents an enumerated right to privacy.

21.     During the Class Period, Plaintiffs watched monetized YouTube channels owned and/or operated by the Channel Owner Defendants. While Plaintiffs viewed videos on YouTube, Defendants unfairly and unlawfully collected Plaintiffs' Personal Information, including persistent identifiers, in order to deliver targeted advertisements to Plaintiffs that were intended to influence their behavior.

22.     Accordingly, Plaintiffs, through their parents and guardians, bring this action for the relief asserted herein, on behalf of themselves and the Classes of similarly-situated minors whose privacy rights have, like Plaintiffs, been violated by Defendants, for damages, restitution, and appropriate injunctive and/or equitable relief to address Defendants' unlawful practices.

**JURISDICTION AND VENUE**

23.     This Court has general personal jurisdiction over Defendants Cartoon Networks Studios, Inc., DreamWorks Animation LLC, DreamWorks Animation Television, LLC, Google LLC, YouTube LLC, Hasbro Studios LLC, Mattel, Inc., and Pocketwatch, Inc. because their principal places of business are in California. Additionally, all Defendants are subject to specific personal jurisdiction in this State because a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in this State.

24.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d), because the amount in controversy for the Classes exceeds $5,000,000 exclusive of interest and costs, there are more than 100 potential class members, defined below, and minimal diversity exists because the majority of potential class members are citizens of a state different than Defendants.

25.     This Court also has jurisdiction pursuant to 28 U.S.C §1332(d), because the amount in controversy exceeds $75,000 and is between citizens of different states.

26.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial portion of the conduct described in this Complaint was carried out in this District. Furthermore, Defendants Google LLC and YouTube LLC are headquartered in this District and subject to personal jurisdiction in this District.

**INTRADISTRICT ASSIGNMENT**

27.     Assignment to the San Jose Division is proper under Northern District of California Civil Local Rule 3-2(c) because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in Santa Clara County and Defendant Google LLC's principal place of business is located in Santa Clara County, California. Under Civil Local Rule 3-2(e), all civil actions which arise in the County of Santa Clara shall be assigned to the San Jose Division.

**PARTIES**

**I.     Plaintiffs**

28.     Plaintiff C.H. is a natural person and is a resident and citizen of the State of California. C.H. was under the age of 13 during the Class Period. C.H.'s parent and legal guardian is Nichole Hubbard, who is also a resident and citizen of the State of California.

29.     Plaintiffs E.J, N.J, A.J, and L.J are natural persons and are residents and citizens of the State of Colorado. E.J, N.J, A.J, and L.J were under the age of 13 during the Class Period. Their parent and legal guardian is Cara Jones, who is also a resident and citizen of the State of Colorado.

30.     Plaintiffs J.A.E. and J.R.E. are natural persons and are residents and citizens of the State of New Jersey. J.A.E. and J.R.E. were under the age of 13 during the Class Period. Their parent and legal guardian is Justin Efros, who is also a resident and citizen of the State of New Jersey.

31.     Plaintiff M.W. is a natural person and is a resident and citizen of the State of Tennessee. M.W. was under the age of 13 during the Class Period. M.W.'s parent and legal guardian is Renee Gilmore, who is also a resident and citizen of the State of Tennessee.

32.     Plaintiff A.G. is a natural person and is a resident and citizen of the Commonwealth of Massachusetts. A.G. was under the age of 13 during the Class Period. A.G.'s parent and legal guardian is Jay Goodwin, who is also a resident and citizen of the Commonwealth of Massachusetts.

33.     Plaintiff C.D. is a natural person and is a resident and citizen of the State of Indiana. C.D. was under the age of 13 during the Class Period. C.D.'s parent and legal guardian is Bobbi Dishman, who is also a resident and citizen of the State of Indiana.

34.     Plaintiffs D.T. and D.T. are natural persons and residents and citizens of the State of Alabama. D.T. and D.T. were under the age of 13 during the Class Period. D.T.'s and D.T.'s parent and legal guardian is Amanda Seeley, who is also a resident and citizen of the State of Alabama.

35.     Plaintiff S.S. is a natural person and is a resident and citizen of the State of Arizona. S.S. was under the age of 13 during the Class Period. S.S.'s parent and legal guardian is Pankaj Sharma, who is also a resident and citizen of the State of Arizona.

36.     Plaintiff B.H. is a natural person and is a resident and citizen of the State of Florida. B.H. was under the age of 13 during the Class Period. B.H's parent and legal guardian is Jason Hoffman, who is also a resident and citizen of the State of Florida.

37.     Plaintiffs P.A. and J.A. are natural persons and are residents and citizens of the State of Illinois. P.A. and J.A. were under the age of 13 during the Class Period. P.A.'s and J.A.'s parent and legal guardian is Antonio Alvarez, who is also a resident and citizen of the State of Florida.

38.     Plaintiffs S.H. and D.M. are natural persons and are residents and citizens of the State of

Kansas. S.H. and D.M. were under the age of 13 during the Class Period. S.H.'s and D.M.'s parent and legal guardian is Veronica Hicks, who is also a resident and citizen of the State of Kansas.

39.     Plaintiff G.W. is a natural person and is a resident and citizen of the State of Michigan. G.W. was under the age of 13 during the Class Period. A.A.'s parent and legal guardian is Doug Wilkerson, who is also a resident and citizen of the State of Michigan.

40.     Plaintiff A.A. is a natural person and is a resident and citizen of the State of Mississippi. A.A. was under the age of 13 during the Class Period. A.A.'s parent and legal guardian is Pennie Frazier, who is also a resident and citizen of the State of Mississippi.

41.     Plaintiffs J.C. and E.M. are natural persons and are residents and citizens of the State of Missouri. J.C. and E.M. were under the age of 13 during Class Period. J.C.'s and E.M.'s parent and legal guardian is Lezlie Collins, who is also a resident and citizen of the State of Missouri.

42.     Plaintiffs L.D., D.D., and A.D., are natural persons and are residents and citizens of the State of New Hampshire. L.D., D.D., and A.D. were under the age of 13 during the Class Period. L.D.'s, D.D.'s, and A.D.'s parent and legal guardian is Hollie Dorso, who is also a resident and citizen of the State of New Hampshire.

43.     Plaintiff M.G. is a natural person and is a resident and citizen of the State of New York. M.G. was under the age of 13 during the Class Period. M.G.'s parent and legal guardian is Natasha Gural-Maiello, who is also a resident and citizen of the State of New York.

44.     Plaintiff J.G. is a natural person and is a resident and citizen of the State of Oklahoma. J.G. was under the age of 13 during the Class Period. J.G.'s parent and legal guardian is Jacob Gill, who is also a resident and citizen of the State of Oklahoma.

45.     Plaintiffs E.W. and A.W. are natural persons and are residents and citizens of the Commonwealth of Pennsylvania. E.W. and A.W. were under the age of 13 during the Class Period. E.W.'s and A.W.'s parent and legal guardian is Tanya Walsh, who is also a resident and citizen of the Commonwealth of Pennsylvania.

46.     Plaintiffs B.L. and E.L. are natural persons and are residents and citizens of the State of South Carolina. B.L. and E.L. were under the age of 13 during the Class Period. B.L.'s and E.L.'s parent and legal guardian is Christopher Long, who is also a resident and citizen of the State of South Carolina.

47.     Plaintiffs T.P., L.P., T.P., and T.P., are natural persons and are residents and citizens of the State of South Dakota. T.P., L.P., T.P., and T.P. were under the age of 13 during the Class Period. T.P.'s, L.P.'s, T.P., and T.P.'s parent and legal guardian is Michael Corwitt, who is also a resident and citizen of the State of South Dakota.

48.     Plaintiffs N.N. and N.M. are natural persons and are residents and citizens of the Commonwealth of Virginia.  N.N. and N.M. were under the age of 13 during the Class Period. N.N.'s and N.M.'s parent and legal guardian is Denise Newsome, who is also a resident and citizen of the Commonwealth of Virginia.

49.     Plaintiffs M.W., B.N., and W.N. are natural persons and are residents and citizens of the State of Washington.  M.W., B.N., and W.N. were under the age of 13 during the Class Period. M.W.'s, B.N.'s, and W.N.'s parent and legal guardian is Michelle Wall, who is also a resident and citizen of the State of Washington.

## II.     Defendants

### A.     Google Defendants

50.     Defendant Google LLC is a business incorporated under the laws of the State of Delaware with its principal place of business in Mountain View, California. Google LLC is a wholly-owned subsidiary of Alphabet, Inc. and is the parent company of Defendant YouTube LLC.

51.     Defendant YouTube LLC is a wholly-owned subsidiary of Google LLC, incorporated under the laws of the State of Delaware with its principal place of business in San Bruno, California. At all times mentioned herein, acting alone or in concert with Google LLC, YouTube LLC has advertised, marketed, and distributed its YouTube video sharing platform to consumers throughout the United States.

### B.     Channel Owner Defendants

#### i.     Cartoon Network

52.     Defendant The Cartoon Network, Inc. ("Cartoon Network") is a Delaware corporation with its principal place of business in Atlanta, Georgia.

53.     Defendant Cartoon Network Studios, Inc. ("Cartoon Network Studios") is a Georgia corporation with its principal place of business in Burbank, California.

1    54.    Collectively, the Cartoon Network and Cartoon Network Studios are referred to as the

2    "Cartoon Network Defendants."

3        **ii.  ChuChu TV**

4    55.    Defendant ChuChu TV Studios ("ChuChuTV") is an Indian company with its principal

5    place of business located in Chennai, India. ChuChuTV availed itself of the benefits of conducting

6    business in the United States during the Class Period by targeting United States residents with

7    ChuChuTV's content.

8        **iii.  DreamWorks**

9    56.    DreamWorks Animation LLC ("DreamWorks") is a Delaware corporation with its

10   principal place of business in Glendale, California.

11   57.    DreamWorks Animation Television, LLC ("DreamWorks TV") is a Delaware

12   corporation with its principal place of business in Glendale, California.

13   58.    Collectively, DreamWorks and DreamWorks TV are referred to as the "DreamWorks

14   Defendants."

15       **iv.  Hasbro**

16   59.    Defendant Hasbro, Inc. ("Hasbro") is a Rhode Island corporation with its principal place

17   of business in Pawtucket, Rhode Island.

18   60.    Defendant Hasbro Studios LLC ("Hasbro Studios") is a Rhode Island corporation with

19   its principal place of business in Burbank, California.

20   61.    Collectively, Defendants Hasbro and Hasbro Studios are referred to as the "Hasbro

21   Defendants."

22       **v.  Mattel**

23   62.    Defendant Mattel, Inc. ("Mattel") is a Delaware corporation with its principal place of

24   business in El Segundo, California.

25       **vi.  Ryan's World (f/k/a Ryan ToysReview)**

26   63.    Defendant Remka, Inc. ("Remka") is a Texas corporation with its principal place of

27   business in Houston, Texas.

28   64.    Defendant RTR Production, LLC ("RTR Production") is a Texas corporation with its

10

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

1    principal place of business in Houston, Texas.

2        65.    Defendant RFR Entertainment, Inc. ("RFR Entertainment") is a Texas corporation with

3    its principal place of business in Houston, Texas.

4        66.    Defendant Pocketwatch, Inc. ("Pocketwatch") is a Delaware corporation with its

5    principal place of business in Culver City, California.

6        67.    Collectively, Remka, RTR Production, RFR Entertainment, and Pocketwatch are referred

7    to as the "Ryan's World Defendants."

8                          **FACTUAL BACKGROUND**

9    **I.    Google and YouTube**

10        68.    Google is a multinational internet technology and advertising company that owns the

11    world's two most-visited internet webpages: www.google.com and www.youtube.com. Google is best

12    known for operating a search engine that catalogues websites and organizes information on the internet

13    to allow Google users to search the internet's content. Google uses information that it learns from Google

14    users' searches and web traffic patterns on websites it owns (including YouTube) and websites that use

15    Google's advertising services to deliver targeted advertisements. Advertising is Google's primary source

16    of revenue, accounting, for example, for approximately $116 billion out of Google's $136.2 billion in

17    revenue in 2018.

18        69.    YouTube LLC operates YouTube, an online video-sharing platform. YouTube allows its

19    visitors and/or users to view user-generated content that has been uploaded by registered YouTube users

20    to YouTube.

21        70.    YouTube videos are viewable by anyone who accesses YouTube by visiting

22    www.youtube.com or using the YouTube mobile or streaming device app. During the Class Period,

23    individuals did not have to be registered with Google, nor signed into YouTube, to view YouTube

24    videos. And Google did not verify the age of an individual opening an already-installed YouTube mobile

25    app on a mobile device or through other electronic media, including computers.

26        71.    Google was, at all times throughout the Class Period, aware that minor children access

27    YouTube's channels and actively sought to increase viewing on YouTube by children through content

28

directed toward those children, while publicly representing that such minors were not permitted to access YouTube – and has been very successful attracting this young viewership.

**II.     Google's Advertising Practices**

72.     Google offers a number of services, such as YouTube and the email service Gmail, free of charge. Google earns revenue from these services via advertising.

**A.     Google's Data Collection Practices**

73.     During the Class Period and at the direction of channel owners, including each of the Channel Owner Defendants, Google collected Personal Information from individuals who accessed YouTube for purposes of showing behavioral advertising to those individuals. The Personal Information was collected by Google from the vast network of websites and online services that used Google's advertising services.

74.     Google, at the direction of channel owners, , including each of the Channel Owner Defendants, collected, *inter* alia, the following information about YouTube's users for purposes of showing them behavioral advertising:

•     **User Activity**: searches run, videos watched, views and interactions with content and ads, voice and audio information, purchase activity, people with whom a user communicated, browsing history, and activity on third-party sites and apps that used Google services, which includes Google's advertising services;

•     **Location Information:** GPS, internet protocol ("IP") address, device sensor data, and data from devices located near a user;

•     **Unique Identifiers:** cookie ID, advertising ID, device ID, among others. [2]

  **i.   Cookies**

75.     Google stores some unique identifiers in a text file stored on an individual's browser. These text files are known as "cookies." The type of information stored in cookies can include websites

---

[2] During the Class Period, Google defined the term "unique identifiers" as a string of characters that can be used to uniquely identify a browser, app, or device.  Unique identifiers can arise from a variety of applications, websites, sensors, and devices.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

the user has previously visited, the duration of website visits, videos viewed, advertisements viewed, duration of video views, and advertisements clicked, among other information. One popular use of cookies is to enable an individual to visit a series of affiliated websites, for example Gmail and YouTube, without having to re-enter his or her user name and password on each. Each cookie contains a string of characters, or a "cookie ID," that allows the website or service to recognize that specific browser. Cookies, and the unique identifiers stored in cookies, can generally be deleted.

### ii. Persistent Identifiers

76.   Some data and/or information Google collected cannot be easily deleted or reset. Because these data points remain constant, or "persist," they are colloquially referred to as "persistent identifiers." Common examples of persistent identifiers are social security numbers and phone numbers.  Since persistent identifiers are difficult to change or reset, they are seen by advertisers as a more reliable method of identifying and tracking users over time than cookies.

77.   One example of a persistent identifier collected by Google during the Class Period was a user's IP address. An IP address is a numerical label assigned to each device connected to a computer network, such as the internet. Another example of a persistent identifier collected by Google was a device's International Mobile Equipment Identity ("IMEI") number. Every mobile phone and smartphone is assigned a unique IMEI that cannot be changed.

78.   During the Class Period, Google used persistent identifiers to track individuals' internet behavior. For example, a website that used Google's advertising services to deliver ads to its visitors would send Google its visitors' IP address and/or IMEI number. When another website that used Google's advertising services sent Google the same IP address or IMEI number, Google knew that individual had visited both websites. Studies have found that Google is capable of tracking individuals *over 80% of the internet*.[3]

79.   Google used this information to build detailed individual profiles that included identifiers

---

[3] Steven Englehardt & Arvin Narayanan, *Online Tracking: A 1-million-site Measurement and Analysis*, Princeton University WebTAP Project, http://randomwalker.info/publications/OpenWPM_1_million_site_tracking_measurement.pdf (accessed Oct. 21, 2019) (emphasis added).

correlating with individual users. Most individuals had no idea that Google was tracking their activity across the internet, and virtually no minor child would have had any understanding of this activity. The data that Google gathered was stitched into a single profile of a user which gave Google the most accurate, up-to-date, snapshot of a user's attributes and behaviors. Google used this data to deliver targeted advertisements to YouTube video viewers based on preferences inferred from their profiles. User profiles such as those developed by Google have been called the "holy grail" of advertising[4] and allowed Google to charge advertisers increased advertising rates.

80.     Google used unique and persistent identifiers to track individuals' activity on any webpage that was using Google's advertising services. An individual's activity on those websites was shared with Google:

**Your activity on other sites and apps**

This activity might come from your use of Google services, like from syncing your account with Chrome or your visits to sites and apps that partner with Google. Many websites and apps partner with Google to improve their content and services. For example, a website might use our advertising services (like AdSense) or analytics tools (like Google Analytics), or it might embed other content (such as videos from YouTube). These services may share information about your activity with Google and, depending on your account settings and the products in use (for instance, when a partner uses Google Analytics in conjunction with our advertising services), this data may be associated with your personal information.[5]

81.     During the Class Period, Google stated that it used these profiles to deliver "more relevant search results and ads" to YouTube video viewers.[6] To illustrate this point, Google offered the

---

[4] Randell Cotta, Sr., *Overcoming the Last Hurdle in the Quest for the "Holy Grail" of Marketing*, KD NUGGETS, https://www.kdnuggets.com/2017/02/quest-holy-grail-marketing.html (accessed Oct. 21, 2019).

[5] Google Privacy Policy (accessed Oct. 21, 2019).

[6] *Id.*

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

following example: "if you watch videos about baking on YouTube, you may see more ads which relate to baking as you browse the web."[7]

82.    Google did not have a separate data collection policy for minor children as of October 2019 or later. Google applied the data collection practices described herein to each individual who visited YouTube, Google, or any website using any of Google's services during the Class Period, irrespective of that individual's age – even for viewers of children's content on YouTube, for which the primary audience, as Google knew full well, was children, including children under the age of thirteen.[8]

83.    After settling with the FTC and the New York Attorney General in fall 2019, Google announced that it would begin complying with COPPA on YouTube for the first time beginning in January 2020:

> **_We are changing how we treat data for children's content on YouTube._** Starting in about four months, we will treat data from anyone watching children's content on YouTube as coming from a child, regardless of the age of the user. This means that we will limit data collection and use on videos made for kids only to what is needed to support the operation of the service. We will also stop serving personalized ads on this content entirely, and some features will no longer be available on this type of content, like comments and notifications. In order to identify content made for kids, creators will be required to tell us when their content falls in this category, and we'll also use machine learning to find videos that clearly target young audiences, for example those that have an emphasis on kids characters, themes, toys, or games.[9] (emphasis added).

YouTube also committed to introducing a new annual training for its teams regarding COPPA.

84.    Subsequent to the filing of Plaintiffs' initial complaint, Google also created a "Privacy Notice for Google Accounts Managed with Family Link, for Children under 13 (or applicable age in

---

[7]    *Ads you'll find most useful*, Google Privacy & Terms, https://policies.google.com/privacy/example/ads-youll-find-most-useful?hl=en (accessed Oct. 16, 2019) (emphasis added).

[8]    *An update on kits and data protection on YouTube*, YouTube Official Blog, Sept. 4, 2019, https://youtube.googleblog.com/2019/09/an-update-on-kids.html (accessed Jan. 20, 2021).

[9]    *An update on kids and data protection on YouTube*, YouTube Official Blog, Sept. 4, 2019, https://youtube.googleblog.com/2019/09/an-update-on-kids.html (accessed Jan. 20, 2021).

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

your country).[10]  In this Privacy Notice, Google admitted to collecting minor children's Personal Information and tracking their activities across the Internet, including to provide recommendations, personalized content, and customized search results.[11]  Now, in a change from its former practice, Google represented that it "will not serve personalized ads to your child, which means ads will not be based on information from your child's account. Instead, ads may be based on information like the content of the website or app your child is viewing, the current search query, or general location (such as city or state)."[12]  Google also now purports to allow children or parents to delete minor children's activity.[13]  None of these disclosures about its collection and tracking of minor children's Personal Information and internet activities or purported creation of a right to delete collected information about minor children existed during the Class Period or at the time this action was filed.

**B.    Google's Targeted Advertising Techniques**

85.    During the Class Period, advertising on YouTube could be either be behavioral or contextual targeting. Behavioral targeting is the delivery of advertisements to individuals based on that user's personal information, which is tracked across multiple websites, apps, and devices. The information Google collected was incorporated into an algorithm which inferred which types of advertisements were likely to have the greatest impact on the user associated with the information (*i.e.,* most likely to be clicked).

86.    Google preferred showing behavior-based, or "behavioral" advertising because it was the most lucrative for both Google and YouTube channel owners. Because of this, Google programmed behavioral advertising as the default method of advertising employed on monetized YouTube channels, but gave channel owners the ability to choose the form of advertising to show and opt out of behavioral advertising, instead showing contextual advertising.

---

[10] https://families.google.com/familylink/privacy/child-policy/ (accessed Dec. 2, 2020).

[11] *Id.*

[12] *Id.*

[13] *Id.*

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

87.     Contextual targeting is a process by which Google matches advertisements to relevant YouTube channels using keywords provided by the advertiser. Google's system analyzes the content of a YouTube channel to determine its central theme, which is then matched to an advertiser's advertisements using a variety of factors including keywords and topic selections. Contextual targeting does not rely on user-specific data to provide ads.

88.     Because behavioral advertising is more effective than contextual targeting, advertisers paid Google more to run behavioral advertising, and Google in turn paid YouTube channel owners more for allowing Google to run behavioral advertising on their channels than they would have paid them for only allowing contextual advertising.

**C.     YouTube Channel Monetization**

89.     YouTube channel owners that pass a viewership threshold set by Google can choose to "monetize" their channel by allowing Google to run advertisements on that channel. Advertisements can take the form of a video clip played before, during, or after the channel owner's video is played, or can be displayed as a banner. Google and the owners of monetized YouTube channels share the advertising revenue, with Google keeping 45% and the channel owners receiving 55%.[14]

90.     Owners of monetized YouTube channels could then elect which type of advertisements to show to viewers of their content: contextual advertising or behavioral advertising. As early as January 2016, all monetized channel owners, including each of the Channel Owner Defendants, were given the option to disable behavioral advertising on their monetized channels. To turn off behavioral ads, the channel owners were required to actively check a box in the "Advertisements" section of YouTube's "Advanced Video Manager Options" menu. The checkbox that allowed the channel owner to opt out of behavioral advertising contained text stating that doing so "may significantly reduce [the] channel's revenue." When a channel owner opted out of behavioral advertisements on a monetized channel,

---

[14] *See* Eric Rosenberg, *How YouTube Ad Revenue Works*, INVESTOPEDIA (Oct. 7, 2018), https://www.investopedia.com/articles/personal-finance/032615/how-youtube-ad-revenue-works.asp (accessed Oct. 24, 2019).

Google served contextual advertising instead, which generated less revenue for the channel owner and Google.

91.     As FTC Commissioner Kelly Slaughter stated, "YouTube has long allowed channel owners to turn off default behavioral advertising and serve instead contextual advertising that does not track viewers, but vanishingly few content creators would elect to do so, in no small part because they receive warnings that disabling behavioral advertising can 'significantly reduce your channel's revenue.' In short, both YouTube and the channels have a strong financial incentive to use behavioral advertising."[15]

**III.    The Children's Online Privacy Protection Act of 1998**

92.     Congress passed COPPA, codified at 15 U.S.C. § 6501, *et seq.,* in 1998 in response to concerns that children's online activities were being tracked by operators of websites and online services. COPPA is intended to "maintain the security of personally identifiable information of children collected online" and to "protect children's privacy by limiting the collection of personal information from children without parental consent."[16]   The standards in COPPA have given rise to, and correlate with, accepted norms throughout society for defining the expectations of privacy for minor children.

93.     COPPA applies to any operator of a commercial website or online service directed to children under thirteen years of age that collects, uses, and/or discloses Personal Information from children. The FTC considers parties with actual knowledge that they are collecting Personal Information from users of a child-directed site or service as "operators" under COPPA.

94.     COPPA "prohibits unfair … acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet." 16 C.F.R. § 312.1.

95.     COPPA provides, in pertinent part, that:

---

[15] Dissenting Statement of FTC Commissioner Rebecca Kelly Slaughter *In the Matter of Google LLC and YouTube, LLC*, available for download at https://www.ftc.gov/system/files/documents/public_statements/1542971/slaughter_google_youtube_statement.pdf (accessed Jan. 14, 2021).

[16] 144 CONG. REC. S12787.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

> It is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates the regulations prescribed [by the Federal Trade Commission]. 15 U.S.C. § 6502(a).

96.     COPPA thus prohibits, *inter alia*, the collection of persistent identifiers for behavioral advertising absent notice and verifiable parental consent. 16 C.F.R. §§ 312.5(c)(7), 312.2.

97.     COPPA specifically requires an "operator" covered by COPPA to give notice to parents and obtain their verifiable consent before collecting children's Personal Information online. 16 C.F.R. §§ 312.4 and 312.5. This includes but is not limited to:

    a.     Posting a privacy policy on its website or online service providing clear, understandable, and complete notice of its information practices, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth by COPPA;

    b.     Providing clear, understandable, and complete notice of its information practices, including specific disclosures directly to parents; and

    c.     Obtaining verifiable parental consent prior to collecting, using, and/or disclosing Personal Information from children.

98.     The FTC has interpreted "operators of website or online services directed to children" and "operators with actual knowledge that they are collecting personal information online from children under thirteen" as used under COPPA to include YouTube and channel owners. In fact, the FTC has interpreted COPPA as viewing "content creators and channel owners" as both "standalone 'operators' under COPPA, subject to strict liability for COPPA violations."[17]

99.     Websites or online services that collect Personal Information from users of other child-

---

[17] Statement of Joseph J. Simons & Christine S. Wilson, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC*, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf (accessed Oct. 21, 2019).

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

directed websites or online services are deemed as "child-directed" if the website or online service "has actual knowledge that it is collecting personal information directly from users of another Web site or online service directed to children." 16 C.F.R. § 312.2.

100.    In order to determine whether a website or online service is "directed to children" the FTC will:

> [C]onsider [the website's or online service's] subject matter, visual content, use of animated characters or child-oriented activities and incentives, music or other audio content, age of models, presence of child celebrities or celebrities who appeal to children, language or other characteristics of the Web site or online service, as well as whether advertising promoting or appearing on the Web site or online service is directed to children.

16 CFR § 312.2

101.    In 2013, COPPA was enhanced (the "2013 COPPA Enhancement") to provide further protection for children against online tracking and to "giv[e] parents greater control over the online collection of their children's personal information." The 2013 enhancement widened the definition of children's "Personal Information" to include "persistent identifiers" such as cookies that track a child's activity online, geolocation information, photos, videos, and audio recordings.

102.    The 2013 COPPA Enhancement was the culmination of two years of rulemaking by the FTC and reflected society's growing recognition of the surreptitious surveillance tactics used by advertising companies to track children online and advertise to them while using the internet.

103.    For example, the FTC published a 2012 report entitled *Mobile Apps for Kids: Disclosures Still Not Making the Grade* (the "FTC Kids Mobile App Report") addressing privacy dangers for children using mobile devices with persistent identifiers to access the internet. The FTC Kids Mobile App Report warned that companies like Google link persistent identifiers and geolocation data they collect with additional Personal Information such as name, address, and email address—allowing those entities and their partners to identify individual users whom they profile with indisputably individual specificity.

