Edith Ramirez, SBN 165872
Adam A. Cooke (*pro hac vice*)
555 Thirteenth Street, NW
Washington, DC 20004
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910
edith.ramirez@hoganlovells.com
adam.a.cooke@hoganlovells.com

Christopher J. Cox, SBN 151650
855 Main St., Suite 200
Redwood City, CA  94063
Telephone:  (650) 463-4000
Facsimile:  (650) 463-4199
chris.cox@hoganlovells.com

Helen Y. Trac, SBN 285824
4 Embarcadero Center, 35th Floor
San Francisco, California  94111
Telephone:  (415) 374-2300
Facsimile:  (415) 374-2499
helen.trac@hoganlovells.com

Attorneys for Defendants
*Google LLC* and *YouTube LLC*

The Channel Owner Defendants and their
counsel are listed on the Notice and Signature
Pages

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| C.H., a minor, by and through their guardian ad litem NICHOLE HUBBARD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, et al., <br><br> Defendants. | Case No.  19-cv-07016-BLF <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT** <br><br> The Honorable Beth Labson Freeman <br> Date: February 8, 2024 <br> Time: 9:00 AM <br> Courtroom:  Courtroom 3 – 5th Floor |

1     **TO THE COURT AND ALL PARTIES OF RECORD:**

2         **PLEASE TAKE NOTICE THAT** on February 8, 2024, at 9:00 AM, or as soon

3     thereafter as this matter may be heard, before the Honorable Beth Labson Freeman in Courtroom

4     3 of this Court, located on the 5th Floor of the Robert F. Peckham Federal Building & United

5     States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113, Defendants Google

6     LLC and YouTube LLC (collectively, "Google") and Cartoon Network, Inc., Cartoon Network

7     Studios, Inc., DreamWorks Animation LLC, DreamWorks Animation Television, LLC, Mattel,

8     Inc., Hasbro, Inc., Hasbro Studios LLC, Remka, Inc., RTR Production, LLC, RFR Entertainment,

9     Inc., and PocketWatch, Inc. (collectively, "Channel Owners") will, and hereby do, move the

10    Court for an order granting its Motion to Dismiss the Fourth Amended Complaint.  This Motion

11    is made based on Federal Rules of Civil Procedure 8, 9, 12(b)(1) and 12(b)(6), on the grounds

12    that Plaintiffs lack standing to pursue injunctive relief and that allegations fail to state any valid

13    claim.  This Motion is based upon this Notice; the accompanying Memorandum of Points and

14    Authorities; the complete record in this action; and such other matters and arguments as may

15    come before the Court, including those raised in connection with reply briefing and oral argument

16    relating to this Motion.

17

18    Dated: December 13, 2023              HOGAN LOVELLS US LLP

19                                          By:  /s/ *Edith Ramirez*

20                                          EDITH RAMIREZ
                                            edith.ramirez@hoganlovells.com
21                                          ADAM A. COOKE (*pro hac vice*)
                                            adam.a.cooke@hoganlovells.com
22                                          HOGAN LOVELLS US LLP
                                            555 Thirteenth Street, NW
23                                          Washington, DC  20004
                                            Telephone: (202) 637-5600
24                                          Facsimile: (202) 637-5910

25                                          CHRISTOPHER J. COX
                                            chris.cox@hoganlovells.com
26                                          HOGAN LOVELLS US LLP
                                            855 Main St., Suite 200,
27                                          Redwood City, CA  94063
                                            Telephone: (650) 463-4000
28                                          Facsimile: (650) 463-4199

1

2
HELEN Y. TRAC
helen.trac@hoganlovells.com
HOGAN LOVELLS US LLP

3
4 Embarcadero Center, 35th Floor
San Francisco, California  94111
Telephone: (415) 374-2300

4
Facsimile: (415) 374-2499

5

6
Attorneys for Defendants *Google LLC* and
*YouTube LLC*

7

8
Dated: December 13, 2023

GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA
JEREMY S. SMITH

9
MADELEINE F. MCKENNA

10

11
By: */s/ Christopher Chorba*
        Christopher Chorba

12
Attorneys for Defendants *Cartoon Network, Inc.* and

13
*Cartoon Network Studios, Inc.*

14

15
Dated: December 13, 2023

MUNGER, TOLLES & OLSON LLP
JONATHAN H. BLAVIN
JORDAN D. SEGALL

16
NEFI D. ACOSTA

17

18
By: */s/ Jonathan H. Blavin*
        Jonathan H. Blavin

19
Attorneys for Defendant *Mattel, Inc.*

20

21
Dated: December 13, 2023

ZWILLGEN LAW LLP
ANNA HSIA
JEFFREY LANDIS

22
ADYA BAKER

23

24
By: */s/ Anna Hsia*
        Anna Hsia

25
Attorneys for Defendants *DreamWorks Animation

26
L.L.C.* and *DreamWorks Animation Television, LLC*

27

28

MOTION TO DISMISS FOURTH AMENDED
COMPLAINT 19-CV-07016-BLF

1    Dated: December 13, 2023                    FRANKFURT KURNIT KLEIN & SELZ, P.C.
                                                 JEREMY S. GOLDMAN
2

3
                                                 By:  /s/ Jeremy S. Goldman
4                                                      Jeremy S. Goldman

5                                                Attorneys for Defendants *Hasbro, Inc.* and *Hasbro*
                                                 *Studios LLC*
6

7    Dated: December 13, 2023                    Respectfully submitted,

8                                                VENABLE LLP
                                                 DAVID E. FINK
9                                                SARAH E. DIAMOND

10

11                                               By:  /s/ David E. Fink
                                                      David E. Fink
12
                                                 Attorneys *for* Defendant *PocketWatch, Inc.*
13

14   Dated: December 13, 2023                    Respectfully submitted,

15                                               JACOBSON, RUSSELL, SALTZ, NASSIIM
                                                 & DE LA TORRE LLP
16                                               MICHAEL J. SALTZ
                                                 ELANA R. LEVINE
17

18
                                                 By:  /s/ Michael J. Saltz
19                                                    Michael J. Saltz

20                                               Attorneys for Defendants *Remka, Inc.; RTR*
                                                 *Production, LLC;* and *RFR Entertainment, Inc.*
21

22

23

24

25

26

27

28

MOTION TO DISMISS FOURTH AMENDED
                                                 COMPLAINT 19-CV-07016-BLF

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND .............................................................................................................. 2

        A.      Defendants Google and YouTube .................................................................... 2

        B.      Prior FTC and New York Attorney General Enforcement Action ........................ 3

        C.      Plaintiffs' Five Complaints ................................................................................ 4

        D.      This Court's and the Ninth Circuit's Ruling ...................................................... 5

III.    THE FAC SHOULD BE DISMISSED IN ITS ENTIRETY ........................................... 6

        A.      The Court Should Dismiss Plaintiffs' Claims for Equitable Relief ..................... 6

                1.      Plaintiffs Lack Article III Standing to Seek Injunctive Relief ................. 6

                2.      Plaintiffs Cannot Pursue Other Equitable Relief Because They Do
                        Not Plausibly Allege That They Lack Adequate Remedies at Law ........... 7

        B.      Plaintiffs Fail to Plead Viable Claims for Intrusion Upon Seclusion or
                Violation of the California Constitutional Right to Privacy ................................ 8

        C.      Plaintiffs' State Unjust Enrichment Claims Fail for Additional Reasons ............ 13

                1.      No Unjustly Conferred Benefit to Defendants ......................................... 13

                2.      No Enrichment at Plaintiffs' Expense ..................................................... 13

                3.      No Expected Remuneration ................................................................... 13

                4.      No Contract-Based Cause of Action ...................................................... 15

        D.      Plaintiffs Fail to State a Claim Under State Consumer Protection Laws .............. 15

                1.      No Requisite Loss Alleged .................................................................... 15

                2.      No Class Action Claims ....................................................................... 17

                3.      No Lease, Purchase, or Transaction ....................................................... 17

IV.     PLAINTIFFS CANNOT STATE A CLAIM AGAINST THE CHANNEL
        OWNERS ...................................................................................................................... 17

        A.      Plaintiffs Allege No Facts to Establish Direct Liability of the Channel
                Owners ........................................................................................................... 18

                1.      Intrusion Upon Seclusion and California Constitutional Right to
                        Privacy .............................................................................................. 18

                2.      State Consumer Protection Statutes ....................................................... 18

                3.      Unjust Enrichment .............................................................................. 19

        B.      Plaintiffs Cannot Establish a Basis for Secondary Liability Against the
                Channel Owners .............................................................................................. 20

MOTION TO DISMISS FOURTH AMENDED
COMPLAINT 19-CV-07016-BLF

1                   1.    Aiding and Abetting ......................................................... 20

2                   2.    Common Plan ................................................................... 23

3                   3.    Plaintiffs' Attempt to Impose Secondary Liability Would
                          Contravene the Ninth Circuit's Preemption Ruling ................... 23

4          C.    Plaintiffs Cannot Pursue State-Law Claims Against Channel Owners
                 Where No Plaintiff Watched That Channel in That State ..................... 24

5   V.     CONCLUSION .............................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Acosta v. Scott Labor LLC,*
    377 F. Supp. 2d 647 (N.D. Ill. 2005) .......................................................................9

5

*Adams v. PSP Grp., LLC,*
6
    2023 WL 5951784 (E.D. Mo. Sept. 13, 2023) ...........................................................9

7

*Adkins v. Facebook, Inc.,*
    2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ..........................................................17
8

9

*Alexander v. Glob. Tel Link Corp.,*
    2018 WL 8997439 (S.D. Miss. Dec. 18, 2018) .......................................................19

10

*Allen v. Quicken Loans Inc.,*
11
    2018 WL 5874088 (D.N.J. Nov. 9, 2018) ...............................................................12

12

*Alvarez LLC v. Blazar Tech. Sols., LLC,*
    2019 WL 3205952 (D. Colo. July 16, 2019) ..........................................................22
13

14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...........................................................................................18, 21

15

*New Mexico ex rel. Balderas v. Tiny Lab Prods.,*
16
    457 F. Supp. 3d 1103 (D.N.M. 2020) ..............................................................10, 24

17

*Barrera v. Costco Wholesale Corp.,*
    2022 WL 3445092 (9th Cir. Aug. 17, 2022) ..........................................................19
18

19

*Bedi v. BMW of N. Am., LLC,*
    2016 WL 324950 (D.N.J. Jan. 27, 2016) ...............................................................15

20

*Benson v. Fannie May Confections Brands, Inc.,*
21
    944 F.3d 639 (7th Cir. 2019) ..................................................................................14

22

*Bravo v. Cnty. of San Diego,*
    2014 WL 555195 (N.D. Cal. Feb. 10, 2014) ..........................................................18
23

24

*Browning v. AT&T Corp.,*
    682 F. Supp. 2d 832 (N.D. Ill. 2009) .......................................................................9

25

*Caboodles Cosmetics, Ltd. P'ship v. Caboodles, LLC,*
26
    412 F. Supp. 2d 872 (W.D. Tenn. 2006) ................................................................21

27

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.,*
    2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) .........................................................8

28

*Calvary Chapel San Jose v. Cody*,
   2022 WL 5264651 (N.D. Cal. Oct. 6, 2022)................................................................24

*Carlson v. Gillette Co.*,
   2015 WL 6453147 (D. Mass. Oct. 23, 2015)..............................................................19

*Casey v. U.S. Bank Nat'l Ass'n*,
   127 Cal. App. 4th 1138 (2005)...................................................................................21

*Cheatham v. ADT Corp.*,
   161 F. Supp. 3d 815 (D. Ariz. 2016)..........................................................................19

*City of Pontiac v. Blue Cross Blue Shield of Mich.*,
   2012 WL 1079895 (E.D. Mich. Mar. 30, 2012) .........................................................13

*Claridge v. RockYou, Inc.*,
   785 F. Supp. 2d 855 (N.D. Cal. 2011) ........................................................................16

