Edith Ramirez (Bar No. 165872)
Adam A. Cooke (*pro hac vice*)
555 Thirteenth Street, NW
Washington, DC 20004
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910
edith.ramirez@hoganlovells.com
adam.a.cooke@hoganlovells.com

Helen Y. Trac (Bar No. 285824)
4 Embarcadero Center, 35th Floor
San Francisco, California  94111
Telephone:  (415) 374-2300
Facsimile:  (415) 374-2499
helen.trac@hoganlovells.com

Christine Wang (Bar No. 343163)
855 Main St., Suite 200,
Redwood City, CA  94063
Telephone:  (650) 463-4000
Facsimile:  (650) 463-4199
christine.wang@hoganlovells.com

Attorneys for Defendants
*Google LLC* and *YouTube, LLC*

The Channel Owner Defendants and their
counsel are listed below

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| C.H., a minor, by and through their guardian ad litem NICHOLE HUBBARD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, et al., <br><br> Defendants. | Case No.  19-cv-07016-SVK <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SIXTH AMENDED COMPLAINT** <br><br> The Honorable Susan van Keulen <br> Date:          October 22, 2024 <br> Time:          10:00 AM <br> Courtroom:  Courtroom 6 – 4th Floor |

**TO THE COURT AND ALL PARTIES OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 22, 2024 at 10:00 AM, or as soon thereafter as this matter may be heard, before the Honorable Susan van Keulen in Courtroom 6 of this Court, located on the 4th Floor of the Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113, Defendants Google LLC and YouTube, LLC (together, "Google") and Cartoon Network, Inc., Cartoon Network Studios, Inc., DreamWorks Animation LLC, DreamWorks Animation Television, LLC, Mattel, Inc., Hasbro, Inc., Hasbro Studios LLC, Remka, Inc., RTR Production, LLC, RFR Entertainment, Inc., and PocketWatch, Inc. (collectively, the "Channel Owners") will, and hereby do, move the Court for an order granting their Motion to Dismiss the Sixth Amended Complaint.  This Motion is made based on Federal Rules of Civil Procedure 8, 9, 12(b)(1) and 12(b)(6), on the grounds that Plaintiffs lack standing to pursue injunctive relief and that the allegations fail to state any valid claim.  This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the complete record in this action; and such other matters and arguments as may come before the Court, including those raised in connection with reply briefing and oral argument relating to this Motion.

Dated: August 12, 2024

HOGAN LOVELLS US LLP

By:  /s/ *Edith Ramirez*
_____

EDITH RAMIREZ
edith.ramirez@hoganlovells.com
ADAM A. COOKE (*pro hac vice*)
adam.a.cooke@hoganlovells.com
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC  20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

HELEN Y. TRAC
helen.trac@hoganlovells.com
HOGAN LOVELLS US LLP
4 Embarcadero Center, 35th Floor
San Francisco, California  94111
Telephone: (415) 374-2300
Facsimile: (415) 374-2499

CHRISTINE WANG

christine.wang@hoganlovells.com
HOGAN LOVELLS US LLP
855 Main St., Suite 200,
Redwood City, CA 94063
Telephone: (650) 463-4000
Facsimile: (650) 463-4199

Attorneys for Defendants *Google LLC* and
*YouTube, LLC*

Dated August 12, 2024

GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA
JEREMY S. SMITH

By: */s/ Christopher Chorba*
      Christopher Chorba

Attorneys for Defendants *Cartoon Network, Inc.* and
*Cartoon Network Studios, Inc.*

Dated: August 12, 2024

MUNGER, TOLLES & OLSON LLP
JONATHAN H. BLAVIN
JORDAN D. SEGALL

By: */s/ Jonathan H. Blavin*
      Jonathan H. Blavin

Attorneys for Defendant *Mattel, Inc.*

Dated: August 12, 2024

ZWILLGEN LAW LLP
ANNA HSIA
JEFFREY LANDIS
ADYA BAKER
MADELINE RANA

By: */s/ Anna Hsia*
      Anna Hsia

Attorneys for Defendants *DreamWorks Animation
L.L.C.* and *DreamWorks Animation Television, LLC*

MOTION TO DISMISS SIXTH AMENDED
COMPLAINT 19-CV-07016-SVK

1

Dated: August 12, 2024                    FRANKFURT KURNIT KLEIN & SELZ, P.C.
                                          JEREMY S. GOLDMAN
2                                         MOLLY ROTHSCHILD

3

4                                         By: /s/ Jeremy S. Goldman
                                              Jeremy S. Goldman
5
                                          Attorneys for Defendants *Hasbro, Inc.* and *Hasbro*
6                                         *Studios LLC*

7

Dated: August 12, 2024                    Respectfully submitted,
8
                                          VENABLE LLP
9                                         DAVID E. FINK
                                          SARAH E. DIAMOND
10

11
                                          By: /s/ David E. Fink
12                                            David E. Fink

13                                        Attorneys *for* Defendant *PocketWatch, Inc.*

14

Dated: August 12, 2024                    Respectfully submitted,
15
                                          JACOBSON, RUSSELL, SALTZ, NASSIIM
16                                        & DE LA TORRE LLP
                                          MICHAEL J. SALTZ
17                                        SIMONE POYOUROW

18

19                                        By: /s/ Michael J. Saltz
                                              Michael J. Saltz
20

21                                        Attorneys for Defendants *Remka, Inc.; RTR*
                                          *Production, LLC;* and *RFR Entertainment, Inc.*

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................... 1

II.   BACKGROUND ........................................................................................................ 2

    A.   Defendants Google and YouTube .................................................................. 2

    B.   Regulatory Enforcement and Plaintiffs' Complaints ..................................... 4

    C.   The Court's Dismissal of Plaintiffs' Fifth Amended Complaint ..................... 4

    D.   Plaintiffs' Sixth Amended Complaint ............................................................ 5

III.  THE 6AC SHOULD BE DISMISSED IN ITS ENTIRETY WITH PREJUDICE ............ 6

    A.   Plaintiffs' Requests for Equitable Relief Should Be Dismissed ..................... 6

        1.   Plaintiffs Still Cannot Pursue Equitable Relief ................................. 6

        2.   Plaintiffs Lack Article III Standing to Seek Injunctive Relief ................... 9

    B.   Plaintiffs Fail to Plead Viable Claims for Intrusion Upon Seclusion or Violation of the California Constitutional Right to Privacy ................... 11

        1.   Public Representations ..................................................................... 11

        2.   Communications with YouTube Advertisers ............................... 12

        3.   Inflammatory Assertions ................................................................. 12

        4.   Google's Disclosures ...................................................................... 13

    C.   Plaintiffs Fail to State a Claim Under State Consumer Protection Laws ............ 14

        1.   No Requisite Loss Alleged .............................................................. 14

        2.   No Lease, Purchase, or Transaction ............................................... 17

        3.   No Class Claims ............................................................................. 17

    D.   Plaintiffs' Unjust Enrichment Claims Fail for Additional Reasons ................ 17

        1.   No Unjustly Conferred Benefit ....................................................... 17

        2.   No Enrichment at Plaintiffs' Expense ............................................. 18

        3.   No Expected Remuneration ............................................................ 19

        4.   No Contract-Based Cause of Action ............................................... 19

IV.   PLAINTIFFS CANNOT STATE A CLAIM AGAINST THE CHANNEL OWNERS ................................................................................................................. 19

    A.   Plaintiffs Allege No Facts to Establish Direct Liability of the Channel Owners .......................................................................................................... 19

        1.   Intrusion Upon Seclusion and California Constitutional Right to Privacy .................................................................................. 19

        2.   State Consumer Protection Statutes ............................................... 20

        3.   Unjust Enrichment .......................................................................... 21

4.   COPPA Liability ....................................................................... 21

B.   Plaintiffs Cannot Establish a Basis for Secondary Liability Against the Channel Owners ................................................................................... 22

1.   "Aiding and Abetting" ............................................................. 22

2.   Common Plan ............................................................................. 24

3.   Plaintiffs' Attempt to Impose Secondary Liability Would Contravene the Ninth Circuit's Preemption Ruling ................................ 24

C.   Plaintiffs Cannot Pursue State-Law Claims Against Channel Owners Where No Plaintiff Watched That Channel in That State ................................... 24

V.   CONCLUSION ............................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adkins v. Facebook, Inc.*,
    424 F. Supp. 3d 686 (N.D. Cal. 2019) ...................................................................................15

5

*Ahringer v. LoanDepot, Inc.*,
    2024 WL 1135683 (C.D. Cal. Feb. 6, 2024).........................................................................17

6

7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................20

8

9

*Barrera v. Costco Wholesale Corp.*,
    2022 WL 3445092 (9th Cir. Aug. 17, 2022).........................................................................20

10

*Bedi v. BMW of N. Am., LLC*,
    2016 WL 324950 (D.N.J. Jan. 27, 2016) ..............................................................................19

11

12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................22

13

14

*Bravo v. Cnty. of San Diego*,
    2014 WL 555195 (N.D. Cal. Feb. 10, 2014).........................................................................20

15

16

*Calvary Chapel San Jose v. Cody*,
    2022 WL 5264651 (N.D. Cal. Oct. 6, 2022).........................................................................25

17

*Campbell v. Facebook Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................................................................................15

18

19

*Casey v. U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138 (2005)..............................................................................................22

20

21

*In re Cellular 101, Inc.*,
    539 F.3d 1150 (9th Cir. 2008)...............................................................................................21

22

*Chapman v. Pier 1 Imports (U.S.), Inc.*,
    631 F.3d 939 (9th Cir. 2011).................................................................................................10

23

24

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................................................................9

25

26

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)............................................................................................................8, 9

27

*Claridge v. RockYou, Inc.*,
    785 F. Supp. 2d 855 (N.D. Cal. 2011) ..................................................................................15

28

*Clark v. Am. Honda Motor Co.*,
  528 F. Supp. 3d 1108 (C.D. Cal. 2021)............................................................................9

*Cole v. Chevron USA, Inc.*,
  554 F. Supp. 2d 655 (S.D. Miss. 2007)..........................................................................17

*Cousin v. Sharp Healthcare*,
  2023 WL 4484441 (S.D. Cal. July 12, 2023) ................................................................13

*Cuviello v. City of Oakland*,
  2009 WL 734676 (N.D. Cal. Mar. 19, 2009) .................................................................10

*Davidson v. Apple, Inc.*,
  2018 WL 2325426 (N.D. Cal. May 8, 2018) ..................................................................17

*Doe I v. Google LLC*,
  2024 WL 3490744 (N.D. Cal. July 22, 2024) ..................................................14, 16, 18

