1

2

3

4                              UNITED STATES DISTRICT COURT

5                             NORTHERN DISTRICT OF CALIFORNIA

6

7     NICHOLE HUBBARD, et al.,                    Case No.  19-cv-07016-SVK

8                     Plaintiffs,

9            v.                                   **ORDER GRANTING IN PART AND
                                                  DENYING IN PART MOTION TO
10    GOOGLE LLC, et al.,                         DISMISS WITHOUT LEAVE
                                                  TO AMEND**
11                    Defendants.
                                                  Re: Dkt. No. 295

12          Defendants Google LLC and YouTube, LLC (collectively, "Google") operate a video-

13    sharing website (also called "YouTube") where users may post videos on their "channels" and

14    view videos posted by others free of charge.  "Free products are not, however, truly free."  *In re*

15    *Google, Inc. Priv. Pol'y Litig.*, 12-cv-01382-PSG, 2015 WL 4317479, at *2 (N.D. Cal. July 15,

16    2015).  Google collects data from YouTube users, which it uses to generate advertising revenue

17    for both itself and those who own some of the more-popular YouTube channels.  Plaintiffs—

18    minor children represented by their parents and legal guardians—commenced this putative class

19    action against Google and the owners of certain YouTube channels to remedy the harm they

20    allegedly suffered as a result of Google's collection of their data.

21          The Court previously dismissed all of Plaintiffs' claims with limited leave to amend.[1]  *See*

22    Dkt. 281 (the "Prior Order").  Plaintiffs subsequently filed a sixth amended complaint (*see* Dkt.

23    292 (the "SAC"); *see also* Dkt. 286), and Defendants again now move to dismiss.  *See* Dkts. 295

24    (the "Motion"), 297 (the "Opposition"), 300 (the "Reply").  The Parties appeared for a hearing on

25    the Motion on December 17, 2024.  *See* Dkt. 316 ("Hr'g Tr.").  After considering the Parties'

26    briefing, relevant law and the record in this action, after hearing oral argument and for the reasons

27    ──────────────────

28    [1] The Parties have consented to the jurisdiction of the undersigned.  *See* Dkts. 259, 276.

*United States District Court*
*Northern District of California*

that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion **WITHOUT LEAVE TO AMEND**.

## I.    BACKGROUND

The following discussion of background facts is based on the allegations contained in the SAC, the truth of which the Court accepts for purposes of resolving the Motion.  *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022); *Queen v. Mooney*, No. 24-cv-02161-SVK, 2024 WL 3363572, at *1 n.2 (N.D. Cal. July 9, 2024).

### A.    Google's Collection Of Plaintiffs' Data

Google operates YouTube, a website where anyone can post and watch user-created videos for free.  *See* SAC ¶¶ 3, 64-66, 68.  Although it does not charge for access to YouTube, Google does leverage the website as a revenue source; it partners with advertisers and the owners of popular YouTube channels to show advertising on certain videos, with Google and the channel owners splitting the payments received from the advertisers.  *See id.* ¶ 85.

How Google selects which advertisements to show varies at the election of each channel owner.  *See id.* ¶ 86.  Some choose the "contextual" approach, under which Google presents advertisements based on the "central theme" of the channel.  *See id.* ¶ 83.  For example, Google may show a user watching a cooking channel an advertisement for kitchen supplies.  The "preferred" and "most lucrative" approach (both for Google and the channel owners), however, is the "behavioral" approach.  *See id.* ¶ 82.  Under that approach, Google presents advertisements based on the information it possesses about a user, which it passes through an algorithm in an effort to "infer[] which types of advertisements [are] likely to have the greatest impact on the user . . . (*i.e.*, most likely to be clicked)."  *See id.* ¶ 81.

But how does Google obtain information about YouTube's users?  Quite simply—it collects it.  When an individual visits a Google-affiliated website (such as YouTube), Google "stores some unique identifiers in a text file" called "cookies."  *See id.* ¶¶ 64, 69, 71.  Cookies allow Google to determine which "websites the user has previously visited, the duration of website visits, videos viewed, advertisements viewed, duration of video views, and advertisements clicked, among other information."  *See id.* ¶ 71.  Google also collects users' "persistent identifiers," *i.e.*,

2

data points that users may not "easily delete[] or reset" and that stick with them as they browse the internet. *See id.* ¶¶ 72, 74. Examples include users' IP addresses and International Mobile Equipment Identity numbers.[2] *See id.* ¶ 73. Together, cookies and persistent identifiers allow Google to "track[] individuals over 80% of the internet." *See id.* ¶ 74 (emphasis and footnote citation omitted). The information collected about them includes, *inter alia*, "searches run, videos watched, views and interactions with content and ads, voice and audio information, purchase activity, people with whom a user communicated, browsing history, [] activity on third-party sites and apps that used Google services, . . . GPS, . . . device sensor data, [] data from devices located near a user [and] . . . advertising ID."[3] *See id.* ¶ 70.

Enter Plaintiffs. During the relevant period (July 1, 2013, through April 1, 2020), they were children under the age of 13 who watched YouTube videos. *See id.* ¶¶ 1, 336-461. Google collected their data without their parents' consent, and they now seek to recover for the harm they allegedly suffered as a result of Google's non-consensual collection of their data. *See id.* ¶ 1. Specifically, they allege that Google's collection of their data caused them to "suffer[] economic loss and injury" and "destroyed the private quality of" their personal information. *See id.* ¶¶ 168-201. In addition to Google, they also name as Defendants the owners of some of the most-popular YouTube channels for children (the "Channel Owners"). *See id.* ¶¶ 120-55.

**B.    Google's History Of Collecting Children's Data**

The Children's Online Privacy Protection Act (the "COPPA") "regulate[s] the online collection of personal identifying information about children under the age of 13." *Jones v. Google LLC*, 73 F.4th 636, 639 (9th Cir. 2023); *see also* SAC ¶ 13. It does not contain a private right of action; rather, only the Federal Trade Commission (the "FTC") and state attorneys general may sue to enforce the statute. *See Jones*, 73 F.4th at 641. Pursuant to that enforcement authority,

---

[2] "An IP address is a numerical label assigned to each device connected to a computer network, such as the internet. . . . Every mobile phone and smartphone is assigned a unique [International Mobile Equipment Identity number] that cannot be changed." SAC ¶ 73

[3] Plaintiffs do not explain what they mean by "voice and audio information," "device sensor data" or "advertising ID."

the FTC and the New York Attorney General jointly commenced an action against Google in 2019 for alleged violations of the COPPA in connection with its collection of data of children who watch YouTube videos. *See* SAC ¶ 16; *FTC v. Google LLC*, No. 19-cv-02642-BAH, Dkt. 1 (D.D.C. Sept. 4, 2019). The parties settled, with Google stipulating to an injunction prohibiting it "from [d]isclosing, using, or benefitting from" the information collected, subject to certain limitations. *See FTC v. Google LLC*, No. 19-cv-02642-BAH, Dkt. 5 (D.D.C. Sept. 10, 2019) (the "FTC Order") at 12.

## II.    LEGAL STANDARD

Defendants move to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**Rule 12(b)(1).** Under Rule 12(b)(1), a court must dismiss a complaint if it lacks subject-matter jurisdiction over the claims asserted. A defendant can challenge a court's subject-matter jurisdiction by mounting either: (1) a facial attack based solely on the allegations of the complaint; or (2) a factual attack based on evidence outside the pleadings. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Whether a plaintiff has Article III standing to proceed in federal court implicates Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

**Rule 12(b)(6).** Under Rule 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist*, 32 F.4th at 773. However, a court need not accept as true "allegations that are

United States District Court
Northern District of California

1   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v.*

2   *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

3          If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to

4   amend the complaint, and it "acts within its discretion to deny leave to amend when amendment

5   would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad

6   faith." *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th

7   Cir. 2020) (citation omitted).

8   **III.    DISCUSSION**

9          Plaintiffs bring 42 claims under the laws of 18 states.  *See* SAC ¶¶ 500-1080; *see also*

10  Appendix A (chart of claims on state-by-state basis).  Broadly speaking, their claims fall into three

11  categories:

12      • Intrusion upon seclusion.

13      • Unjust enrichment.

14      • Violations of consumer-protection statutes.

15  Plaintiffs seek to obtain, *inter alia*, damages and equitable relief.  *See* SAC at 212.  As discussed

16  below:  (1) the intrusion-upon-seclusion claims survive; (2) the unjust-enrichment claims do not;

17  (3) certain consumer-protection claims survive; (4) the remaining consumer-protection claims do

18  not; and (5) the requests for equitable relief survive.  Plaintiffs may pursue any surviving claims

19  against Google only, as the Court will dismiss the Channel Owners from this action.

20          **A.    The Privacy Claims Survive Because Plaintiffs Sufficiently
                Allege That Google Engaged In Highly Offensive Behavior**

21          "As it has developed in the courts, the invasion of the right of privacy has been a complex

22  of four distinct wrongs . . . ."  Restatement (Second) of Torts § 652A cmt. b (Am. L. Inst.

23  1977).  Plaintiffs assert that Defendants committed the specific privacy tort of intrusion upon

24  seclusion.  They also assert that Defendants violated the right to privacy guaranteed by the

25  constitution of California, a violation which parallels intrusion upon seclusion.  *See Hernandez v.*

26  *Hillsides, Inc.*, 47 Cal. 4th 272, 285-88 (2009).  Under the laws of the 11 states in question,

27  analysis of these alleged violations requires the Court to consider whether Defendants' alleged

28

United States District Court
Northern District of California

5

conduct constituted a highly offensive intrusion into an area where Plaintiffs maintained a reasonable expectation of privacy.[4]  This standard presents a "high bar" for Plaintiffs to satisfy, even at the pleading stage.  *See Belluomini v. Citigroup Inc.*, No. 13-cv-01743-CRB, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013).  They meet it here.

"Determining whether a defendant's [alleged] actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (citations omitted). Assessing the degree of offensiveness thus presents a policy question that often evades resolution at the pleading stage.  *See id.*  Even so, "[c]ourts do in fact, decide the 'highly offensive' issue as a matter of law at the pleading stage when appropriate."  *See Boring v. Google Inc.*, 362 F. App'x 273, 279 (3d Cir. 2010) (citation omitted).

