Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
Caroline C. Corbitt (SBN 305492)
PRITZKER LEVINE LLP
1900 Powell Street, Suite 450
Emeryville, CA 94608
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
jkl@pritzkerlevine.com
ecp@pritzkerlevine.com
ccc@pritzkerlevine.com

David S. Golub (admitted *pro hac vice*)
Steven L. Bloch (admitted *pro hac vice*)
Ian W. Sloss (admitted *pro hac vice*)
SILVER GOLUB & TEITELL LLP
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

*Attorneys for Plaintiffs and
the Proposed Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| C.H., a minor, by and through their guardian ad litem NICHOLE HUBBARD, et al.,<br><br>      Plaintiffs,<br><br> v.<br><br>GOOGLE LLC, et al.<br><br>      Defendants. | Case No. 5:19-cv-07016-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND, TO CERTIFY A SETTLEMENT CLASS, AND GRANT PRELIMINARY SETTLEMENT APPROVAL**<br><br>Judge:  Hon. Susan van Keulen<br>Date:   September 23, 2025<br>Time:   10:00 a.m.<br>Courtroom: 6, 4th Floor |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

NOTICE OF MOTION AND MOTION ...................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 3

I.      INTRODUCTION ............................................................................................................ 3

II.     BACKGROUND............................................................................................................... 4

        A.  Case History ......................................................................................................... 4

        B.  Mediation .............................................................................................................. 6

III.    SETTLEMENT TERMS ................................................................................................... 6

        A.      Benefits to Settlement Class Members.................................................... 6

        B.      The Settlement Class is the Same as the Class Defined in
                the Complaint ........................................................................................... 7

        C.      The Estimated Settlement Class Size is in the Range of Approximately
                35 Million to 45 Million........................................................................... 7

        D.      The Settlement Allows Plaintiffs' Counsel to Seek Fees and Costs
                and the Plaintiffs' Guardians to Seek Service Awards............................ 8

        E.      The Settlement's Release Is Coextensive with the Ninth Circuit's
                "Identical Factual Predicate" Requirement and Will Not Affect
                Any Other Cases ....................................................................................... 9

IV.     ARGUMENT .................................................................................................................... 9

        A.      Leave to File the Complaint for Settlement Purposes Should Be
                Granted ..................................................................................................... 9

        B.      The Settlement Merits Preliminary Approval ....................................... 10

                1.      The Settlement Resulted from Informed, Arm's-Length
                        Negotiations ............................................................................. 11

2.      The Settlement Treats Settlement Class Members Fairly and Equally ................................................. 12

3.      The Settlement Falls Within the Range of Possible Approval ................ 12

4.      Experienced Counsel Recommend Approval .......................................... 15

C.      The Court Should Certify the Settlement Class ................................................... 15

1.      The Settlement Class satisfies the Rule 23(a) prerequisites .................... 16

2.      The Settlement Class satisfies Rule 23(b)(3) ........................................... 19

D.      Plaintiffs Should Be Appointed as Settlement Class Representatives and Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel ................................................................................................................. 21

E.      The Proposed Notice Program, Settlement Administrator, and Process for Opt-outs and Objections Should Be Approved ............................................... 22

1.      Proposed Notice ...................................................................................... 22

2.      The Settlement Administrator and Claims Rate ....................................... 23

3.      Opt-outs and objections: timeline, instructions, and forms ...................... 24

F.      The Proposed Final Approval Hearing Schedule ................................................ 25

V.      CONCLUSION ................................................................................................................. 25

PLAINTIFFS' MOT. TO AMEND, CERTIFY, AND GRANT PRELIM. SETTLEMENT APPROVAL

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                          <u>Page</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................ 16

*Bellinghausen v. Tractor Supply Co.*,
    2014 WL 1289342 (N.D. Cal. Mar. 20, 2015) .................................. 15

*Chudacoff v. Univ. Med. Ctr. of S. Nevada*,
    649 F.3d 1143 (9th Cir. 2011) ......................................................... 10

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ....................................................... 9, 11

*Eminence Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ......................................................... 10

*Fitzhenry-Russell v. Coca-Cola Co.*,
    2019 WL 11557486 (N.D. Cal. Oct. 3, 2019) .................................. 20

*Foman v. Davis*,
    371 U.S. 178 (1962) ....................................................................... 10

*Gill v. Hearst Pub. Co.*,
    40 Cal.2d 224 (1953) ...................................................................... 14

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................... 11, 12

*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................. 10, 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................*passim*

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................... 17

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ............................................................ 9

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
    No. SACV 15-00865 AG (SHKX),
    2019 WL 4295285 (C.D. Cal. Sept. 9, 2019) .................................. 13

*In re 23andMe, Inc. Customer Data Sec. Breach Litig.*,
    2024 WL 4982986 (N.D. Cal. Dec. 4, 2024) ..................... 20

*In re Apple Inc. Device Performance Litig.*,
    50 F.4th 769 (9th Cir. 2022) ..................................... 11

*In re Epipen Marketing, Sales Practices and Antitrust Litigation*,
    Case No. 17-md-2785-DDC (D. Kan.) ........................... 23

*In re Hyundai and Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...................................... 21

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
    2022 WL 2343268 (N.D. Cal. June 28, 2022) ................. 19

*In re LinkedIn User Privacy Litig.*,
    2015 U.S. Dist. LEXIS 123130 (N.D. Cal. Sept. 15, 2015) ........... 13

*In Re Live Concert Antitrust Litig.*,
    247 F.R.D. 98 (C.D. Cal. 2007) .................................. 18

*In re Mex. Money Transfer Litig.*,
    267 F.3d 743 (7th Cir. 2001) ..................................... 20

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................ 15

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993) ................................. 13

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................... 11, 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 4212811 (N.D. Cal. July 22, 2020) ................. 18

*Knox County Retirement & Pension Board, et al. v.*
    *Allianz Global Investors U.S. LLC, et al.*,
    Index No.: 651233/2021 ........................................... 23

*Kumar v. Salov N. Am. Corp.*,
    2017 WL 2902898 (N.D. Cal. July 7, 2017),
    *aff'd*, 737 F. App'x 341 (9th Cir. 2018) ...................... 20

*Linney v. Cellular Alaska P'ship*,
    1997 WL 450064 (N.D. Cal. July 18, 1997),
    *aff'd*, 151 F.3d 1234 (9th Cir. 1998) .......................... 11

PLAINTIFFS' MOT. TO AMEND, CERTIFY, AND GRANT PRELIM. SETTLEMENT APPROVAL

*Lundell v. Dell, Inc.*,
    2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ............................................ 20

*Mendez v. C-Two Grp., Inc.*,
    No. 2017 WL 1133371 (N.D. Cal. Mar. 27, 2017) .................................... 11, 12

*Miller v. Ghirardeli Chocolate Co.*,
    2014 WL 4978433 (N.D. Cal. Oct. 2, 2014) ............................................ 10

*Nat'l Fed'n of Blind of California v. Uber Techs., Inc.*,
    2016 WL 9000699 (N.D. Cal. July 13, 2016) .......................................... 10

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 15

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ............................................................. 16

*Nicodemus v. Saint Francis Mem'l Hosp.*,
    3 Cal. App. 5th 1200 (2016) .................................................................... 12

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) ................................................................... 10

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ................................................................... 17

*Reade v. New York Times Co.*,
    2022 WL 2396083 (E.D. Cal. July 1, 2022) ............................................ 14

*Rodriguez v. Google LLC*,
    2024 WL 38302, No. 20-cv-04688, (C.D. Cal. Jan. 3, 2024) .................... 13

