1
2
3
4
5
6
7
8
9
10
11

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| C.H., a minor, by and through their guardian ad litem NICHOLE HUBBARD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, et al., <br><br> Defendants. | **CASE NO. 5:19-cv-07016-SVK** <br><br> **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND, TO CERTIFY A SETTLEMENT CLASS, AND GRANT PRELIMINARY SETTLEMENT APPROVAL** <br><br> Judge: Hon. Susan van Keulen <br> Date: September 23, 2025 <br> Time: 10:00 a.m. <br> Courtroom: 6, 4th Floor |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This action was commenced in October 2019 by Plaintiffs, who are 34 minor children residing in 17 states[1] represented by their guardians *ad litem*. Plaintiffs allege that from July 1, 2013 to April 1, 2020 (the "Class Period"), defendants Google LLC and YouTube LLC (together, "Google") violated the privacy rights of millions of minor children in the United States under the age of 13 by illegally gathering the personal online identifying information of those children without parental consent, and using that data to track and profile those children on the internet and beyond to serve "behavioral advertising" targeted to each child.[2] Plaintiffs seek to represent themselves and millions of other children under 13 nationwide who allegedly watched children's videos on YouTube and allegedly had their personal information taken and used by Google.

After almost six years of litigation that included multiple challenges to the pleadings, an appeal by Plaintiffs to the Ninth Circuit, and discovery, Plaintiffs and Google have reached a mediated settlement of the litigation on a nationwide basis. Plaintiffs now move for leave to file a further amended complaint for settlement purposes ("Complaint"), for certification of a settlement class, and for preliminary approval of a class action settlement ("Motion"). Having reviewed the Settlement Agreement ("Agreement" or "SA")[3] and all papers, pleadings, records, and prior proceedings to date in this action, the Court will grant plaintiffs' Motion.

## I.      The Settlement Agreement

The Settlement provides for Google to make a $30 million, non-reversionary cash payment to create a Settlement Fund, out of which costs of notice and administration will be paid, any attorneys' fees and costs awarded to Plaintiffs' counsel will be paid, service awards will be paid, and the balance

---

[1] The 17 states include: Alabama, California, Colorado, Florida, Illinois, Indiana, Kansas, Massachusetts, Michigan, Mississippi, Missouri, New Hampshire, New Jersey, Oklahoma, Pennsylvania, Tennessee, and Washington.

[2] Plaintiffs also sued 12 other companies that maintained child-directed channels on YouTube and entered into revenue-sharing deals with Google to monetize those channels by showing behavioral advertising. Those 12 channel defendants were dismissed from the case with prejudice on January 13, 2025 (*see* ECF No. 318) and are not parties to this Settlement.

[3] The Settlement Agreement is attached as Exhibit 2 to the Declaration of Jonathan K. Levine and Steven L. Bloch ("Joint Decl.") filed in Support of Plaintiffs' Motion. All capitalized terms are defined in the Settlement Agreement.

1  will then be distributed on a pro rata basis to all Settlement Class Members who file valid and timely

2  claims. *See* Joint Decl., ¶ 14; SA, ¶¶ 1.48, 3.9-3.11.

3      In exchange for Settlement Class benefits, the Settlement Agreement proposes to release

4  Google from all claims "that in any way relate to or arise from the allegations in the Class Action

5  Complaint(s)," including claims that have not been asserted but "could have been brought by a parent

6  or legal guardian on behalf of a minor child." *See* SA, ¶ 1.35; *Hesse v. Sprint Corp.*, 598 F.3d 581,

7  590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008); *Class*

8  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)). Plaintiffs are unaware of any other

9  cases that will be affected by this settlement. *See* Joint Decl., ¶ 17.

10      As set forth in the Settlement Agreement, and in accordance with the Procedural Guidance

11  for Class Action Settlements in this District, Plaintiffs will submit their fee request prior to the date

12  for Settlement Class Members to object or exclude themselves from the Settlement. *See* SA, ¶ 11.2.

13  Approval of the Settlement is expressly not contingent upon approval of Plaintiffs' fee request, and

14  there is no clear sailing agreement: Google has reserved its right to oppose Plaintiffs' fee request. *Id*.