104.    By expressly including persistent identifiers and geolocation data in COPPA's definition of Personal Information, the FTC intended to deter advertising companies and advertising network

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

operators such as Google and the Channel Owner Defendants from exploiting young children via tracking, profiling, and advertising online.

105.    Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of COPPA constitutes an unfair … act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

106.    While COPPA does not itself provide a private right of action for individuals to seek redress for harms arising from COPPA violations, and contains a limited preemption clause barring the imposition of liability by states and local governments "inconsistent" with COPPA (15 U.S.C. § 6502(d)), the United States Court of Appeals for the Ninth Circuit has held that "COPPA's preemption clause does not bar state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA." *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023).

107.    Therefore, individuals harmed by conduct which violates COPPA such as the conduct described herein may seek redress for harms via state law causes of action.

## SUBSTANTIVE ALLEGATIONS

### I.    Google Knowingly Targeted and Tracked Children Under Thirteen on YouTube

108.    On September 4, 2019, Google issued a statement in conjunction with its settlement with the FTC and New York Attorney General's office for alleged violations of COPPA that included, inter alia, the following:

> From its earliest days, YouTube has been a site for people over 13, but with a boom in family content and the rise of shared devices, the likelihood of children watching without supervision has increased. We've been taking a hard look at areas where we can do more to address this, informed by feedback from parents, experts, and regulators, including COPPA concerns raised by the U.S. Federal Trade Commission and the New York Attorney General that we are addressing with a settlement announced today. [18]

109.    But the facts establish that Google has always targeted children as a core audience on

---

[18] *An update on kits and data protection on YouTube*, YouTube Official Blog, Sept. 4, 2019, https://youtube.googleblog.com/2019/09/an-update-on-kids.html (accessed Oct. 22, 2019).

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

YouTube. During the Class Period, Google solicited and encouraged the creation of content that was directly aimed at children under thirteen and made that content available on YouTube for the purpose of attracting young children to YouTube.

**A.**     **Google Lured Children to YouTube with Child-Directed Content**

110.     During the Class Period, Google engaged in a concerted effort to lure millions of minor children, including minor children under the age of thirteen, to use YouTube so that Google could collect their Personal Information, track them across the internet, and show them advertisements for profit, which they shared with YouTube channel owners to gain their participation.

111.     For example, YouTube created a rating system whereby channel owners could signal that their videos were intended for children under 13. The ratings options were Y (generally intended for ages 0-7); G (intended for any age); PG (generally intended for ages 10+); Teen (generally intended for ages 13+); MA (generally intended for ages 16+); and X (generally intended for ages 18+). At one point, YouTube also used the classification "Made for Kids" for certain videos shown on YouTube.

112.     Google not only encouraged content creators to accurately categorize their content so that they could properly target child viewers with advertisements, but Google also reviewed *all* content uploaded to YouTube to provide an additional layer of analysis of the content for advertising purposes.

113.     To further promote the creation of child-directed content for YouTube, Google created the "YouTube Academy" to offer advice on creating "family-friendly" content to YouTube channel owners to enable them be more successful (*i.e.*, get more views and earn more money). As the screenshot below formally contained on YouTube's website shows (the page has now been removed from YouTube's website), the YouTube Academy provided specific guidance on creating content intended for young children on YouTube (not YouTube Kids).

114.     Google also used the creation the existence of the YouTube Kids App as guise to generate child-directed content which was then shown on YouTube. YouTube Kids' was YouTube's application "Made Just for Kids," and was "designed to be a safer and simpler place for kids to explore their interests

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

through online video."[19] Yet Google mandated that every video that was available on the YouTube Kids App was also uploaded to YouTube. Because every video on the YouTube Kids App was directed towards young children, this necessarily meant that Google was knowingly uploading content to YouTube that was designed specifically to attract child viewers and was thus "child-directed" as defined under COPPA. Despite this knowledge, Google tracked every single viewer of these child-directed videos on YouTube. And, as described herein, the viewership of YouTube – the new "Saturday Morning Cartoons" – dwarfed that of YouTube Kids.

115.   Significantly, until 2019, the YouTube Kids App was *only* available as a mobile app (meaning it was harder to access), and was *not* accessible via web browser. This meant that when a child searched (likely using Google) for her or her favorite show on a web browser, the child would be shown links to child-directed content hosted on YouTube and not the YouTube Kids App, which Google did not use to employ its tracking and behavioral advertising scheme. If the child clicked any of those links and watched those videos, they would be tracked as if they were an adult YouTube user.

116.   As the screenshot below shows (the page has now been removed from YouTube's website), Google was aware and encouraged content creators to post child-directed content on YouTube – YouTube Academy provided specific guidance on creating content intended for young children on YouTube (not YouTube Kids):

---

[19] https://www.youtube.com/intl/ALL_us/kids/safer-experience/?gclid=Cj0KCQiAjKqABhDLARIsABbJrGmo2SCCYT5X9FGB8mJtmE14Y-AE2-H1IfLOdYEFfTO513LmMMpO7rYaAmiJEALw_wcB&gclsrc=aw.ds (accessed Jan. 22, 2021.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15

16   117.   While the Channel Owner Defendants signaled what age groups their videos were

16   intended for, Google viewed and "rate[d] all videos uploaded to YouTube, as well as the channels as a

17   whole. Defendants assign[ed] each channel and video a rating . . . Defendants assign[ed] these ratings

18   through both automated and manual review." Through this process, Google acquired actual knowledge

19   of the child-directed nature of this content.

20   **B.   Google Was Aware It Was Tracking Children**

21   118.   Google knew that the unfair and unlawful tactics it employed to bait, steer, and lure

22   children to YouTube were successful in drawing millions of American children to use YouTube, and that

23   far fewer children used YouTube Kid's compared to YouTube. For example, an August 2019 study that

24   ranked 350 children's brands across 19 consumer categories ranked YouTube #1 and YouTube Kids #50.

25   Another study found that almost twice as many children used YouTube (83%) as used YouTube Kids

26   (45%).

27   119.   Additional studies confirm that Google's efforts throughout the Class Period to attract

28   young children to YouTube were successful. For example:

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

- A 2014 study by The Marketing Store and Kid Say ("2014 Global Kids Study") found that YouTube was voted as the unanimous favorite website of kids 2-12 and that 93% of tweens (children aged 8-11) used YouTube; [20]

- A 2015 study by Nielson MRI ("2015 Nielson Study") found that YouTube was the "leader in reaching children age 6-11 against top TV channels. The study found that 63% of children age 6-11 watched YouTube, tying TV channel Nickelodeon and beating the Disney Channel (57%) and Cartoon Network (49%); [21]

- A 2016 study by LMX ("2016 LMX Study") found that YouTube was "the #1 website regularly visited by kids," beating out the likes of Disney, Cartoon Network, PBS, and Amazon; [22]

- A July 2016 Google Consumer Survey ("2016 Google Consumer Survey") of 1683 parents of children ages 2-14 found that "YouTube is the #1 source where children discovery new toys + games;" [23]

- A 2017 study by Smarty Pants ("2017 Smart Pants Study") found that 96% of children ages 6-12 were aware of YouTube and that 94% either love (71%) or like (24%) YouTube. [24] The same study found that 90% of the children that know YouTube say they use it, 83% of whom use it *daily*; [25] and

---

[20] *Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief – Ex. B*, No. 19-cv-2642, ECF No. 3-1, Sept. 4, 2019 ("FTC Exhibit B").

[21] *Complaint for Permanent Injunction, Civil Penalties, and other Equitable Relief – Ex. A*, No. 19-cv-2642, ECF No. 3-1, Sept. 4, 2019 ("FTC Exhibit A").

[22] *Complaint for Permanent Injunction, Civil Penacities, and other Equitable Relief – Ex. C*, No. 19-cv-2642, ECF No. 3-1, Sept. 4, 2019 ("FTC Exhibit C").

[23] *Id.*

[24] Smarty Pants, *2017 Brand Love Study: 2017 Kid & Family Trends*, at 7 (2017), https://daks2k3a4ib2z.cloudfront.net/5435eb4d1e426bb420ac990f/5a316f4f4a2f7d000196532b_2017%20Kid%20and%20Family%20Trends%20Report%20EXCERPT.PDF (emphasis added).

[25] *Id.*

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

- A 2019 by Pew Research ("2019 Pew Study") study found that videos that "videos that were directly aimed at a young audience and *also* featured a child under the age of 13 were more popular than any other type of content identified in [the] analysis as measured by view counts."[26]

120.    As one of the world's most sophisticated advertising and data companies, Google did not need these studies to know that it was successfully attracting millions of child viewers to YouTube. However, in case there was any doubt as to Google's awareness of YouTube's popularity among young children, evidence establishes that Google used these very studies to market YouTube to companies that make toys and others children's products, including Channel Owner Defendants Hasbro and Mattel, as a top destination for children. For example, Google gave a presentation entitled "Insight on Families Online" to Mattel and cited the 2015 Nielsen Study.[27] Mattel's YouTube presence includes several channels directed towards children, including: Barbie, Monster High, and Thomas & Friends.

121.    Google also included a section called "Stat Pack: Additional insight into mobile usage among parents + children" in a presentation to the Hasbro Defendants. In the presentation, Google cited the 2014 Global Kids Study. In a second presentation to the Hasbro Defendants, Google included a section entitled "2016 Kids + Family Digital Trends" and cited both the 2016 LMX Study and Google's own 2016 Google Consumer Survey.[28]

122.    While Google was citing these studies privately to toy companies, it was simultaneously reiterating publicly the false contention that YouTube was not intended for children. For example, when a consumer advocacy group filed a complaint with the FTC over YouTube's data collection practices, a YouTube spokesman told the New York Times: "Because YouTube is not for children, we've invested

---

[26] Patrick Van Kessel, *A Week in the Life of Popular YouTube Channels*, PEW RESEARCH CENTER, July 25, 2019, https://www.pewinternet.org/2019/07/25/a-week-in-the-life-of-popular-youtube-channels/ (accessed Oct. 16, 2019) (emphasis in original).

[27] FTC Exhibit A.

[28] FTC Exhibit C.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

significantly in the creation of the YouTube Kids app to offer an alternative specifically designed for children." This was misleading at best because what YouTube Kids really allowed Google to do was to openly solicit the development of more child-directed content from its Channel Owner Defendant partners that could also be posted on YouTube for their mutual profit through behavioral advertising targeting young children.

123.    As a result of the above-described, Google had actual knowledge that children under thirteen were using YouTube, yet did not obtain parental consent before collecting the Personal Information of those children in violation of COPPA, the FTC Act, and the consumer protection laws of many of the states. These acts also constituted an intrusion upon the seclusion of children under thirteen watching videos on YouTube as well as a violation of their reasonable expectation of privacy.

## II.    Economic Incentives Drove the Channel Owner Defendants to Bait and Exploit Children Using Nursery Rhymes, Cartoons, and Other Child-Directed Content

124.    Each of the Channel Owner Defendants recognized the economic benefits of creating child-directed YouTube content that could be used to track Personal Information of minor children and entered into agreements with Google to monetize their YouTube channels during the Class Period. By choosing to monetize their YouTube channels and allow Google to employ the more lucrative behavioral targeted advertising, each of the Channel Owner Defendants knew (or should have known) that given the nature of the behavioral targeted advertising, Google was in fact targeting minor children, including children under the age of 13, by tracking Personal Information about those children.  As discussed above, to further their unity of purpose, Google shared 55% of the advertising revenue generated by the Channel Owner Defendants with them. All Defendants therefore acted with a common purpose and jointly economically benefited when the Channel Owner Defendants' content successfully lured children on to YouTube and Google showed these children behavioral targeted advertisements.

125.    Each of the Channel Owner Defendants accomplished this common purpose by creating content intentionally designed to attract children, including especially children under the age of thirteen, with content featuring nursery rhymes and children's songs, toys, and already-popular cartoons. Google knew this, as confirmed by the Attorney General of New York's discovery that a "well-known channel

owner . . . repeatedly informed Google and YouTube that its videos were directed to children younger than 13-years-old."[29]

126.    This exploitation and manipulation of children constitutes unfair, and unconscionable conduct, and was an egregious invasion of privacy.

**A.  Defendant ChuChuTV**

127.    Defendant ChuChuTV created the ChuChuTV Nursey Rhymes & Kids Songs YouTube channel in 2013[30] and opted to monetize the channel the Class Period. Defendant ChuChuTV is thus a "content creator[] who upload[ed] child-directed content and monetize[ed] [its] channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent" described by FTC Commissioner Rebecca Kelly Slaughter as the primary violators of COPPA on YouTube.[31]

128.    Google gave Defendant ChuChuTV the option to turn off behavioral advertising and to instead show contextual advertising to its viewers, thus giving Defendant ChuChuTV the authority to control the unfair and unlawful conduct at issue. Upon information and belief, because it would have earned less revenue, Defendant ChuChuTV agreed to allow behavioral advertising to viewers on YouTube.

---

[29] Letitia James, *Google and YouTube to Pay Record Figure For Illegally Tracking And Collecting Personal Information From Children,* New York State Office of the Attorney General, Sept. 4, 2019, https://ag.ny.gov/press-release/2019/ag-james-google-and-youtube-pay-record-figure-illegally-tracking-and-collecting (accessed Oct. 21, 2019).

[30] Alexis C. Madrigal, *Raised by* YouTube, THE ATLANTIC (Nov. 2018), http://www.theatlantic.com/magazine/archive/2018/11/raised-by-youtube/570838/ (accessed Oct. 21, 2019).

[31] *See* Rebecca Kelly Slaughter, *Dissenting Statement of Commissioner Rebecca Kelly Slaughter In the Matter of Google LLC and YouTube, LLC*, FEDERAL TRADE COMMISSION (Sept. 4, 2019), https://www.ftc.gov/system/files/documents/public_statements/1542971/slaughter_google_youtube_statement.pdf ("YouTube is likely the online service that today hosts the most violations of COPPA. Those violations are primarily committed by content creators who upload child-directed content and monetize their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent.")

129.     Defendant ChuChuTV's child-directed YouTube channels were included as part of the Google's Preferred "Parenting & Family" Lineup as of March 2018.[32] Because advertisers signing up to advertise to Google Preferred Lineups had the option to serve behavior-based targeted advertising to viewers of those channels, upon information and belief, a channel could not be part of Google's Preferred "Parenting & Family" Lineup without enabling behavioral advertising on its channel.[33]

130.     During the Class Period, ChuChuTV Nursery Rhymes & Kids Songs YouTube channel had over 27 million subscribers and 18 billion views.[34] ChuChuTV Nursery Rhymes & Kids Songs' homepage features digital animal cartoons and cartoons of children. The "About" section of ChuChuTV Nursery Rhymes & Kids Songs' YouTube channel states:

> ChuChuTV is designed to engage children through a series of upbeat nursery rhymes and educational songs with colorful animations. Our ChuChuTV characters will teach kids their favorite nursery rhymes, colors, shapes, numbers etc. and more importantly good human values which we feel is very important for the next generation champions.[35]

131.     Defendant ChuChuTV's first YouTube video featured a character named Chu Chu modeled after ChuChuTV's founder's baby daughter (whose nickname was Chu Chu) "dancing to the popular . . . Indian nursery rhyme "Chubby Cheeks ("Curly hair, very fair / Eyes are blue, lovely too / Teacher's pet, is that you?")."[36] Within a few weeks of the upload of its first video, ChuChuTV had

---

[32] *See In the Matter of Request to Investigate Google's YouTube Online Service and Advertising Practices for Violating the Children's Online Privacy Protection Act,* Center for Digital Democracy, *et al.,* p. 12.

[33] *See, e.g.* Tim Peterson, *With an eye on TV ad budgets, YouTube debuts search-based video ad targeting,* DIGIDAY (Mar. 13, 2018), https://digiday.com/future-of-tv/youtube-adds-search-based-targeting-tv-style-google-preferred-ad-program/; ("the Google-owned video service is adding the search-based targeting option to its Google Preferred ad-buying program, which packages the most popular 5 percent of YouTube channels into category-specific bundles that brands can advertise against.").

[34] ChuChu TV Nursery Rhymes & Kids Songs, *About Section,* YOUTUBE, https://www.youtube.com/user/TheChuChuTV/about (accessed Oct. 21, 2019).

[35] *Id.*

[36] *Id.*

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

amassed 300,000 views and 5,000 followers.[37] Despite the fact that ChuChuTV's video was clearly directed towards young children – whom Google claims are not allowed to and do not use YouTube – a YouTube representative contacted ChuChuTV shortly after its launch to say "[y]ou guys are doing some magic with your content."[38]

## B. The Ryan's World Defendants

132.    The Ryan's World Defendants operate the YouTube channel Ryan's World (f/k/a Ryans ToysReview), which features videos of Ryan Kaji (a minor child during the Class Period) unboxing toys and others children's products. The Ryan's World Defendants agreed to monetize the Ryan's World channel during the Class Period. The Ryan's World Defendants are thus "content creators who upload[ed] child-directed content and monetize[ed] their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent."[39]

133.    Ryan's World's first video was posted in 2015. During the Class Period, with the help of Defendant Pocketwatch, a kids-entertainment company, Ryan's World became the second most popular YouTube channel, with approximately 22.5 million subscribers and over 33 billion views.[40]

134.    Throughout the Class Period, The Ryan's World Defendants lured young children to the Ryan's World YouTube Channel by frequently posting disguised advertising directed at children under the age of five to its YouTube channel using popular children's products. These practices have been the subject of a formal complaint letter filed by Truth in Advertising, Inc. ("TINA") with the FTC and "misleadingly blurs the distinction between advertising and organize content" for Ryan's World's audience and was intended to overcome preschooler's lack of ability to identify and understand that they are being presented with marketing materials.

---

[37] *Id.*

[38] *Id.*

[39] *See* fn. 31 above.

[40] Ryan ToysReview, *About Section*, YOUTUBE, https://www.youtube.com/channel/UChGJGhZ9SOOHvBB0Y4DOO_w/about, (accessed Oct. 21, 2019).

135.    A review by TINA of videos posted to the Ryan's World YouTube channel concluded that "[t]he target audience for [Ryan's World] is preschool children, i.e., children under the age of five . . . an appraisal of every video published on [Ryan's World] between January 1 and July 31, 2019 reveals that 92 percent promote at least one product or television/YouTube program that is appropriate for – and targeted at – children under the age of five."

136.    Google gave the Ryan's World Defendants the option to turn off behavioral advertising and to instead show contextual advertising to its viewers, thus giving the Ryan's World Defendants the authority to control the unfair and unlawful conduct at issue. Upon information and belief, because they would have earned less revenue, the Ryan's World Defendants opted to allow behavioral advertising to viewers on YouTube.

137.    Ryan's World's "About" section described itself as "Ryan loves Toys. Toys Review for kids by a kid! Join Ryan to see him play with toys and review toys for kids! Ryan will also love doing fun and easy science experiments for kids!" Ryan's World generated over $11 million in revenue in 2018 and over $22 million in 2019.[41] Because Google takes 45% of all ad revenues,[42] Google earned approximately $15 million from Ryan's World alone in 2018-2019.

### C.    The Hasbro Defendants

138.    The Hasbro Defendants created the My Little Pony Official YouTube channel in 2013 and opted to monetize the channel during the Class Period. The Hasbro Defendants are thus "content creators who upload[ed] child-directed content and monetize[ed] their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent."[43]

---

[41] Amanda Perelli, *The world's top-earning YouTube star is an 8-year-old boy who made $22 million a single year reviewing toys,* BUSINESS INSIDER, https://www.businessinsider.com/8-year-old-youtube-star-ryan-toysreview-made-22-million-2019-10 (accessed Oct. 21, 2019).

[42] Eric Rosenberg, *How YouTube Ad Revenue Works*, INVESTOPEDIA (Oct. 7, 2018), https://www.investopedia.com/articles/personal-finance/032615/how-youtube-ad-revenue-works.asp. (accessed Jan. 13, 2021).

[43] *See* fn. 31 above.

139.    The Hasbro Defendants' YouTube offerings included the following channels: Play-Doh, Official Play-Doh How To Videos, Baby Alive Official, NERF Official, and TRANSFORMER OFFICIAL. According to Hasbro, the target demographic for My Little Pony is children ages 5-8. During the Class Period, My Little Pony's About section read:

> Welcome to the official home of My Little Pony & Equestrian Girls! Discover the magic of friendship with Twilight Sparkle, Rainbow Dash, Pinkie Pie, Rarity, Fluttershy, Applejack and friends. Join the #RainbowSquad and subscribe today![44]

140.    Google gave the Hasbro Defendants the option to turn off behavioral advertising and to instead show contextual advertising to its viewers, thus giving the Hasbro Defendants the authority to control the unfair and unlawful conduct at issue. Upon information and belief, because they would have earned less revenue, the Hasbro Defendants agreed to allow behavioral advertising to viewers on YouTube.

141.    The FTC's complaint against Google specifically cited the Hasbro Defendants as part of a group of YouTube channel owners that hosted child-directed content and directed Google to collect the Personal Information of viewers of Hasbro's YouTube channel to show behavioral advertising, resulting in "close to $50 million" in revenue for Google.[45]

142.    In addition to producing child-directed content that was posted on YouTube, the Hasbro Defendants were cited by the New York State Office of the Attorney General for violating COPPA by engaging in an advertising campaign that tracked child visitors to the Nerf section of Hasbro's website in order to serve Hasbro advertisements to those same users as they visited other websites at a later time (a type of online behavioral advertising prohibited by COPPA known as "remarketing") and for integrating a third-party plug-in into many of its websites that allowed users to be tracked across websites

---

[44] My Little Pony, About section, YOUTUBE, https://www.youtube.com/user/mlpequestriagirls/about (accessed Oct. 21, 2019).

[45] *See* FTC Complaint, ¶ 31 (describing the Hasbro Defendants' YouTube channel content); *see also* FTC Complaint ¶ 41 ("[Google Defendants] earned close to $50 million from behavioral advertising on these channels, which represent only a few examples of the possible universe of child-directed content on YouTube.")

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

and introduced other third parties that engaged in the type of tracking, profiling, and targeted advertising prohibited under COPPA.[46]

143.   Defendant Hasbro was required to adopt comprehensive reforms as part of a settlement with the office of the Attorney General of the State of New York, including the following:

  a.   Conducting regular electronic scans to monitor for unexpected third party tracking technologies that may appear on their children's websites.

  b.   Adopting procedures for vetting third parties before they are introduced onto their children's websites to determine whether and how the third parties collect, use, and disclose, and allow others to collect, use, and disclose, personal information from users.

  c.   Providing notice to third parties that collect, use, or disclose personal information of users with information sufficient to enable the third parties to identify the websites or sections of websites that are child directed pursuant to COPPA.

  d.   Updating website privacy policies with either (a) information sufficient to enable parents and others to identify the websites and portions of websites that are directed to children under COPPA or (b) a means of contacting the company so that parents and others may request such information.

144.   Upon information and belief, the Hasbro Defendants continued to post child-directed content to YouTube and opted to show visitors behavioral advertising after entering into its settlement agreement with the NY AG in 2016.

**D.   Defendant Mattel**

145.   Defendant Mattel operated several monetized YouTube channels during the Class Period, including Barbie, Monster High, Hot Wheels, and Thomas & Friends. Defendant Mattel is thus a

---

[46] Press Release, *A.G Schneiderman Announces Results Of "Operation Child Tracker," Ending Illegal Online Tracking Of Children At Some Of Nation's Most Popular Kids' Websites,* https://ag.ny.gov/press-release/2016/ag-schneiderman-announces-results-operation-child-tracker-ending-illegal-online (assessed Jan. 14, 2021).

1
2
3

"content creator[] who upload[ed] child-directed content and monetize[ed] [its] channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent." [47]

4
5
6
7

146.    Google gave Defendant Mattel the option to turn off behavioral advertising and to instead show contextual advertising to its viewers, thus giving Defendant Mattel the authority to control the unfair and unfair and unlawful conduct at issue. Upon information and belief, because it would have earned less revenue, Defendant Mattel agreed to allow behavioral advertising to viewers on YouTube.

8
9
10
11

147.    The FTC's complaint against Google specifically cited Defendant Mattel as part of a group of YouTube channel owners that hosted child-directed content and directed Google to collect the Personal Information of viewers of Mattel's YouTube channel to show behavioral advertising, resulting in "close to $50 million" in revenue for Google. [48]

12
13
14
15
16
17

148.    During the Class Period, Mattel's YouTube channels had tens of millions of subscribers and billions of views. Each channel showed child-directed content featuring popular children's toys belonging to Mattel's brands. For example, the Barbie YouTube channel featured animated videos of Barbie and related toys, including the "Junior Rainbow Princesses." The Barbie YouTube channel also featured episodes of "Barbie Dreamtopia," a show that, according to the FTC and New York Attorney General, Mattel described as "targeting 3-6 year olds."

18
19
20

149.    In addition to producing child-directed content that was posted on YouTube, Defendant Mattel was fined $250,000 in 2016 by the New York State Office of the Attorney General for the following:

21
22
23
24

[47] *See* fn. 31 above.

25
26
27
28

[48] *See* FTC Complaint, ¶ 29 (describing Defendant Mattel's YouTube channel content); *see also* FTC Complaint ¶ 41 ("[Google Defendants] earned close to $50 million from behavioral advertising on these channels, which represent only a few examples of the possible universe of child-directed content on YouTube.")

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

a.     Mattel deployed a tracking technology supplied by a third-party data broker across its Barbie, Hot Wheels, Fisher-Price, Monster High, Ever After High, and Thomas & Friends websites.  Mattel used the tracking technology for measuring website metrics, such as the number of visitors to each site, a practice permitted under COPPA. However, the tracking technology supplied by the data broker introduced many other third-party tracking technologies in a process known as "piggy backing." Many of these third parties engage in the type of tracking, profiling, and targeted advertising prohibited by COPPA.

b.     A tracking technology that Mattel deployed on the e-commerce portion of the American Girl website, which is not directed to children or covered by COPPA, was inadvertently introduced onto certain child-directed webpages of the American Girl website.

c.     Mattel uploaded videos to Google's YouTube.com, a video hosting platform, and then embedded some of these videos onto the child-directed portion of several Mattel websites, including the Barbie website. When the embedded videos were played by children, it enabled Google tracking technologies, which were used to serve behavioral advertisements.[49]

150.    Defendant Mattel was required to adopt comprehensive reforms as part of a settlement with the office of the Attorney General of the State of New York, including the following:

a.     Conducting regular electronic scans to monitor for unexpected third-party tracking technologies that may appear on their children's websites and provide regular reports to the office regarding the results of the scans.

b.     Adopting procedures for vetting third parties before they are introduced onto their children's websites to determine whether and how the third parties collect, use,

---

[49] See fn. 48 above.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

and disclose, and allow others to collect, use, and disclose, personal information from users.

c.    Providing notice to third parties that collect, use, or disclose personal information of users with information sufficient to enable the third parties to identify the websites or sections of websites that are child directed pursuant to COPPA.

d.    Updating website privacy policies with either (a) information sufficient to enable parents and others to identify the websites and portions of websites that are directed to children under COPPA or (b) a means of contacting the company so that parents and others may request such information.