*Cole v. Chevron USA, Inc.*,
   554 F. Supp. 2d 655 (S.D. Miss. 2007).................................................................15, 17

*Cousin v. Sharp Healthcare*,
   2023 WL 4484441 (S.D. Cal. July 12, 2023) .............................................................12

*Curry v. MillerCoors, Inc.*,
   2013 WL 4494307 (D. Colo. Aug. 21, 2013) ...............................................................9

*Davenport v. Cmty. Corr. of the Pikes Peak Region, Inc.*,
   942 P.2d 1301 (Colo. App. 1997)...............................................................................21

*Davis v. HDR Inc.*,
   606 F. Supp. 3d 898 (D. Ariz. 2022)............................................................................9

*Day v. Advanced Micro Devices, Inc.*,
   2023 WL 2347421 (N.D. Cal. Mar. 2, 2023) ...............................................................8

*Del Vecchio v. Amazon.com Inc.*,
   2011 WL 6325910 (W.D. Wash. Dec. 1, 2011)....................................................16, 17

*Doe v. Brundage-Bone Concrete Pumping, Inc.*,
   2006 WL 2472850 (W.D. Ok. Aug. 23, 2006) .............................................................9

*Doe v. Roe*,
   638 So.2d 826 (Ala. 1994) ...........................................................................................9

*Elgin v. St. Louis Coca-Cola Bottling Co.*,
   2005 WL 3050633 (E.D. Mo. Nov. 14, 2015) .............................................................9

*Erickson v. Fahrmeier*,
   2019 WL 1177969 (E.D. Tenn. Mar. 13, 2019).........................................................19

*Champion ex rel. Ezzo v. Dunfee*,
   398 N.J. Super. 112 (App. Div. 2008) .................................................................21

*F.T.C. v. Google LLC*,
   No. 19-cv-02642 (D.D.C. Sept. 4, 2019) ...............................................................4

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................10

*Facebook, Inc. v. MaxBounty, Inc.*,
   274 F.R.D. 279 (N.D. Cal. 2011) ..........................................................................22

*Failla v. City of Passaic*,
   146 F.3d 149 (3d Cir. 1998) ..................................................................................21

*Fed. Home Loan Mortg. Corp. v. Anchrum*,
   2015 WL 2452775 (N.D. Ala. May 22, 2015) ......................................................13

*Feller v. Brock*,
   802 F.2d 722 (4th Cir. 1986) ..................................................................................7

*Fiol v. Doellstedt*,
   50 Cal. App. 4th 1318 (1996) ...............................................................................21

*Flores v. OneWest Bank, F.S.B.*,
   172 F. Supp. 3d 391 (D. Mass. 2016), *aff'd* 886 F.3d 160 (1st Cir. 2018) ...............7

*Flores-Mendez v. Zoosk, Inc.*,
   2021 WL 4553772 (N.D. Cal. Oct. 5, 2021) .........................................................16

*Freeman Indus., LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005) ...............................................................................20

*Freund v. HP, Inc.*,
   2023 WL 187506 (N.D. Cal. Jan. 13, 2023) ...........................................................8

*Frye v. IBP, Inc.*,
   15 F. Supp. 2d 1032 (D. Kan. 1998) .......................................................................9

*G.G. v. Valve Corp.*,
   579 F. Supp. 3d 1224 (W.D. Wash. 2022), *aff'd sub nom. Galway v. Valve
   Corp.*, 2023 WL 334012 (9th Cir. Jan. 20, 2023) ................................................19

*Gabriel v. Giant Eagle, Inc.*,
   124 F. Supp. 3d 550 (W.D. Pa. 2015) .....................................................................9

*Garcia v. Medved Chevrolet, Inc.*,
   263 P.3d 92 (Colo. 2011) ......................................................................................19

*Gates v. Black Hills Health Care Sys. (BHHCS)*,
   997 F. Supp. 2d 1024 (D.S.D. 2014)............................................................9

*George v. eBay, Inc.*,
   71 Cal. App. 5th 620 (2021)......................................................................23

*Glob. Crossing Telecomms., Inc. v. Michigan Bell Tele. Co.*,
   2010 WL 2011502 (E.D. Mich. May 17, 2010)..........................................7

*In re Google Location History Litig.*,
   428 F. Supp. 3d 185 (N.D. Cal. 2019) ..............................................10, 11

*In re Google, Inc. Priv. Policy Litig.*,
   2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...........................................11

*In re Google, Inc. Priv. Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ......................................................12

*Gray v. Amazon.com, Inc.*,
   653 F. Supp. 3d 847 (W.D. Wash. 2023) ..................................................9

*Great Pac. Sec. v. Barclays Cap., Inc.*,
   743 F. App'x 780 (9th Cir. 2018) ............................................................18

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022)....................................................................7

*Haley v. Macy's, Inc.*,
   263 F. Supp. 3d 819 (N.D. Cal. 2017) ......................................................6

*Hammerling v. Google LLC*,
   2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .........................................11

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................11

*Hart v. TWC Prod. & Tech. LLC*,
   526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................................................10

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. 2020) ..................................................11

*Hill v. NCAA*,
   7 Cal. 4th 1 (1994) ..................................................................................11

*Estate of Hoefer v. ATC Realty Fifteen, Inc.*,
   2021 WL 148087 (N.D. Cal. Jan. 15, 2021) ............................................14

*Hollis v. JPMorgan Chase Bank, N.A.*,
   2014 WL 12792255 (D. Mass. Dec. 10, 2014) ........................................21

- ix -

*Houck v. Corr. Corp., of Am.*,
   2017 WL 347503 (D. Kan. Jan. 24, 2017) .......................................................9

*Hughes v. Chattem, Inc.*,
   818 F. Supp. 2d 1112 (S.D. Ind. 2011) ......................................................13

*Hunt v. U.S. Tobacco Co.*,
   538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008) ......................19

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*,
   192 N.J. 372 (2007) ....................................................................................19

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) .....................................................12

*Jeong v. Nexo Fin. LLC*,
   2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ................................................6

*Ji v. Naver Corp.*,
   2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ..........................................11

*Jones v. Google LLC*,
   73 F.4th 636 (9th Cir. 2023) ..................................................................6, 23

*Karupaiyan v. Experis IT*,
   2022 WL 4280529 (S.D.N.Y. Sept. 15, 2022) ...........................................14

*Katz v. N.T. Callaway Real Est. Broker, LLC*,
   2016 WL 6677897 (N.J. Super. Ct. App. Div. Nov. 14, 2016) ................17

*Kurowski v. Rush Sys. for Health*,
   2023 WL 4707184 (N.D. Ill. July 24, 2023) ..............................................16

*Lapin v. Shulton, Inc.*,
   333 F.2d 169 (9th Cir. 1964) .......................................................................7

*Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*,
   21 F. Supp. 2d 785 (W.D. Tenn. 1998) ......................................................22

*LeBrun v. CBS Tele. Studios, Inc.*,
   68 Cal. App. 5th 199 (2021) .......................................................................20

*Lett v. Collis Foods, Inc.*,
   60 S.W.3d 95 (Tenn. Ct. App. 2001) ..........................................................21

*Lloyd v. Facebook, Inc.*,
   2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ..............................................11

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
   2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) ....................................24, 25

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................9, 12

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................24

*Manigault-Johnson v. Google, LLC*,
   2019 WL 3006646 (D.S.C. Mar. 31, 2019) ....................................................12

*Martinez v. Newsom*,
   46 F.4th 965 (9th Cir. 2022)...........................................................................24

*McCoy v. Alphabet, Inc.*,
   2021 WL 405816 (N.D. Cal. Feb. 2, 2021)................................................11, 18

*McDonald v. Kiloo ApS*,
   385 F. Supp. 3d 1022 (N.D. Cal. 2019) ..........................................................10

*McKee v. Meltech, Inc.*,
   2011 WL 1770461 (W.D. Tenn. May 9, 2011)................................................14

*Melzer v. Johnson & Johnson Consumer Inc.*,
   2023 WL 3098633 (D.N.J. Apr. 26, 2023) ......................................................14

*In re MI Windows & Doors, Inc. Prod. Liab. Litig.*,
   2012 WL 5408563 (D.S.C. Nov. 6, 2012) .......................................................19

*Mills v. Wex-Tex Indus., Inc.*,
   991 F. Supp. 1370 (M.D. Ala. 1997) .................................................................9

*Mount v. PulsePoint, Inc.*,
   684 F. App'x 32 (2d Cir. 2017)..........................................................13, 14, 17

*Mousavi v. John Christner Trucking, LLC*,
   487 F. Supp. 3d 1194 (N.D. Okla. 2020) ...........................................................9

*Mulligan v. Choice Mortg. Corp. USA*,
   1998 WL 544431 (D.N.H. Aug. 11, 1998) ......................................................19

*Nacarino v. Chobani, LLC*,
   2021 WL 3487117 (N.D. Cal. Aug. 9, 2021).....................................................8

*Nat'l Farmers Org. v. Associated Milk Producers, Inc.*,
   850 F.2d 1286 (8th Cir. 1988).............................................................................7

*Nataros v. Fine Arts Gallery of Scottsdale, Inc.*,
   612 P.2d 500 (Ariz. Ct. App. 1980) ................................................................15

*Neal v. IAB Fin. Bank*,
   68 N.E.3d 1114 (Ind. Ct. App. 2017)...............................................................21

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................................................22

*Nevis v. Wells Fargo Bank*,
   2010 WL 11636091 (N.D. Cal. Jan. 13, 2010) .......................................................22

*In re Nickelodeon Consumer Priv. Litig.*,
   2014 WL 3012873 (D.N.J. July 2, 2014) .............................................................9, 14

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ...................................................................................12

*O'Neill v. United States*,
   328 F. Supp. 3d 16 (D. Mass. 2018) ......................................................................21

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962 (N.D. Cal. 2015) ........................................................................6

*Owen v. Gen. Motors Corp.*,
   533 F.3d 913 (8th Cir. 2008) ..................................................................................19

*Pagán v. Calderón*,
   448 F.3d 16 (1st Cir. 2006) ....................................................................................24

*Parr v. Maesbury Homes, Inc.*,
   2009 WL 5171770 (M.D. Fla. Dec. 22, 2009) .......................................................19

*Pierre v. Griffin*,
   2021 WL 4477764 (D.N.H. Sept. 30, 2021) .............................................................9

*Pinkney v. Thomas*,
   583 F. Supp. 2d 970 (N.D. Ind. 2008) ....................................................................21

*Popa v. Harriet Carter Gifts, Inc.*,
   426 F. Supp. 3d 108 (W.D. Pa. 2019) .....................................................................12

*In re Pre-Filled Propane Tank Antitrust Litig.*,
   893 F.3d 1047 (8th Cir. 2018) ..................................................................................6

*Rabin v. Google LLC*,
   2023 WL 4053804 (N.D. Cal. June 15, 2023) ..........................................................8

*Rainbow Realty Grp., Inc. v. Carter*,
   131 N.E.3d 168 (Ind. 2019) ....................................................................................19

*Ramirez v. HV Glob. Mgmt. Corp.*,
   2023 WL 4410944 (N.D. Cal. July 6, 2023) .............................................................8

*Reed v. Reid*,
   980 N.E.2d 277 (Ind. 2012) ....................................................................................14

*Reger v. Arizona RV Centers, LLC*,
    515 F. Supp. 3d 915 (N.D. Ind. 2021) ........................................................................17

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2019) ....................................................................13

*Ruddy v. U.S.*,
    2011 WL 5834953 (M.D. Pa. Nov. 21, 2011) ..............................................................9

*Russell v. Walmart, Inc.*,
    2023 WL 4341460 (N.D. Cal. July 5, 2023) ..............................................................13

*Ryan v. Greif, Inc.*,
    2023 WL 5979711 (D. Mass. Sept. 1, 2023) ............................................................19