*In re Effexor Antitrust Litig.*,
  357 F. Supp. 3d 363 (D.N.J. 2018) .................................................................................17

*ESG Capital Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016)........................................................................................18

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020)..........................................................................................19

*In re Facebook, Inc. Sec. Litig.*,
  477 F. Supp. 3d 980 (N.D. Cal. 2020) .............................................................................3

*Facebook, Inc. v. MaxBounty, Inc.*,
  274 F.R.D. 279 (N.D. Cal. 2011).....................................................................................23

*Fed. Home Loan Mortg. Corp. v. Anchrum*,
  2015 WL 2452775 (N.D. Ala. May 22, 2015) ...............................................................18

*Feller v. Brock*,
  802 F.2d 722 (4th Cir. 1986)..........................................................................................10

*Fiol v. Doellstedt*,
  50 Cal. App. 4th 1318 (1996)..........................................................................................22

*Gerber v. Twitter, Inc.*,
  2024 WL 1354449 (N.D. Cal. Mar. 29, 2024)...............................................................16

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) .............................................................................3

*In re Google, Inc. Priv. Policy Litig.*,
  2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .................................................................14

*Gray v. Amazon.com Inc.*,
  2024 WL 2206454 (9th Cir. May 16, 2024) ...........................................................................14

*Guzman v. Polaris Indus. Inc.*,
  49 F.4th 1308 (9th Cir. 2022)...............................................................................................8

*Hammerling v. Google, LLC*,
  2024 WL 937247 (9th Cir. Mar. 5, 2024) ................................................................13, 14, 18

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................................15

*Jones v. Google LLC*,
  73 F.4th 636 (9th Cir. 2023).................................................................................................24

*Ketayi v. Health Enrollment Grp.*,
  2021 WL 2864481 (S.D. Cal. July 8, 2021) ...........................................................................7

*Lapin v. Shulton, Inc.*,
  333 F.2d 169 (9th Cir. 1964).................................................................................................10

*LeBrun v. CBS Tele. Studios, Inc.*,
  68 Cal. App. 5th 199 (2021)..................................................................................................21

*Lloyd v. Facebook, Inc. .*,
  2024 WL 3325389 (9th Cir. July 8, 2024) ............................................................................14

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
  2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) .....................................................................25

*Love v. Ladder Fin., Inc.*,
  2024 WL 2104497 (N.D. Cal. May 8, 2024) .........................................................................13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)........................................................................................................10, 25

*Martinez v. Newsom*,
  46 F.4th 965 (9th Cir. 2022).................................................................................................25

*McCoy v. Alphabet, Inc.*,
  2021 WL 405816 (N.D. Cal. Feb. 2, 2021).........................................................................3, 20

*McKee v. Meltech, Inc.*,
  2011 WL 1770461 (W.D. Tenn. May 9, 2011).......................................................................19

*In re Mednax Servs. Inc.*,
  603 F. Supp. 3d 1183 (S.D. Fla. 2022) .................................................................................17

*Melzer v. Johnson & Johnson Consumer Inc.*,
  2023 WL 3098633 (D.N.J. Apr. 26, 2023) ...........................................................................18

*Moore v. Am. Honda Motor Co., Inc.*,
   2024 WL 3416515 (N.D. Cal. July 15, 2024) ...................................................................8

*Morales v. City & Cnty. of San Francisco*,
   603 F. Supp. 3d 841 (N.D. Cal. 2022) ..................................................................20, 22

*Mount v. PulsePoint, Inc.*,
   684 F. App'x 32 (2d Cir. 2017)..........................................................................................18

*Nat'l Farmers Org. v. Associated Milk Producers, Inc.*,
   850 F.2d 1286 (8th Cir. 1988)............................................................................................9

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003)..........................................................................23

*New Mexico ex rel. Balderas v. Tiny Lab Prods.*,
   457 F. Supp. 3d 1103 (D.N.M. 2020) ..............................................................................24

*In re Nickelodeon Consumer Priv. Litig.*,
   2014 WL 3012873 (D.N.J. July 2, 2014) .........................................................................19

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016) ...............................................................................................12

*Parr v. Maesbury Homes, Inc.*,
   2009 WL 5171770 (M.D. Fla. Dec. 22, 2009) ................................................................20

*Popa v. Harriet Carter Gifts, Inc.*,
   426 F. Supp. 3d 108 (W.D. Pa. 2019) ..............................................................................13

*Prager Univ. v. Google LLC*,
   951 F.3d 991 (9th Cir. 2020)..............................................................................................11

*In re Pre-Filled Propane Tank Antitrust Litig.*,
   893 F.3d 1047 (8th Cir. 2018)..............................................................................................9

*Rabin v. Google LLC*,
   2023 WL 4053804 (N.D. Cal. June 15, 2023) .........................................................7, 8, 9

*Reed v. Reid*,
   980 N.E.2d 277 (Ind. 2012) ...............................................................................................19

*Reger v. Arizona RV Ctrs., LLC*,
   515 F. Supp. 3d 915 (N.D. Ind. 2021) .............................................................................17

*Roman v. MSL Cap., LLC*,
   2019 WL 3017765 (C.D. Cal. July 9, 2019) ...................................................................10

*Russell v. Walmart, Inc.*,
   2023 WL 4341460 (N.D. Cal. July 5, 2023) ...................................................................18

- ix -

*Ryan v. Greif, Inc.*,
    2023 WL 8828220 (D. Mass. Dec. 21, 2023) ...................................................................20

*Sanh v. Opportunity Fin., LLC*,
    2021 WL 101199 (W.D. Wash. Jan. 12, 2021) ................................................................18

*Schulte v. Conopco, Inc.*,
    997 F.3d 823 (8th Cir. 2021) ..........................................................................................17

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ........................................................................................................17

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)..............................................................................................8

*Svenson v. Google Inc.*,
    2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) .................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..........................................................................................................3

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ........................................................................................................23

*Weinberg Co. v. Bixby*,
    185 Cal. 87 (1921) ..........................................................................................................24

*Whitehaven Cmty. Baptist Church v. Holloway*,
    973 S.W.2d 592 (Tenn. 1998) .........................................................................................17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................................................17

**Statutes**

Children's Online Privacy Protection Act ("COPPA") ........................................... *passim*

Miss. Code Ann. § 75-24-15(4) .............................................................................................17

S.C. Code Ann. § 39-5-140(a) ..............................................................................................17

Tenn. Code Ann. § 47-18-109(g) ..........................................................................................17

**Other Authorities**

55 Cal. Jur. 3d Restitution § 2 (2023) ...................................................................................21

Daron Acemoglu *et al.*, "Too Much Data: Prices and Inefficiencies in Data Markets," Am. Econ. J.: Microecon. (2022), available at https://economics.mit.edu/sites/default/files/2023-06/Too%20Much%20data%20-%20Prices%20and%20Inefficiencies%20in%20Data%20Markets.pdf ...................................16

California Civil Jury Instructions, No. 3610 (2023) ........................................................23

Jay Pil Choi *et al.*, "Privacy and Personal Data Collection with Information Externalities," J. of Pub. Econ. 173 (2009), available at https://www.researchgate.net/publication/344962107_Privacy_and_personal_data_collection_with_information_externalities .......................................16

*Restatement (2d) of Torts* § 315(a) (1965) ...................................................................22

Statement of Joseph J. Simons & Christine S. Wilson (Sept. 4, 2019) *available at* https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf .................................................9, 10

YouTube Help, https://support.google.com/youtube/answer/9527654 .........................10

MOTION TO DISMISS SIXTH AMENDED
COMPLAINT 19-CV-07016-SVK

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.        INTRODUCTION**

3          The Court dismissed Plaintiffs' Fifth Amended Complaint ("5AC"), holding that Plaintiffs

4    could not pursue equitable relief or claims for unjust enrichment, they did not state any privacy

5    claims, and they did not allege cognizable loss to support their consumer protection claims.  Dkt.

6    281 ("Order").  The Court gave Plaintiffs limited leave to amend their pleading for a sixth time,

7    specifying what Plaintiffs had to do to cure the deficiencies.  Plaintiffs' Sixth Amended Complaint

8    ("6AC") does none of these things and should be dismissed with prejudice.

9          *First*, Plaintiffs still do not allege they have suffered or will suffer non-economic harm that

10   cannot be remediated by damages.  Plaintiffs instead reassert arguments the Court already rejected

11   about purported economic benefits Defendants allegedly obtained, equitable relief as an

12   "alternative" remedy, and injunctive relief—without plausibly alleging that legal remedies are

13   inadequate.  *Second*, Plaintiffs again fail to allege any "plus" factors that transform the data

14   collection and use the Court held to be routine commercial behavior into highly offensive conduct.

15   Plaintiffs instead fall back on allegations this Court and Judge Freeman already found insufficient,

16   including Google's representations about legal compliance and purported use of YouTube by

17   children.  Google's clear disclosures regarding the collection and use of YouTube user data

18   underscores Plaintiffs' failure to allege any actionable intrusion.  *Third*, Plaintiffs cannot save their

19   consumer protection claims because they still do not allege any facts showing they suffered any

20   loss.  Specifically, the 6AC still fails to allege that Defendants' alleged actions caused any

21   diminution in the value of Plaintiffs' data, and Plaintiffs again do not allege that they intended to

22   sell their data, let alone have sold or attempted to sell it during the near five-year pendency of this

23   litigation.

24         Apart from these fundamental flaws, the 6AC also should be dismissed for reasons the Court

25   did not reach in its previous ruling.  Plaintiffs lack standing to seek injunctive relief because the

26   Federal Trade Commission ("FTC") addressed the alleged data practices Plaintiffs challenge via a

27   stipulated injunction overseen by the U.S. District Court for the District of Columbia ("D.C.

28   Court").  Plaintiffs' consumer protection claims fail under several state statutes because they do not

1   allege a purchase, lease, or transaction, as required, and because their class claims are barred

2   outright.  And Plaintiffs' unjust enrichment claims should be dismissed because the allegations in

3   the 6AC do not show any unjustly conferred benefit at Plaintiffs' expense, expected remuneration,

4   or other theory of liability that would support a claim.

5        In addition, Plaintiffs have not alleged any viable claim against the Channel Owners, a

6   diverse group of creators that display content on YouTube.  After seven attempts, Plaintiffs ***still*** do

7   not plead any theory of direct liability against the Channel Owners because the 6AC does not allege

8   the Channel Owners unlawfully collected ***any*** data.  Plaintiffs cannot circumvent this failure by

9   lumping all "Defendants" together.  Nor can Plaintiffs establish secondary liability by alleging—

10  for the first time and contrary to this Court's Order that they not make "other substantive"

11  amendments (Dkt. 281 at 20)—that the Channel Owners "knowingly assisted" Google in collecting

12  YouTube user data.  This new theory is implausible, including because it contradicts Plaintiffs'

13  concession that personalized advertising was enabled by a default setting on YouTube.  Plaintiffs

14  do not credibly allege now that any Channel Owner knew the setting existed at all, much less that

15  not disabling the setting would result in the collection of user information, the display of

16  personalized advertising and, according to Plaintiffs, a COPPA violation.  Finally, Plaintiffs cannot

17  pursue state-law claims against certain Channel Owners in states where no Plaintiff allegedly

18  watched the Channel Owner's YouTube Channel.