The Court previously dismissed Plaintiffs' privacy claims because Plaintiffs did not sufficiently allege that Defendants engaged in highly offensive conduct.  *See* Prior Order at 10-14. Specifically, the Court concluded that Defendants' data collection constituted "ubiquitous, commercial behavior," uncoupled from any "secrecy or deception or some other 'bad act[.]'"  *See id.* at 14.  In the absence of any such "plus factors," Defendants' conduct simply did not rise to the

---

[4] *See Doe v. Roe*, 638 So. 2d 826, 827-28 (Ala. 1994); *Hogin v. Cottingham*, 533 So. 2d 525, 531 (Ala. 1988); *Hernandez*, 47 Cal. 4th at 286; *Pearson v. Kancilia*, 70 P.3d 594, 599 (Colo. Ct. App. Div. III 2003); *Johnson v. Northshore Univ. Judge Presiding Healthsystem*, No. 1-10-0399, 2011 WL 10069086, at *4 (Ill. App. Ct. 1st Dist. Mar. 31, 2011); *Kaczmarek v. Cabela's Retail IL, Inc.*, No. 1-14-3813, 2015 WL 6156352, at *6 (Ill. App. Ct. 1st Dist. 6th Div. Oct. 16, 2015); *Froelich v. Werbin*, 219 Kan. 461, 464 (1976); *Houck v. Corrections Corp., of Am.*, No. 15-cv-09586-JAR, 2017 WL 747847, at *2 (D. Kan. Feb. 27, 2017); *Sofka v. Thal*, 662 S.W.2d 502, 510 (Mo. 1983); *Cooper v. Hutcheson*, 472 F. Supp. 3d 509, 515-16 (E.D. Mo. 2020); *Karch v. BayBank FSB*, 147 N.H. 525, 534-35 (2002); *Remsburg v. Docusearch, Inc.*, 149 N.H. 148, 156 (2003); *Friedman v. Martinez*, 242 N.J. 449, 466, 470 (2020); *Guilbeau v. Durant H.M.A., LLC*, 533 P.3d 764, 771 (Okla. 2023); *Murphy v. Spring*, No. 13-cv-00096-TCK, 2013 WL 5172951, at *10 (N.D. Okla. Sept. 12, 2023); *Pro Golf Mfg., Inc. v. Trib. Rev. Newspaper Co.*, 570 Pa. 242, 248 (2002); *Tagouma v. Investigative Consultant Servs., Inc.*, 4 A.3d 170, 175-78 (Pa. Super. Ct. 2010); *Mark v. Seattle Times*, 96 Wash. 2d 473, 497 (1981); *Mancini v. City of Tacoma*, No. 71044-3-I, 2015 WL 3562229, at *11-12 (Wash. Ct. App. Div. 1 June 8, 2015).

1    requisite level of offensiveness.  *See id.* at 12-14.  Accordingly, the Court permitted Plaintiffs

2    narrow leave to amend their privacy claims "[t]o the extent [that they could] allege in good faith

3    that sufficient plus factors accompanied Defendants' conduct."  *See id.* at 19-20.  Accepting that

4    offer, Plaintiffs assert several new allegations in the SAC to demonstrate the highly offensive

5    nature of Defendants' conduct.  *See* SAC ¶¶ 222-97.  Defendants argue that none of these new

6    allegations suffices (*see* Motion at 11-13), but the Court holds that at least two do.

7         ***First***, Plaintiffs allege that in response to a content creator's inquiry as to YouTube's

8    COPPA compliance, Google "develop[ed] and circulat[ed]" an internal "narrative" in which it

9    explained that "YouTube is a MUST buy for kids 6-11."  *See* SAC ¶¶ 262-63.  Notably, Google

10   addresses YouTube, not YouTube Kids, in this statement; while Google intended for YouTube to

11   provide content to a broad audience, it designed YouTube Kids specifically for children and "did

12   not . . . employ its tracking and behavioral advertising scheme" on that platform.[5]  *See id.* ¶¶ 110-

13   11, 263, 265.  Based on these allegations, the Court may reasonably infer at the pleading stage

14   that, despite the existence of YouTube Kids, Google nevertheless targeted children in connection

15   with the main YouTube website and that platform's data tracking.  The Court cannot conclude as a

16   matter of law that targeting children with a website that will collect their data does not constitute

17   highly offensive behavior.  To be sure, the Court held in the Prior Order that "routine behavior . . .

18   does not obtain a more-offensive status merely because the behavior happened to involve children

19   in a particular instance."  Prior Order at 13-14 (citations omitted).  But Plaintiffs' new allegations

20   extend beyond routine behavior that merely "happens" to impact children in some instances, as

21   these latest allegations allow the Court to reasonably infer that Google affirmatively <u>targeted</u>

22   children with their otherwise routine behavior.  *Cf. In re Nickelodeon Consumer Priv. Litig.*, 827

23   F.3d 262, 294-95 (3d Cir. 2016) ("[The plaintiffs argue] that the use of cookies to track *children* is

24   particularly odious.  We are not so sure.  Google used third-party cookies on Nick.com <u>in the same</u>

---

[5] Google also refers to YouTube Kids as a "must buy" in the same narrative, indicating that the reference to YouTube elsewhere in the narrative concerns the main website through which Google collects data.  *See* SAC ¶ 263.

United States District Court
Northern District of California

1   way that it deploys cookies on myriad others websites. Its decision to do so here does not strike us

2   as sufficiently offensive, standing alone, to survive a motion to dismiss." (emphasis added)).

3       ***Second***, Plaintiffs allege that several content creators notified Google of their concerns that

4   YouTube did not comply with the COPPA. *See* SAC ¶¶ 258, 262, 267. Google responded in a

5   few instances that it believed YouTube did comply with the COPPA or did not implicate the

6   COPPA in the first place. *See id.* ¶¶ 259, 265, 269. Yet at the same time, according to Plaintiffs,

7   Google understood that young children regularly used YouTube. *See id.* ¶¶ 115-17. Based on

8   these allegations, the Court may reasonably infer at the pleading stage that Google knew it was

9   collecting children's data through YouTube in violation of the COPPA. The Court cannot

10  conclude, as a matter of law, that knowingly violating a statute does not constitute highly

11  offensive behavior. Such knowledge distinguishes this case from the scenario described in the

12  Prior Order. There, the Court held that common commercial behavior that happens to violate the

13  law does not *per se* rise to the level of highly offensive. *See* Prior Order at 13. But here,

14  Plaintiffs' new allegations reach a step further to allow the Court to reasonably infer a <u>knowing</u>

15  violation of law.[6]

16      Defendants counter that, despite any of Plaintiffs' allegations of highly offensive conduct,

17  Google's collection of data necessarily cannot rise to the requisite level of offensiveness given that

18  Google disclosed its data-collection practices through its privacy policies and terms of service.

19  *See* Motion at 13-14. Defendants do not, however, explain whether these terms would have been

20  conspicuously presented to Plaintiffs or provide any reason for the Court to accept at the pleading

21  stage that Plaintiffs were on notice of these terms, and the Court will not presume awareness or

22  notice (concerning minor children under the age of 13, no less) merely because these terms

---

[6] The Court, therefore, rejects the argument raised by Defendants at the December 17 hearing that prior versions of Plaintiffs' complaint contained similar, insufficient allegations of targeting children and knowing violations of the COPPA. *See* Hr'g Tr. at 10:20-11:7. The undersigned has addressed the "highly offensive" inquiry with respect to just one prior version of the complaint (*see* Prior Order at 10-14), and to the extent that version contained allegations of targeting and knowing violations, those allegations were insufficient. As described above, however, the SAC does contain sufficient allegations of targeting and knowing violations.

United States District Court
Northern District of California

existed.[7]  This lack of notice distinguishes this case from those where a disclosure contained in terms or a policy justified dismissal of privacy claims.[8]  *See, e.g., Lloyd v. Facebook, Inc.*, No. 23-15318, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024) (privacy policy governing Facebook account); *Gray v. Amazon.com Inc.*, No. 23-35377, 2024 WL 2206454, at *1 (9th Cir. May 16, 2024) ("Plaintiffs do not challenge the district court's finding that they accepted and are bound by the Alexa Terms of Use, which expressly incorporated the Amazon.com Privacy Notice."); *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *2-3 (9th Cir. Mar. 5, 2024) (contract containing policy that discloses data tracking); *In re Google, Inc. Priv. Pol'y Litig.*, 12-cv-01382-PSG, 2013 WL 6248499, at *2-3 (N.D. Cal. Dec. 3, 2013) (privacy policy governing Gmail account).

In sum, Plaintiffs sufficiently allege that Google engaged in highly offensive conduct.  The Court, therefore, will not dismiss the privacy claims.

### B.  The Court Will Dismiss The Unjust-Enrichment Claims Because Plaintiffs Do Not Dispute That Defendants' Enrichment Was Not Unjust And Did Not Occur At Plaintiffs' Expense

As required under the laws of the 17 states in question, to pursue a claim of unjust enrichment, a plaintiff must allege that a defendant enriched itself through means unjust.[9]  Further,

---

[7] Plaintiffs do not allege that they created YouTube or Google accounts through which they presumably would have, upon creation, agreed to comply with Google's terms.  *See also* Hr'g Tr. at 7:10-13.

[8] Because the Court need not review these terms in rejecting their application at the pleading stage, it **TERMINATES AS MOOT** Defendants' request that the Court judicially notice them or treat them as incorporated by reference into the SAC.  *See* Motion at 3 n.1; *see, e.g., Mattson Tech., Inc. v. Applied Materials, Inc.*, No. 23-cv-06071-SVK, 2024 WL 3558849, at *4 n.3 (N.D. Cal. July 25, 2024).