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020) ........... 17

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................ 12

*Schuchard v. Law Office of Rory W. Clark*,
    2016 WL 232435 (N.D. Cal. Jan. 20, 2016) ........................................... 12

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ............................................................. 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................... 18

*Smith v. Cardinal Logistics Mgmt. Corp.*,
    2008 WL 4156364 (N.D. Cal. Sept. 5, 2008)................................................................21

*Smith v. Keurig Green Mountain, Inc.*,
    2022 WL 2644105 (N.D. Cal. July 8, 2022) ...................................................................20

*T.K. Through Leshore v. Bytedance Tech. Co*.,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ...................................................................20

*Theodore Broomfield v. Craft Brew All., Inc.*,
    2020 WL 1972505 (N.D. Cal. Feb. 5, 2020)...................................................................20

*Trosper v. Stryker Corp.*,
    2014 WL 4145448 (N.D. Cal. Aug. 21, 2014).................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .......................................................................................................19

*Valliere v. Tesoro Refin. & Mktg. Co. LLC*,
    2020 WL 13505042 (N.D. Cal. June 26, 2020) .............................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................................................16, 17

*Williams v. Boeing Co.*,
    517 F.3d 1120 (9th Cir. 2008)..........................................................................................9

*Wolf v. Permanente Medical Group, Inc.*,
    2018 WL 5619801 (N.D. Cal. Sept. 14, 2018).................................................................8

Statutes and other authorities:

15 U.S.C. § 6501, *et seq* ............................................................................................................4

Fed. R. Civ. P.  15 ........................................................................................................ 1, 3, 10

Fed. R. Civ. P.  15(a) ............................................................................................................10

Fed. R. Civ. P. 15(a)(2) ........................................................................................................10

Fed. R. Civ. P. 23 .............................................................................................. 1, 3, 16, 22

Fed. R. Civ. P. 23(a) .............................................................................................................16

Fed. R. Civ. P. 23(a)(2) ........................................................................................................16

Fed. R. Civ. P. 23(a)(3) ........................................................................................................17

Fed. R. Civ. P. 23(a)(4) ................................................................................. 17

Fed. R. Civ. P. 23(b) ...................................................................................... 16

Fed. R. Civ. P. 23(b)(3) ......................................................................... 19, 20

Fed. R. Civ. P. 23(c)(2)(B), (e)(1) .............................................................. 22

Fed. R. Civ. P.  23(e)(2) ................................................................................ 11

Fed. R. Civ. P.  23(g)(1) ................................................................................ 21

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ............................................................... 22

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
     *Federal Practice and Procedure* § 1778 (3d ed. 2005) ..................... 19

U.S. Dep't. of Justice, Off. Of Juvenile Justice and Delinquency Programs,
     *Statistical Briefing Book: Juvenile Population Characteristics*
     (released on Oct. 13, 2021) ................................................................... 7

PLAINTIFFS' MOT. TO AMEND, CERTIFY, AND GRANT PRELIM. SETTLEMENT APPROVAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on September 23, 2025 at 10:00 a.m., in Courtroom 6, 4th Floor, of this Court, located at 280 South 1st Street, San Jose, CA 95113, Plaintiffs C.H., a minor, by and through their guardian *ad litem* Nichole Hubbard; E.J., N.J., A.J., and L.J., minors, by and through their guardian *ad litem* Cara Jones; J.A.E. and J.R.E., minors, by and through their guardian *ad litem* Justin Efros; M.W., a minor, by and through their guardian *ad litem* Renee Gilmore; A.G., a minor, by and through their guardian *ad litem* Jay Goodwin; T.B. and S.B., minors, by and through their guardian *ad litem* Derek Buchanan; D.T. and D.T., minors, by and through their guardian *ad litem* Amanda Seeley; B.H., a minor, by and through their guardian *ad litem* Jason Hoffman; P.A. and J.A., minors, by and through their guardian *ad litem* Antonio Alvarez; S.H. and D.M, minors, by and through their guardian *ad litem* Veronica Hicks; C.L.P., a minor, by and through their guardian *ad litem* Sarah Dunaway; A.A., a minor, by and through their guardian *ad litem* Pennie Frazier; J.C. and E.M., minors, by and through their guardian *ad litem* Lezlie Collins; L.D., D.D., A.D, minors, by and through their guardian *ad litem* Hollie Dorso; E.B., A.B., C.B., Z.B., and I.B., minors, by and through their guardian *ad litem* Steven Burda; M.W., B.N., and W.N., minors, by and through their guardian *ad litem* Michelle Wall; G.W., a minor, by and through their guardian *ad litem* Doug Wilkerson; and M.W.D., C.J.D., and C.A.D., minors, by and through their guardian *ad litem* Billy Dardanelli (collectively, "Plaintiffs"), will and hereby do respectfully move the Court for entry of an Order, pursuant to Federal Rules of Civil Procedure 15 and 23 ("Rule 15" and "Rule 23") and the Northern District of California's Procedural Guidance for Class Action Settlements ("N.D. Proc. Guidance"), in the above-captioned action (the "Action"): (1) granting Plaintiffs leave to file their Seventh Amended Complaint ("Complaint") for settlement purposes; (2) certifying this Action as a class action for settlement purposes; (3) appointing Plaintiffs (through their guardians *ad litem*) as representatives for the proposed Settlement Class; (4) appointing Silver Golub & Teitell LLP and Pritzker Levine LLP as Settlement Class Counsel for the proposed Settlement Class; (5) granting preliminary approval of a settlement in the amount of thirty million dollars ($30,000,000) to resolve

the Action (the "Settlement"); (6) approving the form and substance of the proposed Notice of Proposed Settlement of Class Action ("Settlement Class Notice"), the Summary Notice ("Summary Notice"), the Claim Form ("Claim Form"), the manner and timing of disseminating notice to the Settlement Class (the "Notice Plan"), and the selection of A.B. Data, Ltd. as Settlement Administrator; (7) setting deadlines for Settlement Class Members to exercise their rights in connection with the proposed Settlement; and (8) scheduling a hearing date for final approval of the Settlement and Plan of Allocation and forthcoming application for attorneys' fees and expenses ("Settlement Hearing").[1]

Plaintiffs' Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Settlement Agreement and exhibits thereto ("SA"), the Joint Declaration of Jonathan K. Levine and Steven L. Bloch in Support of Plaintiffs' Motion ("Joint Decl.") and all exhibits thereto, any reply memorandum Plaintiffs may file, the orders, pleadings, and files in this action, and such other matters as may be presented at or before the hearing.

---

[1] All capitalized terms are as defined in the parties' Settlement Agreement.

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether Plaintiffs should be granted leave to file the Complaint for settlement purposes;

2.  Whether the proposed Settlement on the terms and conditions set forth in the Settlement Agreement warrants preliminary approval;

3.  Whether to certify this Action as a class action for settlement purposes;

4.  Whether to appoint Plaintiffs (through their guardians *ad litem*) as Settlement Class Representatives;

5.  Whether to appoint Silver Golub & Teitell LLP and Pritzker Levine LLP as Settlement Class Counsel;

6.  Whether to approve the form and substance of the proposed Summary Notice, Settlement Class Notice, and Claim Form, as well as the Notice Plan, including the selection of A.B. Data as Settlement Administrator;

7.  Whether to set deadlines for Settlement Class Members to exercise their rights in connection with the proposed Settlement; and

8.  Whether to schedule a Settlement Hearing to determine whether the Settlement, Plan of Allocation, and forthcoming application for attorneys' fees and expenses should be finally approved.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

After almost six years of litigation that included five different judges, multiple challenges to the pleadings, a successful, precedent-setting appeal by plaintiffs to the Ninth Circuit, and discovery, the parties have reached a mediated settlement of the litigation on a nationwide basis under which Defendants Google LLC and YouTube LLC (together, "Google") will pay $30 million to fully resolve, without any admission of liability or wrongdoing by Defendants, the claims asserted against them in the litigation. The $30 million cash payment by Google is non-reversionary and will provide meaningful compensation to Settlement Class Members who choose to participate in the Settlement.