15  ¶ 11.1. Plaintiffs intend to seek fees for Plaintiffs' counsel in an amount not exceeding $9,000,000,

16  which represents 30% of the settlement fund. The amount sought represents a multiplier of

17  approximately 1.07 on Plaintiffs' counsels' lodestar of $8,411,955, based on more than 8,900 hours

18  worked on the litigation to date. In addition, Plaintiffs intend to seek reimbursement of expenses up

19  to $250,000.

20      Under the Settlement, the 34 Plaintiffs, by and through their respective 18 guardians *ad litem*,

21  will seek appointment as Settlement Class Representatives, and, for the work the 18 guardians *ad*

22  *litem* to advance the litigation on behalf of Plaintiffs and the Settlement Class, Plaintiffs will seek

23  approval of service awards of up to $1,500 for each of the guardians *ad litem*.[4] *See* SA, ¶ 11.7. As

---

[4] Each of the 18 guardians *ad litem* has submitted a declaration attesting to the work they did to advance the litigation on behalf of Plaintiffs and the Settlement Class. These declarations are attached as Exhibits 5 - 22 to the Joint Declaration.

1   with Plaintiffs' fee request, approval of the Settlement is expressly not contingent upon the payment

2   or amount of service awards to the guardians *ad litem* for the Plaintiffs. *Id.*, ¶ 11.1.

3   **II.     The Settlement Class**

4          The Settlement Agreement defines the class to be certified for settlement purposes only as

5   "all persons in the United States who, at any time during the Settlement Class Period, were under 13

6   years old, and watched content allegedly directed to children on YouTube." *See* SA, ¶ 1.43. This is

7   the same class as that defined in the proposed amended complaint that plaintiffs seek leave to file.

8   *See* Complaint, ¶ 390.[5] The Settlement Class Period set forth in the Settlement Agreement (*see* SA,

9   ¶ 1.46), is also the same as the Class Period that has been alleged throughout the litigation (July 1,

10  2013 to April 1, 2020). *See* ECF Nos. 1 at ¶ 1, 286 at ¶ 1, and Complaint at ¶ 1.

11         This definition satisfies Rule 23 requirements for a settlement class. It provides objective

12  criteria that allows Settlement Class Members or their parents/guardians to easily determine whether

13  they are included in the Settlement Class based on their age and the YouTube content that they

14  watched**.** *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 567 (N.D. Cal. 2020); *Day v.*

15  *GEICO Cas. Co*., 2022 WL 16556802, at *8 (N.D. Cal. Oct. 31, 2022).

16  **III.    Leave to File the Amended Complaint Is Granted**

17         The operative complaint (the Sixth Amended Complaint, ECF No. 286), upheld in part by the

18  Court in the January 2025 motion to dismiss order, ECF No. 318, names defendants (the 12 channel

19  defendants) and asserts 24 claims (for unjust enrichment and under certain state consumer protection

20  statutes) that have now been dismissed with prejudice. Conversely, the Sixth Amended Complaint

21  does not include claims for certain states that should be included to allow Settlement Class Members

22  in those states to obtain the benefits of the Settlement since Plaintiffs allege Google's conduct was

23  uniform across the United States. In order to conform the pleadings to the Court's motion to dismiss

24  order and allow Settlement Class Members in additional states to obtain the benefits of the Settlement,

25  _____

26  [5] A copy of the proposed Seventh Amended Complaint that Plaintiffs seek leave to file is attached as
    Exhibit 1 to the Joint Declaration.

27

28

constituting nationwide relief, Plaintiffs seek leave to file the Complaint, which (i) removes the 12 channel defendants and 24 dismissed claims, and (ii) adds claims for certain additional states, culminating in a nationwide Settlement Class. As set forth in the Settlement Agreement, Google consents to the filing of the Complaint for settlement purposes. *See* Joint Decl., ¶ 18, SA, ¶¶ 1.8, 2.2.

The Court finds that plaintiffs should be granted leave to file the Complaint. Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2). The Ninth Circuit has explained that "this policy is to be applied with extreme liberality." *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1152 (9th Cir. 2011).