151.    Upon information and belief, Defendant Mattel continued to post child-directed content to YouTube and opted to show visitors behavioral advertising after entering into its settlement agreement with the NY AG in 2016.

**E.    The Cartoon Network Defendants**

152.    The Cartoon Network Defendants operated several monetized YouTube channels directed towards children during the Class Period, including Steven Universe, the Powerpuff Girls, and Teen Titans Go. The Cartoon Network Defendants are thus "content creators who upload[ed] child-directed content and monetize[ed] their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent."[50]

153.    Google gave the Cartoon Network Defendants the option to turn off behavioral advertising and to instead show contextual advertising to their viewers, thus giving the Cartoon Network Defendants the authority to control the unfair and unlawful conduct at issue. Upon information and belief, because they would have earned less revenue, the Cartoon Network Defendants agreed to allow behavioral advertising to viewers on YouTube.

154.    The FTC's complaint against Google specifically cited the Cartoon Network Defendants as part of a group of YouTube channel owners that hosted child-directed content and directed Google to

---

[50]  *See* fn. 31 above.

collect the Personal Information of viewers of the Cartoon Network's YouTube channel to show behavioral advertising, resulting in "close to $50 million" in revenue for Google.[51]

155.   During the Class Period, The Cartoon Network Defendants' YouTube channel had over 6 million subscribers and its content had been viewed over 5.3 billion times. According to the FTC and New York Attorney General, Google selected a clip from the Cartoon Network YouTube channel in a "Creating for Kids Playbook," as an example of family-friendly content and also marketed the Cartoon Network YouTube channel as a "popular YouTube Channel[] kids are watching."

### G.   The DreamWorks Defendants

156.   The DreamWorks Defendants operated the child-directed monetized DreamWorksTV YouTube channel during the Class Period. The DreamWorks TV YouTube channel's content included several popular children's shows, including Race to the Edge, Trollhunters, and Shrek. The DreamWorks Defendants are thus "content creators who upload[ed] child-directed content and monetize[ed] their channels with behavioral advertising that uses persistent identifiers to track children without verifiable parental consent."[52]

157.   The "About" section of the DreamWorks TV YouTube channel described the channel as "made just for kids!" throughout the Class Period. The DreamWorksTV YouTube channel had 6.3 million subscribers and its content had been viewed over 4.7 billion times during the Class Period.

158.   Google gave the DreamWorks Defendants the option to turn off behavioral advertising and to instead show contextual advertising to their viewers, thus giving the DreamWorks Defendants the authority to control the unfair and unlawful conduct at issue. Upon information and belief, because they would have earned less revenue, the DreamWorks agreed to allow behavioral advertising to viewers on YouTube.

---

[51] *See* FTC Complaint, ¶ 30 (describing the Cartoon Network Defendants' YouTube channel content); *see also* FTC Complaint ¶ 41 ("[Google Defendants] earned close to $50 million from behavioral advertising on these channels, which represent only a few examples of the possible universe of child-directed content on YouTube.")

[52] *See* fn. 31 above.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

159.    The FTC's complaint against Google specifically cited the DreamWorks Defendants as part of a group of YouTube channel owners that hosted child-directed content and directed Google to collect the Personal Information of viewers of DreamWorks' YouTube channel to show behavioral advertising, resulting in "close to $50 million" in revenue for Google. [53]

## III.    Economic Incentives Drove Google to Unlawfully Track, Profile, and Target Children with Behavioral Targeting

160.    The design and marketing of channels such as ChuChuTV Nursery Rhymes & Kids Songs, Ryan ToysReview, My Little Pony Official, Barbie, and Monster High, among others, as well as each of the Channel Owner Defendants' own categorization of their videos, clearly provided notice to Google that children, including children under the age of thirteen, were viewing these channels.

161.    As described below, Plaintiffs watched many of the Channel Owner Defendants' YouTube channels during the Class Period, and were therefore subjected to Google's behavioral targeting, which included collection of their Personal Information. Google used behavioral targeting to show minor children advertisements that were uniquely tailored to them for Google and the Channel Owner Defendants' financial gain.

162.    Targeting advertisements to children adds more value than targeting to adults because children are generally unable to distinguish between content and advertisements. This is especially true in the digital realm, where children are less likely to identify and counteract the persuasive intent of advertising. This results in children, especially those under the age of eight, accepting advertising information in commercials "uncritically . . . [and as] truthful, accurate, and unbiased." [54]

---

[53] *See* FTC Complaint, ¶ 32 (describing the DreamWorks Defendants' YouTube channel content); *see also* FTC Complaint ¶ 41 ("[Google Defendants] earned close to $50 million from behavioral advertising on these channels, which represent only a few examples of the possible universe of child-directed content on YouTube.")

[54] Report of the APA Task Force on Advertising and Children (American Psychological Association, Feb. 20, 2004), at pp.7-8, available at https://www.apa.org/pi/families/resources/advertising-children.pdf (accessed September 21, 2023).

163.     Despite their knowing collection of Personal Information about minor children, including children under the age of thirteen, Google and each of the Channel Owner Defendants knowingly disregarded their obligation to comply with federal and state laws designed to protect children's privacy by claiming no children watched videos on YouTube. Google did so because it knew it could not both abide by federal and state law *and* offer highly profitable behavioral targeting of children.

164.     As the Attorney General of New York put it, Google knew that stopping the illegal tracking, profiling, and targeting practices would result in a substantial loss of revenue:

> Google and YouTube knowingly and illegally monitored, tracked, and served targeted ads to young children just to keep advertising dollars rolling in . . . These companies put children at risk and abused their power, which is why we are imposing major reforms to their practices and making them pay one of the largest settlements for a privacy matter in U.S. history. [55]

165.     Faced with a choice between complying with federal and state privacy laws and their advertising revenue, Google and each of the Channel Owner Defendants chose the money. During the Class Period, Google and the Channel Owner Defendants collectively realized hundreds of millions of dollars, if not more, as a result of their common purpose and joint actions.

166.     The harmful intrusions of personal privacy of the Minor Plaintiffs, and all similarly-situated children they seek to represent, resulting from Defendants' actions cannot be overstated. During the Class Period, Google collected the Personal Information of millions of children, including but not limited to children under the age of thirteen, who viewed monetized YouTube channels, including the each of the Channel Owner Defendants' channels. This included the collection of persistent identifiers, which Google used to track minor children across the internet, internally develop a profile of the inferred preferences and interests of those children, and target those children with advertisements designed to influence their behavior.

---

[55] *Google and YouTube to Pay Record Figure For Illegally Tracking And Collecting Personal Information From Children,* NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL, Sept. 4, 2019, https://ag.ny.gov/press-release/2019/ag-james-google-and-youtube-pay-record-figure-illegally-tracking-and-collecting (accessed Oct. 21, 2019).

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

167.    Persistent identifiers have been included in the definition of "Personal Information" subject to COPPA since 2013. Defendants' collection of the persistent identifiers of children, including children under thirteen, allowed them to develop detailed profiles of children. As discussed above, Google's vast reach across the internet means that nearly all of a child's online activity was subject to being tracked by Google.

168.    And even though Google purported to give individuals control over their data during the Class Period, it "does not disclose the full extent of the information it collects . . . nor the valuable inferences it draws from this data."[56] While Google claims to enable users to control their data, Google "*omits* much of the data the company collects, which is often far more invasive and revealing."[57]

169.    Moreover, children themselves cannot properly consent to this profiling, and Google and each of the Channel Owner Defendants did not obtain parental consent to perform this profiling. Nonetheless, Google developed and used these profiles to manipulate and exploit children. Google makes more money through YouTube by capturing more of an individual's time. Google thus manipulated children using their Personal Information into extending their time on YouTube, which in turn increased the number of targeted advertisements shown to them, and increased the revenue earned by Google and each of the Channel Owner Defendants.

170.    Google manipulated minor children, including children under the age of thirteen, into extending the time they used YouTube by tracking them across the internet, collecting their Personal Information, plugging the Personal Information gathered into sophisticated algorithms, and then showing children videos on YouTube, which Google's algorithms calculated would keep them watching based on those children's behavior.

171.    Google's algorithms allow it to "make recommendations from a very large corpus

---

[56] Oracle, *Google's Shadow Profile: A Dossier of Consumers Online and Real World Life* (Feb. 2019), https://assets.publishing.service.gov.uk/media/5e1c4985e5274a06b7450a13/Oracle_-Response_to_SoS_-_Appendix_4_-_Google_Shadow_Profiles.pdf (accessed Mar. 12, 2020).

[57] *Id.*

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

(millions) of videos while still being certain that the small number of videos appearing on the device are personalized and engaging for the user."[58]

172.    YouTube's recommendation feature can extend what was intended to be a single video view into a marathon viewing session whereby YouTube provides video after video for viewer consumption. This "rabbit hole" effect has been well documented. For example, a New York Times report found that YouTube's "recommendation feature boosts fringe videos to the mainstream and can unwittingly help spread conspiracies and misinformation about dangerous diseases, jeopardizing public health."[59]

173.    Google's use of algorithms to capture more of a children's time allowed Google to show those children more behavior-based advertising.

174.    This exploitation and manipulation of children constitutes unfair, unlawful, and unconscionable conduct, and was an egregious invasion of privacy.

**IV.    The Value of the Personal Information of Children Under Thirteen**

175.    Plaintiffs and the Classes have been deprived of, and thereby lost, the economic value of their Personal Information. As Google's advertising revenue (of $116 billion in 2018) tellingly demonstrates, this information has tremendous value to Google, the Channel Owner Defendants, and advertisers.

176.    On the open market, Personal Information is often mined, compiled, and resold by data brokers.  Further, there is a market for consumers to monetize Personal Information and the behavioral preferences that Defendants have usurped. Multiple published analyses and studies have placed a value in excess of $200 on an individual's Personal Information.

---

[58] Paul Covington, Jay Adams & Emre Sargin, *Deep Neural Networks for YouTube Recommendations*, GOOGLE AI (2016), https://storage.googleapis.com/pub-tools-public-publication-data/pdf/45530.pdf. (accessed Oct. 19, 2019).

[59] Max Fisher & Amanda Taub, *What is YouTube Pushing You to Watch Next?*, N.Y. TIMES (Aug. 9, 2019), https://www.nytimes.com/2019/08/09/the-weekly/youtube-brazil-far-right.html (accessed Oct. 22, 2019).

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

177.    A child's Personal Information has equivalent (or potentially greater) value than that of an adult to companies like Defendants. Children are more susceptible to being influenced by advertisements as they often cannot tell the difference between content and advertisements. And Defendants may be able to utilize children's Personal Information to show them behavior-targeted advertising for the duration of their lives. Plaintiffs and the Classes can no longer realize the full economic value of their Personal Information because their Personal Information has already been collected, analyzed, acted upon, and monetized by Defendants.

178.    Defendants' illegal and improper collection of children's Personal Information also has given them a significant "first mover" advantage that cannot be undone. Google operates the first and second-most visited websites in the world, and as a result of its unlawful conduct, Google's algorithms now incorporate ill-gotten data from billions of children's YouTube video views. The deep insights gleaned from these viewing sessions will enable Google to keep children viewing YouTube, to use the Personal Information of children for potentially the duration of their lives,[60] and will solidify Google's dominance in the market for child-related content.

## V.    Google and the Channel Owner Defendants' Tracking, Profiling, Targeting and Exploitation of Children Without Parental Consent Constitutes Unfair and Unlawful Conduct

179.    State legislatures across the country have enacted consumer protection statutes proscribing the same unfair and unlawful business conduct proscribed by the FTC Act and rules promulgated thereunder. These "Little FTC Acts" were often enacted for the specific purpose of supplementing the FTC's mission of protecting consumers from unfair and/or unlawful acts or practices by providing state citizens with a private right of action to seek redress for harm arising out of acts those acts which are also prohibited by the FTC Act, which lacks a private right of action.

---

[60] Aza Raskin, an inventor and former employee of Firefox & Mozilla Labs, described the dangers of the personal intrusions occasioned by behavioral advertising in the 2020 Netflix documentary, *The Social Dilemma*, thusly: "It's a little even trite to say now but because we don't pay for the products that we use, advertisers pay for the products that we use, advertisers are the customers... we're the thing being sold."

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

180.    Thus, the conduct which the FTC determined violated COPPA jointly carried out by Google and each of the Channel Owner Defendants as described above, not only constitute "unfair" and therefore unlawful acts that violate COPPA and the FTC Act, but also constitute "unfair" and therefore unlawful acts pursuant to the Little FTC Acts enacted by many American states.

181.    Specifically, the acts carried out by Google and each of the Channel Owner Defendants described above constitute "unfair" acts under the Little FTC Acts pursuant to which Plaintiffs bring claims because they: (1) caused substantial injury to Plaintiffs and those similarly situated by intrusively and invasively collecting their Personal Information without parental consent in violation of COPPA, the FTC Act, and societal norms; and (2) attempted to (and often did) manipulate the behavior of Plaintiffs and the millions of similarly situated American children using the Personal Information illegally collected from them without parental consent. These injuries were not reasonably avoided by the vulnerable children under thirteen years of age that Google and each of the Channal Owner Defendants—sophisticated corporations—targeted. Nor were the injuries to Plaintiffs and similarly situated American children caused by Google and each of the Channel Owner Defendants outweighed by countervailing benefits to consumers.

**VI.    Google and the Channel Owner Defendants' Tracking, Profiling, Targeting and Exploitation of Children Without Parental Consent Violated Plaintiffs' and Class Members' Reasonable Expectations of Privacy and is Highly Offensive**

182.    Google and each of the Channel Owner Defendants' joint conduct in violating privacy rights and reasonable expectations of privacy of Plaintiffs and Class members is particularly egregious because Google (by collecting the information) and each of the Channel Owner Defendants (by ordering Google to collect the information) violated societal norms and laws designed to protect a group – children – that society has long recognized as vulnerable to exploitation and manipulation.

183.    Parents' interest in the care, custody, and control of their children is one of the most fundamental liberty interests recognized by society. It has long been recognized that parents should maintain control over who interacts with their children and how.

184.    Because children are more susceptible to exploitation than adults, society has recognized the importance of providing added legal protections for children, often in the form of parental consent requirements.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

185.   In fact, as discussed above, the FTC's enhancements of COPPA in 2013 reflect the specific concern with mobile app tracking and tracking internet users via persistent identifiers, and reflect the offensiveness with which society regards this behavior.

186.   Children develop the ability to use smartphones and tablets by the age of two.[61] Almost every family with a child younger than eight in America has a smartphone (95%) and/or tablet (78%) in the household.[62]

187.   Often, children are given their own devices, with one 2015 study finding that by age four, 75% of children had their own tablet, smartphone, or iPod.[63]

188.   Nearly all parents in the United States (94%) say their children under 13 use online apps, with top apps used being video streaming (64%), video gaming (58%) and show/movie streaming (58%).[64]

189.   Four in five parents (80%) whose children under 13 use online apps say they worry about their children's privacy when using those apps,[65] with the top concern (69%) being data tracking.[66]

190.   Nearly 3 in 4 parents whose children under 13 use online apps (73%) say they are concerned about their children's location being tracked by those apps; those residing in urban or rural

---

[61] Elyse Wanshel, *10 Reason Why You Shouldn't Give a Child a Smartphone or Tablet*, LITTLE THINGS, https://www.littlethings.com/reasons-not-to-give-children-technology (accessed Oct. 21, 2019).

[62] Victoria Rideout, *The Common Sense Census: Media Use By Kids Age Zero To Eight*, COMMON SENSE MEDIA (2017) at 3, https://www.commonsensemedia.org/research/the-common-sense-census-media-use-by-kids-agezero-to-eight-2017 (accessed Oct. 21, 2019).

[63] *The Dangers of YouTube for Kids*, THE ATLANTIC (Nov. 2018), https://www.theatlantic.com/magazine/archive/2018/11/raised-by-youtube/570838/ (accessed Oct. 22, 2019) ("[A] team of pediatricians at Einstein Medical Center, in Philadelphia, found that YouTube was popular among device-using children under the age of 2. Oh, and 97 percent of the kids in the study had used a mobile device. By age 4, 75 percent of the children in the study had their own tablet, smartphone, or iPod. And that was in 2015.).

[64] https://www.pixalate.com/blog/childrens-online-privacy-harris-poll-recap.

[65] *Id.*

[66] https://www.cdpinstitute.org/news/childrens-privacy-data-tracking-is-a-big-concern-for-parents-and-trust-levels-in-companies-are-low/.

44

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

areas are more likely than those residing in suburban areas to share this sentiment (88% and 87% vs. 73%).[67]

191.    More than three-quarters (77%) of parents are concerned about protecting their family's digital privacy.[68]

192.    73% of parents are concerned about personal data being collected by third parties, without their consent.[69]

193.    And parents also recognize the importance of protecting their children's identity (90%), location (88%), health data (87%), age (85%), school records (85%), and browsing history (84%).[70]

194.    Additionally, a survey conducted by the Center for Digital Democracy ("CDD") and Common Sense Media of more than 2,000 adults found overwhelming support for the basic principles of privacy embedded in the California Constitution, state common law, as well as federal law.[71] The parents who were polled responded as follows when asked whether they agreed or disagreed with the following statements:

a.    "It is okay for advertisers to track and keep a record of a child's behavior online if they give the child free content."

- 5 percent strongly agree
- 3 percent somewhat agree
- 15 percent somewhat disagree
- **75 percent strongly disagree**
- 3 percent do not know or refused to answer

---

[67] https://www.pixalate.com/blog/childrens-online-privacy-harris-poll-recap.

[68] https://trustedfuture.org/childrens-digital-privacy-and-safety.

[69] *Id*.

[70] *Id.*

[71] Center for Digital Democracy, *Survey on Children and Online Privacy, Summary of Methods and Findings*, https://www.democraticmedia.org/sites/default/files/COPPA%20Executive%20Summary%20and%20Findings.pdf (accessed Oct. 21, 2019).

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

b.    "As long as advertisers don't know a child's name and address, it is okay for them to collect and use information about the child's activity online."

- 3 percent strongly agree
- 17 percent somewhat agree
- 10 percent somewhat disagree
- **69 percent strongly disagree**
- 1 percent do not know or refused to answer

c.     "It is okay for advertisers to collect information about a child's location from that child's mobile phone."

- 6 percent strongly agree
- 3 percent somewhat agree
- 7 percent somewhat disagree
- **84 percent strongly disagree**
- less than 1 percent do not know or refused to answer

d.    "Before advertisers put tracking software on a child's computer, advertisers should receive the parent's permission."

- **89 percent strongly agree**
- 5 percent somewhat agree
- 2 percent somewhat disagree
- 4 percent strongly disagree
- less than 1 percent do not know or refused to answer

e.     "There is a federal law that says that online sites and companies need to ask parents' permission before they collect Personal Information from children under age 13. Do you think the law is a good idea or a bad idea?"

- **93 percent said it was a good idea**
- 6 percent said it was a bad idea
- 1 percent did not know or refused to answer.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

195.     The proliferation of internet-connected device usage by children under thirteen, coupled with the concerns express by parents, renders Google and the Channel Owner Defendants' conduct highly offensive and an egregious breach of social norms.

196.     Defendants' concert of action, unity of purpose or design, and acts in furtherance of a common purpose with the knowledge and consent of the others, as alleged herein, exploited children under thirteen for financial gain by luring them with child-directed content and manipulating them into remaining engaged with YouTube to the detriment of their mental health, so that they could earn advertising revenue.

197.     Defendants benefit from increased YouTube usage. The longer and more often a child views videos on YouTube, the more data Google and the Channel Owner Defendants can exfiltrate and the more advertisements they can show the child.

198.     Defendants have thus also been incentivized to develop ways to addict children to websites, apps, and online services such as YouTube, which operators of these services refer to as "retention."

199.     Google's unfair and unlawful collection of Personal Information – enabled by and with the knowledge of each of the Channel Owner Defendants – and manipulative YouTube recommendation feature substantially affects the amount of time minor children, including children under the age of thirteen, spend on YouTube.

200.     Google and each of the Channel Owner Defendants' unfair and unlawful tracking, profiling, and targeting of children is all the more troubling in light of Google's inability to prevent obscene content from being uploaded on YouTube. For example, one report found that "hundreds of . . . videos of children's cartoon characters with inappropriate themes" such as graphic violence on YouTube.[72] The effect of this content – which Defendants cannot apparently prevent from being uploaded to YouTube – on children is profound. One child psychotherapist has stated that "over time

---

[72] Anisa Subedar & Will Yates, *The disturbing YouTube videos that are tricking children*, BBC TRENDING (Mar. 27, 2017), https://www.bbc.com/news/blogs-trending-39381889 (accessed Oct. 22, 2019).

the she has seen a rise in cases of children suffering from anxiety triggered by videos they have watched on YouTube" and that the children "exhibit loss of appetite, sleeplessness, crying fits and fear."[73]

201.    By failing to (i) obtain parental consent, (ii) disclose to parents the nature and purpose of their data collection practices (and use of that data), and (iii) take other steps to preclude the capture of children's Personal Information, and by manipulating and exploiting the habits of minors for their economic gain, Defendants have breached the privacy rights and reasonable expectations of privacy of Plaintiffs' minor children and the millions of minors in the Classes who have viewed YouTube's monetized channels, in contravention of privacy norms that are reflected in consumer surveys, centuries of common law, state and federal statutes, legislative commentaries, industry standards and guidelines, and scholarly literature.

## VII.    Evidence Suggests Google Is Continuing to Cause and/or Facilitate COPPA Violations by Continuing to Collect the Personal Information of Children Under Thirteen Without Consent

202.    Google's settlement with the FTC "prohibits Google and YouTube from violating the COPPA Rule, and requires them to provide notice about their data collection practices and obtain verifiable parental consent before collecting personal information from children."

203.    Contemporaneously with Google's settlement with the FTC, YouTube's CEO published a statement saying that going forward, YouTube: "will treat data from anyone watching children's content on YouTube as coming from a child, regardless of the age of the user" and "will limit data collection and use on videos made for kids only to what is needed to support the operation of the service [and] will also stop serving personalized ads on this content entirely."

204.    But recent research reports cast doubt as to whether Google has been complying with the terms of the FTC settlement and Google's own statements made in the aftermath of the settlement's announcement. Specifically, advertising research and consumer groups have asserted that Google, via its

---

[73] Josephine Bila, *YouTube's dark side could be affecting your child's mental health,* CNBC (Feb. 13, 2018),    https://www.cnbc.com/2018/02/13/youtube-is-causing-stress-and-sexualization-in-young-children.html (accessed Oct. 23, 2019).

artificial intelligence-based ad-targeting system "Performance Max," is engaging in COPPA violative behavior, resulting in the continued collection of children's Personal Information.

205.  On August 17, 2023, advertising research firm Adalytics released a report entitled *Are YouTube Advertisers Inadvertently Harvesting Data From Millions of Children?,* which made a number of observations regarding advertising on YouTube as of July 2023. The report observed that YouTube:

a.  Sets long-lasting cookies specifically for the purposes of ad targeting and tracking on the browsers of consumers watching YouTube videos that are clearly labeled as "for kids";

b.  Serves behaviorally and demographically targeted ads on YouTube videos that are clearly labeled as "for kids." In some (adult) brands' personalized ad campaigns, the top YouTube channels by clicks or clickthrough rate are popular "made for kids" YouTube channels such as "ChuChu TV Nursery Rhymes & Kids Songs", "CoComelon Nursery Rhymes & Kids Songs", or "Kids Diana Show." The viewers of "made for kids" YouTube videos appear to be clicking on ads, and brands' websites – such as Michigan State Police, Disney, BMW, Hyundai, and Verizon – are harvesting and sharing meta-data on those viewers with dozens of data brokers upon click through. This raises the possibility that brands have "data poisoned" their first party datasets with data derived from thousands of viewers of "made for kids" videos. Dozens of major ad tech and data broker companies are receiving data from viewers of "made for kids" YouTube videos who clicked on an ad – these include several companies who paid penalties for COPPA related enforcements, such as Amazon, Facebook, Microsoft, and OpenX. Foreign-owned companies such as TikTok are also receiving meta-data from viewers of "made for kids" content from advertisers' websites.

c.  Does not provide certain technical indicators to programmatic advertisers that the content is targeted towards kids;

d.  Sets and share a unique ad tracking ID every time a viewer on a "for kids" channel clicks on a YouTube ad on the YouTube iPhone mobile app. Specifically, the

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

YouTube iPhone iOS app creates unique click IDs called "wbraid", which get shared with the advertiser's website even if the click comes from the viewer of a "made for kids" video on YouTube; although Google alleges this "wbraid" is compliant with Apple's App Tracking Transparency (ATT) framework, the "wbraid" ID was observed as being harvested by third party data brokers such as TikTok, Facebook, Trade Desk, and Microsoft, which could theoretically use it to perform record linkage or data matching. The YouTube iOS app does not appear to ask for parental consent before injecting the "wbraid" ID on a user's device pursuant to an ad click on a "made for kids" video.

e.   Opens the advertiser's website in a special in-app "webview" browser when a viewer clicks on an ad adjacent to a "for kids" video on the iPhone YouTube ap, where Google Defendants then both set various ad targeting and tracker IDs on the viewer's iPhone, and the YouTube app allows other data brokers and ad personalization vendors to gather and share unique identifiers on the viewer.

206.   Several, if not all, of these behaviors are directly violative of COPPA and Google's settlement with the FTC. Further, because COPPA violations give rise to strict liability, channel owners and advertisers who are collecting this information are also liable for violations of COPPA and any consistent state laws.

207.   After Google denied the reports' findings, a coalition of organizations including Fairplay and the Center for Digital Democracy wrote to FTC Chair Lina M. Khan, FTC Commissioner Alvaro Bedoya, and FTC Commissioner Rebecca Kelly Slaughter requesting an investigation into the above-described practices.

208.   In light of Google's denials, Adalytics released a supplemental report on August 23, 2023, documenting evidence of behaviorally targeted, "personalized" ads on "made for kids" YouTube channels, and documenting the results of four ad campaigns where the ad buyer selected several behavior traits or audience characteristics (i.e. elected to run behavioral advertising).

209.   The ad campaigns detailed in the August 23, 2023 Adalytics supplemental report provide additional evidence that Google may be violating the terms of its settlement with the FTC and acting in

direct contravention of Google's statements following the FTC settlement that Google is not running personalized, behavioral advertising on "made for kids" YouTube channels.

<u>**ALLEGATIONS RELATING TO PLAINTIFFS**</u>

**A.     Plaintiff C.H.**

210.    During the Class Period, Plaintiff C.H. watched videos and advertisements on YouTube.

211.    C.H. viewed child-directed content on multiple monetized YouTube channels, including:

       a.    **ChuChuTV-owned Channels:** ChuChu Nursery Rhymes & Kids Songs;

       b.    **Hasbro-owned Channels:** Hasbro: My Little Pony;

       c.    **Remka-owned Channels:** Ryan's World: Ryan Toys Review

212.    Google, ChuChuTV, Hasbro, and Remka each and together collected and enabled collection of C.H.'s Personal Information for the purposes of tracking, profiling, and targeting C.H. with advertisements as C.H. watched Defendant ChuChuTV's, Hasbro's, and Remka's child-directed content on their YouTube channels.

213.    Neither Google, ChuChuTV, Hasbro, or Remka obtained verifiable parental consent prior to the collection of C.H.'s Personal Information.

214.    Neither Plaintiff C.H. nor their parent and guardian Nichole Hubbard could have reasonably discovered this conduct earlier through investigation. Plaintiff C.H. is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Nichole Hubbard about their tracking, profiling, and targeting of her child.