*Ryan v. Wersi Elec. GmbH & Co.*,
    59 F.3d 52 (7th Cir. 1995)........................................................................................19

*S&J, Inc. v. McLoud & Co., L.L.C.*,
    108 S.W.3d 765 (Mo. App. 2003)............................................................................13

*Sandy v. Baca Grande Prop. Owners Ass'n*,
    2020 WL 563294 (D. Colo. Feb. 5, 2020) ..................................................................9

*Sanh v. Opportunity Fin., LLC*,
    2021 WL 101199 (W.D. Wash. Jan. 12, 2021)..........................................................14

*Schmidt v. Household Fin. Corp., II*,
    276 Va. 108 (2008) ..................................................................................................14

*Schulte v. Conopco, Inc.*,
    997 F.3d 823 (8th Cir. 2021)..............................................................................15, 17

*Sender v. Mann*,
    423 F. Supp. 2d 1155 (D. Colo. 2006) ....................................................................21

*Shapiro v. AT&T Mobility, LLC*,
    2020 WL 4341778 (C.D. Cal. May 18, 2020) ..........................................................12

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st Cir. 2017)........................................................................................15

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)......................................................................................7

*Stalvey v. American Bank Holdings, Inc.*,
    2013 WL 6019320 (D.S.C. Nov. 13, 2013) ..............................................................17

*State Farm Mut. Auto. Ins. Co. v. BMW of N. Am., LLC*,
    2009 WL 2447612 (E.D. Mich. Aug. 7, 2009) ........................................................19

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. 2014) ............................................................................. 9

*Svenson v. Google Inc.*,
   2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ........................................................ 16

*In re TelexFree Sec. Litig.*,
   357 F. Supp. 3d 70 (D. Mass. 2019) ....................................................................... 22

*Thiedemann v. Mercedes-Benz USA, LLC*,
   183 N.J. 234 (2005) ................................................................................................ 15

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023) ................................................................................................ 23

*Tyler Barnett PR, LLC v. Facebook Inc.*,
   2017 WL 6449821 (N.D. Cal. Dec. 18, 2017) ......................................................... 6

*Univalor Tr., SA v. Columbia Petroleum, LLC*,
   315 F.R.D. 374 (S.D. Ala. 2016) ............................................................................. 7

*Waggin' Train, LLC v. Normerica, Inc*,
   2010 WL 145776 (W.D. Tenn. Jan. 8, 2010) ......................................................... 16

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
   249 S.W.3d 301 (Tenn. 2008) ................................................................................ 17

*Weinberg Co. v. Bixby*,
   185 Cal. 87 (1921) ................................................................................................. 23

*Wesch v. Yodlee, Inc.*,
   2021 WL 6206644 (N.D. Cal. July 19, 2021) ........................................................ 16

*Whitehaven Cmty. Baptist Church v. Holloway*,
   973 S.W.2d 592 (Tenn. 1998) ................................................................................ 13

*Wiatt v. Winston & Strawn LLP*,
   838 F. Supp. 2d 296 (D.N.J. 2012) ........................................................................ 22

**Statutes**

73 Pa. Stat. Ann. § 201-9.2 ........................................................................................... 15

Cal. Bus. & Prof. Code § 17204 .................................................................................... 15

Fla. Stat. Ann. § 501.211 ............................................................................................... 15

Ind. Code Ann. § 24-5-0.5-4 .......................................................................................... 15

Miss. Code Ann. § 75-24-15(4) ..................................................................................... 17

S.C. Code Ann. § 39-5-140 ...........................................................................15, 17

Tenn. Code Ann. § 47-18-109(g) ..........................................................................17

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ..................................................................22

55 Cal. Jur. 3d Restitution § 2 (2023) .....................................................................20

California Civil Jury Instructions, No. 3610 (2023) ................................................23

Restatement (2d) of Torts § 315(a) (1965) ..............................................................21

MOTION TO DISMISS FOURTH AMENDED
COMPLAINT 19-CV-07016-BLF

1   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.     INTRODUCTION**

3       This case returns from the Ninth Circuit for the Court to consider Defendants' non-

4   preemption-based grounds for dismissal.  On remand, Plaintiffs were granted leave to amend their

5   complaint to add additional named Plaintiffs and claims, and Defendants now move to dismiss

6   Plaintiffs' Fourth Amended Complaint ("FAC").

7       As this Court is aware, Plaintiffs' claims are based on the contention that, before 2020,

8   Google impermissibly collected and used data from viewers of alleged child-directed content on

9   YouTube.  Despite yet another amendment, Plaintiffs' claims remain fatally flawed.

10      First, the Federal Trade Commission ("FTC") already has addressed the alleged data

11  practices Plaintiffs challenge by bringing and settling an enforcement action against Google in

12  coordination with the Attorney General for the State of New York ("NYAG").  Without admitting

13  liability, Google resolved that action by voluntarily agreeing to certain injunctive relief and

14  paying a fine in a settlement approved by the District Court for the District of Columbia.

15  Plaintiffs' requests for injunctive relief overlap substantially with that injunction; thus Plaintiffs

16  lack Article III standing to pursue such relief.

17      Second, Plaintiffs still have not stated any valid claims.  They cannot pursue equitable

18  claims because they allege no facts showing they lack adequate legal remedies.  Their intrusion

19  upon seclusion and privacy claims fail as a matter of law because the alleged first-party data

20  collection and use was clearly disclosed and involved data elements routinely captured as part of

21  internet browsing activity.  Their unjust enrichment claims also should be dismissed because the

22  allegations in the FAC do not show any unjustly conferred benefit at Plaintiffs' expense, expected

23  remuneration, or other theory of liability that would support a claim.  And their assortment of

24  consumer protection claims fail because they do not allege cognizable injury and for a host of

25  other state-specific reasons.

26      Third, Plaintiffs again have not alleged any facts to state a claim against the "Channel

27  Owners," a diverse group of content creators that display content on YouTube (and other

28  platforms).  As an initial matter, after five attempts, Plaintiffs ***still*** have failed to plead any theory

MOTION TO DISMISS FOURTH AMENDED
                                      COMPLAINT 19-CV-07016-BLF

of direct liability against the Channel Owners because the FAC fails to allege that any Channel Owner unlawfully collected *any* data. Plaintiffs cannot circumvent their inability to plead direct liability by lumping all "Defendants" together, as they attempt to do once more. Nor can Plaintiffs try to establish secondary liability by alleging—for the first time—that the Channel Owners "directed" Google to collect Plaintiffs' data. This new theory is facially implausible and also directly contradicts Plaintiffs' concession that personalized advertising was a "default" setting on YouTube channels. Plaintiffs do not and cannot allege that any Channel Owner knew an alleged privacy violation would occur if it did not opt out of that setting, or even that any Channel Owner knew personalized advertising and the concomitant collection of information was occurring at all. Finally, Plaintiffs cannot pursue state-law claims against certain Channel Owners in certain states because no Plaintiff allegedly watched the Channel Owner's YouTube Channel in that state. *Infra* § IV.C, Table 1.

Plaintiffs have already amended their complaint four times over the past four years. Dismissal of their claims should be with prejudice.

## II.   BACKGROUND

### A.   Defendants Google and YouTube

YouTube is an online video-sharing platform that allows users around the world to upload, share, and view video content. *See* Dkt. 197 (FAC) ¶¶ 3, 69. Users may view videos on the YouTube platform for free without registering or signing into a Google account. *Id.* ¶ 4. However, certain YouTube functionality, such as posting videos or comments, requires users to create a Google account. *Id.* ¶ 3; Dkt. 126-4 §§ 3(A), 6(A).

YouTube users are subject to Google's Privacy Policy, which is incorporated into YouTube's Terms of Service. *See* Dkt. 126-4 § 1(A). The Privacy Policy informs all users that Google collects certain information from them when they use Google's services. Dkt. 126-3 at 18 ("This Privacy Policy applies to all of the services offered by Google LLC and its affiliates, including YouTube."). Google's Privacy Policy is written in an easy-to-understand manner and informs users how Google collects and uses information. *E.g.*, *id.* at 2 ("We want you to understand the types of information we collect as you use our services.").

Google's Privacy Policy explains that user data is collected regardless of whether users signed in to an account. *Id.* ("When you're not signed in to a Google Account, we store the information we collect with unique identifiers tied to the browser, application, or device you're using."). That includes information such as: (1) "information about the apps, browsers, and devices you use to access Google services" (*e.g.*, operating system and network information); (2) "information about your activity in our services" (*e.g.*, videos watched); and (3) "information about your location when you use our services" (*e.g.*, IP address). *Id.* at 2–5.

As Google explains in its Privacy Policy, it uses this information to provide, maintain, and improve its services; develop new services; measure performance; communicate with users; and improve the safety and reliability of its products. *Id.* at 5–8 (section entitled "Why Google collects data"). This information also enables Google to serve personalized content and ads based on user interests. *Id.* at 6–7 (section entitled "Provide personalized services, including content and ads"). So if users "search for 'mountain bikes,'" they "may see an ad for sports equipment when [they are] browsing a site that shows ads served by Google." *Id.* at 7.

The Terms of Service also emphasized that YouTube is only for users "more than 18 years of age, or an emancipated minor, or [those who] possess legal parental or guardian consent." Dkt. 126-4 § 12. The Terms cautioned users that "the Service is not intended for children under 13" and directed individuals under the age of 13 not to use the service: "If you are under 13 years of age, then please do not use the Service. There are lots of other great web sites for you. Talk to your parents about what sites are appropriate for you." *Id.* Throughout the relevant time period, "Google prevent[ed] users who identify as under thirteen years old from creating a Google account (an 'age gate')." Dkt. 1 ¶ 41. For viewers under the age of 13, Google created YouTube Kids, a service that was "Made Just for Kids," and was "designed to be a safer and simpler place for kids to explore their interests through online video." FAC ¶ 114. YouTube Kids does not provide personalized advertising. *Id.* ¶ 115.

## B.      Prior FTC and New York Attorney General Enforcement Action

On September 4, 2019, the FTC and the NYAG brought an action against Google for alleged violations of the Children's Online Privacy Protection Act ("COPPA") in the U.S. District

MOTION TO DISMISS FOURTH AMENDED
COMPLAINT 19-CV-07016-BLF

1   Court for the District of Columbia (the "FTC Action").  Dkt. 94-1 (Complaint, *F.T.C. v. Google*

2   *LLC*, No. 19-cv-02642 (D.D.C. Sept. 4, 2019), ECF No. 1).  They did not assert claims against

3   the Channel Owners or any other YouTube user or creator.  Google, without any admission of

4   liability, agreed to a stipulated permanent injunction and a civil penalty of $170 million, which

5   the court approved and entered as a stipulated order.  Dkt. 126-5 (Stipulated Order at 10–13,

6   *F.T.C. v. Google LLC*, No. 19-cv-02642 (D.D.C. Sept. 10, 2019), ECF No. 5).  The Stipulated

7   Order requires Google to: (1) develop, implement, and maintain a system that permits YouTube

8   channel owners to identify their child-directed content on the YouTube platform; (2) notify

9   channel owners that their child-directed content may be subject to COPPA requirements; (3)

10  provide annual training about complying with COPPA for employees who deal with YouTube

11  channel owners; and (4) provide notice about its data collection practices and obtain verifiable

12  parental consent before collecting personal information from children.  *Id*. at 10–12.

13      For previously collected information, the Stipulated Order required Google to refrain from

14  disclosing, using, or benefiting from such data.  *Id*. at 12.  The deadline for compliance with these

15  mandates was January 10, 2020.  *Id*. at 4.  The Stipulated Order also includes compliance

16  reporting, record keeping, and compliance monitoring requirements for 10 additional years.  *Id*. at

17  15–19.  With respect to compliance reporting, Google must describe in detail the means by which

18  parents may refuse or permit further use or maintenance of information regarding their children.