19       Plaintiffs have now had seven opportunities over nearly five years to state a claim and have

20  failed to do so.  The Court should dismiss their claims with prejudice.

21  **II.    BACKGROUND**

22      **A.  Defendants Google and YouTube**

23       YouTube is an online video-sharing platform that enables users around the world to view,

24  upload, and share video content.  *See* 6AC ¶¶ 3, 65-66.  YouTube users may view videos for free

25  without signing into an account, *id.* ¶ 4, but certain functions require creating a Google account,

26  such as posting comments or subscribing to channels. *E.g.*, Wang Decl., Ex. 24 at 4 (Dec. 10, 2019

27

28

YouTube Terms of Service) ("[Y]ou do need a Google account to use some features.").[1]  The Channel Owners are creators that display content on YouTube.

YouTube users are subject to Google's Privacy Policy, incorporated into YouTube's Terms of Service ("Terms").  *E.g.*, *id.* ("Our Privacy Policy explains how we treat your personal data and protect your privacy when you use the Service.").  The Privacy Policy informs all users that Google collects certain information when they utilize Google's services, including YouTube, *e.g.*, *id.*, Ex. 19 at 15 (Oct. 15, 2019 Privacy Policy) ("This Privacy Policy applies to all of the services offered by Google LLC and its affiliates, including YouTube . . . ."),[2] whether or not they are signed in to an account, *e.g.*, *id.* at 2 ("When you're not signed in to a Google Account, we store the information we collect with unique identifiers tied to the browser, application, or device you're using.").[3]  That information includes data about users' devices, operating systems and network information, videos watched, and locations, such as IP address.  *Id.* at 2-5.[4]  The Privacy Policy explains that Google uses this information to, among other things, serve personalized content and ads.  *Id.* at 5 ("Depending on your settings, we may also show you personalized ads based on your interests.").[5]

The Terms also state that YouTube is "not intended for children under 13" and direct children under 13 not to use the service:  "If you are under 13 years of age, then please do not use

---

[1] As Judge Freeman did when ruling on Defendants' earlier motions to dismiss, *see* Dkt. 146 at 5, 8, this Court may consider Google's Privacy Policy and the YouTube Terms of Service, which are attached to the Declaration of Christine Wang ("Wang Decl."), *see* Wang Decl. Exs. 1-9.  Similar to prior complaints, the 6AC incorporates the Privacy Policy by reference, *compare* 6AC ¶¶ 76-77 *with* Dkt. 121 (3AC) ¶¶ 54-63.  These references are central to Plaintiffs' claims regarding the alleged collection and use of data, so the disclosures may be considered now, *e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813-14 (N.D. Cal. 2020) (considering Google Privacy Policy); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *2 (N.D. Cal. Feb. 2, 2021) (same).  These disclosures also are "matters of which a court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), because they reflect material available on publicly accessible websites, and their contents are not reasonably subject to dispute, *e.g.*, *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1009 (N.D. Cal. 2020) ("It is common for courts to take judicial notice of a company's historical privacy policies.").

[2] *See also id.*, Ex. 17 (May 25, 2018 Privacy Policy) at 15; Ex. 9 (Aug. 19, 2015 Privacy Policy) at 8; Ex. 4 (Dec. 19, 2014 Privacy Policy) at 9; Ex. 1 (June 24, 2013 Privacy Policy) at 8.

[3] *See also id.*, Ex. 17 (May 25, 2018 Privacy Policy) at 1; Ex. 9 (Aug. 19, 2015 Privacy Policy) at 1-2; Ex. 4 (Dec. 19, 2014 Privacy Policy) at 2-3; Ex. 1 (June 24, 2013 Privacy Policy) at 1-2.

[4] *See also id.*, Ex. 17 (May 25, 2018 Privacy Policy) at 2-5; Ex. 9 (Aug. 19, 2015 Privacy Policy) at 2-3; Ex. 4 (Dec. 19, 2014 Privacy Policy) at 2-3; Ex. 1 (June 24, 2013 Privacy Policy) at 2-3.

[5] *See also id.*, Ex. 17 (May 25, 2018 Privacy Policy) at 5; Ex. 9 (Aug. 19, 2015 Privacy Policy) at 4; Ex. 4 (Dec. 19, 2014 Privacy Policy) at 4; Ex. 1 (June 24, 2013 Privacy Policy) at 3.

the Service." *Id.*, Ex. 22 at 6 (June 9, 2010 Terms).[6]  For children under 13, Google created YouTube Kids, a service "Made Just for Kids" and "designed to be a safer and simpler place for kids."  6AC ¶ 110.  YouTube Kids does not provide personalized ads.  *Id.* ¶ 111.

### B.  Regulatory Enforcement and Plaintiffs' Complaints

On September 4, 2019, the FTC and the New York Attorney General ("NYAG") brought an action against Google for alleged violations of the Children's Online Privacy Protection Act ("COPPA") in the D.C. Court.  Wang Decl., Ex. 25.  Google, without any admission of liability, agreed to a civil penalty and stipulated permanent injunction, which the court entered ("FTC Order").  *Id.*, Ex. 26.  The FTC Order requires Google to: (1) develop, implement, and maintain a system that permits YouTube channel owners to identify their made for kids content on the platform; (2) notify channel owners that their made for kids content may be subject to COPPA requirements; (3) provide annual training about complying with COPPA for employees who deal with channel owners; (4) provide notice about its data collection practices and obtain verifiable parental consent before collecting personal information from children; and (5) refrain from disclosing, using or benefiting from previously collected data.  *Id.* at 10-12.  The deadline for compliance with the FTC Order was January 10, 2020, and it required compliance reporting, monitoring, and record keeping for 10 additional years.  *Id.* at 4, 15-19.  The FTC and the NYAG may move to enforce the FTC Order, with the D.C. Court retaining jurisdiction.  *Id.* at 21.

Plaintiffs filed their initial complaint a few weeks after the FTC and NYAG action (Dkt. 1 (Oct. 25, 2019)) and have since amended it six times.  Dkts. 88, 92, 121, 197, 275, 286.

### C.  The Court's Dismissal of Plaintiffs' Fifth Amended Complaint

In December 2023, Defendants moved to dismiss Plaintiffs' claims, and this Court dismissed the 5AC in full.  It first held that Plaintiffs could not pursue equitable relief, including claims for unjust enrichment, because they failed to allege a lack of adequate remedies at law.  Order at 6.  The Court held "Plaintiffs' allegations of harm focus on economic injuries" for which damages could provide compensation.  *Id.*  The Court next dismissed Plaintiffs' privacy claims for failure to allege a highly offensive intrusion into an area where Plaintiffs maintained a reasonable

---

[6] *See also id.*, Ex. 23 (May 25, 2018 Terms) at 6; Ex. 24 (December 10, 2019 Terms) at 4.

expectation of privacy. *Id.* at 10-14. The Court held that the allegations showed only that Defendants engaged in "routine behavior" online without "secret or deceptive data collection," and the allegation that data was collected from children did not constitute a "plus factor" that transformed this activity into highly offensive conduct. *Id.* Finally, the Court dismissed Plaintiffs' consumer protection claims for failure to allege cognizable loss. Plaintiffs did not allege "facts from which the Court may reasonably infer" that Defendants' alleged "misappropriation" of data "reduced the value of Plaintiffs' information." *Id.* at 15. Nor did they allege facts showing Defendants' alleged use of data "prevents Plaintiffs from using the information themselves," including selling the information. *Id.* at 19. And even if Plaintiffs had asserted they could no longer sell their information, the Court concluded that "it would still reject that inability as a sufficiently alleged harm because Plaintiffs do not allege they actually intended to sell that information." *Id.*

The Court set out a narrow path for amendment. To the extent they could do so "in good faith," the Court gave Plaintiffs an opportunity to allege (1) they suffered non-economic harms not remediable by damages to support their requests for equitable relief and claim of unjust enrichment; (2) "sufficient plus factors accompanied Defendants' conduct" to show that it was highly offensive as required to state viable privacy claims; and (3) they "suffered a loss" cognizable under the consumer protection statutes. *Id.* at 20-21. The Court prohibited any other amendments, directing that Plaintiffs "may not otherwise add new substantive allegations." *Id.* at 21.

### D. Plaintiffs' Sixth Amended Complaint

Plaintiffs' core allegations in the 6AC remain the same: Google allegedly collected information from viewers of child-directed content on YouTube for the purpose of serving personalized rather than contextual ads without parental consent. *See* 6AC ¶¶ 5-11.

Regarding equitable relief, Plaintiffs still allege that damages are inadequate and that they should be permitted to pursue equitable relief in the alternative. Plaintiffs also try to minimize the import of the FTC Order, arguing it is ***possible*** some YouTube channel owners may fail to designate content as made for kids to allow personalized ads, *id.* ¶¶ 298-305, and that they are "***likely*** to use YouTube in the future," *id.* ¶ 328 (emphasis added). But Plaintiffs do not allege that they themselves suffered any non-economic harm. Nor do they allege that they viewed any improperly

designated content, or how likely it is they will resume using YouTube or when that might happen.

With respect to their privacy claims, Plaintiffs reference various allegations regarding COPPA's history, *id.* ¶¶ 222-47, Google's public representations about compliance, *id.* ¶¶ 248-53, communications between Google employees and YouTube advertisers and content creators regarding compliance, *id.* ¶¶ 254-74, and alleged dangers of YouTube and social media usage. *Id.* ¶¶ 275-97. Absent are any allegations of deceptive practices by Google or the Channel Owners.

Finally, as to their consumer protection claims, Plaintiffs re-assert that Defendants' conduct has "diminished the value of [their] Personal Information." *Id.* ¶ 169. They include additional allegations regarding the purported value of certain online user data and a market associated with that data. *Id.* ¶¶ 170-90. They allege that for Plaintiffs who "would choose" to sell their information on that market, the value of the information is lower. *Id.* ¶ 195. They also allege that for Plaintiffs who would prefer ***not*** to sell their information, the value is diminished too. *Id.* ¶ 198. There remains, however, no allegation that any Plaintiff intended to sell their information.