[9] *See Mantiply v. Mantiply*, 951 So. 2d 638, 654-55 (Ala. 2006); *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008); *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097-98 (Fla. 2022); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989); *Zoller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009); *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 177 (1996); *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 643-44 (2013); *Wright v. Genesee Cnty.*, 504 Mich. 410, 417-19 (2019); *Hughes v. Shipp*, 324 So. 3d 286, 290-91 (Miss. 2021); *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011); *Axenics, Inc. v. Turner Constr. Co.*, 164 N.H. 659, 669-73 (2013); *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994); *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012); *French Energy,*

United States District Court
Northern District of California

1    "[r]eceipt of a benefit at the expense of another is a necessary . . . condition of liability."

2    Restatement (Third) of Restitution and Unjust Enrichment § 2 cmt. b (Am. L. Inst. 2011).

3    Applying those principles here, Defendants argue that Plaintiffs' unjust-enrichment claims fail

4    "because the benefits Defendants allegedly received were not unjustly conferred," and Plaintiffs

5    "allege no facts showing Defendants were enriched at Plaintiffs' expense."  *See* Motion at 17-19

6    (citations omitted).  Specifically, according to Defendants, they remain insulated from claims of

7    unjust enrichment because:  (1) Plaintiffs received access to YouTube "without payment"; (2)

8    Defendants did not receive a benefit as the result of any alleged "mistake, fraud, coercion, or

9    request"; and (3) Plaintiffs did not suffer any loss as a result of Defendants' conduct.  *See id.*

10         Despite Defendants raising these arguments, which extend across three pages of the

11    Motion, Plaintiffs <u>do not address the arguments</u> in their Opposition.  At the December 17 hearing,

12    the Court offered Plaintiffs an opportunity to direct the Court to those portions of the Opposition

13    where Plaintiffs respond to these arguments.  *See* Hr'g Tr. at 18:3-25.  Plaintiffs attempted to do

14    so, but the identified portions of the Opposition do not address Defendants' direct attacks on

15    Plaintiffs' claims of unjust enrichment; instead, those portions address an argument raised by

16    Defendants in support of dismissal of all of Plaintiffs' requests for equitable relief.  *See id.* at 19:1-

17    20:18 (citing Opposition at 4, 6).  At best, the Court could read the identified portions of the

18    Opposition as arguing, <u>in general</u>, that Defendants engaged in unjust conduct.  But that general

19    proposition does not respond to Defendants' specific arguments.  Plaintiffs also explained at the

20    hearing that the fundamental nature of their allegations clearly implicated the unjust nature of

21    Defendants' conduct and how that conduct occurred at Plaintiffs' expense.  *See id.* at 21:10-22:6.

22    Yet a plaintiff does not oppose a Rule 12(b)(6) motion with the implicit gestalt of their allegations

23    but with express argument.[10]  To hold otherwise would substitute the Court for Plaintiffs in

24

25    *Inc. v. Alexander*, 818 P.2d 1234, 1237 (Okla. 1991); *Mitchell v. Moore*, 729 A.2d 1200, 1203-04
      (Pa. Super. Ct. 1999); *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596
26    (Tenn. 1998); *Young v. Young*, 164 Wash. 2d 477, 483-85 (2008).

27    [10] Plaintiffs requested an opportunity to provide such express argument via a one-page brief at the
      December 17 hearing.  *See* Hr'g Tr. at 25:6-16.  The Court, however, declines to permit further
28    briefing here, where Plaintiffs simply failed to address arguments that Defendants conspicuously

United States District Court
Northern District of California

responding to the Motion, as the Court would have to *sua sponte* select Plaintiffs' responses for them. The Court declines to assume such a role and "will not manufacture arguments for [Plaintiffs], . . . particularly when, as here, a host of other issues are presented." *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (citation omitted). If Plaintiffs wish to respond to an argument, they must do so clearly, for "[j]udges are not like pigs, hunting for truffles buried in briefs," or, as Plaintiffs would have it, outside the briefing as well. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

Although the consequences for failing to address an argument are harsh, Plaintiffs had already been cautioned about the importance of properly structuring their responsive briefing. In a prior hearing on a previous motion to dismiss, the Honorable Beth Labson Freeman expressly instructed Plaintiffs to match the organization of their briefing to that of Defendants:

> As a courtesy to me, in the future when you are responding to a motion, please don't scramble the order of the issues. The moving party gets to set the table and you come and sit and eat. So I want your forks on the left and your knife and spoon on the right here, because I had to whip through your briefs to sync the arguments so I could consider them.

Dkt. 256-1 at 28:21-29-2. In failing to heed Judge Freeman's instructions, Plaintiffs neglected to respond to critical arguments in Defendants' Motion.[11]

Accordingly, Plaintiffs have conceded the point on Defendants' two arguments, and the

_____

raised in the Motion.

[11] In opposing Defendants' attempt to dismiss their unjust-enrichment claims, Plaintiffs did request that the Court consider arguments raised in prior briefing concerning Defendants' "state-specific challenges to unjust-enrichment liability in some of the States at issue." *See* Opposition at 8 n.3. These "state-specific challenges" did not encompass the two arguments identified above, as those arguments apply to all of Plaintiffs' unjust-enrichment claims (and not just to certain state-specific claims), and so the Court does not read Plaintiffs' request as an attempt to incorporate any prior briefing on those two, non-state-specific arguments. Even if Plaintiffs did intend for the Court to review prior briefing on those specific arguments, the Court would decline to do so. *See, e.g.*, *Aldini AG v. Silvaco, Inc.*, No. 21-cv-06423-JST, 2023 WL 3749792, at *3 n.3 (N.D. Cal. Mar. 27, 2023); *see also Obeso v. Nat'l R.R. Passenger Corp.*, No. 23-cv-02793-SVK, 2023 WL 6278880, at *7 n.6 (N.D. Cal. Sept. 25, 2023) ("The Court trusts litigants to marshal forth their strongest arguments and evidence and will consider <u>only</u> those arguments and evidence presented.").

United States District Court
Northern District of California

1  Court will therefore dismiss the unjust-enrichment claims.  *See, e.g.*, *Tovar v. City of San Jose*,

2  No. 21-cv-02497-EJD, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021); *Tyler v. Travelers*

3  *Com. Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020).[12]

4  **C.    Some Of Plaintiffs' Consumer-Protection Claims**
           **Survive Based On Plaintiffs' Alleged Loss Of Privacy**

5  Plaintiffs allege that Defendants violated the consumer-protection statutes of 13 states

6  when they appropriated Plaintiffs' information without parental consent.  The Court dismissed

7  these claims in the Prior Order to the extent that Plaintiffs sought to recover damages because

8  Plaintiffs had failed to sufficiently allege that they suffered a loss as a result of Defendants'

9  conduct.[13]  *See* Prior Order at 14-19.  Defendants argue that the Court should again dismiss these

10  claims because Plaintiffs do not sufficiently allege that they suffered a loss.  *See* Motion at 14-17.

11  They also offer arguments tailored to the requirements of specific statutes.  *See id.* at 17.

12        1.    Plaintiffs Sufficiently Allege That They
                Suffered A Loss In The Form Of Their Lost Privacy

13

14  Defendants' loss argument yields different results depending on whether aimed at requests

15  for damages or equitable relief under the statutes in question.  The Court will divide its analysis of

16  this argument accordingly.

17        *a.    Plaintiffs May Pursue Damages Under The Laws Of Three States*

18  As an initial matter, Plaintiffs may not pursue damages under the California statute in

19  question because that statute offers equitable remedies only.  *See Guzman v. Polaris Indus. Inc.*,

20  49 F.4th 1308, 1313 (9th Cir. 2022).  As for the remaining statues at issue, a plaintiff may recover

21  damages only after experiencing a loss, injury or damages.[14]  Plaintiffs allege that they suffered

22

23  [12] The Court does not opine on the merits of any of Defendants' arguments for why it should
     dismiss the unjust-enrichment claims.

24

25  [13] In the Prior Order, the Court did not address whether this failure to sufficiently allege loss
     impacted Plaintiffs' requests for equitable relief under the consumer-protection statutes in question
26  because the Court had already dismissed those requests for equitable relief.  *See* Prior Order at 6-
     10 (dismissing requests for equitable relief); *see also id.* at 14 ("Under each [consumer-protection]
27  statute in question, a plaintiff may recover damages only after experiencing a loss, injury or
     damages." (emphasis added) (footnote citation omitted)).

28  [14] *See Stewart Agency, Inc. v. Arrigo Enters.*, 266 So. 3d 207, 212-14 (Fla. Dist. Ct. App. 4th Dist.

United States District Court
Northern District of California

the requisite loss, injury or damages because Defendants, *inter alia*, "destroyed the fundamental quality of" their information, *i.e.*, their "right to maintain [its] privacy." *See* Opposition at 17-20; *see also* SAC ¶¶ 169, 195-201. The Ninth Circuit has recognized that the collection of internet-browsing data can constitute a privacy harm.[15] *See Facebook*, 956 F.3d at 598-99.

Defendants counter that a loss of privacy does not constitute "cognizable damage" for purposes of Plaintiffs' statutory claims. *See* Motion at 15. With respect to nine of the statutes in question, the Court agrees:

- The Florida, Illinois, New Jersey and Tennessee statutes permit recovery for only economic losses. *See Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1209 (11th Cir. 2024) (Florida statute requires "out-of-pocket damages" (citation omitted)); *MacLeod v. Commonwealth Edison*, No. 2-23-0237, 2024 WL 1865728, at *9 (Ill. App. Ct. Apr. 29, 2024) ("The statute provides remedies for purely economic injuries . . . ." (citation omitted)); *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 613 (1997) ("[W]e are reluctant to read the Act to encompass non-economic losses."); *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 510 (Tenn. 2012) (Tennessee statute requires loss of money or property with "tangible economic value").[16] Privacy loss is not economic loss.