Pursuant to Rule 15, Rule 23, and the Northern District Procedural Guidance for Class Action Settlements, Plaintiffs now seek (i) leave to file the Complaint for settlement purposes, (ii) preliminary approval of the Settlement, (iii) certification of the Settlement Class for settlement

purposes, (iv) appointment of Plaintiffs (through their guardians *ad litem*) as Settlement Class Representatives, (v) appointment of Silver Golub & Teitell LLP and Pritzker Levine LLP as Settlement Class Counsel, (vi) approval of the form and substance of the Settlement Class Notice, Summary Notice, Claim Form, and Notice Plan, (vii) approval of A.B. Data as Settlement Administrator, and (viii) a schedule for Settlement Class Members to exercise their rights in connection with the proposed Settlement and for final approval of the Settlement, the Plan of Allocation, and plaintiffs' counsel's application for attorneys' fees and expenses.

For the reasons set forth below and in the accompanying Joint Declaration, Plaintiffs' motion should be granted in all respects.

## II.    BACKGROUND

In September 2019, the Federal Trade Commission ("FTC") and the New York State Attorney General ("NY AG") brought an enforcement action against Google for its alleged collection and use of minors' personal information on YouTube without parental consent in violation of the Children's Online Privacy Protection Act, ("COPPA"), 15 U.S.C. § 6501, *et seq.* COPPA prohibits any operator of a commercial website or online service directed to children under 13 years of age from collecting specified online personal identifying information from such children without first obtaining verified parental consent. Simultaneous with the filing of the enforcement action, Google entered into a judgment and consent decree with the FTC and the NY AG, agreeing (without any admission of liability or wrongdoing) to pay $170 million in civil penalties and restitution. As part of the consent decree, Google also agreed to change certain collection practices and refrain (by April 2020) from using certain previously collected data. Plaintiffs, all of whom are minor children represented by their guardians *ad litem,* filed this litigation on behalf of themselves and millions of other minors, asserting claims, including various state law claims, based in part on Google's alleged COPPA violations.

### A.    Case History

Plaintiffs filed this action in October 2019, soon after Google entered into its consent decree with the FTC and NY AG. *See* ECF No. 1. Plaintiffs allege that from July 1, 2013 to April 1, 2020 (the "Class Period"), Google illegally gathered the personal online identifying information of millions of minor children in the United States under the age of 13 without parental consent, and used that

data to track and profile those children on the internet and beyond to serve "behavioral advertising" targeted to each child.[2] Plaintiffs are 34 minor children residing in 17 states.[3] They represent themselves and millions of other children under 13 nationwide who allegedly watched children's videos on YouTube and allegedly had their personal information taken and used by Google without their parents' knowledge or consent, in violation of multiple state laws. Plaintiffs asserted claims against Google for (i) invasion of privacy – intrusion upon seclusion, (ii) violation of the California constitutional right to privacy, and (iii) various state consumer protection statutes.

Following multiple challenges to the pleadings by Defendants (*see* ECF Nos. 64-65, 93, 125), in July 2021, the Court dismissed Plaintiffs' Third Amended Complaint on preemption grounds, holding that COPPA preempted all of Plaintiffs' state law claims. *See* ECF No. 146. Rather than attempt to replead in a manner that avoided preemption, Plaintiffs appealed. *See* ECF No. 149. In December 2022, in a published, precedential opinion, the Ninth Circuit reversed, finding that none of Plaintiffs' state law claims were preempted by COPPA. *See Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023). Google's petition for rehearing *en banc* was denied in July 2023.

During the entire period from case inception through the end of the appellate process, discovery was stayed. *See* ECF No. 87. Once the case was remanded to the District Court from the Ninth Circuit, the discovery stay was lifted and discovery commenced. *See* ECF No. 173. Google responded to Plaintiffs' first and second sets of document requests and interrogatories and made a substantial production of responsive documents, all of which were reviewed by Plaintiffs' counsel. *See* Joint Decl., ¶ 10. Plaintiffs responded to Google's document requests and interrogatories as well. *Id.* Plaintiffs also served document requests and interrogatories on the 12 channel defendants, which also produced responsive documents before they were dismissed from the case. These documents

---

[2] Plaintiffs also sued 12 other companies that maintained allegedly child-directed channels on YouTube and entered into revenue-sharing deals with Google to monetize those channels by showing behavioral advertising. *See* ECF Nos. 1, 286. Those 12 channel defendants were dismissed from the case with prejudice (*see* ECF No. 318) and are not parties to this Settlement.

[3] The 17 states include: Alabama, California, Colorado, Florida, Illinois, Indiana, Kansas, Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New Jersey, Oklahoma, Pennsylvania, Tennessee, and Washington. *See* ECF No. 286.

PLAINTIFFS' MOT. TO AMEND, CERTIFY, AND GRANT PRELIM. SETTLEMENT APPROVAL

were also reviewed by Plaintiffs' counsel. *Id*.

Once back before the District Court, there were again multiple challenges to the pleadings by Defendants. *See* ECF Nos. 161-162, 166, 203, 295. In July 2024, Plaintiffs filed their Sixth Amended Complaint (*see* ECF No. 286), which was upheld in part by the Court in January 2025 (*see* ECF No. 318), more than four years after the litigation commenced. Shortly thereafter, the parties agreed to go to mediation. *See* Joint Decl., ¶ 11. In light of the mediation, and this proposed Settlement, Google has not yet filed an answer. *See* ECF No. 329.

### B.    Mediation

After the Court held that certain of Plaintiffs' privacy claims and consumer protection statute claims could proceed against Google in January 2025, the parties began discussing a potential resolution of the action. *See* Joint Decl., ¶ 12. In February 2025, the parties retained a mediator, Bruce A. Friedman at JAMS. *Id.*, ¶ 12. The parties exchanged mediation briefs and then participated in a day-long mediation session with Mr. Friedman on May 5, 2025. *Id.*, ¶ 12. At the conclusion of the mediation, Mr. Friedman made a mediator's proposal, which was accepted by Plaintiffs and Google on May 6, 2025. *Id.*, ¶ 12.

Since then, the parties have been working diligently to document the Settlement with a formal Settlement Agreement, and discussing other aspects of the Settlement, such as the Notice Plan, the form and content of notices and the Claim Form, and the selection of the Settlement Administrator and Escrow Agent. *See* Joint Decl., ¶ 13. The Settlement Agreement, attached as Exhibit 2 to the Joint Decl., was finalized and executed by the parties on August 15, 2025. *Id.*, ¶ 13.

## III.    SETTLEMENT TERMS

### A.    Benefits to Settlement Class Members

The Settlement provides for Google to make a $30 million, non-reversionary cash payment to create the Settlement Fund, out of which costs of notice and administration will be paid, any attorneys' fees and costs awarded to plaintiffs' counsel will be paid, service awards to the Settlement Class Representatives will be paid, and the balance will then be distributed on a pro rata basis to all Settlement Class Members who file valid and timely claims. *See* Joint Decl., ¶ 14; SA, ¶¶ 1.48, 3.9-3.11. This is an excellent result for a case based on privacy invasion claims arising from the alleged

COPPA violations, and a significant result more generally in relation to other cases alleging data-privacy violations, as set forth in the chart attached as Appendix A

**B.    The Settlement Class is the Same as the Class Defined in the Complaint**

The Settlement Agreement defines the Settlement Class as "all persons in the United States who, at any time during the Settlement Class Period, were under 13 years old, and watched content allegedly directed to children on YouTube." *See* SA, ¶ 1,43. This is the same class as that defined in the Complaint. *See* Complaint, ¶ 390. The Settlement Class Period set forth in the Settlement Agreement (*see* SA, ¶ 1.45), is also the same as the Class Period that has been alleged throughout the litigation (July 1, 2013 to April 1, 2020). *See* ECF Nos. 1 at ¶ 1, 286 at ¶ 1, and Complaint at ¶ 1.