None of the "*Foman* factors" merit denying plaintiffs' request to amend the pleadings. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). There is no prejudice to Google if the Complaint is filed. To the contrary, Google agrees that the Complaint should be filed for settlement purposes. *See* Joint Decl., ¶ 18, SA, ¶¶ 1.8, 2.2. There has been no undue delay, bad faith or dilatory motive either. Plaintiffs seek leave to file the Complaint only as part of the settlement process and within days of finalizing the Settlement Agreement. Amendment here is also not futile. The Complaint is removing, not adding, defendants and claims that have been dismissed with prejudice, and then adding claims that are being settled and will not be challenged in the future. These claims are substantially similar to the claims already asserted that have been upheld by the Court and are based on Google's alleged conduct with respect to the issues in this litigation was uniform throughout the United States.

That other courts in this District specifically have allowed amendment of class action complaints for settlement purposes further supports plaintiffs' request to amend. *See, e.g., Nat'l Fed'n of Blind of California v. Uber Techs., Inc.*, 2016 WL 9000699, at *2 (N.D. Cal. July 13, 2016); *Miller v. Ghirardeli Chocolate Co.*, 2014 WL 4978433, at *7 (N.D. Cal. Oct. 2, 2014); *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *6 (N.D. Cal. Apr. 29, 2011).

1

## IV.    The Settlement Merits Preliminary Approval

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). To approve a class settlement, a court must determine that the settlement is "fair, reasonable, and adequate." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 780 (9th Cir. 2022) (quoting Rule 23(e)(2)). The first step in this determination is considering whether to preliminarily approve the proposed settlement.

In weighing preliminary approval, the Court must consider whether the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to settlement class representatives or segments of the settlement class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Additionally, "settlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The proposed settlement here merits preliminary approval under all these factors.

### 1.    The Settlement Resulted from Informed, Arm's-Length Negotiations

The first factor looks to the circumstances in which the parties settled. *Mendez v. C-Two Grp., Inc.*, No. 2017 WL 1133371, at *4 (N.D. Cal. Mar. 27, 2017). "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Id.* (quoting *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)); *see also Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.").

The settlement here was reached only after six years of litigation and reflects the parties' informed knowledge of the strength, weaknesses, and value of the claims. *See* Joint Decl., ¶ 17.

1    Plaintiffs' counsel developed an understanding of the strengths and weaknesses of the claims and

2    defenses. *Id.*, ¶ 17. All parties were represented by seasoned counsel who pursued their clients'

3    interests. The Settlement Agreement before the Court also is the product of arms' length negotiations

4    before a neutral and independent mediator. *See Satchell v. Fed. Express Corp.,* 2007 WL 1114010,

5    at *4 (N.D. Cal. Apr. 13, 2007). This factor accordingly supports preliminary approval.

6           **2.      The Settlement Treats Settlement Class Members Fairly and Equally**

7           The second factor is whether the proposed settlement provides preferential treatment to any

8    Settlement Class Member, *see Mendez*, 2017 WL 1133371, at *4. The Court finds that the Settlement

9    does not. The Settlement Class definition is objective, comports with the release of liability, aligns

10   with the operative facts and claims, and makes it easy for all settlement class members to self-identify.

11   *See Nicodemus v. Saint Francis Mem'l* Hosp., 3 Cal. App. 5th 1200, 1212 (2016) (a class definition

12   should "use terminology that will convey sufficient meaning to enable persons hearing it to determine

13   whether they are members of the class") (internal quotation marks and citations omitted). The

14   proposed Claim Form allows Settlement Class Members to submit claims online or by mail by

15   checking a few boxes to confirm their membership in the Settlement Class. *See* Pang Decl., Ex. F.

16   With regard to Settlement benefits, the Plan of Allocation treats all Settlement Class Members

17   equally, and the same as each of the Plaintiffs.

18          **3.      The Settlement Falls Within the Range of Possible Approval**

19          Third, "[t]o determine whether a settlement 'falls within the range of possible approval,'

20   courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected recovery

21   balanced against the value of the settlement offer.'" *Schuchard v. Law Office of Rory W. Clark*, 2016

22   WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *Tableware*, 484 F. Supp. 2d at 1080).

23   "Immediate receipt of money through settlement, even if lower than what could potentially be

24   achieved through ultimate success on the merits, has value to a class, especially when compared to

25   risky and costly litigation." *In re LinkedIn User Privacy Litig.*, 2015 U.S. Dist. LEXIS 123130, at

26   *22 (N.D. Cal. Sept. 15, 2015); *see also In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993).