215.    The tracking, profiling, and targeting of C.H. without parental consent by Google, ChuChuTV, Hasbro, and Remka is highly offensive and constitutes an invasion of C.H.'s privacy..

**B.     Plaintiffs E.J., N.J., A.J, and L.J.**

216.    During the Class Period, Plaintiffs E.J., N.J., A.J., and L.J. watched videos and advertisements on YouTube.

217.    E.J., N.J., A.J., and L.J. viewed child directed content on multiple monetized YouTube channels, including:

       a.    **Hasbro-owned Channels:** Hasbro and Hasbro: My Little Pony;

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

     b.  **ChuChu TV-owned Channels**: ChuChu Nursery Rhymes & Kids Songs, ChuChu TV Surprise Egg Toys, and ChuChu TV Funzone;

     c.  **Dreamworks-owned Channels:** Dreamworks TV World;

     d.  **Remka-owned Channels:** Ryan's Toy Review;

218.    Google, ChuChu TV, Hasbro, Dreamworks, and Remka each and together collected and enabled collection of E.J.'s, N.J.'s, A.J.'s, and L.J.'s Personal Information for the purposes of tracking, profiling, and targeting E.J., N.J., A.J., and L.J. with advertisements as they watched Defendant ChuChu TV's, Hasbro's, Dreamworks, and Remka's child directed content on their YouTube channels.

219.    Neither Google, ChuChu TV, Hasbro, Dreamworks, nor Remka obtained verifiable parental consent prior to the collection of E.J., N.J., A.J., and L.J.'s Personal Information.

220.    Neither Plaintiffs E.J., N.J., A.J., and L.J. nor their parent and guardian Cara Jones could have reasonably discovered this conduct earlier through investigation. Plaintiffs E.J., N.J., A.J., and L.J. are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Cara Jones about their tracking, profiling, and targeting of her children.

221.    The tracking, profiling, and targeting of E.J., N.J., A.J., and L.J. without parental consent by Google, ChuChu TV, Hasbro, Dreamworks, and Remka is highly offensive and constitutes an invasion of E.J.'s, N.J.'s, A.J.'s, and L.J.'s privacy.

**C.    Plaintiffs J.A.E. and J.R.E.**

222.    During the Class Period, Plaintiffs J.A.E. and J.R.E. watched videos and advertisements on YouTube.

223.    J.A.E. and J.R.E. viewed child-directed content on multiple monetized YouTube channels, including:

     a.  **Mattel-owned Channels:** Thomas & Friends;

     b.  **Cartoon Network-owned Channels:** Cartoon Network, The Amazing World of Gumball, and Boomerang Official;

     c.  **Remka-owned Channels:** Ryan's Toy Review

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

224.    Google, Mattel, Cartoon Network, and Remka each and together collected and enabled collection of J.A.E.'s and J.R.E.'s Personal Information for the purposes of tracking, profiling, and targeting J.A.E. and J.R.E. with advertisements as they watched Defendant Mattel's, Cartoon Network's, and Remka's child-directed content on their YouTube channels.

225.    Neither Google, Mattel, Cartoon Network, nor Remka obtained verifiable parental consent prior to the collection of J.A.E.'s and J.R.E.'s Personal Information.

226.    Neither Plaintiffs J.A.E. and J.R.E. nor their parent and guardian Justin Efros could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Justin Efros about their tracking, profiling, and targeting of his children.

227.    The tracking, profiling, and targeting of J.A.E. and J.R.E. without parental consent by Google, Mattel, Cartoon Network, and Remka is highly offensive and constitutes an invasion of J.A.E.'s and J.R.E.'s privacy.

**D.    Plaintiff M.W.**

228.    During the Class Period, Plaintiff M.W. watched videos and advertisements on YouTube.

229.    M.W. viewed child-directed content on multiple monetized YouTube channels, including:

   a.   **Mattel-owed Channels:** Barbie, and Polly Pocket;

   b.   **Cartoon Network-owned Channels:** Amazing World of Gumball;

   c.   **Hasbro-owned Channels:** Transformers, Play Doh, Baby Alive, and My Little Pony;

   d.   **Remka-owned Channels**: Ryan's Toy Reviews;

230.    Google, Mattel, Cartoon Network, Hasbro, and Remka collected and enabled collection of M.W.'s Personal Information for the purposes of tracking, profiling, and targeting M.W. with advertisements as M.W. watched Mattel's, Cartoon Network's, Hasbro's, and Remka's child-directed content on their YouTube channels.

231.    Neither Google, Mattel, Cartoon Network, Hasbro, or Remka obtained verifiable parental consent prior to the collection of M.W.'s Personal Information.

232.     Neither Plaintiff M.W. nor their parent and guardian Renee Gilmore could have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Renee Gilmore about their tracking, profiling, and targeting of her child.

233.     The tracking, profiling, and targeting of M.W without parental consent by Google, Mattel, Cartoon Network, Hasbro, and Remka is highly offensive and constitutes an invasion of M.W's privacy.

**E.     Plaintiff A.G.**

234.     During the Class Period, Plaintiff A.G. watched videos and advertisements on YouTube.

235.     A.G. viewed child-directed content on multiple monetized YouTube channels, including:

   a.   **Mattel-owned Channels:** American Girl Wellwisher;

   b.   **Cartoon Network-owned Channels:** DC Super Hero Girls;

   c.   **Remka-owned Channels:** Ryan's Toy Reviews

236.     Google, Mattel, Cartoon Network, and Remka collected and enabled collection of A.G.'s Personal Information for the purposes of tracking, profiling, and targeting A.G. with advertisements as A.G. watched Defendant Mattel's, Cartoon Network's, Chad Alan's, and Remka's child-directed content on their YouTube channels.

237.     Neither Google, Mattel, Cartoon Network, or Remka obtained verifiable parental consent prior to the collection of A.G.'s Personal Information.

238.     Neither Plaintiff A.G. nor their parent and guardian Jay Goodwin could have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Jay Goodwin about their tracking, profiling, and targeting of his child.

239.     The tracking, profiling, and targeting of A.G. without parental consent by Google, Mattel, Cartoon Network, and Remka is highly offensive and constitutes an invasion of A.G.'s privacy.

**F.     Plaintiff C.D.**

240.     During the Class Period, Plaintiff C.D. watched videos and advertisements on YouTube.

241.    C.D. viewed child-directed content on multiple monetized YouTube channels, including those owned by Cartoon Network.

242.    Google and the Cartoon Network each and together collected and enabled collection of C.D.'s Personal Information for the purposes of tracking, profiling, and targeting C.D. with advertisements as C.D. watched Defendant Cartoon Network's child-directed content on their YouTube channels.

243.    Neither Google nor the Cartoon Network obtained verifiable parental consent prior to the collection of C.D.'s Personal Information.

244.    Neither Plaintiff C.D. nor their parent and guardian Bobbi Dishman could have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Bobbi Dishman about their tracking, profiling, and targeting of her child.

245.    The tracking, profiling, and targeting of C.D. without parental consent by Google and the Cartoon Network is highly offensive and constitutes an invasion of C.D.'s privacy

**G.  Plaintiffs D.T. and D.T.**

246.    During the Class Period, Plaintiffs D.T. and D.T. watched videos and advertisements on YouTube.

247.    D.T. and D.T. viewed child-directed content on multiple monetized YouTube channels, including:

a.  **Mattel-owned Channels:** Mattel, Hot Wheels, Fisher-Price, Thomas & Friends, American Girl, and Mattel Action;

b.  **Hasbro-owned Channels:** Hasbro, Transformers Official, Nerf Official, Play Doh, Official Play Doh, Baby Alive, and My Little Pony;

c.  **Cartoon Network-owned Channels:** Cartoon Network, Adventure Time, The Amazing World of Gumball, Ben 10, DC Super Hero, Power Players, Powerpuff, Steven Universe, and Boomerang Official;

d. **Dreamworks-owned Channels:** Dreamworks;

248.    Google, Mattel, Hasbro, Cartoon Network, and Dreamworks collected and enabled collection of D.T.'s and D.T. 's Personal Information for the purposes of tracking, profiling, and targeting D.T. and D.T. with advertisements as D.T. and D.T. watched Mattel's, Hasbro's, Cartoon Network's, and Dreamworks' child-directed content on their YouTube channels .

249.    Neither Google, Mattel, Hasbro, Cartoon Network, nor Dreamworks obtained verifiable parental consent prior to the collection of D.T.'s and D.T.'s Personal Information.

250.    Neither Plaintiffs D.T. and D.T. nor their parent and guardian Amanda Seeley could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Amanda Seeley about their tracking, profiling, and targeting of her children.

251.    The tracking, profiling, and targeting of D.T. and D.T. without parental consent by Google, Mattel, Hasbro, Cartoon Network, and Dreamworks is highly offensive and constitutes an invasion of D.T.'s and D.T.'s privacy.

**H.  Plaintiff S.S.**

252.    During the Class Period, Plaintiff S.S. watched videos and advertisements on YouTube.

253.    S.S. viewed child-directed content on multiple monetized YouTube channels, including:

a. **Mattel-owned Channels:** Mattel Action;

b. **Cartoon Network-owned Channels:** Cartoon Network, Ben 10, and Boomerang Official;

c. **Remka-owned Channels:** Ryan's Toy Reviews;

d. **Hasbro-owned Channels:** Play Doh

254.    Google, Mattel, Cartoon Network, Remka, and Hasbro collected and enabled collection of S.S.'s Personal Information for the purposes of tracking, profiling, and targeting S.S. with advertisements as S.S. watched Mattel's, Cartoon Network's, Remka's, and Hasbro's child-directed content on their YouTube channels.

255.    Neither Google, Mattel, Cartoon Network, Remka, or Hasbro obtained verifiable parental consent prior to the collection of S.S.'s Personal Information.

256.    Neither Plaintiff S.S. nor Plaintiff S.S.'s parent and guardian Pankaj Sharma could have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Pankaj Sharma about their tracking, profiling, and targeting of his child.

257.    The tracking, profiling, and targeting of S.S. without parental consent by Google, Mattel, Cartoon Network, Remka, and Hasbro is highly offensive and constitutes an invasion of S.S.'s privacy.

**I.   Plaintiff B.H.**

258.    During the Class Period, Plaintiff B.H. watched videos and advertisements on YouTube.

259.    B.H. viewed child-directed content on multiple monetized YouTube channels, including:

    a.   **Mattel-owned Channels:** Thomas & Friends and Polly Pocket;

    b.   **Hasbro-owned Channels:** Hasbro, Play Doh, and Official Play Doh;

    c.   **ChuChu TV-owned Channels:** ChuChu;

    d.   **Cartoon Networked-owned Channels:** Cartoon Network, Adventure Time, Gumball, Ben 10, and Power Players;

    e.   **Dreamworks Animation-owned Channels:**  Dreamworks;

    f.   **Remka-owned Channels:** Ryan's Toy Reviews;

260.    Google, Mattel, Hasbro, ChuChu TV, Cartoon Network, Dreamworks, and Remka each and together collected and enabled collection of B.H.'s Personal Information for the purposes of tracking, profiling, and targeting B.H. with advertisements as B.H. watched Defendant Mattel's, Hasbro's, ChuChu TV's, Cartoon Network's, Dreamworks', and Remka's child-directed content on their YouTube channels.

261.    Neither Google, Mattel, Hasbro, ChuChu TV, Cartoon Network, Dreamworks, n or Remka obtained verifiable parental consent prior to the collection of B.H.'s Personal Information.

262.    Neither Plaintiff B.H. nor Plaintiff B.H.'s parent and guardian Jason Hoffman could have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Jason Hoffman about their tracking, profiling, and targeting of his child.

263.    The tracking, profiling, and targeting of B.H. without parental consent by Google, Mattel,

Hasbro, ChuChu TV, Cartoon Network, Dreamworks, and Remka is highly offensive and constitutes an invasion of B.H.'s privacy.

**J.  Plaintiffs P.A. and J.A.**

264.    During the Class Period, Plaintiffs P.A. and J.A. watched videos and advertisements on YouTube.

265.    P.A. and J.A. viewed child-directed content on multiple monetized YouTube channels, including:

    a.  **Remka-owned Channels:** Ryan's Toy Reviews;

    b.  **Hasbro-owned Channels:** Hasbro, Play Doh, Official Play Doh How To Videos, Baby Alive, and My Little Pony;

    c.  **Mattel-owned Channels:** Mattel, Barbie, Hot Wheels, Thomas & Friends, American Girl, American Girl Welliewishers, and Polly Pocket;

    d.  **ChuChu TV-owned Channels:** ChuChu TV, ChuChu TV Nursery Rhymes & Kids Songs, ChuChu TV Surprise Egg Toys, Storytime – Bedtime Stories & Cartoon Shows, and ChuChu TV Funzone

266.    Google, Remka, Hasbro, Mattel, and ChuChu TV each and together collected and enabled collection of P.A.'s and J.A.'s Personal Information for the purposes of tracking, profiling, and targeting P.A. and J.A. with advertisements as P.A. and J.A. watched Remka's, Hasbro's, Mattel's, and ChuChu TV's child-directed content on their YouTube channels.

267.    Neither Google, Remka, Hasbro, Mattel, or ChuChu TV obtained verifiable parental consent prior to the collection of P.A.'s and J.A.'s Personal Information.

268.    Neither Plaintiffs P.A. and J.A. nor their parent and guardian Antonio Alvarez could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Antonio Alvarez about their tracking, profiling, and targeting of his children.

269.    The tracking, profiling, and targeting of P.A. and J.A. without parental consent by Google, Remka, Hasbro, Mattel, and ChuChu TV is highly offensive and constitutes an invasion of P.A.'s and J.A.'s privacy.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**K.  Plaintiffs S.H. and D.M.**

270.    During the Class Period, Plaintiffs S.H. and D.M. watched videos and advertisements on YouTube.

271.    S.H. and D.M. viewed child-directed content on multiple monetized YouTube channels, including:

  a.  **Mattel-owned Channels:** Mattel, Barbie, Hot Wheels, Fisher-Price, Thomas & Friends, American Girl, American Girl Wellwisher, Mattel Action, Max Steel, and Polly Pocket;

  b.  **Hasbro-owned Channels:** Hasbro, Nerf Official, Play Doh, Play Doh Official, and My Little Pony;

  c.  **Cartoon Network-owned Channels:** Cartoon Network, Adventure Time, Gumball, Ben 10, DC Super Hero, Powerpuff, and Steven Universe;

272.    Google, Mattel, Hasbro, and Cartoon Network each and together collected and enabled collection of S.H.'s and D.M.'s Personal Information for the purposes of tracking, profiling, and targeting S.H. and D.M. with advertisements as S.H. and D.M. watched Defendant Mattel's, Hasbro's, and Cartoon Network's child-directed content on their YouTube channels.

273.    Neither Google, Mattel, Hasbro, or Cartoon Network obtained verifiable parental consent prior to the collection of S.H.'s and D.M.'s Personal Information.

274.    Neither Plaintiffs S.H. and D.M. nor their parent and guardian Veronica Hicks could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Veronica Hicks about their tracking, profiling, and targeting of her children.

275.    The tracking, profiling, and targeting of S.H. and D.M. without parental consent by Google, Mattel, Hasbro, and Cartoon Network is highly offensive and constitutes an invasion of S.H.'s and D.M.'s privacy.

**L.  Plaintiff G.W.**

276.    During the Class Period, Plaintiff G.W. watched videos and advertisements on YouTube.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

277. G.W. viewed child-directed content on multiple monetized YouTube channels, including:

    a. **Mattel-owned Channels:** Barbie and American Girl Welliewishers;

    b. **Hasbro-owned Channels:** Official Play Doh and My Little Pony;

    c. **Cartoon Networked-owned Channels:** Cartoon Network;

278. Google, Mattel, Hasbro, and Cartoon Network each and together collected and enabled collection of G.W.'s Personal Information for the purposes of tracking, profiling, and targeting G.W. with advertisements as G.W. watched Defendant Mattel's, Hasbro's, and Cartoon Network's child-directed content on their YouTube channels.

279. Neither Google, Mattel, Hasbro, and Cartoon Network obtained verifiable parental consent prior to the collection of G.W.'s Personal Information.

280. Neither Plaintiff G.W. nor Plaintiff G.W.'s parent and guardian Doug Wilkerson could have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Doug Wilkerson about their tracking, profiling, and targeting of his child.

281. The tracking, profiling, and targeting of G.W. without parental consent by Google, Mattel, Hasbro, and Cartoon Network is highly offensive and constitutes an invasion of G.W.'s privacy.

**M. Plaintiff A.A.**

282. During the Class Period, Plaintiff A.A. watched videos and advertisements on YouTube.

283. A.A. viewed multiple monetized YouTube channels owned by Channel Owner Defendants during the Class Period, including, among others, the following channels: (i) Mattel: Thomas & Friends, (ii) Hasbro: Transformers Official, Nerf Official, (iii) Cartoon Network: Boomerang Official, (iv) DreamWorks: Dream-Works TV, Ethan Gamer, Gamer Chad, and (v) Ryan's World: Ryan Toys Review.

284. Google and these Channel Owner Defendants collected and enabled collection of A.A.'s Personal Information for the purposes of tracking, profiling, and targeting A.A. with advertisements as A.A. watched these Channel Owner Defendants' YouTube videos.

285. Neither Google nor these Channel Owner Defendants obtained verifiable parental

consent prior to the collection of A.A.'s Personal Information.

286.    Neither Plaintiff A.A. nor Plaintiff A.A.'s parent and guardian Pennie Frazier could have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Pennie Frazier about their tracking, profiling, and targeting of her child.

287.    The tracking, profiling, and targeting of A.A. without parental consent by Google and these Channel Owner Defendants is highly offensive and constitutes an invasion of A.A.'s privacy.

**N.  Plaintiffs J.C. and E.M.**

288.    During the Class Period, Plaintiffs J.C. and E.M. watched videos and advertisements on YouTube.

289.    J.C. and E.M. viewed child-directed content on multiple monetized YouTube channels, including:

    a.  **Mattel-owned Channels:** Mattel, Barbie, Hot Wheels, Fisher-Price, Thomas & Friends, American Girl, and American Welliewishers;

    b.  **Hasbro-owned Channels:** Hasbro, Transformers Official, Nerf Official, Play Doh, Official Play Doh, Baby Alive, and My Little Pony;

    c.  **Cartoon Network-owned Channels:** Cartoon Network, Adventure Time, Gumball, Ben 10, DC Superhero, Power Players, Powerpuff, Steven Universe, and Boomerang;

    d.  **Dreamworks-owned Channels:** Dreamworks TV;

    e.  **Remka-owned Channels:** Ryan's Toy Reviews

290.    Google, Mattel, Hasbo, Cartoon Network, Dreamworks, and Remka each and together collected and enabled collection of J.C. and E.M.'s Personal Information for the purposes of tracking, profiling, and targeting J.C. and E.M. with advertisements as J.C. and E.M. watched Defendant Mattel's, Hasbo's, Cartoon Network's, Dreamworks', and Remka's child-directed content on their YouTube channels.

291.    Neither Google, Mattel, Hasbo, Cartoon Network, Dreamworks, nor Remka obtained verifiable parental consent prior to the collection of J.C.'s and E.M.'s Personal Information.

292.     Neither Plaintiffs J.C. and E.M. nor their parent and guardian Lezlie Collins could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Lezlie Collins about their tracking, profiling, and targeting of her children.

293.     The tracking, profiling, and targeting of J.C. and E.M. without parental consent by Google, Mattel, Hasbo, Cartoon Network, Dreamworks, and Remka is highly offensive and constitutes an invasion of J.C.'s and E.M.'s privacy.

**O.  Plaintiffs L.D., D.D., and A.D.**

294.     During the Class Period, Plaintiffs L.D., D.D., and A.D. watched videos and advertisements on YouTube.

295.     L.D., D.D., and A.D. viewed child-directed content on multiple monetized YouTube channels, including:

    a.  **Mattel-owned Channels:** Fisher-Price and Barbie;

    b.  **Cartoon Network-owned Channels:** Cartoon Network, Adventure Time, The Amazing World of Gumball, DC Super Hero Girls, and The Powerpuff Girls;

    c.  **Hasbro-owned Channels:** Baby Alive, My Little Pony, and Hasbro;

    d.  **ChuChu TV-owned Channels:** ChuChu TV Nursery Rhymes & Kids Songs, ChuChu TV Surprise Egg Toys; Storytime – Bedtime Stories and Cartoon Shows, and ChuChu TV Funzone;

296.     Google, Mattel, Cartoon Network, Hasbro, and Remka each and together collected and enabled collection of L.D.'s, D.D.'s, and A.D.'s Personal Information for the purposes of tracking, profiling, and targeting L.D., D.D., and A.D. with advertisements as L.D., D.D., and A.D. watched Defendant Mattel's, Cartoon Network's, Hasbro's, and Remka's child-directed content on their YouTube channels.

297.     Neither Google Mattel, Cartoon Network, Hasbro, or Remka obtained verifiable parental consent prior to the collection of L.D.'s, D.D.'s, and A.D.'s Personal Information.

298.     Neither Plaintiffs L.D., D.D., and A.D. nor their parent and guardian Hollie Dorso have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Hollie Dorso about their tracking, profiling, and targeting of her children.

299.    The tracking, profiling, and targeting of L.D., D.D., and A.D. without parental consent by Google, Mattel, Cartoon Network, Hasbro, and Remka is highly offensive and constitutes an invasion of L.D.'s, D.D.'s, and A.D.'s privacy.

**P.  Plaintiff J.G.**

300.    During the Class Period, Plaintiff J.G. watched videos and advertisements on YouTube.

301.    J.G. viewed child-directed content on multiple monetized YouTube channels, including:

>  a.  **Cartoon Network-owned Channels:** The Amazing World of Gumball and Steven Universe;

>  b.  **Remka-owned Channels:** Ryan's Toy Reviews;

302.    Google, Cartoon Network, and Remka each and together collected and enabled collection of J.G.'s Personal Information for the purposes of tracking, profiling, and targeting J.G. with advertisements as J.G. watched Defendant Cartoon Network's, and Remka's child-directed content on their YouTube channels.

303.    Neither Google, Cartoon Network, or Remka obtained verifiable parental consent prior to the collection of J.G.'s Personal Information.

304.    Neither Plaintiff J.G. nor Plaintiff J.G.'s parent and guardian Jacob Gill could have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Jacob Gill about their tracking, profiling, and targeting of his child.

305.    The tracking, profiling, and targeting of J.G. without parental consent by the Google, Cartoon Network, or Remka is highly offensive and constitutes an invasion of J.G.'s privacy.

**Q.  Plaintiffs E.W. and A.W.**

306.    During the Class Period, Plaintiffs E.W. and A.W. watched videos and advertisements on YouTube.

307.    E.W. and A.W. viewed child-directed content on multiple monetized YouTube channels, including:

a.  **Mattel-owned Channels:** American Girl;

b.  **Hasbro-owned Channels:** Nerf, Play Doh, and Baby Alive;

c.  **Cartoon Network-owned Channels:** Cartoon Network, Amazing World of Gumball, and Powerpuff Girls;

d.  **Dreamworks-owned Channels:**  Dreamworks TV World;

308.    Google, Mattel, Hasbro, Cartoon Network, and Dreamworks each and together collected and enabled collection of E.W.'s and A.W.'s Personal Information for the purposes of tracking, profiling, and targeting E.W. and A.W. with advertisements as E.W. and A.W. watched Defendant Mattel's, Hasbro's, Cartoon Network's, and Dreamworks' child-directed content on their YouTube channels.

309.    Neither Google, Mattel, Hasbro, Cartoon Network, nor Dreamworks obtained verifiable parental consent prior to the collection of E.W.'s and A.W.'s Personal Information.

310.    Neither Plaintiffs E.W. and A.W. nor their parent and guardian Tanya Walsh could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Tanya Walsh about their tracking, profiling, and targeting of her children.

311.    The tracking, profiling, and targeting of E.W. and A.W. without parental consent by Google, Mattel, Hasbro, Cartoon Network, and Dreamworks is highly offensive and constitutes an invasion of E.W.'s and A.W.'s privacy.

**R.  Plaintiffs B.L. and E.L.**

312.    During the Class Period, Plaintiffs B.L. and E.L. watched videos and advertisements on YouTube.

313.    B.L. and E.L. viewed child-directed content on multiple monetized YouTube channels, including:

a.  **Mattel-owned Channels:** Mattel, Hot Wheels, Mattel Action, and Max Steel;

b.  **Cartoon Network-owned Channels:** Cartoon Network, Adventure Time, Power Players, and Boomerang Official;

c.  **Hasbro-owned Channels:** Transformers Official; Nerf Official; Play Doh, and

64

Official Play Doh;

    d. **Dreamworks-owned Channels:** Dreamworks TV World;

    e. **Remka-owned Channels:** Ryan's Toy Reviews

314. Google, Mattel, Cartoon Network, Hasbro, Dreamworks, and Remka each and together collected and enabled collection of B.L.'s and E.L.'s Personal Information for the purposes of tracking, profiling, and targeting B.L. and E.L. with advertisements as B.L. and E.L. watched Defendant Mattel's, Cartoon Network's, Hasbro's, Dreamworks', and Remka's child-directed content on their YouTube channels.

315. Neither Google, Mattel, Cartoon Network, Hasbro, Dreamworks, and Remka obtained verifiable parental consent prior to the collection of B.L.'s and E.L.'s Personal Information.

316. Neither Plaintiffs B.L. and E.L. nor their parent and guardian Christopher Long could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Christopher Long about their tracking, profiling, and targeting of his children.

317. The tracking, profiling, and targeting of B.L. and E.L. without parental consent by Google, Mattel, Cartoon Network, Hasbro, Dreamworks, and Remka is highly offensive and constitutes an invasion of B.L.'s and E.L.'s privacy.

**S. Plaintiffs T.P., L.P., T.P., and T.P.**

318. During the Class Period, Plaintiffs T.P., L.P., T.P., and T.P. watched videos and advertisements on YouTube.

319. T.P., L.P., T.P., and T.P viewed child-directed content on multiple monetized YouTube channels, including:

    a. **Mattel-owned Channels:** Thomas & Friends;

    b. **Hasbro-owned Channels:** Play Doh and Official Play Doh;

    c. **Cartoon Network-owned Channels:** Cartoon Network and Amazing World of Gumball;

    d. **Remka-owned Channels:** Ryan's Toy Reviews

320. Google, Mattel, Hasbro, Cartoon Network, and Remka each and together collected and

65

enabled collection of T.P.'s, L.P.'s, T.P.'s, and T.P.'s Personal Information for the purposes of tracking, profiling, and targeting T.P., L.P., T.P., and T.P with advertisements as T.P., L.P., T.P., and T.P watched Defendant Mattel's, Hasbro's, Cartoon Network's, and Remka's child-directed content on their YouTube channels.

321.    Neither Google, Mattel, Hasbro, Cartoon Network, or Remka obtained verifiable parental consent prior to the collection of T.P.'s, L.P.'s, T.P.'s, and T.P.'s Personal Information.

322.    Neither Plaintiffs T.P., L.P., T.P., and T.P. nor their parent and guardian Michael Corwitt could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Michael Corwitt about their tracking, profiling, and targeting of his children.

323.    The tracking, profiling, and targeting of T.P., L.P., T.P., and T.P.  without parental consent by Google, Mattel, Hasbro, Cartoon Network, and Remka is highly offensive and constitutes an invasion of T.P.'s, L.P.'s, T.P.'s, and T.P.'s privacy.