19  *Id*. at 15–16.  The FTC and the NYAG may move to enforce the Stipulated Order, with the

20  District Court for the District of Columbia retaining jurisdiction.  *Id*. at 21.

21      **C.      Plaintiffs' Five Complaints**

22      Plaintiffs filed their initial complaint within weeks of the FTC Action (Dkt. 1 (Oct. 25,

23  2019)) and have since amended it four times.  Dkts. 88, 92, 121, 197.  Plaintiffs are children

24  living in 22 states:  Alabama, Arizona, California, Colorado, Florida, Illinois, Indiana, Kansas,

25  Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New Jersey, New York,

26  Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Virginia, and Washington.

27  FAC ¶¶ 28–49.

28      Plaintiffs' core allegations remain the same.  They focus on the alleged collection of

1   information, without obtaining parental consent, from viewers of child-directed content on

2   YouTube for the purpose of serving personalized rather than contextual ads.  *See* FAC ¶¶ 10–11;

3   *see also* Dkt. 146 at 7–8.  Notably, even in this FAC, Plaintiffs are still silent as to how they

4   accessed the YouTube platform, on which devices they viewed videos, or whether they viewed

5   such videos in the company or with the permission of their parents or guardians.

6        According to Plaintiffs, the Channel Owners are named as defendants because they

7   "maintain YouTube channels and create content specifically for their YouTube channels."  FAC

8   ¶ 5.  Plaintiffs' original complaint lumped all "Defendants" together, while neglecting to allege

9   any tortious acts by the Channel Owners.  Their next two pleading attempts merely swapped

10   "Defendants" for a specific list of names.  Dkt. 88 ¶ 139; Dkt. 92 ¶ 139.  Now, at the Court's

11   insistence that Plaintiffs make more precise allegations about the Channel Owners, Dkt. 117

12   at 13, Plaintiffs fall back on allegations that Channel Owners have acted with a "common

13   purpose" or "aid[ed] and assist[ed]" Google's alleged collection of data.  *See generally* FAC.

14   Specifically, Plaintiffs allege that the Channel Owners "directed Google to collect the Personal

15   Information of viewers" through omission—*i.e.*, by failing to "turn off [default] behavioral

16   advertising."  FAC ¶¶ 12, 91, 140–41, 146–47, 153–54, 158–59.

17        **D.    This Court's and the Ninth Circuit's Ruling**

18        In its second Order dismissing Plaintiffs' complaint, this Court held that COPPA

19   preempted Plaintiffs' claims.  Dkt. 146.  Pertinent to the issues that remain following remand, the

20   Court found that Google "***disclosed*** the fact that it collected data from YouTube users," listing the

21   various categories of data.  *Id.* at 8, 10.  The Court further observed that Plaintiffs do "not allege

22   that they, or their parents, read any of the disclosures in the Privacy Policy or [Google's] Code of

23   Conduct."  *Id.* at 8–9.  Indeed, Plaintiffs admitted that they "do not allege that their parents would

24   have stopped them from using YouTube with different disclosures."  Dkt. 127 at 18–19.  The

25   Court did not address the Channel Owners' alternative grounds for dismissal, granting Plaintiffs

26   leave to amend their complaint.  Dkt. 146 at 11–12.  Plaintiffs declined the Court's invitation and

27   appealed the Court's ruling.  Dkts. 147, 149.

28        The Ninth Circuit reversed on preemption, holding that "Congress intended to preempt

MOTION TO DISMISS FOURTH AMENDED
                                         COMPLAINT 19-CV-07016-BLF

1  inconsistent state laws, not state laws that are consistent with COPPA's substantive requirements,

2  such as the state law causes of action pleaded in the complaint here." *Jones v. Google LLC*, 73

3  F.4th 636, 639 (9th Cir. 2023) (emphasis omitted).  The panel did not address the alternative

4  grounds for dismissal and remanded for this Court to consider them "in the first instance." *Id.* at

5  644.  After the Ninth Circuit decision, Plaintiffs moved to amend their complaint for the fourth

6  time.  Dkt. 178.  The Court granted Plaintiffs' motion.  Dkt. 195.

7  **III.   THE FAC SHOULD BE DISMISSED IN ITS ENTIRETY**

8  **A.   The Court Should Dismiss Plaintiffs' Claims for Equitable Relief**

9  1.   <u>Plaintiffs Lack Article III Standing to Seek Injunctive Relief</u>

10  While the Ninth Circuit held Plaintiffs may pursue claims consistent with COPPA, that

11  does not mean they have standing to seek injunctive relief.  To have standing to pursue injunctive

12  relief, *e.g.*, FAC ¶¶ 434, 488, 530, Plaintiffs "must demonstrate a 'real and immediate threat of

13  repeated injury' in the future," *Haley v. Macy's, Inc*., 263 F. Supp. 3d 819, 824 (N.D. Cal. 2017)

14  (citation omitted), which is clearly "impending," *Tyler Barnett PR, LLC v. Facebook Inc*., 2017

15  WL 6449821, at *3 (N.D. Cal. Dec. 18, 2017).  Article III further requires each Plaintiff "show

16  that he or she personally faced the threat of harm." *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at

17  *7 (N.D. Cal. Jan. 19, 2022).  Plaintiffs yet again fail to meet that standard.

18  While Plaintiffs seek "an injunction requiring Defendants to each permanently delete,

19  destroy or otherwise sequester the Personal Information collected without parental consent," and

20  "to provide a complete audit and accounting of the uses of the Personal Information by them and

21  any other third parties," the Stipulated Order already bars Google from disclosing, using, or

22  benefitting from collected data, Dkt. 126-5 at 12, and Plaintiffs do not allege Channel Owners

23  collected any data, so there would be nothing to delete or account for.  As to Google, the

24  Stipulated Order also imposes various reporting and monitoring requirements.  Dkt. 126-5 at 15–

25  19.  Where, as here, the "alleged gaps" have "already [been] remedied," Plaintiffs lack standing.

26  *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 988 (N.D. Cal. 2015).  Courts have consistently held

27  plaintiffs lack standing to seek injunctive relief when an FTC order provides substantially the

28  same relief.  *E.g.*, *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1054 (8th Cir.

2018).  Given that the Stipulated Order provides "substantially the same relief" that Plaintiffs

seek, "there is nothing to be gained by entering an injunction that substantially duplicates the

relief already available."  *Nat'l Farmers Org. v. Associated Milk Producers, Inc.*, 850 F.2d 1286,

1309 (8th Cir. 1988).

This is especially true because Plaintiffs do not allege that they watched YouTube ***after***

April 2020; nor do they allege facts showing they intend to use YouTube in the future.  *See* FAC

¶¶ 210–341.  There is no plausible imminent risk of future harm.  To the extent Plaintiffs take

issue with the Stipulated Order or Google's compliance with the Order, the U.S. District Court for

the District of Columbia has retained jurisdiction "for purposes of construction, modification, and

enforcement" of its Order.  Dkt. 126-5 at 21.  Moreover, the Ninth Circuit has recognized that it

would "interfere with" and "usurp" the "inherent power" of a court that issued an injunction for

"a nonissuing court to entertain an action" for relief covering the same subject matter.  *Lapin v.*

*Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964).  In *Lapin*, the Ninth Circuit noted that a request

for injunctive relief that overlaps with an existing consent decree overseen by another court

should not be entertained and jurisdiction over the relief sought should be refused.  *Id.*; *see also*

*Feller v. Brock*, 802 F.2d 722, 728 (4th Cir. 1986) (noting that a "district court's supervisory

power over its injunction continues").

2.  Plaintiffs Cannot Pursue Other Equitable Relief Because They Do Not Plausibly Allege That They Lack Adequate Remedies at Law

All of Plaintiffs' remaining claims for equitable relief should be dismissed because the

FAC does not plausibly allege that Plaintiffs lack adequate remedies at law.  As the Ninth Circuit

has instructed, failure to allege facts showing inadequate remedies at law warrants dismissal of

claims for equitable relief.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir.

2020); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022).[1]  Specifically,

---

[1] *See also Univalor Tr., SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 383 (S.D. Ala. 2016)

(dismissing unjust enrichment claim); *Flores v. OneWest Bank, F.S.B.*, 172 F. Supp. 3d 391, 396

(D. Mass. 2016), *aff'd* 886 F.3d 160 (1st Cir. 2018) (same); *Glob. Crossing Telecomms., Inc. v.*

1  "[p]laintiffs must plead facts as to *why* their claims [] provide inadequate remedies at law."

2  *Freund v. HP, Inc.*, 2023 WL 187506, at *6 (N.D. Cal. Jan. 13, 2023) (emphasis added); *see also*

3  *Day v. Advanced Micro Devices, Inc.*, 2023 WL 2347421, at *1 (N.D. Cal. Mar. 2, 2023) (same).

4        Plaintiffs seek various legal remedies, including compensatory, statutory, and punitive

5  damages.  *See* FAC at 188.  They also seek equitable relief, including "restitution, disgorgement,

6  and/or the imposition of a constructive trust to recover the amount of Defendants' ill-gotten

7  gains."  *E.g.*, FAC ¶ 400.  The FAC, however, does not plead facts plausibly showing that the

8  legal remedies Plaintiffs seek are inadequate, as they are required to do.  Instead, all Plaintiffs do

9  in the FAC is to repeat 21 times the identical boilerplate assertion that they "have no adequate

10  remedy at law," *e.g.*, FAC ¶¶ 400, 443, 505, 539, while actively pursuing legal remedies.  That

11  conclusory phrase is insufficient.  In particular, Plaintiffs fail to allege *how* the compensatory,

12  statutory, punitive, and other damages they seek would be inadequate or incomplete; nor do they

13  plausibly "distinguish their request for restitution from their request for damages."  *In re Cal.*

14  *Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021).

15        Because Plaintiffs have not alleged *any facts*, for the fifth time, establishing that remedies

16  at law are inadequate, their UCL claim and claims for unjust enrichment fail as a matter of law.

17  Courts routinely dismiss equitable claims based on similarly deficient allegations, and this Court

18  should do the same.  *E.g.*, *Rabin v. Google LLC*, 2023 WL 4053804, at *13 (N.D. Cal. June 15,

19  2023) (dismissing unjust enrichment and UCL claims because no plausible allegations showing

20  lack of adequate remedy at law); *Ramirez v. HV Glob. Mgmt. Corp.*, 2023 WL 4410944, at *7

21  (N.D. Cal. July 6, 2023) (dismissing UCL claim where damages were available under Labor

22  Code); *Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *13 (N.D. Cal. Aug. 9, 2021)

23  (dismissing UCL claim to the extent it sought restitution or disgorgement due to failure to allege

24  lack of adequate remedy at law).

25       **B.**    **Plaintiffs Fail to Plead Viable Claims for Intrusion Upon Seclusion or**
              **Violation of the California Constitutional Right to Privacy**

26

27        Plaintiffs' privacy claims under laws of Alabama, Arizona, California, Colorado, Illinois,

28  *Michigan Bell Tele. Co.*, 2010 WL 2011502, at *4 (E.D. Mich. May 17, 2010) (same).

MOTION TO DISMISS FOURTH AMENDED
   COMPLAINT 19-CV-07016-BLF

1   Kansas, Missouri, New Hampshire, New Jersey, Oklahoma, Pennsylvania, South Dakota, and

2   Washington fare no better.  In the face of Google's comprehensive and truthful disclosures

3   regarding its data practices, Plaintiffs' allegations do not show any actionable invasion.

4       For intrusion upon seclusion claims, one factor courts focus on is whether there is an

5   "intrusion into a private place, conversation or matter . . . in a manner highly offensive."  *Low v.*

6   *LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).[2]  A plaintiff must have a

7   "reasonable expectation of seclusion or solitude in the place, conversation or data source."