## III.     THE 6AC SHOULD BE DISMISSED IN ITS ENTIRETY WITH PREJUDICE

### A. Plaintiffs' Requests for Equitable Relief Should Be Dismissed

#### 1. Plaintiffs Still Cannot Pursue Equitable Relief

The Court held that the 5AC contained "only conclusory allegations" that Plaintiffs "lack an adequate remedy at law" and thus Plaintiffs could not pursue equitable relief. Order at 6. As the Court found, Plaintiffs' allegations focused on purported economic harm "already suffered," for which legal remedies could serve as adequate relief. *Id.* To salvage their requests for equitable relief, Plaintiffs had to "allege in good faith that they have suffered or will suffer non-economic harm not remediable by damages." *Id.* at 19. The 6AC does not come close to doing that.

Plaintiffs simply repeat the same conclusory allegations regarding "mental and emotional distress," *e.g.*, 6AC ¶¶ 507, 525, 533, 568, that the Court held were insufficient, Order at 8 n.5. The only new allegations of "harm" focus on purported "economic" injury, *e.g.*, 6AC ¶¶ 168-69, 193-201, which as the Court noted, simply underscore that damages could suffice, Order at 8. The 6AC also contains general allegations regarding "exposing children to age-inappropriate content," potential effects on "mental health," and the "impact of social media." 6AC ¶¶ 290, 296-97. These

allegations are immaterial and entirely disconnected from Defendants' alleged privacy violations; no named Plaintiff claims to have been exposed to inappropriate content or suffered any adverse mental health effects from the videos they allegedly watched on YouTube (much less watched on the Channel Owners' channels) more than four years ago. *See id.* ¶¶ 336-461. Accordingly, Plaintiffs' bald claim that "damages will not protect [them] from the non-economic harms" is wholly unsupported. *Id.* ¶¶ 311, 334.

In the absence of plausible factual allegations showing that Plaintiffs suffered non-economic harm, Plaintiffs instead restate positions the Court has already rejected. *First*, Plaintiffs again assert that equitable remedies targeting the economic benefits Defendants supposedly obtained are distinct from the alleged injuries they suffered. "No remedy at law," Plaintiffs assert, reaches the "profits" Defendants allegedly earned. *Id.* ¶ 310; *see also id.* ¶ 332. But as the Court held, Plaintiffs are articulating two remedies "for a singular injury." Order at 9 (citing cases). In the 6AC, Plaintiffs again assert multiple legal claims and seek an assortment of legal remedies, including compensatory, statutory, and punitive damages, *see* 6AC at ¶ 212, based on the ***same*** alleged conduct that gives rise to their requests for equitable relief. Plaintiffs' unjust enrichment claims, for example, are predicated on "the unlawful and unfair conduct alleged herein," where Defendants allegedly "retain[ed]" improper "economic benefits." *E.g.*, *id.* ¶¶ 509-10, 570-71, 603-04. Likewise, Plaintiffs' consumer protection claims are based on alleged "unfair and unlawful" practices related to the collection and use of data for "commercial gain." *E.g.*, *id.* ¶¶ 543, 552, 584, 593, 624, 635. "[E]quitable and legal relief are different avenues of making injured parties whole," and "an adequate legal remedy need not be an identical legal remedy." *Ketayi v. Health Enrollment Grp.*, 2021 WL 2864481, at *10 (S.D. Cal. July 8, 2021); *Rabin v. Google LLC*, 2023 WL 4053804, at *13-14 (N.D. Cal. June 15, 2023) (similar). As the Court held, that Defendants may have earned profits from the allegedly unlawful conduct "renders neither damages for the harm a per se inadequate legal remedy nor the earning of those profits a distinct harm for which Plaintiffs may also recover," Order at 9, precluding Plaintiffs from seeking equitable relief.

*Second*, Plaintiffs assert that if their claims at law are dismissed they should be permitted to seek equitable relief as "an alternative remedy." 6AC ¶¶ 311, 334. That is a variation of their

1    previous argument that "'it is impossible to fully assess the adequacy of [their] legal remedies' at

2    the pleading stage," which the Court rejected.  Order at 8 (citation omitted).  Plaintiffs must "***plead***"

3    plausible facts showing they lack adequate legal remedies.  *Rabin*, 2023 WL 4053804, at *13.  And

4    speculating about what the Court may do cannot elide that "Plaintiffs have not pled facts" showing

5    the inadequacy of legal remedies.  *Id.*; *see also Moore v. Am. Honda Motor Co., Inc.*, 2024 WL

6    3416515, at *9-10 (N.D. Cal. July 15, 2024) (same).  Ninth Circuit precedent also holds that the

7    subsequent unavailability of a legal claim does not make legal remedies sought through that claim

8    inadequate.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (dismissing

9    equitable restitution claims where Plaintiffs previously pled legal claim that was dismissed); *see*

10   *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) ("[E]quitable relief must be

11   withheld when an equivalent legal claim would have been available but for a time bar.").

12          *Third*, the 6AC again seeks a variety of injunctive relief: (a) the destruction of data allegedly

13   collected in violation of COPPA, (b) notice to putative class members about that destruction and

14   designation of YouTube channels as made for kids, (c) a prohibition on the use of "wrongly

15   collected data," and (d) the requirement that Defendants relinquish all alleged "ill-gotten gains."

16   6AC ¶¶ 312, 335.  But Plaintiffs do not set forth allegations showing that legal remedies could not

17   provide adequate recovery for purported harms that supposedly necessitate an injunction.  Order at

18   8.  Plaintiffs still have not alleged facts showing that Google's alleged retention of user data creates

19   injuries that only injunctive relief can address.  While the 6AC suggests there is a danger of "hacks

20   and data breaches," 6AC ¶ 309, that is pure speculation, *cf. Clapper v. Amnesty Int'l USA*, 568 U.S.

21   398, 401 (2013) (risk of future harm must be "certainly impending" not "conjectural"), and there

22   are no allegations that any data in ***this case*** is at risk, *id.* at 401 n.174.  Nor have Plaintiffs plausibly

23   alleged that they would have difficulty calculating purported damages in connection with

24   previously collected user data.  *See* Order at 8 n.5; *see also Rabin*, 2023 WL 4053804, at *14

25   ("[C]ourts in this Circuit have granted motions to dismiss claims seeking prospective injunctive

26   relief where the Plaintiff has failed to plausibly allege difficulty in quantifying damages.").

27          Plaintiffs also speculate that Google may be violating the FTC Order, 6AC ¶¶ 315-27, but

28   contrary to the Court's ruling, Plaintiffs fail to allege "any non-economic harm" that "cannot be

1    remedied by damages."  They have not shown that legal remedies would be inadequate for

2    purported "future or ongoing harms."  *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121

3    (C.D. Cal. 2021); *see also Rabin*, 2023 WL 4053804, at *14 (dismissing injunctive relief claim

4    where no allegations showed legal remedies were insufficient to address "ongoing" misconduct).

5              2.   <u>Plaintiffs Lack Article III Standing to Seek Injunctive Relief</u>

6         Plaintiffs' request for injunctive relief also should be dismissed for a reason the Court did

7    not reach:  Plaintiffs have not alleged facts showing a "certainly impending" threat of injury,

8    *Clapper*, 568 U.S. at 416, and "sufficient likelihood" that Plaintiffs "will again be wronged in a

9    similar way," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

10        Plaintiffs' request to enjoin Defendants from using so-called "wrongly collected" user data

11   and to direct Google to destroy the data, 6AC ¶¶ 312, 335, has already been addressed by the FTC

12   Order.  Wang. Decl., Ex. 26 (FTC Order) at 12 (barring Google from disclosing, using, or benefiting

13   from previously collected data).  Plaintiffs lack standing to pursue injunctive relief where, as here,

14   an FTC order provides substantially the same relief.  *See In re Pre-Filled Propane Tank Antitrust

15   Litig.*, 893 F.3d 1047, 1054 (8th Cir. 2018).  With respect to the Channel Owners, there again are

16   no allegations that they collected any data.  "[T]here is nothing to be gained by entering an

17   injunction that substantially duplicates the relief already available," and thus no standing.  *Nat'l

18   Farmers Org. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1309 (8th Cir. 1988).

19        Plaintiffs' attempt to evade the impact of the FTC Order falls flat.  *First*, Plaintiffs assert

20   that the restrictions on previously collected data are rendered "moot" because they apply to content

21   designated by channel owners as made for kids, and channel owners might skirt that requirement.

22   6AC ¶¶ 300-01.  They reference channel owners "outside the United States" and "small enterprises

23   with opaque operations" as creating the potential for "significant deceit."  *Id.* ¶ 301.  But there is

24   nothing to suggest that channel owners, which create and post content, are not well positioned to

25   designate whether that content is made for kids, or that the FTC's compliance monitoring is

26   inadequate.[7]  Critically, there are no allegations that the Channel Owners—or any other channel

27   _____
[7] *See* Statement of Joseph J. Simons & Christine S. Wilson (Sept. 4, 2019) (noting that the FTC
28   planned to conduct a sweep of YouTube channels following implementation of the Order),

owners posting content in the U.S.—failed to designate channels Plaintiffs allegedly watched as made for kids following the FTC Order.[8]  There also are no allegations that any of the "multiple monetized YouTube channels" Plaintiffs supposedly watched failed to do the same.[9]  And there are no allegations that any "significant deceit" happened.  In short, Plaintiffs do not articulate any real and impending threat of injury related to data allegedly collected several years ago.

Second, Plaintiffs assert that Google has not fully complied with the FTC Order and COPPA and that they have "a reasonable fear" the Channel Owners may violate COPPA too.  6AC ¶¶ 315-26, 333.  But Plaintiffs have not plausibly alleged that they face an immediate risk of harm tied to their continued use of YouTube.  Plaintiffs' allegation that they are "likely to use YouTube" at some indeterminate point "in the future," *e.g.*, *id.* ¶¶ 342, 349, 356, 363, is insufficient, particularly when Plaintiffs' allegations indicate that they last watched YouTube more than four years ago, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("some day" intentions insufficient); *cf. Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 948 (9th Cir. 2011) (allegations that plaintiff visited non-compliant theater multiple times per week sufficient), and injunctive relief requiring compliance with existing legal obligations is improper, *e.g.*, *Cuviello v. City of Oakland*, 2009 WL 734676, at *3 (N.D. Cal. Mar. 19, 2009) (rejecting "obey the law" injunction); *Roman v. MSL Cap., LLC*, 2019 WL 3017765, at *5 (C.D. Cal. July 9, 2019) (noting such injunctions are "disfavored").