---

2019); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 148-49 (2002); *Anderson v. O'Leary Paint Co.*, No. 10-cv-00269-JTM, 2011 WL 4529364, at *6 (N.D. Ind. Sept. 28, 2011); *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 629 (2008); *Chapman v. Alawi*, No. 331750, 2018 WL 472211, at *3-4 (Mich. Ct. App. Jan. 18, 2018); *Watson Lab'ys, Inc. v. State*, 241 So. 3d 573, 592 (Miss. 2018); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007); *State v. Hynes*, 159 N.H. 187, 196 (2009); *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 246 (2005); *Gregg v. Ameriprise Fin., Inc.*, 664 Pa. 567, 582 (2021); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005); *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash. 2d 59, 73 (2007).

[15] The Court, therefore, rejects the contention raised by Defendants at the December 17 hearing that Plaintiffs do not sufficiently allege a loss of privacy. *See* Hr'g Tr. at 9:15-24. The Court also declines to impose at the pleading stage, as Defendants argue it should, a requirement that Plaintiffs specifically allege that they considered their data to be private and attempted to maintain its secrecy. *See id.* at 6:16-7:9.

[16] Relying on *Harrington v. Fay Servicing, LLC*, No. 18-cv-06467-EEC, 2019 WL 4750140 (N.D. Ill. Sept. 30, 2019), Plaintiffs insist that the Illinois statute encompasses a broad interpretation of loss. *See* Opposition at 19. The Court defers to the interpretation set forth in *MacLeod*, a more-

- The Michigan statute applies to "actual economic damages or the frustration of the plaintiff's reasonable expectations." *See Chapman*, 2018 WL 472211, at *3 (citations omitted).[17]  Again, loss of privacy does not constitute an economic loss, and as the Court explained in the Prior Order, a reasonable consumer would expect the collection of their data while browsing the internet.  *See* Prior Order at 11.

- The Mississippi, Missouri and Pennsylvania statutes apply only to losses of "money or property."  *See* Miss. Code. Ann. § 75-24-15(1); Mo. Rev. Stat. § 407.025.1; 73 Pa. Stat. Ann. § 201-9.2(a).  The Court is unaware of any decisions interpreting these statutes and concluding whether such losses of money or property could encompass a loss of privacy.  However, the New Jersey statute similarly applies solely to losses of "moneys or property" (*see* N.J. Stat. Ann. § 56:8-19), and, as discussed above, the courts of that state interpret that limitation as imposing a requirement of economic loss.  This Court agrees with that sensible interpretation and concludes that the Mississippi, Missouri and Pennsylvania statutes' references to losses of "money or property" also implicate solely economic losses.

---

recent decision issued by the Appellate Court of Illinois.  The Court recognizes that in *Harrington* the Honorable Edmond E. Chang acknowledged that his interpretation contravened many decisions of the Appellate Court of Illinois but nevertheless applied his interpretation in light of "persuasive indications" that the Illinois Supreme Court "would disagree with the intermediate appellate court."  *See Harrington*, 2019 WL 4750140, at *8-9.  In particular, Judge Chang relied on an earlier decision of his in which he performed a detailed analysis of the statute and concluded that the statute does not require economic loss.  *See Duarte v. Convergent Outsourcing, Inc.*, No. 17-cv-06051-EEC, 2018 WL 3427910, at *4-7 (N.D. Ill. July 16, 2018).  "With due respect to this thoughtful analysis, the Court declines to adopt it."  *Clark v. Receivables Mgmt. Partners, LLC*, No. 21-cv-00298-JRB, 2022 WL 767149, at *5 (N.D. Ill. Mar. 14, 2022).  This Court is not aware of any other decision adopting Judge Chang's interpretation, and at least one other judge of the United States District Court for the Northern District of Illinois has rejected that interpretation.  *See id.* at *4-6.  Further, Plaintiffs merely cite to *Harrington* without grappling with the leading interpretation of the Illinois courts, and in the face of such a widely understood interpretation, the Court will not delve into a detailed analysis of the Illinois statute without an express invitation from Plaintiffs to do so.

[17] Relying on *Gilkey v. Central Clearing Company*, 202 F.R.D. 515 (E.D. Mich. 2001), Plaintiffs insist that the Michigan statute encompasses a broad interpretation of loss.  *See* Opposition at 18-19.  The Court defers to the interpretation set forth in *Chapman*, a more-recent decision issued by the Michigan Court of Appeals.

United States District Court
Northern District of California

1    Therefore, those statutes do not apply to Plaintiffs' alleged loss of privacy.[18]

2    • The Washington statute requires an injury to business or property, which occurs when a

3    plaintiff's "property interest or money <u>is diminished</u> because of the unlawful conduct."

4    *See Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 39, 57 (2009) (emphasis added)

5    (citation omitted).  As discussed in more detail below (*see* Section III.C.2, *infra*),

6    elimination of the private quality of Plaintiffs' information does not in any way diminish

7    their interest in that information.  The statute, accordingly, does not apply to Plaintiffs'

8    alleged loss of privacy.

9    With respect to the remaining three statutes, however, privacy loss suffices:

10   • The Indiana statute applies to "damages actually suffered."  *See* Ind. Code § 24-5-0.5-4(a).

11   The Court is unaware of any authority interpreting this broad provision in such a way that

12   it could not encompass a loss of privacy, and Defendants offer no argument addressing this

13   specific provision.  At the December 17 hearing, Defendants did cite to *I.C. v. Zynga, Inc.*,

14   600 F. Supp. 3d 1034 (N.D. Cal. 2022), which involved a claim under the Indiana statute,

15   but the court there focused its analysis primarily on whether the plaintiffs satisfied the

16   requirements of Article III standing and did not discuss the "damages actually suffered"

17   requirement of the Indiana statute.  *See id.* at 1045-47; Hr'g Tr. at 27:5-17.

18   • The Massachusetts statute applies to non-economic injuries.  *See Nightingale v. Nat'l Grid*

19   *USA Serv. Co.*, 107 F.4th 1, 5 (1st Cir. 2024).  That is broad enough to include loss of

20   privacy.

21

22   _____

[18] Relying on *Opris v. Sincera Reproductive Medicine*, No. 21-cv-03072-JHS, 2022 WL 1639417
23   (E.D. Pa. May 24, 2022), Plaintiffs insist that "misappropriation of [personal information can]
24   constitute cognizable injury" under the Pennsylvania statute at issue.  *See* Opposition at 19.  The
     Court already distinguished *Opris* in the Prior Order.  *See* Prior Order at 18.  Further, the
25   reasoning of the *Opris* court does not convince this Court that loss of privacy constitutes loss of
     money or property under the Pennsylvania statute.  As Plaintiffs point out, the *Opris* court did
26   accept loss of value of information as loss under the Pennsylvania statute in question.  *See*
     Opposition at 19 n.9.  But as this Court noted in the Prior Order, the *Opris* court based that
27   conclusion on three decisions that this Court distinguished in the Prior Order.  *See* Prior Order at
     18.
28

15

- The New Hampshire statute applies to "[a]ny person injured."  *See* N.H. Rev. Stat. Ann. § 358-A:10(I).  The Court is unaware of any authority interpreting this broad provision in such a way that it could not encompass a loss of privacy, and Defendants offer no argument addressing this specific provision.[19]

        b.     *Plaintiffs May Pursue Equitable Relief Under The Laws Of Five States*

Plaintiffs' allegations of privacy loss also suffice for purposes of obtaining equitable relief under five of the statutes in question:

- The Florida statute permits an "aggrieved" plaintiff to obtain injunctive relief.  *See* Fla. Stat. § 501.211(1).  The Florida courts interpret the "definition of 'aggrieved' as being more expansive than 'damaged' or 'suffered a loss[.]'"  *See Ahearn v. Mayo Clinic*, 180 So. 3d 165, 172 (Fla. Dist. Ct. App. 1st Dist. 2015).  Defendants offer no argument addressing this specific provision, which appears broad enough to encompass privacy loss. At the December 17 hearing, Defendants cited to *DiPierro v. Florida Health Sciences Center, Inc.*, No. 23-cv-01864-KKM, 2024 WL 3051320 (M.D. Fla. June 18, 2024), for the proposition that privacy loss does not suffice under the Florida statute.  *See* Hr'g Tr. at 27:5-16.  But the court in *DiPierro* focused its analysis primarily on whether the plaintiffs satisfied the requirements of Article III standing and did not discuss the "aggrieved" requirement of the Florida statute.  *See DiPierro*, 2024 WL 3051320, at *2.  This Court, therefore, views a loss of privacy as sufficient to aggrieve a plaintiff within the meaning of the statute.

- The Massachusetts and New Hampshire statutes permit injured persons to pursue equitable relief and do not distinguish between the types of injuries required for legal and equitable

---

[19] At the December 17 hearing, Defendants cited to *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, 996 F. Supp. 2d 942 (S.D. Cal. 2014), for the proposition that a plaintiff may not pursue class claims under the New Hampshire statute in the absence of damages. *See id.* at 1002-03; Hr'g Tr. at 30:3-11.  Defendants did not raise this argument in the briefing, and so the Court will not evaluate it in this Order.  *See, e.g., McLaughlin v. Tesla*, No. 22-cv-07849-SVK, 2024 WL 4178676, at *7 n.6 (N.D. Cal. Sept. 11, 2024).

relief.  *See* Mass. Gen Laws ch. 93A § 9(1); N.H. Rev. Stat. Ann. § 358-A:10(I).

Accordingly, because loss of privacy satisfies the injury requirements for purposes of

damages under these statutes, it necessarily satisfies the injury requirements for purposes

of equitable relief.

- The Michigan statute permits a plaintiff to obtain injunctive relief regardless of whether

   they suffered a loss.  *See Chapman*, 2018 WL 472211, at *3.  At the December 17 hearing,

   Defendants cited to *Deacon v. Pandora Media, Inc.*, 901 F. Supp. 2d 1166 (N.D. Cal.

   2012), which involved a claim under the Michigan statute, for the proposition that the

   Michigan statute does not permit a plaintiff to pursue injunctive relief in the absence of

   damages.  *See* Hr'g Tr. at 29:16-30:3.  That decision, however, supports the opposite

   conclusion:  "[A] plaintiff bringing a claim under the [Michigan statute] is not required to

   show actual damages if he or she is seeking injunctive relief only."  *Deacon*, 901 F. Supp.