**C.    The Estimated Settlement Class Size is in the Range of Approximately 35 Million to 45 Million**

Because YouTube viewers do not have to be signed into a YouTube or Google account in order to watch YouTube videos, and because Google requires that individuals be at least 13 years of age to create an account (but minors, including children under 13, can do view YouTube via their parent's or guardian's accounts), Google has represented that it does not have the ability to identify from its business records the precise number of potential Settlement Class Members. The parties, however, are able to make a reasonable estimate of the Settlement Class size using government data for the U.S. population under 13 years of age during the Settlement Class Period, taking into account the seven-year Settlement Class Period during which new Settlement Class Members were added each year or aged out. There also is data reporting on what percentage of the population under 13 watch YouTube.

U.S. Department of Justice statistics show that in 2020, during the Settlement Class Period, the number of children under the age of 13 in the United States was about 52.5 million.[4] Assuming that 4.4 million additional children potentially enter the Settlement Class each of the other six years of the Settlement Class Period, that adds an additional 26.4 million children, for a total of 78.9 million children that could be encompassed in the Settlement Class. Of this population, based on certain

---

[4] *See* U.S. Dep't. of Justice, Off. Of Juvenile Justice and Delinquency Programs, *Statistical Briefing Book: Juvenile Population Characteristics* (released on Oct. 13, 2021).

industry guidance and information produced in discovery, data indicates that between the high 40%

range and the high 50% range watched YouTube during the Settlement Class Period. Applying this

percentage range to the 78.9 million total potential Settlement Class Members results in a Settlement

Class size in the range of approximately 35 million to 45 million, but to be conservative, the parties

and the Settlement Administrator have utilized a figure of up to 50 million for purposes of projecting

claims and response rates for the Settlement.

### D.    The Settlement Allows Plaintiffs' Counsel to Seek Fees and Costs and the Plaintiffs' Guardians to Seek Service Awards

As set forth in the Settlement Agreement, Plaintiffs will submit their fee request in their

motion for final approval. *See* SA, ¶ 11.2. Plaintiffs will seek fees for Plaintiffs' counsel in an amount

not exceeding $9,000,000, which represents 30% of the Settlement Fund. The amount sought

represents a modest multiplier of approximately 1.07 on Plaintiffs' counsels' lodestar of $8,411,955,

based on more than 8,900 hours worked on the litigation over the past nearly six years. Joint Decl., ¶

14 n.3. Given the amount of work necessary to litigate this case and the length of time that it has been

pending, the fee request will be well within the multiplier range commonly awarded. *See Wolf v.

Permanente Medical Group, Inc.*, 2018 WL 5619801, at *2 (N.D. Cal. Sept. 14, 2018) (citing cases).

Plaintiffs also intend to seek reimbursement of expenses up to $250,000. There is no clear sailing

agreement. *See* SA, ¶ 11.1. Approval of the Settlement is expressly not contingent upon approval of

Plaintiffs' fee request, and Google has reserved its right to oppose Plaintiffs' fee request. *Id*. ¶ 11.1.

Under the Settlement, the 18 guardians *ad litem* for the 34 Plaintiffs, who each individually

spent many hours responding to Google's discovery on behalf of the Plaintiffs and working with

Plaintiffs' counsel to develop the case and amend the complaints that were filed, will seek

appointment as Settlement Class Representatives (on behalf of the minor Plaintiffs) and seek approval

of Service Awards of up to $1,500 each.[5] *See* SA, ¶ 11.7. As with Plaintiffs' fee request, approval of

the Settlement is expressly not contingent upon the payment or amount of Service Awards to the

---

[5] Each of the 18 guardians *ad litem* has submitted a declaration attesting to the work they did to advance the litigation on behalf of Plaintiffs and the Settlement Class. These declarations are attached as Exhibits 5 - 22 to the Joint Declaration.

1    guardians *ad litem* for the Plaintiffs. *Id.*, ¶ 11.1.

2    **E.    The Settlement's Release Is Coextensive with the Ninth Circuit's "Identical Factual Predicate" Requirement and Will Not Affect Any Other Cases**

3    In exchange for Settlement Class benefits, the Settlement Agreement proposes to release

4    Google from all claims "that in any way relate to or arise from the allegations in the Class Action

5    Complaint(s)," including claims that have not been asserted (against Google) but "could have been

6    brought by a parent or legal guardian on behalf of a minor child." *See* SA, ¶ 1.35; *Hesse v. Sprint

7    Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th

8    Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)). Plaintiffs are

9    unaware of any other cases that will be affected by this Settlement. *See* Joint Decl., ¶ 17.

10   **IV.    ARGUMENT**

11   **A.    Leave to File the Complaint for Settlement Purposes Should Be Granted**

12   The operative complaint (the Sixth Amended Complaint, ECF No. 286) was upheld in part by

13   the Court in the January 2025 motion to dismiss order. *See* ECF No. 318. The Sixth Amended

14   Complaint names defendants (the 12 channel defendants) and asserts 24 claims (for unjust enrichment

15   and under certain state consumer protection statutes) that have now been dismissed with prejudice as

16   a result of that order. Conversely, the Sixth Amended Complaint does not include claims for certain

17   states that should be included to allow Settlement Class Members in those states to obtain the benefits

18   of the Settlement, since Plaintiffs allege that Google's conduct was uniform across the United States.

19   In order to conform the pleadings to the Court's motion to dismiss order and allow Settlement Class

20   Members in additional states to obtain the benefits of the Settlement, constituting nationwide relief,

21   Plaintiffs seek leave to file the Complaint, which (i) removes the 12 channel defendants and 24

22   dismissed claims, and (ii) adds claims for certain additional states, culminating in the nationwide

23   Settlement Class.[6] As set forth in the Settlement Agreement, Google consents to the filing of the

---

[6] The specific claims asserted for each state are set forth in the Complaint, which is attached as Exhibit 1 to the Joint Declaration. As set forth herein, as part of this motion and the Settlement, Plaintiffs seek leave to file the Complaint, which Google consents to for settlement purposes. In the event the settlement does not become effective, Plaintiffs have reserved the right to assert and prosecute all claims in the prior Sixth Amended Complaint, and the right to appeal the Court's prior dismissal of claims.