27

28

The proposed Settlement in this case creates a cash fund of $30 million, which Plaintiffs' calculations, based on information produced during discovery and Plaintiffs' preliminary damage analysis, demonstrate to constitute a significant recovery in relation to the potentially recoverable damages in this case for Plaintiffs' privacy claims. *See* Joint Decl., ¶¶ 15-16. First, Plaintiffs estimated potential class-wide damages of approximately $52 million based on the amount of alleged improper revenues Google realized during the Settlement Class Period from the alleged illegal conduct. They represent that this was calculated by determining what percentage of Google's relevant revenues were obtained from behavioral, rather than contextual advertising and then determining the difference in revenue to Google between those two forms of advertising. The Settlement Fund is 58% of those potential recoverable damages. *See* Joint Decl., ¶ 15. Second, it is possible that even if Plaintiffs prevailed on liability—which is far from guaranteed due to the risks of litigation—they may not prove actual damages, and there is a significant risk that the jury could award nominal damages of $1 per class member, for a class-wide damage award of between $35 million and $50 million based on the number of potential Settlement Class Members, yielding a recovery of between 60% and 86% of nominal damages. *See id.* Third, if Plaintiffs obtained a damages verdict at trial, the Court finds that it would be a per-class member verdict, because determining class membership in the Settlement Class would require a claims-made process. Plaintiffs further estimate that the per class member average damages would be approximately $60.00 based on the monthly value of the personal information Google allegedly collected ($3.00) multiplied by the average number of months class members may have watched child-directed content on YouTube during the Settlement Class Period (20 months). Assuming a 1-2% net claims rate after vetting for fraudulent and otherwise invalid claims, which settlement administrator A.B. Data estimates is appropriate given the facts of this case and claims experience in similar cases, Plaintiffs estimate that each Settlement Class Member who submits a valid and timely claim form will receive between $30.00 and $60.00 (if not more), before deducting for notice and administration costs, taxes, attorneys' fees and expenses and service awards. *See id.* ¶ 16. That range compares favorably to the $60 per class member damage number Plaintiffs

estimate above. In contrast to these immediate cash benefits, continued litigation and any trial and appeal would entail significant risk, an uncertain outcome, and further delay.[6]

Absent settlement, Plaintiffs anticipate Google would aggressively defend this action, including by opposing class certification and moving for summary judgment. Google has denied that Plaintiffs and Settlement Class Members suffered any injury from the conduct alleged in the Complaint and has argued that Plaintiffs will be unable to prove otherwise if the case continues. Similarly, plaintiffs must prove that Google's alleged collection and use of class members' information was highly offensive or serious, , so offensive as to "shock the ordinary sense of decency or privacy," in order to prove their privacy-based torts at trial. *Gill v. Hearst Pub. Co.*, 40 Cal.2d 224, 231 (1953); *see Reade v. New York Times Co.*, 2022 WL 2396083, at \*6 (E.D. Cal. July 1, 2022) (requiring the private facts to be "embarrassing, uncomplimentary, discreditable, indecent, derogatory, or reprehensible"). Google would likely argue that the data allegedly collected and used does not meet that threshold, and a jury might agree.

Plaintiffs have represented that further litigation would require plaintiffs to incur substantial deposition-related expenses (there are 34 Plaintiffs and 18 guardians *ad litem* located across the United States, and a significant number of Google employees that would need to be deposed), considerable additional expenses for testifying experts (both for class certification and the merits), as well as considerable trial preparation and trial expenses. These additional expenses would ultimately be deducted from the Settlement Class's recovery.

Lastly, it is likely that litigation would continue for many years, potentially proceeding through class certification and summary judgment before proceeding through trial and then a potential appeal by the losing party. The Settlement provides immediate cash relief tied to the value of the settled claims, now, without the attendant risks of future litigation. As such, it falls within the range of approval.

---

[6] Google contests Plaintiffs' damages estimates and entitlement to damages.

### 4.    Experienced Counsel Recommend Approval

Finally, the Court finds that the Settlement has no material deficiencies and is supported by Plaintiffs and their counsel as fair, reasonable, and adequate. *See* Joint Decl., ¶¶ 14-17, 21. *See Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)); *Bellinghausen v. Tractor Supply Co.*, 2014 WL 1289342, at *8 (N.D. Cal. Mar. 20, 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.").