**T.  Plaintiffs M.W., B.N., and W.N.**

324.    During the Class Period, Plaintiffs M.W., B.N., and W.N. watched videos and advertisements on YouTube.

325.    M.W., B.N., and W.N. viewed child-directed content on multiple monetized YouTube channels, including:

    a.  **Mattel-owned Channels:** Barbie;

    b.  **Hasbro-owned Channels:** Baby Alive;

    c.  **Cartoon Network-owned Channels:** Cartoon Network and Adventure Time;

    d.  **Remka-owned Channels:** Ryan's Toys Review

326.    Google, Mattel, Hasbro, Cartoon Network, and Remka each and together collected and enabled collection of M.W.'s, B.N.'s, and W.N.'s Personal Information for the purposes of tracking, profiling, and targeting M.W., B.N., and W.N. with advertisements as M.W., B.N., and W.N. watched Defendant Mattel's, Hasbro's, Cartoon Network's, and Remka's child-directed content on their YouTube channels.

327.    Neither Google, Mattel, Hasbro, Cartoon Network, or Remka obtained verifiable parental

consent prior to the collection of M.W.'s, B.N.'s, and W.N.'s Personal Information.

328.    Neither Plaintiffs M.W., B.N., and W.N. nor their parent and guardian Michelle Wall could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Michelle Wall about their tracking, profiling, and targeting of her children.

329.    The tracking, profiling, and targeting of M.W., B.N., and W.N. without parental consent by Google, Mattel, Hasbro, Cartoon Network, and Remka is highly offensive and constitutes an invasion of M.W.'s, B.N.'s, and W.N.'s privacy.

**U.  Plaintiff M.G.**

330.    During the Class Period, Plaintiff M.G. watched videos and advertisements on YouTube.

331.    M.G. viewed child-directed content on multiple monetized YouTube channels, including:

a.  **Mattel-owned Channels:** Thomas & Friends;

b.  **Hasbro-owned Channels:** Baby Alive Official;

c.  **Cartoon Network-owned Channels:** Cartoon Network, Adventure Time, The Amazing World of Gumball, DC Super Hero Girls, and The Powerpuff Girls;

d.  **Dreamworks-owned Channels:** DreamWorks TV World

332.    Google, Mattel, Hasbro, Cartoon Network, and Dreamworks each and together collected and enabled collection of M.G.'s Personal Information for the purposes of tracking, profiling, and targeting M.G. with advertisements as M.G. watched Defendant Mattel's, Hasbro's, Cartoon Network's, and Dreamworks' child-directed content on their YouTube channels.

333.    Neither Google, Mattel, Hasbro, Cartoon Network, or Dreamworks obtained verifiable parental consent prior to the collection of M.G.'s Personal Information.

334.    Neither Plaintiff M.G. nor their parent and guardian Natasha Gural-Maiello could have reasonably discovered this conduct earlier through investigation. Plaintiff is a minor unable to consent

to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Natasha Gural-Maiello about their tracking, profiling, and targeting of her children.

335.    The tracking, profiling, and targeting of M.G. without parental consent by Google, Mattel, Hasbro, Cartoon Network, and Dreamworks is highly offensive and constitutes an invasion of M.G.'s privacy.

**V.  Plaintiffs N.N and N.M.**

336.    During the Class Period, Plaintiffs N.N. and N.M. watched videos and advertisements on YouTube.

337.    N.N. and N.M. viewed child-directed content on multiple monetized YouTube channels, including:

   a.  **Mattel-owned Channels:** Mattel, Barbie, Thomas & Friends, Fisher-Price, Hot Wheels, Polly Pocket, and Max Steel;

   b.  **Hasbro-owned Channels:** Nerf, Hasbro, My Little Pony, and Baby Alive;

   c.  **Cartoon Network-owned Channels:** Cartoon Network;

338.    Google, Mattel, Hasbro, and Cartoon Network each and together collected and enabled collection of N.N.'s and N.M.'s Personal Information for the purposes of tracking, profiling, and targeting N.N. and N.M. with advertisements as N.N. and N.M. watched Defendant Mattel's, Hasbro's, and Cartoon Network's child-directed content on their YouTube channels.

339.    Neither Google, Mattel, Hasbro, nor Cartoon Network obtained verifiable parental consent prior to the collection of N.N.'s and N.M.'s Personal Information.

340.    Neither Plaintiffs N.N. and N.M. nor their parent and guardian Denise Newsome could have reasonably discovered this conduct earlier through investigation. Plaintiffs are minors unable to consent to or understand Defendants' tracking of personal information, and Defendants concealed from and misled Denise Newsome about their tracking, profiling, and targeting of her children.

341.    The tracking, profiling, and targeting of N.N. and N.M. without parental consent by Google, Mattel, Hasbro, and Cartoon Network highly offensive and constitutes an invasion of N.N.'s and N.M.'s privacy.

**TOLLING, ESTOPPEL AND RELATION BACK**

**I.      Discovery Rule Tolling**

342.    Plaintiffs and the Classes had no way of knowing about Defendants' conduct with respect to the collection and impermissible and unauthorized use of, and profit from, the Personal Information of Plaintiffs and the members of the Classes.

343.    Neither Plaintiffs nor any other members of the Classes, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and the members of the Classes did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendants were engaged in the conduct alleged herein.

344.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims asserted by Plaintiffs and the Classes.

**II.     Fraudulent Concealment Tolling**

345.    By failing to provide notice of the collection and use of the Personal Information and obtain verifiable consent, in violation of COPPA and societal norms and conventions, Defendants concealed their conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Classes.

346.    Upon information and belief, Defendants intended by their acts to conceal the facts and claims from Plaintiffs and members of the Classes.  Plaintiffs and the members of the Classes were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes should be tolled.

**III.    Estoppel**

347.    Despite their duties and obligations under COPPA, Defendants failed to provide notice of the collection and use of the Personal Information and obtain verifiable consent in breach and violation thereof.

348.    Defendants therefore are estopped from relying on any statutes of limitations in defense of this action.

**IV.    Relation Back**

349.   The claims asserted by Plaintiffs D.T. and D.T. (Alabama), S.S. (Arizona), B.H. (Florida), P.A. and J.A. (Illinois), S.H. and D.M. (Kansas), G.W. (Michigan), A.A. (Mississippi), J.C. and E.M. (Missouri), L.D., D.D., and A.D. (New Hampshire), M.G. (New York), J.G. (Oklahoma), E.W. and A.W. (Pennsylvania), B.L. and E.L. (South Carolina), T.P., L.P., T.P. and T.P. (South Dakota), N.N. and N.M. (Virginia), and M.W., B.N. and W.N. (Washington) relate back to, at least, January 19, 2021 (prior to the filing of the Third Amended Complaint ("TAC") on January 22, 2021) pursuant to Federal Rule of Civil Procedure 15(c) because these claims arose out of the same conduct and occurrences set forth in the TAC, Defendants had adequate notice of the claims of the Plaintiffs set forth above, Defendants will not be unfairly prejudiced by the inclusion of these claims, and there is an identity of interests between the Plaintiffs in the TAC and the Plaintiffs set forth above.

## CLASS ACTION ALLEGATIONS

350.   Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

**I.     The Alabama Class**

351.   Plaintiffs D.T. and D.T., through their parent and guardian Amanda Seeley, seek class certification for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of an Alabama class defined as follows:

> All persons residing in the State of Alabama who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**II.    The Arizona Class**

352.   Plaintiff S.S., through their parent and guardian Pankaj Sharma, seeks class certification of a claim for violation of the Arizona Consumer Fraud Act. Ariz. Rev. Stat. § 44–1521 et seq., for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of an Arizona class defined as follows:

> All persons residing in the State of Arizona who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed

Personal Information without first obtaining verified parental consent during the Class Period.

### III. The California Class

353. Plaintiff C.H., through their parent and guardian Nicole Hubbard, seeks class certification of a claim for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, a claim for violation of the State of California Constitution Right to Privacy, for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a California class defined as follows:

> All persons residing in the State of California who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

### IV. The Colorado Class

354. Plaintiffs L.J., A.J., N.J. and E.J., through their parent and guardian Cara Jones, seek class certification for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a Colorado class defined as follows:

> All persons residing in the State of Colorado who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

### V. The Florida Class

355. Plaintiff B.H., through their parent and guardian Jason Hoffman, seeks class certification of a claim for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 et seq., as well as a claim for unjust enrichment on behalf of a Florida class defined as follows:

> All persons residing in the State of Florida who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

**VI.    The Illinois Class**

356.    Plaintiffs P.A. and J.A., through their parent and guardian Antonio Alvarez, seek class certification of a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of an Illinois class defined as follows:

> All persons residing in the State of Illinois who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**VII.   The Indiana Class**

357.    Plaintiff C.D., through their parent and guardian Bobbi Dishman, seek class certification of a claim for violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3, as well as a claim for unjust enrichment on behalf of an Indiana class defined as follows:

> All persons residing in the State of Indiana who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**VIII.  The Kansas Class**

358.    Plaintiffs S.H. and D.M., through their parent and guardian Veronica Hicks, seek class certification for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a Kansas class defined as follows:

> All persons residing in the State of Kansas who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**IX.    The Massachusetts Class**

359.    Plaintiff A.G., through their parent and guardian Jay Goodwin, seeks class certification of a claim for violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws. Ann. Ch. 93A,

§ 1, *et seq.*, as well as a claim for unjust enrichment on behalf of a Massachusetts class defined as follows:

> All persons residing in the Commonwealth of Massachusetts who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**X.    The Michigan Class**

360.    Plaintiff G.W., through their parent and guardian Doug Wilkerson, seeks class certification of a claim for violation of the Michigan Consumer Protection Act, Mich. Comp. Law Ann. § 445.903 *et seq.*, as well as a claim for unjust enrichment on behalf of a Michigan class defined as follows:

> All persons residing in the State of Michigan who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**XI.    The Mississippi Class**

361.    Plaintiff A.A., through their parent and guardian Pennie Frazier, seeks class certification of a claim for violation of the Mississippi Consumer Protection Act, § 75-24-1 et seq., as well as a claim for unjust enrichment on behalf of a Mississippi class defined as follows:

> All persons residing in the State of Mississippi who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**XII.    The Missouri Class**

362.    Plaintiffs J.C. and E.M., through their parent and guardian Lezlie Collins, seek class certification of a claim for violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, et seq., for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a Missouri class defined as follows:

All persons residing in the State of Missouri who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**XIII.   The New Hampshire Class**

363.   Plaintiffs L.D., D.D., and A.D., through their parent and guardian Hollie Dorso, seek class certification of a claim for violation of the New Hampshire Consumer Protection Act, RSA 358–A:2., for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a New Hampshire class defined as follows:

All persons residing in the State of New Hampshire who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**XIV.   The New Jersey Class**

364.   Plaintiffs J.R.E. and J.A.E., through their parent and guardian Justin Efros, seek class certification of a claim for violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*, for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a New Jersey class defined as follows:

All persons residing in the State of New Jersey who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

**XV.   The New York Class**

365.   Plaintiff M.G., through their parent and guardian Natasha Gural-Maiello, seeks class certification for a claim for unjust enrichment on behalf of a New York class defined as follows:

All persons residing in the State of New York who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## XVI.   The Oklahoma Class

366.    Plaintiff J.G., through their parent and guardian Gill Jacob, seeks class certification for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of an Oklahoma class defined as follows:

> All persons residing in the State of Oklahoma who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

## XVII.   The Pennsylvania Class

367.    Plaintiffs E.W. and A.W., through their parent and guardian Tanya Walsh, seek class certification of a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 et seq., for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment on behalf of a Pennsylvania class defined as follows:

> All persons residing in the Commonwealth of Pennsylvania who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

## XVIII.  The South Carolina Class

368.    Plaintiffs B.L. and E.L., through their parent and guardian Christopher Long, seek class certification of a claim for violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, et seq., as well as a claim for unjust enrichment on behalf of a South Carolina class defined as follows:

> All persons residing in the State of South Carolina who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**XIX.   The South Dakota Class**

369.    Plaintiffs T.P., L.P., T.P., and T.P, through their parent and guardian Michael Corwitt,
seek class certification for the common law claim of intrusion upon seclusion, as well as a claim for
unjust enrichment on behalf of a South Dakota class defined as follows:

> All persons residing in the State of South Dakota who were thirteen or younger when they
> used YouTube, and from whom Defendants collected, caused to be collected, used, or
> disclosed Personal Information without first obtaining verified parental consent during the
> Class Period.

**XX.    The Tennessee Class**

370.    Plaintiff M.W., through their parent and guardian Renee Gilmore, seeks class
certification of a claim for violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-
18-101 *et seq*., as well as a claim for unjust enrichment on behalf of a Tennessee class defined as follows:

> All persons residing in the State of Tennessee who were thirteen or younger when they used
> YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed
> Personal Information without first obtaining verified parental consent during the Class Period.

**XXI.   The Virginia Class**

371.    Plaintiffs N.N. and N.M., through their parent and guardian Denise Newsome, seeks class
certification of a claim for unjust enrichment on behalf of a Virginia class defined as follows

> All persons residing in the Commonwealth of Virginia who were thirteen or younger when
> they used YouTube, and from whom Defendants collected, caused to be collected, used,
> or disclosed Personal Information without first obtaining verified parental consent during
> the Class Period.

**XXII.  The Washington Class**

372.    Plaintiffs M.W., B.N., and W.N., through their parent and guardian Michelle Wall, seek
class certification of a claim for violation of the Washington Consumer Protection Act, RCW 19.86.020,
et. seq., for the common law claim of intrusion upon seclusion, as well as a claim for unjust enrichment
on behalf of a Washington class defined as follows:

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

All persons residing in the State of Washington who were thirteen or younger when they used YouTube, and from whom Defendants collected, caused to be collected, used, or disclosed Personal Information without first obtaining verified parental consent during the Class Period.

373.     Plaintiffs reserve the right to modify or refine the Class definitions based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

374.     Excluded from the Classes are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b)  Defendants and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

375.     **Ascertainability**. The proposed Classes are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class. Further, the Classes can be identified through records maintained by Defendants.

376.     **Numerosity (Rule 23(a)(1))**. The Classes are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Classes, as herein identified and described, is not known, but download figures indicate that Google has collected information on millions of children.

377.     **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following:

    a.   Whether Defendants collected the Personal Information of children;

    b.   Whether Defendants had knowledge they were collecting the Personal Information of children;

c. Whether Defendants obtained parental consent to collect the Personal Information of children;

d. Whether the collection of Personal Information of children is highly offensive to a reasonable person;

e. Whether the collection of Personal Information of children without parental consent is sufficiently serious and unwarranted as to constitute an egregious breach of social norms;

f. Whether Defendants' conduct constituted an invasion of privacy based on common law protection against intrusion upon seclusion under the laws of Alabama, Arizona, California, Florida, Illinois, Kansas, Missouri, New Hampshire, New Jersey, Oklahoma, Pennsylvania, South Dakota, and Washington;

g. Whether Defendants' conduct constituted a violation of the California Constitution right to privacy;

h. Whether Defendants' conduct was unfair;

i. Whether Defendants' conduct was unlawful;

j. Whether Defendants' conduct violated the consumer protection acts of Arizona, California, Colorado, Illinois, Indiana, Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New Jersey, Pennsylvania, South Carolina, Tennessee, and Washington;

k. Whether Plaintiffs and the Classes are entitled to monetary damages and the measure of those damages;

l. Whether Plaintiff C.H. and the California Class are entitled to restitution and disgorgement;

m. Whether Defendants were unjustly enriched by their conduct under the laws of Alabama, Arizona, California, Colorado, Florida, Illinois, Indiana, Kansas, Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New Jersey, New York, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Virginia, and Washington;

n. Whether Defendants fraudulently concealed their conduct; and

o. Whether Plaintiffs and the Classes are entitled to injunctive or other equitable relief.

378.   **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Classes. Plaintiffs and members of the Classes (as applicable) suffered an

invasion of privacy and injuries as a result of Defendants' wrongful conduct that is uniform across the Classes.

379. **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Classes.

380. **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The prosecution of separate actions by individual members of the Classes would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

381. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Classes, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

382. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief, if any, that may be awarded by the Court is appropriate as to the Classes as a whole.

383.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

**CLAIMS FOR RELIEF**

**I.    Alabama Claims**

**Claim 1**
**ALABAMA INTRUSION UPON SECLUSION**
**(Against All Defendants on behalf of Plaintiffs D.T., D.T., and the Alabama Class)**

384.    Plaintiffs D.T., D.T., and members of the Alabama Class re-allege the foregoing allegations as if fully set forth herein.

385.    D.T.'s, D.T.'s, and members of the Alabama Class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity carried on by D.T., D.T., and members of the Alabama Class while using internet-connected devices.

386.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion of Plaintiffs and Alabama class members by improperly accessing Personal Information and using it for improper purposes, including by targeting D.T., D.T., and Alabama class members with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of D.T., D.T., and Alabama class members with such advertisements, as detailed herein.

387.    Defendants' intrusions upon the private affairs, concerns, and seclusion of D.T., D.T., and Alabama class members were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

388. As children aged thirteen or younger, D.T., D.T., and members of the Alabama Class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

389. Neither D.T., D.T., the Alabama class, nor their parents and/or guardians consented to Defendants'' intrusions upon their private affairs, concerns, and seclusions.

390. D.T., D.T., and members of the Alabama Class suffered actual and concrete injury as a result of Defendants' intrusions upon D.T., D.T. and Alabama class members' private affairs, concerns, and seclusion.

391. D.T., D.T., and Alabama class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits realized by Defendants as a result of their intrusions upon D.T., D.T., and Alabama class members' private affairs, concerns, and seclusion.

### Claim 2
### ALABAMA UNJUST ENRICHMENT
**(Against All Defendants on behalf of Plaintiffs D.T., D.T., and the Alabama Class)**

392. Plaintiffs D.T., D.T., and members of the Alabama Class re-allege the foregoing allegations as if fully set forth herein.

393. By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of D.T., D.T., and Alabama class members for advertising and commercialization purposes.

394. This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by D.T., D.T., and the members of the Alabama class.

395. Defendants are each independently liable because they each independently harmed D.T., D.T., and members of the Alabama class via the conduct herein described.

396.    As a result of Defendants' conduct, D.T., D.T., and members of the Alabama class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

397.    It would be inequitable and unjust to permit any of the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of D.T., D.T., and the members of the Alabama class.

398.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by D.T., D.T., and the members of the Alabama class through the collection, obtainment, and use of Personal Information and the value thereof, and Defendants' profiting from the unlawful, unfair, unauthorized, and impermissible use of the Personal Information of D.T., D.T., and the members of the Alabama class.

399.    D.T., D.T., and the members of the Alabama class are therefore entitled to recover the amounts realized by each of the Defendants at the expense of D.T., D.T. and the members of the Alabama class.

400.    D.T., D.T., and members of the Alabama class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## II.    Arizona Claims

### Claim 3
### ARIZONA INTRUSION UPON SECLUSION
### (Against All Defendants on behalf of Plaintiff S.S. and the Arizona Class)

401.    Plaintiff S.S. and members of the Arizona class re-allege the foregoing allegations as if fully set forth herein.

402.    S.S. and members of the Arizona class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity carried on by S.S. and members of the Arizona class while using internet-connected devices.

403.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and

seclusion of S.S. and Arizona class members by improperly accessing S.S. and Arizona class members' Personal Information and using it for improper purposes, including by targeting S.S. and Arizona class members with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of S.S. and Arizona class members with such advertisements, as detailed herein.

404.    Defendants' intrusions upon the private affairs, concerns, and seclusion of S.S. and Arizona class members were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and Federal Trade Commission regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

405.    As children aged thirteen or younger, S.S. and members of the Arizona class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

406.    Neither S.S., members of the Arizona class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

407.    S.S. and members of the Arizona class suffered actual and concrete injury as a result of Defendants' intrusions upon Plaintiffs' private affairs, concerns, and seclusion.

408.    S.S. and members of the Arizona class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon S.S. and members of the Arizona class's private affairs, concerns, and seclusion.

## Claim 4
### ARIZONA CONSUMER FRAUD ACT, A.R.S. 44-1521 *et seq*.
### (Against All Defendants on behalf of Plaintiff S.S. and the Arizona Class)

409.    Plaintiff S.S. and members of the Arizona class incorporate the foregoing allegations as if fully set forth herein.

410.   S.S. and members of the Arizona class are or were residents of Arizona and/or viewed child-directed content in Arizona hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

411.   At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Arizona in that they each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Arizona.

412.   Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Arizona, and there are millions of users, including S.S. and members of the Arizona class.

413.   Ariz. Rev. Stat. § 44–1522A provides "[t]he act, use or employment by any person of any … unfair act or practice … in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

414.   Ariz. Rev. Stat. § 44-1522C provides "[i]t is the intent of the legislature, in construing subsection A, that the courts may use as a guide interpretations given by the federal trade commission and the federal courts to 15 United States Code sections 45, 52 and 55(a)(1)."

415.   Defendants each violated Ariz. Rev. Stat. § 44–1522 by engaging in the unfair acts or practices proscribed by Ariz. Rev. Stat. § 44–1522, *et seq*. outlined herein.

416.   Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

417.   As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information of S.S. and Arizona class members viewing child-directed content created by the Channel

Owner Defendants on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

418.   As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

419.   The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and to serve those children behavioral advertising for substantial commercial gain.

420.   As outlined herein, each of the Channel Owner Defendants  knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

421.   The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that this content posted to and made available on YouTube was child-directed content.

422.   That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content uploaded to, hosted on, and made viewable on these YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

423.   Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

424.   Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through the YouTube channels they created, hosted, and maintained that were directed to children under 13.

425.    In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.    Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.    Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

426.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Ariz. Rev. Stat. § 44–1522, et seq.[74]

---

[74] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

427.    Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of Ariz. Rev. Stat. § 44–1522, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

428.    Each of Defendants' conduct was unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.  Further, S.S. and members of the Arizona class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

429.    Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Ariz. Rev. Stat. § 44–1522, et seq.

430.    S.S. and members of the Arizona class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to S.S. and members of the Arizona class.

431.    As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Ariz. Rev. Stat. § 44–1522, *et seq*., S.S. and members of the Arizona class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

432.    As outlined herein, there is tangible value in S.S. and Arizona class  members' Personal Information, and they have lost the opportunity to receive value in exchange for their Personal Information.

433.    Defendants' monetization of S.S. and Arizona class members' Personal Information demonstrates that there is a market for their Personal Information, but that Personal Information is now in the possession of each of the Defendants, who have used and will use it for their financial gain.

434.    Defendants' retention of S.S. and Arizona class members' Personal Information presents a continuing risk to them as well as the general public. S.S. and members of the Arizona class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as

provided by Ariz. Rev. Stat. § 44–1522, et seq. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

**Claim 5**
**ARIZONA UNJUST ENRICHMENT**
**(Against All Defendants on behalf of Plaintiff S.S. and the Arizona Class)**

435.   Plaintiff S.S., and members of the Arizona class re-allege the foregoing allegations as if fully set forth herein.

436.   By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of S.S. and the members of the Arizona class for advertising and commercialization purposes.

437.   This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by S.S. and the members of the Arizona class.

438.   Defendants are each independently liable because they each independently harmed S.S. and members of the Arizona class via the conduct herein described.

439.   As a result of Defendants' conduct, S.S. and members of the Arizona class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

440.   It would be inequitable and unjust to permit any of the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of S.S. and the members of the Arizona class.

441.   Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by S.S. and the members of the Arizona class through the collection,

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

obtainment, and use of S.S. and Arizona class members' Personal Information and the value thereof, and Defendants' profiting from the unlawful, unfair, unauthorized, and impermissible use of that Personal Information.

442.    S.S. and the members of the Arizona class are therefore entitled to recover the amounts realized by each of the Defendants at the expense of S.S. and the members of the Arizona class.

443.    S.S. and members of the Arizona class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## III.    California Claims

### Claim 6
### CALIFORNIA CONSTITUTIONAL RIGHT TO PRIVACY, Cal. Const. Art. 1, § 1.
### (Against All Defendants on behalf of Plaintiff C.H. and the California Class)

444.    Plaintiff C.H., and members of the California class re-allege the foregoing allegations as if fully set forth herein.

445.    C.H. and members of the California class's private affairs include their behavior on their mobile devices and computers, as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by Defendants.

446.    The parents and guardians of C.H. and members of the California class have reasonable expectations of privacy in their children's mobile devices and their online behavior and activities, generally.

447.    C.H. and members of the California class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

448.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion of C.H. and California class members by improperly accessing C.H. and California class members' Personal Information and using it for improper purposes, including by targeting them with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious

breach of social norms and/or enabling the targeting of C.H. and California class members with such advertisements, as detailed herein.

449.     Defendants' intrusions upon the private affairs, concerns, and seclusion of C.H. and California class members were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

450.     As minor children, C.H. and members of the California class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

451.     Neither C.H., members of the California class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

452.     C.H. and members of the California class suffered actual and concrete injury as a result of Defendants' intrusions upon Plaintiffs' private affairs, concerns, and seclusion.

453.     C.H. and members of the California class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon C.H. and members of the California class's private affairs, concerns, and seclusion.

**Claim 7**
**CALIFORNIA INTRUSION UPON SECLUSION**
**(Against All Defendants on behalf of Plaintiff C.H. and the California Class)**

454.     Plaintiff C.H. and members of the California class re-allege the foregoing allegations as if fully set forth herein.

455.   C.H. and members of the California class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

456.   Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion of C.H. and California class members by improperly accessing C.H. and California class members' Personal Information and using it for improper purposes, including by targeting them with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of C.H. and California class members with such advertisements, as detailed herein.

457.   Defendants' intrusions upon the private affairs, concerns, and seclusion of C.H. and California class members were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

458.   As minor children, C.H. and members of the California class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

459.   Neither C.H., members of the California class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

460.   C.H. and members of the California class suffered actual and concrete injury as a result of Defendants' intrusions upon C.H. and California class members' private affairs, concerns, and seclusion.

461.   C.H. and members of the California class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions

of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon C.H. and members of the California class's private affairs, concerns, and seclusion.

### Claim 8
### CALIFORNIA UNFAIR COMPETITION LAW (UCL),
### Cal. Bus. & Prof. Code § 17200, *et seq*.
### (Against All Defendants on behalf of Plaintiff C.H. and the California Class)

462.    Plaintiff C.H. and members of the California class incorporate the foregoing allegations as if fully set forth herein.

463.    C.H. and members of the California class are or were residents of California and/or viewed child-directed content in California hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

464.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in California in that they each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in California.

465.    Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in California, and there are millions of users, including C.H. and members of the California class.

466.    Cal. Bus. & Prof. Code § 17200, *et seq*. (the "UCL") broadly prohibits "unfair competition", which the UCL defines as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]"

467.    California courts have noted that "the differences [between the UCL and FTC Act] are not of a degree to impair comparison" and that unfair acts respectively proscribed in the two statutes "appear practically synonymous*." People ex rel. Mosk v. Nat'l Rsch. Co. of Cal.*, 201 Cal. App. 2d 765, 773, 20 Cal. Rptr. 516, 521 (Ct. App. 1962). As a result, California courts deem "decisions of the federal court [construing the FTC Act] are more than ordinarily persuasive." *Id.*

468.    Defendants each violated Cal. Bus. & Prof. Code § 17200, *et seq*. by engaging in the unfair acts or practices proscribed by Cal. Bus. & Prof. Code § 17200, *et seq*. outlined herein.