8   *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1034 (N.D. Cal. 2014).[3]  A privacy claim

9

10  [2] *See also Doe v. Roe*, 638 So.2d 826, 828 (Ala. 1994); *Davis v. HDR Inc.*, 606 F. Supp. 3d 898,

11  910 (D. Ariz. 2022); *Curry v. MillerCoors, Inc.*, 2013 WL 4494307, at *4–5 (D. Colo. Aug. 21,

12  2013); *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 835 (N.D. Ill. 2009); *Frye v. IBP, Inc.*, 15

13  F. Supp. 2d 1032, 1042 (D. Kan. 1998); *Adams v. PSP Grp., LLC*, 2023 WL 5951784, at *7 (E.D.

14  Mo. Sept. 13, 2023); *Pierre v. Griffin*, 2021 WL 4477764, at *5 (D.N.H. Sept. 30, 2021); *In re*

15  *Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *19 (D.N.J. July 2, 2014); *Mousavi v.*

16  *John Christner Trucking, LLC*, 487 F. Supp. 3d 1194, 1203–05 (N.D. Okla. 2020); *Gates v. Black*

17  *Hills Health Care Sys. (BHHCS)*, 997 F. Supp. 2d 1024, 1033 (D.S.D. 2014); *Gabriel v. Giant*

18  *Eagle, Inc.*, 124 F. Supp. 3d 550, 572 (W.D. Pa. 2015); *Gray v. Amazon.com, Inc.*, 653 F. Supp.

19  3d 847, 860–61 (W.D. Wash. 2023).

20  [3] *See also Mills v. Wex-Tex Indus., Inc.*, 991 F. Supp. 1370, 1384 (M.D. Ala. 1997); *Davis*, 606 F.

21  Supp. 3d at 910; *Sandy v. Baca Grande Prop. Owners Ass'n*, 2020 WL 563294, at *6 (D. Colo.

22  Feb. 5, 2020); *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005); *Houck v.*

23  *Corr. Corp., of Am.*, 2017 WL 347503, at *6 (D. Kan. Jan. 24, 2017); *Elgin v. St. Louis Coca-*

24  *Cola Bottling Co.*, 2005 WL 3050633, at *3 (E.D. Mo. Nov. 14, 2015); *Pierre*, 2021 WL

25  4477764, at *4; *In re Nickelodeon*, 2014 WL 3012873, at *18; *Doe v. Brundage-Bone Concrete*

26  *Pumping, Inc.*, 2006 WL 2472850, at *4 n.4 (W.D. Ok. Aug. 23, 2006); *Ruddy v. U.S.*, 2011 WL

27  5834953, at *5 (M.D. Pa. Nov. 21, 2011); *Gates*, 997 F. Supp. 2d at 1033; *Gray*, 653 F. Supp. 3d

28  at 860.

MOTION TO DISMISS FOURTH AMENDED
                    COMPLAINT 19-CV-07016-BLF

1  under the California Constitution must satisfy the same requirements.  *See In re Google Location*

2  *History Litig.*, 428 F. Supp. 3d 185, 197 (N.D. Cal. 2019).  Because the law "sets a 'high bar' for

3  establishing an invasion of privacy claim," these threshold requirements serve to "weed out"

4  claims that do not involve egregious intrusions into a "protected privacy interest."  *Id.* at 196.

5         To determine if there was an egregious invasion into a protected privacy interest, courts

6  analyze how the data allegedly was collected and used and whether that activity was disclosed.

7  When plaintiffs allege secret data collection involving unknown third parties, courts have found

8  that sufficient to clear the high bar at the pleading stage.  *See New Mexico ex rel. Balderas v. Tiny*

9  *Lab Prods.*, 457 F. Supp. 3d 1103, 1109 (D.N.M. 2020); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d

10  1022, 1035 (N.D. Cal. 2019).  Here, however, Plaintiffs do not allege data collection involving

11  unknown third parties.  In addition, courts have held that "allegations of surreptitious data

12  collection when individuals were not using [a service]" allowed a complaint "to survive a

13  dismissal motion."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir.

14  2020) (alleging secret data collection from logged out users despite representations that "logged-

15  out user data would not be collected"); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592,

16  602 (N.D. Cal. 2021) (similar).  But Plaintiffs have not plausibly alleged any surreptitious data

17  collection when Google's services were no longer being used.

18         As Plaintiffs concede, and as this Court previously found, Google openly disclosed its

19  data practices.  *See* FAC ¶ 80; Dkt. 117 (Order dismissing SAC) at 11 ("Plaintiffs do not allege

20  that Defendants created an expectation of privacy through deceitful conduct."); Dkt. 146 (Order

21  dismissing TAC) at 9–11 (same).  Google's Privacy Policy—directed to parents and adults who

22  make decisions about children's access to devices and YouTube—explains that the information

23  collected from users includes "information about the apps, browsers, and devices you use to

24  access Google services" as well as "information about your activity in our services."  Dkt. 126-3

25  at 4.  The Privacy Policy identifies the categories of information collected from *all* users without

26  differentiation and makes clear that Google uses this information to serve targeted

27  advertisements.  *E.g.*, *id.* at 3–7 ("Depending on your settings, we may also show you

28  personalized ads based on your interests."), 20 ("[I]f you watch videos about baking on YouTube,

MOTION TO DISMISS FOURTH AMENDED
COMPLAINT 19-CV-07016-BLF

1    you may see more ads that relate to baking.”).

2         Google’s alleged collection and use of “first-party” data in accordance with its public

3    policies undercuts Plaintiffs’ claims, and Plaintiffs cannot plausibly allege any reasonable privacy

4    expectations associated with any alleged use of YouTube.  *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994)

5    (“advance notice of an impending action” undercuts privacy expectation); *Lloyd v. Facebook,*

6    *Inc.*, 2022 WL 4913347, at *10 (N.D. Cal. Oct. 3, 2022) (no reasonable expectation of privacy

7    exists when Facebook disclosed third parties “provide information [to Facebook] about your

8    activities … whether or not you have a Facebook account or are logged in[]”); *In re Google, Inc.*

9    *Priv. Policy Litig.*, 2013 WL 6248499, at *16 (N.D. Cal. Dec. 3, 2013) (dismissing intrusion

10   claim when data collection was disclosed).

11        The absence of deception and Google’s clear disclosures also undermine any assertion

12   that its alleged data collection was “highly offensive” or “egregious.”  As Courts in this district

13   have observed, even if consumers had a reasonable expectation of privacy in general online usage

14   data, “that does not mean that a reasonable consumer would be particularly shocked or offended

15   to discover that Google is in fact collecting this sort of data.”  *Hammerling v. Google LLC*, 615 F.

16   Supp. 3d 1069, 1091 (N.D. Cal. 2022); *see also Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182,

17   1193 (N.D. Cal. 2020) (collection of generalized location information only while plaintiffs were

18   using the app did not violate social norms); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at

19   198 (dismissing privacy claim where defendant’s collection of geolocation data was not

20   automatic, but limited to when plaintiffs were using defendant’s services).

21        In addition, the type of data collection alleged here—*i.e.*, first-party collection of online

22   activity data—is “better characterized as data collection of ‘routine commercial behavior,’ [and]

23   not considered a highly offensive intrusion of privacy in this district.”  *Hammerling v. Google*

24   *LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022); *see also McCoy v. Alphabet, Inc.*, 2021

25   WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) (dismissing claims based on collection of app activity

26   data, even if there was no consent, because such data “does not rise to the requisite level of an

27   egregious breach of social norms”); *Ji v. Naver Corp.*, 2022 WL 4624898, at *11 (N.D. Cal. Sept.

28   30, 2022) (holding that “track[ing] videos watched, created, liked, and/or commented on by

1    users" was not the type of "sensitive and confidential information necessary to state a claim for

2    invasion of privacy"); *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 985, 988 (N.D.

3    Cal. 2014) (noting courts in this District have "consistently refused to characterize the disclosure

4    of common, basic digital information to third parties as serious or egregious violations of social

5    norms"); *Low*, 900 F. Supp. 2d at 1016-17, 1025 (collection of online user activity data not

6    actionable); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same).

7        Courts across the country have likewise dismissed privacy claims based on alleged

8    collection of information about online activity.  *E.g.*, *Cousin v. Sharp Healthcare*, 2023 WL

9    4484441, at *5 (S.D. Cal. July 12, 2023) (disclosure of user interactions and location data

10   associated with healthcare provider website not highly offensive); *Shapiro v. AT&T Mobility,*

11   *LLC*, 2020 WL 4341778, at *2 (C.D. Cal. May 18, 2020) (disclosure of configuration and use

12   data not an egregious breach of social norms); *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d

13   108, 122–23 (W.D. Pa. 2019) (collecting "keystrokes, mouse clicks, and PII is simply not the type

14   of highly offensive act to which liability can attach"); *Allen v. Quicken Loans Inc.*, 2018 WL

15   5874088, at *1, *12 n.4 (D.N.J. Nov. 9, 2018) (same).

16       That Plaintiffs are children does not change the outcome.  As the Third Circuit held,

17   Google's "use of cookies to track children," when done without deception, was ***not*** "sufficiently

18   offensive . . . to survive a motion to dismiss."  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d

19   262, 294–95 (3d Cir. 2016).  The alleged tracking in that case involved "targeted advertising"

20   based on the same types of information that Plaintiffs allege was collected in this case (on a first-

21   party basis), including IP addresses, browser settings, unique device identifiers, URL requests,

22   video requests, and persistent identifiers.  *Id.* at 269–70.  Similarly, in *Manigault-Johnson v.*

23   *Google, LLC*, the court dismissed virtually identical allegations to those in the FAC, ruling that

24   the alleged collection and use of such user data was not egregious or highly offensive.  2019 WL

25   3006646, at *6 (D.S.C. Mar. 31, 2019).  The court noted the lack of any allegations that Google's

26   conduct violated its privacy policies or "duplicitous tactics."  *Id.*

27       This Court should reach the same conclusion: collection of online activity, geolocation,

28   and browser/device information for the purpose of showing personalized—as opposed to

MOTION TO DISMISS FOURTH AMENDED
COMPLAINT 19-CV-07016-BLF

1   contextual—advertisements, where there are clear public disclosures that such data would be

2   collected and used accordingly, is not actionable.  Plaintiffs' privacy claims should be dismissed.

3       **C.**      **Plaintiffs' State Unjust Enrichment Claims Fail for Additional Reasons**

4       Plaintiffs' unjust enrichment claims also should be dismissed because they fail under state

5   law for multiple, independent reasons.

6       1.      <u>No Unjustly Conferred Benefit to Defendants</u>.  These claims fail because

7   the benefits Defendants allegedly received were not unjustly conferred.  *See, e.g.*, *Whitehaven*

8   *Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) ("The most significant

9   requirement . . . is that the enrichment be unjust.") (internal quotation omitted).[4]  The Channel

10  Owners created video content, which Google made available to the public and Plaintiffs accessed

11  without payment.  Google, moreover, clearly disclosed how it collected and used data associated

12  with YouTube viewers.  Indeed, Plaintiffs admitted that they "do not allege that their parents

13  would have stopped them from using YouTube with different disclosures," Dkt. 127 at 18–19,

14  underscoring the value they derived from YouTube and the lack of any benefit conferred on

15  Defendants via "mistake, fraud, coercion, or request," *Russell v. Walmart, Inc.*, 2023 WL

16  4341460, at *2 (N.D. Cal. July 5, 2023), or other "actionable" conduct, *Rojas-Lozano v. Google,*

17  *Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2019), needed to state a claim; *see also Fed. Home*

18  *Loan Mortg. Corp. v. Anchrum*, 2015 WL 2452775, at *5 (N.D. Ala. May 22, 2015); *City of*

19  *Pontiac v. Blue Cross Blue Shield of Mich.*, 2012 WL 1079895, at *9 (E.D. Mich. Mar. 30, 2012).