Plaintiffs also ignore the fact that the D.C. Court has retained jurisdiction "for purposes of construction, modification, and enforcement" of the FTC Order.  The Ninth Circuit has recognized that it would "interfere with" and "usurp" the "inherent power" of a court that issued an injunction for "a nonissuing court to entertain an action" for relief covering the same subject matter.  *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964).  Where a request for injunctive relief overlaps with an existing consent decree overseen by another court, jurisdiction should be refused.  *Id.*; *see also Feller v. Brock*, 802 F.2d 722, 728 (4th Cir. 1986) (noting that a "district court's supervisory

---

*available at* https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf.
[8] In fact, each of the Channel Owners has made that designation for their channels, and Plaintiffs have been aware of this fact since before they filed the 6AC.
[9] It would be evident to a user whether a channel had been designated as made for kids because a number of features would not be enabled, including comments and notifications.  *See* YouTube Help, https://support.google.com/youtube/answer/9527654.

MOTION TO DISMISS SIXTH AMENDED
COMPLAINT 19-CV-07016-SVK

1    power over its injunction continues").

**B.    Plaintiffs Fail to Plead Viable Claims for Intrusion Upon Seclusion or Violation of the California Constitutional Right to Privacy**

The Court dismissed Plaintiffs' privacy claims because the allegations in the 5AC were consistent with "ubiquitous, commercial behavior," not "highly offensive" conduct. Order at 14. Plaintiffs failed to allege any "plus factors" that "elevate[d] Defendants' conduct beyond the level of routine commercial behavior." *Id.* at 12. "This is not a case involving secret or deceptive data collection," *id.*, and the Court rejected Plaintiffs' arguments that alleged data practices involving children and purported violations of COPPA were highly offensive, *id.* at 13-14. The Court gave Plaintiffs leave to amend "[t]o the extent" they could "allege in good faith" sufficient "plus factors." *Id*. at 20. Plaintiffs try to do so in three ways: they (1) allege Google "lie[d] to the public," (2) assert Google made "misleading statements" to YouTube creators and advertisers, and (3) include a hodgepodge of inflammatory allegations about YouTube. 6AC ¶¶ 248, 256, 275-97, 222-27. These repeat arguments are unavailing, especially when Google openly disclosed its data practices.

1.    <u>Public Representations</u>. The 6AC asserts that a handful of public representations in Google's Code of Conduct and in a Google Safety Center webpage—including Google's "Don't be evil" motto," its values "about doing the right thing," how it "takes its responsibilities to comply with the laws and regulations applicable to it very seriously," and its commitment "to complying with applicable data protection laws"—were "false" and intended to induce parents into allowing their children to watch YouTube. 6AC ¶¶ 248-52. These allegations are not new. Plaintiffs have reinserted allegations they jettisoned in the Fourth Amended Complaint, *see* Dkt. 178 at 1 (seeking leave to "remov[e] allegations of deceptive conduct"), which Judge Freeman previously found insufficient, *see* Dkt. 146 at 8-10. Judge Freeman held that these public representations were not actionable and did not create an expectation of privacy associated with YouTube, as "Plaintiffs h[ad] not alleged deceptive conduct that places Defendants' behavior outside of what is regulated by COPPA." Dkt. 146 at 10 (citing cases); *see Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (holding "lofty but vague statements" are non-actionable). So too with the 6AC. Moreover, there are ***no*** allegations suggesting that Plaintiffs, their guardians, or any putative class

1   members read or were misled by these representations.  That is not surprising given Plaintiffs'

2   earlier concessions that their parents never saw any purported misrepresentations and that different

3   disclosures would not have stopped them from using YouTube.  Dkt. 146 at 9-10.

4          2.  Communications with YouTube Advertisers.  The 6AC next cites non-public

5   communications between Google employees and certain YouTube advertisers and content creators

6   to try to show that Google misrepresented YouTube's COPPA compliance.  6AC ¶¶ 255-74.  These

7   allegations just reprise Plaintiffs' argument about alleged violations of COPPA being highly

8   offensive, which the Court rejected.  Order at 13.  More fundamentally, there are no allegations

9   connecting the communications to *Plaintiffs*.  Plaintiffs and their guardians were not privy to the

10  communications and could not have been misled by them.  Nothing in the 6AC ties the

11  communications to any purported privacy expectations held by Plaintiffs or their guardians, any

12  purported intrusion into a private space, or to Plaintiffs' alleged use of YouTube.

13         3.  Inflammatory Assertions.  In a last-ditch effort to save their privacy claims,

14  Plaintiffs make inflammatory assertions about YouTube recommending inappropriate content for

15  children, negative mental health effects, and video recommendations inducing more YouTube

16  usage.  6AC ¶¶ 275-97.  None of these allegations is a "plus factor" that show Defendants'

17  purported conduct was a highly offensive intrusion.  *First*, these allegations have nothing to do with

18  this case at all.  The 6AC is devoid of allegations showing any Plaintiff experienced these purported

19  social dangers, and there are no allegations of inappropriate content or advertisements on the

20  YouTube videos they supposedly watched or that they suffered any negative mental effects, much

21  less any allegations connecting those purported harms to videos on the channels of the Channel

22  Owners.  *Second*, the new allegations are not connected to the data practices underlying Plaintiffs'

23  claims and do not show that any purported intrusion into *their* privacy was highly offensive.[10]

24  Plaintiffs are left complaining about alleged data practices that are "routine behavior" in the world

25  of "[c]ontemporary internet browsing," Order at 11-12, which the Court correctly concluded are

26  not actionable.  Numerous courts have agreed.  *E.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 827

27

28  ---

[10] These allegations also are far afield from the limited leave to amend granted by the Court and
should be discounted for that reason alone.  Order at 20.

MOTION TO DISMISS SIXTH AMENDED
COMPLAINT 19-CV-07016-SVK

1   F.3d 262, 294–95 (3d Cir. 2016) ("use of cookies to track children," when done without deception,

2   ***not*** "sufficiently offensive" to survive dismissal); *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at

3   *3 (N.D. Cal. May 8, 2024) (collection of identifying personal information not highly offensive);

4   *Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *5 (S.D. Cal. July 12, 2023) (disclosure of user

5   data associated with healthcare provider website not highly offensive); *Popa v. Harriet Carter*

6   *Gifts, Inc.*, 426 F. Supp. 3d 108, 122-23 (W.D. Pa. 2019) (collecting "keystrokes, mouse clicks, and

7   PII is simply not the type of highly offensive act to which liability can attach").

8       4.  <u>Google's Disclosures</u>.  The new allegations in the 6AC also cannot transform what

9   the Court found to be routine commercial activity into highly offensive conduct when Google

10  indisputably disclosed its collection and use of YouTube user data.  Google's Privacy Policy—

11  directed to adults, including parents who make decisions about children's access to Internet-enabled

12  devices and YouTube—explains how the information collected from users includes "information

13  about the apps, browsers, and devices you use to access Google services" as well as "information

14  about your activity in our services."  Wang Decl., Ex. 17 (May 25, 2018 Privacy Policy) at 2-3.[11]

15  The Privacy Policy identifies the categories of information collected from users and explains that

16  this information is used to provide personalized content recommendations and to serve personalized

17  ads. *See id.*, Ex. 19 (Oct. 15, 2019 Privacy Policy) at 3 ("We collect information about your activity

18  in our services, which we use to do things like recommend a YouTube video you might like."), 17

19  ("[I]f you watch videos about baking on YouTube, you may see more ads that relate to

20  baking . . . .").[12]  Furthermore, YouTube's Terms of Service cautioned that YouTube is not

21  intended for children under 13.  *Id.*, Ex. 24 (Dec. 10, 2019 Terms of Service) at 4.[13]

22      Courts hold that collection of online user data consistent with disclosures is not actionable.

23  The Ninth Circuit recently found that Google's Privacy Policy "preclude[d] Plaintiffs' claims for

24  invasion of privacy under common law and the California Constitution."  *Hammerling v. Google,*

25

26  [11] *See also id.*, Ex. 19 (Oct. 15, 2019 Privacy Policy) at  2-3; Ex. 9 (Aug. 19, 2015 Privacy Policy)
    at 1-3; Ex. 4 (Dec. 19, 2014 Privacy Policy) at 2-4; Ex. 1 (June 24, 2013 Privacy Policy) at 1-3.

27  [12] *See also id.*, Ex. 19 (Oct. 15, 2019 Privacy Policy) at 3, 5, 17, and 21; Ex. 17 (May 25, 2018
    Privacy Policy) at 3, 5, 9, 16, 20; Ex. 9 (Aug. 19, 2015 Privacy Policy) at 4-5; Ex. 4 (Dec. 19, 2014
    Privacy Policy) at 4-5; Ex. 1 (June 24, 2013 Privacy Policy) at 3-4.

28  [13] *See also id.*, Ex. 23 (May 25, 2018 Terms) at 6; Ex. 22 (June 9, 2010 Terms) at 6.

MOTION TO DISMISS SIXTH AMENDED
COMPLAINT 19-CV-07016-SVK

*LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024).  These claims were "properly dismissed" because the Privacy Policy "expressly disclosed" tracking of activity on third-party apps.  *Id.* Likewise, in *Lloyd v. Facebook, Inc.*, the Ninth Circuit held that Facebook's disclosures regarding third-party partners sharing data precluded the plaintiff's privacy claims.  2024 WL 3325389, at *2 (9th Cir. July 8, 2024); *see also Gray v. Amazon.com Inc.*, 2024 WL 2206454, at *2 (9th Cir. May 16, 2024) (affirming dismissal of privacy claim where "Amazon disclosed the relevant conduct in its Privacy Notice").  Numerous district courts are in accord.  *E.g.*, *In re Google, Inc. Priv. Policy Litig.*, 2013 WL 6248499, at *15-16 (N.D. Cal. Dec. 3, 2013).  The same is true here with respect to alleged collection and use of data associated with individuals viewing content on YouTube.

**C.    Plaintiffs Fail to State a Claim Under State Consumer Protection Laws**

The Court dismissed Plaintiffs' claims under state consumer protection statutes for failing to adequately allege cognizable loss.  *See* Order at 19.  The Court found that Plaintiffs did not "allege facts explaining how" Defendants' purported "collection and use of their information reduces the value of that information."  *Id.* at 15.  In particular, the allegations in the 5AC did not show that Defendants' conduct prevented them from "using the information themselves" or "sell[ing] their information."  *Id.* at 19.  And even if Plaintiffs had alleged that they could no longer sell their information, the Court emphasized they must also "allege that they actually intended to sell the misappropriated information" or "describe facts from which the Court can reasonably infer such intention."  *Id.*  Nothing in the 6AC cures these fundamental defects, and Plaintiffs' claims again fail as a matter of law.  Plaintiffs' claims under Indiana, Mississippi, Missouri, South Carolina, and Tennessee law also should be dismissed for additional reasons specific to each statute.