   2d at 1177.[20]

- The Tennessee statute permits "anyone affected by a violation of" the statute to obtain

   injunctive relief.  *See* Tenn. Code Ann. § 47-18-109(b).  "Affected" is necessarily broader

   than the economic loss required to obtain damages under the statute, and Defendants offer

   no argument addressing this specific provision.  The Court, therefore, views a loss of

   privacy as sufficient to affect a plaintiff within the meaning of the statute.

With respect to the remaining statutes, however, loss of privacy does not suffice for purposes of

obtaining equitable relief:

- Under the California statute, a plaintiff may obtain equitable relief only if they suffer

   economic loss.  *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011).  Privacy

---

[20] The *Deacon* court did hold that the Michigan statute does not permit a plaintiff to pursue injunctive relief on a classwide basis in the absence of a qualifying loss.  *See Deacon*, 901 F. Supp. 3d at 1177-78.  But Defendants do not argue that Plaintiffs may not pursue class claims under the Michigan statute, and so the Court need not evaluate the issue in this Order.  The Court will also not evaluate the issue because Defendants did not raise it in the briefing.  *See, e.g.*, *McLaughlin*, 2024 WL 4178676, at *7 n.6.

17

1    loss is not economic loss.[21]

2    • As discussed above, the Illinois, Mississippi, Missouri, New Jersey and Pennsylvania

3    statutes require economic losses. The statutes also do not distinguish between the types of

4    losses required to obtain legal, equitable and injunctive relief.[22] *See* 815 Ill. Comp. Stat.

5    505/10a(a), (c); Miss. Code. Ann. § 75-24-15(1); Mo. Rev. Stat. §§ 407.025.1-2; N.J. Stat.

6    Ann. § 56:8-19; 73 Pa. Stat. Ann. § 201-9.2(a). Likewise, the Washington statute permits

7    an injured person to obtain an injunction and does not distinguish between the types of

8    injuries required for legal and injunctive relief. *See* Wash. Rev. Code § 19.86.090.

9    Accordingly, because loss of privacy does not satisfy the loss or injury requirements for

10    purposes of damages under these statutes, it necessarily does not satisfy the loss or injury

11    requirements for purposes of equitable or injunctive relief.

12    • The Indiana statute does not authorize a court to award equitable relief to a private

13    plaintiff. *See* Ind. Code §§ 24-5-0.5-4(a), (c).[23]

14

15    [21] Relying solely on cases interpreting California law, Defendants also argue that Plaintiffs do not

16    even maintain a property interest in their personal information in the first place such that they
      necessarily cannot suffer any loss (economic or otherwise) associated with Google's appropriation

17    of their information. *See* Motion at 14-15; Reply at 9; *Doe I v. Google LLC*, No. 23-cv-02431-
      VC, 2024 WL 3490744, at *7 (N.D. Cal. July 22, 2024); *Campbell v. Facebook Inc.*, 77 F. Supp.

18    3d 836, 849 (N.D. Cal. 2014); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D.
      Cal. 2012). Because the cited authorities address the issue under only California law, the Court

19    interprets this argument as concerning the California statute only and accordingly declines to
      resolve the argument, as it has already concluded that the claim under the California statute fails.

20

21    [22] The Mississippi and Pennsylvania statutes do not expressly permit private plaintiffs to pursue
      equitable relief and instead authorize private plaintiffs to pursue both damages and, respectively,

22    "all other statutory and common law rights, remedies and defenses" (*see* Miss. Code. Ann. § 75-
      24-15(1)) and "such additional relief as [a court] deems necessary or proper" (*see* Pa. Cons. Stat. §

23    201-9.2(a)).

24    [23] At the December 17 hearing, Defendants also cited to *Pruchnicki v. Envision Healthcare*

25    *Corporation*, 845 F. App'x 613 (9th Cir. 2021), and *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686
      (N.D. Cal. 2019), to support their position that privacy loss does not constitute a qualifying loss

26    under the statutes at issue. *See* Hr'g Tr. at 27:5-28:4; *see also* Motion at 15 (citing *Adkins*); Reply
      at 9 (citing *Pruchnicki*). *Pruchnicki* concerned a Nevada statute and involved an assertion of

27    diminution in value stemming from the misappropriation of information. *See Pruchnicki*, 845 F.
      App'x at 614-15. Plaintiffs here do not pursue a claim under Nevada law, and the Court focuses

28    its analysis in this section on privacy loss, not diminution in value. As for *Adkins*, the court there

United States District Court
Northern District of California

2.    Plaintiffs Do Not Sufficiently Allege That
<u>They Suffered Any Loss Other Than A Privacy Loss</u>

Plaintiffs argue that they sufficiently allege various forms of loss other than privacy loss in the SAC.  *See* Opposition at 13-20.  The Court disagrees.

**First**, Plaintiffs argue that they suffered a loss when Defendants "fail[ed] to compensate them for the profits [they] garnered from their exploitation of" Plaintiffs' information.  *See id.* at 15.  As an initial matter, the Court disagrees with the fundamental premise of this argument; Plaintiffs did receive compensation in the form of "free" access to YouTube.  Further, that Google profited from its use of Plaintiffs' information does not translate to a loss for Plaintiffs.  *See* Prior Order at 16 ("[J]ust because Defendants received a gain does not mean Plaintiffs suffered a loss." (citation omitted)).  Plaintiffs' reliance on the Ninth Circuit's decision in *Facebook* to bolster their position on this point is misplaced.  *See* Opposition at 15.  There, the court explained that a plaintiff could satisfy the injury requirement of Article III standing by sufficiently alleging that a defendant "unjustly earned" profits using that plaintiff's information.  *See Facebook*, 956 F.3d at 599-601.  Here, however, the Court will dismiss Plaintiffs' unjust-enrichment claims.  Further, the Court will not simply assume that an injury for purposes of Article III standing doubles as a loss, injury or damages under the consumer-protection statutes at issue.  Anticipating this distinction, Plaintiffs point to the Honorable Lucy H. Koh's decision in *Brown v. Google LLC*, No. 20-cv-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021), in which she explained that an economic injury that satisfies the requirements of Article III standing necessarily satisfies the economic-injury requirement of the California statute at issue.  *See id.* at *17; Opposition at 15-16.  However, this principle from *Brown* assists Plaintiffs only if they first establish that they suffered an economic injury, and as explained above, Plaintiffs' claims of unjust enrichment do not supply such an injury.

**Second**, Plaintiffs argue that Defendants' appropriation of their information reduced the

---

merely held that privacy loss does not automatically result in economic loss.  *See Adkins*, 424 F. Supp. 3d at 696-97.  This Court agrees, but as explained above, some of the at-issue statutes permit recovery for non-economic losses.

value of their information.  *See* Opposition at 16-17.  The Court already rejected this argument in the Prior Order.  *See* Prior Order at 14-19; *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. Apr. 6, 2023) ("The weight of the authority in the district and the state, however, point in the opposite direction:  that the mere misappropriation of personal information does not establish compensable damages." (quotation marks and citations omitted)).  Plaintiffs cited authorities do not convince the Court to reverse itself now (*see* Opposition at 16-17):

- In *Brown*, the court presented two theories of economic loss under the California statute in question where Google collected data from individuals using "Incognito Mode" without compensating them:  (1) "Google caused Plaintiffs to acquire in a transaction less[] than [they] otherwise would have" as "it [wa]s plausible that, had Plaintiffs been aware of Google's data collection, they would have demanded payment for their data"; and (2) Google sold the collected data to advertisers, thereby reducing its value.  *See Brown*, 2021 WL 6064009, at *1, *15 (quotations marks and citations omitted).  Neither theory applies here.  **With respect to theory (1)**, Plaintiffs do not allege that they used "Incognito Mode" or some similar method of private browsing.  Had they done so, they reasonably would not have known that Google was collecting their data, and under those circumstances it may have been plausible that they would have bargained for some compensation in exchange for their data beyond what they otherwise received (*i.e.*, beyond mere "free" access to YouTube).  As explained in the Prior Order, however, "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, <u>and a reasonable user should expect as much</u>." Prior Order at 11 (citations omitted).  Thus, the Court cannot reasonably assume that Plaintiffs would have bargained for anything more than what they received.  **Theory (2)** also fails because Plaintiffs do not allege that Google sold their data.  Had Google done so, it would be plausible to assume that Plaintiffs' data lost value, as those who purchased the data would presumably no longer consider buying the same data from Plaintiffs, thereby shrinking the market of buyers and hindering Plaintiffs' ability to sell their data.  Here, however, Plaintiffs allege only that Google used the data it collected to determine which advertising to show Plaintiffs.  Plaintiffs do not

20

allege that <u>anyone</u> outside of Google gained access to their data.  Under these facts, the Court does not see why an interested buyer would no longer consider purchasing (or value as highly) Plaintiffs' data.

- In a subsequent decision in *Brown*, the court explained that, "[b]y <u>selling users' information</u>, Google prevents users from monetizing their own data," which satisfied the economic-loss requirement of the California statute at issue.  *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 920, 942 (N.D. Cal. 2023) (emphasis added).  Again, however, that rationale does not apply here, as Plaintiffs do not allege any sale (or external dissemination of any kind) of their data by Google.

- The Court distinguished *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021), in the Prior Order.  *See* Prior Order at 17.

- In *A.B. ex rel. Turner v. Google LLC*, No. 23-cv-03101-PCP, 2024 WL 3052969 (N.D. Cal. June 18, 2024), the court, relying in part on *Brown* and *Calhoun*, held that Google's collection of the plaintiffs' data caused them an economic injury in light of the existence of "a market for consumers to monetize Personal Information."  *See id.* at *7.  This Court rejected similar allegations in the Prior Order as sufficient to demonstrate loss.  *See* Prior Order at 15.  The Court has also distinguished *Brown* and *Calhoun* in this Order and the Prior Order.