1   Complaint for settlement purposes. *See* Joint Decl., ¶ 18, SA, ¶¶ 1.8, 2.2.

2         Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he

3   court should freely give leave when justice so requires." Rule 15(a)(2). The Ninth Circuit has

4   explained that "this policy is to be applied with extreme liberality" and that Rule 15(a) is designed

5   "to facilitate decision on the merits, rather than on the pleadings or technicalities." *See Owens v.*

6   *Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *Chudacoff v. Univ. Med. Ctr. of*

7   *S. Nevada*, 649 F.3d 1143, 1152 (9th Cir. 2011). A district court ordinarily must grant leave to amend

8   unless one or more of the following "*Foman* factors" is present: (1) undue delay, (2) bad faith or

9   dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the

10  opposing party, or (5) futility of amendment. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048,

11  1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). It is the consideration of

12  prejudice to the opposing party that carries the greatest weight. *Id.* Absent prejudice, or a strong

13  showing of any of the remaining factors, there exists a *presumption* under Rule 15(a) in favor of

14  granting leave to amend. *Id.*

15        None of the factors that might militate against granting leave to amend are present here. There

16  is no prejudice to Google if the Complaint is filed. To the contrary, Google agrees that the Complaint

17  should be filed for settlement purposes. *See* Joint Decl., ¶ 18, SA, ¶¶ 1.8, 2.2. There has been no

18  undue delay, bad faith or dilatory motive either. Plaintiffs seek leave to file the Complaint only as

19  part of the settlement process and within days of finalizing the Settlement Agreement. Amendment

20  here is also not futile. The Complaint is removing, not adding, defendants and claims that have been

21  dismissed with prejudice, and then adding claims that are being settled and will not be challenged in

22  the future. These claims are substantially similar to the claims already asserted that have been upheld

23  by the Court and are based on Google's alleged conduct with respect to the issues in this litigation

24  being uniform throughout the United States.

25        Finally, courts in this District specifically have allowed amendment of class action complaints

26  for settlement purposes. *See, e.g.*, *Nat'l Fed'n of Blind of California v. Uber Techs., Inc.*, 2016 WL

27  9000699, at *2 (N.D. Cal. July 13, 2016); *Miller v. Ghirardelli Chocolate Co.*, 2014 WL 4978433, at

28  *7 (N.D. Cal. Oct. 2, 2014); *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *6 (N.D. Cal. Apr.

29, 2011). For all of these reasons, Plaintiffs should be granted leave to file the Complaint.

## B.     The Settlement Merits Preliminary Approval

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). To approve a class settlement, a court must determine that the settlement is "fair, reasonable, and adequate." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 780 (9th Cir. 2022) (quoting Rule 23(e)(2)). The first step in this determination is considering whether to preliminarily approve the proposed settlement.

The court considers whether the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to settlement class representatives or segments of the settlement class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Additionally, "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The proposed Settlement here merits preliminary approval under all these factors.

## 1.     The Settlement Resulted from Informed, Arm's-Length Negotiations

The first factor looks to the circumstances in which the parties settled. *Mendez v. C-Two Grp., Inc.*, No. 2017 WL 1133371, at *4 (N.D. Cal. Mar. 27, 2017). "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Id.* (quoting *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)); *see also Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.").

The Settlement here was reached only after nearly six years of litigation and reflects the parties' informed knowledge of the strength, weaknesses, and value of the claims. Joint Decl., ¶ 17. Plaintiffs overcame successive motions to dismiss, and were preparing for depositions and class certification briefing when the Settlement was reached. Before arriving at the Settlement, Plaintiffs'

PLAINTIFFS' MOT. TO AMEND, CERTIFY, AND GRANT PRELIM. SETTLEMENT APPROVAL

counsel had thoroughly researched the law and the facts, reviewed and analyzed interrogatory responses and tens of thousands of pages of documents produced by Google and the 12 dismissed channel defendants, retained experts who provided expert analysis on technical and class damages issues, and provided discovery for the Plaintiffs. *Id.*, ¶ 17. Plaintiffs' counsel thereby developed an understanding of the strengths and weaknesses of the claims and defenses. *Id.*, ¶ 17. Plaintiffs faced formidable opposition from Google and the 12 channel defendants throughout the case. All parties were represented by seasoned counsel who pursued their clients' interests. The Settlement Agreement before the Court is the product of intensive negotiations before a highly respected mediator. *See Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). This factor accordingly supports preliminary approval.

### 2.    The Settlement Treats Settlement Class Members Fairly and Equally

The second factor is whether the proposed Settlement provides preferential treatment to any Settlement Class Member, *see Mendez*, 2017 WL 1133371, at *4, which it does not. The Settlement Class definition is objective, comports with the release of liability, aligns with the operative facts and claims, and makes it easy for all Settlement Class members to self-identify. *See Nicodemus v. Saint Francis Mem'l* Hosp., 3 Cal. App. 5th 1200, 1212 (2016) (a class definition should "use terminology that will convey sufficient meaning to enable persons hearing it to determine whether they are members of the class") (internal quotation marks and citations omitted). The proposed claim form has been designed for ease of use, allowing Settlement Class Members to submit claims online or by mail by checking a few boxes to confirm their membership in the Settlement Class. *See* Pang Decl., Ex. F. With regard to Settlement benefits, the Plan of Allocation treats all Settlement Class Members equally, and the same as each of the Plaintiffs. The Settlement places all Settlement Class Members on equal footing, supporting its approval.

### 3.    The Settlement Falls Within the Range of Possible Approval

Third, "[t]o determine whether a settlement 'falls within the range of possible approval,' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Schuchard v. Law Office of Rory W. Clark*, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *Tableware*, 484 F. Supp. 2d at 1080).

PLAINTIFFS' MOT. TO AMEND, CERTIFY, AND GRANT PRELIM. SETTLEMENT APPROVAL

"Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly litigation." *In re LinkedIn User Privacy Litig.*, 2015 U.S. Dist. LEXIS 123130, at *22 (N.D. Cal. Sept. 15, 2015); *see also In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993).

The proposed Settlement in this case creates a cash fund of $30 million, which represents a significant recovery in relation to the potentially recoverable class-wide damages for Plaintiffs' privacy claims if Plaintiffs were to prevail in the litigation, which can be viewed in three ways. First, based on information produced during discovery and Plaintiffs' preliminary damage analyses, Plaintiffs estimate potential class-wide damages of approximately $52 million based on the amount of alleged improper revenues Google realized during the Settlement Class Period from the alleged illegal conduct. *See Rodriguez v. Google LLC*, 2024 WL 38302, at *1, 10-11, No. 20-cv-04688 (C.D. Cal. Jan. 3, 2024) (recognizing disgorgement of unjustly earned profits theory of damages for intrusion upon seclusion and invasion of privacy); *see* Joint Decl., ¶ 15. The Settlement Fund is 58% of those potential recoverable damages. Second, even if plaintiffs prevail on liability, which is far from guaranteed due to the risks of litigation, they also face the risk that the jury could nonetheless award nominal damages of $1 per class member, for a class-wide damage award of between $35 million and $50 million, yielding a recovery of between 60% and 86% of nominal damages. Third, if plaintiffs obtained a damages verdict at trial, it is likely that it would be a per-class member verdict, because determining class membership would require a claims-made process. *See HsingChing Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-00865 AG (SHKX), 2019 WL 4295285, at *4 (C.D. Cal. Sept. 9, 2019) (jury awarded damages of $4.50 per share and class members were subsequently notified of the verdict and required to submit claims). Based on information obtained through discovery and preliminary analysis, Plaintiffs further estimate the per class member average damages at approximately $60.00 based on data regarding the monthly value of the personal information Google allegedly collected ($3.00) multiplied by the average number of months class members may have watched child-directed content on YouTube during the Settlement Class Period (20 months). *See Rodriguez*, 2024 WL 38302, at *1, 11-12 (recognizing damages theory predicated on Ipsos

Screenwise Panel valuation of $3 per month).[7]