The Court hereby preliminarily approves the Settlement, as memorialized in the Settlement Agreement, subject to further consideration at the Final Approval Hearing to be conducted as described below.

## V.    Certification of Settlement Class Claims Is Granted

The Settlement meets the requirements for a settlement class under Rule 23. Rule 23(a) requires (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition, the Settlement Class must satisfy one of Rule 23(b)'s subsections. However, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there [will] be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 1.    The Settlement Class satisfies the Rule 23(a) prerequisites.

**Numerosity.** Numerosity requires the proposed class to be so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here it is easily established. YouTube is one of the most popular apps available in the United States, children under 13 make up approximately 16% of the population of the United States, and the Settlement Class Period spans almost seven years. The proposed Settlement Class includes millions of individuals.

**Commonality.** Commonality requires that the action involve "questions of law or fact common to the class." Rule 23(a)(2). "Even a single [common] question" will do. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (quoting Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum. L. Rev. 149, 176 n. 110 (2003)). Where claims "derive from a common core of salient facts, and share many common legal issues," commonality is met. *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006).

The claims primarily derive from Google's alleged uniform practice during the Settlement Class Period of gathering the personal online identifying information of millions of children under the age of 13 in the United States without first obtaining verifiable parental consent, and then allegedly using that data to track and profile those children on the internet. This alleged common conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Plaintiffs' remaining claims are for alleged privacy violations. *See* Complaint, ¶¶ 402-525. These claims target an alleged uniform practice or a unified course of conduct. The common legal and factual questions arising from plaintiffs' claims, include whether Google's alleged underlying conduct violated the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501, *et seq.*; whether Google's alleged conduct violated the privacy rights of Settlement Class members; whether Google disclosed its alleged conduct to Settlement Class members; whether Google's alleged conduct was highly offensive; whether Settlement Class members suffered harm as a result of Google's alleged conduct; and whether the Settlement Class is entitled to damages. *Id.,* ¶ 396. These suffice to meet the commonality requirement.

**Typicality.** Typicality requires the class representatives' claims to be typical of the claims of the proposed class. Rule 23(a)(3). "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)

(quoting *Hanlon*, 150 F.3d at 1020). Where a plaintiff suffered a similar injury and other class members were injured by the same course of conduct, typicality is satisfied. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Here, plaintiffs have shown that their experiences match the experiences of the millions of other YouTube users under the age of 13 in the United States that make up the Settlement Class. Like other Settlement Class Members, each of the plaintiffs allegedly watched child-directed content on YouTube during the Settlement Class Period, was under 13 at the time, and Google allegedly gathered the personal online identifying information of each of the Plaintiffs without first obtaining verifiable parental consent, and then allegedly used that data to track and profile those children on the internet. *See* Complaint, ¶¶ 9, 19, 57, 59, 81, 134-142, 167, 273-380. Because Plaintiffs' allegations involve the "same course of conduct," which is "not unique to the named plaintiffs," typicality is satisfied here. *Valliere v. Tesoro Refin. & Mktg. Co. LLC*, 2020 WL 13505042, at *5 (N.D. Cal. June 26, 2020) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

**Adequacy**. Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." To determine adequacy, courts ask two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957 (citing *Hanlon*, 150 F.3d at 1020).

The Court finds that neither the Plaintiffs nor their guardians *ad litem* has any interests antagonistic to the other Settlement Class Members, whose interests they will continue to vigorously protect. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *4–5 (N.D. Cal. July 22, 2020). Plaintiffs and their guardians *ad litem* are aligned with Settlement Class Members in their interest in proving that Google violated COPPA and their privacy rights. And they are aligned in seeking compensation and restitution for Settlement Class Members from Google for alleged resulting harm. The Court also finds that Plaintiffs and their guardians *ad litem* understand their duties as Settlement Class Representatives, have agreed to consider and protect the interests of

absent Settlement Class Members, and have actively participated in this action and Settlement.

Finally, Plaintiffs' counsel have demonstrated that they are highly qualified lawyers who have successfully prosecuted high-stakes complex cases and consumer class actions. *See* Joint Decl., Exs. 3-4. They have devoted the time and resources necessary to see this case through despite the risks. *Id.* ¶¶ 17-19.