469.     Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of minor children and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

470.     As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from C.H. and California class members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

471.     As outlined herein, Google intentionally designed YouTube to, among other things, attract minor children by making child-directed content available to them so that Google could collect the Personal Information of those children and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

472.     The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract minor children, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

473.     As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

474.     The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that this content posted to and made available on YouTube was child-directed content.

475.     That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content uploaded to, hosted on, and made viewable on these YouTube channels was plainly intended for

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

and meant to attract minor children for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

476.   All with Google, each of the Channel Owner Defendants each  individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

477.   Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from minor children through YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

478.   In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from minor children in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

      a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

      b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

      c.    Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

      d.    Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

479.   Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15

U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Cal. Bus. & Prof. Code § 17200, *et seq.*[75]

480.   Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

481.   Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.  Further, C.H. and members of the California class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

482.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Cal. Bus. & Prof. Code § 17200, *et seq.*

483.   C.H. and members of the California class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to C.H. and members of the California class.

484.   As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, C.H. and members of the California class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

485.   As outlined herein, there is tangible value in C.H. and members of the California class's Personal Information. C.H. and members of the California class have lost the opportunity to receive value in exchange for their Personal Information.

---

[75] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

486.    Defendants' monetization of C.H. and members of the California class's Personal Information demonstrates that there is a market for their Personal Information.

487.    C.H. and members of the California Class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

488.    Defendants' retention of C.H. and members of the California class's Personal Information presents a continuing risk to them as well as the general public. C.H. and members of the California class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Cal. Bus. & Prof. Code § 17200, *et seq.* and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

IV.    **Colorado Claims**

**Claim 9**
**COLORADO INTRUSION UPON SECLUSION**
**(Against All Defendants on behalf of Plaintiffs L.J., A.J., N.J., and E.J., and the Colorado Class)**

489.    Plaintiffs L.J., A.J., N.J., and E.J. and members of the Colorado class re-allege the foregoing allegations as if fully set forth herein.

490.    L.J., A.J., N.J., E.J., and members of the Colorado class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

491.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion by improperly accessing L.J., A.J., N.J., E.J., and Colorado class members' Personal Information and using it for improper purposes, including by targeting them with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of L.J., A.J., N.J., E.J., and Colorado class members with such advertisements, as detailed herein.

492.    Defendants' intrusions upon the private affairs, concerns, and seclusion of L.J., A.J., N.J., E.J. and Colorado class members were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

493.    As minor children, L.J., A.J., N.J., E.J., and members of the Colorado class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

494.    Neither L.J., A.J., N.J., E.J., members of the Colorado class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

495.    L.J., A.J., N.J., E.J., and members of the Colorado class suffered actual and concrete injury as a result of Defendants' intrusions upon Plaintiffs' private affairs, concerns, and seclusion.

496.    L.J., A.J., N.J., E.J., and members of the Colorado class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon L.J., A.J., N.J., E.J., and members of the Colorado class's private affairs, concerns, and seclusion.

## Claim 10
### COLORADO UNJUST ENRICHMENT
**(Against All Defendants on behalf of Plaintiffs L.J., A.J., N.J., E.J., and the Colorado Class)**

497.    Plaintiffs L.J., A.J., N.J., E.J., and members of the Colorado class re-allege the foregoing allegations as if fully set forth herein.

498.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of

L.J., A.J., N.J., E.J., and the members of the Colorado class for advertising and commercialization purposes.

499.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon these by L.J., A.J., N.J., E.J., and the members of the Colorado class.

500.    Defendants are each independently liable because they each independently harmed L.J., A.J., N.J., E.J., and members of the Colorado class via the conduct herein described.

501.    As a result of Defendants' conduct, L.J., A.J., N.J., E.J., and members of the Colorado class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

502.    It would be inequitable and unjust to permit any of these Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of L.J., A.J., N.J., E.J., and the members of the Colorado class.

503.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by L.J., A.J., N.J., E.J., and the members of the Colorado class through the improper collection, obtainment, and use of L.J., A.J., N.J., E.J. and Colorado class members' Personal Information and the value thereof.

504.    L.J., A.J., N.J., E.J., and the members of the Colorado class are therefore entitled to recover the amounts realized by each of these Defendants at the expense of L.J., A.J., N.J., E.J., and the members of the Colorado class.

505.    L.J., A.J., N.J., E.J., and members of the Colorado class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

V.    **Florida Claims**

**<u>Claim 11</u>**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA),**
**Fla. Stat. Ann. § 501.201 *et seq*.**
**(Against All Defendants on behalf of Plaintiff B.H. and the Florida Class)**

506.    Plaintiff B.H. and members of the Florida class incorporate the foregoing allegations as if fully set forth herein.

507.    B.H. and members of the Florida class are or were residents of Florida and/or viewed child-directed content in Florida hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

508.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Florida in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Florida.

509.    Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Florida, and there are millions of users, including B.H. and members of the Florida class.

510.    Fla. Stat. Ann. § 501.204(1) provides "[u]nfair methods of competition, unconscionable acts or practices, and unfair … acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

511.    Defendants violated Fla. Stat. Ann. § 501.204 by engaging in the deceptive or unfair acts or practices proscribed by Fla. Stat. Ann. § 501.204 outlined herein.

512.    As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information of B.H. and Florida class members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

513.    As outlined herein, Google intentionally designed YouTube to, among other things, attract minor children by making child-directed content available to them so that Google could collect the Personal Information of those children and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

514.    The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract minor children, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

515.    As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

516.    The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that this content posted to and made available on YouTube was child-directed content.

517.    That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content uploaded to, hosted on, and made viewable on these Defendants' YouTube channels was plainly intended for and meant to attract children under 13 to YouTube for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

518.    Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

519.    Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

520.    In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under

13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c. Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

521. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Fla. Stat. Ann. § 501.201, *et seq.*[76]

522. Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of Fla. Stat. Ann. § 501.204, *et seq.*, which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

523. Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.  Further, B.H. and members of the Florida class could not have reasonably avoided injury

---

[76] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

524.    Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Fla. Stat. Ann. § 501.204, *et seq*.

525.    B.H. and members of the Florida class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to B.H. and members of the Florida class.

526.    As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Fla. Stat. Ann. § 501.204, *et seq*., B.H. and members of the Florida class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information, which allowed Defendants to profit at the expense of B.H. and members of the Florida class.

527.    As outlined herein, there is tangible value in B.H. and members of the Florida class's Personal Information. B.H. and members of the Florida class have lost the opportunity to receive value in exchange for their Personal Information.

528.    Defendants' monetization of B.H. and members of the Florida class's Personal Information demonstrates that there is a market for their Personal Information.

529.    B.H. and members of the Florida class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

530.    Defendants' retention of B.H. and members of the Florida class's Personal Information presents a continuing risk to them as well as the general public. B.H. and members of the Florida class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Fla. Stat. Ann. § 501.204, *et seq*. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and

accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

### Claim 12
### FLORIDA UNJUST ENRICHMENT
**(Against All Defendants on behalf of Plaintiff B.H. and the Florida Class)**

531.    Plaintiff B.H., and members of the Florida class re-allege the foregoing allegations as if fully set forth herein.

532.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of B.H. and the members of the Florida class for advertising and commercialization purposes.

533.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by B.H. and the members of the Florida class.

534.    Defendants are each independently liable because they each independently harmed  B.H. and members of the Florida class via the conduct herein described.

535.    As a result of Defendants' conduct,  B.H. and members of the Florida class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

536.    It would be inequitable and unjust to permit any of the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of B.H. and the members of the Florida class.

537.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by B.H. and the members of the Florida class through the collection, obtainment, and use of B.H. and Florida class members' Personal Information and the value thereof, and Defendants' profiting from the unlawful, unfair, unauthorized, and impermissible use of that Personal Information.

538.    B.H. and the members of the Florida class are therefore entitled to recover the amounts realized by each of these Defendants at the expense of B.H. and the members of the Florida class.

539.    B.H. and members of the Florida Class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## VI.    Illinois Claims

### Claim 13
### ILLINOIS INTRUSION UPON SECLUSION
### (Against All Defendants on behalf of Plaintiffs P.A., J.A., and the Illinois Class)

540.    Plaintiffs P.A., J.A., and members of the Illinois class re-allege the foregoing allegations as if fully set forth herein.

541.    P.A., J.A., and members of the Illinois class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

542.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion of P.A., J.A., and member of the Illinois class by improperly accessing their Personal Information and using it for improper purposes, including by targeting P.A., J.A., and members of the Illinois class with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of P.A., J.A., and members of the Illinois class with such advertisements, as detailed herein.

543.    Defendants' intrusions upon the private affairs, concerns, and seclusion of P.A., J.A., and members of the Illinois class were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

544.     As minor children, P.A., J.A., and members of the Illinois class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

545.     Neither P.A., J.A., members of the Illinois class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

546.     P.A., J.A., and members of the Illinois class suffered actual and concrete injury as a result of Defendants' intrusions upon P.A., J.A., and Illinois class members' private affairs, concerns, and seclusion.

547.     P.A., J.A., and members of the Illinois class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon P.A., J.A., and members of the Illinois class's private affairs, concerns, and seclusion.

### Claim 14
### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT,
### 815 Ill. Comp. Stat. Ann. 505/2 *et seq.*
### (Against All Defendants on behalf of Plaintiffs P.A., J.A., and the Illinois Class)

548.     Plaintiffs P.A., J.A., and members of the Illinois class incorporate the foregoing allegations as if fully set forth herein.

549.     P.A., J.A., and members of the Illinois class are or were residents of Illinois and/or viewed child-directed content in Illinois hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

550.     At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Illinois in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Illinois.

551.     Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Illinois, and there are millions of users, including P.A., J.A., and members of the Illinois Class.

552.    815 Ill. Comp. Stat. Ann. 505/2 provides "[u]nfair methods of competition and unfair … acts or practices … in the conduct of any trade or commerce are hereby declared unlawful … In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

553.    Defendants each violated 815 Ill. Comp. Stat. Ann. 505/2 by engaging in the unfair acts or practices proscribed by 815 Ill. Comp. Stat. Ann. 505/2 outlined herein.

554.    Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

555.    As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from P.A., J.A. and members of the Illinois class, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

556.    As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google  could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

557.    The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

558.    As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

559.   The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that this content posted to and made available on YouTube was child-directed content.

560.   That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content uploaded to, hosted on, and made viewable on those channels was plainly intended for and meant to attract children under 13 to YouTube for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

561.   Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

562.   Each of the Channel Owner Defendants collected—including directing Google to collect - Personal Information from children under 13 through YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

563.   In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

      a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

      b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

c.     Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.     Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

564.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the 815 Ill. Comp. Stat. Ann. 505/2 et seq.[77]

565.    Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of 815 Ill. Comp. Stat. Ann. 505/2 et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

566.    Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, P.A., J.A., and members of the Illinois class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

567.    Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated 815 Ill. Comp. Stat. Ann. 505/2 *et seq*.

568.    P.A., J.A., and members of the Illinois class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to P.A., J.A., and members of the Illinois class.

---

[77] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

569.     As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of 815 Ill. Comp. Stat. Ann. 505/2 et seq., P.A., J.A., and members of the Illinois class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

570.     As outlined herein, there is tangible value in P.A., J.A., and members of the Illinois class's Personal Information.   P.A., J.A., and members of the Illinois class have lost the opportunity to receive value in exchange for their Personal Information.

571.     Defendants' monetization of P.A., J.A., and members of the Illinois class's Personal Information demonstrates that there is a market for their Personal Information.

572.     P.A., J.A., and members of the Illinois class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

573.     Defendants' retention of P.A., J.A., and members of the Illinois class's Personal Information presents a continuing risk to them as well as the general public. P.A., J.A., and members of the Illinois class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by 815 Ill. Comp. Stat. Ann. 505/2 et seq. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

<u>**Claim 15**</u>
**ILLINOIS UNJUST ENRICHMENT**
**(Against All Defendants on behalf of Plaintiffs P.A., J.A., and the Illinois Class)**

574.     Plaintiffs P.A., J.A., and members of the Illinois class re-allege the foregoing allegations as if fully set forth herein.

575.     By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of P.A., J.A., and the members of the Illinois class for advertising and commercialization purposes.

576.     This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by P.A., J.A., and the members of the Illinois class.

577.     Defendants are each independently liable because they each independently harmed P.A., J.A., and members of the Illinois class via the conduct herein described.

578.     As a result of Defendants' conduct, P.A., J.A., and members of the Illinois class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

579.     It would be inequitable and unjust to permit any of the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of P.A., J.A., and the members of the Illinois class.

580.     Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by P.A., J.A., and the members of the Illinois class through the collection, obtainment, and use of P.A., J.A., and Illinois class members' Personal Information and the value thereof.

581.     P.A., J.A., and the members of the Illinois class are therefore entitled to recover the amounts realized by each of the Defendants at the expense of P.A., J.A., and the members of the Illinois class.

582.     P.A., J.A., and members of the Illinois class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

VII.     **Indiana Claims**

**Claim 16**
**INDIANA DECEPTIVE CONSUMER SALES ACT, Ind. Code §§ 24-5-0.5-1, *et seq*.**
**(Against All Defendants on behalf of Plaintiff C.D. and the Indiana Class)**

583.    Plaintiff C.D. and members of the Indiana class incorporate the foregoing allegations as if fully set forth herein.

584.    C.D. and members of the Indiana class are or were residents of Indiana and/or viewed child-directed content in Indiana hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

585.    Ind. Code §§ 24-5-0.5-3 provides "[a] supplier may not commit an unfair … act, omission, or practice in connection with a consumer transaction."

586.    Ind. Code § 24-5-0.5-2(3)(A) defines "supplier" as "[a] seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions, including soliciting a consumer transaction by using a telephone facsimile machine to transmit an unsolicited advertisement. The term includes a manufacturer, wholesaler, or retailer, whether or not the person deals directly with the consumer."

587.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Indiana in that they each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Indiana.

588.    Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Indiana, and there are millions of users, including C.D. and members of the Indiana class.

589.    Defendants are each "suppliers" as defined by Ind. Code § 24-5-0.5-2(3)(A).

590.    Defendants each violated Ind. Code §§ 24-5-0.5-1, *et seq.* by engaging in the unfair acts or practices proscribed by Ind. Code §§ 24-5-0.5-1, *et seq.* outlined herein.

591.    Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

592.    As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants

to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from C.D. and members of the Indiana class, and tracking, profiling, and targeting of those children for lucrative behavioral advertising.

593.     As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen to the platform by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

594.     The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

595.     As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

596.     The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that each of the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

597.     That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content each Channel Owner Defendant uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

598.     Along with Google, each of the Channel Owner Defendants are each individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

599. Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

600. In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others,  systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

    a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

    b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

    c. Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

    d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

601. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning

of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Ind. Code §§ 24-5-0.5-1, *et seq*.[78]

602.     Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of Ind. Code §§ 24-5-0.5-1, *et seq.*, which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

603.     Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.  Further, C.D. and members of the Indiana class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

604.     Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Ind. Code §§ 24-5-0.5-1, *et seq*.

605.     C.D. and members of the Indiana class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to C.D. and members of the Indiana class.

606.     As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Ind. Code §§ 24-5-0.5-1, *et seq.*, C.D. and members of the Indiana class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

607.     As outlined herein, there is tangible value in C.D. and members of the Indiana class's Personal Information. C.D. and members of the Indiana class have lost the opportunity to receive value in exchange for their Personal Information.

---

[78] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

608.    Defendants' monetization of C.D. and members of the Indiana class's Personal Information demonstrates that there is a market for their Personal Information, but that Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

609.    Defendants' retention of C.D. and members of the Indiana class's Personal Information presents a continuing risk to them as well as the general public. C.D. and members of the Indiana class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Ind. Code §§ 24-5-0.5-1, *et seq.* and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Claim 17
## INDIANA UNJUST ENRICHMENT
### (Against All Defendants on behalf of Plaintiff C.D. and the Indiana Class)

610.   Plaintiff C.D., and members of the Indiana class re-allege the foregoing allegations as if fully set forth herein.

611.   By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of C.D. and the members of the Indiana class for advertising and commercialization purposes.

612.   This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by C.D. and the members of the Indiana class.

613.   Defendants are each independently liable because Defendants each independently harmed C.D. and members of the Indiana class via the conduct herein described.

614.   As a result of Defendants' conduct, C.D. and members of the Indiana class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

615.   It would be inequitable and unjust to permit the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of C.D. and the members of the Indiana class.

616.   Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by C.D. and the members of the Indiana class through the collection, obtainment, and use of C.D. and Indiana class members' Personal Information and the value thereof, and Defendants' profiting from the unlawful, unfair, unauthorized, and impermissible use of the Personal Information of C.D. and the members of the Indiana class.

617.   C.D. and the members of the Indiana class are therefore entitled to recover the amounts realized by each of the Defendants at the expense of C.D. and the members of the Indiana class.

618.    C.D. and members of the Indiana class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' gains, and/or other sums as may be just and equitable.

**VIII.   Kansas Claims**

**Claim 18**
**KANSAS INTRUSION UPON SECLUSION**
**(Against All Defendants on behalf of Plaintiffs S.H., D.M., and the Kansas Class)**

619.    Plaintiffs S.H., D.M., and members of the Kansas class re-allege the foregoing allegations as if fully set forth herein.

620.    S.H., D.M., and members of the Kansas class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

621.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion of S.H., D.M., and members of the Kansas class by improperly accessing their Personal Information and using it for improper purposes, including by targeting S.H., D.M., and members of the Kansas class with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of S.H., D.M., and members of the Kansas class with such advertisements, as detailed herein.

622.    Defendants' intrusions upon the private affairs, concerns, and seclusion of S.H., D.M., and members of the Kansas class were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

623.     As children aged thirteen or younger, S.H., D.M., and members of the Kansas class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

624.     Neither S.H., D.M., members of the Kansas class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

625.     S.H., D.M., and members of the Kansas class suffered actual and concrete injury as a result of Defendants' intrusions upon S.H., D.M., and members of the Kansas class's private affairs, concerns, and seclusion.

626.     S.H., D.M., and members of the Kansas class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon S.H., D.M., and members of the Kansas class's private affairs, concerns, and seclusion.

<u>Claim 19</u>
**KANSAS UNJUST ENRICHMENT**
**(Against All Defendants on behalf of Plaintiffs S.H., D.M., and the Kansas Class)**

627.     Plaintiffs S.H., D.M., and members of the Kansas class re-allege the foregoing allegations as if fully set forth herein.

628.     By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of S.H., D.M., and the members of the Kansas class for advertising and commercialization purposes.

629.     This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by S.H., D.M., and the members of the Kansas class.

630.     Defendants are each independently liable because Defendants each independently harmed S.H., D.M., and members of the Kansas class via the conduct herein described.

631.   As a result of Defendants' conduct, S.H., D.M., and members of the Kansas class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

632.   It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of S.H., D.M., and the members of the Kansas class.

633.   Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by S.H., D.M., and the members of the Kansas class through the collection, obtainment, and use of S.H., D.M., and Kansas class members' Personal Information and the value thereof, and Defendants' profiting from the unlawful, unfair, unauthorized, and impermissible use of that Personal Information.

634.   S.H., D.M., and the members of the Kansas class are therefore entitled to recover the amounts realized by Defendants at the expense of S.H., D.M., and members of the Kansas class.

635.   S.H., D.M., and members of the Kansas class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

IX.   **Massachusetts Claims**

**Claim 20**
**MASSACHUSETTS CONSUMER PROTECTION ACT,**
**Mass. Gen. Laws Ann. Ch. 93A, § 1, *et seq.***
**(Against All Defendants on behalf of Plaintiff A.G. and the Massachusetts Class)**

636.   Plaintiff A.G. and members of the Massachusetts class incorporate the foregoing allegations as if fully set forth herein.

637.   A.G. and members of the Massachusetts class are or were residents of Massachusetts and/or viewed child-directed content in Massachusetts hosted by Defendant Google and created by each of the Channel Owner Defendants.

638.   A.G., members of the Massachusetts class, and each of the Defendants are "persons" as meant by Mass. Gen. Laws. Ann. Ch. 93A, § 1(a).

639.    Each of the Defendants operate in "trade or commerce" as meant by Mass. Gen. Laws Ann. ch. 93A, § 1.

640.    Each of the Defendants advertised, offered, or sold goods or services in Massachusetts and/or engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1(b).

641.    Mass. Gen. Laws Ann. Ch. 93A, § 2(a) provides "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

642.    Mass. Gen. Laws Ann. Ch. 93A, § 2(b) provides "[i]t is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."

643.    At all times mentioned herein, each of the Defendants engaged in "trade" or "commerce" in Massachusetts in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Massachusetts.

644.    Each of the Defendants engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Massachusetts, and there are millions of users, including A.G. and members of the Massachusetts class.

645.    Defendants each violated Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.* by engaging in the unfair and/or unlawful acts or practices proscribed by Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.* outlined herein.

646.    Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

647.    As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times

had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from A.G. and Massachusetts class members created by the Channel Owner Defendants on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

648.    As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

649.    The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

650.    As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

651.    The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

652.    That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content each of the Channel Owner Defendants uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

653.    Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

654. Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by the each of the Channel Owner Defendants, which were directed to children under 13.

655. In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

   a.   Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

   b.   Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

   c.   Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

   d.   Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

656. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning

of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.*.[79]

657.   Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.*, which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

658.   Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, A.G. and members of the Massachusetts class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

659.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.*

660.   A.G. and members of the Massachusetts class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to A.G. and members of the Massachusetts Class.

661.   As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq.*, A.G. and members of the Massachusetts class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

662.   As outlined herein, there is tangible value in A.G. and members of the Massachusetts class's Personal Information. A.G. and members of the Massachusetts Class have lost the opportunity to receive value in exchange for their Personal Information.

---

[79] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

663.    Defendants' monetization of A.G. and members of the Massachusetts class's Personal Information demonstrates that there is a market for their Personal Information.

664.    A.G. and members of the Massachusetts class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

665.    Defendants' retention of A.G. and members of the Massachusetts class's Personal Information presents a continuing risk to them as well as the general public. A.G. and members of the Massachusetts class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Mass. Gen. Laws Ann. ch. 93A, § 1, *et seq*. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

### Claim 21
### MASSACHUSETTS UNJUST ENRICHMENT
### (Against All Defendants on behalf of Plaintiff A.G. and the Massachusetts Class)

666.    Plaintiff A.G., and members of the Massachusetts class re-allege the foregoing allegations as if fully set forth herein.

667.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of A.G. and the members of the Massachusetts class for advertising and commercialization purposes.

668.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by A.G. and the members of the Massachusetts class.

669.    Defendants are each independently liable because Defendants each independently harmed A.G. and members of the Massachusetts class via the conduct herein described.

670.    As a result of Defendants' conduct, A.G. and members of the Massachusetts class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

671.    It would be inequitable and unjust to permit any of the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of A.G. and the members of the Massachusetts class.

672.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by A.G. and the members of the Massachusetts class through the collection, obtainment, and use of A.G. and Massachusetts class members' Personal Information and the value thereof.

673.    A.G. and the members of the Massachusetts class are therefore entitled to recover the amounts realized by Defendants at the expense of A.G. and the members of the Massachusetts class.

674.    A.G. and members of the Massachusetts class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

X.    **Michigan Claims**

<u>**Claim 22**</u>
**MICHIGAN CONSUMER PROTECTION ACT,**
**Mich. Comp. Laws. Ann. § 445.903, *et seq*.**
**(Against All Defendants on behalf of Plaintiff G.W. and the Michigan Class)**

675.    Plaintiff G.W. and the Michigan class incorporate the foregoing allegations as if fully set forth herein.

676.    G.W. and members of the Michigan class are or were residents of Michigan and/or viewed child-directed content in Michigan hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

677.    Mich. Comp. Laws Ann. § 445.903 provides that "[u]nfair [and] unconscionable … methods, acts, or practices in the conduct of trade or commerce are unlawful[.]"

678.   At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Michigan in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Michigan.

679.   Defendants violated Mich. Comp. Laws Ann. § 445.903 by engaging in the deceptive or unfair acts or practices proscribed by Mich. Comp. Laws Ann. § 445.903 as outlined herein.

680.   Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Michigan, and there are millions of users, including A.G. and members of the Michigan class.

681.   Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

682.   As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from G.W. and members of the Michigan class created by the Channel Owner Defendants on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

683.   As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen to the platform by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

684.   The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

685.   As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

686.   The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that         the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

687.   That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content the Channel Owner Defendants uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

688.   Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

689.   Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

690.   In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

      a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

      b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and

1   all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16

2   C.F.R. § 312.4(b)-(c);

3       c.   Failing to obtain verifiable parental consent before any collection or use of

4   Personal Information from children under 13, in violation of Section 312.5 of

5   COPPA, 16 C.F.R. § 312.5; and

6       d.   Failing to establish and maintain reasonable procedures to protect the

7   confidentiality, security, and integrity of Personal Information collected from

8   children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

9   691.   Violations of COPPA and the accompanying FTC regulations "shall be treated as a

10  violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15

11  U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning

12  of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several

13  states, including the Mich. Comp. Laws. Ann. § 445.903, *et seq*.[80]

14  692.   Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or

15  practices in violation of Mich. Comp. Laws. Ann. § 445.903, *et seq*., which is modeled after, proscribes

16  the same conduct as, and gives deference to the definitions of the FTC Act.

17  693.   Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and

18  substantially injurious to consumers, and there are no greater countervailing benefits to consumers or

19  competition.  Further, G.W. and members of the Michigan class could not have reasonably avoided injury

20  because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity

21  of consumers—in this case children under 13—to their detriment.

22  694.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew

23  or recklessly disregarded the fact that they violated Mich. Comp. Laws. Ann. § 445.903, *et seq*.

---

[80] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

695.    G.W. and members of the Michigan class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to G.W. and members of the Michigan class.

696.    As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Mich. Comp. Laws. Ann. § 445.903, *et seq.*, G.W. and members of the Michigan class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

697.    As outlined herein, there is tangible value in G.W. and members of the Michigan class's Personal Information. G.W. and members of the Michigan class have lost the opportunity to receive value in exchange for their Personal Information.

698.    Defendants' monetization of G.W. and members of the Michigan class's Personal Information demonstrates that there is a market for their Personal Information.

699.    G.W. and members of the Michigan class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

700.    Defendants' retention of G.W. and members of the Michigan class's Personal Information presents a continuing risk to them as well as the general public. G.W. and members of the Michigan class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Mich. Comp. Laws. Ann. § 445.903, *et seq*. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Claim 23**
**MICHIGAN UNJUST ENRICHMENT**
**(Against All Defendants on behalf of Plaintiff G.W. and the Michigan Class)**

701.    Plaintiff G.W., and members of the Michigan class re-allege the foregoing allegations as if fully set forth herein.

702.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of G.W. and the members of the Michigan class for advertising and commercialization purposes.

703.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by G.W. and the members of the Michigan class.

704.    Defendants are each independently liable because Defendants each independently harmed G.W. and members of the Michigan class via the conduct herein described.

705.    As a result of Defendants' conduct, G.W. and members of the Michigan class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

706.    It would be inequitable and unjust to permit any of the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of G.W. and the members of the Michigan class.

707.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by G.W. and the members of the Michigan class through the collection, obtainment, and use of G.W. and Michigan class members' Personal Information and the value thereof.

708.    G.W. and the members of the Michigan class are therefore entitled to recover the amounts realized by Defendants at the expense of G.W. and the members of the Michigan class.