20      2.      <u>No Enrichment at Plaintiffs' Expense</u>.  Plaintiffs' claims should be

21  dismissed for the additional reason that they allege no facts showing Defendants were enriched at

22  Plaintiffs' expense, or that Defendants have an ownership interest in the "economic benefits" that

23  Defendants allegedly received.  *E.g.*, FAC ¶¶ 397, 440, 502; *Mount v. PulsePoint, Inc.*, 684 F.

24  App'x 32, 36–37 (2d Cir. 2017) (affirming dismissal of unjust enrichment claim based on alleged

25

26

27  [4] *See also Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1124–25 (S.D. Ind. 2011) (similar);

28  *S&J, Inc. v. McLoud & Co., L.L.C.*, 108 S.W.3d 765, 768 (Mo. App. 2003) (similar).

misappropriation of "browsing" data where no alleged loss or deprivation of opportunity).[5]  As explained in more detail below, Plaintiffs do not allege **facts** showing any loss of money or property or other loss due to Defendants' purported conduct, *see infra* § III.D.1, or that they have a claim over benefits Defendants supposedly derived from the information at issue.  Vague and conclusory references to the "loss of value" of information and "lost profits," *e.g.*, FAC ¶¶ 396, 439, 501, fall well short of well-pleaded facts necessary to support Plaintiffs' claims.  *See Mount*, 684 F. App'x at 36; *Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633, at *7 (D.N.J. Apr. 26, 2023) (no unjust enrichment because "vague references" to "loss of control" over "biometric data" "do not suffice") (citation omitted).

        3.     No Expected Remuneration.  The New Jersey and Indiana claims also fail because the FAC's allegations do not show that Plaintiffs "expected remuneration."  *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *19 (D.N.J. July 2, 2014) ("[I]t is simply not reasonable for a consumer—regardless of age—to use the internet without charge and expect compensation because a provider of online services has monetized that usage."); *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012) (rejecting claim where plaintiff did not expect payment).  Plaintiffs' Virginia and Tennessee unjust enrichment claims likewise fail because their allegations do not show that Defendants reasonably expected to pay Plaintiffs.  *See Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008) (requiring that "[defendant] knew of the benefit and should reasonably have expected to repay [plaintiff]"); *McKee v. Meltech, Inc.*, 2011 WL 1770461, at *10 (W.D. Tenn. May 9, 2011) (similar).

---

[5] *See also Sanh v. Opportunity Fin., LLC*, 2021 WL 101199, at *3 (W.D. Wash. Jan. 12, 2021) (dismissing unjust enrichment claim where plaintiff "does not allege that she paid any fees to [defendant]" or that benefit was "at plaintiff's expense"); *Estate of Hoefer v. ATC Realty Fifteen, Inc.*, 2021 WL 148087, at *4 (N.D. Cal. Jan. 15, 2021) (dismissing unjust enrichment claim where plaintiff failed to show that defendant unjustly retained a benefit at her expense); *Karupaiyan v. Experis IT*, 2022 WL 4280529, at *5 (S.D.N.Y. Sept. 15, 2022) (similar).

4.     No Contract-Based Cause of Action.   The New Jersey unjust enrichment claim should be dismissed because it is pled as a tort, which is not recognized under state law. *See* FAC ¶¶ 314–23; *Bedi v. BMW of N. Am., LLC*, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) (New Jersey only recognizes unjust enrichment for contract or quasi-contract liability).

**D.     Plaintiffs Fail to State a Claim Under State Consumer Protection Laws**

Plaintiffs' claims under the consumer protection statutes of California, Indiana, Massachusetts, New Jersey, Tennessee, Arizona, Florida, Illinois, Michigan, Mississippi, Missouri, New Hampshire, Pennsylvania, South Carolina, and Washington are equally flawed and should be dismissed.[6]

1.     No Requisite Loss Alleged.   Plaintiffs' consumer protection claims all require cognizable loss or damages.  *See* Cal. Bus. & Prof. Code § 17204 (requiring "injury in fact and [] lost money or property").[7]  Plaintiffs, however, do not allege that they or their parents

---

[6] Plaintiffs apparently abandon a fraud-based theory of liability.  To the extent they assert such a theory, it should be dismissed because as this Court previously found, Plaintiffs do not plead the circumstances surrounding any alleged misrepresentations or omissions with particularity.  *See* Dkt. 146 at 11; *see also* Dkt. 125 at 17–18.  The FAC does not cure this deficiency.

[7] *See also Nataros v. Fine Arts Gallery of Scottsdale, Inc*., 126 Ariz. 44, 612 P.2d 500, 504 (Ariz. Ct. App. 1980) (requiring "monetary damages"); Fla. Stat. Ann. § 501.211 (requiring "actual damages"); *Benson v. Fannie May Confections Brands, Inc*., 944 F.3d 639, 647 (7th Cir. 2019) (requiring "actual damages, meaning pecuniary loss" in Illinois); Ind. Code Ann. § 24-5-0.5-4 (requiring "damages actually suffered"); *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017) (requiring "real economic damages" in Massachusetts); *Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 666 (S.D. Miss. 2007) (requiring "ascertainable loss of money or property"); *Schulte v. Conopco, Inc.*, 997 F.3d 823, 825 (8th Cir. 2021) (requiring "ascertainable loss of money or property" in Missouri); *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 252 (2005) (requiring "ascertainable loss"); 73 Pa. Stat. Ann. § 201-9.2 (requiring "ascertainable loss of money or property"); S.C. Code Ann. § 39-5-140 (requiring "ascertainable loss of money or

1   ever paid Google or the Channel Owners to access content on YouTube, or that they lost money

2   or property as a result of the Defendants' alleged practices.  Instead, Plaintiffs assert two theories

3   of injury: (1) loss of the ability to control the use of their information; and (2) loss in value of

4   their information.  *E.g.*, FAC ¶¶ 175–77, 431, 484, 526, 569, 606, 661, 696, 731, 774, 815, 858,

5   927, 963, 1020, 1073.  Neither shows cognizable loss or damages.

6        With respect to Plaintiffs' first theory, the FAC does not allege facts showing that

7   Plaintiffs' personal information no longer belongs to them; nor do Plaintiffs explain why or in

8   what way their information is no longer in their control.  *E.g.*, *Claridge v. RockYou, Inc.*, 785 F.

9   Supp. 2d 855, 862–63 (N.D. Cal. 2011) (rejecting UCL claim where alleged facts did not show

10  that plaintiff's personal information ceased to belong to him or passed beyond his control).  This

11  deficiency is particularly notable because the Stipulated Order in the FTC Action precludes

12  Google from using information Plaintiffs allege was collected (and Plaintiffs concede the Channel

13  Owners never collected any of this data).  *See supra* § II.C.

14       As for Plaintiffs' second theory, courts hold that alleged "lost value of a plaintiff's

15  personal information" does not constitute actionable harm under consumer protection statutes.

16  *Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *4 (N.D. Cal. July 19, 2021); *see also Kurowski v.*

17  *Rush Sys. for Health*, 2023 WL 4707184, at *6 (N.D. Ill. July 24, 2023) (dismissing Illinois

18  consumer protection act claim because alleged "loss of value" of personal information not

19  actionable); *Svenson v. Google Inc.*, 2016 WL 8943301, at *17 (N.D. Cal. Dec. 21, 2016)

20  (similar).  Plaintiffs' failure to allege that they are unable to capitalize on the purported value of

21  their information, or that their information is unusable in some way, is fatal.  *See Flores-Mendez*

22  *v. Zoosk, Inc.*, 2021 WL 4553772, at *2 (N.D. Cal. Oct. 5, 2021) (dismissing claim because even

23  though plaintiffs "provided market valuation for the personal information" they failed to specify

24  _____

25  property, real or personal"); *Waggin' Train, LLC v. Normerica, Inc*, 2010 WL 145776, at *3–4

26  (W.D. Tenn. Jan. 8, 2010) (requiring loss of "money or property  . . . or any other article,

27  commodity, or thing of value"); *Del Vecchio v. Amazon.com Inc.*, 2011 WL 6325910, at *5 (W.D.

28  Wash. Dec. 1, 2011) (requiring "injury to the plaintiff in his or her business or property").

1    how their ability to participate in such a market was impaired); *Adkins v. Facebook, Inc.*, 2019

2    WL 3767455, at *3 (N.D. Cal. Aug. 9, 2019) (same).  Where, as here, the alleged harm is

3    amorphous and abstract, courts routinely hold that no cognizable loss exists.  *E.g.*, *Katz v. N.T.*

4    *Callaway Real Est. Broker, LLC*, 2016 WL 6677897, at *6 (N.J. Super. Ct. App. Div. Nov. 14,

5    2016) (New Jersey's Consumer Fraud Act does not "encompass non-economic losses [such as]

6    alleged invasions of the rights of privacy"); *Del Vecchio*, 2011 WL 6325910, at *1, *5

7    (dismissing Washington statutory claim where alleged harms including "loss of the economic

8    value of the information as an asset" did not constitute actionable loss to business or property);

9    *Mount*, 684 F. App'x at 36 (affirming dismissal where no allegations that data collection "actually

10   deprived" plaintiffs "of any opportunity to sell their own personalized information").

11           2.      No Class Action Claims.  Plaintiffs' claims under the Tennessee,

12   Mississippi, and South Carolina statutes should be dismissed for the additional reason that each

13   statute precludes class actions.  *See* Tenn. Code Ann. § 47-18-109(g); *Walker v. Sunrise Pontiac-*

14   *GMC Truck, Inc*., 249 S.W.3d 301, 311 (Tenn. 2008); Miss. Code Ann. § 75-24-15(4); *Cole*, 554

15   F. Supp. 2d at 668–69; S.C. Code Ann. § 39-5-140(a); *Stalvey v. American Bank Holdings, Inc.*,

16   2013 WL 6019320, at *3 (D.S.C. Nov. 13, 2013).

17           3.      No Lease, Purchase, or Transaction.  Plaintiffs' Mississippi and Missouri

18   consumer protection act claims should also be dismissed because these statutes require a lease or

19   purchase, and no facts alleged in the FAC satisfy this requirement.  *See Cole*, 554 F. Supp. 2d at

20   666; *Schulte*, 997 F.3d at 825.  Plaintiffs' Indiana consumer protection act claim similarly should

21   be dismissed because the statute requires a "consumer transaction," and no such transaction is

22   alleged.  *See Reger v. Arizona RV Centers, LLC*, 515 F. Supp. 3d 915, 938 (N.D. Ind. 2021).

23   **IV.     PLAINTIFFS CANNOT STATE A CLAIM AGAINST THE CHANNEL OWNERS**

24           In addition to the foregoing grounds, the Court also should dismiss the FAC's claims as to

25   the Channel Owners because Plaintiffs have had five chances to allege facts establishing direct

26   liability of the Channel Owners and have been unable to do so (and made little effort to do so in

27   the latest complaint).  That is why Plaintiffs have shifted their theory to one of secondary liability.

28   But that theory fails too.  At this point, there is no basis to keep the Channel Owners in this case.

**A.     Plaintiffs Allege No Facts to Establish Direct Liability of the Channel Owners**

None of Plaintiffs' theories of direct liability applies to the Channel Owners.

1. <u>Intrusion Upon Seclusion and California Constitutional Right to Privacy</u>.  As discussed above, these claims require a showing that there was a "highly offensive" intrusion.  *Supra* § III.B.  But Plaintiffs do not allege that the Channel Owners engaged in any "intrusion" at all, much less a "highly offensive" intrusion, because Plaintiffs do not claim that the Channel Owners collected any personal information or "profiled" any users.