1.    <u>No Requisite Loss Alleged</u>.  In an effort to show cognizable loss, Plaintiffs rehash theories of harm tied to their purported "property interest" in data associated with watching YouTube.  6AC ¶ 168.  Plaintiffs assert that the alleged collection and use of this data (a) "destroyed the private quality" of the data thereby depriving them of the ability to keep the data "private" and "NOT to sell it," and (b) "diminished the amount a knowledgeable buyer would be willing to pay" for the data for those "who would choose to sell" it.  *Id.* ¶¶ 169, 195.  As an initial matter, it is not clear that "there is a property interest in personal information."  *Doe I v. Google LLC*, 2024 WL

3490744, at *7 (N.D. Cal. July 22, 2024) (distinguishing *CTC Real Estate Services* and *In re Facebook, Inc. Internet Tracking Litigation* cited at 6AC ¶ 168 n.58); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (courts have "consistently rejected" the  view that "money or property" includes a "property interest" in "personal information"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012) ("The weight of authority holds that a plaintiff's personal information does not constitute property.").  But even if there were a property interest in YouTube user data, Plaintiffs still have not alleged any actual loss.

Plaintiffs' "private quality" theory fails because alleged loss of privacy or control over data is not a cognizable damage.  *E.g.*, *Svenson v. Google Inc.,* 2016 WL 8943301, at *17 (N.D. Cal. Dec. 21, 2016) (asserted loss of online "privacy protections do not constitute a loss of money or property"); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862-63 (N.D. Cal. 2011) (rejecting claim where facts did not show plaintiff's personal information ceased to belong to him or passed beyond his control); *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 697 (N.D. Cal. 2019) (rejecting "loss of privacy" theory of injury where plaintiffs alleged their data had "derive[d] value from remaining private").  That is especially true here, where there are no allegations showing Plaintiffs maintained privacy over their online activities generally or video watch history specifically.

Plaintiffs' "diminished" value theory fares no better.  At the outset, Plaintiffs still have not plausibly alleged any diminution.  The 6AC contains new allegations about how some personal information may have economic value, 6AC ¶¶ 170-90, but does not allege a market for the specific information at issue here: YouTube activity data.  It may be the case that individuals can get rewards for allowing their web browsing activity to be tracked, *see id.* ¶ 188, but that does not mean children under the age of 13 can monetize their YouTube activity data.  *See Svenson*, 2016 WL 8943301, at *9 (rejecting diminution-in-value theory where plaintiff failed to establish "existence of a one-to-one market in which [plaintiff] could have sold her personal information").  The allegations in the 6AC also fail to show how Google's purported conduct actually diminished the value of the data.  Plaintiffs point to two academic articles that discuss data "externalities."  *Id.* ¶¶ 196-97 & nn.85, 88.  One develops a "scheme based on mediated data sharing that improves efficiency," while the

other advances a "theoretical model of privacy."[14]  The thrust of each article—that the voluntary sharing of data by some individuals can impact other individuals' data—is wholly disconnected from this case.  The alleged negative impact associated with voluntary data sharing does not show that ***Defendants'*** alleged practices diminished the value of data associated with Plaintiffs' YouTube activity.  Moreover, the theoretical models do not show that the "price" for user data in any actual market is reduced following collection and use by an entity, let alone that the price for YouTube activity data diminished after it was allegedly collected and used by Google.  Plaintiffs still have not explained "why any alleged acquisition" of data "would necessarily mean that the plaintiffs could not still sell their data in the market they allege exists."  *Doe*, 2024 WL 3490744, at *7.

Even if Plaintiffs had plausibly alleged some abstract diminution in value, they still fail to allege "that they actually intended to sell" their data.  Order at 19.  As the Court held, Plaintiffs must allege such an intention or facts "from which the Court can reasonably infer such intention."  *Id.*  Plaintiffs have done neither.  There are no allegations suggesting that Plaintiffs wanted or intended to participate in any purported market for selling their YouTube activity data.  Nor are there allegations indicating that Plaintiffs sold any data—regarding online activities or otherwise— in the past.  On the contrary, Plaintiffs indicate that there are individuals who do "NOT" want to sell data about their online activities.[15]  Plaintiffs have not and cannot allege that they fall into the camp of individuals who want to sell data but are unable to do so or must accept a lower price because of Defendants' alleged conduct.  Accordingly, Plaintiffs' consumer protection act claims should be dismissed once again.  *E.g.*, *Gerber v. Twitter, Inc.*, 2024 WL 1354449, at *7 (N.D. Cal. Mar. 29, 2024) (alleged existence of market "does not equate to an allegation that Plaintiffs

---

[14] Daron Acemoglu *et al.*, "Too Much Data: Prices and Inefficiencies in Data Markets," Am. Econ. J.: Microecon., 14(4), at 1 (2022), available at https://economics.mit.edu/sites/default/files/2023-06/Too%20Much%20data%20-%20Prices%20and%20Inefficiencies%20in%20Data%20Markets.pdf; Jay Pil Choi *et al.*, "Privacy and Personal Data Collection with Information Externalities," J. of Pub. Econ. 173, 113 (2009), available at https://www.researchgate.net/publication/344962107_Privacy_and_personal_data_collection_with_information_externalities.

[15] These contradictory allegations simply underscore a key point made in the articles Plaintiffs cite: individuals have heterogeneous privacy preferences.  *See* Acemoglu *et al.*, "Too Much Data: Prices and Inefficiencies in Data Markets," at 2; Choi *et al.*, "Privacy and Personal Data Collection with Information Externalities," at 14.

'attempted or intended to participate in this market'") (citation omitted); *Ahringer v. LoanDepot, Inc.*, 2024 WL 1135683, at *4 (C.D. Cal. Feb. 6, 2024) (dismissing claim based on lack of allegations showing Plaintiffs would have sold personal information and lost the ability to do so).

2. <u>No Lease, Purchase, or Transaction.</u>  Plaintiffs' Mississippi, Missouri, and Indiana claims should be dismissed because Plaintiffs do not allege a "lease," "purchase," or "consumer transaction," as required by these laws.  *See Cole v. Chevron USA, Inc.*, 554 F. Supp. 2d 655, 666 (S.D. Miss. 2007) (Mississippi statute requires "purchase[] or lease"); *Schulte v. Conopco, Inc.*, 997 F.3d 823, 825 (8th Cir. 2021) (Missouri statute requires "lease[] or purchase[]"); *Reger v. Arizona RV Ctrs., LLC*, 515 F. Supp. 3d 915, 938 (N.D. Ind. 2021) (Indiana statute requires "consumer transaction").  Courts hold that using an online service without charge is not a purchase or lease, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *32 (N.D. Cal. Aug. 30, 2017), and Plaintiffs do not allege that they transacted to access YouTube.

3. <u>No Class Claims.</u>  Plaintiffs' Tennessee, Mississippi, and South Carolina claims fail because these statutes preclude class actions.  *See Davidson v. Apple, Inc.*, 2018 WL 2325426, at *10 (N.D. Cal. May 8, 2018) (dismissing consumer protection claims based on analogous class action bar); *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 390-91 (D.N.J. 2018) (dismissing Tennessee claim, in line with the "majority of district[s] and circuits"); *Cole*, 554 F. Supp. 2d at 671 (dismissing Mississippi claim); *In re Mednax Servs. Inc.*, 603 F. Supp. 3d 1183, 1217 (S.D. Fla. 2022) (dismissing South Carolina claim).  The statutory prohibitions are embedded in the laws' substantive provisions, *see* Tenn. Code Ann. § 47-18-109(g); Miss. Code Ann. § 75-24-15(4); S.C. Code Ann. § 39-5-140(a), making dismissal appropriate, *see Davidson*, 2018 WL 2325426, at *10 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)).

**D.    Plaintiffs' Unjust Enrichment Claims Fail for Additional Reasons**

Plaintiffs' unjust enrichment claims also fail under state law for multiple other reasons.

1. <u>No Unjustly Conferred Benefit.</u>  These claims fail because the benefits Defendants allegedly received were not unjustly conferred.  *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) ("The most significant requirement . . . is that the enrichment be unjust.") (citation omitted).  The Channel Owners created video content, which Google made

publicly available and Plaintiffs accessed without payment.  Google, moreover, clearly disclosed how it collected and used data associated with YouTube.  *See supra* § III.B.4.  These disclosures were directed to adults who make decisions about children's access to YouTube, and as Plaintiffs conceded, they "do not allege that their parents would have stopped them from using YouTube with different disclosures."  Dkt. 127 at 18-19.  This concession underscores the value they derived from YouTube and the lack of benefit conferred on Defendants via "mistake, fraud, coercion, or request." *Russell v. Walmart, Inc.*, 2023 WL 4341460, at *2 (N.D. Cal. July 5, 2023); *see also Fed. Home Loan Mortg. Corp. v. Anchrum*, 2015 WL 2452775, at *5 (N.D. Ala. May 22, 2015).  Where, as here, Plaintiffs "have identified no actionable wrong," their unjust enrichment claims fail. *Hammerling*, 2024 WL 937247, at *3 n.3; *see also Doe*, 2024 WL 3490744, at *10.

       2.  <u>No Enrichment at Plaintiffs' Expense</u>.  Plaintiffs' claims should be dismissed for the additional reason that they allege no facts showing Defendants were enriched at Plaintiffs' expense or that Plaintiffs have an ownership interest in the "economic benefits" Defendants allegedly received.  *E.g.*, 6AC ¶¶ 571, 604, 646; *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 36-37 (2d Cir. 2017) (affirming dismissal of unjust enrichment claim based on alleged misappropriation of "browsing" data where there was no alleged loss or deprivation of opportunity); *see also Sanh v. Opportunity Fin., LLC*, 2021 WL 101199, at *3 (W.D. Wash. Jan. 12, 2021) (dismissing claim where plaintiff "does not allege that she paid any fees to [defendant]").  Plaintiffs do not allege facts showing any loss due to Defendants' purported conduct, *see supra* § III.C.1, or that they have a claim over benefits Defendants supposedly derived.  Mere assertions that Defendants benefited "at the expense" of Plaintiffs, *e.g.*, 6AC ¶¶ 513, 574, 607, or conclusory claims that Defendants "retain[ed] . . . profits," *e.g.*, *id.* ¶¶ 606, 683, 699, fall far short of well-pleaded facts.  *See Mount*, 684 F. App'x at 36; *Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633, at *7 (D.N.J. Apr. 26, 2023) (no unjust enrichment because "vague references" to "loss of control" over "biometric data" "do not suffice") (citation omitted).  The 6AC alleges Defendants received money from third party advertisers, ***not*** Plaintiffs, 6AC ¶ 6, and thus they have not shown that Defendants "unjustly retained a benefit at the ***plaintiff's*** expense," *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).  For the same reasons, Plaintiffs have not shown they "retain a

1    stake in the profits garnered" to support their California unjust enrichment claim.  *In re Facebook,*

2    *Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020).