**Third**, Plaintiffs argue that their privacy loss constitutes an economic loss.  *See* Opposition at 17-20.  They primarily rely on *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024), in which the court explained that the defendant's collection of the plaintiffs' data violated "their [property] right to exclude" the defendant from their data.  *See id.* at 1024-25.  The *Meta* court, in turn, relied on the California Supreme Court's decision in *Kwikset*, in which the court explained that a plaintiff may establish economic injury under the California statute in question by, *inter alia*, "hav[ing] a present or future property interest diminished."  *See Kwikset*, 51 Cal. 4th at 323; *see also Meta*, 724 F. Supp. at 1023-25.  In the view of the *Meta* court, a violation of a right to exclude falls under the rubric of a diminished property interest and therefore constitutes an economic loss.  Respectfully, this Court disagrees.  A violation of a right to privacy

does not constitute diminishment of a property interest.  Yes, Google allegedly violated Plaintiffs' right to maintain the privacy of their information, but without more, the Court does not view that violation as <u>diminishing</u> any interest in the information.  *See also* Prior Order at 15 ("Plaintiffs do not, however, allege facts explaining <u>how</u> Defendants' collection and use of their information reduces the value of that information, and an explanation as to how does not appear so obvious that the Court may simply infer one." (citations omitted)).

**Fourth**, Plaintiffs allege that their privacy loss caused an economic loss (as opposed to constituted an economic loss in itself).  *See* SAC ¶¶ 196-97.  They cite to two papers that purportedly support the proposition that Google's collection of their data reduces the amount a third-party buyer would pay to purchase their information.  *See id.* at 49 nn. 82, 85.  The first paper supports the proposition that once a single buyer acquires an individual's information, it will place a smaller value on other information from that same individual and on the information of others.  *See* Daron Acemoglu et al., *Too Much Data:  Prices and Inefficiencies in Data Markets*, American Economic Journal:  Microeconomics, Vol. 14(4), 218-256 at 219 (2022).  The second paper supports the proposition that once a single buyer acquires an individual's information, that buyer will be able to learn about other persons whose information it did not obtain.  *See* Jay Pil Choi et al., *Privacy and personal data collection with information externalities*, Journal of Public Economics, Vol. 173, 113-124 at 115 (2019).  Neither of these propositions supports Plaintiffs' contention that Google's collection of Plaintiffs' data reduces the value that other entities would place on that data.[24]

3.    <u>The Court Rejects Defendants' State-Specific Arguments</u>

With respect to the statutory claims that survive following the Court's analysis above, Defendants offer two arguments in support of dismissal.  The Court rejects both.

**First**, Defendants argue that the Court must dismiss the Indiana claim because the Indiana

---

[24] The second paper notes in passing that collection of data could result in "direct economic losses due to personalized pricing enabled by the detailed knowledge of personal preferences."  *See* Choi at 115.  Plaintiffs, however, do not allege that they suffered any such economic loss here.

United States District Court
Northern District of California

statute applies to "consumer transaction[s]" only, and "Plaintiffs do not allege that they transacted to access YouTube." *See* Motion at 17; *see also McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998) ("The Indiana Deceptive Consumer Sales Act . . . provides remedies to consumers and the attorney general for practices that the General Assembly deemed deceptive in consumer transactions."). Yet the statute broadly defines "consumer transaction" to include, *inter alia*, the "disposition of . . . a service . . . to a person for purposes that are primarily personal." *See* Ind. Code § 24-5-0.5-2(a)(1). Google's provision of YouTube access to Plaintiffs (*i.e.*, a service that they used to watch videos) falls within that definition.

        **Second**, Defendants argue that the Tennessee statute prohibits a plaintiff from pursuing claims on a class basis. *See* Motion at 17. The statute, however, limits its restriction on class actions to only claims for damages. *See* Tenn. Code Ann. § 47-18-109(g) ("No class action lawsuit may be brought to recover damages . . . ."). The Court's conclusion above that Plaintiffs may not pursue damages under the Tennessee statute renders that limitation on classwide relief irrelevant here. Of course, the Court did conclude above that Plaintiffs could pursue injunctive relief under the Tennessee statute, but the statute does not limit a plaintiff's ability to pursue injunctive relief on a classwide basis. *See id.* (limiting classwide relief only to extent a plaintiff pursues damages); *see also Ciccio v. SmileDirectClub, LLC*, No. 19-cv-00845-AAT, 2020 WL 2850146, at *16 n.8 (M.D. Tenn. June 2, 2020) (acknowledging that the statute appears to permit classwide injunctive relief).

* * *

        In sum, Plaintiffs may pursue: (1) damages under the statutes of Indiana, Massachusetts and New Hampshire; and (2) equitable and injunctive relief under the statutes of Florida, Massachusetts, Michigan, New Hampshire and Tennessee. To the extent that any of these statutes permits a particular form of recovery only upon a showing of loss, injury or damages, Plaintiffs may pursue such recovery only in connection with their alleged loss of privacy. Plaintiffs may not pursue these claims to the extent based on any other alleged harm they suffered, and the Court will dismiss Plaintiffs' claims under the remaining consumer-protection statutes.

///

23

### D.    Plaintiffs May Pursue Equitable Relief

Defendants argue that Plaintiffs may not pursue any of their requests for equitable relief because they do not sufficiently allege that they lack an adequate remedy at law.  *See* Motion at 6-9.  Defendants also offer additional reasons for dismissing Plaintiffs' request for injunctive relief in particular.  *See id.* at 9-11.  The Court rejects all of Defendants' arguments.

#### 1.    Plaintiffs Sufficiently Allege That They Suffered An Injury That Legal Relief Cannot Remedy

To obtain any equitable relief in federal court, a plaintiff must allege that they lack an adequate remedy at law.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Applying this principle in the Prior Order, the Court dismissed all of Plaintiffs' requests for equitable relief because their "allegations of harm focus[ed] on economic injuries already suffered[, and t]he legal remedy of damages [c]ould serve as an adequate form of retrospective relief for such harm."  *See* Prior Order at 6 (citations omitted).  As discussed above, however, Plaintiffs' surviving claims may proceed only to the extent that they are based on Plaintiffs' loss of privacy and not to the extent that they are based on any economic harm.  Courts frequently recognize that legal relief cannot adequately remedy a loss-of-privacy harm.  *See, e.g.*, *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1044-45 (9th Cir. 2012) (loss of privacy resulted in "irreparable harm"); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) ("Even if Plaintiffs could obtain damages [for] the unauthorized sale of their personal information to third parties, that amount will not compensate them adequately for the irreparable loss of their privacy."); *see also Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("[I]nvasions of privacy, because of their intangible nature, could not be compensated for by monetary damages . . . .").  Thus, Plaintiffs satisfy the *Sonner* requirement.

Defendants argue that loss of privacy cannot serve as a valid harm for purposes of obtaining equitable relief because Plaintiffs' privacy claims fail.  *See* Reply at 4.  The Court rejects this argument because Plaintiffs' privacy claims survive.  In any event, a failure to satisfy the requirements of a privacy tort would not necessarily indicate that no invasion of privacy occurred.  For example, a defendant could violate a plaintiff's privacy, thereby causing a privacy loss, even if

1    it did not do so in a manner highly offensive, thereby defeating an intrusion-upon-seclusion claim.

2              2.     <u>Plaintiffs Have Article III Standing To Pursue Injunctive Relief</u>

3          Federal courts may preside over an action only where a plaintiff has Article III standing.

4    *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Article III standing "consists of three

5    elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

6    challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

7    decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted).  Defendants argue

8    that Plaintiffs cannot satisfy the injury requirement such that they cannot pursue injunctive relief.

9    *See* Motion at 9.  To satisfy the injury requirement in connection with seeking an injunction, a

10   plaintiff must show an "actual and imminent, not conjectural or hypothetical" threat of injury.  *See*

11   *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  "In other words, the threatened injury

12   must be *certainly impending* to constitute injury in fact and allegations of *possible* future injury

13   are not sufficient."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)

14   (quotations marks and citation omitted).

15         According to Defendants, Plaintiffs do not satisfy the "certainly impending" requirement.

16   *See* Motion at 9.  The Court disagrees.  As discussed above, Plaintiffs' loss of privacy remains the

17   sole wrong sufficiently alleged for purposes of pursuing injunctive relief under their surviving

18   claims.  That loss of privacy stems from Google's collection and retention of their information.

19   The harm from this privacy loss is necessarily impending because it is ongoing—every moment

20   that Google holds onto Plaintiffs' information presents a privacy violation.  Defendants' reliance

21   on *In re BetterHelp, Inc. Data Disclosure Cases*, No. 23-cv-01033-RS, 2024 WL 4504527 (N.D.

22   Cal. Oct. 15, 2024), is therefore misplaced because the plaintiffs there did not argue that they

23   faced a threat of future harm based on the defendant's mere retention of their information.  *See*

24   Dkt. 302; *see also In re BetterHelp, Inc. Data Disclosure Cases*, No. 23-cv-01033-RS, 2024 WL

25   3416511, at *2 (N.D. Cal. July 15, 2024).

26         Thus, Plaintiffs satisfy the injury requirement for purposes of obtaining injunctive relief.

27   ///

28   ///

United States District Court
Northern District of California

1

### 3. The FTC Order Does Not Compel
<u>Dismissal Of Plaintiffs' Request For Injunctive Relief</u>

2

Defendants insist that the injunction issued as part of the FTC Order moots Plaintiffs'

3

request for injunctive relief in this action for two reasons, both of which the Court rejects.