Assuming a 1-2% claims rate, which A.B. Data estimates is appropriate based on prior claim experience in similar cases and given the facts here, Plaintiffs estimate that each Settlement Class Member who submits a valid and timely claim form will receive between $30 and $60 (if not more), before deducting for notice and administration costs, taxes, attorneys' fees and expenses and service awards. In contrast to these immediate cash benefits, continued litigation and any trial and appeal would entail significant risk, an uncertain outcome, and further delay. Google has vigorously denied Plaintiffs' allegations of wrongdoing. Absent settlement, Plaintiffs anticipate Google would aggressively defend this action, including by opposing class certification and moving for summary judgment. Google denies that Plaintiffs and Settlement Class members suffered any injury from the conduct alleged in the Complaint and has argued that Plaintiffs will be unable to prove otherwise if the case continues. Similarly, Plaintiffs' privacy-based torts rely on showing that Plaintiffs had a reasonable expectation that their information would be kept private and that Google's alleged collection and use of that information was highly offensive or serious. Plaintiffs believe the evidence supports their allegation that they had a reasonable expectation of privacy. There are, however, risks associated with proving these privacy-based torts at trial. Plaintiffs would be required to prove that Google's alleged collection and use of class members' information was highly offensive or serious, i.e., so offensive as to "shock the ordinary sense of decency or privacy." *Gill v. Hearst Pub. Co.*, 40 Cal.2d 224, 231 (1953); *see Reade v. New York Times Co.*, 2022 WL 2396083, at *6 (E.D. Cal. July 1, 2022) (requiring the private facts to be "embarrassing, uncomplimentary, discreditable, indecent, derogatory, or reprehensible"). Google would likely argue that the data allegedly collected and used does not meet that threshold, and a jury might agree.

This case has already been expensive, complex, and lengthy. Further litigation would require Plaintiffs to incur substantial deposition-related expenses (there are 34 Plaintiffs and 18 guardians *ad litem* located across the United States, and a significant number of Google employees that would need to be deposed), considerable additional expenses for testifying experts (both for class certification

---

[7] Google contests Plaintiffs' damages calculations and entitlement to damages.

PLAINTIFFS' MOT. TO AMEND, CERTIFY, AND GRANT PRELIM. SETTLEMENT APPROVAL

and the merits), not to mention the expenses that Plaintiffs may ultimately incur in preparing for and conducting a weeks-long, or more likely, months-long trial. These additional expenses would ultimately be deducted from the Settlement Class's recovery.

Further litigation would also involve complexity at almost every level. Presentation of briefs and arguments would require the extensive expert analysis and synthesis of complex data logs and tables. The parties and the Court would be faced with the complexity of addressing class certification and summary judgment across dozens of claims covering a proposed Class Period approaching seven years on behalf of a putative class that could present manageability issues, but that certainly numbers in the tens of millions. And those briefs (and others) would address complex legal issues, including whether the aggregate information Google produced is sufficient to establish Plaintiffs' claims. Lastly, it is likely that litigation would continue for many years. There remain two substantial and time-consuming procedural hurdles to reach before Plaintiffs could prepare to present their case to the jury: class certification and summary judgment. Moreover, it is certain that there would be a host of other issues for the Court to decide. The parties would likely seek a lengthy jury trial, which would further burden an already burdened Court as well as the empaneled jurors. And this case would not end with a jury verdict. Given the novelty of the claims and the complexity of the facts, one or both parties would almost certainly appeal. Absent a settlement, Plaintiffs believe that Google and its counsel will continue to vigorously defend this action, further increasing the risk of long-lasting litigation. In sum, absent settlement, it could be years before this action is finally resolved.

The Settlement provides immediate cash relief tied to the value of the settled claims, now, without the attendant risks of future litigation. As such, it falls within the range of reasonableness.

### 4.    Experienced Counsel Recommend Approval

Finally, the Settlement has no material deficiencies and is supported by Plaintiffs and their counsel as fair, reasonable, and adequate. *See* Joint Decl., ¶¶ 14-17, 21. Experienced counsel's judgment in this respect carries considerable weight. *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)); *Bellinghausen v. Tractor*

*Supply Co.*, 2014 WL 1289342, at *8 (N.D. Cal. Mar. 20, 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

### C.    The Court Should Certify the Settlement Class

The proposed Settlement Class meets the requirements for a settlement class under Rule 23. Rule 23(a) requires (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition, the Settlement Class must satisfy one of Rule 23(b)'s subsections. However, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there [will] be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 1.    The Settlement Class satisfies the Rule 23(a) prerequisites.

**Numerosity.** Numerosity requires the proposed class to be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here it is easily established. YouTube is one of the most popular apps available in the United States, children under 13 make up approximately 16% of the population of the United States, and the Settlement Class Period spans almost seven years. The proposed Settlement Class includes millions of individuals.

**Commonality.** Commonality requires that the action involve "questions of law or fact common to the class." Rule 23(a)(2). "Even a single [common] question" will do. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (quoting Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum. L. Rev. 149, 176 n. 110 (2003)). Where claims "derive from a common core of salient facts, and share many common legal issues," commonality is met. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006).

The claims primarily derive from Google's alleged uniform practice during the Settlement Class Period of gathering the personal online identifying information of millions of minor children in the United States without first obtaining verifiable parental consent, and then using that data to track and profile those children on the internet. This alleged common conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the

PLAINTIFFS' MOT. TO AMEND, CERTIFY, AND GRANT PRELIM. SETTLEMENT APPROVAL

litigation" for the Settlement Class as a whole. *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Plaintiffs' remaining claims are for alleged privacy violations. *See* Complaint, ¶¶ 402-525. These claims target an alleged uniform practice or a unified course of conduct. The common legal and factual questions arising from Plaintiffs' claims, include whether Google's alleged underlying conduct violated COPPA; whether Google's alleged conduct violated the privacy rights of Settlement Class Members; whether Google disclosed its alleged conduct to Settlement Class Members; whether Google's alleged conduct was highly offensive; whether Settlement Class Members suffered harm as a result of Google's alleged conduct; and whether the Settlement Class is entitled to damages. *Id.,* ¶ 396. These more than suffice to meet the commonality requirement.

**Typicality.** Typicality requires the class representatives' claims to be typical of the claims of the proposed class. Rule 23(a)(3). "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). Where a plaintiff suffered a similar injury and other class members were injured by the same course of conduct, typicality is satisfied. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Here, the experiences of the Plaintiffs match the experiences of the millions of other minor YouTube users under the age of 13 in the United States that make up the Settlement Class. Like other Settlement Class Members, each of the Plaintiffs allegedly watched child-directed content on YouTube during the Settlement Class Period, was under 13 at the time, and Google allegedly gathered the personal online identifying information of each of the Plaintiffs without first obtaining verifiable parental consent, and then allegedly used that data to track and profile those children on the internet. *See* Complaint, ¶¶ 9, 19, 57, 59, 81, 134-142, 167, 273-380. Because Plaintiffs' allegations involve the "same course of conduct," which is "not unique to the named plaintiffs," typicality is satisfied here. *Valliere v. Tesoro Refin. & Mktg. Co. LLC*, 2020 WL 13505042, at *5 (N.D. Cal. June 26, 2020) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

**Adequacy**. Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect

the interests of the class." To determine adequacy, courts ask two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).

First, neither the Plaintiffs nor their guardians *ad litem* have any interests antagonistic to the other Settlement Class Members, whose interests they will continue to vigorously protect. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *4–5 (N.D. Cal. July 22, 2020); Joint Decl., Exs. 5-22. Plaintiffs and their guardians *ad litem* are aligned with Settlement Class Members in their interest in proving that Google violated COPPA and their privacy rights. And they are aligned in seeking compensation and restitution for Settlement Class Members from Google for the alleged resulting harm.