### 2.    The Settlement Class satisfies Rule 23(b)(3).

Certification of Rule 23(b)(3) classes is warranted when: (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). The Court finds that the Settlement Class satisfies both prerequisites for settlement purposes and certifies the Settlement Class under Rule 23(b)(3).

**Common issues of law and fact predominate.** The common questions in this case, described above, can be resolved for all members of the Settlement Class in a single adjudication. *See Hanlon*, 150 F.3d at 1022 (citation and quotation omitted) (the predominance inquiry under Rule 23(b)(3) focuses on whether the "common questions present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication." If so, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.*)

Google's alleged policies and practices at issue here were common to all Settlement Class members, and whether Google violated COPPA and the privacy rights of Settlement Class members presents issues of fact and law that can be answered on a class-wide basis. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 2022 WL 2343268, at *35 (N.D. Cal. June 28, 2022) (claims that "require common proof of the defendant's conduct" are appropriate for class certification). Additionally, the state common law privacy claims have substantial similarities and are well-suited to class certification in the settlement context when defendants agree that certification for settlement purposes is appropriate. *See, e.g.*, *In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, 2024 WL 4982986, at *4 (N.D. Cal. Dec. 4, 2024); *Smith v. Keurig Green Mountain, Inc.*, 2022 WL 2644105,

at *3 (N.D. Cal. July 8, 2022); *Theodore Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *22–23 (N.D. Cal. Feb. 5, 2020); *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 11557486, at *3 (N.D. Cal. Oct. 3, 2019); *Kumar v. Salov N. Am. Corp.*, 2017 WL 2902898, at *6 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018); *Lundell v. Dell, Inc.*, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006). As recognized by the Seventh Circuit, the settlement context presents no need to "draw fine lines among state-law theories of relief." *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 746–47 (7th Cir. 2001). Thus, "the fact that ... claims ... implicate the laws of different states" will not "defeat predominance for the purpose of certifying a settlement class." *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *6 (N.D. Ill. Mar. 25, 2022) (citation omitted).

The Court further finds that Rule 23(b)(3)'s four non-exclusive factors "pertinent" to predominance weigh in favor of a predominance finding for settlement purposes. Settlement Class Members' interest in controlling separate actions is low, given the efficiencies of collectively adjudicating common legal and factual questions, as well as the risks and expense of litigating this case. Plaintiffs are unaware of any other cases asserting claims against Google substantially similar to those asserted here, but if other cases were to be filed, judicial efficiency and avoiding possible inconsistent rulings would militate towards concentrating those actions here, since this case has been pending for more than five years and is substantially advanced. Although litigating this case has not been without its difficulties, managing millions of individual cases would present exponentially more difficulties. In any event, "[a] class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai*, 926 F.3d at 558.

**Settlement class treatment is superior.** Rule 23(b)(3)'s "superiority" element "requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. The Court finds that Settlement Class treatment is superior to the litigation of hundreds or thousands of individual claims. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate

actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Id.* The damages sought by each Settlement Class member, when weighed against their risks, are not so large as to counsel against certification. *See Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008). The class action device presents far fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Based on the foregoing, the proposed Settlement Class is certified pursuant to Rule 23(b)(3) and notice to the Settlement Class is appropriate pursuant to Rule 23(c).

## VI.    Plaintiffs and Plaintiffs' Counsel Are Appointed to Represent the Settlement Class

The Court finds that Plaintiffs, by and through their guardians *ad litem*, should be appointed to serve as Settlement Class Representatives on behalf of the Settlement Class and Plaintiffs' counsel should be appointed Settlement Class Counsel for the Settlement Class. The guardians *ad litem*, acting on behalf of the Plaintiffs, understand the duties owed by Plaintiffs and their guardians *ad litem* as Settlement Class Representatives, have agreed to consider and protect the interests of absent Settlement Class Members, and have, on behalf of the Plaintiffs, actively participated in this action and Settlement. *See* Rule 23(g)(1).

Plaintiffs' counsel are highly qualified lawyers who have successfully prosecuted high-stakes complex cases and consumer class actions, and they have devoted the resources necessary to see this case through despite the risks. Their capable representation in this case over the past six years has included prevailing on a Ninth Circuit appeal initially dismissing the case, overcoming Google's subsequent efforts to dismiss the case in full, and negotiating a substantial settlement on behalf of the Settlement Class.