709.    G.W. and members of the Michigan class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**XI.     Mississippi Claims**

**Claim 24**
**MISSISSIPPI CONSUMER PROTECTION ACT**,
**Miss. Code. Ann. § 75-24-5, *et seq.***
**(Against All Defendants on behalf of Plaintiff A.A. and the Mississippi Class)**

710.    Plaintiff A.A. and members of the Mississippi class incorporate the foregoing allegations as if fully set forth herein.

711.    A.A. and members of the Mississippi class are or were residents of Mississippi and/or viewed child-directed content in Mississippi hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

712.    Miss. Code. Ann. § 75-24-5(1) provides "[u]nfair methods of competition affecting commerce and unfair … trade practices in or affecting commerce are prohibited."

713.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Mississippi in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Mississippi.

714.    Defendants each violated Miss. Code. Ann. § 75-24-5 by engaging in the unfair acts or practices proscribed by Miss. Code. Ann. § 75-24-5 outlined herein.

715.    Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Mississippi, and there are millions of users, including A.A. and members of the Mississippi class.

716.    Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

717.    As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from A.A. and members of the Mississippi class created by the Channel Owner Defendants

on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

718.     As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

719.     The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

720.     As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

721.     The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

722.     That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content the Channel Owner Defendants uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

723.     Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

724.     Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

725.    In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);\

c.    Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.    Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

726.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Miss. Code. Ann. § 75-24-5, *et seq*.[81]

---

[81] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

727.     Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of Miss. Code. Ann. § 75-24-5, *et seq*., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

728.     Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.  Further, A.A. and members of the Mississippi class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

729.     Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Miss. Code. Ann. § 75-24-5, *et seq*.

730.     A.A. and members of the Mississippi class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to A.A. and members of the Mississippi class.

731.     As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Miss. Code. Ann. § 75-24-5, et seq., A.A. and members of the Mississippi class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

732.     As outlined herein, there is tangible value in A.A. and members of the Mississippi class's Personal Information. A.A. and members of the Mississippi class have lost the opportunity to receive value in exchange for their Personal Information.

733.     Defendants' monetization of A.A. and members of the Mississippi class's Personal Information demonstrates that there is a market for their Personal Information.

734.     A.A. and members of the Mississippi class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

735.     Defendants' retention of A.A. and members of the Mississippi class's Personal Information presents a continuing risk to them as well as the general public. A.A. and members of the

Mississippi class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Miss. Code. Ann. § 75-24-5, *et seq*. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

**Claim 25**
**MISSISSIPPI UNJUST ENRICHMENT**
**(Against All Defendants on behalf of Plaintiff A.A. and the Mississippi Class)**

736.    Plaintiff A.A., and members of the Mississippi class re-allege the foregoing allegations as if fully set forth herein.

737.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of A.A. and the members of the Mississippi class for advertising and commercialization purposes.

738.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by A.A. and the members of the Mississippi class.

739.    Defendants are each independently liable because Defendants each independently harmed A.A. and members of the Mississippi class via the conduct herein described.

740.    As a result of Defendants' conduct, A.A. and members of the Mississippi class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

741.    It would be inequitable and unjust to permit the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of A.A. and the members of the Mississippi class.

742.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by A.A. and the members of the Mississippi class through the collection, obtainment, and use of A.A. and Mississippi class members' Personal Information and the value thereof.

743.    A.A. and the members of the Mississippi class are therefore entitled to recover the amounts realized by Defendants at the expense of A.A. and the members of the Mississippi class.

744.    A.A. and members of the Mississippi class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## XII.    Missouri Claims

### Claim 26
### MISSOURI INTRUSION UPON SECLUSION
### (Against All Defendants on behalf of J.C., E.M., and the Missouri Class)

745.    Plaintiffs J.C., E.M., and members of the Missouri class re-allege the foregoing allegations as if fully set forth herein.

746.    Plaintiffs J.C., E.M., and members of the Missouri class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

747.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion of J.C., E.M., and members of the Missouri class  by improperly accessing J.C., E.M., and members of the Missouri class's  Personal Information and using it for improper purposes, including by targeting J.C., E.M., and members of the Missouri class with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of J.C., E.M., and members of the Missouri class with such advertisements, as detailed herein.

748.    Defendants' intrusions upon the private affairs, concerns, and seclusion of J.C., E.M., and members of the Missouri class were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes

and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

749.    As children aged thirteen or younger, J.C., E.M., and members of the Missouri class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

750.    Neither J.C., E.M., members of the Missouri class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

751.    J.C., E.M., and members of the Missouri class suffered actual and concrete injury as a result of Defendants' intrusions upon J.C., E.M., and members of the Missouri class's private affairs, concerns, and seclusion.

752.    J.C., E.M., and members of the Missouri class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon J.C., E.M., and members of the Missouri class's private affairs, concerns, and seclusion.

### Claim 27
### MISSOURI MERCHANDISING PRACTICES ACT,
#### Mo. Ann. Stat.§ 407.020, *et seq*.
#### (Against All Defendants on behalf of Plaintiffs J.C., E.M., and the Missouri Class)

753.    Plaintiffs J.C., E.M., and members of the Missouri class incorporate the foregoing allegations as if fully set forth herein.

754.    J.C., E.M., and members of the Missouri class are or were residents of Missouri and/or viewed child-directed content in Missouri hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

755.    Mo. Ann. Stat. § 407.020 1 provides "[t]he act, use or employment by any person of any … unfair practice … in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice."

756.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Missouri in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Missouri.

757.    Defendants violated Mo. Ann. Stat. § 407.020 by engaging in the unfair acts or practices proscribed by Mo. Ann. Stat. § 407.020 outlined herein.

758.    Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Missouri, and there are millions of users, including J.C., E.M., and members of the Missouri class.

759.    Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

760.    As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from J.C., E.M., and members of the Missouri class created by the Channel Owner Defendants on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

761.    As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

762.    The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

763.     As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

764.     The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

765.     That is, each of the Channel Owner Defendants YouTube channels and the child-directed content the Channel Owner Defendants uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

766.     Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

767.     Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

768.     In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

        a.     Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

        b.     Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and

all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.    Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.    Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

769.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Mo. Ann. Stat.§ 407.020, *et seq*.[82]

770.    Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of Mo. Ann. Stat.§ 407.020, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

771.    Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.  Further, J.C., E.M., and members of the Missouri class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

772.    Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Mo. Ann. Stat.§ 407.020, et seq.

---

[82] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

773.    J.C., E.M., and members of the Missouri class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to J.C., E.M., and members of the Missouri class.

774.    As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Mo. Ann. Stat.§ 407.020, et seq., J.C., E.M., and members of the Missouri class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

775.    As outlined herein, there is tangible value in J.C., E.M., and members of the Missouri class's Personal Information. J.C., E.M., and members of the Missouri class have lost the opportunity to receive value in exchange for their Personal Information.

776.    Defendants' monetization of J.C., E.M., and members of the Missouri class's Personal Information demonstrates that there is a market for their Personal Information.

777.    J.C., E.M., and members of the Missouri class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

778.    Defendants' retention of J.C., E.M., and members of the Missouri class's Personal Information presents a continuing risk to them as well as the general public. J.C., E.M., and members of the Missouri class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Mo. Ann. Stat.§ 407.020, *et seq*. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

**Claim 28**
**MISSOURI UNJUST ENRICHMENT**
**(Against All Defendants on behalf of Plaintiffs J.C., E.M., and the Missouri Class)**

779.   Plaintiffs J.C., E.M., and members of the Missouri class re-allege the foregoing allegations as if fully set forth herein.

780.   By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of J.C., E.M., and the members of the Missouri class for advertising and commercialization purposes.

781.   This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by J.C., E.M., and the members of the Missouri class.

782.   Defendants are each independently liable because Defendants each independently harmed Plaintiffs J.C., E.M., and members of the Missouri Class via the conduct herein described.

783.   As a result of Defendants' conduct, J.C., E.M., and members of the Missouri class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

784.   It would be inequitable and unjust to permit the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of J.C., E.M., and the members of the Missouri class.

785.   Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by J.C., E.M., and the members of the Missouri class through the collection, obtainment, and use of J.C., E.M., and Missouri class members' Personal Information and the value thereof.

786.   J.C., E.M., and the members of the Missouri class are therefore entitled to recover the amounts realized by Defendants at the expense of J.C., E.M., and the Missouri class members.

787.    J.C., E.M., and members of the Missouri class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

**XIII.   New Hampshire Claims**

**Claim 29**
**NEW HAMPSHIRE INTRUSION UPON SECLUSION**
**(Against All Defendants on behalf of Plaintiffs L.D., D.D., A.D., and the New Hampshire Class)**

788.    Plaintiffs L.D., D.D., A.D., and members of the New Hampshire class re-allege the foregoing allegations as if fully set forth herein.

789.    L.D.'s, D.D.'s, A.D.'s, and members of the New Hampshire class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

790.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion of L.D., D.D., A.D., and members of the New Hampshire class by improperly accessing L.D., D.D., A.D., and members of the New Hampshire class's Personal Information and using it for improper purposes, including by targeting L.D., D.D., A.D., and members of the New Hampshire class with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of L.D., D.D., A.D., and members of the New Hampshire class with such advertisements, as detailed herein.

791.    Defendants' intrusions upon the private affairs, concerns, and seclusion of L.D., D.D., A.D., and members of the New Hampshire class were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

792.   As children aged thirteen or younger, L.D., D.D., A.D., and members of the New Hampshire class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

793.   Neither L.D., D.D., A.D., members of the New Hampshire class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

794.   L.D., D.D., A.D., and members of the New Hampshire class suffered actual and concrete injury as a result of Defendants' intrusions upon L.D., D.D., A.D., and members of the New Hampshire class's private affairs, concerns, and seclusion.

795.   L.D., D.D., A.D., and members of the New Hampshire Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon L.D., D.D., A.D., and members of the New Hampshire class's private affairs, concerns, and seclusion.

## Claim 30
### NEW HAMPSHIRE CONSUMER PROTECTION ACT,
### N.H. Rev. Stat. Ann. § 358-A:2, *et seq*.
**(Against All Defendants on behalf of Plaintiffs L.D., D.D., A.D., and the New Hampshire Class)**

796.   Plaintiffs L.D., D.D., A.D., and members of the New Hampshire class incorporate the foregoing allegations as if fully set forth herein.

797.   L.D., D.D., A.D., and members of the New Hampshire class are or were residents of New Hampshire and/or viewed child-directed content in New Hampshire hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

798.   N.H. Rev. Stat. Ann. § 358-A:2 provides "[i]t shall be unlawful for any person to use any unfair method of competition or any unfair … act or practice in the conduct of any trade or commerce within this state."

799.   At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in New Hampshire in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in New Hampshire.

800.   Defendants violated N.H. Rev. Stat. Ann. § 358-A:2 by engaging in the unfair acts or practices proscribed by N.H. Rev. Stat. Ann. § 358-A:2 outlined herein.

801.   Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in New Hampshire, and there are millions of users, including L.D., D.D., A.D., and members of the New Hampshire class.

802.   Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

803.   As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from L.D., D.D., A.D., and members of the New Hampshire class created by the Channel Owner Defendants on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

804.   As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

805.   The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

806.   As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

807.    The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

808.    That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content the Channel Owner Defendants uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

809.    Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

810.    Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by each of the Channel Owner Defendants, which were directed to children under 13.

811.    In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

    a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

    b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.      Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.      Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

812.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the N.H. Rev. Stat. Ann. § 358-A:2, et seq.[83]

813.    Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of N.H. Rev. Stat. Ann. § 358-A:2, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

814.    Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition. Further, L.D., D.D., A.D., and members of the New Hampshire class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment..

815.    As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of N.H. Rev. Stat. Ann. § 358-A:2, et seq., L.D., D.D., A.D., and members of the New Hampshire class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

---

[83] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

816.    As outlined herein, there is tangible value in L.D., D.D., A.D., and members of the New Hampshire class's Personal Information. L.D., D.D., A.D., and members of the New Hampshire class have lost the opportunity to receive value in exchange for their Personal Information.

817.    Defendants' monetization of L.D., D.D., A.D., and members of the New Hampshire class's Personal Information demonstrates that there is a market for their Personal Information.

818.    L.D., D.D., A.D., and members of the New Hampshire class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

819.    Defendants' retention of L.D., D.D., A.D., and members of the New Hampshire class's Personal Information presents a continuing risk to them as well as the general public. L.D., D.D., A.D., and members of the New Hampshire class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by N.H. Rev. Stat. Ann. § 358-A:2, et seq. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

### Claim 31
### NEW HAMPSHIRE UNJUST ENRICHMENT
**(Against All Defendants on behalf of Plaintiffs L.D., D.D., A.D., and the New Hampshire Class)**

820.    Plaintiffs L.D., D.D., A.D., and members of the New Hampshire class re-allege the foregoing allegations as if fully set forth herein.

821.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of L.D., D.D., A.D., and the members of the New Hampshire class for advertising and commercialization purposes.

822.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by L.D., D.D., A.D., and the members of the New Hampshire class.

823.    Defendants are each independently liable because Defendants each independently harmed L.D., D.D., A.D., and members of the New Hampshire class via the conduct herein described.

824.    As a result of Defendants' conduct, L.D., D.D., A.D., and members of the New Hampshire class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

825.    It would be inequitable and unjust to permit the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of L.D., D.D., A.D., and the members of the New Hampshire class.

826.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by L.D., D.D., A.D., and the members of the New Hampshire class through the collection, obtainment, and use of L.D., D.D., A.D., and New Hampshire class members' Personal Information and the value thereof.

827.    L.D., D.D., A.D., and the members of the New Hampshire class are therefore entitled to recover the amounts realized by Defendants at the expense of L.D., D.D., A.D. and the members of the New Hampshire class.

828.    L.D., D.D., A.D., and members of the New Hampshire class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

**XIV.   New Jersey Claims**

### **Claim 32**
**NEW JERSEY INTRUSION UPON SECLUSION**
**(Against All Defendants on behalf of Plaintiffs J.R.E., J.A.E., and the New Jersey Class)**

829.    Plaintiffs J.R.E., J.A.E., and members of the New Jersey class re-allege the foregoing allegations as if fully set forth herein.

830.    Plaintiffs J.R.E., J.A.E., and members of the New Jersey class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

831.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion of J.R.E., J.A.E., and members of the New Jersey class by improperly accessing J.R.E., J.A.E., and members of the New Jersey class's Personal Information and using it for improper purposes, including by targeting J.R.E., J.A.E., and members of the New Jersey class with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of J.R.E., J.A.E., and members of the New Jersey class with such advertisements, as detailed herein.

832.    Defendants' intrusions upon the private affairs, concerns, and seclusion of J.R.E., J.A.E., and members of the New Jersey class were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

833.    As children aged thirteen or younger, J.R.E., J.A.E., and members of the New Jersey class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

834.    Neither J.R.E., J.A.E., members of the New Jersey class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

835.    J.R.E., J.A.E., and members of the New Jersey class suffered actual and concrete injury as a result of Defendants' intrusions upon J.R.E., J.A.E., and members of the New Jersey class's private affairs, concerns, and seclusion.

836.    J.R.E., J.A.E., and members of the New Jersey class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate J.R.E., J.A.E., and members of the

New Jersey class for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasion of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon J.R.E.'s, J.A.E.'s, and members of the New Jersey class's private affairs, concerns, and seclusion.

<u>Claim 33</u>
**NEW JERSEY CONSUMER FRAUD ACT,**
**N.J. Stat. Ann. § 56:8-1, *et. seq.* (NJCFA)**
**(Against All Defendants on Behalf of Plaintiffs J.A.E., J.R.E., and the New Jersey Class)**

837.    Plaintiffs J.A.E. and J.R.E. and members of the New Jersey Class re-allege the foregoing allegations as if fully set forth herein.

838.    Defendants are persons within the meaning of N.J. Stat. Ann. § 56:8-1(d).

839.    The New Jersey Consumer Fraud Act ("NJCFA") prohibits any "act, use or employment by any person of any unconscionable commercial practice … in connection with the sale or advertisement of any merchandise." See N.J. Stat. § 56:8-2.

840.    YouTube and the each of the Channel Owner Defendants' YouTube channels, and the advertisement placed on each of the Channel Owner Defendants' channels by Google constitute "merchandise" pursuant to § 56:8-1(c), because they constitute commodities or services offered directly or indirectly to the public for sale.

841.    Defendants offered YouTube content for "sale" to  J.A.E. and J.R.E. and members of the New Jersey Class within the meaning of N.J. Stat. Ann. § 56:8-1(e) because they attempted directly or indirectly to sell advertised products or services to YouTube viewers.

842.    Defendants willfully and purposefully engaged in unconscionable and unfair acts and practices in connection with the sale of the merchandise as defined by N.J. Stat. § 56:8-1(c) in violation of N.J. Stat. § 56:8-2 as described herein.

843.    Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

844.    As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times

had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from J.A.E. and J.R.E. and members of the New Jersey Class created by each of the Channel Owner Defendants on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

845.    As outlined herein, Google intentionally designed the YouTube Platform to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

846.    The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

847.    As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

848.    The inherent characteristics, content, and features of each of the Channel Owner Defendants YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

849.    That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content the Channel Owner Defendants uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 to the YouTube for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

850.    Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

851.    Each of the Channel Owned Defendants collected—including directing Google to collect— Personal Information from children under 13 through the YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

852.    In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by *inter alia*:

   a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

   b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

   c.    Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

   d.    Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

853.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning

of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the NJCFA.[84]

854.   Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of NJCFA., which is modeled after, proscribes the same conduct as, and/or gives deference to the definitions of the FTC Act.

855.   Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.  Further, J.A.E., J.R.E., and members of the New Jersey class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

856.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated the NJCFA.

857.   J.A.E., J.R.E., and members of the New Jersey class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to J.A.E., J.R.E., and members of the New Jersey class.

858.   As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of NJCFA, J.A.E., J.R.E., and members of the New Jersey class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, *inter alia*, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

859.   As outlined herein, there is tangible value in J.A.E., J.R.E., and members of the New Jersey class's Personal Information. J.A.E., J.R.E., and members of the New Jersey class have lost the opportunity to receive value in exchange for their Personal Information.

860.   Defendants' monetization of J.A.E., J.R.E., and members of the New Jersey class's Personal Information demonstrates that there is a market for their Personal Information.

---

[84] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

861.    J.A.E., J.R.E., and New Jersey class members' Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

862.    Defendants' retention of J.A.E., J.R.E., and members of the New Jersey class's Personal Information presents a continuing risk to them as well as the general public. J.A.E., J.R.E., and members of the New Jersey class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by NJCFA. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

### Claim 34
### NEW JERSEY UNJUST ENRICHMENT
**(Against All Defendants on behalf of Plaintiffs J.R.E., J.A.E., and the New Jersey Class)**

863.    Plaintiffs J.R.E., J.A.E., and members of the New Jersey class re-allege the foregoing allegations as if fully set forth herein.

864.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of J.R.E., J.A.E., and the members of the New Jersey class for advertising and commercialization purposes.

865.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by J.R.E., J.A.E., and the members of the New Jersey class.

866.    Defendants are each independently liable because Defendants each independently harmed J.R.E., J.A.E., and members of the New Jersey class via the conduct herein described.

867.    As a result of Defendants' conduct, J.R.E., J.A.E., and members of the New Jersey class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

868.    It would be inequitable and unjust to permit the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of J.R.E., J.A.E., and the members of the New Jersey class.

869.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by J.R.E., J.A.E., and the members of the New Jersey class through the collection, obtainment, and use of J.R.E., J.A.E., and New Jersey class members' Personal Information and the value thereof.

870.    J.R.E., J.A.E., and the members of the New Jersey class are therefore entitled to recover the amounts realized by Defendants at the expense of J.A.E. and J.R.E. and members of the New Jersey Class.

871.    J.R.E., J.A.E., and members of the New Jersey class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## XV.   New York Claims

### Claim 35
### NEW YORK UNJUST ENRICHMENT
**(Against Defendants Cartoon Network, ChuChuTV, DreamWorks, Hasbro, Mattel, PocketWatch, and Remka)**

872.    Plaintiff M.G. and members of the New York class re-allege the foregoing allegations as if fully set forth herein.

873.    By virtue of the unlawful and unfair conduct alleged herein, Channel Owner Defendants each knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of M.G. and the members of the New York class for advertising and commercialization purposes.

874.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Channel Owner Defendants by M.G. and the members of the New York class.

875.   Channel Owner Defendants are each independently liable because Channel Owner Defendants each independently harmed M.G. and members of the New York class via the conduct herein described.

876.   As a result of Channel Owner Defendants' conduct, M.G. and members of the New York class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

877.   It would be inequitable and unjust to permit Channel Owner Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of M.G. and the members of the New York class.

878.   Channel Owner Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by M.G. and the members of the New York class through the collection, obtainment, and use of M.G. and New York class members' Personal Information and the value thereof.

879.   M.G. and the members of the New York class are therefore entitled to recover the amounts realized by Channel Owner Defendants at the expense of M.G. and members of the New York class.

880.   M.G. and members of the New York class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Channel Owner Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## XVI.   Oklahoma Claims

### Claim 36
### OKLAHOMA INTRUSION UPON SECLUSION
### (Against All Defendants on behalf of Plaintiff J.G. and the Oklahoma Class)

881.   Plaintiff J.G. and members of the Oklahoma class re-allege the foregoing allegations as if fully set forth herein.

882.   J.G. and members of the Oklahoma class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

883.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and seclusion of J.G. and Oklahoma class members by improperly accessing their Personal Information and using it for improper purposes, including by targeting J.G. and members of the Oklahoma class with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of J.G. and members of the Oklahoma class with such advertisements, as detailed herein.

884.    Defendants' intrusions upon the private affairs, concerns, and seclusion of J.G. and members of the Oklahoma class were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

885.    As children aged thirteen or younger, J.G. and members of the Oklahoma class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

886.    Neither J.G., members of the Oklahoma class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

887.    J.G. and members of the Oklahoma class suffered actual and concrete injury as a result of Defendants' intrusions upon J.G. and Oklahoma class members' private affairs, concerns, and seclusion.

888.    J.G. and members of the Oklahoma class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon J.G. and members of the Oklahoma class's private affairs, concerns, and seclusion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Claim 37**
**OKLAHOMA UNJUST ENRICHMENT**
**(Against All Defendants on behalf of Plaintiff J.G. and the Oklahoma Class)**

889.   Plaintiff J.G., and members of the Oklahoma class re-allege the foregoing allegations as if fully set forth herein.

890.   By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of J.G. and the members of the Oklahoma class for advertising and commercialization purposes.

891.   This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by J.G. and the members of the Oklahoma class.

892.   Defendants are each independently liable because Defendants each independently harmed J.G. and members of the Oklahoma class via the conduct herein described.

893.   As a result of Defendants' conduct, J.G. and members of the Oklahoma class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

894.   It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of J.G. and the members of the Oklahoma class.

895.   Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by J.G. and the members of the Oklahoma class through the collection, obtainment, and use of J.G. and Oklahoma class members' Personal Information and the value thereof.

896.   J.G. and the members of the Oklahoma class are therefore entitled to recover the amounts realized by Defendants at the expense of J.G. and members of the Oklahoma class.

897.   J.G. and members of the Oklahoma class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

1   **XVII.  Pennsylvania Claims**

2                                   **Claim 38**
3                   **PENNSYLVANIA INTRUSION UPON SECLUSION**
    **(Against All Defendants on behalf of Plaintiffs E.W., A.W., and the Pennsylvania Class)**
4

5       898.    Plaintiffs E.W., A.W., and members of the Pennsylvania class re-allege the foregoing

6   allegations as if fully set forth herein.

7       899.    E.W., A.W., and members of the Pennsylvania class's private affairs, concerns, and

8   seclusion includes their interest in their Personal Information as defined by COPPA, which includes data

9   points concerning their location and online activity while using internet-connected devices.

10      900.    Defendants each and in concert, through aid or assistance, or pursuant to a common

11  purpose with the knowledge of the others, intentionally intruded upon the private affairs, concerns, and

12  seclusion of Plaintiffs by improperly accessing E.W., A.W., and members of the Pennsylvania class's

13  Personal Information and using it for improper purposes, including by targeting them with behavioral

14  advertising that would be highly offensive to a reasonable person, constituting an egregious breach of

15  social norms and/or enabling the targeting of E.W., A.W., and members of the Pennsylvania class with

16  such advertisements, as detailed herein.

17      901.    Defendants' intrusions upon the private affairs, concerns, and seclusion of E.W., A.W.,

18  and members of the Pennsylvania class were substantial, and would be highly offensive to a reasonable

19  person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys,

20  studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal

21  statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement

22  actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers'

23  reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms

24  required by the Order & Injunction entered into by Google.

25      902.    As children aged thirteen or younger, E.W., A.W., and members of the Pennsylvania class

26  lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

27      903.    Neither E.W., A.W., members of the Pennsylvania class, nor their parents and/or

28  guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

904.    E.W., A.W., and members of the Pennsylvania class suffered actual and concrete injury as a result of Defendants' intrusions upon E.W., A.W., and members of the Pennsylvania class's private affairs, concerns, and seclusion.

905.    E.W., A.W.,  and members of the Pennsylvania class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon E.W., A.W.,  and members of the Pennsylvania class's private affairs, concerns, and seclusion.

### Claim 39
**PENNSYLVANIA UNFAIR TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW,**
**73 Pa. Stat. Ann. §§ 201-3,** *et seq.*
**(Against All Defendants on behalf of Plaintiffs E.W., A.W., and the Pennsylvania Class)**

906.    Plaintiffs E.W., A.W., and members of the Pennsylvania class incorporate the foregoing allegations as if fully set forth herein.

907.    E.W., A.W., and members of the Pennsylvania class are or were residents of Pennsylvania and/or viewed child-directed content in Pennsylvania hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

908.    73 Pa. Stat. Ann. § 201-3(a) provides "[u]nfair methods of competition and unfair … acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 21 of this act and regulations promulgated under section 3.12 of this act are hereby declared unlawful."

909.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Pennsylvania in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Pennsylvania.

910.    Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Pennsylvania, and there are millions of users, including E.W., A.W., and members of the Pennsylvania class.

911.    Defendants each violated 73 Pa. Stat. Ann. § 201-3 by engaging in the deceptive or unfair acts or practices proscribed by 73 Pa. Stat. Ann. § 201-3 outlined herein.

912.    Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

913.    As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each Channel Owner Defendant to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from E.W., A.W., and members of the Pennsylvania class created by the Channel Owner Defendants on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

914.    As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

915.    The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

916.    As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

917.    The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

162

918.    That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content the Channel Owner Defendants uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

919.    Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

920.    Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by each of the Channel Owner Defendants, which were directed to children under 13.

921.    In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

      a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

      b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

      c.    Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.      Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

922.    Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the 73 Pa. Stat. Ann. §§ 201-3, et seq.[85]

923.    Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of 73 Pa. Stat. Ann. §§ 201-3, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

924.    Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.  Further, E.W., A.W., and members of the Pennsylvania class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

925.    Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated 73 Pa. Stat. Ann. §§ 201-3, et seq.

926.    E.W., A.W., and members of the Pennsylvania class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to E.W., A.W., and members of the Pennsylvania class.

927.    As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of 73 Pa. Stat. Ann. §§ 201-3, et seq., E.W., A.W., and members of the Pennsylvania class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value

---

[85] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

928.    As outlined herein, there is tangible value in E.W., A.W., and members of the Pennsylvania class's Personal Information. E.W., A.W., and members of the Pennsylvania class have lost the opportunity to receive value in exchange for their Personal Information.