The FAC alleges, in purely conclusory terms, "***Defendants*** unfairly and unlawfully collected Plaintiffs' Personal Information, including persistent identifiers, in order to deliver targeted advertisements to Plaintiffs that were intended to influence their behavior."  FAC ¶ 21 (emphasis added).  But this does not differentiate between Google and the Channel Owner Defendants, is impermissible group pleading, *e.g.*, *Bravo v. Cnty. of San Diego*, 2014 WL 555195, at *2 (N.D. Cal. Feb. 10, 2014), and is precisely the type of conclusory assertion this Court must disregard, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Indeed, the FAC expressly recognizes that "Google"—and ***not*** the Channel Owners—allegedly "used persistent identifiers to track individuals' internet behavior," and allegedly used this information to "run behavioral advertising."  FAC ¶¶ 78, 88.  Plaintiffs' main substantive addition to the FAC is the implausible and conclusory assertion that Channel Owners "***directed*** Google to collect the Personal Information of viewers."  *Id.* ¶¶ 141, 147, 154, 159 (emphasis added).  Not only is that allegation contradicted by others in the FAC (*see infra* § IV.B), it concedes that there are no allegations that the Channel Owners themselves collected any data, and the FAC therefore fails to state claims against the Channel Owners for any intrusion or privacy violation.  *E.g.*, *McCoy*, 2021 WL 405816, at *8 (noting "the high bar in this district" for privacy claims and dismissing claim).

2. <u>State Consumer Protection Statutes</u>.  For similar reasons, Plaintiffs do not plausibly allege a violation of state consumer protection statutes against the Channel Owners.  Each of the state laws requires a causal connection between alleged conduct and any purported harms.[8]  But

---

[8] *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 782–83 & n.2 (9th Cir. 2018)

as the Court previously recognized, Plaintiffs do not allege that "the Channel Owners collected any data at all," Dkt. 117 at 13, and the FAC still does not address this deficiency.  Without alleging that the Channel Owners collected any data at all Plaintiffs cannot allege facts showing that any of the Channel Owners directly caused them harm.  *Barrera v. Costco Wholesale Corp.*, 2022 WL 3445092, at *2 (9th Cir. Aug. 17, 2022) ("[S]peculation does not establish causation . . . ." (cleaned up)); *see also, e.g.*, *Ryan v. Greif, Inc.*, 2023 WL 5979711, at *43 (D. Mass. Sept. 1, 2023) ("[A] plaintiff's failure to establish both factual causation and proximate causation is fatal" to claim under Massachusetts Consumer Protection Act); *Parr v. Maesbury Homes, Inc.*, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009) ("Under Florida law, plaintiffs alleging a FDUTPA violation must prove . . . causation; and . . . actual damages").

      3.  <u>Unjust Enrichment</u>.  Plaintiffs have not adequately alleged the Channel Owners were ***unjustly*** enriched.  The FAC alleges the Channel Owners received a percentage of money paid ***not*** by Plaintiffs (who paid nothing), but by third parties advertising on YouTube.  FAC ¶ 6.  The

---

(California law); *see also Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016); *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011); *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 53 (7th Cir. 1995) (Illinois law); *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 178 (Ind. 2019); *Carlson v. Gillette Co.*, 2015 WL 6453147, at *4 (D. Mass. Oct. 23, 2015); *State Farm Mut. Auto. Ins. Co. v. BMW of N. Am., LLC*, 2009 WL 2447612, at *6 (E.D. Mich. Aug. 7, 2009); *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008) (Missouri law); *Alexander v. Glob. Tel Link Corp.*, 2018 WL 8997439, at *3 (S.D. Miss. Dec. 18, 2018); *Mulligan v. Choice Mortg. Corp. USA*, 1998 WL 544431, at *11 (D.N.H. Aug. 11, 1998); *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008), *as amended* (Nov. 6, 2008) (Pennsylvania law); *In re MI Windows & Doors, Inc. Prod. Liab. Litig.*, 2012 WL 5408563, at *6 (D.S.C. Nov. 6, 2012); *Erickson v. Fahrmeier*, 2019 WL 1177969, at *7 (E.D. Tenn. Mar. 13, 2019); *G.G. v. Valve Corp.*, 579 F. Supp. 3d 1224, 1232 (W.D. Wash. 2022), *aff'd sub nom. Galway v. Valve Corp.*, 2023 WL 334012 (9th Cir. Jan. 20, 2023).

MOTION TO DISMISS FOURTH AMENDED
COMPLAINT 19-CV-07016-BLF

1   FAC fails to allege the Channel Owners did not earn this money or that they obtained this or any

2   other benefit through "mistake, fraud, coercion, or request."  55 Cal. Jur. 3d Restitution § 2

3   (2023).  Plaintiffs argue only that a benefit trickled down to the Channel Owners from Google's

4   alleged conduct, *see* FAC ¶¶ 280, 290, 300, 310, 320, 330, not that the Channel Owners did

5   anything that made their gains unjust.  The "most significant requirement" of an unjust

6   enrichment claim "is that the benefit to the defendant be unjust."  *Freeman Indus., LLC v.*

7   *Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).  That critical allegation is missing,

8   despite this being Plaintiffs' ***fifth*** attempt to plead a claim against the Channel Owners.

9       In addition, Plaintiffs cannot use unjust enrichment as a backdoor means to establish

10  secondary liability.  As explained below, secondary liability requires Plaintiffs to show the

11  Channel Owners aided and abetted or entered into a "common plan" in support of Google's

12  purported conduct.  *Infra* § IV.B.  Unjust enrichment does not somehow eliminate those elements

13  of secondary liability.  *See LeBrun v. CBS Tele. Studios, Inc.*, 68 Cal. App. 5th 199, 210–11

14  (2021) (denying unjust enrichment claim tethered to barred fraud claim).

15      **B.      Plaintiffs Cannot Establish a Basis for Secondary Liability Against the**
             **Channel Owners**
16
17      In an effort to sidestep their continued failure to allege direct liability, Plaintiffs assert the

    Channel Owners both aided and abetted Google's alleged conduct and acted with a "common
18
    purpose" with Google.  Neither theory states a plausible claim against the Channel Owners.
19
20      1.  <u>Aiding and Abetting</u>.  In their last complaint, Plaintiffs alleged the Channel Owners

21  "aided and abetted" Google's purported conduct because they "joined" Google in an "enterprise

22  that had a unity of purpose of tracking and collecting Personal Information from child viewers"

23  and "did so with knowledge of" Google's alleged "deceitful and unlawful actions."  TAC ¶ 18.

24  Plaintiffs now try to supplement those allegations by contending, without factual support, the

    Channel Owners "***directed*** Google to collect the Personal Information of viewers" of its content
25
    (FAC ¶¶ 141, 147, 154, 159 (emphasis added))—in other words, not that the Channel Owners
26
    ***themselves*** collected user information, but that allegedly Google collected this information "at the
27
    direction of" Channel Owners (*e.g.*, *id.* ¶¶ 8, 73).  This change is facially implausible, and in any
28

MOTION TO DISMISS FOURTH AMENDED
                                                            COMPLAINT 19-CV-07016-BLF

1    event, it does not adequately allege any secondary liability.

2         Aiding-and-abetting liability "depends on proof" the defendant (1) "had actual knowledge

3    of the specific primary wrong," (2) "substantially assisted" in that wrong, and (3) "acted with the

4    intent of facilitating the commission of that tort." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.

5    App. 4th 1138, 1145–46 (2005) (emphasis omitted); *see also Sender v. Mann*, 423 F. Supp. 2d

6    1155, 1175–76 (D. Colo. 2006) (liability requires defendant "knowingly and substantially assists

7    the principal violation"); *Pinkney v. Thomas*, 583 F. Supp. 2d 970, 979 (N.D. Ind. 2008) (same);

8    *Hollis v. JPMorgan Chase Bank, N.A.*, 2014 WL 12792255, at *6 (D. Mass. Dec. 10, 2014)

9    (same); *Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998) (same under NJ law);

10   *Caboodles Cosmetics, Ltd. P'ship v. Caboodles, LLC*, 412 F. Supp. 2d 872, 880–81 (W.D. Tenn.

11   2006) (same).  The narrow scope of aiding-and-abetting liability reflects the settled principle that

12   "one owes no duty to control the conduct of another."  *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318,

13   1326 (1996) (citation omitted); *see also* Restatement (2d) of Torts § 315(a) (1965) (no general

14   duty to control conduct of a third person); *Davenport v. Cmty. Corr. of the Pikes Peak Region,*

15   *Inc.*, 942 P.2d 1301, 1305 (Colo. App. 1997) (same); *Neal v. IAB Fin. Bank*, 68 N.E.3d 1114,

16   1118 (Ind. Ct. App. 2017) (same); *O'Neill v. United States*, 328 F. Supp. 3d 16, 22 (D. Mass.

17   2018) (same); *Champion ex rel. Ezzo v. Dunfee*, 398 N.J. Super. 112, 121 (App. Div. 2008)

18   (same); *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 99 (Tenn. Ct. App. 2001) (same).

19        Plaintiffs make no ***factual*** allegations showing the Channel Owners had the requisite

20   knowledge.  Plaintiffs' sole complaint against the Channel Owners is that there was personalized

21   advertising on their YouTube channels.  But Plaintiffs concede personalized advertising was

22   enabled by "default" on each channel.  FAC ¶¶ 12, 86; *see also* Dkt. 94-1 ¶ 21 (FTC Complaint)

23   (similar).  The FAC contains no specific factual allegations that the Channel Owners had "actual

24   knowledge of the specific primary wrong"—*i.e.*, an alleged privacy violation—that supposedly

25   would result if they did not disable the personalized advertising option.  Indeed, Plaintiffs

26   concede that the Channel Owners may not have known that any personalized advertising was

27   occurring on their channels at all.  FAC ¶ 124 ("[E]ach of the Channel Owner Defendants knew

28   (or ***should have*** known) that given the nature of the behavioral targeted advertising, Google was

- 21 -                    MOTION TO DISMISS FOURTH AMENDED
                                                          COMPLAINT 19-CV-07016-BLF

1   in fact targeting minor children . . . ." (emphasis added)).

2        The allegation that Channel Owners knew "or should have known" that not opting out of

3   personalized advertising would result in an alleged privacy violation is not enough to support an

4   aiding and abetting claim.  "California law requires that a defendant have ***actual knowledge*** of

5   tortious activity" to be liable, and the phrase "'knew or should have known' does not plead actual

6   knowledge." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118–19 (C.D. Cal.

7   2003) (emphasis added); *Nevis v. Wells Fargo Bank*, 2010 WL 11636091, at *5 (N.D. Cal. Jan.

8   13, 2010); *Alvarez LLC v. Blazar Tech. Sols., LLC*, 2019 WL 3205952, at *2 (D. Colo. July 16,

9   2019); *In re TelexFree Sec. Litig.*, 357 F. Supp. 3d 70, 77 (D. Mass. 2019); *Wiatt v. Winston &*

10  *Strawn LLP*, 838 F. Supp. 2d 296, 307 (D.N.J. 2012); *Lawyers Title Ins. Corp. v. United Am.*

11  *Bank of Memphis*, 21 F. Supp. 2d 785, 797 (W.D. Tenn. 1998).  Plaintiffs also allege the FTC's

12  complaint against Google "specifically cited" some Channel Owners.  FAC ¶¶ 141, 147, 154,

13  159.  But that allegation says nothing about their "actual knowledge" of alleged wrongdoing.

14       Certain paragraphs of the FAC make the conclusory assertion that Channel Owners had

15  "actual knowledge" of Google's alleged collection of personal information and provided "aid or

16  assistance."  *E.g.*, FAC ¶¶ 417, 425, 470, 478, 512, 520.  But, again, courts must disregard those

17  types of conclusory recitations of the elements of a claim.  *Iqbal*, 556 U.S. at 678; *see also*

18  *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011) (conclusory allegations

19  insufficient for aiding and abetting liability).