3        3.  No Expected Remuneration.  The New Jersey and Indiana claims also fail because

4    Plaintiffs do not plausibly allege they "expected remuneration" for watching YouTube.  *In re*

5    *Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *19 (D.N.J. July 2, 2014) ("[I]t is simply

6    not reasonable for a consumer—regardless of age—to use the internet without charge and expect

7    compensation because a provider of online services has monetized that usage."); *Reed v. Reid*, 980

8    N.E.2d 277, 296 (Ind. 2012) (no claim where plaintiff did not expect payment).  And Plaintiffs'

9    Tennessee claim fails because the allegations do not show that Defendants reasonably expected to

10   pay Plaintiffs, *see McKee v. Meltech, Inc.*, 2011 WL 1770461, at *10 (W.D. Tenn. May 9, 2011).

11       4.  No Contract-Based Cause of Action.  Finally, Plaintiffs' New Jersey claim also

12   should be dismissed because it is pled as a tort, which is not recognized.  *See* 6AC ¶¶ 925-32; *Bedi*

13   *v. BMW of N. Am., LLC*, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) (where no direct relationship

14   between parties, unjust enrichment claim sounding in tort is not recognized under state law).

15   **IV.    PLAINTIFFS CANNOT STATE A CLAIM AGAINST THE CHANNEL OWNERS**

16       While the Court can and should dismiss the 6AC against all Defendants because the 6AC

17   fails to cure the dispositive defects the Court identified, there are ***additional*** grounds to dismiss

18   Plaintiffs' claims as to the Channel Owners, which the Court's Order did not reach.  At the hearing

19   on the last motion to dismiss, Judge Freeman expressed "concern[] about whether there's any claim

20   against the Channel Owners at all."  Dkt. 256, Ex. A at 6:10-11, 6:25-7:1.  Judge Freeman was right

21   to be concerned, because there is no basis to keep the Channel Owners in this case.  Plaintiffs have

22   now had seven chances to allege facts establishing direct or secondary liability, including with the

23   benefit of discovery, yet still have not done do so.  In violation of the Court's Order, Plaintiffs now

24   attempt to add new substantive allegations against the Channel Owners that squarely contradict

25   Plaintiffs' prior allegations and fail as a matter of law.

26       **A.    Plaintiffs Allege No Facts to Establish Direct Liability of the Channel Owners**

27       None of Plaintiffs' theories of direct liability applies to the Channel Owners.

28       1.  Intrusion Upon Seclusion and California Constitutional Right to Privacy.  Plaintiffs

do not allege that the Channel Owners engaged in any "intrusion," much less a "highly offensive" one, which these claims require. *Supra* § III. The 6AC falls back on the general allegation that "***Defendants*** unfairly and unlawfully collected Plaintiffs' Personal Information to deliver targeted advertisements." 6AC ¶ 21 (emphasis added). But this impermissibly and inaccurately groups together Google and the Channel Owners, *Bravo v. Cnty. of San Diego*, 2014 WL 555195, at *2 (N.D. Cal. Feb. 10, 2014), and is a conclusory allegation that must be disregarded, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, the 6AC (like Plaintiffs' previous complaints) expressly recognizes that "Google"—***not*** the Channel Owners—allegedly "used persistent identifiers to track individuals' internet behavior" and for "behavioral advertising." 6AC ¶¶ 74, 84. There are no allegations that the ***Channel Owners*** collected any data or committed any privacy intrusion, which is fatal. *E.g.*, *McCoy*, 2021 WL 405816, at *8 (noting "high bar" for privacy claims).

Plaintiffs' eleventh-hour allegation that the Channel Owners "knowingly assisted Google to collect the Personal Information of viewers," 6AC ¶¶ 137, 143, 150, 155, 330, cannot save this claim. This allegation not only violates the Court's Order but also is contradicted by other allegations in the 6AC, *infra* § IV.B, and in Plaintiffs' prior complaints, which have consistently alleged the Channel Owners "allowed" Google to serve personalized ads and may not have even known about it, *see* 5AC ¶¶ 126, 134, 138, 144, 151, 156. The Court should disregard Plaintiffs' conclusory, contradictory allegations. *Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846 (N.D. Cal. 2022) (considering "prior allegations" to determine "plausibility of the current pleadings" and refusing "to accept . . . contradictory allegations" (cleaned up)).

2. <u>State Consumer Protection Statutes</u>. For similar reasons, Plaintiffs do not plausibly allege violation of state consumer protection laws against the Channel Owners. Each statute requires a causal connection between alleged conduct and any purported harms. Dkt. 203 (MTD 5AC) at 18-19 n.8 (collecting authorities). But again, without alleging "the Channel Owners collected any data at all," Dkt. 117 at 13, Plaintiffs cannot show that any Channel Owners caused them any harm. *E.g.*, *Barrera v. Costco Wholesale Corp.*, 2022 WL 3445092, at *2 (9th Cir. Aug. 17, 2022) ("[S]peculation does not establish causation.") (cleaned up); *Ryan v. Greif, Inc.*, 2023 WL 8828220, at *18 (D. Mass. Dec. 21, 2023) (MA statute requires causation); *Parr v. Maesbury*

*Homes, Inc.*, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009) (same for FL).

3. <u>Unjust Enrichment</u>.  Plaintiffs have not adequately alleged the Channel Owners were ***unjustly*** enriched.  Plaintiffs allege only that a benefit trickled down to the Channel Owners from Google's alleged conduct, not that Channel Owners obtained this money through "mistake, fraud, coercion, or request."  55 Cal. Jur. 3d Restitution § 2 (2023).  To the extent Plaintiffs point to allegations that the Channel Owners "were aware" of COPPA yet "knowingly assisted Google in collecting Personal information from children under the age of 13," 6AC ¶¶ 329-30, 332, 512, these allegations violate the limited amendment the Court permitted regarding potential "non-economic harm."  Order at 19-20.[16]  Moreover, the allegations also fail to show that Plaintiffs' "singular injury" is "not remediable by damages," *id.* at 9, 19, constitute impermissible group pleading, and are contradicted by the 6AC's concession that personalized advertising was the default setting, about which the Channel Owners "at most allowed" and may not have known, 6AC ¶¶ 12, 82, 86, 120, 124.  Nor may Plaintiffs use unjust enrichment as a backdoor to establish secondary liability, which requires Plaintiffs to show the Channel Owners "aided and abetted" or entered a "common plan" in support of Google's purported conduct.  *Infra* § IV.B.  As discussed below, Plaintiffs cannot satisfy the pleading requirements for secondary liability, and invoking "unjust enrichment" does not magically eliminate those requirements.  *LeBrun v. CBS Tele. Studios, Inc.*, 68 Cal. App. 5th 199, 210-12 (2021) (affirming rejection of unjust enrichment claim based on allegedly "deceptive conduct" when trial court had properly dismissed fraud claim).

4. <u>COPPA Liability</u>.  Plaintiffs cannot escape dismissal by arguing that the Channel Owners are "directly liable under COPPA."  Dkt. 256, Ex. A at 33:22-23.  As explained previously, Plaintiffs waived that "standalone" liability theory by failing to raise it and by conceding that the Channel Owners "likely did not actually violate COPPA."  Dkt. 127 at 17, 22; *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 n.2 (9th Cir. 2008).  In any event, COPPA provides no private right of action, meaning Plaintiffs must plead the elements of their state-law claims, which they cannot. Even if that were not dispositive (it is), Plaintiffs do not (and cannot) allege the Channel Owners

---

[16] Defendants asked Plaintiffs to withdraw these new allegations that plainly exceed the scope of the limited amendment that the Court permitted, but Plaintiffs refused.

violated COPPA.  *See* Dkt. 268 (Defs.' Supp. Br. ISO MTD) at 2-4.

**B.    Plaintiffs Cannot Establish a Basis for Secondary Liability Against the Channel Owners**

To sidestep their continued failure to allege direct liability, Plaintiffs assert the Channel Owners both "aided and abetted" Google's alleged conduct and acted with a "common purpose" with Google.  Neither theory states a plausible claim against the Channel Owners.

1.  <u>"Aiding and Abetting"</u>.  This form of secondary liability "depends on proof" the defendant (a) "had actual knowledge of the specific primary wrong," (b) "substantially assisted" in that wrong, and (c) "acted with the intent of facilitating the commission of that tort."  *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145-46 (2005); *see* Dkt. 203 at 20 (collecting cases). This narrow scope of liability reflects the settled principle that "one owes no duty to control the conduct of another."  *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) (citation omitted); *see Restatement (2d) of Torts* § 315(a) (1965) (no general duty to control third party).

In earlier complaints, Plaintiffs alleged the Channel Owners "aided and abetted" Google's purported conduct by "join[ing]" Google in an "enterprise" aimed at "tracking and collecting" data "from child viewers" and "did so with knowledge of" Google's alleged "deceitful and unlawful actions."  Dkt. 121 (3AC) ¶ 18.  Plaintiffs then tried to supplement those allegations by contending, without factual support, not that the Channel Owners collected information, but that they "directed Google to collect the Personal Information of viewers."  Dkt. 197 (4AC) ¶¶ 8, 73, 141, 147, 154, 159.  Plaintiffs now change course yet again, parroting the elements of "aiding-and-abetting" liability by alleging Channel Owners "***knowingly assisted***"—rather than directed—Google in collecting the information.  6AC ¶¶ 137, 143, 150, 155, 330 (emphasis added).

The Court should disregard this conclusory, contradictory allegation, *supra* § IV.A.1; *Morales*, 603 F. Supp. 3d at 846, which exceeds the limited scope of amendment the Court permitted, Order at 20, and does not satisfy the three required elements of aiding and abetting.