4

***First***, Defendants argue that the FTC Order "provides substantially the same relief" that

5

Plaintiffs seek here. *See* Motion at 9. Yet Plaintiffs convincingly argue that the FTC Order

6

contains a "gaping loophole" that potentially leaves them outside the scope of its protection. *See*

7

Opposition at 1. Specifically, the FTC Order prohibits Google "from [d]isclosing, using, or

8

benefitting from" the personal information of children who watched YouTube that it collected in

9

alleged violation of the COPPA. *See* FTC Order at 12. But that prohibition contains a key

10

limitation: it applies only to information "previously [c]ollected from users of [c]ontent that is

11

designated as directed to [c]hildren" by the owner of the YouTube channel that uploaded that

12

content. *See id.* As Plaintiffs note, this limitation "leaves Google free to continue to use any of

13

Plaintiffs' [information] . . . if a channel owner failed to provide Google with a timely designation

14

of its channel as child-directed." *See* Opposition at 1 (citation omitted). Thus, the FTC Order

15

does not address or mirror Plaintiffs' request for an injunction requiring, *inter alia*, Google to

16

destroy and not use their information. *See* SAC ¶ 312; *cf. BetterHelp*, 2024 WL 4504527, at *3

17

(dismissing request for injunctive relief where plaintiffs sought "a second injunction requiring

18

similar action" to that required by injunction obtained by FTC); *In re Pre-Filled Propane Tank*

19

*Antitrust Litig.*, 893 F.3d 1047, 1054-55 (8th Cir. 2018) (no standing to pursue injunctive relief

20

already provided by FTC consent order); *Nat'l Farmers' Org., Inc. v. Associated Milk Producers,*

21

*Inc.*, 850 F.2d 1286, 1309 (8th Cir. 1988) ("[T]here is nothing to be gained by entering an

22

injunction that substantially <u>duplicates</u> the relief already available." (emphasis added) (citation

23

omitted)). Indeed, it is entirely possible that Google has used Plaintiffs' information following the

24

issuance of the FTC Order without running afoul of the injunction contained therein, and Plaintiffs

25

simply seek to impose an additional layer of restrictions going beyond what the FTC Order

26

requires.

27

Defendants counter that Plaintiffs do not sufficiently allege that the owners of any

28

YouTube channels failed to designate their content as directed to children following the issuance

United States District Court
Northern District of California

1    of the FTC Order.  *See* Motion at 9-10.  But Plaintiffs do offer a reasonable explanation for why

2    they believe there is a strong likelihood that at least some did fail to do so.[25]  *See* SAC ¶¶ 301-05

3    (foreign companies unconcerned about risk of COPPA enforcement and financial incentive for

4    content creators to ensure behavioral advertising presented on their channels).  In any event, the

5    fact remains that Plaintiffs have sufficiently alleged that Google retains their information, thereby

6    causing them ongoing privacy harm.  That continuing harm persists even if their information falls

7    within the limited scope of the FTC Order.

8         ***Second***, relying on two circuit-court decisions, Defendants argue that this Court should

9    defer the granting of further injunctive relief to the court that issued the FTC Order, as this Court

10   "would interfere with and usurp the inherent power of" the issuing court by issuing an injunction

11   "covering the same subject matter" as the FTC Order.  *See* Motion at 10 (quotations marks and

12   citation omitted).  Defendants misapply their cited authorities.  In *Lapin v. Shulton, Inc.*, 333 F.2d

13   169 (9th Cir. 1964), the Ninth Circuit explained that a district court should defer to a different

14   district court that issued an injunction in entertaining a request to dissolve that injunction.  *See id.*

15   at 170, 172.  And in *Feller v. Brock*, 802 F.2d 722, (4th Cir. 1986), the Fourth Circuit vacated an

16   injunction issued by one district court that "directly conflict[ed]" with an injunction issued by a

17   different district court.  *See id.* at 724.  Neither decision supports deference to the issuing court

18   here, where Plaintiffs request injunctive relief (as opposed to dissolution of an injunction) that

19   would not conflict with the FTC Order.

20        **E.    Plaintiffs Do Not Sufficiently Allege That The Channel
               Owners May Be Held Liable For Google's Collection Of Their Data**

21        Plaintiffs' allegations focus on Google's conduct.  Accordingly, the Channel Owners

22   request that the Court dismiss them from this action because Plaintiffs' allegations do not establish

23   their direct or secondary liability for the claims at issue.  *See* Motion at 19-24.  The Court agrees

24

25

26   [25] Defendants assert that "each of the Channel Owners has made [the required] designation for
     their channels, and Plaintiffs have been aware of this fact since before they filed the" SAC.  *See*
27   Motion at 10 n.8.  Defendants offer no support for this proposition which remains outside the
     allegations of the SAC.
28

                                        27

1    with the Channel Owners and will dismiss them from this action.

2        1.    Plaintiffs Do Not Sufficiently Allege
              The Direct Liability Of The Channel Owners

3        Plaintiffs base their claims on the collection of their data.  Unquestionably, the Channel

4    Owners did not engage in that collection.  Necessarily, therefore, the Court cannot hold them

5    directly liable under Plaintiffs' claims.  Searching for an alternative hook to direct liability,

6    Plaintiffs argue that the Channel Owners violated the COPPA and that a violation of the COPPA

7    *per se* constitutes a sufficient allegation of Plaintiffs' various claims.  *See* Opposition at 20-23.

8    This argument fails because Plaintiffs do not sufficiently allege that the Channel Owners violated

9    the COPPA.  The statute prohibits "an operator of a website or online service directed to children,

10   or any operator that has actual knowledge that it is collecting personal information from a child,

11   [from] collect[ing] personal information from a child in a manner that violates the regulations

12   prescribed."  *See* 15 U.S.C. § 6502(a)(1) (emphasis added).  Plaintiffs focus their argument on

13   whether the Channel Owners qualify as "operators" under the statute (*see* Opposition at 20-21),

14   but even if they do, the fact remains that they did not collect any of Plaintiffs' information.

15   Without such collection, no violation occurs.

16       Acknowledging that the Channel Owners did not themselves collect any data, Plaintiffs

17   argue that the Channel Owners effectively collected Plaintiffs' data because the Channel Owners

18   "direct[ed]" Google to collect data by choosing to show behavioral advertising on their YouTube

19   channels.  *See id.* at 21; *see also* SAC ¶ 10.  Notably, Plaintiffs point to no allegations supporting

20   this contention that the Channel Owners directed Google's data collection other than their

21   allegation that the Channel Owners "elected to show behavioral advertising on their YouTube

22   channels."  *See* Opposition at 21.  Plaintiffs themselves discredit this "direction" theory by

23   expressly alleging that qualifying YouTube channels defaulted to showing behavioral advertising.

24   *See* SAC ¶¶ 12, 82, 86-87.  Mere acquiescence to a default setting does not constitute direction.

25       Plaintiffs similarly argue that Google collected their data "on behalf of" the Channel

26   Owners, thereby sweeping the Channel Owners within the scope of the COPPA and the FTC's

27   regulations.  *See* Opposition at 20-21; *see also* 15 U.S.C. § 6501(2) (defining operator to include

28

United States District Court
Northern District of California

those "on whose behalf" a website collects data); 16 C.F.R. § 312.2 (similar definition promulgated by FTC).  The Court rejects this theory of liability for the same reason it rejects Plaintiffs' "direction" theory—the only supporting allegation (*i.e.*, that the Channel Owners permitted behavioral advertising through passive acceptance of a default setting) does not lead to the reasonable inference that Google collected Plaintiffs' data on the Channel Owners' behalf.

Plaintiffs also cite to a rule issued by the FTC to support their position, but that rule is irrelevant.  *See* Opposition at 22-23.  In issuing the rule, the FTC clarified its position that a strict-liability standard applies "for child-directed sites and services that allow other online services to collect personal information through their sites."  *See* 78 Fed. Reg. 3972, 3976 (Jan. 17, 2013). The FTC was concerned about a situation where one entity owns a child-directed website, and another entity uses that website to collect information about the website's users.  In that situation, if no liability is imposed on the website owner, the owner would have no incentive to ensure that their child-directed website was not contributing to children's information being collected without parental consent.  *See id.* at 3975.  That's not the situation here:  Google collects information through its own website (YouTube), and the third-party entities putting content on the website (the Channel Owners) are not collecting any data.  Thus, the FTC rule does not apply.

2.     Plaintiffs Do Not Sufficiently Allege The
Secondary Liability Of The Channel Owners

In an effort to foreclose any attempt to hold them indirectly liable for Google's collection of Plaintiffs' data, the Channel Owners propose and reject two potential theories of secondary liability:  (1) aiding and abetting; and (2) "common plan."  *See* Motion at 22-24.  In lieu of offering their own theories of secondary liability, Plaintiffs argue in favor of the Court applying these two theories.  *See* Opposition at 23-25.  Plaintiffs' allegations do not support the application of either theory.

///

///

///

///

United States District Court
Northern District of California

United States District Court
Northern District of California

         *a.*       *Plaintiffs Do Not Sufficiently Allege That The Channel*
                        *Owners Aided And Abetted Google's Collection Of Their Data*

"[A]iding and abetting liability under California law, as applied by the California state

courts, requires a finding of actual knowledge . . . . [T]he defendant must have actual knowledge

of the specific primary wrong [that they] substantially assisted."[26] *In re First Alliance Mortg. Co.*,

471 F.3d 977, 993 (9th Cir. 2006) (quotation marks and citations omitted); *see also Howard v.*

*Superior Ct.*, 2 Cal. App. 4th 745, 749 (2d Dist. Div. 2 1992) ("[A]iding and abetting . . .

necessarily requires a defendant to reach a conscious decision to participate in tortious activity for

the purpose of assisting another in performing a wrongful act."). "[T]he actual knowledge

standard does require more than a vague suspicion of wrongdoing." *See First Alliance*, 471 F.3d

at 993 n.4.

Plaintiffs do not satisfy the actual-knowledge standard because they offer no non-

conclusory allegations that the Channel Owners knew Google engaged in wrongdoing. They

attempt to demonstrate knowledge of wrongdoing by arguing that the Channel Owners "elect[ed]"

to present behavioral advertising with their videos, which led to improper data collection. *See*

Opposition at 24. But, as discussed above, Google offered behavioral advertising as a default

setting, thereby contradicting any notion that the Channel Owners affirmatively elected to present

behavioral advertising. Even if the Court accepted that the Channel Owners affirmatively chose to

present their viewers with behavioral advertising, it does not follow from that choice that the

Channel Owners knew that doing so would assist Google in its data collection, let alone improper

data collection.[27] *See, e.g.*, *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1152 (4th

---

[26] It is not clear whether California law should govern the standard for imposing aiding-and-abetting liability with respect to each of the Channel Owners (or any of the Channel Owners). Regardless, the Parties do not raise this issue, and Plaintiffs engage with Defendants' reference to California law on this point in the Opposition without objection. The Court will therefore analyze the issue under California law.