Second, the guardians *ad litem*, acting on behalf of the Plaintiffs, understand the duties the Plaintiffs have as Settlement Class Representatives, have agreed to consider and protect the interests of absent Settlement Class Members, and have actively participated in this Action and Settlement. *See* Joint Decl., Exs. 5-22. Plaintiffs and their guardians *ad litem* have provided their counsel with necessary factual information, responded to Google's discovery requests, are aware of and willing to carry out their obligations as Settlement Class Representatives, and have regularly communicated with their counsel regarding various issues pertaining to this case, and will continue to do so until the case closes. *See generally* Settlement Class Representative declarations, Joint Decl., Exs. 5-22. Their participation easily meets the adequacy requirement. *See Trosper v. Stryker Corp.*, 2014 WL 4145448, at *43 (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a 'rudimentary understanding of the present action and . . . a demonstrated willingness to assist counsel in the prosecution of the litigation.'" (quoting *In Re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 120 (C.D. Cal. 2007) (citation omitted)).

Finally, Plaintiffs' counsel are highly qualified lawyers who have successfully prosecuted high-stakes complex cases and consumer class actions. *See* Joint Decl., Exs. 3-4. They have devoted the resources necessary to see this case through despite great risk. *Id.* ¶¶ 17-19. Their capable

representation in this case over the past nearly six years has included surviving Google's motion to dismiss, pursuing discovery, prevailing on the Ninth Circuit appeal initially dismissing the case, and negotiating a substantial settlement on behalf of the Settlement Class. *See generally* Joint Decl.

### 2.    The Settlement Class satisfies Rule 23(b)(3).

Plaintiffs seek certification under Rule 23(b)(3). Courts certify Rule 23(b)(3) classes when: (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). This Settlement Class satisfies both prerequisites for settlement purposes.

**Common issues of law and fact predominate.** The predominance inquiry under Rule 23(b)(3) focuses on whether the "common questions present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (citation and quotation omitted). If so, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (citation and quotation omitted). Even if just one common question predominates, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778 (3d ed. 2005) (footnotes omitted)).

The common questions in this case, described above, can be resolved for all members of the Settlement Class in a single adjudication. Google's alleged practices during the Settlement Class Period of gathering the personal online identifying information of minor children without first obtaining verifiable parental consent raises common questions of law and fact that can be answered on a class-wide basis. Plaintiffs' claims target an alleged uniform practice and unified course of conduct by Google that allegedly did not vary based on either the location or identity of the user. Whether Google's alleged practices violated COPPA or violated the privacy rights of the Settlement Class members include factual and legal questions that can be answered for the class as a whole. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 2022 WL 2343268, at *35 (N.D. Cal. June 28, 2022) (explaining that claims that "require common proof of the defendant's conduct" are

1  appropriate for class certification).

2  Common issues predominate in part because Plaintiffs claim that Google's alleged conduct

3  was uniform throughout the United States and in part because an underlying core issue here is whether

4  Google's conduct violated a single federal law, COPPA. In addition, while the claims asserted here

5  are state common law privacy claims, these claims are substantially similar from state to state and are

6  well-suited to class certification on a nationwide basis, particularly in the settlement context, when

7  defendants agree that certification for settlement purposes is appropriate. *See, e.g.*, *In re 23andMe,*

8  *Inc. Customer Data Sec. Breach Litig.*, 2024 WL 4982986, at *4 (N.D. Cal. Dec. 4, 2024); *Smith v.*

9  *Keurig Green Mountain, Inc.*, 2022 WL 2644105, at *3 (N.D. Cal. July 8, 2022); *Theodore*

10  *Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *22–23 (N.D. Cal. Feb. 5, 2020); *Fitzhenry-*

11  *Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *3 (N.D. Cal. Oct. 3, 2019); *Kumar v. Salov N.*

12  *Am. Corp.*, 2017 WL 2902898, at *6 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018);

13  *Lundell v. Dell, Inc.*, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006). As recognized by the Seventh

14  Circuit, the settlement context presents no need to "draw fine lines among state-law theories of relief."

15  *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 746–47 (7th Cir. 2001). Thus, "the fact that ... claims

16  ... implicate the laws of different states" will not "defeat predominance for the purpose of certifying

17  a settlement class." *T.K. Through Leshore v. Bytedance Tech. Co*., 2022 WL 888943, at *6 (N.D. Ill.

18  Mar. 25, 2022) (citation omitted).

19  Rule 23(b)(3) lists four non-exclusive factors "pertinent" to a predominance finding:
    (A) the class members' interests in individually controlling the prosecution or
20  defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already begun
21  by or against class members;
    (C) the desirability or undesirability of concentrating the litigation of the claims in
22  the particular forum; and
    (D) the likely difficulties in managing a class action.
23

24  Here, for this Settlement, these factors weigh in favor of a predominance finding. Settlement

25  Class Members' interest in controlling separate actions is low, given the efficiencies of collectively

26  adjudicating the many common legal and factual questions, as well as the risks and expense of

27  litigating this case. Plaintiffs are unaware of any other cases asserting claims against Google

28  substantially similar to those asserted here, but if other cases were to be filed, judicial efficiency and

avoiding possible inconsistent rulings would militate towards concentrating those actions here, since this case has been pending for nearly six years and is substantially advanced. Although litigating this case has not been without its difficulties, managing millions of individual cases would present exponentially more difficulties. In any event, "[a] class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019).

**Settlement class treatment is superior.** Rule 23(b)(3)'s "superiority" element "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.

Here, settlement class treatment is superior to the litigation of hundreds or thousands of individual claims. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Id.* The damages sought by each Settlement Class Member, when weighed against their risks, are not so large as to counsel against certification. *See Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008).

The sheer number of separate trials that would be required also favors certification. *Id*. Even if Settlement Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### D.   Plaintiffs Should Be Appointed as Settlement Class Representatives and Plaintiffs' Counsel Should Be Appointed as Settlement Class Counsel

Rule 23(g)(1) requires a court certifying a class to appoint class representatives and class counsel. In deciding whom to appoint as class counsel, the court considers: (1) the work counsel has done in identifying or investigating claims in the action; (2) counsel's experience in handling class

actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Plaintiffs, by and though their guardians *ad litem* should be appointed to serve as Settlement Class Representatives on behalf of the Settlement Class and Plaintiffs' counsel should be appointed Settlement Class Counsel for the Settlement Class. The guardians *ad litem*, acting on behalf of the Plaintiffs, understand the duties owed by Plaintiffs and their guardians *ad litem* as Settlement Class Representatives, have agreed to consider and protect the interests of absent Settlement Class members, and have, on behalf of the Plaintiffs, actively participated in this Action and Settlement. Plaintiffs' counsel are highly qualified lawyers who have successfully prosecuted high-stakes complex cases and consumer class actions, and they have devoted the resources necessary to see this case through despite great risk. Their capable representation in this case over the past five years has included surviving Google's motion to dismiss, pursuing discovery, prevailing on the Ninth Circuit appeal initially dismissing the case, and negotiating a substantial settlement on behalf of the Settlement Class.

**E.    The Proposed Notice Program, Settlement Administrator, and Process for Opt-outs and Objections Should Be Approved**

**1.    Proposed Notice**

Rule 23 requires the Court to direct the best notice practicable to all settlement class members who would be bound by a proposed settlement. *See* Rule 23(c)(2)(B), (e)(1). The proposed Notice Plan meets those standards.

The proposed Notice Plan is described in extensive detail in the Declaration of Elaine Pang In Support of Plaintiffs' Motion ("Pang Decl.") at paragraphs 6-34. It will include paid advertising notice through digital and social media, a paid keyword search campaign,  a press release, a dedicated Settlement Website, a toll-free telephone line, and, as needed, additional efforts to obtain a higher claims rate. The Settlement Administrator estimates that the proposed notice campaign will reach approximately 71.1% of Settlement Class Members - a percentage that exceeds the 70% reach characterized as the "norm" and a "high percentage" by the Federal Judicial Center - and that each

1    Settlement Class Member will be exposed to the notice an average of two times. *Id.,* ¶ 57. For that

2    reason, the Settlement Administrator believes that this notice plan is the best practicable one in these

3    circumstances. *Id.,* ¶ 57.