## VII.    The Manner and Form of Notice Are Approved

The proposed Notice Plan meets Rule 23's requirement to direct the best notice practicable to all Settlement Class Members who would be bound by a proposed Settlement. *See* Rule 23(c)(2)(B), (e)(1). The proposed Notice Plan will include paid advertising notice through digital and social media,

---

a paid keyword search campaign,  a press release, a dedicated Settlement Website, a toll-free telephone line, and, as needed, additional efforts to obtain a higher claims rate. The Settlement Administrator estimates that the proposed notice campaign will reach approximately 71.1% of Settlement Class Members – a percentage that exceeds the 70% reach characterized as the "norm" and a "high percentage" by the Federal Judicial Center – and that each Settlement Class Member will be exposed to the notice an average of two times.

The draft Notice also follows this District's guidance, including contact information for Settlement Class Counsel; the address for the settlement website; instructions on how to access the case docket via PACER or in person; the date and time of the final approval hearing, clearly stating that the date may change without further notice to the Settlement Class; and a note to Settlement Class Members to check the settlement website or PACER to confirm the date. Pang Decl., ¶¶ 35-36 and Exs. D-F.

The Court approves, as to form and content, the Notices, annexed to the Pang Declaration as Exhibits D and E, and finds that the publication of the Notices, substantially in the manner and form set forth in Exhibits D and E, meet the requirements of Federal Rule of Civil Procedure 23 and due process.  This plan, and the Notice, are reasonably calculated, under the circumstances, to apprise Settlement Class members of the pendency of the action, the effect of the proposed Settlement (including the Released Claims contained therein), the anticipated motion for attorneys' fees, costs, and expenses and for service awards, and Settlement Class Members' rights to object to any aspect of the proposed Settlement. The date and time of the Final Approval Hearing shall be included in the Notice before its posting.

### 1.    The Settlement Administrator

The Court appoints the parties' proposed Settlement Administrator, A.B. Data. SA, ¶ 1.42. A.B. Data was selected through a competitive bidding process. A.B. has considerable experience as the appointed settlement administrator in large class action settlements involving Google and other technology platforms, employs extensive data security measures to securely handle Settlement Class

Members' data, and maintains comprehensive insurance coverage, including sufficient Errors & Omissions coverage. *See* Pang Decl., ¶¶ 3, 51-54, Ex. A.

A.B. Data has estimated the anticipated costs of issuing notice and administering the Settlement as between $988,000 and $1,250,000, which depends in large part on the eventual claims rate and number of valid and timely claims. *Id.*, ¶ 55. These costs will be paid out of the Settlement Fund. SA, ¶¶ 3.1, 3.3, 3.7.

### 2.    Opt-outs and objections: timeline, instructions, and forms

The Court finds that the opt-out form and instructions for objecting follows the N.D. Cal. Procedural Guidance and hereby approves them. *See* N.D. Cal. Procedural Guidance ¶ 9.

## VIII.    The Proposed Final Approval Schedule Is Adopted

The Court hereby adopts the proposed schedule for the approval process:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Google shall pay or cause to be paid a portion of the Settlement Fund in an amount sufficient to effectuate the Notice Plan to the Settlement Administrator | 25 days following Preliminary Approval Order |
| Notice disseminated to Settlement Class Members consistent with the Notice Plan | 30 days following Preliminary Approval Order |
| Plaintiffs' Counsel shall file all papers in support of the motion for Final Approval and for Attorneys' Fees, Expenses and Service Awards | 40 days following Preliminary Approval Order |
| Deadline for Settlement Class Members to Object/Exclude themselves from the Settlement | 75 days following Preliminary Approval Order |
| Plaintiffs' Counsel shall file all reply papers in support of the motions for Final Approval and for Attorneys' Fees, Expenses and Service Awards | 85 days following Preliminary Approval Order |
| Final Approval Hearing | ~~105 days following Preliminary Approval Order, or as soon thereafter as may be heard by the Court~~ Jan. 13, 2026 at 10:00 a.m. |
| Settlement Class Members who wish to make a claim must do so by submitting a claim | 120 days following Preliminary Approval Order |