929.    Defendants' monetization of E.W., A.W., and members of the Pennsylvania class's Personal Information demonstrates that there is a market for their Personal Information.

930.    E.W., A.W., and members of the Pennsylvania class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

931.    Defendants' retention of E.W., A.W., and members of the Pennsylvania class's Personal Information presents a continuing risk to them as well as the general public. E.W., A.W., and members of the Pennsylvania class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by 73 Pa. Stat. Ann. §§ 201-3, et seq. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

### Claim 40
### PENNSYLVANIA UNJUST ENRICHMENT
### (Against All Defendants on behalf of Plaintiffs E.W., A.W., and the Pennsylvania Class)

932.    Plaintiffs E.W., A.W., and members of the Pennsylvania class re-allege the foregoing allegations as if fully set forth herein.

933.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of E.W., A.W., and the members of the Pennsylvania class for advertising and commercialization purposes.

934.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by E.W., A.W., and the members of the Pennsylvania class.

935.    Defendants are each independently liable because Defendants each independently harmed E.W., A.W., and members of the Pennsylvania class via the conduct herein described.

936.    As a result of Defendants' conduct, E.W., A.W., and members of the Pennsylvania class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

937.    It would be inequitable and unjust to permit the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of E.W., A.W., and the members of the Pennsylvania class.

938.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by E.W., A.W., and the members of the Pennsylvania class through the collection, obtainment, and use of their Personal Information and the value thereof.

939.    E.W., A.W., and the members of the Pennsylvania class are therefore entitled to recover the amounts realized by Defendants at the expense of E.W., A.W., and members of the Pennsylvania class.

940.    E.W., A.W., and members of the Pennsylvania class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

**XVIII. South Carolina Claims**

<u>**Claim 41**</u>
**SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT,**
**S.C. Code Ann. § 39-5-20, *et seq*.**
**(Against All Defendants on behalf of Plaintiffs B.L., E.L., and the South Carolina Class)**

941.    Plaintiffs B.L., E.L., members of the South Carolina class incorporate the foregoing allegations as if fully set forth herein.

942.    B.L., E.L., members of the South Carolina class are or were residents of South Carolina and/or viewed child-directed content in South Carolina hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

943.    S.C. Code Ann. § 39-5-20 (a) provides "[u]nfair methods of competition and unfair … acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

944.    S.C. Code Ann. § 39-5-20 (b) provides "[i]n construing paragraph (a) of this section the courts will be guided by the interpretations given by the [FTC] and the Federal Courts to [§5], as from time to time amended."

945.    At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in South Carolina in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in South Carolina.

946.    Defendants each violated S.C. Code Ann. § 39-5-20 by engaging in the unfair acts or practices proscribed by S.C. Code Ann. § 39-5-20 outlined herein.

947.    Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in South Carolina, and there are millions of users, including B.L., E.L., and members of the South Carolina class.

948.    Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

949.    As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from B.L., E.L., members of the South Carolina class by the Channel Owner Defendants on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

950.    As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect

the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

951.    The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

952.    As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

953.    The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

954.    That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content the Channel Owner Defendants uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

955.    Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

956.    Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

957.    In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

a.  Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

b.  Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

c.  Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

d.  Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

958.  Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the S.C. Code Ann. § 39-5-20, et seq.[86]

959.  Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of S.C. Code Ann. § 39-5-20, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

960.  Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or

---

[86] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

competition. Further, B.L., E.L., and members of the South Carolina class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

961. Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated S.C. Code Ann. § 39-5-20, et seq.

962. B.L., E.L., and members of the South Carolina class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to B.L., E.L., and members of the South Carolina class.

963. As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of S.C. Code Ann. § 39-5-20, et seq., B.L., E.L., and members of the South Carolina class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

964. As outlined herein, there is tangible value in B.L., E.L., and members of the South Carolina class's Personal Information. B.L., E.L., and members of the South Carolina class have lost the opportunity to receive value in exchange for their Personal Information.

965. Defendants' monetization of B.L., E.L., and members of the South Carolina class's Personal Information demonstrates that there is a market for their Personal Information.

966. B.L., E.L., and members of the South Carolina class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

967. Defendants' retention of B.L., E.L., and members of the South Carolina class's Personal Information presents a continuing risk to them as well as the general public. B.L., E.L., and members of the South Carolina class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by S.C. Code Ann. § 39-5-20, et seq. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a

complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

**Claim 42**
**SOUTH CAROLINA UNJUST ENRICHMENT**
**(Against All Defendants on behalf of Plaintiffs B.L., E.L., and the South Carolina Class)**

968.    Plaintiffs B.L., E.L., and members of the South Carolina class re-allege the foregoing allegations as if fully set forth herein.

969.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of B.L., E.L., and the members of the South Carolina class for advertising and commercialization purposes.

970.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by B.L., E.L., and the members of the South Carolina class.

971.    Defendants are each independently liable because Defendants each independently harmed B.L., E.L., and members of the South Carolina class via the conduct herein described.

972.    As a result of Defendants' conduct, B.L., E.L., and members of the South Carolina class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

973.    It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of B.L., E.L., and the members of the South Carolina class.

974.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by B.L., E.L., and the members of the South Carolina class through the collection, obtainment, and use of their Personal Information and the value thereof.

975.    B.L., E.L., and the members of the South Carolina class are therefore entitled to recover the amounts realized by Defendants at the expense of B.L., E.L., and members of the South Carolina class.

976.    B.L., E.L., and members of the South Carolina class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

**XIX.    South Dakota Claims**

**Claim 43**

**SOUTH DAKOTA INTRUSION UPON SECLUSION**
**(Against All Defendants on behalf of Plaintiffs T.P., L.P., T.P., T.P., and the South Dakota Class)**

977.    Plaintiffs T.P., L.P., T.P., T.P., and members of the South Dakota class re-allege the foregoing allegations as if fully set forth herein.

978.    T.P., L.P., T.P., T.P., and members of the South Dakota class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

979.    Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others,  intentionally intruded upon the private affairs, concerns, and seclusion of T.P., L.P., T.P., T.P., and members of the South Dakota class by improperly accessing their Personal Information and using it for improper purposes, including by targeting T.P., L.P., T.P., T.P., and members of the South Dakota class with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of T.P., L.P., T.P., T.P., and members of the South Dakota class with such advertisements, as detailed herein.

980.    Defendants' intrusions upon the private affairs, concerns, and seclusion of Plaintiffs T.P., L.P., T.P., T.P., and members of the South Dakota class were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

981.    As children aged thirteen or younger, T.P., L.P., T.P., T.P., and members of the South Dakota class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

982.    Neither T.P., L.P., T.P., T.P., members of the South Dakota class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

983.    T.P., L.P., T.P., T.P., and members of the South Dakota class suffered actual and concrete injury as a result of Defendants' intrusions upon T.P., L.P., T.P., T.P., and members of the South Dakota class's private affairs, concerns, and seclusion.

984.    T.P., L.P., T.P., T.P., and members of the South Dakota Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate T.P., L.P., T.P., T.P., and members of the South Dakota class them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon T.P., L.P., T.P., T.P., and members of the South Dakota class's private affairs, concerns, and seclusion.

### Claim 44
### SOUTH DAKOTA UNJUST ENRICHMENT
**(Against All Defendants on behalf of Plaintiffs T.P., L.P., T.P., T.P., and the South Dakota Class)**

985.    Plaintiffs T.P., L.P., T.P., T.P., and members of the South Dakota class re-allege the foregoing allegations as if fully set forth herein.

986.    By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of T.P., L.P., T.P., T.P., and the members of the South Dakota class for advertising and commercialization purposes.

987.    This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by T.P., L.P., T.P., T.P., and the members of the South Dakota class.

988.    Defendants are each independently liable because Defendants each independently harmed T.P., L.P., T.P., T.P., and members of the South Dakota class via the conduct herein described.

989.    As a result of Defendants' conduct, T.P., L.P., T.P., T.P., and members of the South Dakota class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

990.    It would be inequitable and unjust to permit Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of T.P., L.P., T.P., T.P., and the members of the South Dakota class.

991.    Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by T.P., L.P., T.P., T.P., and the members of the South Dakota class through the collection, obtainment, and use of T.P., L.P., T.P., T.P., and South Dakota class members' Personal Information and the value thereof.

992.    T.P., L.P., T.P., T.P., and the members of the South Dakota class are therefore entitled to recover the amounts realized by Defendants at the expense of T.P., L.P., T.P., T.P., and members of the South Dakota class.

993.    T.P., L.P., T.P., T.P., and members of the South Dakota class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

**XIX.   Tennessee Claims**

**Claim 45**
**TENNEESSEE CONSUMER PROTECTION ACT,**
**Tenn. Code Ann. §§ 47-18-101, *et seq.***
**(Against All Defendants on behalf of Plaintiff M.W. and the Tennessee Class)**

994.    Plaintiff M.W. and members of the Tennessee class re-allege the foregoing allegations as if fully set forth herein.

995.    M.W. and members of the Tennessee class are or were residents of Tennessee and/or viewed child-directed content in Tennessee hosted by Defendant Google on YouTube and created by each of the Channel Owner Defendants.

996.    Plaintiff M.W. and members of the Tennessee class are "consumers" within the meaning of Tenn. Code § 47-18-103(2).

997.    Defendants are "persons" within the meaning of Tenn. Code § 47-18-103(13).

998.    Defendants advertised, offered, or sold goods or services in Tennessee in consumer transactions and engaged in trade or commerce directly or indirectly affecting the people of Tennessee, as defined by Tenn. Code §§ 47-18-103(7), (18) & (19).

999.    Defendants' acts or practices affected the conduct of trade or commerce, under Tenn. Code § 47-18-104.

1000.   At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Tennessee in that Defendants each engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Tennessee.

1001.   Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Tennessee, and there are millions of users, including M.W. and members of the Tennessee Class.

1002.   Tenn. Code § 47-18-104(a) provides "[u]nfair … acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices[.]"

1003.   Tenn. Code § 47-18-115 provides "[i]t is the intent of the general assembly that this part shall be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts pursuant to § 5(A)(1) of the Federal Trade Commission Act, codified in 15 U.S.C. § 45(a)(1)."

1004.   Defendants each violated Tenn. Code § 47-18-104(a) by engaging in the unfair acts or practices proscribed Tenn. Code § 47-18-104(a) outlined herein.

1005.   Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

1006.   As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times

had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from M.W. and members of the Tennessee class, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

1007.   As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

1008.   The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

1009.   As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

1010.   The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that this content posted to and made available on YouTube was child-directed content.

1011.   That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content uploaded to, hosted on, and made viewable on those channels was plainly intended for and meant to attract children under 13 to YouTube for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

1012.   Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

1013.   Each of the Channel Owner Defendants collected—including directing Google to collect Personal Information from children under 13 through YouTube channels created, hosted, and maintained by the Channel Owner Defendants, which were directed to children under 13.

1014.   In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

  a. Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

  b. Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

  c. Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

  d. Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

1015.   Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning

of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Tenn. Code Ann. §§ 47-18-101, *et seq.*[87]

1016.   Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of Tenn. Code Ann. §§ 47-18-101, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

1017.   Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.   Further, M.W. and members of the Tennessee class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

1018.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Tenn. Code Ann. §§ 47-18-101, *et seq.*

1019.   M.W. and members of the Tennessee class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to M.W. and members of the Tennessee class.

1020.   As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Tenn. Code Ann. §§ 47-18-101, *et seq.*, M.W. and members of the Tennessee  class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

1021.   As outlined herein, there is tangible value in M.W. and members of the Tennessee class's Personal Information.   M.W. and members of the Tennessee class have lost the opportunity to receive value in exchange for their Personal Information.

---

[87] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

1022.  Defendants' monetization of M.W. and members of the Tennessee class's Personal Information demonstrates that there is a market for their Personal Information.

1023.  M.W. and members of the Tennessee class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

1024.  Defendants' retention of M.W. and members of the Tennessee class's Personal Information presents a continuing risk to them as well as the general public. M.W. and members of the Tennessee  class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Tenn. Code Ann. §§ 47-18-101, *et seq*. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by them and any other third parties, and other appropriate injunctive and/or declaratory relief.

### Claim 46
**TENNEESSEE UNJUST ENRICHMENT,**
**Tenn. Code Ann. §§ 47-18-101, *et seq.***
**(Against All Defendants on behalf of Plaintiff M.W. and the Tennessee Class)**

1025.  Plaintiff M.W. and members of the Tennessee class re-allege the foregoing allegations as if fully set forth herein.

1026.  By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of M.W. and the members of the Tennessee class for advertising and commercialization purposes.

1027.  This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by M.W. and the members of the Tennessee class.

1028.  Defendants are each independently liable because Defendants each independently harmed M.W. and members of the Tennessee class via the conduct herein described.

1029.   As a result of Defendants' conduct, M.W. and members of the Tennessee class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

1030.   It would be inequitable and unjust to permit the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of M.W. and the members of the Tennessee class.

1031.   Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by M.W. and the members of the Tennessee class through the collection, obtainment, and use of M.W. and Tennessee class members' Personal Information and the value thereof.

1032.   M.W. and the members of the Tennessee class are therefore entitled to recover the amounts realized by Defendants at the expense of M.W. and members of the Tennessee class.

1033.   M.W. and members of the Tennessee class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable

## XX.   Virginia Claims

### Claim 47
### VIRGINIA UNJUST ENRICHMENT
### (Against All Defendants on behalf of Plaintiffs N.N., N.M., and the Virginia Class)

1034.   Plaintiffs N.N., N.M., and members of the Virginia class re-allege the foregoing allegations as if fully set forth herein.

1035.   By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of N.N., N.M., and the members of the Virginia class for advertising and commercialization purposes.

1036.   This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by N.N., N.M., and the members of the Virginia class.

1037.   Defendants are each independently liable because Defendants each independently harmed N.N., N.M., and members of the Virginia class via the conduct herein described.

1038.  As a result of Defendants' conduct, N.N., N.M., and members of the Virginia class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

1039.  It would be inequitable and unjust to permit the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of N.N., N.M., and the members of the Virginia class.

1040.  Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by N.N., N.M., and the members of the Virginia class through the collection, obtainment, and use of N.N., N.M., and Virginia class members' Personal Information and the value thereof.

1041.  N.N., N.M., and the members of the Virginia class are therefore entitled to recover the amounts realized by Defendants at the expense of N.N., N.M., and members of the Virginia class.

1042.  N.N., N.M., and members of the Virginia class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## XXI.  Washington Claims

### Claim 48
### WASHINGTON INTRUSION UPON SECLUSION
### (Against All Defendants on behalf of Plaintiffs M.W., B.N., W.N., and the Washington Class)

1043.  Plaintiffs M.W., B.N., W.N., and members of the Washington class re-allege the foregoing allegations as if fully set forth herein.

1044.  M.W., B.N., W.N., and members of the Washington class's private affairs, concerns, and seclusion includes their interest in their Personal Information as defined by COPPA, which includes data points concerning their location and online activity while using internet-connected devices.

1045.  Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others,  intentionally intruded upon the private affairs, concerns, and seclusion of M.W., B.N., W.N., and members of the Washington class by improperly accessing their Personal Information and using it for improper purposes, including by targeting M.W., B.N., W.N., and

members of the Washington class with behavioral advertising that would be highly offensive to a reasonable person, constituting an egregious breach of social norms and/or enabling the targeting of M.W., B.N., W.N., and members of the Washington class with such advertisements, as detailed herein.

1046.  Defendants' intrusions upon the private affairs, concerns, and seclusion of M.W., B.N., W.N., and members of the Washington class were substantial, and would be highly offensive to a reasonable person, constituting an egregious breach of social norms, as is evidenced by countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations., the fines imposed on Google by the FTC and the NY AG, as well as the reforms required by the Order & Injunction entered into by Google.

1047.  As children aged thirteen or younger, M.W., B.N., W.N., and members of the Washington class lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions.

1048.  Neither M.W., B.N., W.N., members of the Washington class, nor their parents and/or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

1049.  M.W., B.N., W.N., and members of the Washington class suffered actual and concrete injury as a result of Defendants' intrusions upon M.W., B.N., W.N., and members of the Washington class's  private affairs, concerns, and seclusion.

1050.  M.W., B.N., W.N., and members of the Washington class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and the mental and emotional distress caused by Defendants' invasions of privacy, as well as disgorgement of profits made by Defendants as a result of their intrusions upon M.W., B.N., W.N., and members of the Washington class's private affairs, concerns, and seclusion.

**Claim 49**
**WASHINGTON CONSUMER PROTECTION ACT,**
**Wash. Rev. Code Ann. § 19.86.020, *et seq*.**
**(Against All Defendants on behalf of Plaintiffs M.W., B.N., W.N., and the Washington Class)**

1051.  Plaintiffs M.W., B.N., W.N., and members of the Washington class incorporate the foregoing allegations as if fully set forth herein.

1052.  M.W., B.N., W.N., and members of the Washington Class are or were residents of Washington and/or viewed child-directed content in Washington hosted by Defendant and on YouTube and created by each of the Channel Owner Defendant.

1053.  Wash. Rev. Code Ann. § 19.86.020 provides "[u]nfair methods of competition and unfair … acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1054.  Wash. Rev. Code Ann. § 19.86.020 provides "[t]he courts be guided by final decisions of the federal courts and final orders of the [FTC] interpreting the various federal statutes dealing with the same or similar matters[.]"

1055.  At all times mentioned herein, Defendants each engaged in "trade" or "commerce" in Washington in that they engaged in the advertising, offering for sale, sale, and distribution of property or any other articles, commodities, or things of value in Washington.

1056.  Defendants each violated Wash. Rev. Code Ann. § 19.86.020 by engaging in the unfair acts or practices proscribed by Wash. Rev. Code Ann. § 19.86.020 outlined herein.

1057.  Defendants each engaged in consumer-oriented acts through the offering, promoting, and/or distributing of YouTube and child-directed content hosted thereon, which significantly impacted the public because YouTube is used nationwide, including in Washington, and there are millions of users, including M.W., B.N., W.N., and members of the Washington class.

1058.  Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of children under 13 and tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain.

1059.  As outlined herein, Defendants each at all times had actual knowledge of their own non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants each at all times had actual knowledge of their own collection—via the election of each of the Channel Owner Defendants

to serve behavioral advertising rather than contextual advertising to their viewers—of the Personal Information from M.W., B.N., W.N., and members of the Washington class by the Channel Owner Defendants on YouTube, and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

1060.   As outlined herein, Google intentionally designed YouTube to, among other things, attract children under thirteen by making child-directed content available to them so that Google could collect the Personal Information of those children under thirteen and serve them with lucrative, intrusive, behavioral advertising for substantial commercial gain.

1061.   The inherent characteristics, content, and features of YouTube as designed by Google, including the names, designs, cartoon elements, children's themes, and children's songs, evince that YouTube hosted child-directed content. That is, YouTube was plainly intended for and meant to attract children under 13, collect the Personal Information of those children, and serve those children behavioral advertising for substantial commercial gain.

1062.   As outlined herein, each of the Channel Owner Defendants knowingly and intentionally created child-directed video content and made that child-directed content available on YouTube with the specific purpose of attracting child viewers under thirteen to their respective YouTube channels.

1063.   The inherent characteristics, content, and features of each of the Channel Owner Defendants' YouTube channels and the content hosted thereon, including the names, designs, cartoon elements, children's themes, and children's songs, evince that the Channel Owner Defendants' content posted to and made available on YouTube was child-directed content.

1064.   That is, each of the Channel Owner Defendants' YouTube channels and the child-directed content the Channel Owner Defendants uploaded to, hosted on, and made viewable on their YouTube channels was plainly intended for and meant to attract children under 13 for the purpose of collecting the Personal Information of those children to serve those children behavioral advertising for substantial commercial gain.

1065.   Along with Google, each of the Channel Owner Defendants is individually considered by the FTC to be "operators" as defined under COPPA and FTC regulations.

FOURTH AMENDED CLASS ACTION COMPLAINT
CASE NO. 5:19-cv-07016-BLF

1066. Each of the Channel Owner Defendants collected—including directing Google to collect— Personal Information from children under 13 through YouTube channels created, hosted, and maintained by each of the Channel Owner Defendants, which were directed to children under 13.

1067. In particular, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, systematically collected, used, and/or disclosed Personal Information from children under 13 in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

    a.    Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

    b.    Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

    c.    Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

    d.    Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of COPPA, 16 C.F.R. § 312.8.

1068. Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c).  These rules define unfair acts or practices in or affecting commerce within the meaning

of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including the Wash. Rev. Code Ann. § 19.86.020, et seq. [88]

1069.   Accordingly, Defendants each individually engaged in unfair and unlawful trade acts or practices in violation of Wash. Rev. Code Ann. § 19.86.020, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

1070.   Defendants' conduct is unfair, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, and there are no greater countervailing benefits to consumers or competition.   Further, M.W., B.N., W.N., and members of the Washington class could not have reasonably avoided injury because Defendants each took advantage of the lack of knowledge, ability, experience, and/or capacity of consumers—in this case children under 13—to their detriment.

1071.   Defendants willfully engaged in the unfair and unlawful acts described herein and knew or recklessly disregarded the fact that they violated Wash. Rev. Code Ann. § 19.86.020, et seq.

1072.   M.W., B.N., W.N., and members of the Washington class were harmed by Defendants' practices described herein, which were a substantial factor and caused injury in fact and actual damages to M.W., B.N., W.N., and members of the Washington class.

1073.   As a direct and proximate result of Defendants' unfair and unlawful acts and practices in violation of Wash. Rev. Code Ann. § 19.86.020, et seq., M.W., B.N., W.N., and members of the Washington class have suffered and will continue to suffer an ascertainable loss of money or property, real or personal, and monetary and non-monetary damages, as described herein, including, inter alia, the loss of the value and/or diminishment in value of their Personal Information and the loss of the ability to control the use of their Personal Information.

1074.   As outlined herein, there is tangible value in M.W., B.N., W.N., and members of the Washington class's Personal Information. M.W., B.N., W.N., and members of the Washington class have lost the opportunity to receive value in exchange for their Personal Information.

---

[88] *See* 16 C.F.R. § 312.1 (COPPA "prohibits unfair or deceptive acts or practices in connection with the collection, use, and/or disclosure or personal information from and about children on the internet.").

1075.   Defendants' monetization of M.W., B.N., W.N., and members of the Washington class's Personal Information demonstrates that there is a market for their Personal Information.

1076.   M.W., B.N., W.N., and members of the Washington class's Personal Information is now in the possession of Defendants, who have used and will use it for their financial gain.

1077.   Defendants' retention of M.W., B.N., W.N., and members of the Washington class's Personal Information presents a continuing risk to them as well as the general public. M.W., B.N., W.N., and members of the Washington class seek relief for the injuries they have suffered as a result of Defendants' unfair and unlawful acts and practices, as provided by Wash. Rev. Code Ann. § 19.86.020, et seq. and applicable law, including all actual damages and attorneys' fees and costs, treble damages, statutory damages, and restitution, as well as an injunction requiring Defendants to each permanently delete, destroy or otherwise sequester the Personal Information collected without parental consent, requiring Defendants to provide a complete audit and accounting of the uses of the Personal Information by Defendants and any other third parties, and other appropriate injunctive and/or declaratory relief.

### Claim 50
### WASHINGTON UNJUST ENRICHMENT
**(Against All Defendants on behalf of Plaintiffs M.W., B.N., W.N., and the Washington Class)**

1078.   Plaintiffs M.W., B.N., W.N., and members of the Washington class re-allege the foregoing allegations as if fully set forth herein.

1079.   By virtue of the unlawful and unfair conduct alleged herein, Defendants each and in concert, through aid or assistance, or pursuant to a common purpose with the knowledge of the others, knowingly realized millions of dollars in revenue from the sale and/or use of the Personal Information of M.W., B.N., W.N., and the members of the Washington class for advertising and commercialization purposes.

1080.   This Personal Information, the value of the Personal Information, and/or the attendant revenue, were monetary benefits conferred upon Defendants by M.W., B.N., W.N., and the members of the Washington class.

1081.   Defendants are each independently liable because Defendants each independently harmed M.W., B.N., W.N., and members of the Washington class via the conduct herein described.

1082.  As a result of Defendants' conduct, M.W., B.N., W.N., and members of the Washington class suffered actual damages in the loss of value of their Personal Information and the lost profits from the use of their Personal Information.

1083.  It would be inequitable and unjust to permit the Defendants to retain the enormous economic benefits (financial and otherwise) they have obtained from and/or at the expense of M.W., B.N., W.N., and the members of the Washington class.

1084.  Defendants will each be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by M.W., B.N., W.N., and the members of the Washington class through the collection, obtainment, and use of M.W., B.N., W.N., and Washington class members' Personal Information and the value thereof.

1085.  M.W., B.N., W.N., and the members of the Washington class are therefore entitled to recover the amounts realized by Defendants at the expense of M.W., B.N., W.N., and members of the Washington class.

1086.  M.W., B.N., W.N., and members of the Washington class have no adequate remedy at law. They are entitled to restitution, disgorgement, and/or the imposition of a constructive trust to the recover the amount of Defendants' ill-gotten gains, and/or other sums as may be just and equitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of themselves and the proposed Classes, respectfully request relief as follows:

A.    An order certifying this action as a class action, and certifying the Classes defined herein, designating Plaintiffs, as described above, as the representatives of the respective Classes defined herein, and appointing Plaintiffs' counsel as counsel for the Classes;

B.    An order declaring that Defendants' actions, as described above constitute: (i) breaches of the common law claim of intrusion upon seclusion as to the intrusion upon seclusion claims set forth above; (ii) violations of the state consumer protection statutes set forth above; (iii) a violation of the right to privacy under the California Constitution, Article I, Section 1; and (iv) that Defendants were unjustly enriched as a result of their actions.

C.      A judgment awarding Plaintiffs and the members of the Classes appropriate relief, including actual, compensatory, and/or statutory damages, and punitive damages (as permitted by law), in an amount to be determined at trial;

D.      A judgment awarding any and all equitable, injunctive, and declaratory relief as may be appropriate, including orders of disgorgement of Defendants' unlawful gains, and restitution.

E.      A judgment awarding all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action, and other relief as permitted by law;

F.      Pre-judgment and post-judgment interest, as permitted by law; and

G.      Grant such other legal and equitable relief as the Court may deem appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  September 21, 2023            Respectfully submitted,

**PRITZKER LEVINE LLP**            **SILVER GOLUB & TEITELL LLP**

*/s/ Jonathan K. Levine*            */s/ David S. Golub*
Jonathan K. Levine (SBN 220289)      David S. Golub (admitted *pro hac vice*)
Elizabeth C. Pritzker (SBN 146267)     Steven L. Bloch (admitted *pro hac vice*)
Caroline C. Corbitt (SBN 305492)      Ian W. Sloss (admitted *pro hac vice*)
1900 Powell Street, Suite 450         1 Landmark Square, 15th Floor
Emeryville, CA 94608              Stamford, CT 06901
Telephone: (415) 692-0772         Telephone: (203) 325-4491
Facsimile: (415) 366-6110          Facsimile: (203) 325-3769
jkl@pritkzkerlevine.com           dgolub@sgtlaw.com
ecp@pritzkerlevine.com           sbloch@sgtlaw.com
ccc@pritzkerlevine.com           isloss@sgtlaw.com

                                         *Attorneys for Plaintiffs*
                                         *and the Proposed Classes*