20       Nor have Plaintiffs alleged substantial assistance, the second required element of "aiding-

21  and-abetting" liability.  Plaintiffs try to meet this element by alleging Channel Owners somehow

22  "directed Google" to collect data on its own website.  FAC ¶¶ 141, 147, 154, 159.  To "direct" is

23  "[t]o instruct [someone] with authority."  Black's Law Dictionary (11th ed. 2019).  But Plaintiffs

24  plead no ***facts*** to remotely suggest Channel Owners instructed Google to collect viewer data

25  (much less had any authority over Google).  Plaintiffs also imply the FTC complaint made that

26  allegation (FAC ¶¶ 141, 147, 154, 159), but that document says nothing of the sort.  In fact, the

27  FAC expressly acknowledges the Channel Owners were not "directing" anything:  Plaintiffs

28  concede personalized advertising was enabled by ***default***, and that, "[u]pon information and

1   belief," certain Channel Owners neglected to disable it.  FAC ¶¶ 86, 128.  Those allegations are

2   not enough to support any allegation of substantial assistance.  Rather, the law requires active

3   assistance—"[m]ere knowledge that [a wrong] was [being or going to be] committed and the

4   failure to prevent it do ***not*** constitute aiding and abetting."  Judicial Council of California Civil

5   Jury Instructions, No. 3610 (2023) (emphasis added); *see Twitter, Inc. v. Taamneh*, 598 U.S. 471,

6   500 (2023) ("mere passive nonfeasance" generally insufficient); *George v. eBay, Inc.*, 71 Cal.

7   App. 5th 620, 641 (2021) ("even specific knowledge[] is not enough … for aiding and abetting").

8       Plaintiffs also do not allege Channel Owners "acted with the intent of facilitating the

9   commission of [the] tort," the third element of aiding and abetting liability.  To the contrary,

10  Plaintiffs concede "the Channel Owner Defendants signaled what age groups their videos were

11  intended for."  FAC ¶ 117.  Moreover, the FTC complaint on which Plaintiffs rely failed to assert

12  claims against Channel Owners and recognized certain Channel Owners "specifically informed

13  [Google] that content appearing on their channels is directed to children under 13 years old."

14  Dkt. 94-1 ¶ 44 (FTC Compl.).  If anything, these actions show intent to ***comply*** with COPPA.

15      2. <u>Common Plan</u>.  Plaintiffs also cannot support claims against Channel Owners based on

16  a "common plan" theory.  As Plaintiffs recognized, that theory requires a showing of a "common

17  purpose" and each defendant acting "with the knowledge and consent of the others."  Dkt. 127 at

18  23 (citing *Weinberg Co. v. Bixby*, 185 Cal. 87, 106–07 (1921)).  But the FAC has only conclusory

19  allegations that the purportedly monolithic "Channel Owners" had a "common purpose"

20  regarding Google's alleged data collection (over which they had no control), without alleging any

21  (let alone all) of them knew of and consented to any collection.

22      3. <u>Plaintiffs' Attempt to Impose Secondary Liability Would Contravene the Ninth</u>

23  <u>Circuit's Preemption Ruling</u>.  The claims against the Channel Owners also fail because they seek

24  to impose liability inconsistent with COPPA's requirements.  The Ninth Circuit held that

25  COPPA's "bar on 'inconsistent' state laws implicitly preserves 'consistent' state substantive

26  laws."  *Jones*, 73 F.4th at 643.  Here, Plaintiffs have conceded the Channel Owners "likely did

27  not actually violate COPPA because they did not themselves access Plaintiffs' personal

28  information."  Dkt. 127 at 17; *id.* at 22 ("Whether the Channel Owners themselves violated

MOTION TO DISMISS FOURTH AMENDED
                                          COMPLAINT 19-CV-07016-BLF

COPPA is inapposite.").  Yet Plaintiffs seek to impose liability under state law against Channel Owners for "act[ing] in concert with Google" in its alleged violation of COPPA (*id.* at 22), even though Plaintiffs acknowledge COPPA would not impose liability for this conduct.  Plaintiffs' effort to impose COPPA-adjacent liability on Channel Owners is thus ***inconsistent*** with COPPA's requirements and therefore preempted.  *See New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1120 (D.N.M. 2020), *on reconsideration*, 516 F. Supp. 3d 1293 (D.N.M. 2021) (dismissing claims against ad network defendants because their "activities do not amount to a COPPA violation, [and] allowing Plaintiff to pursue its state law claims against them . . . would amount to imposing liability inconsistent with their treatment under COPPA").

### C.    Plaintiffs Cannot Pursue State-Law Claims Against Channel Owners Where No Plaintiff Watched That Channel in That State

Finally, Plaintiffs purport to assert state-law claims against Channel Owners even where ***no Plaintiff*** alleges they watched a particular Channel Owner's YouTube Channel in a particular state.  There is no California plaintiff, for example, who allegedly watched the YouTube channels of Cartoon Network, DreamWorks, or Mattel.  FAC ¶ 211.  And the sole Indiana plaintiff, C.D., allegedly watched only Cartoon Network's YouTube channel, but not any of the other Channel Owners' YouTube channels.  *Id.* ¶ 241.  Table 1 below, which summarizes the YouTube channels allegedly watched by Plaintiffs in each state at issue in the FAC, summarizes these deficiencies.

Plaintiffs cannot pursue state-law claims against Channel Owners when no plaintiff allegedly watched the Channel Owner's YouTube channel in that state.  The Constitution and substantive law require allegations that the defendant caused plaintiff's alleged injury.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (plaintiffs lacked standing to bring class action against school districts in which they were not enrolled); *supra* § IV.A.2.  Whether named Plaintiffs in ***other states*** allegedly watched a Channel Owner's YouTube channel is irrelevant, because "[t]he standing inquiry is both plaintiff-specific and claim-specific." *Pagán v. Calderón*, 448 F.3d 16, 26–27 (1st Cir. 2006); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014) ("[D]ismissal is appropriate with respect to claims asserted under the laws of states in

1  which no Plaintiff resides.").  Plaintiffs have now had multiple opportunities to cure this

2  deficiency, *e.g.*, Dkt. 146 at 11; Dkt. 195 at 1, so state-law claims against Channel Owners where

3  no Plaintiff in that state allegedly watched that Channel Owner's YouTube channel (as indicated

4  in Table 1) should be dismissed with prejudice.  The Court also should not defer this decision, as

5  Plaintiffs have advocated in the past, because a wait-and-see approach is incompatible with the

6  "jurisdictional limits imposed by Article III."  *Los Gatos*, 2014 WL 4774611, at *4 & n.5.

### Table 1: YouTube Channels Allegedly Watched by Named Plaintiffs by State

| | ChuChu TV | Remka | Hasbro | Mattel | Cartoon Network | Dream-Works |
|---|---|---|---|---|---|---|
| **Alabama** | No | No | Yes | Yes | Yes | Yes |
| **Arizona** | No | Yes | Yes | Yes | Yes | No |
| **California** | Yes | Yes | Yes | No | No | No |
| **Colorado** | Yes | Yes | Yes | No | No | Yes |
| **Florida** | Yes | Yes | Yes | Yes | Yes | Yes |
| **Illinois** | Yes | Yes | Yes | Yes | No | No |
| **Indiana** | No | No | No | No | Yes | No |
| **Kansas** | No | No | Yes | Yes | Yes | No |
| **Massachusetts** | No | Yes | No | Yes | Yes | No |
| **Michigan** | No | No | Yes | Yes | Yes | No |
| **Mississippi** | No | Yes | Yes | Yes | Yes | Yes |
| **Missouri** | No | Yes | Yes | Yes | Yes | Yes |
| **New Hampshire** | Yes | No | Yes | Yes | Yes | No |
| **New Jersey** | No | Yes | No | Yes | Yes | No |
| **New York** | No | No | Yes | Yes | Yes | Yes |
| **Oklahoma** | No | Yes | No | No | Yes | No |
| **Pennsylvania** | No | No | Yes | Yes | Yes | Yes |
| **South Carolina** | No | Yes | Yes | Yes | Yes | Yes |
| **South Dakota** | No | Yes | Yes | Yes | Yes | No |
| **Tennessee** | No | Yes | Yes | Yes | Yes | No |
| **Virginia** | No | No | Yes | Yes | Yes | No |
| **Washington** | No | Yes | Yes | Yes | Yes | No |

## V.    CONCLUSION

For the reasons set forth above, and because Plaintiffs have had ***five*** opportunities to plead

a claim, the FAC should be dismissed with prejudice.  *Calvary Chapel San Jose v. Cody*, 2022

WL 5264651, at *8 (N.D. Cal. Oct. 6, 2022) (dismissing with prejudice where plaintiffs "had

multiple opportunities to address the deficiencies" in the complaint).

1

2   Dated: December 13, 2023          Respectfully Submitted,

3                                     HOGAN LOVELLS US LLP

4                                     By:   /s/ EDITH RAMIREZ

5                                           edith.ramirez@hoganlovells.com
                                            Adam A. Cooke (*pro hac vice*)
6                                           adam.a.cooke@hoganlovells.com
                                            555 Thirteenth Street, NW
7                                           Washington, DC  20004
                                            Telephone:     (202) 637-5600
8                                           Facsimile:     (202) 637-5910

9                                           Christopher J. Cox, SBN 151650
                                            855 Main St., Suite 200,
10                                          Redwood City, CA  94063
                                            Telephone:  (650) 463-4000
11                                          Facsimile:  (650) 463-4199
                                            chris.cox@hoganlovells.com
12
                                            Helen Y. Trac, SBN 285824
13                                          4 Embarcadero Center, 35th Floor
                                            San Francisco, California  94111
14                                          Telephone:  (415) 374-2300
                                            Facsimile:  (415) 374-2499
15                                          helen.trac@hoganlovells.com

16                                     Attorneys for Defendants *Google LLC* and
                                       *YouTube LLC*
17

18
     Dated: December 13, 2023          GIBSON, DUNN & CRUTCHER LLP
19                                     CHRISTOPHER CHORBA
                                       JEREMY S. SMITH
20                                     MADELEINE F. MCKENNA

21
                                       By:  /s/ Christopher Chorba
22                                          Christopher Chorba

23                                     Attorneys for Defendants *Cartoon Network, Inc.* and
                                       *Cartoon Network Studios, Inc.*
24

25

26

27

28

Dated: December 13, 2023

MUNGER, TOLLES & OLSON LLP
JONATHAN H. BLAVIN
JORDAN D. SEGALL
NEFI D. ACOSTA


By:  /s/ Jonathan H. Blavin
       Jonathan H. Blavin

Attorneys for Defendant *Mattel, Inc.*

Dated: December 13, 2023

ZWILLGEN LAW LLP
ANNA HSIA
JEFFREY LANDIS
ADYA BAKER


By:  /s/ Anna Hsia
       Anna Hsia

Attorneys for Defendants *DreamWorks Animation L.L.C.* and *DreamWorks Animation Television, LLC*

Dated: December 13, 2023

FRANKFURT KURNIT KLEIN & SELZ, P.C.
JEREMY S. GOLDMAN


By:  /s/ Jeremy S. Goldman
       Jeremy S. Goldman

Attorneys for Defendants *Hasbro, Inc.* and *Hasbro Studios LLC*

Dated: December 13, 2023

VENABLE LLP
DAVID E. FINK
SARAH E. DIAMOND


By:  /s/ David E. Fink
       David E. Fink

Attorneys *for* Defendant *PocketWatch, Inc.*

MOTION TO DISMISS FOURTH AMENDED
COMPLAINT 19-CV-07016-BLF

1    Dated: December 13, 2023          JACOBSON, RUSSELL, SALTZ, NASSIIM

                                    & DE LA TORRE LLP

2                           MICHAEL J. SALTZ

                           ELANA R. LEVINE

By: */s/ Michael J. Saltz*
      Michael J. Saltz

Attorneys for Defendants *Remka, Inc.; RTR Production, LLC;* and *RFR Entertainment, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SIGNATURE ATTESTATION**

  Pursuant to Northern District of California Local Rule 5-1(h)(3), I hereby attest that all other signatories listed above, on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

           By: _/s/ Edith Ramirez_____

MOTION TO DISMISS FOURTH AMENDED
COMPLAINT 19-CV-07016-BLF