*First*, Plaintiffs' claim that the Channel Owners "knowingly assisted" Google and had "actual knowledge" of Google's alleged collection of viewer information, 6AC ¶¶ 502, 542, are just a "formulaic recitation of the elements of a cause of action" that "will not do," *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007).  These bald assertions are also undermined by Plaintiffs' longstanding concession that personalized advertising was enabled by "default" on each channel. 6AC ¶¶ 12, 82; Wang Decl., Ex. 25 ¶ 21 (FTC Complaint) (similar).  The 6AC contains no factual allegations that the Channel Owners had "actual knowledge of the specific primary wrong"—*i.e.*, an alleged privacy violation—that supposedly would result if they failed to disable personalized advertising.  *See Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011) (conclusory allegations insufficient for aiding and abetting).  And contrary to the "knowingly" language tossed into the 6AC, Plaintiffs have conceded throughout this action that the Channel Owners may ***not*** have known any personalized advertising was occurring on their channels.  6AC ¶ 120 (Channel Owners "knew (or ***should have*** known)" of Google's alleged conduct) (emphasis added).  "California law requires that a defendant have actual knowledge of tortious activity"; the phrase "'knew or should have known' does not plead actual knowledge."  *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118-19 (C.D. Cal. 2003); Dkt. 203 at 22 (citing cases from other states).  That the FTC's complaint against Google "specifically cited" some Channel Owners, 6AC ¶¶ 137, 143, 150, 155, is insufficient and irrelevant.

*Second*, Plaintiffs try to establish substantial assistance by alleging Channel Owners somehow "assisted Google" to collect data on its own website.  6AC ¶¶ 137, 143, 150, 155, 330. But Plaintiffs plead no ***facts*** to support their claim that the Channel Owners helped Google collect user data.  To the contrary, the 6AC alleges "[u]pon information and belief" that certain Channel Owners merely neglected to disable the default personalized ads setting.  *Id.* ¶¶ 86, 124.  Equally unavailing is Plaintiffs' new, impermissible allegation that the Channel Owners were "aware that COPPA prohibited them from . . . assist[ing] Google in collecting Personal Information," *id.* ¶ 329, since the law requires active assistance.  "Mere knowledge that [a wrong] was [being or going to be] committed and the failure to prevent it do ***not*** constitute aiding and abetting."  Judicial Council of California Civil Jury Instructions, No. 3610 (2023) (emphasis added); *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 500 (2023) ("mere passive nonfeasance" generally insufficient).

*Third*, Plaintiffs do not allege the Channel Owners "acted with the intent of facilitating the commission of [the] tort."  Plaintiffs concede "the Channel Owner Defendants signaled what age

groups their videos were intended for," 6AC ¶ 113, and the FTC complaint on which Plaintiffs rely did not assert claims against channel owners, recognizing that some "specifically informed [Google] that content appearing on their channels is directed to children under 13 years old." Wang Decl., Ex. 26. These actions show an intent to **comply** with, not to violate, COPPA.

2. <u>Common Plan</u>. Plaintiffs also have not pleaded a "common plan" theory. As Plaintiffs have recognized, that theory requires showing a "common purpose" and each defendant acting "with the knowledge and consent of the others." Dkt. 127 at 23 (citing *Weinberg Co. v. Bixby*, 185 Cal. 87, 106-07 (1921)). The 6AC has only conclusory, element-parroting allegations that the purportedly monolithic "Channel Owners" had a "common purpose" (*e.g.*, 6AC ¶ 216) regarding Google's alleged data collection (over which they had no control), without alleging any of them knew of or consented to any collection. In fact, the "default" allegations **contradict** the suggestion that the Channel Owners ratified Google's purported collection. *Id.* ¶¶ 12, 82.

3. <u>Plaintiffs' Attempt to Impose Secondary Liability Would Contravene the Ninth Circuit's Preemption Ruling</u>. The Ninth Circuit held that COPPA's "bar on 'inconsistent' state laws implicitly preserves 'consistent' state substantive laws." *Jones v. Google LLC*, 73 F.4th 636, 643 (9th Cir. 2023). While Plaintiffs conceded the Channel Owners "likely did not actually violate COPPA because they did not themselves access Plaintiffs' personal information," Dkt. 127 at 17, 22, Plaintiffs now seek to hold Channel Owners liable for "concert of action" with Google in its alleged violation of COPPA, 6AC ¶ 216. Plaintiffs' effort to impose COPPA-adjacent liability is **inconsistent** with COPPA's requirements and thus preempted. *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1120 (D.N.M. 2020), *on reconsideration*, 516 F. Supp. 3d 1293 (D.N.M. 2021) (dismissing claims because ad networks' "activities do not amount to a COPPA violation," and allowing Plaintiff to pursue claims against them "would amount to imposing liability inconsistent with their treatment under COPPA").

**C. Plaintiffs Cannot Pursue State-Law Claims Against Channel Owners Where No Plaintiff Watched That Channel in That State**

Finally, Plaintiffs purport to assert claims even where **no Plaintiff** alleges that they watched a particular Channel Owner's YouTube Channel in a particular state. That assertion is contrary to

the Constitution and substantive law, which require allegations that the defendant **caused** the plaintiff's alleged injury. *Lujan*, 504 U.S. at 560-61; *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (plaintiffs lacked standing to bring claims against school districts in which they were not enrolled). Whether named Plaintiffs in **other states** allegedly watched a YouTube channel is irrelevant because "dismissal is appropriate with respect to claims asserted under the laws of states in which no Plaintiff resides." *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014).

Despite numerous chances to cure this defect, Dkt. 146 at 11; Dkt. 195 at 1; Dkt. 274 at 2-4, Table 1 shows Plaintiffs still cannot pursue more than 20% of their state-law claims.

**Table 1: YouTube Channels Allegedly Watched by Named Plaintiffs by State[17]**

|  | Remka | Hasbro | Mattel | Cartoon Network | Dream-Works |
|---|---|---|---|---|---|
| **Alabama** | No | Yes | Yes | Yes | Yes |
| **California** | Yes | Yes | No | No | No |
| **Colorado** | Yes | Yes | No | No | Yes |
| **Florida** | Yes | Yes | Yes | Yes | Yes |
| **Illinois** | Yes | Yes | Yes | No | No |
| **Indiana** | Yes | Yes | Yes | Yes | Yes |
| **Kansas** | No | Yes | Yes | Yes | No |
| **Massachusetts** | Yes | No | Yes | Yes | No |
| **Michigan** | No | Yes | Yes | Yes | No |
| **Mississippi** | Yes | Yes | Yes | Yes | Yes |
| **Missouri** | Yes | Yes | Yes | Yes | Yes |
| **New Hampshire** | No | Yes | Yes | Yes | No |
| **New Jersey** | Yes | No | Yes | Yes | No |
| **New York** | Yes | Yes | Yes | Yes | Yes |
| **Oklahoma** | Yes | Yes | Yes | Yes | Yes |
| **Pennsylvania** | Yes | Yes | Yes | Yes | No |
| **Tennessee** | Yes | Yes | Yes | Yes | No |
| **Washington** | Yes | Yes | Yes | Yes | No |

## V.    CONCLUSION

Because Plaintiffs have had **seven** opportunities to plead claims and many chances "to address the deficiencies," the 6AC should be dismissed with prejudice. *Calvary Chapel San Jose v. Cody*, 2022 WL 5264651, at *8 (N.D. Cal. Oct. 6, 2022).

---

[17] No Plaintiff alleges they watched a channel of Channel Owner PocketWatch. PocketWatch is named as a Defendant solely based upon its business relationship with the Remka Defendants.

1

2    Dated: August 12, 2024                    Respectfully Submitted,

3                                              HOGAN LOVELLS US LLP

4                                              By:   /s/ Edith Ramirez

5                                                    Edith Ramirez
                                                     edith.ramirez@hoganlovells.com
6                                                    Adam A. Cooke (*pro hac vice*)
                                                     adam.a.cooke@hoganlovells.com
7                                                    555 Thirteenth Street, NW
                                                     Washington, DC  20004
8                                                    Telephone:      (202) 637-5600
                                                     Facsimile:      (202) 637-5910
9
                                                     Helen Y. Trac
10                                                   4 Embarcadero Center, 35th Floor
                                                     San Francisco, California  94111
11                                                   Telephone:  (415) 374-2300
                                                     Facsimile:  (415) 374-2499
12                                                   helen.trac@hoganlovells.com

13                                                   Christine Wang
                                                     855 Main St., Suite 200,
14                                                   Redwood City, CA  94063
                                                     Telephone:  (650) 463-4000
15                                                   Facsimile:  (650) 463-4199
                                                     christine.wang@hoganlovells.com
16
                                                 Attorneys for Defendants *Google LLC* and
17                                               *YouTube, LLC*

18

19   Dated: August 12, 2024                    GIBSON, DUNN & CRUTCHER LLP
                                               CHRISTOPHER CHORBA
20                                             JEREMY S. SMITH
                                               MADELEINE F. MCKENNA
21

22                                             By:  /s/ Christopher Chorba
                                                    Christopher Chorba
23
                                               Attorneys for Defendants *Cartoon Network, Inc.* and
24                                             *Cartoon Network Studios, Inc.*

25

26

27

28

MOTION TO DISMISS SIXTH AMENDED
                                               COMPLAINT 19-CV-07016-SVK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 12, 2024

MUNGER, TOLLES & OLSON LLP
JONATHAN H. BLAVIN
JORDAN D. SEGALL


By: */s/ Jonathan H. Blavin*
      Jonathan H. Blavin

Attorneys for Defendant *Mattel, Inc.*

Dated: August 12, 2024

ZWILLGEN LAW LLP
ANNA HSIA
JEFFREY LANDIS
ADYA BAKER
MADELINE RANA


By: */s/ Anna Hsia*
      Anna Hsia

Attorneys for Defendants *DreamWorks Animation L.L.C.* and *DreamWorks Animation Television, LLC*

Dated: August 12, 2024

FRANKFURT KURNIT KLEIN & SELZ, P.C.
JEREMY S. GOLDMAN
MOLLY ROTHSCHILD


By: */s/ Jeremy S. Goldman*
      Jeremy S. Goldman

Attorneys for Defendants *Hasbro, Inc.* and *Hasbro Studios LLC*

Dated: August 12, 2024

VENABLE LLP
DAVID E. FINK
SARAH E. DIAMOND


By: */s/ David E. Fink*
      David E. Fink

Attorneys *for* Defendant *PocketWatch, Inc.*

MOTION TO DISMISS SIXTH AMENDED
COMPLAINT 19-CV-07016-SVK

1

Dated: August 12, 2024

JACOBSON, RUSSELL, SALTZ, NASSIIM
& DE LA TORRE LLP
MICHAEL J. SALTZ
SIMONE POYOUROW

2

3

4

5

By: */s/ Michael J. Saltz*
    Michael J. Saltz

6

Attorneys for Defendants *Remka, Inc.; RTR
Production, LLC;* and *RFR Entertainment, Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS SIXTH AMENDED
COMPLAINT 19-CV-07016-SVK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIGNATURE ATTESTATION**

Pursuant to Northern District of California Local Rule 5-1(h)(3), I hereby attest that all other signatories listed above, on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

By:    /s/ *Edith Ramirez*

MOTION TO DISMISS SIXTH AMENDED
COMPLAINT 19-CV-07016-SVK