[27] To be sure, the Court did explain in the Prior Order that reasonable persons understand that contemporary internet browsing involves data collection. *See* Prior Order at 11. But it does not follow from that understanding that the Channel Owners should have expected their acceptance of a default setting of behavioral advertising to <u>result</u> in data collection. Indeed, it is not at all clear based on the allegations in the SAC whether Google collects users' data only if a content creator accepts the default setting of behavioral advertising. Plaintiffs have given the Court no reason to

1    Dist. Div. 3 (2005) (insufficient allegations of aiding and abetting money laundering where, *inter*

2    *alia*, banks "did not know that allowing the DFJ Fiduciaries to withdraw money from the accounts

3    was assisting a diversion of corporate funds—the primary violation"). For the same reason,

4    "providing the child-directed content that baited the trap, enabling Google to access" Plaintiffs'

5    information (*see* Opposition at 24) does not lead to a reasonable inference of actual knowledge, as

6    Plaintiffs do not connect the Channel Owners' provision of child-directed content with their

7    knowledge that doing so would contribute to the wrongful collection of children's data. That

8    Google split its advertising revenue with the Channel Owners also does not indicate actual

9    knowledge (*see id.*); again, Plaintiffs' allegations do not support a reasonable inference that the

10   Channel Owners knew that Google engaged in wrongful data collection, and Plaintiffs offer no

11   allegations that the Channel Owners knew Google derived the advertising revenue it split with

12   them from supposedly improper data collection.

13            b.    *Plaintiffs Do Not Sufficiently Allege That The Channel Owners*
                    *Acted In A "Common Plan" With Google To Collect Their Data*
14

15          In support of their proffer and rejection of a "common plan" theory of secondary liability,

16   Defendants cite to a single case (*see* Motion at 24) in which the California Supreme Court

17   explained that a joint-tortfeasor relationship exists upon the satisfaction of three conditions: "(1)

18   A concert of action; (2) A unity of purpose or design; (3) Two or more defendants working

19   separately but to a common purpose and each acting with the knowledge and consent of the

20   others." *See Weinberg Co. v. Bixby*, 185 Cal. 87, 106-07 (1921); *accord Mayhugh v. Cnty. of*

21   *Orange*, 141 Cal. App. 3d 763, 768 (4th Dist. Div. 2 1983) (McDaniel, J., dissenting). Plaintiffs

22   argue that their allegations satisfy these requirements. *See* Opposition at 24 n.13. The Court

23   disagrees for two reasons.

24          **First**, as discussed above, Plaintiffs do not offer sufficient allegations of the Channel

25   ─────────────

26   think that Google's decision to collect users' data at all depends on whether a channel offers
     contextual advertising or behavioral advertising. It is entirely possible—and indeed reasonable to
27   assume, based on the allegations in the SAC—that Google collects users' data regardless of any
     decisions made by the Channel Owners. *See* SAC ¶ 64 (Google collects information from users
28   of, *inter alia*, any "websites it owns").

Owners' knowledge of Google's data collection. Accordingly, the Channel Owners do not satisfy the third element of common-plan liability.

**Second**, Plaintiffs merely rehash their arguments in support of imposing aiding-and-abetting liability to support imposing common-plan liability. *See id.* (discussing "luring" children "with child-directed content" for purposes of earning advertising revenue). The Court has already rejected these arguments as insufficient to satisfy the knowledge requirement.

### F.    Plaintiffs May Not Amend Their Claims Further

The Court declines to permit Plaintiffs another chance to amend their claims.

**With respect to the consumer-protection claims**, the Court dismisses some of those claims for the same reason it did so before (*i.e.*, insufficient allegations of loss). In the Prior Order, the Court provided Plaintiffs' leave to amend that deficiency, but their amendments simply weren't enough for some of those claims to survive. The Court does not believe that any further amendment could fix the SAC's deficiencies. *See, e.g.*, *Snapkeys, Ltd. v. Google LLC*, No. 19-cv-02658-LHK, 2020 WL 6381354, at *7 (N.D. Cal. Oct. 30, 2020) (dismissing claim without leave to amend where, *inter alia*, plaintiff "has already failed multiple times to adequately allege a . . . claim"); *Martin v. CSAA Ins. Exch.*, No. 17-cv-04066-MEJ, 2018 WL 1242069, at *4 (N.D. Cal. Mar. 8, 2018) (denying request for leave to amend where, *inter alia*, "Plaintiffs repeatedly failed to cure deficiencies in their pleading"); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." (citation omitted)).

**The unjust-enrichment claims** fall into a different category, as the Court will dismiss them for a different reason than before. In the Prior Order, the Court dismissed those claims because Plaintiffs did not sufficiently allege that they were entitled to pursue any equitable remedies. In this Order, however, the Court will dismiss those claims because Plaintiffs do not oppose two of Defendants' arguments and accordingly concede the point. Under these circumstances, the Court will not permit leave to amend. *Cf. Kamath v. Itria Ventures, LLC*, No. 23-cv-05153-SVK, 2024 WL 3408218, at *6 (N.D. Cal. July 11, 2024) ("With respect to Plaintiff's FCA claim, Plaintiff has abandoned that claim, and the Court need not provide leave to

United States District Court
Northern District of California

1    amend an abandoned claim." (citations omitted)).

2         As for the Court's **decision to dismiss the Channel Owners**, it does so because the

3    Channel Owners' conduct does not sufficiently tie them, either directly or secondarily, to Google's

4    allegedly wrongful data collection.  The Court does not believe that Plaintiffs could cure that

5    deficiency without fundamentally altering their allegations.  *See, e.g.*, *Friend v. Google LLC*, No.

6    24-cv-03571-SVK, 2025 WL 43561, at *4 (N.D. Cal. Jan. 7, 2025) (no leave to amend where

7    plaintiff could not plead around deficiency stemming from "fundamental nature" of his claim).

8    **IV.    CONCLUSION**

9         For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

10   Motion as follows:

11   • The Court declines to dismiss the privacy claims.

12   • The Court **DISMISSES** the unjust-enrichment claims **WITHOUT LEAVE TO AMEND**.

13   • For purposes of seeking damages, the Court declines to dismiss Plaintiffs' claims arising

14      under the consumer-protection statutes of **Indiana, Massachusetts and New Hampshire**.

15      For purposes of seeking equitable or injunctive relief, the Court declines to dismiss

16      Plaintiffs' claims arising under the consumer-protection statutes of **Florida,**

17      **Massachusetts, Michigan, New Hampshire and Tennessee**.  To the extent that any of

18      these statutes permits a particular form of recovery only upon a showing of loss, injury or

19      damages, Plaintiffs may pursue such recovery only in connection with their alleged loss of

20      privacy.  The Court otherwise **DISMISSES** Plaintiffs' consumer-protection claims to the

21      extent based on any other alleged harm Plaintiffs suffered and to the extent arising under

22      any other state's consumer-protection statutes **WITHOUT LEAVE TO AMEND**.

23   • The Court **DISMISSES** all of Plaintiffs' claims to the extent asserted against the Channel

24      Owners **WITHOUT LEAVE TO AMEND**.

25   The Parties who remain in this action following the issuance of this Order shall appear for a joint

26   case-management conference on **February 11, 2025**, and shall file a joint case-management

27   statement on **February 4, 2025**.  The joint case-management statement shall contain a proposed

28   case schedule, and the Parties need not otherwise submit a proposed schedule as directed in the

33

Court's July 18, 2024 order.  *See* Dkt. 285.

**SO ORDERED.**

Dated: January 13, 2025

SUSAN VAN KEULEN
United States Magistrate Judge

# APPENDIX A

| State | Claim |
|---|---|
| Alabama | Intrusion Upon Seclusion |
| | Unjust Enrichment |
| California | Violation of Constitutional Right to Privacy |
| | Intrusion Upon Seclusion |
| | Violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) |
| Colorado | Intrusion Upon Seclusion |
| | Unjust Enrichment |
| Florida | Violation of the Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201 *et seq.*) |
| | Unjust Enrichment |
| Illinois | Intrusion Upon Seclusion |
| | Violation of the Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1 *et seq.*) |
| | Unjust Enrichment |
| Indiana | Violation of the Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-0.1 *et seq.*) |
| | Unjust Enrichment |

| State | Claim |
|---|---|
| **Kansas** | Intrusion Upon Seclusion |
| | Unjust Enrichment |
| **Massachusetts** | Violation of the Consumer Protection Act (Mass. Gen Laws ch. 93A) |
| | Unjust Enrichment |
| **Michigan** | Violation of the Consumer Protection Act (Mich. Comp. Laws § 445.901 *et seq.*) |
| | Unjust Enrichment |
| **Mississippi** | Violation of the Consumer Protection Act (Miss. Code. Ann. § 75-24-1 *et seq.*) |
| | Unjust Enrichment |
| **Missouri** | Intrusion Upon Seclusion |
| | Violation of the Merchandising Practices Act (Mo. Rev. Stat. § 407.005 *et seq.*) |
| | Unjust Enrichment |
| **New Hampshire** | Intrusion Upon Seclusion |
| | Violation of the Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*) |
| | Unjust Enrichment |

| State | Claim |
|---|---|
| **New Jersey** | Intrusion Upon Seclusion |
| | Violation of the Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1 *et seq.*) |
| | Unjust Enrichment |
| **New York** | Unjust Enrichment |
| **Oklahoma** | Intrusion Upon Seclusion |
| | Unjust Enrichment |
| **Pennsylvania** | Intrusion Upon Seclusion |
| | Violation of the Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. Ann. § 201-1 *et seq.*) |
| | Unjust Enrichment |
| **Tennessee** | Violation of the Consumer Protection Act (Tenn. Code Ann. § 47-18-101 *et seq.*) |
| | Unjust Enrichment |
| **Washington** | Intrusion Upon Seclusion |
| | Violation of the Consumer Protection Act (Wash. Rev. Code § 19.86.010 *et seq.*) |
| | Unjust Enrichment |