4        As this District's guidance recommends, the draft notice includes contact information for

5    Settlement Class Counsel; the address for the Settlement Website (which will include, among other

6    things, links to the notice, Claim Form, and, important documents in the case such as, when filed on

7    the docket, the preliminary approval order, motions for preliminary and final approval and for

8    attorneys' fees); instructions on how to access the case docket via PACER or in person; the date and

9    time of the final approval hearing, clearly stating that the date may change without further notice to

10   the Settlement Class; and a note to Settlement Class Members to check the settlement website or

11   PACER to confirm the date. Pang Decl., ¶¶ 35-36 and Exs. D-F.

12       On behalf of Google, the Settlement Administrator will provide notice pursuant to the Class

13   Action Fairness Act within ten days of the filing of the Settlement Agreement. Pang Decl., ¶ 5.

14                    **2.      The Settlement Administrator and Claims Rate**

15       The parties propose A.B. Data as the Settlement Administrator. SA, ¶ 1.42. They do so only

16   after evaluating bids from five prospective settlement administrators. Plaintiffs' counsel provided

17   each prospective settlement administrator with a detailed, written RFP before each submitted their

18   bids. *See* Joint Decl., ¶ 13. Plaintiffs' counsel then had calls with certain bidders regarding proposed

19   revisions from their initial bid, and received second bids from the two finalists. The initial and revised

20   bids were shared and discussed with Google's counsel. Only after receiving and evaluating the

21   revised bids did the parties select A.B. Data. *Id.*, ¶ 13.

22       Plaintiffs' counsel each have one pending engagement with A.B. Data over the past two

23   years.[8] A.B. Data has considerable experience as the appointed settlement administrator in large class

24   _____

25   [8] Pritzker Levine was one of five co-lead plaintiffs' counsel in the *In re Epipen Marketing, Sales Practices and Antitrust Litigation*, Case No. 17-md-2785-DDC (D. Kan.), which was settled in July 2022. A.B. Data is the claims administrator in that case, having been selected in June 2020 through a

26   competitive bidding process, and is nearing completion of the claims administration process in that

27   matter.  Silver Golub & Teitell was co-lead counsel in *Knox County Retirement & Pension Board, et al. v. Allianz Global Investors U.S. LLC, et al.,* Index No.: 651233/2021, Supreme Court of the State

28

action settlements involving Google and other technology platforms. *See* Pang Decl., ¶¶ 3, Ex. A. In its declaration, A.B. Data details the extensive data security measures it has established to securely handle Settlement Class Members' data. *See id.,* ¶¶ 51-54. It also maintains comprehensive insurance coverage, including sufficient Errors & Omissions coverage. *Id*. ¶ 54. The parties would not have selected A.B. Data absent its stated procedures for securely handling Settlement Class Member data.

A.B. Data has estimated the anticipated costs of issuing notice and administering the Settlement as between \$\$988,000 and \$1,250,000, which depends in large part on the eventual claims rate and number of valid and timely claims. *Id*., ¶ 55. These costs will be paid out of the Settlement Fund. SA, ¶¶ 3.1, 3.3, 3.7. The estimated costs of notice and administration are more than reasonable when compared to the value of the Settlement and in light of the size of the Settlement Class. At the high end, the estimated anticipated costs are only 4% of the \$30 million Settlement Fund.

The task of estimating the claims rate in this case is substantially more complex than in most class actions. This is largely because, as addressed above, it is difficult to identify the precise size of the Settlement Class. However, the Settlement Administrator has provided examples of claims rates in other cases sharing some of the characteristics present here. Pang Decl., ¶ 48.

### 3. Opt-outs and objections: timeline, instructions, and forms

The proposed schedule ensures that Settlement Class Members have at least 75 days from the issuance of the order granting preliminary approval to opt out or object to the Settlement, and 35 days to object to the motion for attorneys' fees and costs. N.D. Cal. Procedural Guidance at ¶ 9. The opt-out form and instructions for objecting are in plain language and clearly prompt those who wish to opt-out or to object to provide the specific information each action requires. Pang Decl., Ex. E at Questions 15, 20-22. The notice clearly informs Settlement Class Members of the opt-out deadline and how to opt out, and requires that they supply only the information needed to opt out of the Settlement. *Id.* Similarly, the notice informs Settlement Class Members of the objection deadline and instructs them to send their written objections to the Court, tells them that the Court can only approve or deny the Settlement and cannot change its terms, and clearly identifies the objection deadline. *Id.*

---

of New York, County of New York, which was also settled in 2022. A.B. Data was the claims administrator in that case, which was completed in 2024.

at Question 20.

**F.     The Proposed Final Approval Hearing Schedule**

Plaintiffs' [proposed] order granting preliminary approval of the Settlement, filed herewith, includes the following proposed schedule for the approval process:

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Google shall pay or cause to be paid a portion of the Settlement Fund in an amount sufficient to effectuate the Notice Plan to the Settlement Administrator | 25 days following Preliminary Approval Order |
| Notice disseminated to Settlement Class Members consistent with the Notice Plan | 30 days following Preliminary Approval Order |
| Plaintiffs' Counsel shall file all papers in support of the motion for Final Approval and for Attorneys' Fees, Expenses and Service Awards | 40 days following Preliminary Approval Order |
| Deadline for Settlement Class Members to Object/Exclude themselves from the Settlement | 75 days following Preliminary Approval Order |
| Plaintiffs' Counsel shall file all reply papers in support of the motions for Final Approval and for Attorneys' Fees, Expenses and Service Awards | 85 days following Preliminary Approval Order |
| Final Approval Hearing | 105 days following Preliminary Approval Order, or as soon thereafter as may be heard by the Court |
| Settlement Class Members who wish to make a claim must do so by submitting a claim | 120 days following Preliminary Approval Order |

**V.     CONCLUSION**

For all the foregoing reasons, Plaintiffs; motion for (i) leave to file the Complaint, (ii) preliminary approval of the Settlement, (iii) certification of the Settlement Class, (iv) appointment of Plaintiffs (through their guardians *ad litem*) as Settlement Class Representatives, (v) appointment of Silver Golub & Teitell LLP and Pritzker Levine LLP as Settlement Class Counsel, (vi) approval of the form and substance of the Settlement Class Notice, Summary Notice, Claim Form, and Notice Plan, (vii) approval of A.B. Data as Settlement Administrator, and (viii) a schedule for Settlement Class members to exercise their rights in connection with the proposed Settlement and for final approval of the Settlement, the Plan of Allocation, and Plaintiffs' counsel's application for attorneys' fees and expenses should be granted in all respects.

1 | DATED:  August 18, 2025

Respectfully submitted,

**PRITZKER LEVINE LLP**

*/s/Jonathan K. Levine*
Jonathan K. Levine (SBN 220289)
Elizabeth C. Pritzker (SBN 146267)
Caroline C. Corbitt (SBN 305492)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Telephone: (415) 692-0772
Facsimile: (415) 366-6110
jkl@pritkzkerlevine.com
ecp@pritzkerlevine.com
ccc@pritzkerlevine.com

David S. Golub (admitted *pro hac vice*)
Steven L. Bloch (admitted *pro hac vice*)
Ian W. Sloss (admitted *pro hac vice*)
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, 15th Floor
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

*Attorneys for Plaintiffs and the Proposed Classes*