1    The Court will hold a Final Approval Hearing on <u>January 13</u>, 2026 at <u>10:00</u> a.m., ~~at~~
2    by Zoom videoconference ~~the United States District Court for the Northern District of California, Robert F. Peckham Federal~~
3    ~~Building & United States Courthouse, 280 South 1st Street, Room 2112, San Jose, CA 95113~~, for the
4    following purposes: (i) to determine whether the settlement should be approved as fair, reasonable,
5    and adequate and in the best interests of the Settlement Class; (ii) to rule upon Settlement Class
6    Counsel's application for an award of attorneys' fees, costs, and expenses and for service awards to
7    the Settlement Class Representatives; and (iii) to consider any other matters that may properly be
8    brought before the Court in connection with the Settlement.

9    Settlement Class Counsel's application for an award of attorneys' fees, expenses, and costs
10   and for service awards will be considered separately from the fairness, reasonableness, and adequacy
11   of the Settlement. Any appeal from any order relating solely to Settlement Class Counsel's
12   application for an award of attorneys' fees, costs, and expenses, and/or to the application for Service
13   Awards, or any reversal or modification of any such order, shall not operate to terminate or cancel
14   the settlement or to affect or delay the finality of the judgment approving the Settlement.

15   **IX.    Objections and Appearances at the Final Approval Hearing**

16   Any member of the Settlement Class may appear at the Final Approval Hearing and show
17   cause why the proposed Settlement should or should not be approved as fair, reasonable, and
18   adequate, or why judgment should or should not be entered, or to present opposition to Settlement
19   Class Counsel's application for attorneys' fees, costs, and expenses, or to the application for service
20   awards. No person shall be heard or entitled to contest the approval of the Settlement, or, if approved,
21   the judgment to be entered approving the Settlement, or of Settlement Class Counsel's application
22   for an award of attorneys' fees, costs, and expenses and for service awards, unless that person filed
23   an objection with the Clerk of the United States District Court for the Northern District of California,
24   electronically, in person, or by first class mail, within 45 days after the date on which Notice was first
25   published (the "Objection Deadline").

26   Any Settlement Class Member who does not make his or her objection in the time and manner

27

28

1  provided for herein shall be deemed to have waived such objection and shall forever be barred from

2  making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, or to

3  Settlement Class Counsel's application for an award of attorneys' fees, costs, and expenses and for

4  service awards. By objecting or otherwise requesting to be heard at the Final Approval Hearing, a

5  person shall be deemed to have submitted to the jurisdiction of the Court with respect to the objection

6  or request to be heard and the subject matter of the Settlement, including enforcement of its terms.

7       Settlement Class Members may object on their own, or may do so through separate counsel

8  at their own expense. Any objection to the Settlement must include the objector's name and address,

9  and include: (1) a written statement of the objection, as well as the specific reason(s), if any, for each

10 objection, including any legal support the Settlement Class Member wishes to bring to the Court's

11 attention; (2) any evidence or other information the Settlement Class Member wishes to introduce in

12 support of the objection; (3) a statement of whether the Settlement Class Member intends to appear

13 and argue at the Final Approval Hearing; and (4) proof that the objector is a member of the Settlement

14 Class. The objection shall be signed by the objector or the objector's counsel.

15      Objections must be submitted to the Court by filing the written objection through the Court's

16 Case Management/Electronic Case Files system, or by any other method the Court accepts filings, by

17 the Objection Deadline.

18      Attendance at the Final Approval Hearing is not necessary, but persons wishing to be heard

19 orally in opposition to approval of the Settlement and/or the application for an award of attorneys'

20 fees, costs, and expenses and for service awards must indicate in their written objection their intention

21 to appear at the hearing. Persons who intend to object to the Settlement and/or the application for

22 attorneys' fees, costs, and expenses and for service awards, and who wish to present evidence at the

23 Final Approval Hearing, must include in their written objection(s) the identity of any witness(es) they

24 may call to testify and copies of any exhibit(s) they intend to offer at the hearing. If an objector hires

25 an attorney to represent him or her for the purposes of making an objection, the attorney must file a

26 notice of appearance with the Court by the Objection Deadline.

27

28

1    **IT IS SO ORDERED.**

2

3

4    Dated:  September 23, 2025                                        _____

5                                                                          Hon. Susan van Keulen
                                                                              United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28